Pages 1 - 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

BRIANNA SINOHUI, et al.,        )
                                )
          Plaintiffs,           )
                                )
  VS.                           )      **NO. C 19-02546 CRB**
                                )      *Related cases:*
INTUIT, INC. , et al.,          )        **C 19-03460 CRB**
                                )        **C 19-03745 CRB**
          Defendants.           )
_____  )

San Francisco, California
Friday, August 16, 2019

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES</u>**:

For Plaintiff Brianna Sinohui:

                        GIBBS LAW GROUP, LLP
                        505 14th Street, Suite 1110
                        Oakland, California  94612
                BY:  **ERIC GIBBS, ATTORNEY AT LAW**


For Plaintiff Brianna Sinohui and Plaintiff Laura Nichols:

                        STUEVE SIEGEL HANSON, LLP
                        460 Nichols Road, Suite 200
                        Kansas City, Missouri  64112
                BY:  **NORMAN E. SIEGEL, ATTORNEY AT LAW**


(Appearances continued on the following page)


Reported By:        Marla F. Knox, RPR, CRR
                    Official Reporter

**APPEARANCES: (cont'd)**

For Plaintiff Maria Leon:
                  PRITZKER LEVINE, LLP
                  180 Grand Avenue, Suite 1390
                  Oakland, California  94612
         **BY:  ELIZABETH C. PRITZKER, ATTORNEY AT LAW**

For Plaintiff Darleen Allwein:
                  KESSLER TOPAZ MELTZER CHECK, LLP
                  One Sansome Street, Suite 1850
                  San Francisco, California  94104
         **BY:  JENNY PAQUETTE, ATTORNEY AT LAW**

For Plaintiff Andrew Dohrmann:
                  GIRARD SHARP, LLP
                  601 California Street, Suite 1400
                  San Francisco, California  94108
         **BY:  DANIEL C. GIRARD, ATTORNEY AT LAW**
                  **ANGELICA M. ORNELAS, ATTORNEY AT LAW**

For Plaintiff Lakesia Cook:
                  KAZEROUNI LAW GROUP, APC
                  245 Fischer Avenue, Suite D1
                  Costa Mesa, California  92626
         **BY:  ABBAS KAZEROUNIAN, ATTORNEY AT LAW**

For Plaintiff Claudia McConnaughey:
                  SEEGER WEISS, LLP
                  55 Challenger Road, 6th Floor
                  Ridgefield Park, New Jersey 07660
         **BY:  CHRISTOPHER A. SEEGER, ATTORNEY AT LAW**

For Defendant Intuit:
                  FENWICK & WEST LLP
                  555 California Street - 12th Floor
                  San Francisco, California  94104
         **BY:  RODGER R. COLE, ATTORNEY AT LAW**
                  **MOLLY MELCHER, ATTORNEY AT LAW**
                  **LAURENCE F. PULGRAM, ATTORNEY AT LAW**
                  **TYLER NEWBY, ATTORNEY AT LAW**

For United States Attorney's Office:
                  U.S. Department of Justice-Civil Div.
                  450 Golden Gate Ave., 9th Floor
                  San Francisco, California  94102
         **BY:  SARA WINSLOW, ATTORNEY AT LAW**

**Friday - August 16, 2019**                                    **8:28 a.m.**

## P R O C E E D I N G S

---000---

**THE CLERK:**  Calling civil action C19-02546, Sinohui, et al. versus Intuit, Inc.

Also calling related Case Number C19-3460 and C19-3745.

Counsel, please step forward and state your appearances for the record.

**MR. GIBBS:**  Good morning, Your Honor, Eric Gibbs for the Plaintiffs.

**MS. PRITZKER:**  Good morning, Your Honor Elizabeth Pritzker I represent Plaintiff Leon.

**MR. SIEGEL:**  Good morning, Your Honor, Norman Siegel. I represent Plaintiff Sinohui and Plaintiff Nichols.

**MR. GIRARD:**  Good morning, Your Honor.  I'm Daniel Girard appearing on behalf of Plaintiff Dohrmann.

**MR. SEEGER:**  Good morning, Your Honor, Chris Seeger. We filed the McConnaughey complaint.

**MS. PAQUETTE:**  Good morning, Your Honor, Jenny Paquette appearing for Plaintiff Darleen Allwein.

**MR. KAZEROUNIAN:**  Good morning, Your Honor, Abbas Kazerounian representing Plaintiff Lakesia Cook.

**MR. COLE:**  Good morning, Your Honor, Rodger Cole of Fenwick & West representing Intuit, here with my colleagues Laurence Pulgram, Molly Melcher and Tyler Newby.

1          **MS. WINSLOW:**  Good morning, Your Honor, Sara Winslow

2     from the U.S. Attorney's Office in case the Court has questions

3     for the Government.

4          **THE COURT:**  Thank you.  Well, have a seat, ladies and

5     gentlemen, and thank you very much for coming.

6          I understand we are on CourtCall which means that people

7     are -- can telephone in and listen to the proceedings.  They

8     cannot participate in the sense that whatever they say won't be

9     heard by the Court.  However, it is important in these

10    proceedings that if you are going to address the Court, you do

11    so by coming to the podium and speaking into the microphone

12    because that's the only way we can assure those people who are

13    on CourtCall, that they are hearing what the proceedings are.

14    And, of course, the understanding is with those people on

15    CourtCall that they are not to record the proceedings.

16         So let's begin by a discussion as to where we go from here

17    which is generally what courts do all the time in case

18    management conferences.

19         The purpose of the hearing today is for the Court to

20    listen to the parties as to their views as to the appointment

21    of interim counsel.  That is the purpose.  There are also --

22    there is one other issue that I raised -- the Court raised sua

23    sponte, which is the role of the Government in connection with

24    this litigation.

25         So I think it would be helpful to make sure that I have an

appreciation of what are the allegations in the complaint

because I think that without an understanding of them, it

becomes very difficult to determine which counsel would be

suitable to move forward -- at least on an interim basis -- for

representation of a potential class, subclass of litigants.

     The Court has read and reviewed a number of complaints

that have been filed in this action.  In addition, the Court

has read the complaint that was filed by the People of the

State of California in connection with this matter.  It is not

pending presently before this Court.  I think it is before the

superior court -- it is before the Superior Court of the State

of California; however, it is filed in the County of Los

Angeles, I believe.  I don't presently have it right in front

of me.  It is not presently in the Northern District of

California.

     I think looking at it -- and I may be wrong in this

regard -- I think it was the first filed complaint or is one of

the first filed complaints, and it predated by just a few days

the complaints that I presently have before me.

     So let me give you the Court's take on what this

litigation is all about.  And in doing so, I want to stress the

fact that these are allegations; that is, the Court has no view

as to whether or not the evidence would support the

allegations.  It is the outset of the case.  The Defendants

have not had the opportunity to respond to the complaint, and

obviously there may be issues of fact as to -- as to what
actually occurred with respect to the events that are portrayed
or depicted in the complaint.

Nevertheless, it is the responsibility of the Court to
name interim counsel essentially based on the allegations as
they exist in the complaint and in doing so, accept as true for
those limited purposes the allegations that are in the various
complaints.

What they say is -- they tell a story, and the story is
this -- as I understand it to be -- approximately 17 years
ago -- maybe a couple more months plus or minus -- a company --
and I guess at that time it was called Intuit -- though, I
don't know that for sure -- formed a consortium or participated
in a consortium -- but I think they were the principal party in
the consortium -- of accountants.  And they had developed -- at
least one or more of them -- a software program that would
enable a taxpayer to file his or her return electronically with
the Internal Revenue Service.

With this software and at that stage, 17 years ago, they
went to the Internal Revenue Service and they struck a deal.
And essentially the deal was that the Internal Revenue Service
would refrain from developing their own software program
designed to enable taxpayers to file online.

In exchange for the consortium's -- Intuit, primarily but
other members as well -- assurance that they would provide

free -- and I want to emphasize the word "free" -- free means no cost to taxpayers who were the lowest part of the income earnings of citizens or taxpayers of the United States.

And it was estimated at that time that this program would bring within it under free filing somewhere in the neighborhood -- and it changes a bit -- but somewhere in the neighborhood of 60 to 70 percent of taxpayers in the United States.  So the program went under way.

The Internal Revenue Service did not -- to my knowledge or at least as an allegation -- did not prepare or did not institute their own software program to address filings in this -- filings of income tax returns.  Rather, they relied on Intuit and members of the consortium to provide this service to -- to taxpayers.

It was geared in particular to address those people who are the neediest in the United States; that is, those people who have the lowest income but still had a duty, nevertheless, to report their income and to file their tax returns.  But by and large, they were people who would not owe any income taxes.

Within that group -- and I don't know quite how it is treated.  It is a little confusing in the complaint -- but there was a sort of subset or a part of the group which were our people who serve this country in the Armed Services.  And as to those people -- again, our Armed Services personnel -- would be entitled under this program given certain income caps,

1   would be permitted to file at no cost to them.

2       So this was the program that was envisioned by the

3   Internal Revenue Service in their agreement that they would

4   refrain from developing their own software program.

5       Over the year -- years between 2002 and 2017 -- there have

6   been a number of memorandum of understanding continuing the

7   program, refining the program, adjusting income levels and

8   other aspects of the program; but one salient factor became

9   obvious, which was instead of the 60 percent or 70 percent or

10  50 percent of the individuals who would be entitled to file at

11  no cost, the percentage was actually closer to 2 and a half

12  percent.

13      And, therefore, of what was estimated in one of the

14  complaints 100 million people who could possibly take advantage

15  of this program, less -- 97 percent or thereabouts did not take

16  advantage of the program.

17      So, of course, the question is why.  Why.  When the IRS

18  sets up a program to provide free tax service to individuals

19  filing returns, why is there such a low incidence of

20  utilization of a free file program.

21      Now, the Plaintiffs have said -- and the State of

22  California has said -- the why is obvious.  Why all you have to

23  do is go to this website that made these programs -- that

24  advertise the services of Intuit, and you will -- through

25  navigating through that program -- see how difficult it is to

 1   actually achieve a result in which you pay no cost to Intuit or

 2   any of the other entities.

 3        In fact, the program that was designed to enable the

 4   filers to use the services was labeled by Intuit and other

 5   entities something along the lines of free filing but using

 6   a -- the program that was designed as free filing led the

 7   taxpayer down an electronic path in which that taxpayer would

 8   ultimately have to pay if continuing with the service some sum

 9   of money to Intuit for the utilization of Intuit's services.

10   So contrary to being free filing, it was actually a cost filing

11   for a taxpayer.

12        Now, the Plaintiffs recognize that there was a program

13   designed by Intuit that actually would achieve -- for a large

14   number of taxpayers or a number of taxpayers -- a free filing

15   program.  Was it called free filing?  No.  It was called

16   freedom filing.  And it was the freedom filing program that an

17   individual would have to choose in order to achieve what was

18   the purpose of the IRS in providing this program to the -- to

19   the taxpayers.

20        So it is said as a bottom line figure -- claim that Intuit

21   and the consortium were engaged in unfair business practices

22   and engaged in a fraud; and the fraud is that after having

23   promised the IRS a free filing system, which would address the

24   needs of 60 or 70 percent of the lowest earned income people in

25   America including service men and women, that actually the

1  service wasn't readily, clearly, obviously available to these

2  taxpayers.  And, thus, the lawsuit was filed.

3       That's what I understand to be the allegations of the

4  complaint.  And I will note that the Defendants have not had

5  the opportunity to respond, and they will certainly have the

6  opportunity to respond in this forum.  But these allegations

7  are extremely serious, and they involve the Government of the

8  United States and the Internal Revenue Service.  And,

9  therefore, I'm pleased that the United States Attorney's Office

10 is here today in order to hear these proceedings and ultimately

11 make some determination as to what role, if any, the IRS

12 chooses to play in these proceedings because at the heart of

13 the case is the deal that is -- that was struck by the Internal

14 Revenue Service and the Defendants.

15      And, therefore, that is the claim essentially of the

16 Plaintiffs that they represent the third-party beneficiaries of

17 this deal that was -- that was enacted in -- 17 years ago.

18      So the question was raised by the Court:  Is the IRS a

19 necessary party, and preliminary research -- I have to tell you

20 it is very preliminary -- would indicate they are not.  That is

21 they are not an essential party, and one can understand that

22 because in any lawsuit in which a government contract or

23 position is implicated, if the Government were a necessary

24 party, they would be in court on almost every civil case that

25 at least I have witnessed in 21 years.  So they may not be a

necessary party, but that is very different from saying whether
or not they are an interested party.

It appears to the Court -- provided that there is
substance to these allegations -- that the IRS would be
extremely interested in finding out how their contract with the
Defendants over 17 years has been carried out and what should
be done in light of how this contract was executed over time.
They would be extremely interested in that outcome.

Now, I also note in looking at these applications that
there is an issue as to arbitration and whether or not the
individual clients that the -- that the Plaintiff now
represents -- these Plaintiffs now represent or the Counsel for
the Plaintiffs now represent -- were aware there was, I would
assume, an arbitration agreement that a taxpayer acknowledge in
some form which arbitration agreement, if literally read,
would -- would require the arbitration of the disputes as
distinct from litigation in a federal district court.

I have no opinion whatsoever as to the impact, if any, of
these arbitration agreements, nor do I know as an example
whether the Defendants would insist on the arbitration
agreement, whether or not it is valid and whether or not it
would be invoked are questions that only the Defendants have to
address and make some determination.

But when one reads the arbitration agreement, there is an
exclusion for injunctive relief.  And the Court notes that

1   almost all -- but not all -- of the complaints that have been

2   filed in this case request injunctive relief.

3        So as I understand it, there are several issues that we

4   are going to have to get through in this process in order to

5   determine what is the appropriate forum; can this Court go

6   forward; what is the position of the Internal Revenue Service

7   and make those -- and who will serve as interim counsel in

8   proceeding.

9        Those are all issues that have to be determined, and it is

10  the Court's view that I want to make an early determination and

11  address as many of those issues as I can because it is now

12  August, and April 15th will soon be ahead of us.

13       People will have to have some certainty as early as

14  possible on how people are to prepare their taxes.  And so the

15  longer the litigation persists in some uncertain way, the

16  disservice this Court does then to the process of trying to

17  assist the individuals in this country to file their taxes --

18  something that nobody is too happy to do.  I would acknowledge

19  that -- but it has to be resolved, and in particular it has to

20  be resolved for those people who are least able to pay taxes

21  who are the most disadvantaged members of our society because

22  they don't have a lot of options.  These people who earn 10,

23  12, 20, $30,000 are not people who can just willie-nilly go out

24  and hire a series of accountants.  They have limited funds,

25  limited ability to comply with the law.

1          And, therefore, the law -- those people who execute the

2     law, which are judges in a sense -- determine the law, which

3     are judges, have a responsibility to the public to bring about

4     an adjudication of the issues that are raised here.

5          So after saying all of that, I invite anybody to make a

6     comment that they wish to comment on.  And I will turn first to

7     Plaintiffs' Counsel, do you have anything that anybody wants to

8     say?

9          **MR. GIBBS:**  Your Honor, Eric Gibbs for the Plaintiffs.

10          **THE COURT:**  Be sure to speak up if you would,

11     Mr. Gibbs.

12          **MR. GIBBS:**  I will start by saying that was a pretty

13     remarkable summary of the case.  It is probably a better

14     summary than I would have provided myself, and we prepared

15     the -- you know, the initial complaint.  Would you like us to

16     turn to the Rule 23(g) application?

17          **THE COURT:**  Yes, I think that is actually the purpose

18     of the hearing.  So this is going to be your opportunity to be

19     heard on that issue.

20          **MR. GIBBS:**  Okay.  I will start there; and if the

21     Court would like me to address the Rule 19 questions or

22     anything --

23          **THE COURT:**  Well, you can address the Rule 19

24     questions if you believe that the Court is wrong in its initial

25     impression.  Believe me, I welcome any thoughts on that if you

 1   have any thoughts that could assist the Court.

 2        My inclination would be that the Internal Revenue Service

 3   is not an essential party or necessary party within the meaning

 4   of Rule 19, and there are some cases that I have looked at that

 5   seem to support that position.  But if you have a different

 6   view, of course, tell me.

 7        **MR. GIBBS:**  We don't have a different view, and we

 8   agree that traveling down a Rule 19 path at this point would

 9   not really be in the class members' interest.  It will trigger

10   delay and other things, which as the Court, I think, correctly

11   recognized, that is not what this case needs.

12        This case needs a more quick path.  I think we can do that

13   by sequencing the appointment of counsel, expediting a

14   consolidated complaint, expediting the initial motion practice;

15   and to the extent a Rule 19 or 12(b)7 question arises out of

16   that, we can deal with that in short order.

17        But getting to the 23(g) piece of this, unless the Court

18   has questions about my background and experience, what I would

19   like to touch on is why I'm asking to be appointed here.  For

20   me, that starts with the clients and the class members that

21   Your Honor has discussed.

22        Our firm has now heard from more than a thousand people

23   including a good number of service members, which is what

24   caused us to file the complaint on behalf of service members.

25   And many of those people have shared their experience with us

using an Intuit product that they believed was free and
ultimately were trapped into having to make a payment, and they
are asking how and whether they can participate in this case.
I mean, at this point in my career I'm fortunate enough to
represent a wide array of clients on a variety of different
types of cases; but for me personally, this practice still
comes down to what attracted me in the first place and that's
consumer fraud cases.

I think the Court's description was spot on.  From my
perspective this is a bread and butter consumer fraud case.  It
is resulting in the nickeling and diming of the most vulnerable
people in our society and service members.  And so, you know,
for some context, what I would like to share is a few
observations we have heard just in the last two weeks from the
people we are seeking to represent.

We heard from a service member from Illinois who told us
he signed up for the free service.  He puts free in quotes,
through the link provided by the Army and he was still charged.
He says even though he filed through his army.mil e-mail
address, Intuit didn't recognize him as a service member and,
like I said, charged him.  His view is Intuit has always known
he was in the military and that he was deserving of the free
edition.  This is his quote.  He feels like "this is an
incredible breach of trust; like a giant lie of omission or
even just a lie."

1    We heard from a woman in Oklahoma who captured a majority

2    of what folks have told us; that it was free until the end when

3    she had proceeded for a lengthy period of time to get the taxes

4    prepared and then huge fees popped up.  She reported she is on

5    social security disability.

6    A woman from Michigan asked if she could be part of the

7    lawsuit as she too was tricked into paying for TurboTax to do

8    her taxes when it was said to be free.  She reports she is low

9    income.

10    A woman from Ohio told us that when she found out about

11    the IRS free file agreement, she called TurboTax and was told

12    she is not entitled to free filing through TurboTax because of

13    her complete tax -- because of her complex tax status and that

14    she needed to file through "the IRS's online system."  She says

15    TurboTax is responsible for assisting her particular

16    demographic for filing for free.  It is not only that she was

17    wrongly charged to file when she qualified for free online

18    filing, she was lied to about her eligibility for free file and

19    the products TurboTax manufactures.

20    So I just want to focus a bit on the clients because often

21    in these things we come to talk about ourselves.

22    Where I started, from my perspective this is essentially a

23    traditional consumer protection false advertising case.  Intuit

24    heavily advertises free tax preparation to draw consumers in

25    and then switches them to its paid products, which the consumer

typically doesn't realize is happening until after they have already spent substantial time completing their taxes on what they believe to be a free software and a free process.  At that point they feel trapped, and they succumb by paying.

At its core what Intuit is doing is using traditional deceptive techniques like misusing the word "free;" targeting the more vulnerable folks in our society and service members.

When you look back on the consumer protection statutes that are invoked in all of these complaints, like the CLRA -- it is a little FTC act which arose in the early '70s -- I focus on misuse of the word "free" was one of the things that drove that legislation and drove the little FTC acts all over the country.  This is just another use of that type of technique.

It is these stories and these people that bring me before the Court today.  I have successfully represented consumer classes and clients my entire career.  I'm asking to be appointed so that I can do that here.  We filed the first case before the Court.  We filed the only military case before the Court, and I have largely run point working with Mr. Cole on behalf of Plaintiffs to date.  I'm not suggesting I unilaterally did that.  We worked collegially as a group and communicated with Mr. Cole largely through me.  From my perspective, I don't see a good reason that should change.

And elaborating on my last point, if appointed, I will zealously and efficiently prosecute the case unless the Court

prefers a different approach, and I would look to the Court for

guidance on this.  I would intend to draw from the considerable

talent that is in this room today.

I am highly sensitive to the view that Plaintiffs' Counsel

overwork these type of cases.  I think we put this in our

paper, but we are certainly prepared to submit our time records

on an ongoing basis so if there is questions about

inefficiency --

**THE COURT:**  I should tell you that -- thank you for

raising that.  I have now done this for some period of time,

and indeed whoever is appointed interim counsel and if there is

a Plaintiff steering committee -- and I have no idea whether

there would be or not -- but I would require very clear time

records.  I set this all out in an order because it is my view

that in order to be compensated in a class action, attorneys

have to give common benefit services to the class.  And while

there are many, many attorneys out there who deal with clients

throughout the United States who have a similar -- who are

similarly situated, that is all to the good, but in terms of

compensation, it is as a general rule restricted to those

people who provided common benefit funds.

Now that view has been affirmed by the Ninth Circuit, but

I don't even know what may be pending a review.  No, I think

actually it is now presently on cert to the United States

Supreme Court.  So we have no idea whether or not that view is

1  presently correct or not.  That is my present view.  My view,

2  of course, will change if the Supreme Court takes a different

3  position than whatever the appellate courts are that I follow.

4      But I do assure you -- and I welcome your comment that

5  there will be time records careful husbanding of resources.

6  Thank you very much, Mr. Gibbs.

7          **MR. GIBBS:**  Thank you very much, Your Honor.

8          **THE COURT:**  Does any other counsel wish to address?

9  At this point, I would say, I want to hear; but I don't want to

10 hear individual cases unless they somehow govern why your

11 application should be selected.  So -- because I think in a way

12 we don't have the defense being able to address those

13 individuals cases, and that will be an opportunity further on

14 down the road.

15         **MR. SIEGEL:**  Thank you, Your Honor, Norm Siegel.  I

16 think we were loosely discussing whether we should just

17 approach the Court in the order the cases were filed so --

18         **THE COURT:**  Any -- it makes no difference, however.

19         **MR. SIEGEL:**  Very well.  So, Your Honor, Norman Siegel

20 from Stueve Siegel and Hanson in Kansas City.  I'm before this

21 Court in *Valley versus State Farm*, another class action that

22 Your Honor heard a motion on from my colleague last week or the

23 week before.

24     We filed these initial cases; developed; worked up the

25 facts and filed them as the first filed case including

 1    Mr. Gibbs as counsel in this district, of course, for very much

 2    the same reasons.  We are quite passionate about the client

 3    base here, really for the reasons the Court outlined.

 4        We do a lot of cases.  We get to see a lot of files and

 5    Plaintiffs.  This in particular is a righteous case from our

 6    perspective, which is why we filed that case, the first filed

 7    case and only.

 8        It is also the reason we filed the Nichols case.  The

 9    Nichols case, Your Honor, mentioned the specific

10    characteristics of the military members that are supposed to be

11    entitled to free filing.  They have a higher threshold for

12    income at 66,000 for E1 through E5 active military members.

13    And the reason we separately pled that is because there are

14    separate facts that we discovered independently that relate to

15    those claims.  For example, there was separate advertising

16    directed at military members -- which is at -- starts at

17    paragraph 36 of our Nichols complaint -- that we think are

18    particularly egregious in light of the overall case that was

19    laid out at the start of this hearing.

20        So we, likewise, have talked to now over a thousand class

21    members.  We are very actively representing military members in

22    other cases including the *3M* hearing loss case.  That was

23    brought to our attention in speaking with those military

24    members.

25        So just from a Rule 23(g) perspective, on the front end

 1   our firm was out in front investigating; pleading those initial

 2   facts.  And obviously when we filed as the first case, we

 3   intended to run that case together, myself and Mr. Gibbs.  And

 4   then as cases were filed we -- we were trying to self order as

 5   they were filed.  And obviously the more cases that got filed,

 6   the more difficult it became; and that brings us to Your Honor

 7   today.

 8        I would say I'm delighted that there are so many qualified

 9   counsel that have subsequently filed cases because it gives

10   me -- I know that regardless of what the Court does in terms of

11   its appointment under 23(g), that the case will be

12   appropriately litigated, which is, after all, what we are

13   after.

14        I do think -- just a couple of other specific points based

15   on the Court's initial comments.  We agree the front-loading of

16   these critical issues is very important on the arbitration

17   issue.  Again, from a 23(g) perspective, my particular

18   skill-set, I have litigated this issue against H&R Block --

19   another insurance preparer in a very similar setting, a

20   different product -- but a wraparound clause in what is known

21   as the *Express IRA* case -- and obviously know that -- if it is

22   raised -- will be an important issue that the Court takes up

23   from.

24        We also -- I have also handled a large number of cases.

25   It is in our papers.  What is not in the papers is I just

1    recently finished leading the settlement team in the *Equifax*

2    *Data Breach Litigation* in front of Judge Thrash.  I'm over that

3    hurdle.  But I think that's a good example of a case where

4    there are literally millions of clients as there are here.

5          How we approached that case, front-loaded issues and were

6    able to achieve, in the words of Judge Phillmonts (phonetic), a

7    historic settlement in that setting in a relatively short

8    period of time I think is the -- is what you will get if you

9    appoint me as lead or co-lead.

10         And as I said, Your Honor, I am delighted there are so

11   many quality lawyers here including -- I think I have worked

12   with all of them, so would be happy to work in any organization

13   the Court thinks is appropriate for this case.

14         Unless the Court has other questions, I will leave it

15   there.

16              **THE COURT:**  Thank you very much.

17         **MR. SIEGEL:**  Thank you, Your Honor.

18              **THE COURT:**  Thank you.

19         **MR. GIRARD:**  Good morning, Your Honor.  I'm Daniel

20   Girard, and I filed the Dohrmann case which was filed on a

21   Monday.  The first case was filed on a Saturday, so they are

22   very close in time.

23         This is a case where the Plaintiffs' Bar can make a real

24   difference whatever the merits of the initial idea of having

25   these free filing services offered to lower-income Americans by

```
1    private companies that compete in that very market.  The
2    results of this program -- as Your Honor eloquently
3    summarized -- speak for themselves.  There are fewer people
4    filing using the free file program now than when the program
5    was initiated.
6         We can't replace the IRS.  We can't rewrite the agreement.
7    While I agree with your summary as to Rule 19, depending on how
8    the injunctive relief is framed in this case, I think it is
9    conceivable that it could intrude on the prerogatives of the
10   parties under their agreements.  So it is very helpful to have
11   that issue raised for the benefit of counsel.
12        I think whoever pleads this complaint will obviously have
13   a job to do that I think -- I agree it can be pled in such a
14   way as to not make the Government a required party under Rule
15   19.
16        The use of the term "free" in the context of bait and
17   switch marketing has been recognized as potentially
18   deceptive -- as Mr. Gibbs pointed out -- by the FTC, by the
19   Ninth Circuit in numerous instances.  Your Honor, will be
20   evaluating the conduct at issue here under an abundant body of
21   case law.
22        And while we can't replace the role of the IRS, what we
23   can do is ensure that the lower-income consumers who are
24   attempting to navigate this marketplace can do it free of
25   deceptive practices.
```

1          Like my colleagues, when we undertook this case, we

2     researched the law and interviewed numerous class members who

3     had been -- experienced this practice.  In addition, my firm

4     has retained a software engineer who specializes in what is

5     called source code review.  The importance of that here is that

6     the source code will determine -- and you can analogize it to

7     the footprints in the snow.  The source code will show whether

8     it is true that the Defendant here, in fact, deliberately

9     diverted consumers away from its actual free filing portal,

10    which is obviously central to the claims the Plaintiffs are

11    alleging.

12         We have also interviewed the individual Justin Elliot at

13    ProPublica, who broke this story and did the initial

14    groundwork, and have developed a relationship with him in the

15    course of our work.

16         We have closely analyzed this arbitration clause.  I have

17    dealt with consumer arbitration clauses ever since this became

18    a thing and have successfully opposed those clauses numerous

19    times.  One that I cited in my application was the *PayPal*

20    litigation before Judge Fogel.  A couple weeks ago, as we were

21    submitting this application, we successfully opposed an

22    arbitration clause in front of Judge Gilliam just on an

23    evidentiary basis on the weakness of the showing by the moving

24    party in that case.

25         I noted -- Your Honor pointed out the carve out for

1    injunctive relief in this arbitration clause.  It is a little

2    broader in the sense it also carves out equitable relief as

3    well which caught my eye.  Obviously this is going to be a

4    battleground and whether or not Intuit chooses to assert it if

5    they do and if they do it successfully.

6        I have also successfully represented consumers in mass

7    arbitration cases where we have effectively used technology to

8    level the playing field and have devised ways for consumers to

9    prepare their own claims with the support of counsel using

10   technology.

11       Here, there is a single choice of law clause which is

12   California law which greatly simplifies the process.  The cost

13   of Intuit of compelling these claims to arbitration is that the

14   cost for any single arbitration would exceed the value of the

15   claim.  So there is an illogic to it if they elect to go that

16   way.  In any event, we will not accept arbitration as giving

17   Intuit any kind of a silver bullet in this case.

18       As far as my own experience and background, this case

19   particularly aligned with my own work experience.  For the last

20   30 years I have focused on consumer financial services cases in

21   the class action context.  I have litigated cutting edge cases

22   under a number of federal statutes like Truth In Lending, The

23   Electronic Funds Transfer Act, The Credit Repair Organizations

24   Act and so forth.

25       I have listed a number of the cases that I have handled

successfully.  I will only speak of two very briefly because of
their relevance.  One was an injunctive relief case against the
Territory of Guam which involved Guam's practice of withholding
income tax refund as a way to balance their budget.  We brought
that case.  It was assigned to Judge Consuelo Marshall who was
sitting by designation in the Territory of Guam.  I took the
depositions in that case.  We won that case on a motion for a
preliminary injunction and class certification.  The Court
entered an order that reformed the practice that had been under
way for 20 years in Guam.

The relevance here -- besides the fact that it also
involved income tax -- is that I have a unique sensitivity to
the role of income tax refunds and how the interest of
lower-income consumers -- obviously the income tax refund is, I
think for a lot of people at the lower end of the spectrum, the
largest amount of money they see in a given year.  And the way
this scheme operated is that at the point where the consumer is
confronted with the fact that they have to pay, that is the
point where they have seen the refund that they are entitled to
get.  So it is very easy for them to say in order to get my
$1,200 -- or whatever the refund is -- I'm just going to have
to pay this $120 fee.  It is a particularly pernicious way of
taking advantage of consumers through the -- sometimes an IP
context called initial interest confusion that this created.

The other case that I handled -- actually as co-lead with

Mr. Siegel-- in the Western District of Missouri, which was this *Express IRA* case also against H&R Block, which we are again representing consumers at the same end of the spectrum and familiar with the context in which those claims arose.

I would be happy to provide references to courts in front of --

**THE COURT:** What I do -- so it is not a mystery -- while I know some of you. I don't know all of you. What I do in the process of deciding counsel, I frequently phone judges throughout the United States and ask them what they think and not for attribution. Now, one might wonder is that an appropriate process? I don't know. It's my process.

You people put in references all the time. I mean, I would imagine it would be -- it is not a good idea not to check a reference. It is a good idea to check a reference because of people -- people leave their footprints through their cases, and I think judges sort of forget when they go on the bench that there is this thing that they actually used when they were in private practice called the telephone; and that it is very, very helpful to have a candid discussion with a colleague about -- about -- when the Court is thinking about exercising its discretion.

The decision as to counsel is very important. You know, I have been there. Done that. I have never been class counsel, but I have certainly selected any number of people in 21 years,

1    and it's -- it does have a real impact on the progress of the

2    litigation, the result of the litigation, the energy that can

3    be devoted to the litigation, all of that is important.  And I

4    would say to Plaintiffs' Counsel, we are on a fast track here.

5    You know, this isn't one of those cases where you say, Oh,

6    well, now I'm appointed Counsel so I will get to it in due

7    course with all my other things.

8        I need a commitment from everybody that this will be

9    basically for the next several months one, if not the most

10   important, piece of litigation that they have.  I want that

11   commitment.  Because if you are too busy -- and good lawyers

12   are frequently too busy -- then don't ask to do it because it's

13   not -- the plum isn't in the assignment.  The plum is in the

14   result.  And so if you can -- if anybody doesn't want to do it,

15   can devote the next couple of months to doing this, that's

16   fine.  Your clients will be well represented.  I can guarantee

17   that.

18           **MR. GIRARD:**  Thank you, Your Honor.

19           **THE COURT:**  Okay, Mr. Girard, I'm not singling you

20   out.  I wanted to just make that clear.

21           **MR. GIRARD:**  I'm going to wrap up.  Two judges I would

22   refer the Court to, one is Judge Royal Ferguson.

23           **THE COURT:**  I know Judge Ferguson.

24           **MR. GIRARD:**  On the Northern District of Texas bench.

25           **THE COURT:**  He was also on the MDL panel.

1          **MR. GIRARD:**  He was, Your Honor.  He has his law

2     school project in North Dallas right now, but I think he would

3     speak to the dedication I bring to the work as well as would

4     Judge William H. Pauley from the Southern District of New York.

5          A couple more comments.  In terms of knowledge of

6     procedure and federal practice, I identified the service on

7     rules committees that I have performed both in the past and

8     currently.  That is in my resume.  I won't repeat that, but

9     just to say that I think I'm extremely familiar with the

10    Federal Rules of Civil Procedure and the procedural standards

11    of practice in this district.

12         Finally, in regards to the commitment of time and

13    resources, like Mr. Siegel, I'm at a point where I have worked

14    through some important business and have the ability to pull

15    this case to the front burner and make it a priority.  I have a

16    track record that is demonstrated of advancing the resources

17    needed in cases even when those have taken a number of years.

18         My firm and I do not use litigation funding.  We do not

19    use contract attorneys.  We would not intend to do that unless

20    the Court had specifically authorized it and there was a reason

21    for it.

22         In regards to keeping time summaries, we have developed a

23    protocol that has now been adopted by both Judge Davila and

24    Magistrate Judge Cousins which provides for the filing of

25    quarterly time summaries on the docket literally.  And that

keeps everybody current, and it allows everyone to know where the case stands in terms of the commitments of counsel; and we think it is frankly good for all parties and the court as well to have that transparency.

The associate who would be supporting me on this case is here today, Angelica Ornelas, who clerked for Magistrate Judge Westmore in this district for two years; is a graduate of UC Berkeley and an up and coming lawyer. We are ready to go. We have the expertise. I have worked with literally every lawyer in this courtroom successfully in the past and prepared to pull this to the front burner and would love to have this opportunity, Your Honor.

**THE COURT:** Thank you, Mr. Girard. Anyone else? Pritzker, yes.

**MS. PRITZKER:** Good morning, Elizabeth Pritzker of Pritzker Levine. I thank the Court for this opportunity to address all of the issues that were raised at the outset of the hearing including the important issues that are at stake for the lowest income taxpayers in our country and who would represent them in this proceeding.

I'm really pleased that Mr. Gibbs started his presentation talking about the clients, the customers. Our client in this case is Maria Leon. She is the quintessential starving artist. She is a low-income artist, filmmaker. Lives in Oakland. Works in Oakland. Makes well under the $33,000 qualifying

1   limit for free filing and attempted to file her taxes for free

2   using Intuit's software program and was directed to a site

3   which caused her to, in fact, pay a fee for what should have

4   been a free tax filing.  She was taxed for her decision to try

5   and actually comply with the law to file her taxes through the

6   free filing system.

7        A lot of folks who preceded me talked about the merits of

8   the case.  Your Honor certainly has a good handle on the facts

9   as we have alleged them in the case.

10       I want to have a leadership role in this case in part

11  because -- because of the clients.  I mean, I have -- like the

12  others -- devoted 30 years of practice prosecuting class action

13  cases largely on behalf of consumers, whether that is in the

14  antitrust context where folks are being overcharged for

15  everyday items like, you know, tuna in a can or in product

16  defect cases or in other deception cases including those

17  involving tech, a lot of those cases -- not all of them but

18  many of them are summarized in my application, and you are

19  welcome to check any of the judges that I have listed there

20  that have overseen those cases -- some of which I have led as

21  sole class counsel, some of which I have been co-lead class

22  counsel, and some of which I have performed significant roles

23  as a member of the PSC, not just in a sort of titular function,

24  but really digging in, pleading the case, working the motions

25  including just recently two evidentiary hearings and class

 1   certification motions in some pretty complex cases.  One is the

 2   *Epipen* litigation that is pending in front of Judge Crabtree in

 3   the District of Kansas.  The other is the *Seafood Antitrust*

 4   case that is pending before Judge Sammartino in the Southern

 5   District of California.

 6        With that experience comes knowledge.  I have successfully

 7   litigated consumer class actions.  Many of those cases have

 8   involved warranty terms, terms of use, novel league of

 9   defenses, arbitration clauses and parallel government actions

10   or potential parallel government actions.  Many of those

11   examples are also in my application.

12        As the Court has noted -- and as everyone has talked

13   about -- this case may present an arbitration issue.  Like

14   Mr. Girard, when I looked at the arbitration clause, it is

15   broader than just excluding injunctive relief.  The exclusion

16   appears to also include equitable remedies.  Many of the claims

17   that are pled in the existing complaints -- and that I assume

18   would be pled in a follow-on compliant -- are for equitable

19   remedies.  There are 17 to 100 claims which provide for

20   restitution for deceived class members as an equitable remedy.

21   The same with the false advertising law, equitable remedy, and

22   so on.

23        So I think that will we -- whoever is charged with

24   pleading this case could plead it in a way that would not

25   invoke the arbitration clause that Intuit has put into its

 1    terms of use.  That will have to be litigated obviously.  We

 2    can litigate that quickly and at the beginning, but I think

 3    there are very strong arguments to support denying a motion to

 4    compel here should Intuit elect that course.

 5        I'm committed to moving fast and certainly my firm and I

 6    have the resources to do so.  I did want to note I think what

 7    may set me apart from the other applicants is that my firm does

 8    try cases.  We have tried two cases in the last two years

 9    including a class action case, the *NCAA Grant-In-Aid* case in

10    front of Judge Wilken.  We were on the trial team there.  One

11    of our clients, in fact, testified at trial.  If the case goes

12    to trial or if it is ready for trial, we would be ready to try

13    it.

14        Fourth, I wanted to emphasize my commitment to diversity

15    and to mentorship and to the profession of the law.  Pritzker

16    is a women-owned, majority owned law firm.  We are located in

17    Oakland.  We are efficient.  We are organized.  We are

18    extremely talented.  We are also deeply committed to developing

19    leadership talent going forward especially for women attorneys,

20    younger attorneys, and attorneys of diverse backgrounds.  To

21    that end, in cases where I have been -- had a lead role, I made

22    it a point -- consistent with the practices of many of the

23    judges of this district -- to give younger attorneys an

24    opportunity to present oral arguments in front of the Court,

25    particularly those attorneys who worked hard at putting in the

1    hours at the motions at issue.  If appointed to a leadership

2    position here, I would certainly continue that practice in this

3    case.

4        I think that the structure of leadership that is being

5    proposed here -- at least by most of my colleagues -- was a

6    single lead firm responsible for running the case and assigning

7    work to participating firms, and we do have a great wealth of

8    talent to do that.

9        That type of structure has the facial appeal often in

10   terms of efficiency, but it does run the risk of a monolithic

11   or insulary decision making process.  I think we are all aware

12   right now of the danger of a single-minded unchecked executive.

13   And so in considering a leadership strategy --

14            **THE COURT:**  That could be me.

15        **MS. PRITZKER:**  No, it's not you.

16            **THE COURT:**  I'm executive.

17        **MS. PRITZKER:**  District courts are checked by the

18   Courts of Appeal.  But rather than have sort of an apex

19   decision making system, one would --

20            **THE COURT:**  I understand that.

21        **MS. PRITZKER:**  -- might provide for checks but also

22   provide for --

23            **THE COURT:**  Look, we had Volkswagen.  You had a single

24   lawyer, Elizabeth Cabraser who handled one of the largest class

25   actions in the United States, and it was settled basically in

 1  four months.  So, I mean, I am also a believer in making sure

 2  that one person is responsible so I can yell at that person.

 3  You know, on the other hand, we had 21 members of a Plaintiffs'

 4  steering committee.  And on the other hand, over 200 counsel

 5  were paid who benefited the class work.

 6      So it's not my idea here at all to try to give the work to

 7  one person or one firm.  It is my idea that one person, one

 8  firm is accountable to the Court for the manner in which the

 9  litigation is conducted; but I love to give lawyers, you know,

10  sort of -- it is your case.  You know the case.  You know the

11  practice, and you know the clients and all of that.  It is a

12  complicated mix of things that no one judge can figure out or

13  figure out correctly.

14      So the way I look at the organization, as I have just

15  described it, I want everybody to understand it -- but I think

16  by observation people have, and I understand what you have

17  said.

18      **MS. PRITZKER:**  I think it's -- I understand it, and I

19  have been that person advocating to be that sole lead because

20  it does provide the efficiencies and the point of contact that

21  the Judge makes.

22      Here we have a potential nationwide class of low-income,

23  poor, taxpayers, some of -- as you said, some of the neediest

24  people.  And I just want to make sure -- I would really -- from

25  my perspective, I want this litigation to make sure that it

incorporates the ideas and the talents of all participating
counsel in a way that really benefits the class.

**THE COURT:**  All right.

**MS. PRITZKER:**  If appointed, I would be humbled and
honored to serve the Court.  Thank you very much.

**THE COURT:**  Thank you very much.  Anything further?

**MR. SEEGER:**  I will be brief.  I just want to -- the
details of my experience are in the application --

**THE CLERK:**  Name?

**MR. SEEGER:**  Chris Seeger, I apologize.  I want to
just emphasize that I do have extensive experience both on
trying cases and on settling.  I say that because I have had
experience before Your Honor in the *Volkswagen* case -- where
Elizabeth Cabraser served as lead -- she created subcommittees
and asked me to serve both on the settlement committee and on
the trial committee.

I mention that because I think my experience puts me in a
position to shape the case, day one, like it is heading for
trial but to be ready to settle it.  Both be in the War
Department and the State Department if necessary.

In the *Chinese Drywall* litigation, I tried four cases in
front of Judge Fallon which led to a billion dollar drywall
settlement.

In *Vioxx* I tried cases which led to a $4.85 billion
settlement that I was the lead negotiator on.  I do have

1  extensive experience with government entities thanks to Your

2  Honor appointing me to the steering committee in *Volkswagen* but

3  also in the *Opioid* litigation, where I just recently argued the

4  class cert motion for the negotiating class performing there.

5      I mention that simply to get to the point that there is no

6  one size fits all approach in any of these cases.  I don't know

7  what fits here yet.  We will be looking if appointed in any

8  capacity Your Honor sees fit to begin to shape the endgame from

9  the beginning whether it is trial or settlement.

10          **THE COURT:**  Thank you, Mr. Seeger.

11          **MR. SEEGER:**  Thank you, Your Honor.

12          **THE COURT:**  Yes, sir.

13          **MR. KAZEROUNIAN:**  Good morning, Your Honor, Abbas

14  Kazerounian, and I represent Lakesia Cook in that particular

15  action.

16      For the sake of brevity, I'm not going to go over my

17  application with you.  I just want to make a couple points if I

18  may.

19      First, I would like to thank the Court for recognizing how

20  important this case is.  Like some of my colleagues have

21  mentioned, I have talked to a lot of clients who have called my

22  office and shared a lot of their hardships and frustrations

23  with the process.  So I think it is a very, very important

24  case.

25      I think it would go amiss if I didn't concede that from

1    all the very talented lawyers here, I was probably the least

2    experienced for the simple reason -- I think it is a factor of

3    age and the number of years I have been practicing.  I just

4    wanted to --

5              THE COURT:  You are saying you are youthful.

6              MR. KAZEROUNIAN:  Yes, Your Honor, exactly right.

7              THE COURT:  That's good.  It is important to have

8    youth.

9              MR. KAZEROUNIAN:  For exactly that reason, I think I

10   do have some merit for consideration for the application of the

11   interim lead counsel for the simple reason that I am youthful.

12   I have a lot of energy, and I would commit to you that this

13   case would be the epicenter of my office.

14        Now, just because I am youthful, I want to express to the

15   Court that I do have substantial experience especially in these

16   types of unfair competition cases, bait and switch, et cetera,

17   et cetera.  That's a lot of case load that my office actually

18   does.  And as a lot of the counsel already pointed out,

19   arbitration I think is going to be a very, very big issue in

20   this case.

21        And my office -- and specifically myself -- have had a lot

22   of experience in the arbitration arena.  And I have, in fact,

23   argued in the Ninth Circuit in what I would deem a landmark

24   case, in a case called *Knutson versus Sirius Radio* where I

25   prevailed three-zero and invalidated that arbitration

1  agreement, and I have two more going in the Ninth Circuit.  One

2  to be argued this year.

3       **THE COURT:**  You are suggesting that if you are

4  selected, that you will be able to get the same panel of judges

5  out of the Ninth Circuit.

6       **MR. KAZEROUNIAN:**  That would be impossible because

7  unfortunately Judge Pregerson, who was one of the judges, is no

8  longer with us.

9       **THE COURT:**  Yeah.

10       **MR. KAZEROUNIAN:**  But, yes, I have a lot of

11  experience.  Like Mr. Girard, I have also done what he

12  suggested which is where arbitration has been compelled, I have

13  done mass arbitrations with great results.  I have also got a

14  great relationship with Mr. Cole.  I have worked with him in

15  the past successfully.

16       And just in conclusion, Your Honor, it would be an

17  absolute honor and privilege to be able to represent the people

18  in such an important case.  Thank you.

19       **THE COURT:**  Thank you very much.  Yes.  Good morning.

20       **MS. PAQUETTE:**  Jenny Paquette from Kessler Topaz

21  Meltzer and Check.  As you know, my firm did not seek

22  appointment as lead counsel in this case under Rule 23(g).

23  However, I'm here because Kessler Topaz supports the

24  appointment of Mr. Girard and Mr. Gibbs as interim counsel or

25  co-lead counsel for the class.  And to the extent that,

1  Your Honor, sees fit to appoint a steering committee, Kessler

2  Topaz does respectfully request to be appointed to that

3  committee.  Thank you.

4       **THE COURT:**  Thank you very much.  So, Mr. Cole, now,

5  let me just make something clear.  I do not expect you nor do

6  you -- are you required to respond to any of the statements

7  that are made by counsel.  I have tried to emphasize -- and I

8  will say it again before you speak -- these are allegations.

9       You know, attorneys file complaints all the time.  The

10  complaint by definition is an allegation or series of

11  allegations and whether the allegations have merit or not is to

12  be determined.  And so you have yet to be placed in a position

13  where you have to respond to these allegations.  I don't want

14  to put you in that position today; but on the other hand, I

15  don't want to deny you the opportunity if you want to say

16  something.

17       **MR. COLE:**  Thank you, Your Honor.  Just two points.

18  One, it is very different to read allegations from all of the

19  fine counsel that sit at this table and to hear Your Honor

20  recite those allegations as a highly respected Article III

21  Judge in this court.  And I appreciate you emphasizing that

22  they are allegations because that's what they are at this point

23  in time.

24       They are allegations.  They are allegations, as Mr. Girard

25  noted, that are largely based on a ProPublica report.

1    ProPublica has its own agenda vis-a-vis the IRS, Intuit, H&R

2    Block, and all of the other members of the Free File Alliance.

3    And that will all come to light in due course and before

4    Your Honor.  And Intuit does look forward to its day where we

5    are talking not about allegations but facts.

6        The second point I wanted to make, Your Honor, is I don't

7    think we should presuppose the Rule 19 issue.  I think it

8    largely depends on what is in the operative complaint.  For

9    example, many of the allegations in the complaints --

10   Your Honor's summary of those allegations focus on advertising.

11   It is clear between the IRS and the eight members of the Free

12   File Alliance that the IRS is the entity responsible for

13   advertising this program, not private industry.

14       And so depending on what is alleged, for example, if the

15   inequitable or injunctive relief is that Intuit spend money

16   advertising or initiate some type of advertising campaign, if

17   that's what is sought, I think the IRS's interest will

18   absolutely be implicated and Intuit's obligations under the

19   memorandum of understanding come into potential conflict

20   between an order of this Court and its obligations to the

21   United States Government.  Those are my two comments

22   Your Honor.

23       **THE COURT:**  Thank you very much.  Any other Defense

24   Counsel wish to be heard?  No.  Okay.

25       Here is what I'm going to do.  Number one, I'm going to

1  decide the issue of counsel next week and probably Monday or

2  Tuesday, and I will send out an order.  Is that number one or

3  number two?

4       Number two, I'm going to require the filing of a

5  consolidated complaint probably within two weeks of appointment

6  of counsel.

7       Number three, I am going to set a status conference in

8  this case -- a further status conference on October 4th, which

9  is a Friday.  I want the Defense to indicate to the Court in

10  their status conference statements as to their position on

11  arbitration as a result of the consolidated complaints.  I just

12  think I have to do that right away if it is binding or if it

13  is -- if it is an issue, I want to decide it early.  Because it

14  ought to be decided early, and I think everybody is going to --

15  would recognize that.  But it depends on the complaint, and we

16  can't -- one shouldn't force the Defense to respond to 25

17  complaints.  So -- I mean, it makes no sense.  It should be one

18  consolidated complaint.  It should be carefully thought out.  I

19  think the issues are there, and it will be addressed hopefully

20  in it.

21       I don't know that by October 4th -- I'm not going to

22  require any motions to be filed by October 4th.  A party is

23  free to file a motion, but I think that the -- I think it is

24  important to try to set up the structure of how you proceed

25  post October 4th.  And in that regard, I anticipate shortened

1   time for motions and immediate hearings.  So we are -- I'm

2   looking forward to October to try to move ahead and resolve

3   some of these issues.

4       Now, as to the IRS, I simply would note that the United

5   States Attorney's Office is here but their clients, who I think

6   the Commissioner of Internal Revenue Service, Mr. Rettig -- is

7   that his name, Rettig -- anybody know the name of the

8   Commissioner of Internal Revenue -- I think his name is Rettig.

9   I think his Chief Counsel is Mr. Desmond, and I note that on

10  October 3rd and 4th, they are scheduled to be in San Francisco

11  at the ABA Tax meeting.  And I would ask that -- that

12  Ms. Winslow extend to them an invitation if they wish to

13  observe the proceedings -- because, again, I come back to the

14  point which was certainly underscored by the Defense -- that

15  the Internal Revenue Service has a great interest in this

16  litigation.  And so they are invited to attend in any -- in any

17  form that they wish to, the Commissioner as well as the General

18  Counsel and anybody else that is designated to appear or to

19  witness on their behalf and obviously the public is invited to

20  attend.

21      So with that, we are going to recess.  I will send out an

22  order on Monday or Tuesday and we will proceed with that.

23  Thank you very much.

24                (Proceedings adjourned at 9:41 a.m.)

25                        ---oOo---

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Friday, August 16, 2019

_Marla Knox_
_____

Marla F. Knox, RPR, CRR
U.S. Court Reporter