Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
aornelas@girardsharp.com
sgrille@girardsharp.com

Norman E. Siegel (*pro hac vice*)
Austin Moore (*pro hac vice*)
Jillian Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
siegel@stuevesiegel.com
moore@stuevesiegel.com
dent@stuevesiegel.com

*Co-Lead Interim Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| IN RE INTUIT FREE FILE LITIGATION | Case No. 3:19-cv-02546-CRB |
|---|---|
| This Document Relates to:  All Actions | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1.      Plaintiffs are United States taxpayers who paid Intuit Inc. for online tax services that Intuit agreed to provide for free.  Intuit offers online tax preparation software under the TurboTax tradename. Pursuant to an agreement with the Internal Revenue Service (IRS), Intuit and 11 other tax preparation providers are required to provide free online tax return preparation and filing services to a substantial majority of U.S. tax filers, including lower income Americans and active duty military servicemembers (the "Free File Program").  In exchange for Intuit's participation, the IRS agreed not to build and publish its own online, free e-filing system—a service that would have competed directly with Intuit.  The agreed goal of the Program is for 70% of U.S. taxpayers to e-file their taxes for free.  But as a result of Intuit's nationwide scheme to divert eligible filers to its paid products, less than 3% of eligible taxpayers filed for free under the Free File Program in the 2018 tax year.

2.      Intuit uses a variety of means to steer taxpayers away from its free e-filing offering under the Program.  Intuit named the filing software it provides under the Free File Program "TurboTax **Freedom** Edition" while simultaneously promoting a competing product that it named "TurboTax **Free** Edition."  The criteria to file for free using Intuit's Free Edition are not the same as the criteria to file for free using Freedom Edition, however.  Free Edition is only free for the simplest returns.  Most taxpayers who seek to file for free using Free Edition must pay tax preparation charges starting at $59.99 or more to complete their returns.

3.      If a taxpayer begins the tax filing process using TurboTax's Free Edition, Intuit does not inform the taxpayer that they must pay a fee to file until after the taxpayer has devoted considerable time to inputting information into the Free Edition software.  In other words, Intuit implements a "free-to-fee" scheme to bait customers with the offer of free tax filing services but then charge them a fee to complete their return and file.  Even if the taxpayer is eligible to file for free under the Free File Program, Intuit does not inform the taxpayer of the free file option or provide a path to Freedom Edition from Free Edition.  Furthermore, Intuit's website, where it advertises Free Edition, contains no link to Freedom Edition.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

1
2
3
4
5
6
7
8
9
10
11
12

4.     Intuit uses pervasive nationwide advertising and email campaigns and sophisticated search technology to suppress free filing by directing taxpayers, including those eligible to participate in the Free File Program, to its paid products.  For example, Intuit made the Freedom Edition (i.e., its truly free software) virtually invisible to eligible filers under the Free File Program by removing any links to the Freedom Edition from its primary website and even altering the Freedom Edition's website source code to prevent it from appearing in search engines like Google.  By contrast, Intuit uses different source code to ensure that its paid products, including Free Edition, appear in response to Google search requests.  Intuit also pays Google through Google's advertising platform to ensure that Intuit's paid products appear at the top of internet search results.  Thus, taxpayers who search for terms like "TurboTax Free" or "turbo tax free file" or "irs free file taxes" are steered to Intuit's commercial products including Free Edition without being given an option to use the Freedom Edition.

13
14
15
16
17
18
19
20
21
22
23

5.     Intuit's practices victimize low-income American taxpayers and military servicepeople who are eligible to file their tax returns at no cost under the Free File Program. Intuit exploits its superior knowledge of tax laws and regulations, superior access to capital and technology, and the confusion, anxiety and frustration associated with payment of income taxes to generate billions in revenue from low-income taxpayers—often students, elderly people on fixed incomes, and public assistance recipients—and service members who qualify to electronically file their tax returns at no charge.  Intuit's conduct in devising and implementing a common plan or scheme to divert eligible online filers to its paid products, while actively working to conceal the availability of its free filing product, has allowed Intuit to extract, through the use of deceptive, unlawful and unfair acts, practices and conduct, funds which should rightfully have been retained by eligible taxpayers.

24
25
26

6.     Through this action, Plaintiffs seek equitable relief in the form of an order enjoining Intuit from engaging in the practices challenged herein and requiring restitution of all funds improperly obtained by Intuit from the taxpayers who make up the proposed class.

27

**PARTIES**

28

7.     Plaintiff Andrew Dohrmann is a resident and citizen of California.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

8.      Plaintiff Laura Nichols is a resident and citizen of Nebraska.

9.      Plaintiff Brianna Sinohui is a resident and citizen of California.

10.     Plaintiff Joseph Brougher is a resident and citizen of Pennsylvania.

11.     Plaintiff Monica Chandler is a citizen and resident of Florida.

12.     Defendant Intuit Inc. is a Delaware corporation with its principal place of business in Mountain View, California.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Intuit and class members are domiciled in different states.

14.     The Court has personal jurisdiction over Intuit because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the conduct at issue in this case occurred in this District.

## THE CLASS REPRESENTATIVES

### Andrew Dohrmann

16.     Plaintiff Andrew Dohrmann is a student and carpenter residing in Moraga, California. His adjusted gross income in 2018 was under $20,000.  In April 2019, he used TurboTax to prepare and file his tax returns for the 2018 tax year.

17.     Mr. Dohrmann searched the internet for free e-filing options and found TurboTax's Free Edition.  He began the tax-preparation process on Free Edition believing, as its name indicated, that Free Edition was free.

18.     After submitting his personal information required to file his taxes—including information sufficient to confirm to Intuit that Mr. Dohrmann qualified for the Free File

Program—Mr. Dohrmann received a notification from Intuit stating that he would need to pay a fee to complete and file his tax return.

19.     Intuit did not notify Mr. Dohrmann that its service was not free until the very end of the tax-filing process, after he had entered a significant amount of personal information.  Mr. Dohrmann paid the fee to complete his filing, to avoid losing the value of the time he had spent inputting his information.

20.     Mr. Dohrmann qualified to file his taxes for free using TurboTax Freedom Edition and the Free File Program.  Had Intuit made its free tax-filing service accessible to him, Mr. Dohrmann would have used it, rather than the paid version.  But for Intuit's concealment of Freedom Edition, Mr. Dohrmann would not have paid Intuit to file his taxes.

21.     Intuit's conduct, as further described in this complaint, caused Mr. Dohrmann to pay approximately $105 to Intuit on April 14, 2019 to file his 2018 federal and state tax returns.

**Laura Nichols**

22.     Plaintiff Laura Nichols is a current member of the Marine Corps Reserve residing in Nebraska.  Her adjusted gross income in 2018 was under $30,000.  In April 2019, she used TurboTax to prepare and file her taxes for the 2018 tax year.

23.     When Ms. Nichols filed her 2018 taxes, she was working for the military full time and living on a military base.  She searched the internet for free e-filing options and found TurboTax's Free Edition.  She began the tax-preparation process on Free Edition believing, as its name indicated, that Free Edition was free.

24.     Ms. Nichols spent several hours using TurboTax to prepare her tax returns.  As part of that process, she provided TurboTax with significant amounts of personal information, including information sufficient to notify Intuit that Ms. Nichols qualified for the Free File Program.  After submitting her personal information, Intuit informed Ms. Nichols that she would have to pay a fee to complete and file her tax return through TurboTax.

25.     Intuit did not notify Ms. Nichols that its service was not free until the very end of the tax filing process, after she had entered a significant amount of personal information.  Ms.

1  Nichols paid the fee to complete her filing, to avoid losing the value of the time she had spent
2  inputting her information.

3       26.     Ms. Nichols qualified to file her taxes for free using TurboTax Freedom Edition
4  and the Free File Program.  Had Intuit made its free tax-filing service accessible to her, Ms.
5  Nichols would have used it rather than the paid version.  But for Intuit's concealment of
6  Freedom Edition, Ms. Nichols would not have paid Intuit to file her taxes.

7       27.     Intuit's conduct, as further described in this complaint, caused Ms. Nichols to pay
8  approximately $30 to Intuit in April 2019 to file her 2018 federal and state tax returns.

9  **Brianna Sinohui**

10       28.     Plaintiff Brianna Sinohui is a resident of Redlands, California.  Her adjusted gross
11  income in 2018 was under $10,000.  In 2019, she used TurboTax to prepare and file her tax
12  returns for the 2018 tax year.

13       29.     Ms. Sinohui navigated to Intuit's TurboTax Free Edition website and began the
14  tax-preparation process, believing that Free Edition was, as its name indicated, free.

15       30.     After submitting her personal information—including information sufficient to
16  confirm to Intuit that Ms. Sinohui qualified for the Free File Program—Ms. Sinohui received a
17  notification from Intuit stating that she would need to pay a fee to complete and file her tax
18  return.

19       31.     Intuit did not notify Ms. Sinohui that its service was not free until the very end of
20  the tax-filing process, after she had entered a significant amount of personal information.  Ms.
21  Sinohui paid the fee to complete her filing, to avoid losing the value of the time she had spent
22  inputting her information.

23       32.     Ms. Sinohui qualified to file her taxes for free using TurboTax Freedom Edition.
24  Had Intuit made its free tax filing service accessible to her, Ms. Sinohui would have used it,
25  rather than the paid version.  But for Intuit's concealment of Freedom Edition, Ms. Sinohui
26  would not have paid Intuit to file her taxes.

27       33.     Intuit's conduct, as further described in this complaint, caused Ms. Sinohui pay
28  approximately $179 to Intuit to file her 2018 federal and state tax returns.

1

**Joseph Brougher**

2      34.      Plaintiff Joseph Brougher is a student with a part-time job who resides in West

3  Mifflin, Pennsylvania.  His adjusted gross income in 2018 was under $10,000.  In January 2019,

4  he used TurboTax to prepare and file his tax returns for the 2018 tax year.

5      35.      Mr. Brougher navigated to the TurboTax's Free Edition and began the tax-

6  preparation process based on the understanding that Free Edition was, as its name indicated,

7  free.

8      36.      After submitting his personal information—including information sufficient to

9  confirm to Intuit that Mr. Brougher qualified for the Free File Program—Mr. Brougher received

10  a notification from Intuit stating that he would need to pay a fee to complete and file his tax

11  return.

12      37.      Intuit did not notify Mr. Brougher that is service was not free until the very end of

13  the tax-filing process, after he had entered a significant amount of personal information. Mr.

14  Brougher paid the fee to complete his filing, to avoid losing the value of the time he had spent

15  inputting his information.

16      38.      Mr. Brougher qualified to file his taxes for free using TurboTax Freedom Edition.

17  Had Intuit made its free tax filing service accessible to him, Mr. Brougher would have used it,

18  rather than the paid version.  But for Intuit's concealment of Freedom Edition, Mr. Brougher

19  would not have paid Intuit to file his taxes.

20      39.      Intuit's conduct, as further described in this complaint, caused Mr. Brougher to

21  pay approximately $85.58 to Intuit to file his 2018 federal and state tax returns.

22

**Monica Chandler**

23      40.      Plaintiff Monica Chandler works in public services and resides in Lakeland,

24  Florida.  Her adjusted gross income in 2018 was under $25,000.  In March 2019, she used

25  TurboTax to prepare and file her tax returns for the 2018 tax year.

26      41.      Ms. Chandler used an accounting service to complete her taxes the previous year,

27  but decided to use the TurboTax Free Edition for the 2019 tax season so that she could file her

28

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

tax returns for free.  She navigated to the Free Edition and began the tax-preparation process believing that Free Edition was, as its name indicated, free.

42.     After submitting her personal information—including information sufficient to confirm to Intuit that Ms. Chandler qualified for the Free File Program—Ms. Chandler received a notification from Intuit stating that she would need to pay a fee to complete and file her tax return.

43.     Intuit did not notify Ms. Chandler that its service was not free until the very end of the tax filing process, after she had entered a significant amount of personal information. Ms. Chandler paid the fee to finish her filing, to avoid losing the value of the time she had spent inputting her information.

44.     Ms. Chandler qualified to file her taxes for free using TurboTax Freedom Edition. Had Intuit made its free tax filing service accessible to her, Ms. Chandler would have used it, rather than the paid version.  But for Intuit's concealment of Freedom Edition, Ms. Chandler would not have paid Intuit to file her taxes.

45.     Intuit's conduct, as further described in this complaint, caused Ms. Chandler to pay approximately $64.98 to Intuit to file her 2018 federal and state tax returns.

## COMMON FACTUAL ALLEGATIONS

### A.     The Free File Program

46.     Congress passed the Internal Revenue Service Restructuring and Reform Act of 1998 (the "Act") to restructure, modernize, and improve taxpayer protections and rights.  A central feature of the Act was its command to modernize computer systems and business processes to offer expanded electronic tax filing.  The Act set a goal of 80 percent of all tax returns being filed electronically by 2007.

47.     In November 2001, the Office of Management and Budget's Quicksilver Task Force established the EZ Tax Filing Initiative, which directed the IRS to "create a single point of access to free on-line preparation and electronic tax filing services provided by Industry Partners to reduce burden and costs to taxpayers."  *See* Presential Initiatives: *IRS Free File*, https://georgewbush-whitehouse.archives.gov/omb/egov/c-1-3-IRS.html.  Initially, the

7

administration proposed that the IRS develop its own digital filing form, which would be accessible through the whitehouse.gov website.  Ultimately, however, the IRS entered into an agreement with a consortium of private tax preparation companies, originally known as the Free File Alliance, LLC and now called Free File, Inc. (the "Alliance"), to facilitate the expansion of free electronic tax filing.

48.    In 2002, the IRS entered into an agreement with the Alliance called the Free File Agreement (the "Agreement").  Under the Agreement, members of the Alliance committed to provide free tax preparation and electronic filing services to at least 60% of United States taxpayers.

49.    Intuit—developer of the TurboTax tax preparation and filing software—is the market leader in consumer tax software and has largest market share of any member of the Alliance.  The other current members of the Alliance are H&R Block, 1040NOW Corp., Drake Enterprises, ezTaxReturn.com, FileYourTaxes, Free Tax Returns, Liberty Tax, OnLine Taxes, TaxACT, TaxHawk, and TaxSlayer.

50.    The IRS and the Alliance extended the Agreement in 2005 and expanded the Program to include "taxpayers with an AGI equal to or less than 70% of all US taxpayers or below for the prior year, including those least able to afford efiling tax returns, based upon verifiable characteristics in their tax return[.]"  The criteria for eligibility for free tax preparation and filing services have remained substantially the same since 2005.  The Agreement has been renewed several times and has been amended through a series of memoranda of understanding ("MOUs").  On October 31, 2018, the IRS and Alliance entered into an Eighth MOU renewing the Free File Program through October 31, 2021.

51.    Pursuant to the Agreement, each Alliance member serves a share of eligible taxpayers based on specific objective criteria, so that all qualifying taxpayers have access to at least one online platform that will allow them to file their returns at no cost.  Intuit is responsible for providing free e-filing to some of the lowest-earning, and most vulnerable, taxpayers: those who have AGI of $34,000 or less, are eligible for the Earned Income Tax Credit, or are active military members with AGI of $66,000 or less.  Under the Agreement,

these are the only requirements taxpayers must meet to file for free through TurboTax under the Free File Program.

52.     The Agreement's stated purpose is to "extend[] the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury."  The Agreement states that "to serve the greater good . . . the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own."

**B.     Intuit Entered Into the Free File Agreement to Avert the Competitive Threat Posed by the Federal Government**

53.     According to the Treasury Inspector General for Tax Administration, the Alliance's "primary goal is to keep the Federal Government from entering the tax preparation business."  *See Written Statement of Treasury Inspector General for Tax Administration J. Russell George Before the U.S. House of Representatives Committee on Ways and Means* (Apr. 6, 2006) (available at https://www.treasury.gov/tigta/congress/congress_04062006.htm) (last visited Sept. 13, 2019).

54.     The Agreement includes a noncompete provision that prohibits the IRS from creating its own free e-filing system.  In contrast, many countries offer their citizens the option to file free online tax returns directly with the government.

55.     Intuit and other Alliance members have spent millions lobbying to make the Free File Program permanent in order to preserve the benefits of this noncompete provision.

56.     In its SEC filings, Intuit has acknowledged the competitive threat of a government-run free e-filing system: "We also face potential competitive challenges from publicly funded government entities that offer electronic tax preparation and filing services at no cost to individual taxpayers."  Intuit's participation in the Alliance "has kept the federal government from being a direct competitor to Intuit's tax offerings."

57.     In its 2004 Annual Report, Intuit acknowledged: "were the federal government to terminate the Free File Alliance and elect to provide its own software and electronic filing services available to taxpayers at no charge it would negatively impact our revenue and

9

1   profits."

2       58.      Thus, by entering into the Agreement with the IRS, Intuit avoided competition

3   from government-provided free tax programs.  As a result, Intuit ensured that millions of

4   taxpayers would visit its websites in search of e-filing options, nearly all of which are fee-

5   based.  As of 2017, Intuit had a 65% market share in the do-it-yourself tax software category.

6       **C.      Intuit Steers Taxpayers Away from Free File to Its Commercial Sites**

7       59.      Although the stated purpose of the Agreement is to allow free tax filing for those

8   taxpayers who are least able to afford e-filing, Intuit devised a scheme to steer customers away

9   from participation in the Free File Program and drive revenue from Free File eligible taxpayers

10  to Intuit's fee-based software products.  For example, Intuit offers two similarly-named

11  products that perform the same core functions: (1) a free tax preparation software product it

12  named "TurboTax Freedom Edition"—which enables eligible users to complete and e-file their

13  tax returns for free pursuant to the Free File Program; and (2) a separate commercial tax

14  preparation software product it named "TurboTax Free Edition"—which is heavily marketed

15  and promoted as free, but actually charges customers to file all but the most basic of tax returns

16  including returns that are eligible for free filing under the Free File Program.

17      60.      Thus, while the trade names given by Intuit to its Free File and paid software

18  products are almost identical, the products are distinct in material, unfair and misleading ways.

19  Freedom Edition, the actually free software product Intuit offers pursuant to the Free File

20  Program, is intended for taxpayers with an adjusted gross income of $34,000 or less, those who

21  are eligible for the Earned Income Tax Credit, as well as those on active military duty with an

22  adjusted gross income of $66,000 or less.  These taxpayers are eligible under the Free File

23  Program to prepare and file a return for free using TurboTax Freedom Edition, a full-featured

24  tax filing software system that allows a taxpayer to prepare and file a federal tax return for free.

25  In addition to the Form 1040, Freedom Edition provides free access to over 100 other tax forms

26  as required under the Free File Program, including Schedules 1 through 6, 1099-MISC, and

27  1040 Schedules A-E, EIC, F, H, and J.  This means that, as required under the Free File

28

Program, even taxpayers with complex returns can use Freedom Edition to e-file for free if they are able to access it and meet the basic eligibility requirements described above.

61.     The Free Edition, by contrast, is only free for "simple tax returns that can be filed on Form 1040 without any attached schedules."  The addition of any forms, including in returns requiring itemized deductions, credits, or incomes reportable on Schedules 1 to 6, cannot be prepared for free using TurboTax Free Edition.  Consequently, taxpayers who meet any of the following criteria, among others, will be charged when using the Free Edition: they are self-employed, do not have health insurance, receive unemployment pay, live in one state but work in another, pay or receive alimony, have business income, expenses, or losses, have capital gains or losses, have income from rental real estate, receive royalties, have farm income or losses, claim a student loan deduction, claim a health savings account contribution deduction, claim deductible educator expenses, claim education credits, claim retirement savings contribution credits, or claim credit for child and dependent care expenses.  None of these criteria impact a taxpayer's eligibility to file for free under the Free File Program.

62.     Even where a taxpayer using the Free Edition has provided sufficient information to allow Intuit to determine that the taxpayer qualifies for free filing under the Free File Program, Intuit does not notify the taxpayer of their eligibility under the Program or direct the taxpayer to the Freedom Edition website where the filing would actually be free.  Thus, even though a taxpayer is eligible to file for free under the Free File Program and has been directed by Intuit to a purportedly "Free Edition" of its product, Intuit nonetheless charges that taxpayer a fee to complete the e-filing of his or her return.

63.     Instead of offering an eligible taxpayer the option to file for free under the Free File Program, when such a taxpayer seeks to file for free using the "Free Edition" but triggers one of the conditions set by Intuit precluding them from doing so, Intuit claims there is a need to "upgrade" to one of TurboTax's paid products (1) "Deluxe" ($59.99 and up); (2) "Premier" ($79.99 and up); or (3) "Self-Employed" ($119.99 and up).  Taxpayers typically spend considerable time inputting their personal and wage information using the Free Edition before Intuit informs them that an "upgrade" is necessary to file their returns.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

| Wages & Income | Deductions & Credits | Health Insurance | Other Tax Situations | Federal Review |



## To accurately report this income, you'll need to upgrade

| BENEFITS | Free Edition | Deluxe | Self-Employed |
|---|---|---|---|
| **Report W-2 income** | ○ | ● | ● |
| **Report multiple sources of income—** includes 1099-MISC, 1099-K, and more. | | ● | ● |
| **One-on-one help—**get customized answers to your product and support questions from a TurboTax specialist. | | 🎧 | 🎧 |
| **Maximize deductions—**claim **self-employed expenses** such as vehicle, phone, supplies, and more (Schedule C). | | | ● |
| | **Keep Free** $0 | **Upgrade** $59.99 State additional | **Upgrade** $119.99 State additional Pays for Itself |

19  64.     Thus, the Free Edition requires users to "upgrade" (i.e., pay a fee) even when

20  they otherwise qualify under the Free File Program and could submit the exact same forms

21  using the Freedom Edition at no cost.  For example, the above graphic lists 1099 tax forms as

22  requiring an upgrade to a paid product, even where the IRS website lists these *same forms* as

23  qualifying for free filing under the Free File Program and they could be filed for free through

24  Intuit's Freedom Edition website by taxpayers able to access it.

25  65.     Intuit further represents to taxpayers using the Free Edition that an upgrade is

26  required to "accurately" file their tax return:

27
28

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

1
2
3
4
5
6
7
8
9

To accurately complete your taxes,
you need to upgrade to **TurboTax Deluxe**

Why do I need to upgrade?

**You have Schedule 4, Other Taxes,** and that's just one of the
reasons the IRS requires you to file Form 1040.

TurboTax Free Edition does not cover this situation

10   66.    Intuit's statement in this regard is both contrary to Intuit's advertising and

11   literally false.  "[U]pgrading" has nothing to do with "accurately" filing—taxpayers can

12   accurately file the same tax return for free using other free alternatives—including using the

13   Freedom Edition created for the Free File Program.

14   67.    While duping taxpayers into paying for filings Intuit knew could be filed for free,

15   Intuit went to great lengths to conceal the existence of the Freedom Edition and direct

16   taxpayers towards its Free Edition.  As reported by ProPublica, a former Intuit employee

17   recalled a May 2017 marketing team meeting at Intuit's Headquarters at which a new

18   employee proposed that customers who go through TurboTax's filing process and input

19   information demonstrating their eligibility for free filing receive a "hard recommendation" and

20   be routed to the truly free product.  This suggestion was reportedly met with laughter, and then

21   other meeting attendees quickly changed the subject.  The same former employee explained

22   that Intuit has "ways of detecting if you're paying too much, but they just don't do it."

23   68.    In earnings calls, Intuit openly boasted of the success of its "free-to-fee" or "free-

24   to-pay" business model in steering customers to pay for e-filing unnecessarily.  For example:

25       a.    In a 2008 earnings call, then-CEO Brad Smith explained that Intuit has

26   "2.5 years of experience of learning what free is about and how best to monetize free."  He

27   added, "We feel good with the model.  We have a pretty good handle for how to get customers

28   who use free to come into the franchise and actually buy additional products and services . . . ."

1

2

3

4

   b.  In a 2015 earnings call, Brad Smith further explained, "I think our track record is we can bring people in on free.  We can monetize many of them in the same season. But we also tend to monetize more of them the following season and that just continues to be a formula that pays off."

5

6

7

8

9

10

11

12

  69.  Intuit's strategy to suppress free filing has been wildly successful.  In 2018, more than 100 million taxpayers were eligible to file for free under the Free File Program, but only about 2.5 million did so—far short of the Free File Program's intended goal of making free e-filing available to at least 70% of filers.  Moreover, while one might reasonably expect the number of e-filers using websites to increase in light of the significant increase in the number of filers, the growth of the internet and, more recently, changes to the tax code, the number has steadily declined from its peak in 2005, when over 5 million taxpayers filed through the Free File Program.

13

14

15

16

17

  70.  In November 2018, the IRS Advisory Council wrote that one explanation for the decline in participation involve "[Alliance] members directly marketing their non-Free File products to taxpayers who used their Free File product in prior years."  *See* Internal Revenue Service Advisory Council, *Public Report*, Publication 5316, November 2018, Catalog Number 17824A, *available at* https://www.irs.gov/pub/irs-pdf/p5316.pdf (last visited Sept. 13, 2019).

18

  71.  The participation rate in the Free File Program continues to decline steadily:

19

20

21

22

23

24

25

26



27

28

  72.  Intuit's efforts to maximize revenue from low-income taxpayers have been successful: In 2018, Intuit earned $2.5 billion in revenue derived from its TurboTax segment, a

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

1    $300 million increase from 2017 and a $500 million increase from 2016.  Representative

2    examples of Intuit's acts, practices and conduct directed at suppressing participation in the Free

3    File Program in favor of Intuit's paid products for the 2019 tax season are described below.

4    On information and belief, Plaintiffs allege that Intuit has engaged in a similar course of

5    conduct in the 2018, 2017 and 2016 tax seasons, and while the specific actions taken may have

6    differed, the object and effect of such actions was to suppress and deter taxpayer participation

7    in the Free File Program in favor of Intuit's paid tax preparation products.

8                              Internet Search Manipulation

9            73.     In furtherance of its common plan or scheme to conceal the ability of taxpayers

10   to file for free through the Free File Program, for the 2018 tax season Intuit instituted a plan to

11   prevent taxpayers from locating the free version of its Free File Program software—TurboTax

12   Freedom Edition—by adding code on its website directing Google and other search engines not

13   to list that free product in online search results.  The code Intuit added can be found in a file

14   called robots.txt or in an HTML tag, both of which only appear in a website's underlying code

15   if they have been affirmatively added:

16   

21           74.     This code is typically used on web pages that designers do not want to make

22   accessible to the public, like sites for internal use only; the code directs Google's search

23   algorithms to exclude the specified pages in search returns.  In 2018 and the first few months of

24   2019, Intuit used code to direct traffic away from the online portal to the no-cost TurboTax

25   Freedom Edition.  As a result, eligible taxpayers searching for "turbo tax free file" or "irs free

26   file taxes" (or any other combination of search terms that a taxpayer might use to find a free e-

27   filing service they were eligible to use) were unable to locate TurboTax Freedom Edition

28   through web searches.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

75.     By contrast, Intuit went to great lengths to ensure that its primary, commercial website, TurboTax.com, was at or near the top of relevant search engine results.  For example, Intuit did not include similar code concealing its primary website from search engines. As a result, taxpayers searching the internet for "free" tax preparation services were directed to Intuit's revenue-producing URL:



76.     Furthermore, for the 2018 tax year, Intuit purchased Google "AdWords"— advertisements that appear at the top of Google search results—to direct taxpayers to its commercial tax-filing options instead of its Freedom Edition website.

77.     Google allows advertisers to specify various search phrases that will trigger display of the advertisements paid content.  Intuit invested in Google AdWords to ensure that taxpayers searching terms like "turbo tax free" would see advertisements for Intuit's revenue-producing URL at the top of Google's search results.  Intuit consulted with marketing firms to choose the optimal terms and invested heavily in Google AdWords during tax filing season.

78.     During the 2018 tax season, a search for "TurboTax Free" in Google yielded as the top search result a link to TurboTax's "Free Edition." "Freedom Edition" does not appear on the search result list.  A search for "irs free file taxes" displayed Intuit's commercial filing options as the top search results.

79.     Once a taxpayer reaches TurboTax's primary website, the Freedom Edition is not listed as a product offering or even accessible via link from TurboTax's primary website.

80.     Further, even if taxpayers knew to type "TurboTax Freedom" in a Google search to locate the free filing product, the first link still would not provide access to the Freedom Edition website.  Instead, during the 2019 filing season, it directed consumers to a landing page that required users to click on the orange "See If You Qualify" link in order to access the

Freedom Edition website.  The landing page is designed so that users who do not read the smaller print will click the blue link that says "Start for Free," which directs the user to TurboTax's *paid* offerings.  This is known as a "dark pattern"—a user-interface design intended to coerce users into making decisions promoted by the website operator.



81.    Intuit's Freedom Edition website also contains dark patterns to surreptitiously steer taxpayers away from the Freedom Edition to one of Intuit's paid products.  For example, Intuit requires users to log into an "Intuit Account" on its website before beginning a tax return using either Freedom Edition or a commercial version.  Anyone who has used a TurboTax product in the past already will have an Intuit ID.  But a user who enters her preexisting Intuit ID into the Freedom Edition website is redirected back to the TurboTax "Free" (commercial) website.  To actually use Freedom Edition, a user must (1) sign out of their existing TurboTax

account; (2) go to the IRS Free File Program; (3) create a new account or sign back into their existing account; and (4) confirm the switch to TurboTax Free File Program when prompted.

82.    As a result of Intuit's actions, millions of taxpayers eligible under the Free File Program to file for free through the Freedom Edition were instead diverted to Intuit's Free Edition and paid to file their taxes.

<u>Deceptive Marketing</u>

83.    In furtherance of its common plan or scheme, Intuit implemented a pervasive, nationwide marketing and advertising campaign during the 2018 tax filing season promoting its offering of "free" tax filing services, even though the vast majority of users would actually be charged to file their returns.

84.    Intuit purchased online and televised advertising, promoting the slogan "Turbotax Free is free. Free, free free free[,]" to direct taxpayers to Intuit's commercial products, rather than Freedom Edition.  A one-minute advertisement, screenshots from which are displayed below, presents a dramatic courtroom scene in which the various lawyers, judge and jury say only the word "free" 85 times in a row.  The advertisement ends with a voiceover stating, "That's right, TurboTax Free is free. Free, free, free, free."[1]





---

[1] https://www.youtube.com/watch?v=5VV80ozpuMw (last visited Sept. 13, 2019).

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

85. A former Intuit employee reported that "[t]he entire strategy is make sure people read the word 'free' and click our site and never use" an actually free product. He added that the "vast majority of people who click" on the Free Edition "will not pay $0."

86. Intuit's advertising used the term "FREE guaranteed" and "$0 Fed $0 State and $0 To File" in the following manner:







CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

87.     As part of its marketing campaign, Intuit even created a crossword puzzle with 68 clues to which every answer was "free."  Intuit entitled the crossword "FREE by Free F. Free" and published it on *The New York Times* website and in *The New York Times Magazine.*



Further images of this crossword puzzle are available at:  http://s3.amazonaws.com/abn-prod/wp-content/uploads/sites/7/2019/01/NYT_Magazine_Free_Crossword.png.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

1

<u>Military Marketing</u>

2  88.    Other ads disseminated in connection with the same 2018 promotional campaign

3  were directed at active military servicemembers.  For example, the below advertisement states,

4  "If you're a service member in ranks E-1 to E-5 you can file both your federal and state taxes

5  for FREE with the TurboTax Online Free Edition":

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25  89.    Intuit also uses patriotic imagery to attract servicemembers to file taxes using its

26  commercial products and maintains a dedicated webpage for servicemembers, which only

27  references TurboTax's commercial filing options alongside purportedly "free" offerings:

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TurboTax / TurboTax Online Products / TurboTax Military

## TurboTax military discount

Enjoy TurboTax for free or at a reduced rate.



### E1 – E5

- Free federal and state filing with Free Edition or Deluxe
- $5 off discount or more for Premier, Self-Employed, and TurboTax Live federal products

### E6 and above

- $5 off discount or more on all TurboTax federal products

Simply use your military W-2 to verify rank and your discount will be applied when you file.

Valid for TurboTax Online only. Special discount offers may not be valid for mobile in-app purchases. Discounts are not reflected in price below.

## TurboTax Offers Free Filing for Military E1- E5

TURBOTAX NEWS

January 23, 2019 / TurboTaxBlogTeam English / NEW Español



Continuing this tax season, TurboTax will still be offering the expansive military discount to all US active duty military and reservists.

For service members in ranks E-1 to E-5, you can file both your federal and state taxes for **FREE** with the TurboTax Online Free Edition or Online Deluxe offerings. For guidance around investments, rental properties or self-employment income and deductions, TurboTax is also offering a $5 off discount for online TurboTax Premier, TurboTax Self-Employed federal products, and our TurboTax Live product, where you can connect live via one-way video to a CPA or Enrolled Agent to get answers to your tax questions from the comfort of your couch. The TurboTax Live tax expert can even review, sign, and file your tax return.

Senior enlisted personnel ranks E-6 and above also are included in the discount and will receive $5 off or more on all 2018 TurboTax online federal products.

90.     Despite the fact that servicemembers ranking E-1 to E-5 typically make less than $39,000 a year from their military service—and are therefore eligible for free filing under the Free File Program (which permits free filing for servicemembers with AGI up to $66,000)—Intuit's military-centric advertisements direct taxpayers to TurboTax's paid offerings rather than its Freedom Edition website.

<u>E-Mail Marketing</u>

91.     Through 2018, Intuit also targeted taxpayers through direct email campaigns.  As each tax season approaches, taxpayers who have previously used TurboTax to file their returns receive emails reminding them of upcoming filing deadlines.  These emails direct taxpayers to Intuit's commercial products, not the Freedom Edition, *even for taxpayers who used Freedom Edition to file in previous tax years*.  Many users also reported that when they entered their preexisting email, user ID, and password on the Freedom Edition website, they were automatically routed to the commercial version.

92.     Individuals who previously used a TurboTax product receive on average 20 or more emails from <u>TurboTax@e.turbotax.intuit.com</u> leading up to the April filing deadline, including emails exhorting them to sign in to receive "max refund" that is "FREE guaranteed." Examples appear below:

| TurboTax | Inbox | 2018 Tax Reminder: User ID and Easy Refund Inside - 100% free and your max refund guaranteed. |
| TurboTax | Inbox | (2018 Tax Reminder) Your Biggest Refund Is Waiting - Get your max refund FREE - guaranteed. |
| TurboTax | Inbox | (Please Sign in With Your User ID) Refunds Are Being Processed Now - Get your max refund FREE - guaranteed. |
| TurboTax | Inbox | Your Refund and User ID Are Waiting – Get Started Here - Do your taxes for FREE. Get started today. |
| TurboTax | Inbox | Please Sign in to Your Account: Your Refund and User ID Are Waiting - Do your taxes for FREE. Get started today. |
| TurboTax | Inbox | Open for Details – Your 2018 Refund Is Waiting. - Don't delay: get your biggest refund sooner. |
| TurboTax | Inbox | (New Message) You Deserve Your Biggest Refund. User ID Inside. - Don't delay your refund. Sign in and file for $0. |

93.     Once the individual clicks on the e-mail, they see visual images claiming that their tax filings will be "FREE guaranteed" and inviting them to click on the blue button labeled "Go" next to their pre-populated user ID.  A sampling of these email advertisements is provided below:

23

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

94.     Intuit's advertisements and solicitations draw taxpayers into Intuit's paid products with no "off-ramp" to the Freedom Edition website.  Intuit's common plan or scheme is designed to prompt taxpayers to input their data into its commercial software, believing they are eligible for free services, and alert them to the filing fees they will be charged only after they have invested significant time inputting their sensitive personal and wage information.  As former CEO Brad Smith explained at a Morgan Stanley Technology presentation, "it's actually the best customer acquisition strategy we've had.  What ends up being the opportunity is getting you to come in and start filling out your tax return electronically."

**D.      The Fallout From Pro Publica's Reporting**

95.     Since publication of the ProPublica articles, taxpayers who sought but were unable to obtain free tax preparation and filing services have reported their experiences to ProPublica.  Their stories show the impact of Intuit's practices on the lower income taxpayers targeted by the Free File Program:

- An 87-year-old on social security with an adjusted gross income of $11,000 had to pay $124.98 to file taxes.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

- An unemployed woman recovering from chemotherapy with two disabled sons whose household earned approximately $30,000 was charged $200.  The woman said, "Those $200 would have helped pay for rent."

- A freelancer earning $15 an hour was charged $154, and said, "To suddenly be saddled with [a] $154 fee for a service I will only use one day out of the year, when I file, is the worst kind of injustice for someone in my position."

- A man earning $5,000 a year paid $103.95 to file.

- A contractor earning $14,500 a year was charged $169 to file taxes.  The contractor said, "That was a whole 1% of my total income . . . . How are they allowed to lie like this?"

96.     The stories shared by military servicemembers who paid for "free" TurboTax software are similar:

- A mother of three married to a Navy officer Googled "tax preparation military free." She clicked the top result—a link to a TurboTax site promising "free military taxes"— and landed on a site emblazoned with miniature American flags.  Even though her family's household income was under the $66,000 threshold to file at no cost under the Free File Program, Intuit charged her $60 to file her family's tax return.

- A hospital corpsman in the Navy who made less than $66,000 paid $95 to file his 2018 tax return.

97.     Many taxpayers have contacted Intuit to demand a refund after learning that they paid for a TurboTax commercial product even though they qualified to file for free under the Free File Program.  In response, Intuit created a special team to handle inquiries from taxpayers who were eligible for the Free File Program.  The team has repeatedly denied refund requests.  *See* Justin Elliot and Paul Kiel, *The TurboTax Trap: TurboTax and H&R Block Saw Free Tax Filing as a Threat—and Gutted it*, ProPublica (May 2, 2019) (available at https://www.propublica.org/article/intuit-turbotax-h-r-block-gutted-free-tax-filing-internal-memo) (last visited Sept. 13, 2019).

98.     Intuit's team has also disseminated inaccurate information about the Free File Program to consumers calling and seeking refunds.  For example, when one low-income tax filer asked why there are no links to the actual free file software on the TurboTax website, an Intuit agent responded that "it is an IRS product" and "the IRS is the one managing it."  Intuit agents have also told low-income tax filers that Intuit's free service is owned by the IRS and that Free File is a "government product that is simply branded as TurboTax."  *See* Justin Elliot and Meg Marco, *Listen to TurboTax Lie to Get Out of Refunding Overcharged Customers*, ProPublica (May 9, 2019) (available at https://www.propublica.org/article/listen-to-turbotax-lie-to-get-out-of-refunding-overcharged-customers) (last visited Sept. 13, 2019).

## CLASS ACTION ALLEGATIONS

99.     Class Definition: Plaintiffs bring this class action on behalf of themselves and other similarly situated individuals.  Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3) Plaintiffs seek certification of a class (the "Class") initially defined as:

> All United States citizens and residents who during the applicable limitations period were eligible to file a federal tax return pursuant to the IRS Free File Program on Intuit's TurboTax Freedom Edition website but paid a fee to TurboTax to file such return.

100.     Excluded from the Class is Intuit's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

101.     Numerosity: The Class is so numerous that individual joinder of all members is impracticable.

102.     Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiffs and Class members, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

a.      Whether Intuit's conduct constituted unfair business acts and practices under California's Unfair Competition Law;

b.      Whether Intuit's conduct was unlawful under California's Unfair Competition Law;

c.      Whether Intuit's conduct was fraudulent under California's Unfair Competition Law;

d.      Whether Intuit's advertising was unfair, deceptive, and misleading in violation of California's Unfair Competition Law;

e.      Whether Intuit was unjustly enriched; and

f.      Whether Plaintiffs and members of the class are entitled to equitable relief, including injunctive relief and restitution.

103.    All members of the Class are ascertainable by reference to objective criteria. Intuit has access to addresses and other contact information for Class members which can be used for notice purposes.

104.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all Class members were subjected to Intuit's common course of conduct and were similarly affected by its actions.

105.    <u>Adequacy of Representation</u>: Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members whom they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

106.    <u>Superiority of Class Action</u>: Plaintiffs and Class members suffered, and will continue to suffer, harm as a result of Intuit's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all Class members is impractical.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the judicial system. Individual litigation also would magnify the delay and expense to all parties of resolving the

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

controversies engendered by Intuit's common course of conduct.  A class action allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of the claims of all Class members in a single forum.  The conduct of this action as a class action will conserve the resources of the parties and of the judicial system and will protect the rights of the Class.

107.    <u>Injunctive Relief</u>: Intuit has acted and refused to act on grounds generally applicable to the Class, making injunctive relief warranted with respect to the Class as a whole.

## **INTUIT'S TERMS OF ADHESION**

108.    Intuit drafted the Terms of Service and/or Terms of Use (collectively, "Terms") and presented those terms to all Plaintiffs.  The Terms are a form contract.  They are not negotiable, and they were not negotiated by the Plaintiffs.  The Terms are a contract of adhesion by Intuit that Plaintiffs were required to accept to use the services.

109.    The Terms contain an arbitration provision that provides: "DISPUTES.  ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify.  The Federal Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall apply California law to all other matters.  Notwithstanding anything to the contrary, *any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction*." (emphasis added).  As alleged herein, this action seeks only injunctive and equitable relief and is not subject to arbitration under the foregoing provision.

110.    The Terms were drafted exclusively by Intuit, including the arbitration clause and the exception to that clause providing that the Plaintiffs may seek equitable remedies in a court of law.

111.    Intuit, on information and belief, retained sophisticated lawyers with experience drafting arbitration agreements to draft and review the Terms.  In contrast, Plaintiffs are

ordinary consumers who were not represented by counsel in regard to entering into a relationship with Intuit.

112.    The Plaintiffs are not commercial entities but ordinary consumers who were induced to engage Intuit for ordinary consumer services.  They are not sophisticated in legal matters or commercial dealings.

## CHOICE-OF-LAW ALLEGATIONS

113.    California law applies to the claims of all Class members under either a contractual choice-of-law or governmental interest analysis.

114.    The Terms state that "California state law governs this Agreement without regard to its conflicts of law provisions."

115.    Further, the State of California has sufficient contacts to Intuit's relevant conduct for California law to be uniformly applied to the claims of the Class. Application of California law to all relevant Class member transactions comports with the Due Process Clause given the significant aggregation of contacts between Intuit's conduct and California.

116.    Intuit is headquartered and does substantial business in California.

117.    A significant percentage of the Class members are located in, and Intuit aimed a significant portion of its unlawful conduct at, California.

118.    The conduct that forms the basis for each Class member's claims against Intuit emanated from its headquarters in Mountain View, California.  Intuit devised and executed its wrongful conduct and marketing scheme, wrote the software code at issue, received customer complaints, planned its communications with Class members, and set its policies and practices at its Mountain View headquarters.

119.    California has a greater interest than any other state in applying its law to the claims at issue in this case.  California has a very strong interest in preventing its resident corporations from engaging in unfair and deceptive conduct and in ensuring that harm inflicted on resident consumers is redressed.  California's interest in preventing unlawful corporate behavior occurring in California substantially outweighs any interest of any other state in denying recovery to its residents injured by an out-of-state defendant or in applying its laws to

conduct occurring outside its borders.  If other states' laws were applied to Class members'

claims, California's interest in deterring resident corporations from committing unfair and

deceptive practices would be impaired.

**COUNT I**

**California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.***
**Unfair Business Acts and Practices**
(***On Behalf of Plaintiffs and the Class***)

120.     Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

121.     Plaintiffs bring this cause of action on behalf of themselves, the members of the

Class and the general public.

122.     Intuit is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

123.     Intuit has violated and continues to violate Cal. Bus. & Prof. Code § 17200, *et*

*seq.* ("UCL"), which prohibits unfair business practices.

124.     Intuit engaged in oppressive, unscrupulous, and substantially injurious conduct.

Plaintiffs and Class members are low-income individuals and active-military members who

were entitled to file their taxes for free but instead, by consequence of Intuit's pervasive unfair

conduct, spent money to file their taxes.  They could not have reasonably avoided this injury.

Nor is Intuit's relevant conduct outweighed by any countervailing benefits to consumers or to

competition.

125.     Intuit's unfair business acts and practices include, without limitation:

a.     Devising a common plan, scheme and course of conduct designed to steer

low-income Americans and active-duty military service personnel who were eligible for free

tax filing into paying for Intuit's TurboTax product.

b.     Implementing software code that was designed to, and did, conceal or

impede Class members' access to Intuit's actual free product, TurboTax Freedom Edition.

c.     Steering Class members to its commercial TurboTax website by paying

for Google AdWords associating that site with keywords likely to be used by consumers

searching for Intuit's free tax-filing options, with the result that Class members clicked on links

advertising and sending them to Intuit's commercial site.

d.     Deliberately failing to notify taxpayers of the availability of TurboTax Freedom Edition even after Intuit received information indicating the taxpayers were eligible to file for free under the Free File Program.

e.     Causing confusion by naming the TurboTax commercial website "TurboTax Free Edition" and including a link to that website on the "TurboTax Freedom Edition" website.

f.     Preventing Class members from navigating directly via hyperlink from the TurboTax commercial website to the TurboTax Freedom Edition website.

g.     Requiring Class members to spend time and effort inputting tax-return information on the TurboTax Free Edition commercial site before informing them at the end of the process that paying a fee would be necessary to file their returns, even when the taxpayer was eligible to file for free with Intuit under the Free File Program.

h.     Representing to Class members, after they spent time and effort inputting tax-return information on the TurboTax commercial site, that they needed to pay for upgrades to "accurately" file their return when, in fact, they could and should have been directed to file for free on the Freedom Edition site, which Intuit did not offer as an "upgrade" option.

126.   As a direct and proximate result of Intuit's unfair business practices, Plaintiffs and Class members suffered injury in fact and lost money or property, including the amounts they paid to Intuit or that were deducted from their tax refunds as part of the online filing process.

127.   Intuit continues to engage in the unfair conduct set forth above.  This conduct is thus likely to recur in the absence of a court order.

128.   Accordingly, pursuant to Cal. Bus. & Prof. Code § 17203, which permits the Court to make such orders or judgments as may be necessary to prevent the use of any practice which constitutes unfair competition, or as may be necessary to restore money that may have been acquired by means of such unfair competition, Plaintiffs seek the following relief on behalf of themselves and the class: (i) a judicial finding that Intuit's conduct as described herein violates the UCL; (ii) an injunction prohibiting Intuit from engaging in unfair and

deceptive practices to promote its commercial online tax preparation software website while actively concealing the Free File Program, whether by using confusing tradenames such as Free Edition and Freedom Edition, misleading "free to fee" conversion practices, implementing software code or paid advertisements to divert taxpayers eligible to file for free to paid product offerings, or other unfair acts, practices or conduct; and (iii) an order or judgment requiring Intuit to restore all money it acquired from the Class by means of its unlawful conduct.

## COUNT II
### California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*
### Fraudulent Business Acts and Practices and Deceptive Advertising
### (*On Behalf of Plaintiffs and the Class*)

129.    Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

130.    Plaintiffs bring this cause of action on behalf of themselves, the members of the Class and the general public.

131.    Intuit is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

132.    Intuit violated Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") by engaging in fraudulent business acts and practices and unfair, deceptive, and misleading advertising.

133.    Intuit's deceptive advertising and fraudulent conduct was likely to, and did, deceive Plaintiffs and Class members acting reasonably under the circumstances.

134.    Intuit's deceptive advertising and fraudulent conduct included affirmative misrepresentations, active concealment of material facts, and partial representations paired with suppression of material facts.  Intuit's conduct violative of the fraudulent prong includes at least the following acts and omissions:

        a.      In a pervasive nationwide advertising campaign, Intuit falsely advertised its TurboTax commercial website as being free, causing confusion and deceiving Class members, eligible for free tax filing, into paying Intuit for tax-filing services.

        b.      As part of the same campaign, Intuit marketed its tax-filing services as being "FREE Guaranteed" when, far from honoring any such guarantee, Intuit charged a fee to most consumers who attempted to file their taxes on its TurboTax commercial website while

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

also concealing and diverting consumers from its "Freedom Edition" site, on which Class members could have filed for free.

c.    Intuit obscured and failed to disclose the material differences between its commercial TurboTax "Free Edition" site and its actual free-filing site, "Freedom Edition," knowing that consumers would confuse the two similarly named products and pay Intuit for tax-filing services that it could and should have provided for free.

d.    Intuit heavily marketed TurboTax "Free Edition" in a manner that made it highly likely to be confused by consumers with TurboTax's "Freedom Edition," including by launching an extensive advertising campaign for "Free Edition" and sending consumers repeated emails marketing "Free Edition" while failing to mention or distinguish it from "Freedom Edition."

e.    Intuit inserted code within its Freedom Edition website that prevented that site from appearing in online search results, rendering the site undiscoverable by Class members searching for free tax-filing options on Google or other search engines.

f.    Intuit did not inform Class members, whom it knew were eligible for free filing, that they would need to pay to file their returns until shortly before filing—after they had spent time and effort inputting their personal and financial information on the TurboTax commercial site.

g.    Intuit misrepresented to Class members, who were eligible for free filing, that a particular paid product of Intuit was the best product for them.

h.    Intuit misrepresented to consumers that the only TurboTax online products were TurboTax "Free Edition," "Deluxe," "Premiere," and "Self-Employed" when, in fact, "Freedom Edition" (i.e., the truly free product) constituted a fifth TurboTax product.

135.    Further, in relation to active military personnel, Intuit engaged in additional unfair, deceptive, and misleading advertising and fraudulent business acts and practices.  Those acts and practices include maintaining a dedicated webpage for service members that only references TurboTax's commercial filing options.

136.     As a direct and proximate result of Intuit's deceptive acts, practices, and advertising, Plaintiffs and Class members suffered injury in fact and lost money or property, including the amounts they paid to Intuit or that were deducted from their tax refunds as part of the online filing process.

137.     Before purchasing TurboTax e-filing services, each Plaintiff saw representations by Intuit that its tax preparation services were "free."  The representations did not distinguish between Intuit's Freedom Edition, which is actually free, and its Free Edition, which is free in only limited circumstances and intended by Intuit to generate revenue.  Plaintiffs were exposed to these representations via television commercials, online product descriptions, internet and print advertisements, and/or emails from Intuit.  Had Intuit accurately described the nature of its Free Edition tax-filing product and made clear its intent to assess a fee, no Plaintiff would have used TurboTax's commercial website. Instead, each would have filed a tax return through a different means.

138.     Given its relative ease of use, Plaintiffs would like to continue self-filing their tax returns using the TurboTax platform.  But because of Intuit's conduct, Plaintiffs cannot be assured that Intuit's representations about the cost of its tax-preparation and filing services are accurate.  As a result, although each Plaintiff would like to use the TurboTax platform for future tax filing, none of them will do so unless Intuit takes sufficient steps to ensure the accuracy of its representations about the cost of its services.

139.     Accordingly, pursuant to Cal. Bus. & Prof. Code § 17203, which permits the Court to make such orders or judgments as may be necessary to prevent the use of any practice which constitutes unfair competition, or as may be necessary to restore money that may have been acquired by means of such unfair competition, Plaintiffs seek the following relief on behalf of themselves and the class: (i) a judicial finding that Intuit's conduct as described herein violates the UCL; (ii) an injunction prohibiting Intuit from engaging in unfair and deceptive practices to promote its commercial online tax preparation software website while actively concealing the Free File Program, whether by using confusing tradenames such as Free Edition and Freedom Edition, misleading "free to fee" conversion practices, implementing

1  software code or paid advertisements to divert taxpayers eligible to file for free to paid product

2  offerings, or other unfair acts, practices or conduct; and (iii) an order or judgment requiring

3  Intuit to restore all money it acquired from the Class by means of its unlawful conduct.

**COUNT III**
**California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.***
**Unlawful Business Acts and Practices**
**(*On Behalf of Plaintiffs and the Class*)**

7  140.    Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

8  141.    Plaintiffs bring this cause of action on behalf of themselves, the members of the

9  Class and the general public.

10  142.    Intuit violated Cal. Bus. & Prof. Code § 17200, et seq. ("UCL") by engaging in

11  unlawful business acts and practices.

12  143.    Intuit's business practices in question are unlawful and in violation of the UCL,

13  because they violate California's Consumers Legal Remedies Act, Cal. Civ. Code § 1780 *et*

14  *seq.* ("CLRA").

15          a.    Intuit is a "person" as defined by Civil Code §§ 1761(c) and 1770, and

16  provided "services" as defined by Civil Code §§ 1761(b) and 1770.

17          b.    Plaintiffs and class members are "consumers," as defined by Civil Code

18  §§ 1761(d) and 1770, and engaged in a "transaction," as defined by Civil Code §§ 1761(e) and

19  1770.

20          c.    Intuit's acts and practices, as described herein, were intended to and did

21  result in the sale of products and services to Plaintiffs and Class members in violation of the

22  CLRA.  Intuit violated Civil Code § 1770(a)(5) by representing that goods or services had

23  characteristics that they did not have.  Intuit also violated Civil Code § 1770(a)(7) by

24  representing that goods or services were of a particular standard, quality, or grade when they

25  were not.  And Intuit violated Civil Code § 1770(a)(9) by advertising goods or services with

26  intent not to sell them as advertised.

27          d.    A reasonable consumer would attach importance to Intuit's

28  misrepresentations and omissions alleged herein and would be induced to act on the

1
2
3

information in making purchase decisions.  Intuit's misrepresentations and omissions were likely to and did deceive reasonable consumers who were eligible for Free File into using and paying for Intuit's paid products.

4
5
6

        e.     As a direct and proximate result of Intuit's CLRA violations, Plaintiffs and Class members have suffered injury and ascertainable losses of money or property through payment for Intuit's products and services that it could and should have provided for free.

7
8
9
10
11

     144.   Intuit's business practices in question are also unlawful, in violation of the UCL, because they violate the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair or deceptive acts or practices in or affecting commerce."  As described above, Intuit engaged in unfair and deceptive acts and practices affecting commerce that caused substantial injury to consumers.

12
13
14
15

     145.   As a direct and proximate result of Intuit's unlawful acts and practices, Plaintiffs and Class members suffered injury in fact and lost money or property, including the amounts they paid to Intuit or that were deducted from their tax refunds as part of the online filing process.

16
17
18
19
20
21
22
23
24
25
26
27

     146.   Accordingly, pursuant to Cal. Bus. & Prof. Code § 17203, which permits the Court to make such orders or judgments as may be necessary to prevent the use of any practice which constitutes unfair competition, or as may be necessary to restore money that may have been acquired by means of such unfair competition, Plaintiffs seek the following relief on behalf of themselves and the class: (i) a judicial finding that Intuit's conduct as described herein violates the UCL; (ii) an injunction prohibiting Intuit from engaging in unfair and deceptive practices to promote its commercial online tax preparation software website while actively concealing the Free File Program, whether by using confusing tradenames such as Free Edition and Freedom Edition, misleading "free to fee" conversion practices, implementing software code or paid advertisements to divert taxpayers eligible to file for free to paid product offerings, or other unfair acts, practices or conduct; and (iii) an order or judgment requiring Intuit to restore all money it acquired from the Class by means of its unlawful conduct.

28

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

## COUNT IV
## Unjust Enrichment
### (*On Behalf of Plaintiffs and the Class*)

147.   Plaintiffs incorporate the foregoing paragraphs as if set forth fully herein.

148.   Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

149.   Plaintiffs and Class members conferred a benefit on Intuit by paying Intuit for online tax-preparation and filing services.

150.   Intuit acted wrongfully by (a) acting in a coordinated manner to suppress free filing; (b) actively concealing its free online tax-preparation and filing services from the people for whom those services were intended; and (c) marketing its services in a deceptive and misleading manner.  Among other deception and wrongdoing, Intuit manipulated internet search results to steer Plaintiffs and Class members to its paid website, blocked their ability to navigate to Intuit's actual free-filing site once they clicked on Intuit's paid website, falsely marketed its paid services as being free, and purposely did not inform low-income individuals and active military personnel of their eligibility to file their tax returns at no cost.

151.   Intuit's scheme to divert free-file eligible consumers and active military personnel to its paid website, and to induce their payments for services that Intuit could and should have provided at no cost, has caused Intuit to profit.

152.   Based on the foregoing, retention by Intuit of its ill-gotten gain is unjust and inequitable.

153.   Plaintiffs, on behalf of themselves and the Class, seek restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully pray for judgment as follows:

A.   For an order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3);

B.      For an order appointing Plaintiffs as Class Representatives and Interim Class Cousel as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g);

C.      For an order declaring that Intuit's conduct as alleged herein constitutes unfair competition;

D.      For an order declaring that Intuit has unlawfully profited from its unjust and inequitable conduct as alleged herein;

E.      For an order enjoining Intuit from engaging in all manner of unfair, unlawful, deceptive, misleading or otherwise wrongful acts, omissions or practices, in connection with its participation in the Free File Program, that threaten future injury to the Class and/or the general public, including, without limitation, promoting its commercial tax preparation website to taxpayers eligible to file for free while concealing its actual free file website and the Free File Program, whether by implementing software code or advertising to divert such taxpayers to its paid offerings, using confusing tradenames such as Free Edition and Freedom Edition, or engaging in any other unlawful "free to fee" conversion practices, or through engaging in any other wrongful acts, omissions or practices.

F.      For an order requiring restitution of all monies paid to Intuit by any person who qualified for free tax-return filings pursuant to the Free File Program and who paid money to Intuit to file a return, regardless of which TurboTax program or software the person used in filing;

G.      For an order awarding Plaintiffs and Class members pre-judgment and post-judgment interest;

H.      For an order awarding Plaintiffs and Class members reasonable attorneys' fees, costs, and expenses; and

I.      For such other relief as the Court may deem just and proper, including any order or judgment as may be necessary to prevent the use of any practice alleged herein found to consittute ufnair competition or unjust or inequitable conduct, or as may be necessary to resotre money that may have been acquired by means of unfair compeition or unjust and inequitable conduct.

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiffs assert only claims for equitable and injunctive relief at this time.  Plaintiffs

3  respectfully demand a trial by jury only as to any claim deemed so triable by the Court for any

4  reason.

5  Dated:  September 13, 2019                    Respectfully submitted,

6                                               /s/ *Daniel C. Girard*

7
                                               Daniel C. Girard (State Bar No. 114826)
8                                              Angelica M. Ornelas (State Bar No. 285929)
                                               Simon S. Grille (State Bar No. 294914)
9                                              **GIRARD SHARP LLP**
                                               601 California Street, Suite 1400
10                                             San Francisco, CA 94108
                                               Telephone: (415) 981-4800
11                                             Facsimile: (415) 981-4846
                                               dgirard@girardsharp.com
12                                             aornelas@girardsharp.com
                                               sgrille@girardsharp.com
13

14
                                               Norman E. Siegel (*pro hac vice*)
15                                             Austin Moore (*pro hac vice*)
                                               Jillian Dent (*pro hac vice*)
16                                             **STUEVE SIEGEL HANSON LLP**
                                               460 Nichols Road, Suite 200
17                                             Kansas City, MO 64112
                                               Telephone:  (816) 714-7100
18                                             Facsimile:  (816) 714-7101
                                               siegel@stuevesiegel.com
19                                             moore@stuevesiegel.com
                                               dent@stuevesiegel.com
20

21
                                               *Co-Lead Interim Counsel*
22

23

24

25

26

27

28

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered users.

*/s/ Daniel C. Girard*

Daniel C. Girard

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-02546-CRB