Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
aornelas@girardsharp.com
sgrille@girardsharp.com

Norman E. Siegel (*pro hac vice*)
Austin Moore (*pro hac vice*)
Jillian Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
siegel@stuevesiegel.com
moore@stuevesiegel.com
dent@stuevesiegel.com

*Co-Lead Interim Counsel*

RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
CRYSTAL A. NWANERI (CSB No. 318955)
cnwaneri@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

*Attorneys for Defendant Intuit Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE INTUIT FREE FILE LITIGATION<br><br>This Document Relates to:<br>All Actions | Master File No. 3:19-cv-02546-CRB<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  October 4, 2019<br>Time:  10:00 a.m.<br>Courtroom:  6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

Plaintiffs Andrew Dohrmann, Laura Nichols, Brianna Sinohui, Joseph Brougher, and Monica Chandler and Defendant Intuit Inc. hereby provide this Joint Case Management Statement in advance of the Case Management Conference scheduled for October 4, 2019.

## 1.   Jurisdiction and Service

**Plaintiffs' Statement**

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because (i) there are 100 or more class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) Intuit and class members are citizens of different states.  The Court has personal jurisdiction over Intuit because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court appropriate.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the conduct at issue in this case occurred in this District.  Intuit has been served.

**Defendant's Statement**

It is Intuit's position that the Northern District of California is not the proper forum for this dispute as Plaintiffs, TurboTax customers, contractually agreed not to pursue class claims against Intuit and to resolve "any dispute or claim" related to TurboTax in arbitration.  *See* Section 4 below.

Had Plaintiffs not agreed to the arbitrate all disputes with Intuit, Intuit would not dispute the bases for subject matter jurisdiction, personal jurisdiction, and venue outlined above.

## 2.   Facts

**Plaintiffs' Statement**

Intuit, owner of tax preparation software TurboTax, entered into an agreement with the Internal Revenue Service (IRS) under which it was required to provide free, online tax return preparation and filing services to a substantial majority of tax filers—specifically lower income Americans and active duty military members (the "Free File Program").  In exchange for Intuit's participation in the agreement, the IRS agreed not to offer its own free, online e-filing system, a service that would have competed directly with Intuit.  The agreed goal of the Free File Program is for 70% of U.S. taxpayers to e-file their taxes for free.  Yet, as a direct result of Intuit's nationwide scheme to divert eligible filers to its paid products, less than 3% of Free File-eligible taxpayers filed for free in the 2018 tax year.

Intuit's nationwide scheme included naming the filing software it provides under the Free File Program "TurboTax **Freedom** Edition," while simultaneously promoting a competing product that it named "TurboTax **Free** Edition." Intuit's Free Edition is only free for the simplest of returns, however, and users of Free Edition are informed that they must pay to file only *after* they have devoted considerable time to inputting information into the software. Most taxpayers who use Free Edition are forced to pay $59.99 or more to file, whereas many of those same users could have filed for free using Freedom Edition. Even after a taxpayer inputs information into the Free Edition demonstrating they are eligible to file for free under the Free File Program, Intuit does not inform the taxpayer of, or provide a path to, Freedom Edition.

Intuit's scheme also included the use of a pervasive nationwide advertising and email campaign and the manipulation of search technology to suppress free filing and direct taxpayers to its paid products. For example, Intuit made its truly free Freedom Edition virtually invisible to eligible filers by removing any links to the Freedom Edition from its primary website and altering the Freedom Edition's website source code to prevent it from appearing in search engines like Google.

Intuit's conduct has allowed Intuit to extract, using deceptive, unlawful, and/or unfair acts and practices, funds which should rightfully have been retained by eligible taxpayers. Intuit generated billions in revenue by victimizing low-income taxpayers and military members serving our country, like Plaintiffs, who were eligible to file their tax returns at no cost under the Free File Program but instead paid to file their taxes with TurboTax. Plaintiffs, on behalf of themselves and others similarly situated, now seek from this Court equitable relief in the form of an injunction and restitution—relief expressly carved out of the adhesive arbitration clause contained in Intuit's Terms of Service.

Plaintiffs disagree with Intuit's arguments below, including Intuit's assertions that Plaintiffs seek to interfere with or play a role of any kind in the Free File Program or any related inquiry or investigation. Plaintiffs note that nowhere in their Consolidated Complaint do Plaintiffs seek any relief that would in any way affect the rights and obligations of any party under the Free File Program.

**Defendant's Statement**

As Plaintiffs' acknowledge, this case concerns the Internal Revenue Service Free File Program ("the Program"), a complex federal regulatory arrangement involving private-sector software companies that agreed with the IRS to provide a basic electronic filing option for a limited segment of the taxpayer population.

The Program's origins date back to 1998 when Congress enacted the IRS Restructuring and Reform Act, Pub. L. No. 105-206, Title II, 112 Stat. 723 (1998) ("RRA"). The Program was a response to Congress' directive that "paperless filing should be the preferred and most convenient means of filing Federal tax … returns," and that the IRS should endeavor "to have at least 80 percent of all such returns filed electronically by the year 2007." RRA § 2001(a). To achieve this goal, Congress ordered the IRS to "cooperate with and encourage the private sector by encouraging competition to increase electronic filing of such returns." *Id.*; *see also id.* § 2001(b) (mandating that IRS establish a plan to "provide incentives[] and use competitive market forces to increase electronic filing").

In 2002, the agency and a consortium of online tax companies ("the Free File Alliance" or "FFA") entered into an agreement ("2002 Agreement" or "the Free File Agreement") to offer free tax-filing software to the American public. Intuit, the maker of TurboTax and a leader in the electronic tax preparation and filing industry, was one of those companies.

This public-private partnership ensured "higher quality" tax services than the federal government could provide on its own, "maximize[d] consumer choice" in light of the many participating companies, and "promote[d] competition" for free tax-preparation services. 2002 Agreement, sec. II. The arrangement also enabled the IRS to stay out of the tax software business—which the government expressly sought[1]—thereby saving the federal government millions of dollars in operational costs.

---

[1] *See* Br. for Appellee, the IRS at 9, *Byers v. Intuit, Inc. et al.*, 600 F.3d 286 (3rd Cir. 2010) ("*Byers II*") No. 09-1197, 2009 WL 5635459 (explaining that "Treasury has indicated it does not want the IRS to enter into the tax software business"); *see also* IRS Mot. to Dismiss or for Summ. J. at 11, *Byers v. Intuit, Inc. et al.*, 564 F. Supp. 2d 385 (E.D. Pa. 2009) No. 07-CV-4753, 2008 WL 2871927 (explaining that IRS worked with private sector to create the Free File program "[b]ecause of logistical issues, costs, and risks associated with the Government implementing a complex program of this nature" on its own).

Although the IRS understood that a majority of taxpayers might elect to continue to pay for a tax-filing service,[2] the arrangement allowed taxpayers to access FFA members' free services through the IRS website, "via a [Free File] homepage managed and hosted" by the agency.[3] This system makes sense.  Because the IRS feared that FFA members would "go out of business" if everyone could use their products for free, it capped "the amount of free e-filing services available from any individual FFA member at 50% of [eligible] taxpayers." *Byers II*, 600 F.3d at 289-90.  Each FFA member thus has its own eligibility criteria based on, among others, age, income, or state residency. *See* Compl. ¶ 51.  To use Intuit's Free File product in Tax Year 2018, a taxpayer must have an adjusted gross income of $34,000 or less, be on active military duty with an AGI of $66,000 or less, or be eligible for the Earned Income Tax Credit. *See id.*

Pursuant to the Free File Agreement and Memoranda of Understanding ("MOUs") implementing that Agreement, the IRS assumed key responsibilities for—and was granted significant authority over— the Free File Program.  The agency controls the content on the Free File homepage, approves and denies product names, monitors member offerings and Free File webpages, and may order corrective action in the event a member's service is "deficient" or "not being properly performed."[4]  The IRS may even "unilaterally" and "immediately" impose new "Standards of Practice"—*i.e.*, new rules regulating any manner of a member's Free File services or participation—and remove from its website the listing of any member that fails to "comply with its obligations under th[e] MOU" or "timely remediate identified deficiencies." *E.g.*, Eighth MOU §§ 4.31, 6.1.  The IRS is also responsible for "[p]romotion of the Free

---

[2] IRS' Intent to Enter Into an Agreement with Free File Alliance, LLC (i.e., Free File Alliance), 67 Fed. Reg. 67,247, 67,248 (Nov. 4, 2002) (noting that 70 percent of Australian taxpayers continued to pay a tax professional even though the "national government itself ha[d] offered free Internet filing for …years").

[3] *Id.* at 67,247; *see also* 2002 Agreement, secs. II, V; First Memorandum of Understanding ("MOU") § 1.18 ("The 'IRS Free File Website' shall mean the website hosted and maintained by the IRS through which the Services are offered to taxpayers."); Eighth MOU § 1.17 (same); First MOU § 1.11 ("'Member Free File Landing Page' shall mean the … landing site on the Member's website which taxpayers see *upon linking from the IRS free file site*." (emphasis added)).

[4] 2002 Agreement, secs. IV-VI; *see* Eighth MOU §§ 4.29.1, 4.33.

File Program."[5]  Despite the IRS's obligation to publicize the program, *see, e.g.*, Eighth MOU § 4.35, the agency has "no marketing budget to do so."[6]

The Free File Program is now the subject of congressional inquiries, a comprehensive review by the IRS, and an investigation by the Treasury Inspector General for Tax Administration.[7]  But despite this federal oversight and the IRS's longstanding administration of the program, Plaintiffs initiated the various lawsuits that have been consolidated in this action against Intuit relying on a single article published on the internet without even asking Intuit for its side of the story.  In that rush to the courthouse, Plaintiffs got key facts wrong—including some of the allegations set forth in Plaintiffs' statement above.  Among other things, the Complaint fundamentally misapprehends the aims and achievements of the Free File Program and misrepresents the basic terms of private industry's agreement with the IRS.  Plaintiffs' allegation that Intuit violated that agreement in ways that constitutes unfair and deceptive business acts and "victimize[d] low-income American taxpayers and military service people

---

[5] Eighth MOU § 4.35; Seventh MOU § 4.36; *see also* 2002 Agreement, sec. VI.B ("The IRS …will promote the availability of the Consortium's Free Services.").

[6] IRS, *National Taxpayer Advocate Delivers Annual Report to Congress: Addresses Impact of Shutdown; Urges More Funding for IT Modernization* (Feb. 12, 2019), available at https://www.irs.gov/newsroom/national-taxpayer-advocate-delivers-annual-report-to-congress-addresses-impact-of-shutdown-urges-more-funding-for-it-modernization; *see also* Tik Root, *Why Are Millions Paying Online Tax Preparation Fees When They Don't Need To?*, ProPublica (June 18, 2018), available at https://www.propublica.org/article/free-file-online-tax-preparation-fees-intuit-turbotax-h-r-block (explaining that the IRS previously had $1.5 million per year to promote the Free File program but that such funding was eliminated in 2015).

[7] The IRS announced that it was "reviewing the concerns raised by the Free File program" and that "a senior leadership team was assembled to review [that] program."  *See* IRS Statement, May 3, 2019, available at https://www.documentcloud.org/documents/5989093-IRS-Statement-on-Free-File-May-3-2019.html*; see also* Justin Elliott, *Senior IRS Leaders Launch Review of Agency's Partnership with TurboTax and H&R Block*, ProPublica (May 6, 2019), available at https://www.propublica.org/article/senior-irs-leaders-launch-review-of-partnership-with-turbotax-and-h-r-block.  The IRS Commissioner has explained that the agency will work with an independent consultant to examine "every facet" of "the Free File issue."  *See* Allyson Versprille, *IRS Hiring Consultant After Uproar Over Free File Program*, Bloomberg Tax (May 22, 2019), available at https://news.bloombergtax.com/daily-tax-report/irs-hiring-consultant-after-uproar-over-free-file-program.  The Treasury Inspector General for Tax Administration, which provides independent oversight of IRS operations, *see* RAA § 1103, has also announced that it will investigate the Free File program.  *See* Justin Elliott, *Senior IRS Leaders Launch Review of Agency's Partnership with TurboTax and H&R Block*, ProPublica (May 6, 2019), available at https://www.propublica.org/article/senior-irs-leaders-launch-review-of-partnership-with-turbotax-and-h-r-block.

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:19-cv-02546-CRB

who are eligible to file their tax returns at no cost under the Free File Program" (Compl. ¶ 4) is factually inaccurate and based on this same fundamental misunderstanding of the Free File Program.

Plaintiffs also misunderstand the distinctions between TurboTax's Free File (IRS) Program offering and TurboTax's Free Edition (non-IRS), which is offered on TurboTax's own website, TurboTax.com.  Plaintiffs imply that filers who use Free Edition necessarily had to pay Intuit.  This is untrue.  Over ***11 million people*** filed their taxes using TurboTax Free Edition absolutely free.  This included over 2.5 million people who were not even eligible to file their taxes for free using TurboTax Free File (IRS) Program. Similarly, the suggestion that almost no one is eligible for the non-IRS Free Edition is also untrue.  Nearly 50 million taxpayers—more than a third of all American taxpayers—were eligible to file for free on Free Edition last year.

While Plaintiffs' Complaint alleges that Intuit "devised a scheme to steer customers away from participation in the Free File Program" (*id.* at ¶ 59), the number of filers who found TurboTax Free File (IRS) Program through online search actually *increased* in 2019—the opposite result from Plaintiffs' claim.  In the recent 2018 tax season, 1.2 million taxpayers used TurboTax Free File (IRS) Program, accounting for nearly half of all IRS Free File Program users from all participating companies.[8]  Intuit is a strong supporter of the Program and, despite having no obligation to advertise the Free File Program— that is the IRS's express responsibility—during the 2018 tax season Intuit invested $1.5 million in its Tax Time Allies campaign "to promote no-cost filing" like "Free File and Volunteer Income Tax Assistance."[9]  Intuit also promoted its Free File (IRS) Program offer through paid online search— increasing its overall spending by nearly 80 percent in the most recent tax season.  Attributing the Free File Program's participation rate to any improper conduct on Intuit's part will not withstand scrutiny. But in any event, given the sensitivity of the issue raised by the allegation of "de-indexing" organic search results, Intuit ceased that practice months ago.

---

[8] *See* Intuit Third Quarter 2019 Fact Sheet, at 3 (May 23, 2019), available at https://s23.q4cdn.com/935127502/files/doc_financials/quarterly/2019/q4/Fact-Sheet-FY19-Q4-External-vFinal-(1).pdf; Compl. ¶ 69 (alleging that 2.5 million taxpayers filed for free under the Free File program).

[9] *See* Root, *supra* n.7.

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:19-cv-02546-CRB

Since this lawsuit was filed, congressional leaders—including those who head the committee with jurisdiction over the IRS (the Senate Finance Committee)—have called on the agency to examine the Free File Program and amend the MOU "to bar whatever deceptive acts and practices the IRS might uncover" among any of the FFA participants.[10]  The IRS has engaged an independent auditor to conduct a comprehensive review, and the Treasury Inspector General for Tax Administration, "the IRS'[s] independent watchdog," is likewise "launching an audit of the Free File program."[11]

There are four related lawsuits pending in California Superior Court, two filed by California public officials:

- *People v. Intuit Inc.*, No. 19STCV15644 (Los Angeles Superior Court), filed by the Los Angeles City Attorney;

- *People v. Intuit Inc.*, No. 19CV354178 (Santa Clara Superior Court), filed by the Santa Clara County Counsel;

- *Macklin v. Intuit, Inc.*, No. 19CV347208 (Santa Clara Superior Court); and

- *Callaway v. Intuit, Inc.*, No. 19CV354484 (Santa Clara Superior Court).

In *People v. Intuit Inc.*, No. 19STCV15644 (Los Angeles Superior Court), Intuit filed a demurrer on the basis that the court should abstain under California's abstention law because allowing the City Attorney's case to proceed would directly interfere with the IRS's management of the Free File Program, thereby threatening to undermine and destabilize that important federal program.  Intuit further argued that if that court were to determine whether Intuit somehow violated the agreement with the IRS and whether remedial measures are needed, the court would be placed in the untenable position of assuming the functions of the IRS.  Finally, Intuit argued that the Free File Program is a complex administrative regime best handled by the IRS and Congress, and more effective means of redress are available through the IRS's comprehensive review of the program.  Intuit's demurrer is fully briefed and a decision is pending.

---

[10] Letter from Senators Charles Grassley and Ron Wyden to Commissioner Charles Rettig (May 6, 2019); *see also* Joshua Rosenberg, *Amid Scrutiny, IRS to Enlist Review of Free File Pact*, Law 360 (May 30, 2019).

[11] *See* Elliott, *supra* n.8; *see also* Rosenberg, *supra* n.11.

7

### 3. <u>Legal Issues</u>

The parties identify the following disputed points of law:

- Whether Intuit's conduct constituted unfair business acts and practices under California's Unfair Competition Law;

- Whether Intuit's conduct was unlawful under California's Unfair Competition Law;

- Whether Intuit's conduct was fraudulent under California's Unfair Competition Law;

- Whether Intuit's advertising was unfair, deceptive, and misleading in violation of California's Unfair Competition Law;

- Whether Intuit was unjustly enriched; and

- Whether Plaintiffs and members of the class are entitled to equitable relief, including injunctive relief and restitution.

**<u>Defendant's Statement</u>**

Intuit further identifies the following anticipated disputed legal issues:

- That Plaintiffs' claims are subject to binding arbitration or otherwise must be filed in small claims court;

- That the Court should stay or dismiss Plaintiffs' claims, which are the subject of congressional inquiries, a comprehensive review, and an investigation by the Treasury Inspector General for Tax Administration, under the doctrines of abstention, primary jurisdiction, and interference with a federal scheme;

- That the proposed class is not maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) or 23(b)(3);

- That Plaintiffs' claims are precluded or otherwise limited by the Turbo Tax Terms of Service;

- That Plaintiffs are not entitled to injunctive relief;

- That Plaintiffs are not entitled to restitution;

- That Intuit was not unjustly enriched as a result of any of its alleged actions;

- That Intuit acted reasonably; and

- That Intuit's alleged actions do not constitute unfair competition under California Business and Professions Code § 17200 *et seq.*

### 4. <u>Motions</u>

**<u>Plaintiffs' Statement</u>**

As directed by the Court, Plaintiffs filed their Consolidated Class Action Complaint on September 13. Dkt. 80. Intuit's response is due October 28. Dkt. 42. Intuit has represented that it currently intends to move to compel arbitration. While the issue will be briefed at the appropriate time, Intuit appears to take an unduly narrow view of its arbitration provision. The provision provides that Plaintiffs may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction. Because Plaintiffs seek only equitable relief, this sentence expressly allows them to do so in this Court.

Given the Court's stated preference for early determination of the central issues in this case, Plaintiffs intend to move for final injunctive relief under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. Plaintiffs also intend to move for certification of a corresponding injunctive-relief class under Rule 23(b)(2) before or concurrently with their injunction motion. These motions will allow the Court and the parties to address key issues connected with Intuit's alleged violations by the 2020 tax season and without the need to notify the class. Plaintiffs also intend to pursue their claims in equity for restitution but propose deferring a trial on those claims (and a decision on class certification under Rule 23(b)(3) until after the matter of injunctive relief has been resolved. If Plaintiffs' motion for injunctive relief cannot be resolved on the existing record at the time the motion is heard, Plaintiffs propose that the Court hold an evidentiary hearing or bench trial to permit findings of fact and conclusions of law.

Plaintiffs propose that after a period of expedited discovery, Plaintiffs file their motion for injunctive relief by November 29, 2019, with Intuit's opposition due December 6 and any reply due December 10. Plaintiffs propose that their motion be heard at the same December 13, 2019 hearing as Intuit's motion to compel arbitration.

Plaintiffs do not oppose Intuit's proposed schedule for briefing and argument on its motion to compel arbitration, provided there is no stay of this case and the schedule Plaintiffs propose below is

pursued on a parallel track. If the Court is inclined to stay discovery pending determination of the motion to compel arbitration, Plaintiffs' respectfully request an accelerated briefing schedule so that the motion is fully briefed and submitted as soon as practicable.

**Defendant's Statement**

As ordered by the Court, Plaintiffs filed their Consolidated Class Action Complaint on September 13. Dkt. 80. As also ordered by the Court, Intuit's response is due October 28. *See* Order at 5. Intuit currently intends to move to compel arbitration. When Plaintiffs created their Intuit TurboTax accounts, then signed into those accounts and filed their taxes, at each step they affirmatively agreed to Intuit's Terms of Use, which includes a binding arbitration provision. That provision provides that any dispute or claim will be resolved by arbitration and does not exempt claims for injunctive or equitable relief. Rather, it provides only that "any party to the arbitration" may resort to Court as an avenue for obtaining equitable relief, but not that a party may avoid the arbitrator's determination of the merits of the underlying alleged UCL violations that may provide the substantive basis for such relief. Plaintiffs' request for restitutionary and equitable relief does not relieve them of their obligation to arbitrate the merits of their claims.

Intuit proposes the following schedule for Intuit's motion to compel arbitration:

- Deadline for Intuit to file its motion to compel arbitration is October 28 (*see* Order at 5);

- Deadline for Plaintiffs to file their opposition to the motion to compel arbitration is November 15;

- Deadline for Intuit to file its reply in support of its motion to compel arbitration is November 25;

- Hearing on Intuit's motion to compel arbitration on December 13, 2019 or as soon thereafter as the Court is available.

Plaintiffs anticipate filing a motion for class certification. Plaintiffs may also move after a period of discovery for summary judgment on their claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 and unjust enrichment.

In the event that Intuit's motion to compel arbitration is denied, Intuit reserves the right to file a motion to dismiss for failure to state a claim and/or based on the abstention doctrine (which the parties

1   agreed and the Court ordered should be filed and heard after and only if Intuit's motion to compel

2   arbitration is denied (Order at 5)), an affirmative motion to deny class certification, and a motion for

3   summary judgment on all or some of the claims or issues remaining in the litigation.

4        Intuit further submits that, given Plaintiffs' desire to certify a 23(b)(3) class for economic relief

5   at any time, due process precludes any merits adjudication prior to the Court's decision on certification

6   of that class and provision of notice and opt out if a class is certified. Any motion judgment on an

7   injunction inherently will determine the merits of Plaintiffs' claims and should be decided after class

8   certification.  *See Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-CV-05546-EMC, 2019 WL

9   2548459, at *13–14 (N.D. Cal. June 20, 2019) (denying plaintiffs' motion for partial summary

10  judgment based on the one-way intervention doctrine, which "exists to 'protect defendants from unfair

11  'one-way intervention,' where the members of a class not yet certified can wait for the court's ruling

12  on summary judgment and either opt in to a favorable ruling or avoid being bound by an unfavorable

13  one.'") (citation omitted).  Plaintiffs' suggestion that they can avoid this one-way intervention doctrine

14  by certifying a (b)(2) class for final determination on the merits, and then proceeding with notice and

15  opt out only *after* the Court decides that issue, is unprecedented and a direct violation of Intuit's due

16  process rights.

### 5.   Amendment of Pleadings

18       If Intuit moves to dismiss the Consolidated Complaint and the Court grants any portion of the

19  motion, Plaintiffs may seek to amend their complaint as appropriate in light of the Court's ruling. *See*

20  Fed. R. Civ. P. 15(a)(2).  Plaintiffs further reserve the right to seek leave to amend consistent with Fed.

21  R. Civ. P. 15.

22       Intuit reserves all rights to oppose any proposed amendments and contend that leave to replead

23  would not be appropriate if the matter is dismissed pursuant to the abstention doctrine.

### 6.   Evidence Preservation

25        The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored

26  Information and have each represented that they have taken reasonable and proportionate steps to

27  preserve evidence relevant to the issues reasonably evident in this action.

### 7.    Disclosures

**Plaintiffs' Statement**

Plaintiffs intend to serve their Rule 26(a) disclosures on or before October 2, 2019.  Plaintiffs do not object to Intuit serving its disclosures on October 9, 2019.

**Defendant's Statement**

It is Intuit's position that the parties should exchange Rule 26(a) disclosures by October 9, 2019, as provided under Fed. R. Civ. P. 26(a)(1)(C).

### 8.    Discovery

**A.    Discovery Taken to Date**

Following the Rule 26(f) conference, Plaintiffs served an initial set of requests for production of documents on Intuit.  There has been no other discovery conducted to date. To streamline discovery consistent with Plaintiffs' proposed schedule below, Plaintiffs' requests for production incorporate document requests served May 28, 2019 by the plaintiff Office of the Los Angeles City Attorney in *People v. Intuit Inc.*, No. 19STCV15644 (Los Angeles Superior Court) and include a limited number of additional requests relevant to this case.

Plaintiffs disagree with Intuit that discovery should be stayed pending Intuit's motion to compel arbitration.  The Federal Rules do not provide for an automatic discovery stay, and such a stay is disfavored in this District, *see Otey v. CrowdFlower, Inc.,* No. 12-CV-05524-JST, 2013 WL 1915680, at *1 (N.D. Cal. May 8, 2013). The proposed by Intuit would be particularly inappropriate because Intuit is unlikely to succeed on the merits of its arbitration motion and Plaintiffs need expedited discovery to pursue relief that will allow the Court to reach the merits of this dispute before the 2020 tax season.  *See, e.g., Schreiber v. Friedman*, No. 15-CV-6861 (CBA) (JO), 2017 WL 5564114, at *18 n.17 (E.D.N.Y. Mar. 31, 2017) (district court and magistrate judge declined to stay discovery pending resolution of arbitration motions); *Spathos v. Smart Payment Plan, LLC*, No. CV 15-8014, 2016 WL 9211648, at *1 (D.N.J. Apr. 25, 2016) (denying motion to stay discovery pending resolution of motion to compel arbitration "because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery"); *Freeney v. Bank of Am. Corp.*, No. CV 15-2376-JGB (C.D. Cal. Feb. 8, 2016), ECF No. 119 ("[I]t is not clear that resources

1  would be wasted in discovery, because it is not clear that Defendants will prevail on their Motions to

2  Compel Arbitration"); *Flecha v. Neighbors Moving Servs., Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla.

3  2013) (finding that a "genuine dispute as to whether the arbitration agreement is enforceable" weighed

4  in favor of "permit[ting] discovery to proceed."); *Wells v. Dish Network, LLC*, No. 11-CV-00269-

5  CMA, 2011 WL 2516390, at *1 (D. Colo. June 22, 2011) (denying similar motion and stating that

6  "ordinary burdens associated with litigating a case do not constitute undue burdens" and that "delay

7  may diminish Plaintiff's ability to proceed and may impact her ability to obtain a speedy resolution of

8  her claims."); *Estate of Szuba v. Governmental Interins. Exch.*, No. 3:10-CV-0479, 2011 WL 1526944,

9  at *1 (N.D. Ind. Apr. 20, 2011) (refusing to stay discovery during pendency of motion to compel

10  arbitration and noting that the defendant could refile its stay motion if the court were to compel

11  arbitration).  Even in the case cited by Defendants below, *Mahemedi*, 2017 WL 2727874, at *2, the

12  court only granted a stay in part and allowed certain time-sensitive discovery to proceed. Here, this

13  matter is time-sensitive with the impending onset of the 2020 tax season.

14  **Defendant's Statement**

15  Discovery should be stayed until the Court's decision on the motion to compel arbitration or, if

16  necessary, the Court's decision on a motion to dismiss.  *See, e.g.*, *Mahamedi IP Law, LLP v. Paradice*

17  *& Li, LLP*, No. 5:16-cv-02805-EJD, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (granting

18  motion to stay discovery pending resolution of arbitration motion because the defendant would "lose

19  the advantages of arbitration" unless discovery is stayed, and that courts "routinely grant stays under

20  similar circumstances" but allowing a single deposition where the deponent was about to move to

21  India); *Stiener v. Apple Computer, Inc.*, No. C 07- 4486 SBA, 2007 WL 4219388, at *1 (N.D. Cal.

22  Nov. 29, 2007) (holding same and citing cases); *Hill v. Asset Acceptance, LLC*, No. 13CV1718-BEN

23  BLM, 2014 WL 1289578, at *2 (S.D. Cal. Mar. 27, 2014) (staying discovery and vacating all future

24  pretrial deadlines pending resolution of a motion to compel arbitration); *Miceli v. Citigroup, Inc.*, No.

25  215CV01962GMNVCF, 2016 WL 1170994, at *2 (D. Nev. Mar. 22, 2016) (staying discovery pending

26  a ruling on the motion to compel arbitration in the "interest of conserving resources"); *Andrus v. D.R.*

27  *Horton, Inc.*, No. 2:12-CV-00098-ECR, 2012 WL 1971326, at *3 (D. Nev. June 1, 2012) (holding

28  same).  To proceed with discovery, much less with expedited discovery at the frantic pace Plaintiffs'

propose, would frustrate Defendants' rights to the benefits of arbitration under the FAA.  The only case Plaintiffs cited from this district is completely inapposite, as it had nothing to do with arbitration, but involved a request to stay all discovery and motion practice on collective FLSA claims until plaintiff's individual claims were resolved.  *Otey*, 2013 WL 1915680 at *1.

**B.**      **Identified Discovery Disputes**

**Plaintiffs' Statement**

Plaintiffs believe the parties should conduct discovery on the topics identified in Section C below on an expedited basis to allow for substantial completion of fact discovery by November 15.  As noted above, Plaintiffs' initial document requests are based in substantial part on document requests served by the Office of the Los Angeles City Attorney four months ago.  Consequently, the burden on Intuit's to produce documents on an expedited basis should be manageable.

**Defendant's Statement**

Discovery prior to the Court's decision on the motion to compel arbitration or, if necessary, the Court's decision on a motion to dismiss is premature.  A stay of non-arbitration discovery would prevent wasteful expenditure of the Parties' and judicial resources.  Any discovery related to Plaintiffs' claims should take place in arbitration subject to the AAA rules and under the oversight of the arbitrator.

Intuit proposes that the Parties and the Court revisit scheduling non-arbitration merits discovery, if necessary, after the Court's decision on the motion to compel arbitration.  To the extent that the Court wishes to set a discovery schedule before the ruling on Intuit's motion to compel arbitration, Intuit believes that three months to complete fact discovery is wholly unrealistic, especially in light of the scope described below and the need to coordinate with other actions.  Discovery has begun in the related *People of California v. Intuit Inc.* case pending in Los Angeles Superior Court but there is no deadline for completion and no trial date has been set.  Intuit instead proposes that the parties have ten months to complete fact discovery after the date of the Court's ruling on Intuit's motion to compel arbitration, if that motion is denied.  Intuit proposes an additional three months for expert discovery relating to class certification issues, and then, following a ruling on the class certification motion, an additional four months to complete merits expert discovery and discovery relating to damages issues.

In the Los Angeles City Attorney's action, Intuit's demurrer is still under submission.  No discovery deadlines have been set, and discovery has just commenced.  The fact that Intuit received discovery requests in that action by no means makes expedited production feasible here.  To the contrary, the pendency of multiple actions requires coordination.

**C.**     **Scope of Anticipated Discovery**

Plaintiffs intend to take discovery including the following topics relating to their claims:

- The design and promotion of TurboTax Freedom Edition and TurboTax Free Edition, including the decision to promote two competing products with similar trade names, suppressing Freedom Edition from online search engine results, and promoting its commercial products at the expense of the no-cost Freedom Edition;

- Technical information and market research concerning TurboTax and online tax preparation services, including the Free Edition and the Freedom Edition;

- Intuit's internal communications relating to its promotion of the TurboTax Freedom Edition and Free File Program and compliance with its obligations under the Free File Agreement;

- Intuit's internal studies or analyses relating to Intuit relating TurboTax Freedom Edition and TurboTax Free Edition;

- Data relating to the use and profitability of the TurboTax, including the numbers of returns filed using TurboTax Freedom Edition and the number of returns filed using TurboTax Free Edition (including the number of returns filed at no charge using TurboTax Free;

- Intuit's pricing of its TurboTax services, including to taxpayers eligible to file for free under the Free File Program;

- Intuit's revenues and profits derived from TurboTax, including from taxpayers eligible to file for free under the Free File Program;

- Intuit's statements and actions in anticipation of and following reports that emerged in April 2019 of its actions relating to TurboTax and the Free File Program;

- Intuit's communications with taxpayers relating to the Free File Program or taxpayer access to online tax preparation services at no charge to the filer;

- Documents related to the named Plaintiffs;

15

- Intuit's communications with other members of the Free File Alliance regarding the Free File Program; and

- Intuit's evidence in support of any motion to compel arbitration and other topics relevant to Intuit's motion and Plaintiffs' opposition.

Plaintiffs also reserve the right to discovery relevant to any defense asserted by Intuit.

**Defendant's Position:**

Intuit reserves its right to object to Plaintiffs' overbroad discovery topics and maintains that non-arbitration merits discovery should not commence in this forum until the Court decides Intuit's motion to compel arbitration.

### D.   Electronically Stored Information (ESI)

Plaintiffs sent a proposed ESI protocol based on the Northern District of California model to Defendants on September 25, 2019.

### E.   Privilege/Confidentiality Issues and Trial Preparation Materials

Plaintiffs sent a draft protective order based on the Northern District of California model to Intuit on September 24, 2019.

### F.   Proposed Changes to the Federal Rules' Discovery Limitations

**Plaintiffs' Position**

Plaintiffs propose that the 30-day time period for responding to discovery requests be shortened to 7 days and that the parties agree to other good-faith measures to allow for the conduct of expedited discovery.  Plaintiffs do not propose any modifications to the other discovery limitations in the Federal Rules at this time.

**Defendant's Position**

Intuit strongly objects to the proposal to shorten time for discovery.  This action is a major, national class action, relating to millions of TurboTax users, one of five now pending alongside simultaneous regulatory investigation.  Plaintiffs have advised that they seek discovery over a period relating back to 2002.  The categories of information described above are vast to say the least, including communications with consumers about Free File, and communications with a dozen other members of the Free File Alliance, internal communications about Free File and the IRS MOU, and

16

1    many other expansive issues.  Plaintiffs filed this action five months ago in May.  To now propose, in

2    October, to compress discovery into two months is preposterous.

3            Other than Intuit's entitlement to depose each Plaintiff and proposed class representative, in

4    addition to their other witnesses, the parties do not propose any modifications to the discovery

5    limitations in the Federal Rules at this time.

6            The parties reserve their right to seek to limit or expand the use of any discovery device by

7    stipulation or upon a showing of good cause.

8                    **9.    <u>Class Actions</u>**

9            All attorneys of record for the parties have reviewed the Procedural Guidance for Class Action

10   Settlements.  Pursuant to Civil Local Rule 16-9(b), the parties provide further statements regarding

11   class action issues below.

12           **<u>Plaintiffs' Statement</u>**

13           (1)    This action is maintainable as a class action under Rules 23(b)(2) and (b)(3).

14           (2)    This action is brought on behalf of the named Plaintiffs and a nationwide class.  The

15   class members are taxpayers who paid Intuit a fee to file a federal income tax return through

16   TurboTax, and qualified to file such tax return for free under the IRS Free Filing Program.  The

17   following persons and entities are excluded from the class: Intuit's officers, directors, affiliates, legal

18   representatives, employees, successors, subsidiaries, and assigns.  Also excluded from the Class is any

19   judge, justice or judicial officer presiding over this matter and the members of their immediate

20   families and judicial staff.  Plaintiffs reserve the right to modify, change, or expand the class

21   definition, including by proposing subclasses, based upon discovery and further investigation.

22           (3)    The following facts demonstrate that this action is maintainable as a class action:

23           **Numerosity –** While the precise number of class members is presently unknown to Plaintiffs,

24   Plaintiffs are informed and believe that the class is made up of millions of individuals.

25           **Common Questions –** All of the principal factual issues in dispute (*supra* part 2) and disputed

26   points of law (*supra* part 3) are common to all class members, and predominate over any individual

27   questions because these issues of fact and law will drive the resolution of the claims.

28

**JOINT CASE MANAGEMENT STATEMENT**
Case No. 3:19-cv-02546-CRB

**Typicality –** Plaintiffs' claims are typical of those of the class in that Plaintiffs, like all class members, paid Intuit a fee to file a federal income tax return through TurboTax, even though they are eligible to file for free under the IRS Free File program.

**Adequacy –** Plaintiffs have no interests adverse or antagonistic to those of the class and have retained competent and experienced counsel to prosecute the action.

**Superiority –** Given the size of individual class members' claims, the expense and burden of litigation make it economically and procedurally impracticable for class members to pursue individual claims.

**Defendant's Common Conduct –** Intuit has acted or refused to act on grounds generally applicable to the class, making final injunctive relief and declaratory relief appropriate with respect to the class as a whole.

Plaintiffs propose November 29, 2019 as the deadline to move for class certification under Rule 23(b)(2) for purposes of injunctive relief only, with Plaintiffs' motion for certification under Rule 23(b)(3) for purposes of equitable relief in the nature of restitution deferred until the Court has decided the issue of injunctive relief.

**Defendant's Statement**

Intuit maintains that this matter is not appropriate on a class-wide basis for numerous reasons. Intuit will oppose class certification under FRCP 23 and reserves the right to file an affirmative motion to deny class certification. Among other issues, there are a multitude of individualized issues about whether or not any paying Turbo Tax user would have been eligible for some other providers' Free File program in any particular year; whether that user chose to pay for TurboTax due to the additional services and features it provided; why that user came to use TurboTax, including his or her knowledge of Free File and access and reliance on any marketing materials.

Segregation of class certification into two stages, one for (b)(2) class and another for (b)(3) classes would be inefficient and achieve no benefit. As noted above, so long as this action holds out the possibility of a (b)(3) class for individual financial recoveries, which requires opt out rights as a matter of due process, Plaintiffs cannot obtain a favorable adjudication on the merits prior to the opt out process.

1

### 10.   Related Cases

2   On May 21, 2019, the Office of the Los Angeles City Attorney filed a Notice of Related Case,

3   identifying the following related actions:

4   • *People v. Intuit Inc.*, No. 19STCV15644 (Los Angeles Superior Court); and

5   • *Macklin v. Intuit, Inc.*, No. 19CV347208 (Santa Clara Superior Court).

6   *See* Dkt. 24.

7   On September 18, 2019, an action styled *Ostrovsky v. Intuit, Inc.*, Case No. 5:19-cv-05823-NC

8   was filed in this Court alleging deceptive conduct similar to that alleged in this action.  Plaintiffs filed

9   an Administrative Motion to Relate *Ostrovsky* to this case on September 27, 2019. Pursuant to the

10  Court's order approving the parties' Stipulation re Consolidation and Appointment of Counsel,

11  *Ostrovsky* should be consolidated with this matter and administratively closed. *See* Dkt. 42, 73.

12  On September 23, 2019, the Santa Clara County Counsel filed a Notice of Related Case,

13  identifying the following additional related actions:

14  • *People v. Intuit Inc.*, No. 19CV354178 (Santa Clara Superior Court); and

15  • *Callaway v. Intuit, Inc.*, No. 19CV354484 (Santa Clara Superior Court).

16  And, as noted above, congressional leaders—including those who head the committee with

17  jurisdiction over the IRS (the Senate Finance Committee)—have called on the agency to examine the

18  Free File Program and amend the MOU "to bar whatever deceptive acts and practices the IRS might

19  uncover."[12]  The IRS has engaged an independent auditor to conduct a comprehensive review, and the

20  Treasury Inspector General for Tax Administration is likewise "launching an audit of the Free File

21  program."[13]

22  ### 11.   Relief

23  #### Plaintiffs' Statement

24  Plaintiffs seek an order: (a) certifying the class and appointing Plaintiffs and their counsel to

25  represent the class; (b) granting appropriate injunctive and/or declaratory relief, including through an

26

27  [12] Letter from Senators Charles Grassley and Ron Wyden to Commissioner Charles Rettig (May 6, 2019); *see also* Rosenberg, *supra* n.11.

28  [13] *See* Elliott, *supra* n.8; *see also* Rosenberg, *supra* n.11.

injunction prohibiting Intuit from committing the unlawful acts and omissions at issue in this litigation; (c) awarding equitable relief including restitution of all monies paid to Intuit by any person who qualified for free tax-return filings pursuant to the Free File Program and who paid money to Intuit to file a return; (d) awarding Plaintiffs and the class their reasonable costs and expenses incurred in the action, including counsel and expert fees; and (e) granting such other and further relief as the Court deems just and proper.

### Defendant's Statement

Intuit disputes that Plaintiffs are entitled to any relief at all, or that Plaintiffs may establish a class-wide basis for awarding restitution or obtaining injunctive relief.  As outlined further in Section 17 below, Plaintiffs' demand for injunctive relief is unfeasible, premature, and risks conflicting outcomes and obligations.  And Plaintiffs are not entitled to any restitution where over *11 million people* filed their taxes using TurboTax Free Edition absolutely free, and additional 1.2 million people filed their taxes for free through Intuit's Free File Program offer.  Intuit reserves all of its defenses and any right to recover its attorneys' fees and costs.

### 12.    Settlement and ADR

#### Plaintiffs' Statement

At the Rule 26 conference, Plaintiffs and Defendant discussed the possibility of seeking referral to a magistrate in the Northern District to oversee settlement negotiations. The timing of any such referral was deferred pending the October 4, 2019, status conference.

#### Defendant's Statement

Intuit believes that scheduling ADR in this matter is premature because the contours of the Free File Program for Tax Year 2019 are not set and it is entirely unclear what the Free File Program will look like in Tax Year 2019, as discussed in further detail in Section 17.

### 13.    Consent to Magistrate Judge for All Purposes

The parties decline the option of having a magistrate judge conduct all further proceedings (including trial and entry of judgment).

### 14.    Other References

The parties do not believe this case is suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation.

### 15.    Narrowing of Issues

**Plaintiffs' Statement**

Plaintiffs believe that a statement of stipulated facts may narrow the issues in dispute. Plaintiffs intend to seek in good faith to reach agreement on such a statement with Intuit.

**Defendant's Statement**

Apart from addressing any motion to compel arbitration before any Rule 12 motion (Order at 5), the parties do not believe that the issues in this case can be further narrowed at this time. Intuit will, of course, participate in good faith in developing statements of undisputed facts at the appropriate junctures in the case.

### 16.    Expedited Trial Procedure

The parties do not agree to the expedited trial procedure contemplated in General Order No. 64. Plaintiffs believe that this case can be handled on an expedited basis with streamlined procedures. Intuit disagrees with Plaintiffs' position for the reasons outlined above, and because this is purportedly a major class action, involving millions or unidentified class members, addressing a long-term course of conduct over numerous years, with complex factual issues relating to the involvement of the IRS and other private party participants in the Free File Program.

### 17.    Scheduling

**Plaintiffs' Statement**

As described above, Plaintiffs anticipate moving for final injunctive relief on their UCL claims by November 29, the deadline proposed below. Plaintiffs also anticipate moving for class certification under Rule 23(b)(2) on or before that date. Plaintiffs propose that the Court rule on their injunction motion before addressing certification under Rule 23(b)(3) and restitution. Plaintiffs accordingly propose the following case deadlines.

| Name of Filing or Event | To Occur On or Before |
|---|---|
| Defendant's Response to Consolidated Complaint | October 28, 2019 |
| Substantial Completion of Defendant's Production of Documents in Response to Plaintiffs' First Set of Requests for Production of Documents | October 14, 2019 |
| Disclosure of Expert Witnesses | November 1, 2019 |
| Completion of Non-Expert Discovery | November 15, 2019 |
| Completion of Expert Discovery | November 29, 2019 |
| Motions for Final Injunctive Relief and/or Summary Judgment | November 29, 2019 |
| Oppositions to Motions for Final Injunctive Relief and/or Summary Judgment | December 6, 2019 |
| Replies in Support of Final Injunctive Relief and/or Motions for Summary Judgment | December 10, 2019 |
| Hearing on Motions for Final Injunctive Relief and/or Summary Judgment | December 13, 2019 |
| ADR | TBD |

**<u>Defendant's Statement</u>**

Intuit proposes that the parties and the Court revisit scheduling non-arbitration merits discovery, class certification, dispositive motions, expert-related deadlines, only if necessary, after the Court's decision on the motion to compel arbitration.

To the extent that the Court wants to go forward with scheduling at this time, Intuit will file a competing schedule. Intuit notes, as stated above, that ten days to complete the document discovery Plaintiffs claim they seek is absurdly unrealistic, as are the other dates proposed, and especially in light of the scope of the allegations of the consolidated complaint and the need to coordinate with other actions.

Further, to the extent that Plaintiffs seek a decision on the merits and injunctive relief prior to tax year 2019, the reality is that such a demand is unfeasible, premature, and risks conflicting outcomes and obligations. Pending its review of the Program, the IRS has not announced the Program's contours and rules for Tax Year 2019 and since participation is voluntary, it remains to be seen who will participate in

next year's Program.  In short, it is entirely unclear what the Free File Program will look like in Tax Year 2019.

The uncertainty around the terms of the Program only serves to highlight that injunctive relief would be inappropriate.  Granting such relief would interfere with the IRS's congressionally assigned role and industry expertise.  Any injunctive relief awarded in this action would usurp and interfere with the IRS Free File Program and potentially disrupt the balance of rights and obligations of the IRS and the FFA members outlined in the Free File Agreement and MOUs that encourages Intuit and other private sector companies' voluntary participation in the Program.

### 18.   **Trial**

**Plaintiffs' Statement**

Plaintiffs request that the Court set a trial date for determination of any remaining triable issues of fact after the Court hears Plaintiffs' motion for final injunctive relief, with the length of trial a function of the issues to be tried.

**Defendant's Statement**

Intuit submits that it is premature to set a trial date at this time.

### 19.   **Disclosure of Non-Party Interested Entities or Parties**

Plaintiffs Andrew Dohrmann, Laura Nichols, Brianna Sinohui, Joseph Brougher, and Monica Chandler and Defendant Intuit have filed certifications of interested entities or persons under Civil Local Rule 3-15, and in each instance there is no such interest to report.  No person or entity is funding the prosecution of any claim or counterclaim.  With respect to all named parties in the consolidated action, there are no other persons, firms, partnerships, corporations (including parent corporations), or other entities known by them to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

### 20.   **Professional Conduct**

All counsel of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 21. Other Matters

The parties are not presently aware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this action.

Dated: September 27, 2019

Respectfully submitted,

By:   /s/ *Daniel C. Girard*

Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
aornelas@girardsharp.com
sgrille@girardsharp.com

Norman E. Siegel (*pro hac vice*)
Austin Moore (*pro hac vice*)
Jillian Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
siegel@stuevesiegel.com
moore@stuevesiegel.com
dent@stuevesiegel.com

*Co-Lead Interim Counsel*

By:   /s/ *Rodger R. Cole*
Rodger R. Cole (SBN 178865)
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:19-cv-02546-CRB

Tel. (650) 988-8500
Fax. (650) 938-5200
rcole@fenwick.com
*Counsel for Defendant Intuit Inc.*

## ATTESTATION

I, Daniel C. Girard, am the ECF user whose identification and password are being used to file this Joint Case Management Conference Statement.  I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel listed above.

DATED: September 27, 2019

*/s/ Daniel C. Girard*
Daniel C. Girard

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:19-cv-02546-CRB