RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
CRYSTAL A. NWANERI (CSB No. 318955)
cnwaneri@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

Attorneys for Defendant
INTUIT INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE INTUIT FREE FILE LITIGATION | Master File No.: 3:19-cv-02546-CRB |
| This Document Relates to:  All Actions | **DEFENDANT INTUIT INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |
| | Date:      December 13, 2019<br>Time:      10:00 a.m.<br>Ctrm:      6, 17th Floor<br>Judge:  Hon. Charles R. Breyer |
| | Date Action Filed:  May 1, 2019 |

1

# TABLE OF CONTENTS

2

**Page**

3   NOTICE OF MOTION AND MOTION ................................................................... 1

4   MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 2

5   INTRODUCTION ................................................................................................... 2

6   FACTUAL BACKGROUND .................................................................................. 2

7        A.    The Arbitration Agreement Governing This Action............................... 2

8        B.    Plaintiffs' Use of the Product and Acceptance of the TERMS............... 5

9        C.    Plaintiffs' Claims in this Action............................................................. 6

10   ARGUMENT .......................................................................................................... 6

11   I.      PLAINTIFFS AGREED TO ARBITRATE ALL CLAIMS AGAINST INTUIT.............. 7

12        A.    The FAA Governs the Agreement to Arbitrate....................................... 7

13        B.    Plaintiffs Agreed to Arbitrate Any Disputes with Intuit. ....................... 7

14   II.     INTUIT'S MOTION MUST BE GRANTED BECAUSE THE PARTIES
15          AGREED TO DELEGATE THE THRESHOLD QUESTIONS OF
           ARBITRABILITY TO THE ARBITRATOR. ......................................................... 9

16   III.    IN ALL EVENTS, PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF
17          THE AGREEMENT TO ARBITRATE, AND THE AGREEMENT IS
           ENFORCEABLE. .................................................................................................. 11

18        A.    Plaintiffs Unmistakably Agreed to Arbitrate Their Respective Claims............... 12

19        B.    Plaintiffs' Claims for Restitution, and Their Claims on Behalf of a
20             Putative Class, Are Subject to Individual Arbitration............................ 13

21        C.    The Injunctive and Equitable Relief Provision in the TurboTax
             Arbitration Agreement Does Not Allow Plaintiffs to Evade Arbitration. ............ 14

22        D.    Plaintiffs Cannot Avoid Arbitration by Purporting to Seek "Public
23             Injunctive Relief." ................................................................................. 17

24        E.    The TurboTax Arbitration Agreement Is Not Unconscionable. ........................... 20

25   CONCLUSION ..................................................................................................... 21

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aanderud v. Super. Ct.*,
13 Cal. App. 5th 880 (2017) ................................................................................20

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .........................................................................................20

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................... *passim*

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .............................................................................................12

*Bell-Sparrow v. SFG*Proschoicebeauty*,
Case No. 18-cv-06707, 2019 WL 1201835 (N.D. Cal. Mar. 14, 2019) .................19

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019) ...........................................................................18, 20

*Blair v. Rent-A-Ctr., Inc.*,
No. C 17-02335 WHA, 2017 WL 4805577 (N.D. Cal. Oct. 25, 2017),
*aff'd in part, appeal dismissed in part*, 928 F.3d 819 (9th Cir. 2019) ...................18

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .............................................................................10

*Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*,
No. 5:13-CV-02559-EJD, 2014 WL 116442 (N.D. Cal. Jan. 13, 2014) ................21

*Broughton v. Cigna Healthplans of California*,
21 Cal. 4th 1066 (1999) .......................................................................................18

*Callaway v. Intuit Inc.*,
No. 19CV354484 (Santa Clara Superior Court) ....................................................11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .............................................................................13

*City of Los Angeles v. Super. Ct.*,
56 Cal. 4th 1086 (2013) .......................................................................................12

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) .................................................................15, 16, 17

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ..............................................................8, 9, 10

*Cruz v. PacifiCare Health Systems, Inc.*,
30 Cal. 4th 303 (2003) .........................................................................................18

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page(s)**

3

*Diaz v. Intuit, Inc.*,
  No. 5:15-CV-01778-EJD, 2017 WL 4355075 (N.D. Cal. Sept. 29, 2017),
4
  *motion to certify appeal denied*, No. 5:15-CV-01778-EJD, 2018 WL 934875
  (N.D. Cal. Feb. 16, 2018)..........................................................................................10

5

*DIRECTV, Inc. v. Imburgia*,
6
  136 S.Ct. 463 (2015) ................................................................................................7

7

*Dream Theater, Inc. v. Dream Theater*,
  124 Cal. App. 4th 547 (2004), *as modified on denial of reh'g* (Dec. 28, 2004) .......10
8

*Ferguson v. Corinthian Colleges, Inc.*,
9
  733 F.3d 928 (9th Cir. 2013)........................................................................11, 12, 18

10

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)..................................................................................................7
11

*Fteja v. Facebook, Inc.*,
12
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) .......................................................................8

13

*Gountoumas v. Giaran, Inc.*,
  No. CV 18-7720-JFW(PJWx), 2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) ..........10
14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
15
  139 S.Ct. 524 (2019) ................................................................................................9

16

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ...................................................................................................6
17

*Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*,
18
  No. 17 C 2066, 2017 WL 2720433 (N.D. Ill. June 23, 2017)....................................17

19

*Iskanian v. CLS Transportation Los Angeles, LLC*,
  59 Cal. 4th 348 (2014) ............................................................................................14
20

*Johnson v. JP Morgan Chase Bank, N.A.*,
21
  No. EDCV172477JGBSPX, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ...........19

22

*Khalatian v. Prime Time*,
  237 Cal. App. 4th 651 (2015) ..................................................................................13
23

*Kin Wah Kung v. Experian Info. Sols., Inc.*,
24
  No. C 18-00452 WHA, 2018 WL 2021495 (N.D. Cal. May 1, 2018).........................11

25

*Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*,
  76 Cal. App. 4th 227 (1999) ....................................................................................13
26

*Lewis v. UBS Fin. Servs. Inc.*,
27
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) ...................................................................21

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page(s)**

3

*McArdle v. AT&T Mobility LLC,*
    772 F. App'x 575 (9th Cir. 2019) ..........................................................................20

4

*McGill v. Citibank, N.A.,*
    2 Cal. 5th 945 (2017) ...........................................................................17, 18, 19

5

6

*McKesson Corp. v. Health Robotics, S.R.L.,*
    No. C-11-00728 JCS, 2011 WL 3157044 (N.D. Cal. July 26, 2011) ......................................16

7

*Mortensen v. Bresnan Commc'ns, LLC,*
    722 F.3d 1151 (9th Cir. 2013)..........................................................................20

8

9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983), *superseded by statute on other grounds* ................................12, 17

10

*Nicosia v. Amazon.com, Inc.,*
    384 F. Supp. 3d 254 (E.D.N.Y. 2019) ..........................................................................21

11

12

*Oracle Am., Inc. v. Myriad Grp. A.G.,*
    724 F.3d 1069 (9th Cir. 2013)..........................................................................10

13

*PacifiCare Health Sys., Inc. v. Book,*
    538 U.S. 401 (2003)..........................................................................6

14

*Perry v. Thomas,*
    482 U.S. 483 (1987)..........................................................................7

15

16

*Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.,*
    816 F. Supp. 215 (S.D.N.Y. 1993)..........................................................................17

17

18

*Rent-A-Ctr., W., Inc. v. Jackson,*
    561 U.S. 63 (2010)..........................................................................9, 11, 20

19

*Republic of Nicaragua v. Standard Fruit Co.,*
    937 F.2d 469 (9th Cir. 1991)..........................................................................12

20

*Rodriguez v. Am. Tech., Inc.,*
    136 Cal. App. 4th 1110 (2006) ..........................................................................7, 10

21

22

*Sanchez v. Valencia Holding Co.,*
    61 Cal. 4th 899 (2015) ..........................................................................20, 21

23

24

*Sandquist v. Lebo Auto., Inc.,*
    1 Cal. 5th 233 (2016) ..........................................................................9

25

*Selden v. Airbnb, Inc.,*
    No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016)......................................8

26

27

*Silverman v. Move Inc.,*
    No. 18-CV-05919-BLF, 2019 WL 2579343 (N.D. Cal. June 24, 2019) ......................................8

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

3

*Starke v. Gilt Groupe, Inc.*,
No. 13 CIV. 5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...................................8

4

*Tillage v. Comcast Corp.*,
5       772 F. App'x 569 (9th Cir. 2019) ...........................................................20

6

*Wright v. Sirius XM Radio Inc.*,
No. SACV1601688JVSJCGX, 2017 WL 4676580 (C.D. Cal. June 1, 2017) .........................19

7

8

**STATUTES**

9

9 U.S.C. §§ 1 *et seq.*..............................................................................2, 7, 21

10

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................................6, 18

11

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ............................................................18

12

Cal. Civil Code §§ 1750 *et seq.* ................................................................12, 18

13

Cal. Civil Code §§ 1780 *et seq.* ....................................................................6

14

**RULES**

15

AAA Rule 14(a) (2014) ...............................................................................9

16

AAA Rule 37(d).......................................................................................15

17

Fed. R. Civ. P. 23(b)(3)............................................................................2, 16

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

## NOTICE OF MOTION AND MOTION

2   **TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3          **PLEASE TAKE NOTICE** that on December 13, 2019 at 10:00 am, or as soon thereafter

4   as the matter may be heard in Courtroom 6, 17th Floor, of the United States federal district court

5   for the Northern District of California, San Francisco Division, located at 450 Golden Gate

6   Avenue, San Francisco, CA 94102, Defendant Intuit Inc. ("Intuit"), shall and hereby does move

7   the Court for an order compelling Plaintiffs Andrew Dohrmann, Laura Nichols, Brianna Sinohui,

8   Joseph Brougher, and Monica Chandler (collectively, "Plaintiffs") to arbitrate their respective

9   claims for relief on an individual basis pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et*

10  *seq.*

11          This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and

12  upon the grounds that Plaintiffs separately agreed to arbitrate their claims when they each agreed

13  to the terms and conditions that govern their respective use of TurboTax.  This Motion is based

14  on this Notice of Motion and Motion, Intuit's Memorandum of Points and Authorities, the

15  Declarations of Jaimz Davis, Ergang Sun, and Molly Melcher in Support of Intuit's Motion to

16  Compel Arbitration and the attached exhibits, all documents in the Court's file, and such other

17  written or oral argument as may be properly presented to the Court at the time of the hearing or

18  otherwise.

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs brought this dispute in the wrong forum.  When they created their respective TurboTax accounts, and every time they logged into those account to prepare their taxes, they agreed to the terms and conditions that govern their respective use of TurboTax (the "TERMS"[1]). The TERMS clearly and unmistakably required each Plaintiff to resolve any dispute they have with Intuit through individual arbitration before the American Arbitration Association ("AAA"). Under both the plain language of the arbitration provision, and the Federal Arbitration Act's ("FAA") objective to encourage private dispute resolution, this dispute belongs in arbitration, not in court.

Plaintiffs cannot ignore their individual agreements to arbitrate with Intuit.  The Complaint in this action seeks among other things restitution, and indeed Plaintiffs seek to certify a class for economic relief under Rule 23(b)(3) of Federal Rules of Civil Procedure.  There is no question that under the TERMS such claims must be decided in individualized, binding arbitration.  Nor can Plaintiffs avoid arbitration here by framing their claims as including injunctive or other equitable relief, because the TERMS require those claims to go to arbitration too.  Indeed, the TERMS authorize only a "party to an arbitration" to seek equitable relief in court ancillary to the proceeding in arbitration.  For these reasons and as set forth in detail below, Intuit respectfully requests that the Court grant its motion to compel arbitration.

## FACTUAL BACKGROUND

### A.    The Arbitration Agreement Governing This Action.

Intuit, a software company based in Mountain View, offers TurboTax tax preparation software in online and desktop versions.  Compl. ¶¶ 1, 12.  To use TurboTax, users must either create and/or sign in to their existing Intuit accounts.  Sun Decl. ¶ 4.  When they do so, they agree to the TERMS.

In Tax Year 2018 (calendar year 2019), when Plaintiffs each filed their taxes using

---

[1] A true and correct copy of the TERMS is attached as Exhibit 1 to the Declaration of Ergang Sun ("Sun Decl.").

1  TurboTax Online tax preparation services, they could not proceed to do their taxes without first

2  entering their respective login information and signing into their accounts.  *Id.* ¶¶ 4, 5, 14, 26; *see*

3  *also* Declaration of Jaimz Davis ("Davis Decl.") ¶¶ 6, 7a-e.  Users of the TurboTax Online

4  website would have been presented with the following login screen when logging into their

5  respective accounts:



24  Sun Decl. ¶ 5.  Immediately underneath the "Sign in" button was text that read: "*By clicking Sign*

25  *In, you agree to the Turbo Terms of Use, TurboTax Terms of Use and have read and*

26  *acknowledge our Privacy Statement*."  *Id.*  The term "*TurboTax Terms of Use*" on this page is

27  hyperlinked text that the user could click to go directly to the TERMS.  *Id.* ¶ 6.[2]

28  _____

[2] In March 2019, Intuit made some minor changes to the "Sign In," "Create an account," and

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

Similarly, users of the TurboTax Mobile App for Android would have been presented with the following login screen when logging into their accounts during Tax Year 2018:



Sun Decl. ¶¶ 25-26.  Immediately underneath the blue "Sign in" button here, the screen notifies the user that "*By tapping Sign In, you agree to our License Agreement and Privacy Statement*." *Id*. ¶ 27.  The term "*License Agreement*" on this page is hyperlinked text that the user could click to go directly to the TERMS.  *Id.* ¶ 28.

Section 14 of the TERMS contains this dispute resolution provision:

14. DISPUTES.  ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify.  The Federal Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall apply California law to all other matters.  Notwithstanding anything to the contrary, any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction.  WE EACH AGREE THAT ANY AND ALL DISPUTES MUST BE BROUGHT IN THE PARTIES' INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.  BY ENTERING INTO THIS AGREEMENT AND AGREEING TO ARBITRATION, YOU AGREE THAT YOU AND INTUIT ARE EACH WAIVING THE RIGHT TO FILE A LAWSUIT AND

"Account Recovery" pages on the TurboTax Online website. *See* Sun Decl. ¶¶ 14-23.

THE RIGHT TO A TRIAL BY JURY.  IN ADDITION, YOU AGREE TO WAIVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR LITIGATE ON A CLASS-WIDE BASIS.  YOU AGREE THAT YOU HAVE EXPRESSLY AND KNOWINGLY WAIVED THESE RIGHTS. . . .

### B.    Plaintiffs' Use of the Product and Acceptance of the TERMS.

Plaintiffs are five individuals who allege they used TurboTax to prepare and file their taxes during Tax Year 2018.  Compl. ¶¶ 7-11, 16-45.  Each time Plaintiffs signed in to TurboTax in Tax Year 2018 to do so, they were informed that, by signing in, they agreed to the TERMS.  Davis Decl. ¶ 7a-e; Sun Decl. ¶¶ 5-6, 14-15, 19-23, 25-28.

Plaintiff Dohrmann's account was logged into on April 14, 2019, through the "Account Recovery" page on the Intuit TurboTax Online website.  Davis Decl. ¶ 7a.  Mr. Dohrmann's taxes were filed through TurboTax Online on April 14, 2019.  *Id.*

Plaintiff Nichols' account was logged into on the Intuit TurboTax Online website on January 30, 2019, February 1, 2019, and February 4, 2019.  *Id.* ¶ 7b.  Ms. Nichols' taxes were filed through TurboTax Online on January 30, 2019.  *Id.*

Plaintiff Sinohui's husband's account[3] was logged into through the Intuit TurboTax Mobile App on an Android device on January 13, 2019, January 27, 2019, January 28, 2019, January 29, 2019, January 31, 2019, February 2, 2019, February 9, 2019, February 10, 2019, February 11, 2019, February 12, 2019, February 14, 2019, February 16, 2019, February 18, 2019, February 19, 2019, February 20, 2019, February 21, 2019, and February 22, 2019.  *Id.* ¶ 7c.  Plaintiff Sinohui's husband's account was logged into on the Intuit TurboTax Online website on February 13, 2019.  *Id.* Mr. and Ms. Sinohui's joint taxes were filed through the TurboTax Mobile App for Android on January 27, 2019.  *Id.*

Plaintiff Brougher's account was logged into on the Intuit TurboTax Online website on January 22, 2019, January 26, 2019, and February 4, 2019.  Davis Decl. ¶ 7d.  Mr. Brougher's taxes were filed through TurboTax Online on January 26, 2019.  *Id.*

Plaintiff Chandler's account was logged into on the Intuit TurboTax Online website on

---

[3] Plaintiff Sinohui alleges that she used TurboTax to prepare and file her tax returns for Tax Year 2018.  Compl. ¶ 28.  For purposes of this motion only, Intuit presumes that Ms. Sinohui used her husband's account to file her and her husband's joint tax returns in Tax Year 2018.

FENWICK & WEST LLP
ATTORNEYS AT LAW

March 2, 2019, March 3, 2019, March 6, 2019, March 15, 2019, April 1, 2019, and April 7, 2019.

*Id.* ¶ 7e. Ms. Chandler's taxes were filed through TurboTax Online on March 2, 2019. *Id.*

Each time Plaintiffs logged in, they agreed to the TERMS and their arbitration agreement.

*Id.* ¶ 7a-e; Sun Decl. ¶¶ 5-6, 14-15, 19-23, 25-28.

### C.     Plaintiffs' Claims in this Action.

Plaintiffs' Complaint, mostly taken from inaccurate online articles, rests on Intuit's

participation in a long-running IRS initiative called the Free File Program. *See* Compl. ¶¶ 46 -

52. Through this public-private partnership, participating companies donate software that permits

limited eligible taxpayers to prepare and file their taxes for free. The gravamen of Plaintiffs'

Complaint is that, although they claim to have been eligible to file their taxes using TurboTax's

Free File Program offering, they instead paid to use TurboTax's commercial software, which is

offered on turbotax.com. *Id.* ¶¶ 73-94. They assert claims under California's Unfair Competition

Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, including based on purported violations

of the Consumer Lega1 Remedies Act ("CLRA"), Cal. Civ. Code §§ 1780 *et seq.*, and for unjust

enrichment. *See* Compl. ¶¶ 120-153. Plaintiffs purport to seek individual restitution and

injunctive relief. *See, e.g.*, *id.* ¶¶ 102-107. And the Complaint alleges a class defined as "[a]ll

United States citizens and residents who during the applicable limitations period were eligible to

file a federal tax return pursuant to the IRS Free File Program on Intuit's TurboTax Freedom

Edition[4] website but paid a fee to TurboTax to file such return." *Id.* ¶ 99.

### ARGUMENT

The parties' arbitration agreement is governed by the FAA, which imposes a heavy

burden on Plaintiffs seeking to avoid their agreement to arbitration. Once the Court determines

that Plaintiffs entered an agreement to arbitrate, the parties' agreement delegates *to the arbitrator*

the two primary gateway issues: (1) whether there is a valid agreement to arbitrate between the

parties; and (2) whether the agreement covers the dispute. *PacifiCare Health Sys., Inc. v. Book*,

538 U.S. 401, 407 n.2 (2003); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-

---

[4] Notwithstanding the allegations in the Complaint, TurboTax did not offer a product called
"Freedom Edition" for Tax Year 2018.

FENWICK & WEST LLP
ATTORNEYS AT LAW

84 (2002) (defining "gateway" questions of "arbitrability").  As described below, even if the Court were to reach these substantive issues—which it need not since they unmistakably have been delegated to the arbitrator—both gateway issues are easily satisfied and require arbitration here.

## I.     PLAINTIFFS AGREED TO ARBITRATE ALL CLAIMS AGAINST INTUIT.

### A.     The FAA Governs the Agreement to Arbitrate.

The arbitration agreement in the TERMS is governed by the FAA.  The TERMS explicitly state that the FAA governs their interpretation and enforcement, which is sufficient to bring the provisions within the purview of the FAA.  TERMS § 14; *Rodriguez v. Am. Tech., Inc.,* 136 Cal. App. 4th 1110, 1122 (2006).  Even without that express provision, the FAA broadly covers arbitration agreements affecting commerce, which TurboTax's nationwide tax preparation arbitration agreement certainly does.  *See* 9 U.S.C. § 2.

The FAA established a liberal policy favoring the enforcement of arbitration agreements. Agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2).  The FAA does not simply place arbitration agreements on equal footing with other contracts; rather, it "*favor[s]* arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added).  "The [FAA] is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it."  *DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 468 (2015).

### B.     Plaintiffs Agreed to Arbitrate Any Disputes with Intuit.

While the TurboTax arbitration agreement is governed by the FAA, courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether parties agreed to arbitrate.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  The TERMS provide that "California state law governs this Agreement without regard to its conflict of laws provisions."  TERMS § 13.  Indeed, based on this choice of law provision, Plaintiffs in their Complaint assert that "California law applies to the claims of all Class members . . . ."  Compl. ¶¶ 113, 114; *see also id.* ¶¶ 115-119.

1    Applying California law to the TERMS and their arbitration provisions, Plaintiffs each

2    entered separate agreements to arbitrate this dispute with Intuit when they signed into their

3    respective TurboTax online accounts.  Plaintiffs do not appear to dispute this point either: they

4    admit that Intuit "presented" the TERMS, including the TurboTax arbitration agreement, "to all

5    Plaintiffs" and further that "Plaintiffs were required to accept [the TERMS] to use the services."

6    Compl. ¶ 108.

7    Even without Plaintiffs' admission, there can be no serious dispute that Plaintiffs agreed

8    to the TERMS and TurboTax arbitration agreement when they each signed into their respective

9    TurboTax accounts.  Sun Decl. ¶¶ 5-6, 14-15, 19-23, 25-28; *see also* Davis Decl. ¶ 7a-e.  In the

10   digital context, even absent evidence of actual knowledge of an agreement, the creation of an

11   agreement turns on whether a website puts a reasonably prudent user on "inquiry notice" that

12   terms apply to their use of a service.  *Silverman v. Move Inc.*, No. 18-CV-05919-BLF, 2019 WL

13   2579343, at *11 (N.D. Cal. June 24, 2019) (applying California law and granting motion to

14   compel arbitration, based on finding that plaintiff "had at least inquiry notice" of terms).  Courts

15   have held that the "requisite notice for constructive assent" exists "where the user is required to

16   affirmatively acknowledge the agreement before proceeding with use of the website."  *Cordas v.

17   Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017) (holding that users assented to

18   Uber's terms and arbitration agreement when clicking "DONE" button to complete sign-up

19   process on a page displaying a notice "By creating an Uber account, you agree to the Terms &

20   Conditions and Privacy Policy") (citation omitted).

21   When a hyperlink to terms is provided near a "purchase" or "sign in" button, and the user

22   is informed that purchasing or signing in constitutes acceptance of those terms, the user assents to

23   the terms by clicking the button.  *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y.

24   2012) (enforcing forum selection clause based on disclosure below "Sign Up" button); *Starke v.

25   Gilt Groupe, Inc.*, No. 13 CIV. 5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014)

26   (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to

27   review those terms, and his decision to click the 'Shop Now' button represents his assent to

28   them"); *accord Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *4–5

FENWICK & WEST LLP
ATTORNEYS AT LAW

(D.D.C. Nov. 1, 2016) (granting motion to compel arbitration; collecting cases).  Plaintiffs' sign-ins to TurboTax were sufficient to create assent to arbitration and the TERMS.  *Cf. Cordas*, 228 F. Supp. 3d at 990.

## II.   INTUIT'S MOTION MUST BE GRANTED BECAUSE THE PARTIES AGREED TO DELEGATE THE THRESHOLD QUESTIONS OF ARBITRABILITY TO THE ARBITRATOR.

Just as parties can agree to arbitrate a dispute, they can also agree to arbitrate questions of arbitrability.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration" asks a court to enforce.  *Id.* at 70.  And, just "as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 530 (2019) (holding that delegation clause in arbitration agreement precludes court from examining questions of arbitrability, even where opponent of arbitration asserts that claim of arbitration rights are "wholly groundless").  Questions of arbitrability may go to the arbitrator "when the parties have demonstrated, clearly and unmistakably, that it is their intent to do so . . . ."  *Jackson*, 561 U.S. at 80.  "[I]f it is uncertain whether the issue is one for the courts or the arbitrator," courts "are well advised to allocate it to the arbitrator."  *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 255 (2016) (finding agreement "allocate[d] the decision on the availability of class arbitration to the arbitrator, rather than reserving it for a court").

Here, the parties delegated issues of arbitrability to the arbitrator when they agreed that the arbitration will be conducted under the AAA rules, which delegate arbitrability questions to the arbitrator.  TERMS § 14 ("Arbitration will be conducted by the [AAA] before a single AAA arbitrator under the AAA's rules . . . .").  The AAA Consumer Arbitration Rules, in turn, provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Rule 14(a) (2014).

"Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   arbitrate arbitrability."  *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074-75 (9th Cir.

2   2013) (collecting cases); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

3   (holding that incorporation of the AAA rules "constitutes clear and unmistakable evidence that

4   contracting parties agreed to arbitrate arbitrability").  Similarly, California courts have held that

5   when an arbitration agreement incorporates the AAA rules by reference, as Intuit's does, "the

6   parties clearly and unmistakably agree[] to have the arbitrator determine the scope of the

7   arbitration clause."  *Rodriguez*, 136 Cal. App. 4th at 1123 (contract mandating arbitration "in

8   accordance with the [AAA]'s Construction Industry Rules" delegated questions of arbitrability to

9   arbitrator); *see also Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004), *as*

10  *modified on denial of reh'g* (Dec. 28, 2004) (same with contract incorporating AAA Commercial

11  Arbitration Rules).

12          While some have argued that this rule should apply only to "sophisticated" parties, the

13  Ninth Circuit noted in *Brennan* that its holding "should not be interpreted to require that the

14  contracting parties be sophisticated or that the contract be 'commercial' before a court may

15  conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the

16  parties' intent."  *Brennan*, 796 F.3d at 1130; *see also Cordas*, 228 F. Supp. 3d  at 992 (citation

17  omitted) (observing that "'nearly every . . . decision in the Northern District of California . . . has

18  consistently found effective delegation of arbitrability regardless of the sophistication of the

19  parties'"); *Gountoumas v. Giaran, Inc*., No. CV 18-7720-JFW(PJWx), 2018 WL 6930761, at *6

20  (C.D. Cal. Nov. 21, 2018) (finding that "[t]he greater weight of authority has concluded that the

21  holding of [*Brennan*] applies similarly to non-sophisticated parties" and adopting that "majority

22  view") (alteration in original; citation omitted).

23          In cases involving Intuit's arbitration agreements nearly identical to those at issue here,

24  courts have "consistently found that the reference to AAA rules evinces a clear and unmistakable

25  intent to delegate arbitrability to an arbitrator, regardless of the sophistication of the parties."

26  *Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29,

27  2017), *motion to certify appeal denied*, No. 5:15-CV-01778-EJD, 2018 WL 934875 (N.D. Cal.

28  Feb. 16, 2018) (compelling arbitration based on historical TurboTax TERMS; collecting cases);

FENWICK & WEST LLP
ATTORNEYS AT LAW

*see also Kin Wah Kung v. Experian Info. Sols., Inc.*, No. C 18-00452 WHA, 2018 WL 2021495 (N.D. Cal. May 1, 2018) (compelling arbitration based on Intuit agreement for QuickBooks).

Accordingly, an arbitrator—and not this Court—must decide threshold questions of arbitrability, including questions of scope and enforceability.  *See Jackson*, 561 U.S. at 68-69.

### III.   IN ALL EVENTS, PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE AGREEMENT TO ARBITRATE, AND THE AGREEMENT IS ENFORCEABLE.

Even if the Court were to reach this issue rather than honoring the parties' clear delegation of the question of arbitrability to the arbitrator, Plaintiffs' respective claims are squarely within the scope of a valid, enforceable arbitration agreement, regardless of the nature of the relief requested, and the Court should compel Plaintiffs to arbitration.  Indeed, the first three of Plaintiffs' claims first seek a "finding that Intuit's conduct as described herein violates the UCL" *and then, only after a finding of liability has been made,* request an injunction based on that finding.  Compl. ¶¶ 128, 139, 146.  Likewise, their claim of unjust enrichment first requests a finding that Intuit engaged in bad conduct *and then*, based on that finding, seeks restitution.  *See* Compl. ¶¶ 147-153.  Nothing in the TERMS or any applicable law prevents an arbitrator from making that threshold finding of liability.  Nor does anything prohibit the arbitrator in the context of an individualized, binding arbitration from entering either the restitutionary or the injunctive relief.[5]

Even if there ultimately were some impediment to the arbitrator's ability to furnish complete relief here (in case of a finding of liability, which Intuit disputes), an arbitrator should still evaluate Plaintiffs' underlying substantive claim in the first instance.  The Ninth Circuit's decision in *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013) is instructive on

_____

[5] Indeed, in one of the related lawsuits pending in California Superior Court, *Callaway v. Intuit Inc.*, No. 19CV354484 (Santa Clara Superior Court), following Intuit's filing of its motion to compel arbitration in that action, Plaintiff filed a request for voluntary dismissal of the class action complaint stating that "Plaintiff no longer wishes to pursue class claims and intends to pursue individual claims in arbitration."  *See* Declaration of Molly Melcher, ¶ 2, Exh. A. Moreover, numerous petitions for arbitration have been instituted with the AAA asserting substantially similar claims to the ones here, consistent with the procedural requirements of the TurboTax arbitration agreement.  *See id.* at ¶ 3, Exh. B.  For their part, Lead Plaintiffs' Counsel themselves argued that they were suited for that position in this case because of their experience proceeding with "mass arbitrations."  *See, e.g.*, Dkt. No. 48 at 2.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    this point.  There, the Ninth Circuit considered whether an agreement to arbitrate empowered the

2    arbitrator to issue a certain type of injunctive relief.  Reversing a district court order denying

3    defendants' motion to compel arbitration, the *Ferguson* court determined that the entire case

4    should be sent to arbitration in the first instance.  *Id.* at 938.  It held that only "[i]n the event that

5    the arbitrator concludes" that defendants had "violated the UCL, FAL, or CLRA, and that entry of

6    an injunction might be appropriate, *but further determines that it lacks the authority under the*

7    *agreements at issue to grant the requested injunction*" could Plaintiffs seek the requested

8    injunction in court.  *Id.* (emphasis added).  And, even then, the Ninth Circuit stated that it

9    "express[ed] no opinion about the merits of such action."  *Id.*  *Ferguson* sets forth the correct

10   procedural framework for resolving a dispute that is subject to an arbitration agreement, and the

11   Court should apply it here.

## A.  Plaintiffs Unmistakably Agreed to Arbitrate Their Respective Claims.

13   Upon finding that an arbitration agreement exists, the FAA requires that "any doubts

14   concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H.*

15   *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 & n.31 (1983), *superseded by*

16   *statute on other grounds* (collecting cases).  To do otherwise contravenes the "presumption of

17   arbitrability" that applies whenever there is a contract that contains an arbitration clause.  *AT&T*

18   *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also City of Los Angeles*

19   *v. Super. Ct.*, 56 Cal. 4th 1086, 1096 (2013) (applying "presumption of arbitrability" to order

20   arbitration under *AT&T Techs.*).  Courts should therefore compel arbitration "unless it may be

21   said with positive assurance that the arbitration clause is not susceptible of an interpretation that

22   covers the asserted dispute . . . ."  *AT&T Techs.*, 475 U.S. at 650.  Indeed, the "clear weight of

23   authority holds that the most minimal indication of the parties' intent to arbitrate must be given

24   full effect . . . ."  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).

25   In this case, Plaintiffs each agreed to arbitrate "ANY DISPUTE OR CLAIM RELATING

26   IN ANY WAY TO THE SERVICES OR THIS AGREEMENT. . . ."  TERMS § 14.  The

27   TERMS in turn define "Services" as any "Intuit online services provided to you on this website,

28   including Content (defined below), updates and new releases."  TERMS § 1.  This is "broad and

FENWICK & WEST LLP
ATTORNEYS AT LAW

far reaching" language that "leaves no place for the exercise of discretion" as to arbitrability.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (internal quotations and citations omitted); *accord Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell*, 76 Cal. App. 4th 227, 230 (1999) (holding contract that required arbitration of "[a]ny controversy or claim arising out of or relating to" a partnership agreement was "very broad," and reversing lower court order denying petition to compel arbitration); *see also Khalatian v. Prime Time*, 237 Cal. App. 4th 651, 659 (2015) ("'arising out of or relating to' . . . is generally considered a broad provision").

Thus, even if this Court concludes that it must reach the issue of the arbitrability of Plaintiffs' claims, those claims fall well within the broad language of the TurboTax arbitration agreement.  The claims in the Complaint relate to Plaintiffs' separate uses of services on the Intuit website to file their respective tax returns.  *See* Compl. ¶¶ 16-45.  And they each agreed to arbitrate "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES."  TERMS § 14.  Plaintiffs' claims thus fall within the scope of their respective agreements with Intuit.

**B.      Plaintiffs' Claims for Restitution, and Their Claims on Behalf of a Putative Class, Are Subject to Individual Arbitration.**

Plaintiffs' initial complaints in this Court, before consolidation, sought actual and compensatory damages.  *E.g.*, *Dohrmann* Amended Class Action Complaint at 31 (seeking "all damages . . . or restitution to which [plaintiffs] are entitled by law"); *Sinohui* Class Action Complaint at 26 (seeking "actual, compensatory, consequential and punitive damages").  Plaintiffs' Consolidated Class Action Complaint still seeks the same monetary recovery—a return of the money that they and class members paid for TurboTax services.  But in a futile effort to avoid their arbitration agreements and by-pass arbitration completely, they have now reworded the relief sought to restitution of the same sums—amounts paid to Intuit—that they previously sought as damages.  *E.g.*, Complaint at p. 40 (seeking "restitution of all monies paid to Intuit by any person who qualified for free tax-return filings pursuant to the Free File Program and who paid money to Intuit to file a return"); *see also* Compl. ¶ 153 (seeking "restitution, restitutionary

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    disgorgement, and all other appropriate relief permitted by the law of unjust enrichment").

2        To the extent the Complaint seeks restitution, it seeks the same monetary recovery of

3    funds paid, which will require the arbitrator to decide the same issues.  Nothing in the TERMS

4    conceivably excludes such claims for economic relief from arbitration.  TERMS § 14.

5        Similarly, the Complaint's invocation of relief on a classwide basis is foreclosed by each

6    Plaintiffs' respective agreement that "ALL DISPUTES MUST BE BROUGHT IN THE

7    PARTIES' INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN

8    ANY PURPORTED CLASS . . . ."  TERMS § 14.  It is well settled that such class action waivers

9    in arbitration agreements are valid and enforceable.  *Concepcion*, 563 U.S. at 352; *see also*

10   *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 362 (2014) (recognizing

11   *Concepcion*'s invalidation of California's prior prohibition on class action waiver under *Discover*

12   *Bank* rule).  Plaintiffs must proceed in an individual arbitration of their claims.  Indeed, the

13   Supreme Court of California has acknowledged that such bars on class actions or representative

14   proceedings are valid regardless of whether claims are brought in arbitration or elsewhere:

15   "*Concepcion* makes clear that even if a rule against class waivers *applies equally to arbitration*

16   *and nonarbitration agreements*, it nonetheless interferes with fundamental attributes of arbitration

17   and, for that reason, disfavors arbitration in practice."  *Iskanian*, 59 Cal. 4th at 372 (emphasis

18   added).

19       Nothing in the TERMS or the law prevents Plaintiffs from seeking restitution or injunctive

20   relief through an individual proceeding, and Plaintiffs cannot escape their agreements to arbitrate

21   with Intuit simply by including claims for equitable relief in their Complaint.

22   **C.    The Injunctive and Equitable Relief Provision in the TurboTax Arbitration
23          Agreement Does Not Allow Plaintiffs to Evade Arbitration.**

24       Nor do Plaintiffs' claims for restitutionary, injunctive or other equitable relief take this

25   lawsuit outside the scope of the arbitration agreement.  On the contrary, the TERMS state that

26   only a "***party to the arbitration*** may at any time seek injunctions or other forms of equitable ***relief***

27   from any court of competent jurisdiction."  TERMS § 14 (emphasis added).  By its plain terms,

28   this language does not authorize any of the Plaintiffs to evade arbitration and, by reframing their

claims, pursue their claims initially, or exclusively, in court.  This provision does not provide such rights to "any party to the agreement," or "any party to a dispute."  This language still requires Plaintiffs to arbitrate first, as a claimant who is not first "a party to the arbitration" has no such rights.  To hold otherwise would ignore the plain language of the TERMS.

The TERMS' injunctive relief provision contemplates situations where a party to an *ongoing* arbitration seeks injunctive or other equitable relief in aid of the arbitration (for instance, to maintain the status quo during the proceeding or enforce the arbitrator's rulings).  The provision is consistent with and must be read consonant with the AAA Rules, which the TERMS expressly invoke, and which provide:

> A party to an arbitration agreement under these Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate.

AAA Rule 37(d).  In short, while a party to the arbitration may seek ancillary or incidental relief from the Court, the arbitrator must officiate and adjudicate the underlying merits, including the decision as to whether there is any valid underlying claim warranting the issuance of relief.

The injunctive relief clause in no way permits Plaintiffs to avoid arbitration by tacking on claims for equitable relief.  To the contrary, aside from the agreement to arbitrate "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES," the TurboTax arbitration provision contains clear and conspicuous language stating that "BY ENTERING INTO THIS AGREEMENT AND AGREEING TO ARBITRATION, YOU AGREE THAT YOU AND INTUIT ARE EACH WAIVING THE RIGHT TO FILE A LAWSUIT AND THE RIGHT TO A TRIAL BY JURY."  TERMS § 14.

Moreover, even if the TERMS were ambiguous on this question—and for the reasons stated above they are not—the "federal presumption in favor of arbitration" still requires this Court to interpret the agreement in favor of arbitration.  *See Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1286 (9th Cir. 2009).  In *Comedy Club*, the Ninth Circuit (applying California law) considered language similar to the TERMS that provided that "[n]otwithstanding this agreement to arbitrate, the parties, in addition to arbitration, shall be entitled to pursue

equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose and for the purpose of compelling arbitration and/or enforcing any arbitration award. . . ." *Id.* at 1285.  The court found that it was "plausible and a permissible contract interpretation that the equitable claims exception" there "intended to apply only to claims designed to maintain the status quo between the parties." *Id.*  Accordingly, because "it was a rational interpretation of the agreement to say that the arbitrator could decide both equitable and legal claims and that the provision for court jurisdiction on equitable matters was ancillary to the arbitration"—and in light of the presumption of arbitrability—the *Comedy Club* court ruled that equitable claims were arbitrable.  *Id.* at 1285-86.

The court's reasoning applies with greater force here.  The clause in *Comedy Club*, providing that "the parties, in addition to arbitration" could seek equitable remedies, parallels the instant case, where "a party to an arbitration" could seek such release.  For both clauses, "a natural reading . . . lends plausibility to" the conclusion "that arbitration still applies to all disputes."  *See id.* at 1285.  If anything, that the courts received "exclusive jurisdiction" over equitable remedies in the *Comedy Club* clause renders the present case substantially *more* susceptible to arbitration.  The TERMS plainly allow *only* a "party to the arbitration" to seek injunctive relief. And Plaintiffs are not seeking exclusively injunctive relief here.  Indeed, in the Joint Case Management Statement, Plaintiffs note that they will indeed be seeking certification for class-based economic relief under Rule 23(b)(3).  *See* Dkt. No. 90 at 9:12-22, 18:12-15, 21:22-26.  The fact that Plaintiffs asked to sequence their claims for class-based injunctive relief before their claims for class-based restitution makes no difference.  Either way, those claims must be heard in individual arbitrations—and not by a court.  And in any case Plaintiffs have not even included interim relief in their prayer in the amended complaint.

A narrow construction of this equitable relief provision is not only reasonable; it comports with deference that courts consistently give to the policy in favor of arbitration when construing similar equitable relief provisions.  *See, e.g.*, *McKesson Corp. v. Health Robotics, S.R.L.*, No. C-11-00728 JCS, 2011 WL 3157044, at *9 (N.D. Cal. July 26, 2011) (holding that claim for equitable relief did not fall within narrow exception to arbitration) (collecting cases).  The effect

of the TERMS' injunctive relief provision is to "make injunctive relief in judicial courts of proper jurisdiction available to the parties in aid of arbitration, rather than" (as Plaintiffs would have it) "transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed for." *See Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 215, 218 (S.D.N.Y. 1993) (considering language in arbitration agreement providing that "[t]he parties may seek from the Arbitration Tribunal and from any judicial courts of proper jurisdiction equitable relief by way of temporary and permanent injunctions"). Courts "have consistently construed equitable-relief exceptions like the one in this case as either authorizing courts to issue temporary equitable relief once a dispute has been submitted to arbitration," or "as authorizing courts to enforce arbitral awards once arbitration is complete." *Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*, No. 17 C 2066, 2017 WL 2720433, at *4 (N.D. Ill. June 23, 2017) (quoting *Comedy Club* and *Remy Amerique*, among other cases). To the extent that the Court reaches the issue, the same result should obtain here.

That this construction could ultimately include some future relief from this Court does not weigh against it. The FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20; *see also McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 966 (2017) ("According to the high court, "'piecemeal' litigation' of claims the parties have agreed to arbitrate and claims they have not agreed to arbitrate is consistent with the FAA ... [and] this court extended this principle to piecemeal litigation of 'arbitrable and inarbitrable remedies derived from the same statutory claim.'").

### D. Plaintiffs Cannot Avoid Arbitration by Purporting to Seek "Public Injunctive Relief."

To the extent that Plaintiffs contend that they seek "public injunctive relief," this theory, too, would not avoid arbitration. Nothing in either the TERMS or California law prevents Plaintiffs from obtaining public injunctive relief via arbitration. Under California law and the TERMS, an arbitrator may consider the appropriateness of public injunctive relief on Plaintiff's claims.

Following the Supreme Court's ruling in *Concepcion*, the Ninth Circuit considered

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   whether the FAA preempted California's pre-*Concepcion* "*Broughton-Cruz* rule,"[6] which had

2   prohibited arbitration of claims for public injunctive relief brought under California's CLRA,

3   UCL, and FAL.  In *Ferguson*, 733 F.3d at 934, the Ninth Circuit held that *Broughton-Cruz* was

4   irreconcilable with—and thus preempted by—the FAA because it "prohibits outright" the

5   arbitration of claims for public injunctive relief.  Noting that "an arbitrator generally has the

6   authority to enter injunctive relief against a party that has entered into an arbitration agreement,"

7   the *Ferguson* court ordered the entire case to arbitration and ruled that whether plaintiffs were

8   entitled to public injunctive relief would "need to be determined by the arbitrator."  *Id.* at 937.

9   Later cases have reaffirmed the core holding of *Ferguson*: they recognize that, while a contract

10  "that purports to waive, *in all fora*, the statutory right to seek public injunctive relief under the

11  UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law,"

12  *McGill, N.A.*, 2 Cal. 5th at 962, there is no such prohibition for the arbitration of public

13  injunctions, *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 827 (9th Cir. 2019).

14      Because the TurboTax TERMS do *not* prohibit arbitration of public injunctive relief, they

15  are clearly valid under *Ferguson*. As *McGill* made clear, agreements not to pursue class claims, or

16  not to pursue "representative actions" do not constitute prohibitions on public injunctive relief.  2

17  Cal. 5th at 959-60 (claims for public injunctive relief do not need to pursue class procedures, nor

18  do they "constitute representative claims on behalf of others").  Thus the TERMS' prohibition on

19  class or representative claims are not prohibitions on public injunctive relief invalidated by

20  *McGill*.

21      In all events, Plaintiffs here do not even appear properly to raise claims for public

22  injunctive relief.  "Merely declaring that a claim seeks a public injunction" "is not sufficient to

23  bring that claim within the bounds of the rule set forth in *McGill*."  *Blair v. Rent-A-Ctr., Inc.*, No.

24  C 17-02335 WHA, 2017 WL 4805577, at *2 (N.D. Cal. Oct. 25, 2017), *aff'd in part, appeal*

25  *dismissed in part*, 928 F.3d 819 (9th Cir. 2019).  Nor does "requesting relief which would

26  generally enjoin a defendant from wrongdoing," as Plaintiffs seek to do here, elevate a request to

27

28  [6] This rule derives from two cases, *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066 (1999) and *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303 (2003).

1    one for public injunctive relief.  *Johnson v. JP Morgan Chase Bank, N.A.*, No.

2    EDCV172477JGBSPX, 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018) (holding that, since

3    plaintiffs did not seek public injunctive relief, *McGill* did not apply and could not furnish a basis

4    to evade arbitration); *accord Bell-Sparrow v. SFG*Proschoicebeauty*, Case No. 18-cv-06707,

5    2019 WL 1201835, at *5 n.9 (N.D. Cal. Mar. 14, 2019).

6         "Relief that has the primary purpose or effect of redressing or preventing injury to an

7    individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not

8    constitute public injunctive relief."  *McGill*, 2 Cal. 5th at 955.  A close inspection of the

9    allegations in this Complaint "reveals that the relief sought is actually intended to redress and

10   prevent further injury to a group of plaintiffs who have already been injured by" the allegedly

11   unlawful practices of Intuit.  *See Johnson*, 2018 WL 4726042, at *7.  The Complaint seeks relief

12   for a specific subset of TurboTax customers who allegedly could also have met the eligibility

13   requirements for the Free File Program.  *See* Compl. ¶ 99.  It does not seek relief to benefit the

14   public as a whole, the universe of all TurboTax users, or even all who might have filed under the

15   Free File Program—as some of those still chose to purchase from TurboTax additional services

16   not available in FreeFile.  Pursuit of benefits for this select group does not qualify as "public

17   injunctive relief."  *See Johnson*, 2018 WL 4726042, at *7; *accord Bell-Sparrow*, 2019 WL

18   1201835, at *5 n.9.  Any public benefit that Plaintiffs purportedly seek is merely "incidental" to

19   their goal of gaining their purported damages in the form of individualized restitution.  *See*

20   *Wright v. Sirius XM Radio Inc.*, No. SACV1601688JVSJCGX, 2017 WL 4676580, at *9 (C.D.

21   Cal. June 1, 2017) (granting motion to compel arbitration, and holding that "vague, generalized

22   allegations" seeking order enjoining wrongful, deceptive conduct did not seek public injunctive

23   relief).  Because Plaintiffs do not seek "public injunctive relief," *McGill* has no applicability to

24   this case anyway, and it imposes no obstacle to arbitration.[7]

25   _____

26   [7] Finally, even if Plaintiffs were seeking "public injunctive relief" and the TERMS' restriction on "representative actions" were deemed to preclude such relief so as to be invalid under *McGill*, the TERMS also include a severability clause.  "If any part of this Agreement is invalid, that section will be removed without affecting the remainder of the agreement.  The remaining terms will be valid and enforceable."  TERMS § 15.  Accordingly, Plaintiffs' claims would all still be subject to arbitration, with only the purported prohibition on public injunctive relief invalidated.  *Compare*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**E.     The TurboTax Arbitration Agreement Is Not Unconscionable.**

2       Where (as here) a delegation clause exists, the question of whether an arbitration

3   provision is unconscionable—like other gateway issues—is for the arbitrator to decide.  *Jackson*,

4   561 U.S. at 68-69.  But even absent the delegation provision, there is no unconscionability here.

5   Under California law, a finding of unconscionability requires "both a 'procedural' and a

6   'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining

7   power, the latter on 'overly harsh' or 'one-sided' results."  *Armendariz v. Found. Health*

8   *Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation omitted).  "As arbitration is favored,

9   those parties challenging the enforceability of an arbitration agreement bear the burden of proving

10   that the provision is unenforceable."  *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151,

11   1157 (9th Cir. 2013).  Plaintiffs cannot meet this burden on either element.

12       Procedural unconscionability refers to the lack of meaningful choice.  It "arises in the

13   making of the agreement, focusing on the oppression that arises from unequal bargaining power

14   and the surprise to the weaker party that results from hidden terms or the lack of informed

15   choice."  *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880, 895 (2017) (internal quotation marks and

16   citations omitted).  A "finding of procedural unconscionability does not mean that a contract will

17   not be enforced, but rather that courts will scrutinize the substantive terms of the contract to

18   ensure they are not manifestly unfair or one-sided."  *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th

19   899, 915 (2015) (holding that, despite some degree of procedural unconscionability, terms of

20   arbitration were not substantively unconscionable).

21       The TurboTax agreement here was not procedurally unfair: Plaintiffs each had a chance to

22   review it when they signed in to file their 2018 tax returns through TurboTax.  Moreover, the fact

23   that a consumer contract is standardized does not render it procedurally unconscionable.  *See*

24   *Concepcion*, 563 U.S. at 346-47 (enforcing arbitration provision, noting "the times in which

25   consumer contracts were anything other than adhesive are long past").  To the contrary,

26   _____

27   *Blair*, 928 F.3d at 828, *McArdle v. AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019), and
    *Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019) (all invalidating the entire arbitration

28   clause because each agreement expressly stated that the proscription on public injunctive relief
    was indispensable, such that if it were held invalid, the entire arbitration clause would be invalid).

FENWICK & WEST LLP
ATTORNEYS AT LAW

"[s]tandardized adhesion contracts are necessary in a busy, commercial society." *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 264 (E.D.N.Y. 2019) (granting motion to compel arbitration). Further, any degree of procedural unconscionability is undercut where there are available market alternatives, as there are for methods of preparing and filing state and federal personal income tax returns. *See, e.g.*, *Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, No. 5:13-CV-02559-EJD, 2014 WL 116442, at *3 (N.D. Cal. Jan. 13, 2014) ("[T]here can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices.").

Nor are the TERMS substantively unconscionable. A provision is substantively unconscionable where it is "overly harsh" or "one-sided." *Sanchez*, 61 Cal. 4th at 910 (enumerating formulations of substantive unconscionability standard). The TERMS are none of these things: they provide a reasonable alternative forum of arbitration where Intuit will advance arbitration fees if the claimant cannot, and will reimburse all such fees for claims totaling less than $75,000 (as long as they are not frivolous); they allow the claimant to choose how he or she will participate, i.e. by phone, in writing, or in person in their home county; they state that Intuit will not seek attorneys' fees or costs (except in frivolous cases); and they also allow customers to pursue claims for relief in small claims court. *See* TERMS § 14; *cf. Concepcion,* 563 U.S. at 337 (arbitration clause at issue required that AT&T pay for the arbitration fees for claims under $10,000 and allowed consumers to choose whether to particpiate by phone or in person in their home counties). If anything, these provisions compare favorably to court proceedings, where customers may have to pay their own fees (which could eclipse the amount of relief sought for smaller claims) and be compelled to give live testimony. Under settled law, there is no basis for an unconscionability finding here.

## CONCLUSION

Under the FAA, upon determining that Plaintiffs' claims are referable to arbitration, the Court must, at a minimum, stay further proceedings. 9 U.S.C. § 3. The Court alternatively has discretion under § 3 "to dismiss claims that are subject to an arbitration agreement." *See, e.g.*, *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (granting motion to

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   compel arbitration and dismissing the case with prejudice).

2       All of Plaintiffs' claims are arbitrable under the TurboTax arbitration agreement.

3   Accordingly, Intuit respectfully asks this Court to compel Plaintiffs' claims to arbitration and

4   either to dismiss this action or stay any further proceedings pending completion.

5

6   Dated:    October 28, 2019              FENWICK & WEST LLP

7

8                                    By: *s/ Laurence F. Pulgram*
                                         Laurence F. Pulgram
9
                                         Attorneys for Defendant INTUIT INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW