Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
dgirard@girardsharp.com
aornelas@girardsharp.com
sgrille@girardsharp.com

Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Jillian R. Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
siegel@stuevesiegel.com
moore@stuevesiegel.com
dent@stuevesiegel.com

*Co-Lead Interim Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE INTUIT FREE FILE LITIGATION<br><br>This Document Relates to:<br>All Actions | Case No. 3:19-cv-02546-CRB<br><br>**PLAINTIFFS' OPPOSITION TO INTUIT'S MOTION TO COMPEL ARBITRATION**<br><br><br>REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED |

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................ vi

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................................... 1

    A.    Intuit Diverts Lower-Income Americans and Active Duty Military Members to Its Paid Products. ........................................................................................ 1

    B.    Intuit's Terms of Service and Arbitration Agreement. ..................................... 2

III.   ARGUMENT ............................................................................................................. 3

    A.    Plaintiffs Did Not Assent to Intuit's Arbitration Agreement. ........................... 3

    B.    Plaintiffs Seek Only Equitable Relief and Therefore Their Claims Are Not Subject to Arbitration. ................................................................................. 10

        1.    The Question of Arbitrability Was Not Delegated to an Arbitrator. .................. 10

        2.    Plaintiffs' Claims, for Injunctive Relief and Restitution, Are Excluded from Intuit's Arbitration Clause ................................................................. 13

            a.    "Notwithstanding anything to the contrary" sets forth an exclusion to arbitration. ............................................................. 13

            b.    The phrase "at any time" specifically allows Plaintiffs to seek equitable relief in this Court at this time................................... 14

            c.    The phrase "injunctions or other forms of equitable relief from any court" encompasses Plaintiffs' claims. ........................... 16

        3.    Under Intuit's Clause, a Party Need Not Have Filed an Arbitration to Seek Equitable Relief in Court. ............................................................... 17

    C.    The Class Action Waiver as to Plaintiffs' Equitable Claims, Which Are Exempted from the Arbitration Clause, Is Unenforceable ................................. 18

IV.   CONCLUSION ......................................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771 (2012)..........................................10, 11

*Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017) .............................................. 6

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015)...................................... 17

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ..................................................... 19

*Bachrach v. Compagno*, No. B252454, 2015 WL 78143 (Cal. Ct. App. Jan. 6, 2015)........... 14

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015) ................................................... 6

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ....................................................11, 12

*California Nat'l Bank v. Woodbridge Plaza LLC*, 164 Cal. App. 4th 137 (2008) .................. 13

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208 (9th Cir. 2016) ........... 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ........................ 13

*Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10 (1993)................................................................ 14

*Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) ..............................4, 5, 6

*Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009) .........................14, 15

*Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017)............................. 9

*Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163 (2000)................................... 17

*Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018)................................................... 6

*Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800 (2012)............................................ 3

*Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2017 WL 4355075 (N.D. Cal. Sept. 29, 2017)............. 13

*DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463 (2015)............................................................... 15

*Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005) .............................................. 19

*Eiess v. USAA Fed. Sav. Bank*,
  No. 19-CV-00108-EMC, 2019 WL 3997463 (N.D. Cal. Aug. 23, 2019) .......................12, 13

*English & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904 (N.D. Cal. 2016) ................ 18

*Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013) ...................................................... 16

*First Options Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ....................................................... 3, 10, 11

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) ......................................................... 7, 9

*Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052 (9th Cir. 2018) ......................................... 12

*Granite Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287 (2010) ................................................. 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ................................... 12

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712 (S.D.N.Y. 1989) ...................... 14

*In re Henson*, 869 F.3d 1052 (9th Cir. 2017) ........................................................................... 18

*Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*,
   No. 17 C 2066, 2017 WL 2720433 (N.D. Ill. June 23, 2017) ................................................ 16

*Ingalls v. Spotify USA, Inc.*,
   No. C 16-03533 WHA, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ............................... 12

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76 (2d Cir. 2002) ...................... 14

*Iskanian v. CLS Transportation Los Angeles, LLC*, 379 P.3d 129 (Cal. 2014) ....................... 20

*Kin Wah Kung v. Experian Info. Sols., Inc.*,
   No. C 18-00452 WHA, 2018 WL 2021495 (N.D. Cal. May 1, 2018) ................................. 13

*Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421 (2017) ......................... 15

*Lifescan v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004) ................................. 3

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016) ...................................... 6, 7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) .................................... 15

*McGhee v. North Am. Bancard, LLC*, 755 F. App'x 718 (9th Cir. 2016) ................................. 9

*McKee v. Audible, Inc.*,
   No. CV 17-1941-GW(EX), 2017 WL 4685039 (C.D. Cal. July 17, 2017) ......................... 6

*McKesson Corp. v. Health Robotics, S.R.L.*,
   No. C-11-00728 JCS, 2011 WL 3157044 (N.D. Cal. July 26, 2011) ................................ 15

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ............................................. 10

*Mikhak v. Univ. of Phoenix*,
  No. C16-00901 CRB, 2016 WL 3401763 (N.D. Cal. June 21, 2016) .......................... 12, 13

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ....................................... 3, 4, 5

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) ...................................................... 6

*Norcia v. Samsung Telecomm'ns Am.*, LLC, 845 F.3d 1279 (9th Cir. 2017) ............................ 3

*Oblix, Inc. v. Winiecki*, 374 F.3d 488 (7th Cir. 2004) .............................................................. 11

*Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213 (S.D.N.Y. 1993) ...................16

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ...................................................... 10

*Revitch v. DirecTV, LLC*, No. 18-cv-01127-JCS, 2018 WL 4030550 (N.D. Cal. Aug. 23, 2018).......... 15

*Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110 (2006) ............................................... 11

*Rushing v. Viacom Inc.*, No. 17-CV-04492-JD, 2018 WL 4998139 (N.D. Cal. Oct. 15, 2018) .............. 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ................ 19

*Siltronic Corp. v. Employers Ins. Co. of Wausau*,
  No. 3:11-cv-1493, 2017 WL 6943151 (D. Or. Dec. 29, 2017)......................................... 14

*Silverman v. Move Inc.*, No. 18-CV-05919-BLF, 2019 WL 2579343 (N.D. Cal. June 24, 2019) ........... 9

*Specht v. Netscape Comm. Corp.*, 306 F.3d 17 (2d Cir. 2002)................................................ 3

*Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)....... 9

*Symbol Techs., Inc. v. Voicenet (Aust.) Ltd.*,
  No. CV-03-6010, 2008 WL 89626 (E.D.N.Y. Jan. 4, 2008) ............................................. 14

*Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 40 Cal. App. 4th 1699 (1995).................. 18

*Tompkins v. 23andMe, Inc.*,
  No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ................................ 11, 12

*Tracer Res. Corp. v. Nat'l Env. Servs. Co.*, 42 F.3d 1292 (9th Cir. 1994)............................. 13

*Underwood v. Future Income Payments, LLC*,
  No. SA CV 17-1570-DOC (DFMx), 2018 WL 4964333 (C.D. Cal. Apr. 26, 2018) ....................... 20

*Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011)........................ 4

*Weiner v. The Firm, Inc.*, No. B166766, 2004 WL 1006139 (Cal. Ct. App. May 7, 2004)............. 16, 17

*Wilson v. Huuuge, Inc.*, No. 18-36017, — F.3d —, 2019 WL 6974430 (9th Cir. Dec. 20, 2019)............9

*Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987 (1972).............................3

<u>Statutes</u>

Cal. Bus. & Prof. Code § 17200 ..................................................................................1

Cal. Civ. Code § 1638 ...............................................................................................18

Cal. Civ. Code § 1668 ...............................................................................................19

Cal. Civ. Code § 1644 ...............................................................................................14

<u>Rules</u>

Fed. R. Civ. P. 1 ......................................................................................................19

Fed. R. Civ. P. 23 ................................................................................................vii, 19

<u>Other Authorities</u>

55 Cal. Jur. 3d Restitution § 2 ....................................................................................17

1

## SUMMARY OF ARGUMENT

Plaintiffs are victims of Intuit's nationwide scheme to coerce millions of lower-income Americans and active duty military members, who were eligible to file their taxes for free, into paying to file their taxes using TurboTax. Plaintiffs seek equitable and injunctive relief from this Court on behalf of themselves and all others who are similarly situated. *See* Plaintiffs' Consolidated Class Action Complaint, Dkt. 80 ("Complaint" or "Compl."). But Intuit, owner of tax preparation software TurboTax, has sought to compel Plaintiffs to arbitration despite the fact that Plaintiffs never agreed to Intuit's Terms of Service ("Terms"), and despite the fact that *even if* Plaintiffs had agreed to Intuit's Terms, the Terms' arbitration clause itself expressly excludes Plaintiffs' sole claims from arbitration. *See* Intuit's Motion to Compel Arbitration, Dkt. 97 ("Motion" or "Mot.").

Intuit claims that customers agreed to its Terms but points to no evidence that any Plaintiff ever viewed the Terms. Rather, Intuit asserts that because the Plaintiffs signed into TurboTax, they impliedly agreed to the Terms. The validity of this method of acceptance, however, depends on whether the consumer had actual or constructive knowledge of the agreement. Plaintiffs had neither. Intuit's offer was not reasonably conspicuous and was therefore inadequate to provide Plaintiffs with notice of the terms of the agreement. TurboTax allowed taxpayers to file their returns without reviewing or even opening Intuit's Terms, and the language referencing a user's purported agreement to those Terms only appears in small faintly-colored font below a larger "sign-in" box, a design intended to camouflage the Terms' existence so as not to interrupt the enrollment process. Harry Brignull, a Ph.D. cognitive scientist and expert in the use of "dark patterns" to coerce consumers' behavior, has reviewed Intuit's account creation and sign-in process and concluded that the terms containing the arbitration clause were not reasonably conspicuous to TurboTax users. *See generally* Declaration of Henry Brignull ("Brignull Decl."). ██████████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ Declaration of Daniel C. Girard ("Girard Decl."), Ex. 1, Intuit's Am. Objs. and Resp. to Plaintiffs' First Requests for Production. Because Intuit has not shown that an agreement to arbitrate Plaintiffs' claims was formed, its Motion should be denied. *See infra* Section III.A.

1    Even if an agreement had been formed, the Court should deny Intuit's Motion because its

2    arbitration provision expressly exempts Plaintiffs' claims from arbitration. *First*, Intuit did not delegate

3    questions of arbitrability to the arbitrator. When plaintiffs are unsophisticated, as here, mere

4    incorporation of an arbitration association's rules does not establish that the parties "clearly and

5    unmistakably" intended to delegate arbitrability of a dispute to an arbitrator; therefore, the question of

6    whether Plaintiffs' claims are subject to arbitration is properly before this Court. *Second*, Intuit's

7    arbitration clause provides: "Notwithstanding anything to the contrary, any party to the arbitration may

8    *at any time* seek injunctions or other forms of equitable relief from any court of competent jurisdiction."

9    (Emphasis added). Because Plaintiffs may "at any time" seek equitable relief in court, they may proceed

10   in this forum with their claims under California's Unfair Competition Law and for unjust enrichment.

11   Intuit's contrary argument that Plaintiffs must first be parties to an arbitration before pursuing their

12   claims in court would lead to an absurdity in this case, where Plaintiffs *only* bring equitable claims:

13   Plaintiffs would need to file arbitrations just to become "part[ies] to the arbitration," at which point they

14   could immediately return to this Court to pursue equitable remedies. Such a round trip serves no

15   legitimate purpose, and Intuit's attempt to avoid its broad carve-out clause should be rejected. *See infra*

16   Section III.B.

17       Finally, divorced from an agreement to arbitrate, Intuit's class waiver provision is unenforceable.

18   Parties cannot contract around the Federal Rules of Civil Procedure, which expressly provide that "[o]ne

19   or more members of a class may sue or be sued as representative parties on behalf of all members" when

20   certain prerequisites are met. Fed. R. Civ. P. 23(a). Moreover, under California law, a class action waiver

21   like Intuit's is unconscionable with respect to small consumer claims not subject to arbitration. *See infra*

22   Section III.C.

23

24

25

26

27

28

---

## I.    INTRODUCTION

Plaintiffs Andrew Dohrman, Joseph Brougher, and Monica Chandler (collectively, "Plaintiffs") incurred harm from Intuit's nationwide scheme to extract return preparation and filing fees from lower-income Americans and active-duty military members who are eligible to file their income tax returns at no charge under the IRS Free File Program. Plaintiffs seek equitable and injunctive relief on behalf of themselves and all others who are similarly situated, asserting equitable claims under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and for unjust enrichment. Intuit moves to compel Plaintiffs to arbitration. But, under the governing rules of contract formation, Plaintiffs never agreed to arbitrate and, even if they had, the arbitration clause allows Plaintiffs to bring their equitable claims in a court of law. Therefore, for the following reasons, the Court should reject Intuit's attempt to evade its jurisdiction and deny Intuit's motion to compel arbitration.

## II.    FACTUAL BACKGROUND

### A.    Intuit Diverts Lower-Income Americans and Active Duty Military Members to Its Paid Products.

For the 2018 tax year, Intuit implemented a widespread promotional campaign directed at low income Americans and active military members centered on the offer of "free" tax return preparation. Compl. ¶¶ 73-94. Intuit placed numerous online, television, and print advertisements for TurboTax that prominently displayed the word "free" and phrases like "free, free, free." *Id.* ¶ 84. Intuit made its "free" marketing representations against the backdrop of the Internal Revenue Service's free return filing program (known as the Free File Program), which relies on Intuit and other providers of online tax return filing services to offer free filing portals. *Id.* ¶¶ 46-52. But once drawn to Intuit's "free" tax preparation website, Plaintiffs—like millions of other Americans—were required to pay a fee to complete and file their returns. *Id.* ¶¶ 59-72. Intuit referred to this scheme as its "free-to-pay" business plan. *Id.* ¶ 68.

As part of this strategy, Intuit promoted a commercial paid product that it named "TurboTax **Free** Edition" while suppressing information about its actual free file product created for the Free File Program, which it named "TurboTax **Freedom** Edition" or "TurboTax **Free File** Program." *Id.* ¶¶ 59, 67-69, 73-94.  Even though the names are similar, the costs to taxpayers are very different. *Id.* ¶¶ 60-61. Intuit's Free Edition is only free for the most basic of tax returns, and users of Free Edition are informed

that they must pay to file only after they have devoted considerable time to inputting their information. *Id*. ¶¶ 61-66. This is true even in cases like Plaintiffs', where Intuit knows the taxpayer is eligible to file for free under the Free File Program, but does not inform the taxpayer of, or provide a path to, its actually free product created for the Free File Program. *Id*. ¶ 62.

Intuit also manipulated search technology to suppress free filing and direct taxpayers to its commercial products. For example, Intuit made its actual free product virtually invisible to eligible filers by not linking to it from Intuit's primary website and by altering the source code for the free product to prevent it from appearing on search engines like Google. *Id*. ¶¶ 73-82; *see also* Dkt. 90 at 6 (Intuit conceding it engaged in this "practice" of "de-indexing organic search results."). Intuit generated billions of dollars in revenue through its predatory practices targeting low-income taxpayers and military service personnel, like Plaintiffs, who were eligible to file their tax returns at no cost under the Free File Program but instead paid to file on TurboTax. Compl. ¶ 72.

### B.      Intuit's Terms of Service and Arbitration Agreement.

When Plaintiffs and other free-file eligible individuals visited Intuit's commercial website, Intuit purported to bind them to arbitration through a small-print hyperlink to its Terms of Service that appeared below a large blue sign-in button on both its website and its mobile application. *See* Declaration of Ergang Sun ¶¶ 5, 26, Dkt. No. 97-2 ("Sun Decl."); *see also id*. ¶¶ 8, 11, 14, 17, 20, 22.  Unlike many commercial websites, Intuit did not mandate that users view its Terms[1] in order to create or sign in to a TurboTax account or to recover log-in credentials. Neither did Intuit require users to affirmatively assent to the Terms, such as by clicking a box stating "I agree."  Plaintiffs, despite logging in to the TurboTax website or mobile application to file their taxes, have no memory of seeing Intuit's Terms, the hyperlink to them, or a statement that by creating an account or signing in they would agree to the terms. *See* Declaration of Andrew Dohrman, ¶¶ 2-6 ("Dohrman Decl."); Declaration of Joseph Brougher, ¶¶ 2-6 ("Brougher Decl."); Declaration of Monica Chandler, ¶¶ 2-6 ("Chandler Decl.").

---

[1] As used herein, "Terms" refers to the Intuit's Terms of Service. *See* Dkt. 97-3.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.     ARGUMENT

### A.     Plaintiffs Did Not Assent to Intuit's Arbitration Agreement.

Plaintiffs cannot be compelled to arbitrate claims they did not agree to arbitrate. Plaintiffs were not required to view Intuit's Terms to use its site, and they lacked actual notice of Intuit's Terms. Further, the inconspicuous text and hyperlink on Intuit's sign-in portals did not provide them with constructive notice of its Terms. Neither Intuit's "sign-in" box (on the website) nor its references to "License Agreement" (on the mobile app) placed a reasonable user on notice that, simply by proceeding to use TurboTax, they would be agreeing to arbitrate all legal claims relating to Intuit's service.

Although Intuit invokes a federal policy favoring arbitration (Mot. at 7, 15-16), no such policy applies to the question of whether the parties agreed to arbitrate. *Norcia v. Samsung Telecomm'ns Am.*, *LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017). Under the Federal Arbitration Act (FAA), a court must first determine "whether a valid arbitration agreement exists[.]" *Lifescan v. Premier Diabetic Servs., Inc*., 363 F.3d 1010, 1012 (9th Cir. 2004). Intuit "bears 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia*, 845 F.3d at 1283 (citations omitted). In evaluating whether an agreement exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). There is no dispute that California law applies in this case. *See* Compl. ¶¶ 113, 115-19; Mot. at 7.

Under California law, "[t]here is no contract until there is mutual consent of the parties," *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012), and "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Windsor Mills, Inc. v. Collins & Aikman Corp*., 25 Cal. App. 3d 987, 993 (1972) (followed in *Norcia*, 845 F.3d at 1285). Arbitration agreements "are no exception to the requirement of manifestation of assent" and "[c]larity and conspicuousness of arbitration terms are important in seeking informed assent." *Specht v. Netscape Comm. Corp*. 306 F.3d 17, 30 (2d Cir. 2002) (applying California law).

Intuit's Terms are inconspicuous by design. Although it is capable of doing so, Intuit does not require the user to affirmatively view and agree to its Terms (*i.e.*, a "clickwrap" agreement), but instead

---

PLAINTIFFS' OPPOSITION TO INTUIT'S MOTION TO COMPEL ARBITRATION
Case No. 3:19-cv-02546-CRB

attempts a variation on a "browsewrap" agreement whereby "a website's terms and conditions of use are generally posted on the website via a hyperlink" without requiring that they be viewed or affirmatively agreed to. *Nguyen*, 763 F.3d at 1176. Contrary to Intuit's suggestion (Mot. at 8-9), the Ninth Circuit is reluctant to "enforce browsewrap agreements against individual consumers" because "no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website." *Nguyen*, 763 F.3d at 1176, 1178-79 (citation omitted). Similarly, sign-in wrap agreements like Intuit's "are those in which a user signs up to use an internet product or service, and the signup screen states that acceptance of a separate agreement is required before the user can access the service *but* the user is not required to view or assent to the separate agreement. *Colgate v. JUUL Labs, Inc*., 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019) (citation omitted).

Whether a browsewrap or sign-in wrap agreement is enforceable "depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Nguyen*, 763 F.3d at 1176 (quoting *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). Therefore, the question of whether there is a valid agreement "turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract"; and "[w]hether a user has inquiry notice," in turn, "depends on the design and content of the website and agreement's webpage." *Id.* at 1177. In *Nguyen*, the court considered a "conspicuous hyperlink," clearly labeled Terms of Use, which was presented in an underlined, green (color-contrasting) typeface on the bottom left-hand corner of each page on Barnes & Noble's website, including the online checkout page. *Id*. at 1174. The Ninth Circuit held these disclosures inadequate to provide constructive notice of the arbitration clause in Barnes & Noble's agreement because the website did not prompt users to review or pay attention to the terms. *Id*. at 1179. Given those circumstances, "even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id*. The court thus concluded that Barnes & Noble's disclosures were not enough to overcome courts' "traditional reluctance to enforce browsewrap agreements against individual consumers." *Id*. at 1178.

As in *Nguyen*, Plaintiffs in this case lacked actual and inquiry notice of Intuit's Terms. *First*, Plaintiffs do not recall reviewing or seeing the Terms, the hyperlink to the Terms, or the text that Intuit claims sufficed to place a reasonable user on notice that signing in to use TurboTax would bind them to

the Terms. Dohrman Decl., ¶¶ 3-6; Brougher Decl., ¶¶ 3-6; Chandler Decl., ¶¶ 3-6. *Second*, because of its inconspicuous nature, Plaintiffs did not have inquiry notice and cannot be deemed to have assented to Intuit's offer merely by clicking "sign-in." On the TurboTax website's sign-in page (below, far right), small, light grey, italicized type tucked below the prominent sign-in button with white lettering against a blue background reads: "By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of Use"—with the similarly-named and confusingly-labeled "Turbo Terms" and "TurboTax Terms" appearing in light blue font.[2]

   "In situations like these where 'users are unlikely to see' the browsewrap agreement at issue, courts have 'refused to enforce' them." *Rushing v. Viacom Inc.*, No. 17-CV-04492-JD, 2018 WL 4998139, at *2 (N.D. Cal. Oct. 15, 2018) (quoting *Nguyen*, 763 F.3d at 1177) (reasoning that users need not have clicked on the hyperlink to begin using the mobile app). Indeed, Intuit's format is effectively identical to a purported sign-in wrap agreement Judge Orrick recently found insufficient to compel arbitration in a case against JUUL. On the left is the sign-in page found to be inadequate in *Colgate v. JUUL Labs*; on the right are Intuit's web and mobile sign-in pages at issue here:

  

*Compare* Sun Decl. ¶¶ 5, 26, *with Colgate*, 402 F. Supp. 3d at 765. In *Colgate* the court explained that, although JUUL's hyperlink to "Terms and Conditions" was in blue font, it was not underlined,

---

[2] In March 2019, Intuit changed "TurboTax Terms of Use" to read "TurboTax Terms of Service."

highlighted, in all caps, or in a separate box and that other hyperlinks on the page, such as the link to "Forgot Password," were more prominent. *Colgate*, 402 F. Supp. 3d at 765-66. Moreover, as in this case, a user filling out the form from top to bottom will enter information and click "sign in" to proceed to the next step without any need to review the text further down the page. For these reasons, the court denied JUUL's motion to compel arbitration, concluding the plaintiffs were not given constructive notice of the terms of service with the arbitration clause. *Id.* at 766.

In fact, "[c]ourts have found more conspicuous hyperlinks to be insufficient." *Id*. at 764 (citing *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 56, 62-63 (1st Cir. 2018) (holding that a reference to "Terms of Service & Privacy Policy" displayed in a larger font and in bold print that contrasted in color with the gray rectangular box around it, was not reasonably conspicuous); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 458, 466-67 (S.D.N.Y. 2017) (finding a small-print hyperlink colored in blue on a white background insufficient to provide notice)); *see also McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 4685039, at *8 (C.D. Cal. July 17, 2017) (finding that notice of an arbitration clause was insufficient where the disclosure appeared below the operative button and in small text); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (Weinstein, J.) (obvious sign-in button contrasted with "terms of use" reference that was not in all caps or otherwise prominent, and consumer was not required to scroll through terms); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016) (declining to enforce an arbitration clause, as the disclosure—"'By placing your order, you agree to Amazon.com's . . . conditions of use'—is not bold, capitalized, or conspicuous in light of the whole webpage.").

Intuit's argument ignores these cases and assumes that its small-print reference to two different "terms of use" would notify a reasonable user of a binding arbitration agreement.  But "the phrase 'terms of use' may have no meaning or a different meaning to a large segment of the Internet-using public." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 867 (2016). Simply put, Intuit's hyperlink—like those in *Colgate* and the other cases cited above—would not serve to put a reasonable internet user on notice that by clicking "sign in" they are consenting to arbitration. In fact, under California law, even "a conspicuous 'terms of use' hyperlink may not be enough to alert a reasonably prudent Internet consumer to click the hyperlink." *Id.* Intuit's hyperlink is far from conspicuous—it appears in tiny italics,

1   is not underlined to indicate that it is a link, and is noticeably smaller than the other text confronting the

2   consumer. *Cf. Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (reasoning that "[t]he

3   phrase 'Terms of Service' is underlined, an indication that the phrase is a hyperlink").

4        Given Intuit's design and positioning of the text containing the Terms, it is not surprising that

5   most users proceed through the log-in process without ever seeing them. ███████████████████

6   ████████████████████████████████████████████████████ *See* Girard Decl, Ex.

7   1 at Ex. A. ████████████████████████████████████████████████

8   █████████████████████████████████████████████████████████████

9   ██████████████ *See id.* ██████████████████████████████████

10  ████████████████████████████████, likely because of the mobile

11  app's additional design flaws described below. *Id.*

12       Mr. Brignull's analysis confirms the inconspicuous nature of Intuit's Terms. As Mr. Brignull

13  notes, the text associated with the links to the Terms is displayed less prominently than other text on the

14  page, both because it is smaller and because it has a lower contrast ratio. Brignull Decl. ¶¶ 9-11. In

15  addition, the writing is italicized, reducing its prominence. *Id.* ¶ 11. Intuit also did not underline,

16  highlight, or capitalize the links to its Terms, which would have increased noticeability. *Id.* Further, the

17  text associated with the Terms is positioned at the bottom of the page, below the page's primary button,

18  such that viewing it was not necessary to proceed to the next step and may have been outside the viewing

19  area for users. *Id.* ¶¶ 18-19. And finally, Intuit chose to use multiple hyperlinks, some of which were

20  similarly labeled, on the same sign-in screen ("TurboTax Terms of Use" and "Turbo Terms of Use"),

21  which creates an unnecessary risk of confusion and user error that could be avoided by placing all of the

22  legal terms in a clearly named, single document. *Id.* ¶¶ 22-25.

23       Of course, Intuit could have—indeed, *should* have— used more reliable methods of contract

24  formation.[3]  One common practice—adopted by Apple, Microsoft, and other companies for decades—

25  _____

26  [3] Unlike, for example, deciding to make a purchase online, filing one's taxes is not analogous to a freely entered-into commercial transaction. Taxpayers are *required by law* to file an annual tax return and,

27  because of the Free File Program—which, during the 2018 tax year, required that the government abstain from providing its own free e-file program—taxpayers had no meaningful e-file alternative to programs

28  like TurboTax. These circumstances heighten the coercive effect of the inconspicuous arbitration agreement and heighten Intuit's responsibility to ensure its Terms of Service are communicated to users.

1  is to make it a mandatory step for users to view their terms before proceeding to use their products or
2  software. *Id.* ¶¶ 12-14. Many other companies, including Google, go a step further by requiring users to
3  scroll through the entire agreement and click a box stating "I agree." *Id.* ¶ 15. The reason Intuit chose a
4  more streamlined approach is apparent—requiring a mandatory review of Intuit's Terms could dissuade
5  users from completing the sign-in process and reduce Intuit's user conversion rate. *Id.* ¶ 16. By rejecting
6  design choices that would ensure users are conspicuously presented with its Terms, Intuit accepted the
7  substantial probability that users would not see those terms when they create or sign into their accounts.
8  *Id.* ¶¶ 16, 28.

9     Intuit's mobile application suffers from the same defects as its website presentation because the
10 app presents the Terms in the same inconspicuous manner, with small font purportedly linking to a
11 "License Agreement" on a darker grey background. Further, the mobile app exacerbates the problems
12 with Intuit's design because the purported hyperlink to the "License Agreement" does not link to the
13 Terms. Instead, the hyperlink directs mobile app users to a page containing a list of *ten* hyperlinks to
14 different documents with no indication of which agreement, if any, applies.



25 Mr. Sun ████████████████████████████████████████
26 ████████████████████████████████████████████████

27 ─────────────────────
28 *See* Dennis J. Ventry Jr., *The Failed Free File Program Should Be Reformed, Not Codified*, TaxNotes Vol. 160, No. 3, at 327 (July 16, 2018) [Girard Decl. Ex. 4].

██████████████████████████████████████████████████████ Girard

Decl, Ex. 2, Sun Dep. Tr. at 83-84. As noted by Mr. Brignull, the end result is user confusion because it is not clear which of the ten links, if any, the user should click to access the applicable agreement. Brignull Decl. ¶ 27. This fact provides an additional reason to deny Intuit's Motion as to mobile app users. *See McGhee v. North Am. Bancard, LLC*, 755 F. App'x 718, 719 (9th Cir. 2016) (holding plaintiff did not assent to arbitration where link to terms directed the user to a document that contained a separate link to the User Agreement, in which the arbitration clause was located); *Wilson v. Huuuge, Inc.*, No. 18-36017, — F.3d —, 2019 WL 6974430, at *4 (9th Cir. Dec. 20, 2019) ("[C]ourts decline to enforce agreements where the terms are available only if users scroll to a different screen . . . [or] complete a multiple-step process of clicking non-obvious content[.]").

The authorities Intuit relies on are inapposite and involve actual notice of terms by plaintiffs or more prominent and distinguishable disclosures. For instance, in *Cordas v. Uber Technologies, Inc.*, the plaintiff made only a conclusory showing regarding actual notice and, unlike Plaintiffs in this case, failed to state what he did remember about the screen that said "Terms & Conditions." 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017).[4]

Finally, Intuit's rhetorical claim that Plaintiffs "admit" to agreeing to arbitrate is unavailing. Mot. at 8. Plaintiffs allege that Intuit's Terms are an adhesive contract that they were purportedly required to accept when using TurboTax. Compl. ¶ 108. That allegation is not an admission of Plaintiffs' knowledge of or consent to Intuit's Terms. The Second Circuit, applying California law, rejected an analogous claim that allegations that a user "first must agree to Uber's terms and conditions" precluded a plaintiff from arguing that the agreement was "an unenforceable sign-in wrap agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017). The court rejected Uber's claim because: (1) the allegation made no reference to plaintiff's specific knowledge; (2) plaintiff volunteered to amend the complaint and delete

---

[4] *See also Silverman v. Move Inc.*, No. 18-CV-05919-BLF, 2019 WL 2579343, at *11 (N.D. Cal. June 24, 2019) (finding plaintiff had inquiry notice because she was informed *on the phone* that she would receive "written confirmation" of her order and the details about her "purchase and agreement"); *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497 (LLS), 2014 WL 1652225, at *2 (S.D.N.Y. Apr. 24, 2014) (plaintiff "was *aware* that there were terms which governed his purchase") (emphasis added); *Fteja*, 841 F. Supp. 2d at 834-35 (hyperlink was underlined and screen required plaintiff to actively "reenter a series of letters and numbers displayed on the page" before clicking "Sign-Up").

the allegation; and (3) "regardless of the allegation or even the validity of [the] amendment, [plaintiff] has attested that, at the time he signed up for an Uber account, he was not aware of the existence of the Terms of Service or the arbitration clause therein." *Id*.  Here too, the allegations identified by Intuit make no reference to Plaintiffs' specific knowledge, Plaintiffs would amend their complaint to remove these allegations if necessary, and Plaintiffs attest that they did *not* know about the Terms or its embedded arbitration clause.

In short, because Plaintiffs did not consent to Intuit's arbitration agreement, no agreement was formed and there is no agreement by which Plaintiffs can be compelled to arbitration.

### B. Plaintiffs Seek Only Equitable Relief and Therefore Their Claims Are Not Subject to Arbitration.

Even if the Court finds that Plaintiffs entered into an agreement they did not know about, their claims in this case are not arbitrable because Intuit's clause exempts them from arbitration.

### 1. The Question of Arbitrability Was Not Delegated to an Arbitrator.

Intuit fails to establish that Plaintiffs "clearly and unmistakably" agreed that the courts would be stripped of their authority to decide whether Plaintiffs' claims fall within the scope of Intuit's clause. Mot. at 9-11. Courts should "hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options of Chicago, Inc.*, 514 U.S. at 945 (citations omitted). As a result, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 944 (citation omitted). The requirement of clear and unmistakable evidence embodies a "heightened standard," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010), which Intuit has not met. *See also Ajamian v. CantorCO2e*, L.P., 203 Cal. App. 4th 771, 784 (2012) (a party seeking to establish delegation of threshold issues to an arbitrator bears a "heavy" burden). In fact, a California superior court judge considering this same provision recently concluded that Intuit could not meet its burden in this respect. Girard Decl, Ex. 3, Order, *Macklin v. Intuit, Inc.*, Case No. 2019-1-cv-347208, at 5 (Sup. Ct. Cal. Nov. 1, 2019) (finding the "incorporation of the AAA rules" in Intuit's arbitration clause "insufficient to clearly and unmistakably delegate gateway issues of arbitrability to the arbitrator").

The only evidence Intuit cites in its delegation argument is a statement in its clause about how an arbitration *itself* is to be conducted. Mot. at 9 (relying on a provision stating that "Arbitration will be conducted by the [AAA] before a single AAA arbitrator under the AAA's rules"). Intuit's clause, unlike the clause in *Brennan*, does not provide that all disputes, controversies, or claims are subject to AAA rules. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015) (clause provided that "any controversy or claim . . . shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association."). At best, Intuit's proffered evidence is ambiguous—which is insufficient to delegate arbitrability. *See First Options of Chicago, Inc.*, 514 U.S. at 945.

Many decisions have held that cursory references to arbitration rules do not amount to "clear and unmistakable" evidence that the parties intended the question of arbitrability to be arbitrated. *See, e.g.*, *Ajamian*, 203 Cal. App. 4th at 789-90 (collecting cases); *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004). There are, after all, "many reasons for stating that the arbitration will proceed by particular rules, and doing so does not indicate that the parties' motivation was to announce who would decide threshold issues[.]" *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *12 (N.D. Cal. June 25, 2014) (citation omitted), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).

The Terms do not even specify which AAA rules would apply: Intuit's agreement does not link to the applicable rules or specify that the AAA *Consumer* Rules apply; rather, the agreement says only "AAA rules." Dkt. 97-3, Terms of Service, § 14; *contrast Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1123 (2006) (agreement specified AAA's "Construction Industry Rules"). If a TurboTax user searched for AAA rules on the AAA website, they would find seven different sets of AAA rules under the "Most Viewed" section of the Rules page,[5] and over forty different sets of rules on the "Active Rules" page.[6] Even if a consumer had been able to determine that, of these many sets of rules, the AAA Consumer Arbitration Rules would apply, that set alone contains nearly sixty rules.[7]  *See, e.g.*, *Eiess v. USAA Fed. Sav. Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463, at *7 (N.D. Cal. Aug. 23, 2019) ("For an unsophisticated plaintiff to discover she had agreed to delegate gateway questions . . . she would

---

[5] *See* https://www.adr.org/Rules (last visited Jan. 3, 2020).

[6] *See* https://www.adr.org/active-rules (last visited Jan. 3, 2020).

[7] *See* https://www.adr.org/sites/default/files/Consumer_Rules_Web_0.pdf (last visited Jan. 3, 2020).

need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity—a question the Supreme Court itself has deemed 'rather arcane.'") (citation omitted).

Moreover, the Ninth Circuit expressly limited its holding in *Brennan* to contracts between sophisticated parties. 796 F.3d at 1131 ("[W]e limit our holding to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties.'") (citation omitted). Following *Brennan*, a number of district courts, including this Court, "held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party." *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016) (citing cases); *accord Mikhak v. Univ. of Phoenix*, No. C16-00901 CRB, 2016 WL 3401763, at *3-5 (N.D. Cal. June 21, 2016); *Tompkins*, 2014 WL 2903752, at *11-13. In *Mikhak*, this Court reserved its "authority to determine arbitrability" and declined "to delegate that question to the arbitrator" where a consumer agreement merely referred to the AAA rules.  2016 WL 3401763, at *5.  Likewise, "the majority of the lower courts in the Ninth Circuit have 'held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party.'" *Eiss v. USAA Fed. Savings Bank*, No. 19-cv-00108-EMC, 404 F. Supp. 3d 1240, at 1253 (N.D. Cal. 2019) (citation omitted).

Neither the Supreme Court nor the Ninth Circuit has held otherwise. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528, 531 (2019) (expressing "no view about whether the contract at issue in this case," which incorporated the AAA rules, "in fact delegated the arbitrability question to an arbitrator."); *Brennan*, 796 F.3d at 1130-31; *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1062 (9th Cir. 2018) (stating that, because both parties were sophisticated, "we need not decide whether the *Brennan* rule applies when one or more party is unsophisticated."). The cases Intuit cites as holding that an agreement delegates arbitrability questions merely by referencing the AAA rules either involved a sophisticated plaintiff or are otherwise not controlling. *See Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29, 2017) (non-controlling decision that recognized the split in authority noted by Judge Chen in *Eiss*, 2019 WL 3997463, at *7); *Kin Wah Kung v. Experian Info. Sols., Inc.*, No. C 18-00452 WHA, 2018 WL 2021495, at *4 (N.D. Cal. May 1, 2018)

1  (stressing that the action arose "from two *commercial contracts* between Intuit and plaintiff's two

2  businesses") (emphasis in original).

3  For these reasons, the parties cannot be deemed to have "clearly and unmistakably" agreed to

4  delegate questions of arbitrability to an arbitrator. It is for this Court—not an arbitrator—to decide

5  whether the claims at issue are subject to Intuit's arbitration clause.

6          **2.**    **Plaintiffs' Claims, for Injunctive Relief and Restitution, Are Excluded from**

7                  **Intuit's Arbitration Clause.**

8  Because the question of arbitrability is properly before this Court, the Court should determine

9  "whether [the] agreement encompasses the dispute at issue." *Mikhak*, 2016 WL 3401763, at *2 (quoting

10  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Intuit's scope

11  argument should be rejected. Mot. at 11-17.  By its plain language, Intuit's arbitration provision does

12  not encompass Plaintiffs' equitable claims.

13  The Supreme Court has "reemphasize[d]" that "a court may order arbitration of a particular

14  dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock*

15  *Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original). It follows that "a party

16  cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Casa del*

17  *Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016) (citation omitted); *see,*

18  *e.g.*, *Tracer Res. Corp. v. Nat'l Env. Servs. Co.*, 42 F.3d 1292, 1294-96 (9th Cir. 1994). In interpreting

19  the written terms of a contract, courts read the contract as a whole and construe its terms in a manner

20  that is "reasonable and fair." *California Nat'l Bank v. Woodbridge Plaza LLC*, 164 Cal. App. 4th 137,

21  143 (2008).

22  Intuit's agreement excludes "injunctions or other forms of equitable relief" from arbitration,

23  providing that a party may seek this relief from a court "at any time." The only reasonable interpretation

24  of this provision is that it allows Plaintiffs to seek equitable relief in this Court, now.

25          **a.**    **"Notwithstanding anything to the contrary" sets forth an exclusion to**

                **arbitration.**

26  "Notwithstanding anything to the contrary" introduces an *exclusion* to all other terms in Intuit's

27  arbitration agreement. Consequently, Intuit's reliance on its separate provision for arbitration of "any

28

dispute or claim relating" to its services is misplaced. Mot. at 12-13. "The words of a contract are to be understood in their ordinary and popular sense[.]" Cal. Civ. Code § 1644. The word "notwithstanding" means "despite."[8] In other words, *despite* the agreement to submit all disputes or claims to arbitration, the parties have carved out exclusions. A California appellate court held in a similar case that, because "the phrase '[n]otwithstanding the foregoing' precedes the equitable relief language of the arbitration provision[,]" it is "clear from the language of the contract that the parties did not intend for an arbitrator to resolve the merits of equitable claims[.]" *Bachrach v. Compagno*, No. B252454, 2015 WL 78143, at *4 (Cal. Ct. App. Jan. 6, 2015) (unpublished); *see also Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.").[9]

> **b.   The phrase "at any time" specifically allows Plaintiffs to seek equitable relief in this Court at this time.**

After signaling that it is setting forth an exclusion to arbitration, Intuit's clause provides that a party may "at any time" seek injunctive or equitable relief from a court of competent jurisdiction. The phrase "at any time" distinguishes Intuit's clause from the arbitration clause at issue in the primary case on which Intuit relies, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285-86 (9th Cir. 2009). *Comedy Club* involves an exception stating: "Notwithstanding this agreement to arbitrate, the parties, *in addition to arbitration*, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction *for such purpose* and for the purpose of compelling arbitration and/or enforcing any arbitration award." *Id.* at 1281-82 (emphasis added). The court there held that, given that equitable relief could be sought "in addition to arbitration," the clause "was intended to apply

---

[8]  *See* Merriam-Webster, available at https://www.merriam-webster.com/dictionary/notwithstanding ("Definition of notwithstanding: despite").

[9]  *See also, e.g.*, *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 90-91 (2d Cir. 2002) (explaining that "'[n]otwithstanding anything herein contained to the contrary' . . . overrides any inconsistent language elsewhere" in the contract); *Siltronic Corp. v. Employers Ins. Co. of Wausau*, No. 3:11-cv-1493, 2017 WL 6943151, at *6 (D. Or. Dec. 29, 2017) ("This phrase plainly means that what follows will override any other provision that contradicts it."), *report & rec. adopted*, 2018 WL 1535474 (D. Or. Mar. 29, 2018); *Symbol Techs., Inc. v. Voicenet (Aust.) Ltd.*, No. CV-03-6010, 2008 WL 89626, at *2 (E.D.N.Y. Jan. 4, 2008) ("Notwithstanding" means 'take[s] precedence over' and thus negates any contrary provision") (quoting *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 729-30 (S.D.N.Y. 1989)).

---

only to claims designed to maintain the status quo between the parties[.]" *Id.* at 1285. In short, based on the language of the agreement in that case, the "provision for court jurisdiction on equitable matters was ancillary to the arbitration." *Id.*

Intuit's arbitration clause is materially distinct and broader than the *Comedy Club* clause. Intuit's clause, without saying anything about the purpose of the exclusions, provides that the parties may *at any time* seek "injunctions or other forms of equitable relief." The phrase "at any time" indicates that the equitable relief contemplated is not limited to relief ancillary to an arbitration to maintain the status quo. Intuit asks this Court not only to read that phrase out of the agreement but to *supply* the terms "ancillary" and "incidental" to its agreement, when the agreement contains neither term.

Another critical distinction is the Ninth Circuit's holding in *Comedy Club* that any ambiguities in the parties' contract should be interpreted in favor of arbitration given that the parties to the agreement were sophisticated businesses. *Id.* at 1281-82, 1286. Yet here, Plaintiffs are consumers and Intuit's Terms are adhesive. Compl. ¶¶ 108-12. Although Plaintiffs believe Intuit's carve-out clause is clear, any ambiguity should be construed against Intuit, the drafter. *See, e.g.*, *Revitch v. DirecTV, LLC*, No. 18-cv-01127-JCS, 2018 WL 4030550, at *16 (N.D. Cal. Aug. 23, 2018) (rejecting contention that a court "must resolve [ambiguous language] in favor of arbitration rather than applying the state law rule that ambiguities must be construed against the drafter of a contract."); *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421, 1424 (2017) ("The Federal Arbitration Act . . . requires courts to place arbitration agreements 'on equal footing with all other contracts.'") (quoting *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 465 (2015)); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (construing an ambiguous arbitration agreement against the drafter's interest). The other cases Intuit relies on, like *Comedy Club*, are equally unavailing and contain distinguishable language.[10]

---

[10] *See McKesson Corp. v. Health Robotics, S.R.L.*, No. C-11-00728 JCS, 2011 WL 3157044, at *6, *9 (N.D. Cal. July 26, 2011) (arbitration clause specified that the parties could seek equitable remedies "without waiving the PARTY's right to arbitrate disputes for money or damages" and agreement contained express clause defining equitable remedies); *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213, 215 (S.D.N.Y. 1993) (arbitration clause specified parties may seek "equitable relief *by way of temporary and permanent injunctions*") (emphasis added); *Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*, No. 17 C 2066, 2017 WL 2720433, at *1 (N.D. Ill. June 23, 2017) (provision stated that any dispute arising out of or related to the agreement was to be arbitrated "[w]ithout prejudice to either Party's right to seek equitable relief (including, but not limited to,

1    Additionally, and contrary to Intuit's arguments otherwise, the phrase "at any time" connotes a

2    plain meaning that the merits of the injunctive and equitable claims are reserved for the court. The

3    parties' ability to seek equitable relief "at any time," and not just after an arbitration, necessarily means

4    that the merits of the requested equitable relief also are reserved for the court. If Intuit were correct that

5    the merits of such equitable relief were reserved to the arbitrator, its clause would require parties to wait

6    until the merits are resolved before going to court. But it does not. *See Weiner v. The Firm, Inc*., No.

7    B166766, 2004 WL 1006139, at *1 (Cal. Ct. App. May 7, 2004) (unpublished) (refusing to compel

8    arbitration of UCL claim because clause excluded claims for "injunctive and/or other equitable relief").

9    The case Intuit cites in support of its contention that an arbitrator should evaluate Plaintiffs' claims in

10   the first instance is inapposite. *See* Mot. at 11-12 (discussing *Ferguson v. Corinthian Colleges, Inc.*, 733

11   F.3d 928 (9th Cir. 2013)). In contrast to Intuit's clause, which contains language excluding injunctive

12   and equitable relief, the arbitration clause in *Ferguson* did not contain *any* exclusionary language.

13   Intuit also misses the point with its arguments that "[n]othing in the TERMS . . . *prevents* an

14   arbitrator from" determining liability (Mot. at 11 (emphasis added)) or "prevents Plaintiffs from seeking

15   restitution" in an individual arbitration (Mot. at 14). The arbitrator need not be prevented from

16   determining liability, and consumers need not be prevented from filing an individual arbitration, for

17   consumers to avail themselves of Intuit's provision allowing them "at any time" to seek equitable relief

18   from a court of competent jurisdiction. At minimum, Intuit chose to draft the clause in such a way that a

19   reasonable consumer certainly could have believed they were entitled to seek equitable relief in a court

20   of law—and such ambiguity is construed against the drafter under California law.

21           c.    **The phrase "injunctions or other forms of equitable relief from any court" encompasses Plaintiffs' claims.**

22   Because Intuit's arbitration clause allows Plaintiffs to seek injunctive and equitable relief from

23   this Court, Plaintiffs' UCL and unjust enrichment claims—seeking solely injunctive and equitable

24   relief—may proceed in this forum. Unjust enrichment is an equitable remedy defined under the common

25   law of restitution. *See* 55 Cal. Jur. 3d Restitution § 2. The Ninth Circuit has recognized that a plaintiff

26

27   _____

28   injunction) from a Court of competent jurisdiction" but also that claims "for interim, injunctive, or other
     emergency relief may be arbitrated pursuant to this Section").

can plead a claim for unjust enrichment, *i.e.*, a "theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request,'" entitling the plaintiff to restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). Likewise, Plaintiffs' UCL claims seek a "form[] of equitable relief" for purposes of Intuit's clause. *Cortez v. Purolator Air Filtration Prod. Co.,* 23 Cal. 4th 163, 173 (2000) ("A UCL action is an equitable action").

   In construing a similar exclusionary clause to Intuit's, a California appellate court found the arbitration provision excluded "claims . . . for injunctive and/or other equitable relief[.]" *Weiner*, 2004 WL 1006139, at *6. The court then affirmed the denial of a motion to compel arbitration of the UCL claim, which sought an "equitable remedy" covered by the carve-out. *Id.* at *4. The same result follows from the plain language of Intuit's agreement.

   Intuit itself has conceded that its carve-out clause permits a court to decide a UCL claim against it. In a recent case, Intuit argued that plaintiffs "mischaracterize[ed] the arbitration clause as permitting 'only' this Court to hear their UCL claim. But this clause is *not mandatory*." *In re Intuit Data Litig.*, Case No. 5:15-cv-01778-EJD, Dkt. 87 at 12 (N.D. Cal. Apr. 1, 2016) (emphasis in original) (internal citations omitted). In sum, this Court has authority to decide Plaintiffs' claims for equitable relief.

### 3. Under Intuit's Clause, a Party Need Not Have Filed an Arbitration to Seek Equitable Relief in Court.

   Intuit insists that its exclusionary language applies only to claims brought by parties already in arbitration. This argument should be rejected for at least two reasons.

   *First*, as described *supra* in Section III.B.2.c, Plaintiffs did not agree to bring any equitable claims in arbitration. Instead, Intuit's agreement affords Plaintiffs the right to seek "at any time" the equitable relief they seek from this Court. A "party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017) (citation omitted). Because Plaintiffs did not agree to submit these claims for equitable relief to arbitration, and seek relief in this Court under Intuit's exclusion provision, the claims cannot be compelled to arbitration.

   *Second*, compelling arbitration when Plaintiffs' claims are reserved for the Court would be an inefficient, absurd result in this context. California law provides that the "language of a contract is to

govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. Accordingly, courts have rejected applications of contractual language that would lead to an absurd result. *See English & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904, 914 (N.D. Cal. 2016) ("Interpretation of a contract must be fair and reasonable, not leading to absurd conclusions."); *Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995) ("Where contract language is clear and explicit *and does not lead to absurd results*, we ascertain intent from the written terms and go no further.") (emphasis added). Although the language "any party to the arbitration" may apply to a situation where a plaintiff brings both legal and equitable claims, the application of the phrase here, where Plaintiffs have brought only equitable claims exempt from arbitration, makes no sense. It would be wasteful and unnecessary to require Plaintiffs to file arbitrations just so they could come back to this Court to pursue their requested relief.

Intuit's invocation of AAA Rule 37(d) to explain how a party can both "at any time" seek equitable relief, while also first needing to be a "party to the arbitration," is unpersuasive.  Mot. at 15. Rule 37(d) states that a party "to an arbitration agreement under [AAA Rules] may instead file in state or federal court for interim relief." That under the AAA Rules an arbitral party may seek interim relief in court has no bearing on the language in the arbitration clause at issue here. Nor can Intuit show that a consumer's only reasonable interpretation of Intuit's arbitration clause depends on the consumer knowing of a single subsection of a discrete rule in the AAA Consumer rulebook.

In the *Macklin* case, the plaintiffs failed to contest Intuit's interpretation on the basis that it would lead to an absurd result, but the California superior court judge appeared to recognize the absurdity of the outcome, noting that it "offer[ed] no opinion on whether after an arbitration is commenced the AAA rules allow a party to *return immediately* to a court of competent jurisdiction."  *See* Girard Decl., Ex. 3, *Macklin*, at 7 (emphasis added). Thus, while the state court judge compelled arbitration for the time being, it did not address the arguments raised by Plaintiffs in this case.

### C.    The Class Action Waiver as to Plaintiffs' Equitable Claims, Which Are Exempted from the Arbitration Clause, Is Unenforceable.

Because the UCL and unjust enrichment claims are not subject to arbitration and are properly before this Court, Intuit's purported class action waiver as applied to those claims is unenforceable.  The

1  parties cannot, by contract, dictate the procedural rules of this Court, where the Federal Rules apply.

2  "And like the rest of the Federal Rules of Civil Procedure, Rule 23 *automatically* applies 'in all civil

3  actions and proceedings in the United States district courts.'" *Shady Grove Orthopedic Assocs., P.A. v.*

4  *Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (emphasis in original) (quoting Fed. R. Civ. P. 1).

5       Furthermore, Intuit's class action waiver as applied to Plaintiffs' claims, which are non-arbitrable,

6  also cannot be enforced because it is unconscionable. Under California law, where a class action waiver

7  is "found in a consumer contract of adhesion in a setting in which disputes between the contracting

8  parties predictably involve small amounts of damages, and when it is alleged that the party with the

9  superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers

10  out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the

11  party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'"

12  *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal. 2005) (quoting Cal. Civ. Code § 1668),

13  *abrogated with respect to arbitration agreements by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333

14  (2011).  And, in these circumstances, class action waivers "are unconscionable under California law and

15  should not be enforced." *Id.*

16       These are the circumstances presented here. Intuit's statement that arbitration of small claims

17  "compare[s] favorably" to a class action in court, where counsel work on contingency, proves the point.

18  Mot. at 21. Plaintiffs' damages are relatively small, and Intuit's agreement was a non-negotiable

19  consumer contract of adhesion. Plaintiffs allege that Intuit, the party with superior bargaining power,

20  carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of

21  money. Hence, Intuit's class action waiver for Plaintiffs' claims meets the required elements for

22  unconscionability under California law. And because the agreement expressly exempts all of Plaintiffs'

23  claims from arbitration, the FAA does not apply.

24       A recent case in the Central District of California demonstrates that *Concepcion* and its progeny

25  do not apply when the question is whether a class waiver for *non*-arbitrable claims is unconscionable.

26  In *Underwood v. Future Income Payments, LLC*, No. SA CV 17-1570-DOC (DFMx), 2018 WL 4964333

27  (C.D. Cal. Apr. 26, 2018), the court considered whether to strike class allegations when an agreement

28  contained a class waiver but not an arbitration clause. The court explained that "[u]nconscionable class

1 waivers are unenforceable" and denied the motion to strike until the fact-dependent question of

2 unconscionability could be resolved. *Id*. at *5.

3       Intuit presents no authority to the contrary and misinterprets the case it relies on, *Iskanian v. CLS*

4 *Transportation Los Angeles, LLC*, 379 P.3d 129 (Cal. 2014). *Iskanian* does not hold that class waivers

5 are valid regardless of whether the claims are brought in arbitration or in court. Mot. at 14.  To the

6 contrary, the California Supreme Court acknowledged that class action waivers in *non*-arbitration

7 agreements may be invalidated, but noted that even if an invalidation rule applied equally to "arbitration

8 and nonarbitration agreements," it was unenforceable with respect to an *arbitration* agreement under

9 U.S. Supreme Court precedent because invalidation would "interfere[] with fundamental aspects of

10 arbitration, and, for that reason, disfavors arbitration in practice." *Iskanian*, 379 P.3d at 141.

11       In sum, because Plaintiffs' claims are not subject to arbitration, Intuit's class action waiver as

12 applied to these claims is void.

13 **IV.**    **CONCLUSION**

14       Intuit's motion to compel arbitration should be denied.

15   Dated:  January 3, 2019              By:   */s/ Daniel C. Girard*

16

17                                 Daniel C. Girard (State Bar No. 114826)
                                Angelica M. Ornelas (State Bar No. 285929)

18                                 Simon S. Grille (State Bar No. 294914)
                                **GIRARD SHARP LLP**

19                                 601 California Street, Suite 1400
                                San Francisco, California 94108

20                                 Telephone: (415) 981-4800
                                Facsimile: (415) 981-4846

21                                 dgirard@girardsharp.com
                                aornelas@girardsharp.com

22                                 sgrille@girardsharp.com

23

24                                 Norman E. Siegel (*pro hac vice*)

25                                 J. Austin Moore (*pro hac vice*)
                                Jillian R. Dent (*pro hac vice*)

26                                 **STUEVE SIEGEL HANSON LLP**
                                460 Nichols Road, Suite 200

27                                 Kansas City, MO 64112
                                Telephone: (816) 714-7100

28                                 Facsimile: (816) 714-7101

siegel@stuevesiegel.com
moore@stuevesiegel.com
dent@stuevesiegel.com

*Co-Lead Interim Counsel*