Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dgirard@girardsharp.com*
*aornelas@girardsharp.com*
*sgrille@girardsharp.com*

Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Jillian R. Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
*siegel@stuevesiegel.com*
*moore@stuevesiegel.com*
*dent@stuevesiegel.com*

*Co-Lead Interim Class Counsel*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| IN RE INTUIT FREE FILE LITIGATION | Case No. 3:19-cv-02546-CRB |
|---|---|
| | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION, AND ENTRY OF FINAL INJUNCTIVE RELIEF** |
| | Date: February 14, 2020 |
| | Time: 10:00 a.m. |
| | Courtroom: 6, 17th Floor |
| | Judge: Hon. Charles R. Breyer |

## NOTICE OF MOTION AND MOTION

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on February 14, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Charles R. Breyer, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Andrew Dohrmann Joseph Brougher, and Monica Chandler will, and hereby do, move for an order granting class certification under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, granting partial summary adjudication in favor of Plaintiffs regarding Intuit, Inc.'s violations of the unfair prong of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (UCL), and entering final injunctive and corresponding declaratory relief.

This motion is based on this notice of motion and motion, the memorandum of points and authorities that follows, the accompanying declarations of Simon S. Grille ("Grille Decl."), Andrew Dohrmann ("Dohrmann Decl."), Joseph Brougher ("Brougher Decl."), and Monica Chandler ("Chandler Decl."), the papers and records on file in this action, and such other written and oral arguments as may be presented to the Court.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .................................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.     SUMMARY OF ARGUMENT ..................................................................................... 1

II.    ISSUES TO BE DECIDED ........................................................................................... 2

III.   STATEMENT OF FACTS ............................................................................................ 2

     A.    Intuit Promoted TurboTax as Being Free. ...................................................... 2

     B.    Intuit Used the Free File Program to Confuse Taxpayers .............................. 4

     C.    Intuit Directed Eligible Taxpayers to Its Paid Tax Filing Site ...................... 6

     D.    Intuit Impeded Access to Its Actual Free Site and Imposed Unexpected Charges at the Last Minute. .................................................................................................. 7

     E.    Intuit Reacts to the Consumer Confusion Created by Its Free to Fee Scheme. ............... 9

     F.    Intuit Profited From Its "Free to Fee" Strategy. ........................................... 10

IV.   THE COURT SHOULD CERTIFY AN INJUNCTIVE-RELIEF CLASS. ................... 10

     A.    Plaintiff Propose an Objectively Defined Class of Eligible Tax Filers. ....... 12

     B.    The UCL Applies to the Claims of All Class Members. ............................... 13

     C.    The Requirements of Rule 23(a) Are Met. ................................................... 14

          1.    The Class Is Too Numerous for Joinder to Be Practicable. ................ 14

          2.    There Are Questions of Law and Fact Common to the Class .............. 14

          3.    Plaintiffs' Claims Are Typical of the Class. ....................................... 15

          4.    Plaintiffs Will Fairly and Adequately Represent the Class. ................ 16

     D.    Rule 23(b)(2) Is Satisfied Because Intuit's Conduct Applies Generally to the Class as a Whole. ............................................................................................ 16

V.    THE COURT SHOULD GRANT PARTIAL SUMMARY ADJUDICATION IN FAVOR OF PLAINTIFFS ON THEIR CLAIM THAT INTUIT ENGAGED IN UNFAIR PRACTICES IN VIOLATION OF THE UCL. ........................................................... 18

     A.    Judgment as a Matter of Law Under the Unfair Prong Is Warranted. ............ 19

     B.    Plaintiffs Have Standing to Seek Injunctive Relief ...................................... 22

VI.   THE COURT SHOULD ENTER APPROPRIATE FINAL INJUNCTIVE RELIEF ............... 23

     A.    The Requested Injunctive Relief Is Tailored to Prevent Further Violations. ................ 23

     B.    Plaintiffs Need Not Show Irreparable Harm or an Inadequate Remedy at Law ............. 23

VII.  CONCLUSION .......................................................................................................... 25

ii

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*
  731 F.3d 952 (9th Cir. 2013) ........................................................................ 14

*Aichele v. City of Los Angeles*
  314 F.R.D. 478 (C.D. Cal. 2013) .................................................................. 12

*Allen v. Hyland's Inc.*
  300 F.R.D. 643 (C.D. Cal. 2014) .................................................................. 13

*Allied Grape Growers v. Bronco Wine Co.*
  203 Cal. App. 3d 432 (1988) ........................................................................ 25

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ...................................................................................... 21

*Applied Med. Distrib. Corp. v. Ah Sung Int'l, Inc.*
  No. SACV1401900 JVS (RNBx), 2015 WL 12910908 (C.D. Cal. Dec. 14, 2015) .......................... 25

*AT & T Mobility LLC v. AU Optronics Corp.*
  707 F.3d 1106 (9th Cir. 2013) ...................................................................... 13

*B.K. by next friend Tinsley v. Snyder*
  922 F.3d 957 (9th Cir. 2019) ........................................................................ 18

*Barquis v. Merchants Collection Assn.*
  7 Cal. 3d 94 (1972) ...................................................................................... 25

*Bates v. United Parcel Service, Inc.*
  511 F.3d 974 (9th Cir. 2007) ........................................................................ 22

*Bias v. Wells Fargo & Co.*
  942 F. Supp. 2d 915 (N.D. Cal. 2013) .......................................................... 20

*Bradach v. Pharmavite, LLC*
  735 F. App'x 251 (9th Cir. 2018) ................................................................ 11

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017) ...................................................................... 13

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*
  No. C 10-3428 PSG, 2013 WL 890126 (N.D. Cal. Jan. 23, 2013) ................ 24

*Brockey v. Moore*
  107 Cal. App. 4th 86 (2003) .................................................................. 23, 25

*Broomfield v. Craft Brew All., Inc.*
No. 17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ..................................... 18, 22

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*
213 F.3d 474 (9th Cir. 2000) ........................................................................................................ 18

*Camacho v. Auto. Club of S. Cal.*
142 Cal. App. 4th 1394 (2006) ..................................................................................................... 14

*Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*
837 F.2d 171 (4th Cir. 1988) ........................................................................................................ 24

*Cappello v. Walmart Inc.*
394 F. Supp. 3d 1015 (N.D. Cal. 2019) ........................................................................................ 14

*Carrizosa v. Stassinos*
No. C-05-02280 RMW, 2010 WL 4393900 (N.D. Cal. Oct. 29, 2010) ........................................ 25

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
20 Cal. 4th 163 (1999) ................................................................................................................. 11

*Chapman v. Skype Inc.*
220 Cal. App. 4th 217 (2013) ....................................................................................................... 21

*Chavez v. Blue Sky Nat. Beverage Co.*
268 F.R.D. 365 (N.D. Cal. 2010) .................................................................................................. 15

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983) ....................................................................................................................... 22

*City of New York v. Golden Feather Smoke Shop, Inc.*
597 F.3d 115 (2d Cir. 2010) ......................................................................................................... 24

*Clay v. CytoSport, Inc.*
No. 3:15-CV-00165-L-AGS, 2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) ................................. 13

*Continental Airlines, Inc. v. Intra Brokers, Inc.*
24 F.3d 1099 (9th Cir. 1994) ........................................................................................................ 19

*Cortez v. Purolator Air Filtration Prod. Co.*
23 Cal. 4th 163 (2000) ................................................................................................................. 20

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) ........................................................................................................ 22

*Doctors Med. Ctr. of Modesto v. Glob. Excel Mgmt., Inc.*
No. 1:08-CV-01231 OWW DL, 2009 WL 2500546 (E.D. Cal. Aug. 14, 2009) ............................ 21

*Dolfo v. Bank of Am., N.A.*
No. 11CV2828 DMS, 2013 WL 12331540 (S.D. Cal. June 3, 2013) ............................................ 11

iii

*Flores v. Southcoast Auto. Liquidators, Inc.*
  17 Cal. App. 5th 841 (2017) ................................................................... 19

*Franco-Gonzales v. Napolitano*
  No. CV 10-02211 DMG, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ............... 14

*General Tel. Co. of the Sw. v. Falcon*
  457 U.S. 147 (1982).............................................................................. 12

*Gray v. Cty. of Riverside*
  No. EDCV 13-00444-VAP, 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014)............... 12

*Haas Automation, Inc. v. Denny*
  No. 2:12-CV-04779 CBM, 2014 WL 2966989 (C.D. Cal. July 1, 2014)................ 25

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ....................................................... 14, 15, 16

*Hart v. Colvin*
  310 F.R.D. 427 (N.D. Cal. 2015) ............................................................. 17

*Hewlett v. Squaw Valley Ski Corp.*
  54 Cal. App. 4th 499 (1997) ................................................................... 23

*Hilsley v. Ocean Spray Cranberries, Inc.*
  No. 17CV2335-GPC (MDD), 2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) ........... 22

*Holt v. Noble House Hotels & Resort, LTD*
  No. 17CV2246-MMA (BLM), 2018 WL 5004996 (S.D. Cal. Oct. 16, 2018)........... 15, 16

*Horton v. California Credit Corp. Ret. Plan*
  835 F. Supp. 2d 879 (S.D. Cal. 2011)......................................................... 22

*I.B. by & through Bohannon v. Facebook, Inc.*
  82 F. Supp. 3d 1115 (N.D. Cal. 2015) ........................................................ 13

*In re Arris Cable Modem Consumer Litig.*
  327 F.R.D. 334 (N.D. Cal. 2018).............................................................. 10

*In re ConAgra Foods, Inc.*
  302 F.R.D. 537 (C.D. Cal. 2014).............................................................. 11

*In re ConAgra Foods, Inc.*
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................... 15, 16

*In re Hain Celestial Seasonings Prod. Consumer Litig.*
  No. SACV13-1757 AG (ANx), 2015 WL 12001273 (C.D. Cal. Sept. 23, 2015) ............... 18

*In re High-Tech Emp. Antitrust Litig.*
  985 F. Supp. 2d 1167 (N.D. Cal. 2013)....................................................... 10

iv

*In re Marriage of Van Hook*
   147 Cal. App. 3d 970 (1983) ................................................................................... 24

*In re Online DVD-Rental Antitrust Litig.*
   779 F.3d 934 (9th Cir. 2015) ................................................................................ 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*
   No. MDL 2672 CRB (JSC), 2017 WL 6041723 (N.D. Cal. Dec. 6, 2017) ............ 18

*In re Yahoo Mail Litig.*
   308 F.R.D. 577 (N.D. Cal. 2015) .............................................................. 12, 13, 17

*Jimenez v. Allstate Ins. Co.*
   765 F.3d 1161 (9th Cir. 2014) .............................................................................. 14

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*
   702 F.3d 364 (7th Cir. 2012) ................................................................................ 12

*Jordan v. Paul Fin., LLC*
   285 F.R.D. 435 (N.D. Cal. 2012) .......................................................................... 14

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal. 4th 1134 (2003) ........................................................................................ 23

*Kwikset Corp. v. Superior Court*
   51 Cal. 4th 310 (2011) .......................................................................................... 19

*Lanovaz v. Twinings N. Am., Inc.*
   No. C-12-02646-RMW, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ............... 17

*Lilly v. Jamba Juice Co.*
   308 F.R.D. 231 (N.D. Cal. 2014) .......................................................................... 15

*Lord & Taylor, LLC v. White Flint, L.P.*
   780 F.3d 211 (4th Cir. 2015) ................................................................................ 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986) .............................................................................................. 21

*McKell v. Wash. Mut., Inc.*
   142 Cal. App. 4th 1457 (2006) ............................................................................. 11

*My Taco Guy, LLC v. Taco Man Corp.*
   No. CV17-1573 FMO (AJWx), 2017 WL 10434394 (C.D. Cal. Dec. 27, 2017) ....... 25

*Parra v. Bashas', Inc.*
   536 F.3d 975 (9th Cir. 2008) ................................................................................ 14

*Parsons v. Ryan*
   754 F.3d 657 (9th Cir. 2014) ........................................................................ 10, 17

v

*People ex rel. Becerra v. Huber*
   32 Cal. App. 5th 524 (2019) .................................................................. 24

*People ex rel. Harris v. Aguayo*
   11 Cal. App. 5th 1150 (2017) ......................................................... 19, 23

*People v. JTH Tax, Inc.*
   212 Cal. App. 4th 1219 (2013) ....................................................... 19, 23

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985) ........................................................................... 13

*Progressive W. Ins. Co. v. Superior Court*
   135 Cal. App. 4th 263 (2005) ............................................................. 19

*Ramirez v. Greenpoint Mortg. Funding, Inc.*
   268 F.R.D. 627 (N.D. Cal. 2010) ....................................................... 16

*Rannis v. Recchia*
   380 F. App'x 646 (9th Cir. 2010) ....................................................... 14

*Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*
   No. CIV.A. RDB-11-1864, 2013 WL 2903285 (D. Md. June 13, 2013) .............. 24

*Ries v. Arizona Bevs. USA LLC*
   287 F.R.D. 523 (N.D. Cal. 2012) ................................................... 15, 17

*Robinson v. Open Top Sightseeing San Francisco, LLC*
   No. 14-CV-00852-PJH, 2017 WL 2265464 (N.D. Cal. May 24, 2017) ............... 22

*Schneider v. Chipotle Mexican Grill, Inc.*
   328 F.R.D. 520 (N.D. Cal. 2018) ....................................................... 11

*SEC v. Murphy*
   626 F.2d 633 (9th Cir. 1980) ............................................................. 19

*Senne v. Kansas City Royals Baseball Corp.*
   934 F.3d 918 (9th Cir. 2019) ............................................................. 17

*Sidibe v. Sutter Health*
   No. 12-CV-04854-LB, 2019 WL 5295062 (N.D. Cal. Oct. 18, 2019) ............... 17

*State of Cal., on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell*
   138 F.3d 772 (9th Cir. 1998) ............................................................. 21

*Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*
   731 F. Supp. 947 (E.D. Cal. 1990) ..................................................... 24

*Tri-Dam v. Yick*
   No. 1:11-CV-01301 AWI-SMS, 2016 WL 4061348 (E.D. Cal. July 28, 2016) ......... 24

vi

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

*Veera v. Banana Republic, LLC*
  6 Cal. App. 5th 907 (2016) ................................................................................ 20

*Wallace v. Countrywide Home Loans Inc.*
  No. SACV 08-1463-JST, 2013 WL 1944458 (C.D. Cal. Apr. 29, 2013) .................... 22

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) .............................................................................. 14, 17

*Walters v. Reno*
  145 F.3d 1032 (9th Cir. 1998) ............................................................................ 17

*Williams v. Gerber Prods. Co.*
  552 F.3d 934 (9th Cir. 2008) ............................................................................. 21

*Wolin v. Jaguar Land Rover N. Am., LLC*
  617 F.3d 1168 (9th Cir. 2010) ............................................................................ 15

*Wolph v. Acer Am. Corp.*
  272 F.R.D. 477 (N.D. Cal. 2011) .................................................................. 13, 15

*Wortman v. Air New Zealand*
  326 F.R.D. 549 (N.D. Cal. 2018) ....................................................................... 13

*Yue v. Conseco Life Ins. Co.*
  No. CV08-1506 AHM (JTLx), 2009 WL 10671418 (C.D. Cal. Dec. 7, 2009) .................... 18

**Statutes**

Cal. Bus. & Prof. Code § 17200 ..............................................................*passim*

Cal. Bus. & Prof. Code § 17203 ....................................................................... 23

**Rules**

Fed. R. Civ. P. 23 ....................................................................................*passim*

Fed. R. Civ. P. 56 ................................................................................... 18, 19

**Other Authorities**

10A Charles A. Wright et al., *Federal Practice and Procedure* § 2731 (2d ed. 1983) .......................... 19

19 Wright & Miller, *Federal Practice and Procedure* § 4513 (3d ed. 2018) ......................... 24

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   SUMMARY OF ARGUMENT**

As a participant in the IRS's Free File Program, Intuit is obligated to provide free tax preparation and filing services to lower income taxpayers and military service members.  Instead, Intuit leveraged its participation in the program to implement a business strategy that it refers to as "free to fee"—enticing low income earners with a promise of free tax preparation and then charging them a fee. As part of this scheme, Intuit aggressively promotes its online TurboTax software as "free," directs low income earners to its "Free Edition" website, and does not qualify its repeated and widespread offers of free tax filing services with the fact that most taxpayers using Free Edition actually will need to pay to complete and file their return.

Despite being eligible to file for free under the IRS program, Plaintiffs paid Intuit to file a return for tax year 2018.  Like millions of others, they reasonably expected Free Edition to be free.  Instead, after being drawn into Intuit's software and having spent considerable time and effort to prepare a tax return, Intuit sprung the news that they would need to pay a fee to complete and file their return.  Thus, even though Intuit knew these low income taxpayers were eligible to file for no charge under the Free File Program, Intuit still charged them.  Intuit also took affirmative steps to dissuade taxpayers from using TurboTax "Freedom Edition," its *actual* free filing portal under the Free File Program, on which the same taxpayers would not have been charged to file their taxes.  For example, Intuit paid for advertising on Google to ensure that web searches would display the Free Edition commercial website and saturated that website with promises of "free" services while simultaneously using software code to ensure that its Freedom Edition site would not appear in search results.

Because taxpayers are exposed to Intuit's continuing violations of California law, Plaintiffs seek an injunction forbidding Intuit from promoting its paid tax preparation product through this bait-and-switch scheme.  As a predicate to this injunction and corresponding declaratory relief, Plaintiffs move for certification under Federal Rule of Civil Procedure 23(b)(2) of a class of all persons who are eligible, under the IRS Free File Program, to file a federal tax return for free using an Intuit website. Plaintiffs further seek partial summary adjudication of their claim that Intuit's practices with respect to tax year 2018 filings were unfair in violation of the UCL.  The Court should end Intuit's practices

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION, AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

because they violate the consumer balancing test under California law and monetize what should be a free benefit for more than 100 million Americans.

As discussed below, the public record justifies the relief Plaintiffs seek, and they respectfully request that the Court grant this motion for the protection of the class and the public at large.

## II.   ISSUES TO BE DECIDED

1.   Whether Plaintiffs' claims satisfy the requirements for certifying an injunctive-relief class under Federal Rules of Civil Procedure 23(a) and 23(b)(2).

2.   Whether the Court should grant partial summary adjudication in favor of Plaintiffs on their claim that Intuit's conduct violates the UCL's unfairness prong.

3.   Whether the Court should enjoin Intuit from committing unfair practices in the promotion of its commercial TurboTax products.

## III.   STATEMENT OF FACTS

### A.   Intuit Promoted TurboTax as Being Free.

For the 2018 tax year, Intuit implemented a widespread promotional campaign centered on the offer of "free" tax return preparation.  Intuit placed numerous online, television, and print advertisements for TurboTax that prominently displayed the word "free" or phrases like "free, free, free." *E.g.*, Exs. 1-2.[1]  A one-minute television advertisement that aired in 2018, for example, shows a courtroom scene in which the lawyers, judge and jury say only the word "free" 85 times in a row.  Ex. 2 at 1-2.[2]  The advertisement ends with a voiceover stating, "That's right, TurboTax Free is free.  Free, free, free, free." *Id.*

Many of Intuit's internet advertisements not only repeat the word free but also include the phrase "Free Guaranteed" in large, bolded text.  *E.g.*, Ex. 3.  Two examples appear on the next page.

---

[1] All exhibits are attached to the accompanying Grille Declaration.

[2] https://www.ispot.tv/ad/ItVz/turbotax-free-lawyer (last visited Jan. 10, 2020).



Ex. 4.

Intuit commissioned an advertisement in the form of a crossword puzzle with 68 clues to which every answer was "free." Ex. 5. Intuit titled the crossword "FREE by Free F. Free" and published it on *The New York Times* website and in *The New York Times Magazine*. *Id.* Intuit ran a related television advertisement featuring an elderly couple attempting to complete this crossword puzzle. Ex. 2 at 3-4.[3] Other Intuit television advertisements using the word "free" portrayed a game show,[4] a spelling bee,[5] the closing credits of an action movie,[6] and a high school placekicker reminiscing about learning how to kick field goals as a child.[7] Ex. 2 at 5-10. *To this day* Intuit continues to promote its commercial tax preparation and filing software using phrases like "FREE guaranteed," "File for $0" and "$0 Fed. $0 State. $0 to File." Ex. 6.

[3] https://www.ispot.tv/ad/I6l9/turbotax-crossword (last visited Jan. 10, 2020).
[4] https://www.ispot.tv/ad/I6EP/turbotax-free-game-show (last visited Jan. 10, 2020).
[5] https://www.ispot.tv/ad/Ineq/turbotax-free-spelling-bee (last visited Jan. 10, 2020).
[6] https://www.ispot.tv/ad/ITW4/turbotax-free-credits (last visited Jan. 10, 2020).
[7] https://www.ispot.tv/ad/In8y/turbotax-field-goal (last visited Jan. 10, 2020).

3

Intuit's advertising for the 2018 tax year specifically targeted active military service members eligible for free tax filing under the IRS program.  Exs. 11(a)-(b).  Intuit used patriotic imagery to attract service members to file taxes using its commercial products and maintained a dedicated webpage for service members that linked only to TurboTax's commercial filing options, as purportedly "free" offerings.  Exs. 12(a)-(b).  Intuit also promoted a "military discount" and then charged service members who would have otherwise been eligible to file a return for no charge using Intuit's Free File product.  Exs. 11, 12.

In addition, Intuit used direct email campaigns with messages emphasizing the word "free" to drive traffic to its commercial products.  Ex. 7.  Individuals received emails from Intuit urging them to sign in to get a "max refund" that is "FREE guaranteed."  Ex. 8.  These emails directed taxpayers to Intuit's Free Edition commercial site—not the Freedom Edition free site.  Dohrmann Decl., ¶ 4; Brougher Decl., ¶ 4; Chandler Decl., ¶ 4; *see also* Ex. 9 at 16 (IRS Advisory Council Report finding decline in Free File participation attributable in part to Alliance members "directly marketing their non-Free File products to taxpayers who used their Free File product in prior years.").  Intuit continues to use "FREE guaranteed" and similar phrases in its current email campaign for the 2019 tax year. Ex. 10.

### B.   Intuit Used the Free File Program to Confuse Taxpayers.

Intuit made its promises of "free" services against the backdrop of the Internal Revenue Service's free return filing program, which relies on Intuit and other providers of online tax return filing services to offer free filing portals for qualifying individuals.  Ex. 13.  In 1998, Congress passed the Internal Revenue Service Restructuring and Reform Act, setting a goal of 80 percent of all tax returns being filed electronically by 2007.  Ex. 14 at Title II.  The IRS thereafter entered into an agreement with a consortium of private tax preparation companies, originally known as the Free File Alliance, LLC and now called Free File, Inc. (the "Alliance"), to facilitate the growth of free electronic tax filing.  Ex. 15.  Under the Free File Agreement (the "Agreement"), Intuit and the other Alliance members agreed to provide free tax preparation and filing services with the goal of reaching 60% of eligible American taxpayers.  Ex. 16 at ¶ III.A.  The IRS and the Alliance renewed the Agreement in 2005 and expanded the program to include "taxpayers with an AGI [adjusted gross income] equal to or less than 70% of all US taxpayers or below for the prior year, including those least able to afford efiling

4

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

tax returns, based upon verifiable characteristics in their tax return[.]"  Ex. 17 at Article I, § 1.3.  Since then, the Agreement has been renewed several times and amended through a series of memoranda of understanding ("MOUs").  On October 31, 2018, the IRS and Alliance entered into an Eighth MOU renewing the Free File Program through October 31, 2021.  Ex. 18.

Under the Agreement, each Alliance member serves a share of the total eligible population so that all qualifying taxpayers will have access to at least one online platform allowing them to file a return for free.  Ex. 19.  For the 2018 tax year, Intuit committed to provide free e-filing to some of the lowest-earning and most vulnerable taxpayers: those (1) who have AGIs of $34,000 or less, (2) are eligible for the Earned Income Tax Credit, or (3) are active military members with AGIs of $66,000 or less.  *Id.* at 4 of 9.  Under the Free File Program, these are the only requirements for taxpayers to file for free using TurboTax.  *Id.*  Taxpayers who qualified for a free federal return could also prepare and file their state tax returns for free using TurboTax's Free File site.  *Id.*

In 2018, Intuit's Free File tax return preparation software—the actually free product referred to by Intuit as "Turbo Tax Freedom Edition" or "Turbo Tax Free File Program"[8]—allowed eligible taxpayers to prepare and e-file their federal and state tax returns for free.  Ex. 20.  As required by the program, Freedom Edition gave users free access to more than 100 tax forms, allowing eligible taxpayers to file even complex returns electronically for no charge, so long as they met one of the three criteria set forth above: an AGI of $34,000 or less; eligibility for the Earned Income Tax Credit; or status as an active military member with an AGI of $66,000 or less.  Ex. 21.

Instead of promoting *Freedom* Edition, however, Intuit's marketing campaign was directed at promoting Intuit's fee-based commercial preparation software—the similarly named TurboTax "*Free* Edition."  Although marketed by Intuit as free, the Free Edition was *not* free for most taxpayers.  Exs. 22-23.  Free Edition required customers to pay to file all but the most basic tax returns, including returns that would otherwise be eligible for free filing if the same taxpayer used Freedom Edition.  Exs. 21, 24.  Taxpayers eligible for free filing in 2018 still had to pay to file their taxes using Free Edition if

---

[8] Even after Intuit changed the name of its IRS Free File website from Freedom Edition to Turbo Tax Free File Program, the site's URL included the phrase "taxfreedom."  *See* http://web.archive.org/web/20190213032223/https://turbotax.intuit.com/taxfreedom/ (last visited Jan. 10, 2020).  For consistency, Plaintiffs refer to that site as "Freedom Edition" in this brief.

they—like millions of Americans—itemized deductions; were self-employed; lacked health insurance; received unemployment; had business income, expenses, or losses; claimed a student loan deduction; had capital gains or losses; lived in one state but worked in another; paid or received alimony; had income from rental real estate; received royalties; had farm income or losses; or claimed a health savings account contribution deduction, deductible educator expenses, education credits, retirement savings contribution credits, or credits for child and dependent care expenses. *Id.*; *see also* Ex. 25. None of these tax situations would have triggered a fee for those filing with Freedom Edition.

Intuit claims over 11 million people filed 2018 federal taxes for free using Free Edition, without indicating whether these individuals also filed their state income taxes for free. Joint CMC Statement, Dkt. No. 90 at p. 7 of 26. Intuit has admitted using the offer of free federal tax return filing to generate revenue from filing state tax returns. Intuit's former CEO Brad Smith divulged that, "by the time you're done with free Federal, we say, 'Looks like California owes you another $900. Click here for $24.95, we'll go get it for you.' And so automatically, it takes a free person and gets them buying something called State." Ex. 26 at p. 7 of 14. Intuit's claim also ignores that taxpayers who are able to use TurboTax to file for free in one year will be targeted by TurboTax marketing and prompted to upgrade to its paid products in the future—a form of upselling that, while integral to Intuit's course of conduct, is not permitted in the legitimate Free File product. *Id.* Smith admitted that a taxpayer could "get all the way through free this year. Next year, when you come in, if you don't want to key the information again, we'll go pull it out of the cloud and pre-populate it for you, but you have to pay for it." *Id.* He later explained, "I think our track record is we can bring people in on free. We can monetize many of them in the same season. But we also tend to monetize more of them the following season and that just continues to be a formula that pays off." Ex. 27 at p. 16 of 27.

### C.     Intuit Directed Eligible Taxpayers to Its Paid Tax Filing Site.

Intuit's tax year 2018 "free to fee" scheme included active measures to make it difficult for taxpayers to find Intuit's actual free site. Intuit purchased Google "AdWords"—advertisements that appear above Google search results—to direct taxpayers to its commercial tax filing site instead of its Freedom Edition site. Ex. 28. In 2018, a Google search for "irs free file taxes" brought up a link to TurboTax's commercial fee-based "Free Edition" as the top search result. *Id.*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION, AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

Intuit also required users to log into an "Intuit Account" before starting a tax return using either Freedom Edition or Free Edition.  Ex. 29.  Users who input their preexisting Intuit ID on the TurboTax website were directed to the commercial filing options.  Ex. 30.  To actually use Freedom Edition, a user needed to (1) sign out of their existing TurboTax account; (2) go to the IRS Free File Program; (3) create a new account or sign back into their existing TurboTax account; and (4) confirm the switch to TurboTax Freedom Edition when prompted.  *Id.*

During the 2018 tax year, Intuit also caused online search results to direct internet traffic away from the online portal for the Freedom Edition, making it virtually impossible for eligible taxpayers to find that site.  Dkt. No. 90 at p. 6 of 26 (Intuit admitting that it engaged in the practice of "de-indexing organic search results").  Consequently, eligible taxpayers searching for "turbo tax free file," "irs free file taxes," or other search terms that a taxpayer trying to find a free e-filing service might use were unable to locate TurboTax Freedom Edition through web searches.  *See* Ex. 28.

After the filing of this lawsuit, Intuit announced that it would no longer engage in de-indexing. Dkt. No. 90 at p. 6 of 26.  Then on December 26, 2019, the Alliance and the IRS released an addendum to the operative Free File MOU prohibiting Alliance members from "engaging in any practice that would cause the Member's Free File Landing Page to be excluded from organic internet search."  Ex. 31.  The addendum also requires Alliance members to use a specific naming convention when referring to their Free File Program offerings and requires members to implement procedures to better track users of the Free File Program.  *Id.*  The addendum does not, however, require any change to the name of Intuit's commercial tax filing website or otherwise address the set of practices that Plaintiffs seek to enjoin through this motion.  And, as a Department of Justice attorney advised this Court, the IRS-Free File Alliance relationship exists independently of the claims at issue in this case.  *See* 10/4/19 CMC Hr'g Tr. at 4:7-14; Dkt. No. 95 ("[T]he IRS does not wish to be involved in this case.  We don't believe that the IRS or the Government is a necessary party.").

### D. Intuit Impeded Access to Its Actual Free Site and Imposed Unexpected Charges at the Last Minute.

To shore up its free to fee scheme, Intuit's advertisements and solicitations drew taxpayers to Intuit's paid products through promotion of "free" with no "off-ramp" to the Freedom Edition website.

Intuit prompted taxpayers to type their tax information into its commercial software but alerted them to the necessary filing fees only after they invested significant time inputting their sensitive personal and wage information.  Dohrmann Decl., ¶ 7; Brougher Decl., ¶ 7; Chandler Decl., ¶ 7.  Furthermore, taxpayers did not have to pay those fees right away—they were instead presented as a convenient deduction from the forthcoming tax return.  Ex. 33.  As Intuit's former CEO explained, "it's actually the best customer acquisition strategy we've had.  What ends up being the opportunity is getting you to come in and start filling out your tax return electronically."  Ex. 26 at p. 6 of 14.

Intuit did not notify eligible users of Free Edition that they could file for free.  Dohrmann Decl., ¶ 8; Brougher Decl., ¶ 8; Chandler Decl., ¶ 8; Ex. 34.  Intuit instead presented these users with "upgrades" to its paid products, starting at $59.99, as shown in the below screenshot:



Ex. 35.  In many cases, users could not complete their tax filings without paying for the upgrade.  Ex. 36.  Only after these users typed all their information in, including for their entire 2018 state tax returns, did Intuit inform them that they could not file without upgrading to Deluxe.  Exs. 34, 36.  A paywall stated, "To accurately complete your taxes, you need to upgrade to TurboTax Deluxe."  Ex. 36.  In fact, upgrading had nothing to do with "accurately" filing—taxpayers could accurately file the same return for free elsewhere, including on Freedom Edition.  Ex. 21.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION, AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

Because Free Edition required users to input substantial information before they were told that their tax filing would not actually be free, taxpayers typically wound up paying for an "upgrade" to avoid duplicating work or wasting time, unaware they were entitled to file for free. *E.g.*, Ex. 38. Each Plaintiff attests that Intuit's representations caused them to believe Free Edition would be free and that they only learned Intuit would charge them a fee at the end of the process, after they had input their information as prompted by the TurboTax online procedure. Dohrmann Decl., ¶¶ 5, 7; Brougher Decl., ¶¶ 5, 7; Chandler Decl., ¶¶ 5, 7.

Even when a taxpayer using Free Edition provided sufficient information to allow Intuit to determine that the taxpayer qualified to file for free under the Free File Program using Intuit's portal, Intuit did not notify the taxpayer of their eligibility to file for free or direct them to its actual free filing site. Ex. 34. In other words, taxpayers who were drawn to Intuit's "Free Edition" by promises of free services—and who qualified for free filing using Intuit's Free File Alliance product—were nonetheless informed they were *not* eligible to file for free using Free Edition and were charged to file their return.

### E. Intuit Reacts to the Consumer Confusion Created by Its Free to Fee Scheme.

Throughout 2018, Intuit received a large volume of complaints from customers who had understood, based on Intuit's advertising and webpages, that their tax filings would be free but were charged a fee. Ex. 39 at 18. Intuit analyzed data from these calls to develop an internal presentation which observed that "[t]he website lists Free, Free, Free and the customers are assuming their return will be free." Ex. 38. The presentation reported that "customers are getting upset when they have to pay more for upgrade and the only way to downgrade is to clear and start over." *Id.*

Instead of addressing the problems raised by its customers and refunding their payments, Intuit created a special team to handle inquiries from taxpayers eligible for the Free File Program in the 2018 tax season. Ex. 40 at 6. Intuit's response team consistently denied refund requests. *Id.*; *see also* Ex. 30 (refusing to refund consumer who was charged to file his taxes on Free Edition and later learned he could have filed for free). Intuit's current CEO Sasan Goodarzi represented to its employees that it was trying to help consumers by steering them to "educational content" instead of TurboTax's Freedom Edition. *See* Ex. 41. Responding to a question in a 2019 earnings call about negative press coverage and political pressure to change Intuit's practices, Goodarzi maintained "we did that because it gives us

1   the opportunity to really help those that are underserved and those that struggle with the income that

2   they make." Ex. 42 at p. 9 of 28.

3   **F.      Intuit Profited From Its "Free to Fee" Strategy.**

4   Intuit's "free to fee" marketing is a core business strategy. Ex. 43. Dennis Ventry, a former

5   chair of the IRS Advisory Committee, wrote that Intuit "conceptualizes its participation in Free File as

6   a way to further entrench itself as the leader in fee-based tax preparation software. *Id.* Intuit refers to

7   this business model as "monetizing free." For example, in a 2008 earnings call, former CEO Brad

8   Smith stated that Intuit has "2.5 years of experience of learning what free is about and how best to

9   monetize free." Ex. 44 at p. 9 of 26. He added, "We feel good with the model. We have a pretty good

10  handle for how to get customers who use free to come into the franchise and actually buy additional

11  products and services . . . ." *Id.* Smith later told investors, "we've been able to demonstrate that we

12  can get customers in on free and then convert them to a paid product, or we can actually find other

13  solutions for them that they're willing to come in and pay for." Ex. 45 at p. 24 of 30.

14  Media reports corroborate Intuit's efforts to profit from its "free" representations. One Intuit

15  employee told ProPublica that "[t]he entire strategy is make sure people read the word 'free' and click

16  our site and never use" an actual free product. Ex. 40 at 2. The employee further noted that the "vast

17  majority of people who click" on Free Edition "will not pay $0." *Id.* at 3.

18  Intuit's efforts to increase revenue by advertising "free" services and converting users to paying

19  customers have succeeded. In 2018, Intuit earned $2.5 billion derived from its TurboTax segment—a

20  $300 million increase from 2017 and a $500 million increase from 2016. Ex. 37 at 40.

21  **IV.     THE COURT SHOULD CERTIFY AN INJUNCTIVE-RELIEF CLASS.**

22  "To obtain class certification, plaintiffs bear the burden of showing that they have met each of

23  the four requirements of Rule 23(a) and at least one subsection of Rule 23(b)." *In re Arris Cable*

24  *Modem Consumer Litig.*, 327 F.R.D. 334, 348 (N.D. Cal. 2018). The Rule 23(b)(2) "inquiry does not

25  require an examination of the viability or bases of the class members' claims for relief, does not require

26  that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require

27  a finding that all members of the class have suffered identical injuries." *Parsons v. Ryan*, 754 F.3d

28  657, 688 (9th Cir. 2014); *see also In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1187

10

(N.D. Cal. 2013) (plaintiffs need not prove their case at class certification).

With respect to their claim under the unfair prong of the UCL, Plaintiffs meet the requirements of Rule 23(a) and Rule 23(b)(2).  The UCL employs "broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999).  In a consumer case, a business practice is unfair and will be condemned under the UCL "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits. . . . [T]he court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006) (citation omitted).  The evidence here shows that Intuit committed unfair acts and practices to promote its paid tax filing website, including by advertising that site as free without cautioning that it was typically *not* free, and by imposing unexpected charges upon taxpayers who, lured by Intuit's misleading representations, had invested time and effort into preparing their returns, even when they input information showing their eligibility to file for free.

UCL claims based on such conduct are "ideal for class certification" because the focus is on the defendant's conduct and not class members' individual interactions.  *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254 (9th Cir. 2018) (citation omitted).  The relief Plaintiffs seek on behalf of the injunctive-relief class "is prophylactic, inures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class." *Dolfo v. Bank of Am., N.A.*, No. 11CV2828 DMS, 2013 WL 12331540, at *3 (S.D. Cal. June 3, 2013).  The Intuit business practices at issue apply uniformly to the class of eligible free filers, and final injunctive relief prohibiting Intuit from continuing these practices, and corresponding declaratory relief, will apply generally to the class as a whole.

That Plaintiffs may later move to certify a damages class under Rule 23(b)(3) is no impediment to certifying the class under Rule 23(b)(2).  *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class."); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 539 (N.D. Cal. 2018) ("Defendant appears to argue that Plaintiffs' attempt to certify a damages class pursuing restitution under Rule 23(b)(3) bars certification under Rule

11

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

23(b)(2).  The Court finds no such bar to 23(b)(2) certification.").  Far from presenting any risk to Intuit's due process rights, Plaintiffs' proposal to certify an injunctive-relief class and enter an injunction before turning to damages is efficient.  *See Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 371 (7th Cir. 2012) (explaining that "bifurcation (called 'divided certification' in the class action context) would mean a (b)(2) proceeding first, and if the plaintiffs obtain declaratory relief a (b)(3) proceeding (where notice and the right to opt out are mandatory) to follow.  Once declaratory relief is ordered, all that is left is a determination of monetary relief, and that is the type of proceeding for which (b)(3) is designed.") (internal citations omitted).  Nor is there any risk to Intuit's Seventh Amendment civil jury right given that Plaintiffs' claims are equitable.

> ### A.     Plaintiff Propose an Objectively Defined Class of Eligible Tax Filers.

To obtain certification of an injunctive-relief class, Plaintiffs should provide "[a] clear class definition under rule 23(c)(1)(B)."  *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015).  Plaintiffs request certification of the following class:

> All United States citizens and residents who are eligible to file a 2019 federal tax return for free pursuant to the IRS Free File Program on an Intuit website.  Excluded from the Class are Intuit's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns; and any judicial officers presiding over this matter and the members of their immediate families and staff.

Each Plaintiff is a member of this class.  Dohrmann Decl., ¶ 2; Brougher Decl., ¶ 2; Chandler Decl., ¶ 2.  The class definition is amended from the definition proposed in Plaintiffs' complaint to conform to their request for prospective injunctive and corresponding declaratory relief.  The amended definition includes those currently eligible to file for free on an Intuit website, which is the group currently exposed to harm who would benefit from an injunction.  *See Aichele v. City of Los Angeles*, 314 F.R.D. 478, 485 (C.D. Cal. 2013) ("Plaintiffs are not bound by the class definition articulated in their FAC and may proceed with the definitions set forth in their present motion."); *Gray v. Cty. of Riverside*, No. EDCV 13-00444-VAP, 2014 WL 5304915, at *13 (C.D. Cal. Sept. 2, 2014) (permitting plaintiffs to modify the proposed class definition on reply and certifying injunctive-relief class); *see also* Fed. R. Civ. P. 23(c)(1)(C); *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a

12

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION, AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

1  certification order is entered, the judge remains free to modify it in the light of subsequent

2  developments in the litigation.").  The class definition, moreover, relies on objective criteria that

3  parallel the facts giving rise to Plaintiffs' claims.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121,

4  1124 (9th Cir. 2017); *Wortman v. Air New Zealand*, 326 F.R.D. 549, 555 (N.D. Cal. 2018) (noting that

5  membership "can be established by means of objective, verifiable criteria."); *In re Yahoo Mail Litig.*,

6  308 F.R.D. at 597; *I.B. by & through Bohannon v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1126 (N.D.

7  Cal. 2015).

8       **B.**    **The UCL Applies to the Claims of All Class Members.**

9       California has "a significant contact or significant aggregation of contacts to the claims asserted

10  by each member of the plaintiff class, contacts creating state interests." *Phillips Petroleum Co. v.*

11  *Shutts*, 472 U.S. 797, 821-22 (1985) (citation omitted).  "[C]onduct by a defendant within a state that is

12  related to a plaintiff's alleged injuries and is not 'slight and casual' establishes a 'significant

13  aggregation of contacts, creating state interests, such that choice of its laws is neither arbitrary nor

14  fundamentally unfair.'"  *AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir.

15  2013) (citations omitted).

16       Intuit is based in Mountain View, California (Ex. 37 at 1) and the corporate officers responsible

17  for Intuit's decisions concerning the Free File Program are in California (Exs. 46-47).  *See Allen v.*

18  *Hyland's Inc.*, 300 F.R.D. 643, 657 (C.D. Cal. 2014); *Clay v. CytoSport, Inc.*, No. 3:15-CV-00165-L-

19  AGS, 2018 WL 4283032, at *14 (S.D. Cal. Sept. 7, 2018); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477,

20  485 (N.D. Cal. 2011) ("[W]here Acer is incorporated in California and has its principal place of

21  business and headquarters in San Jose, California, consumers who purchase an Acer notebook would

22  have some expectation that California law would apply to any claims arising from alleged defects such

23  that the application of California law would not be arbitrary or unfair.").  This Court, therefore, may

24  apply the UCL to the claims of eligible free-filers across the country.

25       Intuit also relied on the provisions of its Terms of Service and Terms of Use ("Terms") when it

26  moved to compel arbitration of Plaintiffs' claims.  The Terms contain a choice-of-law provision

27  selecting California law.  *See* Dkt. No. 97-3 at p. 4 of 8.  As Intuit itself sought to invoke California law

28  in this case, it cannot reasonably dispute that California law applies.

13

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

1

**C.      The Requirements of Rule 23(a) Are Met.**

2

### 1.      The Class Is Too Numerous for Joinder to Be Practicable.

3

Plaintiffs meet the numerosity requirement because the class "is so numerous that joinder of all

4

members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In 2018, more than 150 million taxpayers were

5

eligible to file their taxes for free pursuant to the IRS Free File Program (Ex. 48 at 2), and 1.2 million

6

used TurboTax's Free File (Freedom Edition) software (Dkt. No. 90 at p. 7 of 26).  *See Rannis v.*

7

*Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *Franco-Gonzales v. Napolitano*, No. CV 10-02211

8

DMG, 2011 WL 11705815, at *9 (C.D. Cal. Nov. 21, 2011) (numerosity is satisfied "[w]here the exact

9

size of the class is unknown but general knowledge and common sense indicate that it is large")

10

(citation omitted).

11

### 2.      There Are Questions of Law and Fact Common to the Class.

12

The commonality subdivision, Rule 23(a)(2), "requires the plaintiff to demonstrate that the class

13

members 'have suffered the same injury'" such that "all their claims can be productively litigated at

14

once."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  Commonality turns on whether

15

"class treatment will 'generate common answers apt to drive the resolution of the litigation.'"  *Abdullah*

16

*v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis omitted) (quoting *Dukes*, 564

17

U.S. at 350).  Commonality is a "flexible standard," *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir.

18

2008), and is "construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.

19

1998).  Not "*every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires

20

is a single significant question of law or fact."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th

21

Cir. 2014) (emphasis in original) (internal quotation marks and citations omitted).

22

"The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair

23

even if not proscribed by some other law."  *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023

24

(N.D. Cal. 2019).  Under the balancing test that normally applies in a consumer case, "[c]onduct is

25

'unfair' under the UCL if: (1) it causes substantial injury, (2) the injury is one that consumers

26

themselves could not reasonably have avoided, and (3) the injury is not outweighed by any

27

countervailing benefits to consumers."  *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 456 (N.D. Cal.

28

2012) (citing *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1400-03 (2006)).  Moreover,

14

1    "[t]he focus of the UCL . . . is on the actions of the defendant[], not on the subjective state of mind of

2    the class members."  *Ries v. Arizona Bevs. USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012).

3          Because all class members are subject to the Intuit practices at issue, like enticing taxpayers into

4    its paid website with "free" representations, only to charge them fees at the very last moment, whether

5    these practices are unfair is an overriding common question that will drive the outcome of each class

6    member's UCL claims.  "[S]uch a question is sufficient to satisfy commonality."  *In re ConAgra*

7    *Foods, Inc.*, 90 F. Supp. 3d 919, 973 (C.D. Cal. 2015); *see, e.g.*, *Ries*, 287 F.R.D. at 537 (noting

8    common issue of whether the defendant's conduct violated the UCL); *Chavez v. Blue Sky Nat.*

9    *Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241

10   (N.D. Cal. 2014) (common question of whether the defendant's representations constituted unfair

11   business practices under the UCL); *Holt v. Noble House Hotels & Resort, LTD*, No. 17CV2246-MMA

12   (BLM), 2018 WL 5004996, at *5 (S.D. Cal. Oct. 16, 2018) (common questions included whether

13   defendant's practice of charging a 3.5% surcharge was "an unfair practice under the UCL.").

14              **3.       Plaintiffs' Claims Are Typical of the Class.**

15          "[T]he typicality requirement [of Rule 23(a)(3)] is applied permissively," *Wolph v. Acer Am.*

16   *Corp.*, 272 F.R.D. 477, 484 (N.D. Cal. 2011), and is met if Plaintiffs' claims are "reasonably co-

17   extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150

18   F.3d at 1020; *see also Ries*, 287 F.R.D. at 539 (typicality and commonality requirements "tend to

19   merge") (citation omitted).  "The test of typicality is whether other members have the same or similar

20   injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

21   other class members have been injured by the same course of conduct."  *Wolin v. Jaguar Land Rover*

22   *N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted).

23          Typicality exists in this case because Plaintiffs and class members are exposed to injury from

24   the same course of conduct on the part of Intuit.  Each of the four Plaintiffs currently meets the criteria

25   to file their 2019 tax returns for free under the Free File Program using Intuit's online portal.

26   Dohrmann Decl., ¶ 2; Brougher Decl., ¶ 2; Chandler Decl., ¶ 2.  *See In re ConAgra*, 90 F. Supp. 3d at

27   975 (the typicality requirement is not "onerous" and was met because the plaintiffs' claims arose from

28   the same set of facts as the other class members' claims); *Lilly*, 308 F.R.D. at 240 (typicality satisfied

15

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

1    where the plaintiffs "clearly have a similar alleged injury as the rest of the proposed class" and "[t]heir

2    claims are not based on any conduct that is unique to them").  Further, because UCL liability depends

3    on the defendant's conduct, Plaintiffs' individual experiences with the Free File Program are irrelevant.

4    *Holt*, 2018 WL 5004996, at *6.  Typicality is satisfied.

5    **4.    Plaintiffs Will Fairly and Adequately Represent the Class.**

6    "The adequacy of representation requirement set forth in Rule 23(a)(4) involves a two-part

7    inquiry: '(1) do the named plaintiff[ ] and [her] counsel have any conflicts of interest with other class

8    members and (2) will the named plaintiff[ ] and [her] counsel prosecute the action vigorously on

9    behalf of the class?'"  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 975 (C.D. Cal. 2015)

10   (alterations in original) (quoting *Hanlon*, 150 F.3d at 1020).  "Only conflicts that are fundamental to

11   the suit and that go to the heart of the litigation" may defeat adequacy of representation.  *In re Online*

12   *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (citation omitted).

13   Plaintiffs' interests are aligned with those of other class members.  They have demonstrated

14   that they will adequately represent the interests of the class.  They have already made important

15   contributions to the case by communicating regularly with counsel and assisting with the preparation

16   of complaints, and they are committed to pursuing the class members' best interests.  Dohrmann Decl.,

17   ¶¶ 11-14; Brougher Decl., ¶¶ 11-14; Chandler Decl., ¶¶ 11-14.

18   Proposed class counsel have likewise demonstrated their adequacy.  The attorneys from Girard

19   Sharp LLP and Stueve Siegel Hanson LLP are experienced in prosecuting complex class actions and

20   have dedicated significant time and effort to investigating, pleading, and pursuing these claims.  The

21   Court is familiar with the qualifications of Plaintiffs' counsel, having appointed them as interim co-

22   lead class counsel (Dkt. Nos. 48, 49, 69, 74), and they are qualified under Rule 23(g) to continue to

23   represent the class.  *See, e.g.*, *Ramirez v. Greenpoint Mortg. Funding, Inc.*, 268 F.R.D. 627, 643 (N.D.

24   Cal. 2010).

25   **D.    Rule 23(b)(2) Is Satisfied Because Intuit's Conduct Applies Generally to the Class as a Whole.**

26   Class certification under Rule 23(b)(2) is appropriate when "the party opposing the class has

27   acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23 (b)(2); *see also Dukes*, 564 U.S. at 360 (holding that certification under Rule 23(b)(2) is warranted "when a single injunction or declaratory judgment would provide relief to each member of the class."). The Supreme Court unanimously ruled that "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all the class members or as to none of them.'"  *Id.* (citation omitted).

"[M]any different kinds" of cases are suitable for (b)(2) certification.  *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) (citation omitted).  "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole" and a class may be certified "[e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); *see Hart v. Colvin*, 310 F.R.D. 427, 438 (N.D. Cal. 2015) (certification of a (b)(2) class is appropriate even if a defendant's policy has not affected every member of the proposed class in the same manner).  Moreover, "[i]n contrast to Rule 23(b)(3) classes, the focus is not on the claims of individual class members, but rather whether [defendant] has engaged in a 'common policy.'"  *In re Yahoo Mail Litig.*, 308 F.R.D. at 599.  And "questions of manageability and judicial economy are irrelevant to 23(b)(2) class actions."  *Sidibe v. Sutter Health*, No. 12-CV-04854-LB, 2019 WL 5295062, at *29 (N.D. Cal. Oct. 18, 2019) (internal quotation marks and citation omitted).

Accordingly, as the Ninth Circuit held, Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole."  *Parsons*, 754 F.3d at 688; *see Ries*, 287 F.R.D. at 541 ("This case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2), at least insofar as plaintiffs request: (1) declaratory relief that the alleged practices are unlawful, and (2) injunctive relief prohibiting defendants from continuing them."); *accord Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338, at *4 (N.D. Cal. Apr. 24, 2014).

An order declaring whether Intuit's business practices violate the UCL and, if so, prohibiting Intuit from continuing its unfair practices, would provide relief to each class member in one stroke. *See, e.g.*, *Ries*, 287 F.R.D. at 541; *Sidibe*, 2019 WL 5295062, at *29-30 ("The plaintiffs here seek a

single injunction or declaratory judgment—namely, an injunction barring Sutter from engaging in anticompetitive behavior . . . or a declaration that Sutter's practices are anticompetitive and violate the antitrust laws—that would provide relief to each member"); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *8 (N.D. Cal. Sept. 25, 2018) (concluding that where the defendant had "a uniform policy and practice" an injunction "would provide relief to the class as a whole" thereby satisfying Rule 23(b)(2)); *Yue v. Conseco Life Ins. Co.*, No. CV08-1506 AHM (JTLx), 2009 WL 10671418, at *5 (C.D. Cal. Dec. 7, 2009); *In re Hain Celestial Seasonings Prod. Consumer Litig.*, No. SACV13-1757 AG (ANx), 2015 WL 12001273, at *6 (C.D. Cal. Sept. 23, 2015). All class members are exposed to Intuit's marketing and sales practices associated with its representations that its commercial tax preparation software is "free." As such, an order enjoining Intuit's course of conduct as violative of California consumer protection law will protect the class from further harm. *See B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (affirming Rule 23(b)(2) certification when "plaintiffs have not brought a concatenation of individual claims that must be redressed through individual injunctions" but, rather, claims based on a defendant's uniform policies).

For these reasons, the Court should certify the proposed injunctive-relief class.

## V. THE COURT SHOULD GRANT PARTIAL SUMMARY ADJUDICATION IN FAVOR OF PLAINTIFFS ON THEIR CLAIM THAT INTUIT ENGAGED IN UNFAIR PRACTICES IN VIOLATION OF THE UCL.

Rule 56 requires entry of summary judgment on "part of" a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted). "That is, the moving party's 'showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 6041723, at *4 (N.D. Cal. Dec. 6, 2017) (citation omitted). If the movant meets its burden, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *C.A.R. Transp.*, 213 F.3d at 480 (citation omitted).

18

The abundant public record of Intuit's conduct in the 2018 tax year is beyond reasonable dispute.  No reasonable fact finder could conclude that Intuit's business practices are anything but a violation of California consumer protection law.  The offending conduct should be enjoined to prevent further harm.

### A.    Judgment as a Matter of Law Under the Unfair Prong Is Warranted.

Intuit's conduct as established by the evidence before the Court is unfair.  An injunction is the principal remedy for a UCL violation, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011), and courts routinely enter permanent injunctions to end violations of the UCL's unfair prong.  *See, e.g.*, *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1235 (2013); *Flores v. Southcoast Auto. Liquidators, Inc.*, 17 Cal. App. 5th 841, 848 (2017); *People ex rel. Harris v. Aguayo*, 11 Cal. App. 5th 1150, 1176 (2017).  Further, "section 17200's 'unfair' prong should be read more broadly in consumer cases because consumers are more vulnerable to unfair business practices" and "[o]ne of the major purposes of section 17200 is to protect consumers from nefarious business practices."  *Progressive W. Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 286 (2005).

This Court need not hold a trial because the existing uncontested record reveals the unfairness of Intuit's conduct to the taxpayer class in harm's way.  In *Continental Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099 (9th Cir. 1994), the Ninth Circuit rejected a defendant's argument "that the permanent injunction should not have been issued so early in the proceedings, on summary judgment, before the court had tried the issues on the affirmative defenses."  *Id.* at 1102.  The court explained that there is no reason to wait to enjoin a defendant breaking the law: "There is nothing novel about a permanent injunction issued on summary judgment rather than after trial.  Such a procedure comports with Federal Rule of Civil Procedure 56."  *Id.* (citing *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2731, at 302 (2d ed. 1983) ("[I]f there are no triable fact issues and the court believes equitable relief is warranted, it is fully empowered to grant it on a Rule 56 motion.")).

There is no reason to wait until after another tax season to put a stop to Intuit's violations.  As set forth above, the evidence establishes that during the 2018 tax season, Intuit engaged in a common course of unfair and deceptive conduct that violates California law.  Intuit's scheme primarily relied on

19

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION, AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

misleading millions of low-income Americans and active-duty service members who qualified for free-filing by promoting its online fee-based tax filing product as "free"—even naming that product "Free Edition."  Intuit then charged eligible free-filers fees to prepare and file returns, even though it knew these same filers were eligible to use Freedom Edition at no charge.

There is no dispute surrounding Intuit's promotional activities, including its advertisements, or the fact that Plaintiffs paid Intuit to file, even though they were eligible to file for free.  Intuit has admitted that it "de-index[ed]" (or blocked) web search results that would have directed free-file eligible consumers to its actual free site. Dkt. No. 90 at p. 6 of 26.  Intuit's scheme relied on a host of related practices, including placing Google ads directing users who searched for free filing to its paid site and designing misleading and coercive web interfaces that funneled taxpayers down the online path toward paying to file.  *E.g.*, Exs. 28, 30, 34.  Intuit did not link to Freedom Edition from Free Edition or notify users of the availability of free filing, even after the information input by the user demonstrated that eligibility. Exs. 32, 34; Dohrmann Decl., ¶ 8; Brougher Decl., ¶ 8; Chandler Decl., ¶ 8.  Because it took considerable time and effort to proceed through Free Edition before users were forced to pay for an upgrade, numerous taxpayers paid the fees even though Intuit knew they were eligible to file for no charge.  This behavior inured to Intuit's financial benefit at the expense of consumers.  *See, e.g.*, *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 921 (2016) (finding UCL claim actionable and explaining that "when the deception is revealed, the consumer, now invested in the decision to buy and swept up in the momentum of events, nonetheless buys at the inflated price, despite his or her better judgment."); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013) (finding UCL unfairness claim actionable based in part on undisclosed mark-ups).

While "[t]he UCL imposes strict liability," which means Plaintiffs "need not show that a UCL defendant intended to injure anyone," *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 181 (2000), Intuit enlisted teams of designers, engineers, data scientists and marketers to find ways to present and market its tax filing products to exploit consumers' anxiety around tax season and induce them to pay for upgrades as part of its free to fee scheme. Ex. 39 at 11; Ex. 44.  Intuit's internal documents confirm that it sought "to both reinforce and ease users' 'Fear, Uncertainty, and Doubt'" as a means of boosting revenue. Ex. 39 at 12.  For instance, in 2018, TurboTax's commercial website

20

recommended a "Deluxe" product for $59.99 to anyone who wanted to "maximize deductions." Ex. 45. Despite the cost, the link to use Deluxe said "Start for Free" in some of the largest text on the page. *Id.* A former Intuit marketing staffer admitted that the phrase "maximize deductions" was legendary for diverting customers eligible for free filing to a paid product. Ex. 39 at 12. As a former Intuit software developer noted, "There's a lot of desperation—people will agree, will click, will do anything to file." *Id*.

That users could theoretically have navigated to webpages providing more information about Intuit's charges does not counteract the unfairness of Intuit's deceptive scheme. Under California law, fine-print disclaimers are insufficient to cure more prominent misleading representations. *See, e.g.*, *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 227-28 (2013) (holding that the trier of fact could reasonably conclude that advertisement of a calling plan as "Unlimited" was misleading in spite of a footnote linking to a "fair usage policy" disclosing calling plan limits); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (applying California law and "disagree[ing] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

Intuit may attempt to interject ostensible factual disputes, yet when "the [non-moving party's] evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *State of Cal., on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 781 (9th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). There are no disputed *material* facts in evidence; the public evidence of Intuit's wrongdoing speaks for itself. *See Doctors Med. Ctr. of Modesto v. Glob. Excel Mgmt., Inc.*, No. 1:08-CV-01231 OWW DL, 2009 WL 2500546, at *9 (E.D. Cal. Aug. 14, 2009) (finding printouts from defendant's website admissible). There is no dispute that Intuit marketed Free Edition as free when, for most taxpayers, it was not free. Nor is there any dispute that Intuit charged Plaintiffs to file their tax returns through Free Edition, despite their

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

1   eligibility to file for free through Freedom Edition.  No more is needed to establish that judgment for

2   Plaintiffs is appropriate under the UCL.

3        Thus, to prevent further harm to vulnerable populations, the Court should prohibit Intuit from

4   engaging in unfair practices in connection with the upcoming tax years.  Because no reasonable fact

5   finder could find for Intuit on this record, the Court should grant partial summary adjudication by

6   finding Intuit's business practices unfair in violation of California law.  *See, e.g.*, *Horton v. California*

7   *Credit Corp. Ret. Plan*, 835 F. Supp. 2d 879, 893 (S.D. Cal. 2011) (granting plaintiffs' motion for

8   summary judgment on UCL claim); *Robinson v. Open Top Sightseeing San Francisco, LLC*, No. 14-

9   CV-00852-PJH, 2017 WL 2265464, at *10 (N.D. Cal. May 24, 2017) (similar); *Wallace v.*

10  *Countrywide Home Loans Inc.*, No. SACV 08-1463-JST, 2013 WL 1944458, at *1 (C.D. Cal. Apr. 29,

11  2013) (plaintiffs entitled to partial summary judgment).

12      **B.      Plaintiffs Have Standing to Seek Injunctive Relief**

13        Plaintiffs have standing to pursue the injunction even though they have learned the difference

14  between Freedom and Free Edition through their service in this litigation.  Under Ninth Circuit law, a

15  "previously deceived consumer may have standing to seek an injunction against false advertising or

16  labeling, even though the consumer now knows or suspects that the advertising was false at the time of

17  the original purchase."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).  Each

18  Plaintiff attests that, given Intuit's deceit, they are unable to rely on its representations concerning the

19  Free File Program, which under *Davidson* gives them standing to seek injunctive relief.  Dohrmann

20  Decl., ¶ 10; Brougher Decl., ¶ 10; Chandler Decl., ¶ 10.  And, because Intuit continues its wrongful

21  scheme, Plaintiffs "ha[ve] suffered or [are] threatened with a 'concrete and particularized' legal harm

22  . . . coupled with 'a sufficient likelihood that [they] will again be wronged in a similar way[.]'"  *Bates*

23  *v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*,

24  461 U.S. 95, 111 (1983)).  As a result, Plaintiffs have standing to seek prospective relief.  *See, e.g.*,

25  *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC (MDD), 2018 WL 6300479, at *20

26  (S.D. Cal. Nov. 29, 2018); *Broomfield*, 2018 WL 4952519, at *7 (rejecting defendant's standing

27  challenge: plaintiffs confronted "an imminent or actual threat of future harm" because they could not

28  rely on the validity of defendant's information) (citation omitted).

1    **VI.    THE COURT SHOULD ENTER APPROPRIATE FINAL INJUNCTIVE RELIEF.**

2        **A.    The Requested Injunctive Relief Is Tailored to Prevent Further Violations.**

3        Upon granting partial summary adjudication, the Court should enter injunctive relief in turn.

4    Currently, for example, Intuit's commercial website still touts "Free File" and "$0 $0 $0" without

5    linking to or even mentioning Intuit's actual free file product under the IRS program.  Ex. 6.

6        The UCL "allows any consumer to combat unfair competition by seeking an injunction against

7    unfair business practices."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003).

8    Courts enjoy broad discretion to enter whatever orders "as may be necessary" to stop unfair conduct

9    and have "great latitude in protecting the public" under the UCL.  Cal. Bus. & Prof. Code § 17203;

10   *Brockey v. Moore*, 107 Cal. App. 4th 86, 102 (2003); *see also People ex rel. Harris v. Aguayo*, 11 Cal.

11   App. 5th 1150, 1176 (2017); *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1257 (2013); *Hewlett v.

12   Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499, 539 (1997) ("remedial power" under section 17203 is

13   "extraordinarily broad" and "unfair business practices can take many forms") (citation omitted).

14       Plaintiffs respectfully request that the Court enter an order finding that Intuit violated Section

15   17200 in its promotion and operation of Free Edition in the 2018 tax year, and prohibiting Intuit from

16   engaging in all manner of unfair acts, omissions or practices that threaten future injury to the class

17   and/or the general public, including, without limitation, promoting its commercial tax preparation

18   website as free without adequate disclosure of tax filing categories or deductions that will give rise to

19   the assessment of fees on that site, using confusing tradenames such as Free Edition and Freedom

20   Edition, advertising to divert consumers searching for free filing options to its paid offerings, taking

21   active measures, through implementation of software code or otherwise, to impede consumer access to

22   its actual free file website and the Free File Program, and engaging in any other unfair "free to fee"

23   conversion practices.  The proposed injunction is tailored to Intuit's wrongful conduct and will protect

24   eligible taxpayers from incurring damage in the future, serving the public interest.  *See Hewlett*, 54 Cal.

25   App. 4th at 542 (upholding permanent injunction that was "eminently related to the proven violations").

26       **B.    Plaintiffs Need Not Show Irreparable Harm or an Inadequate Remedy at Law.**

27       Under California law, Intuit's UCL violations by themselves warrant injunctive relief.  Plaintiffs

28   need not show irreparable harm or that they lack an inadequate remedy at law.

---

23

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PARTIAL SUMMARY ADJUDICATION,
AND ENTRY OF FINAL INJUNCTIVE RELIEF
CASE NO. 3:19-cv-02546-CRB

Unlike a preliminary injunction, entered to preserve the status quo between parties, "[a] permanent injunction is a creature of equity designed to enforce substantive law rights." *Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 956 (E.D. Cal. 1990); *see* 19 Wright & Miller, *Federal Practice and Procedure* § 4513 (3d ed. 2018) ("[W]hen forum state law defines the underlying substantive right, state law also governs the availability of . . . equitable remedies."). Therefore, "[w]here federal courts are called upon to adjudicate a claim predicated on state law . . . there appears to be no question that the ultimate issue of whether injunctive relief may issue must be decided under applicable state law." *Id.*; *see Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 890126, at *2 (N.D. Cal. Jan. 23, 2013) ("Because a permanent injunction affects the substantive rights of the parties, the court employs California law") (footnote omitted); *Tri-Dam v. Yick*, No. 1:11-CV-01301 AWI-SMS, 2016 WL 4061348, at *4 (E.D. Cal. July 28, 2016) (applying California's legal standards in granting a permanent injunction).

Because entry of an injunction authorized by state law is a matter of state substantive law, state rather than federal standards apply to that determination. *See City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010) ("Requiring a party seeking a statutorily-sanctioned injunction to make an additional showing of irreparable harm, therefore, is not required."); *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988) ("[A] complainant need not allege or prove irreparable harm when it invokes a statute that authorizes injunctive relief. All that need be proved is a violation of the statute. . . . There is no reason to exclude from *Erie* state substantive law regarding the issuance of final injunctions."); *Lord & Taylor, LLC v. White Flint, L.P.*, 780 F.3d 211, 215 (4th Cir. 2015) (state substantive law applied to injunctive-relief request); *Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*, No. CIV.A. RDB-11-1864, 2013 WL 2903285, at *4 (D. Md. June 13, 2013) (collecting cases for this *Erie* principle).

In California, "[a] permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate." *People ex rel. Becerra v. Huber*, 32 Cal. App. 5th 524, 532 (2019). And "inadequacy of a remedy at law need not be shown to obtain injunctive relief authorized by statute . . . where the statutory conditions for issuance are satisfied." *In re Marriage of Van Hook*, 147 Cal. App. 3d 970, 985 (1983).

The UCL authorizes courts to enjoin unfair business practices without a showing of irreparable harm or inadequate remedy at law.[9]  *See Barquis v. Merchants Collection Assn.*, 7 Cal. 3d 94, 125 (1972) (holding that the defendant's conduct could be enjoined either because other legal remedies were inadequate "or alternatively, because such conduct constitutes an 'unlawful . . . business practice' enjoinable under" under the UCL's predecessor statute);[10] *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 453 (1988) (finding "no merit" to contention that because an adequate remedy at law existed, injunctive relief under the UCL was unavailable); *Applied Med. Distrib. Corp. v. Ah Sung Int'l, Inc.*, No. SACV1401900 JVS (RNBx), 2015 WL 12910908, at *8 (C.D. Cal. Dec. 14, 2015) (rejecting defendant's contention that the general requirements for a permanent injunction set out in Civil Code section 3422 apply to injunctions issued pursuant to the UCL).

Thus, the UCL itself, not the federal four-factor test for entering injunctive relief, dictates whether the Court sitting in diversity should enjoin Intuit.  *See, e.g.*, *Haas Automation, Inc. v. Denny*, No. 2:12-CV-04779 CBM, 2014 WL 2966989, at *9 (C.D. Cal. July 1, 2014) (entering injunction upon finding plaintiff had proven UCL elements); *Carrizosa v. Stassinos*, No. C-05-02280 RMW, 2010 WL 4393900, at *4 (N.D. Cal. Oct. 29, 2010) (issuing permanent injunction under UCL without discussing irreparable harm).  For the reasons stated above, Plaintiffs have shown their entitlement to judgment as a matter of law on the violation element of their UCL unfairness claim.  Injunctive relief should follow as a matter of course in the exercise of the Court's authority.

## VII.   CONCLUSION

Plaintiffs respectfully request the Court certify the class, grant partial summary adjudication, and enter injunctive and declaratory relief as set forth above.  A proposed Order is submitted herewith.

Respectfully submitted,

Dated: January 10, 2020          */s/ Daniel C. Girard*          */s/ Norman E. Siegel*

---

[9] "[T]he terms 'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin. If the harm being suffered by plaintiff is 'irreparable,' then the remedy at law (monetary damages) is 'inadequate.'"  *My Taco Guy, LLC v. Taco Man Corp.*, No. CV17-1573 FMO (AJWx), 2017 WL 10434394, at *5 (C.D. Cal. Dec. 27, 2017) (citations omitted).

[10] "There is no indication that the current version of the UCL" substantively departs from the prior version, former Civil Code section 3369.  *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003).

**GIRARD SHARP LLP**
Daniel C. Girard (State Bar No. 114826)
Angelica M. Ornelas (State Bar No. 285929)
Simon S. Grille (State Bar No. 294914)
601 California Street, Suite 1400
San Francisco, CA  94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dgirard@girardsharp.com*
*aornelas@girardsharp.com*
*sgrille@girardsharp.com*

**STUEVE SIEGEL HANSON LLP**
Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Jillian R. Dent (*pro hac vice*)
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
*siegel@stuevesiegel.com*
*moore@stuevesiegel.com*
*dent@stuevesiegel.com*

*Co-Lead Interim Class Counsel*

## ATTESTATION STATEMENT

I, Simon S. Grille, am the ECF User whose identification and password are being used to file this document pursuant to Civil L.R. 5-1(i)(3). I attest under penalty of perjury that the party has concurred in this filing.

DATED: January 10, 2020          */s/ Simon S. Grille*