1   RODGER R. COLE (CSB No. 178865)
    rcole@fenwick.com
2   CRYSTAL A. NWANERI (CSB No. 318955)
    cnwaneri@fenwick.com
3   FENWICK & WEST LLP
    801 California Street
4   Mountain View, CA  94041
    Telephone:     650.988.8500
5   Facsimile:     650.938.5200

6   LAURENCE F. PULGRAM (CSB No. 115163)
    lpulgram@fenwick.com
7   TYLER G. NEWBY (CSB No. 205790)
    tnewby@fenwick.com
8   MOLLY R. MELCHER (CSB No. 272950)
    mmelcher@fenwick.com
9   ARMEN N. NERCESSIAN (CSB No. 284906)
    anercessian@fenwick.com
10  FENWICK & WEST LLP
    555 California Street, 12th Floor
11  San Francisco, CA  94104
    Telephone:     415.875.2300
12  Facsimile:     415.281.1350

13  Attorneys for Defendant
    INTUIT INC.

14

15                  UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                    SAN FRANCISCO DIVISION

18

19  IN RE INTUIT FREE FILE LITIGATION          Master File No.: 3:19-cv-02546-CRB

20  This Document Relates to:  All Actions      **REPLY IN SUPPORT OF**
                                                **DEFENDANT INTUIT INC.'S**
21                                              **MOTION TO COMPEL**
                                                **ARBITRATION**
22
                                                Date:     January 31, 2020
23                                              Time:     10:00 a.m.
                                                Ctrm:     6, 17th Floor
24                                              Judge:    Hon. Charles R. Breyer

25                                              Date Action Filed:  May 1, 2019

26
                    **Redacted Version of Document**
27
                    **Sought To Be Sealed**
28

REPLY ISO DEFENDANT INTUIT INC.'S                      CASE NO.: 3:19-CV-02546-CRB
MOTION TO COMPEL ARBITRATION

FENWICK & WEST LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ....................................................................................... i

ARGUMENT ............................................................................................................... 1

I.      INTUIT PROVIDED INQUIRY NOTICE OF THE TERMS TO WHICH
        PLAINTIFFS ASSENTED ............................................................................... 1

II.     THE TERMS DELEGATE ALL OTHER QUESTIONS OF ARBITRABILITY ............. 8

III.    IN ALL EVENTS, PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF
        THE AGREEMENT TO ARBITRATE, AND THE AGREEMENT IS
        ENFORCEABLE .......................................................................................... 12

        A.      The Injunctive and Equitable Relief Provision in the Arbitration Agreement
                Does Not Allow Plaintiffs to Avoid Arbitration ................................... 12

        B.      Plaintiffs Concede that the Arbitration Agreement is Enforceable ...................... 15

CONCLUSION ......................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ajamian v. CantorCO2e, L.P.*,
 203 Cal. App. 4th 771 (2012) ...................................................................................................9

*Applebaum v. Lyft, Inc.*,
 263 F. Supp. 3d 454 (S.D.N.Y. 2017)........................................................................................4

*AT&T Mobility v. Concepcion*,
 563 U.S. 333 (2011)..................................................................................................................11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986)..................................................................................................................15

*Bachrach v. Compagno*,
 No. B252454, 2015 WL 78143 (Cal. Ct. App. Jan. 6, 2015) (unpublished)............................14

*Berkson v. Gogo LLC*,
 97 F. Supp. 3d 359 (E.D.N.Y. 2015)..........................................................................................4

*Blau v. AT & T Mobility*,
 No. C 11-00541 CRB, 2012 WL 10546 (N.D. Cal. Jan. 3, 2012) (Breyer, J.) ..........................5

*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015)....................................................................................................9

*Colgate v. JUUL Labs, Inc.*,
 402 F. Supp. 3d 728 (N.D. Cal. 2019) ...................................................................................4, 5

*Comedy Club, Inc. v. Improv W. Assocs.*,
 553 F.3d 1277 (9th Cir. 2009)..................................................................................................14

*Coneff v. AT & T Corp.*,
 673 F.3d 1155 (9th Cir. 2012)..................................................................................................11

*Cordas v. Uber Techs., Inc.*,
 228 F. Supp. 3d 985 (N.D. Cal. 2017) ...................................................................................2, 3

*Cubria v. Uber Techs., Inc.*,
 242 F. Supp. 3d 541 (W.D. Tex. 2017) ......................................................................................6

*Cullinane v. Uber Techs., Inc.*,
 893 F.3d 53 (1st Cir. 2018)........................................................................................................4

*Diaz v. Intuit Inc.*,
 No. 5:15-CV-01778-EJD, 2017 WL 4355075 (N.D. Cal. Sept. 29, 2017),
 *motion to certify appeal denied*, No. 5:15-CV-01778-EJD, 2018 WL 934875
 (N.D. Cal. Feb. 16, 2018).......................................................................................................i, 9

*DiMucci v. ZeniMax Media Inc.*,
 No. 17-CV-03789-EMC, 2018 WL 339129 (N.D. Cal. Jan. 9, 2018) .....................................13

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Eiess v. USAA Federal Savings Bank*,
No. 19-CV-00108-EMC, 2019 WL 3997463 (N.D. Cal. Aug. 23, 2019) ...............................11

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ..................................................................................................................15

*Fagerstrom v. Amazon.com, Inc.*,
141 F. Supp. 3d 1051 (S.D. Cal. 2015), *aff'd sub nom.*
*Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017) ...............................................3

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013)....................................................................................................13, 14

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)...................................................................................2, 4, 6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .........................................................................................................9, 10, 11

*Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*,
No. 17 C 2066, 2017 WL 2720433 (N.D. Ill. June 23, 2017)....................................................14

*Kin Wah Kung v. Experian Info. Sols., Inc.*,
No. C 18-00452 WHA, 2018 WL 2021495 (N.D. Cal. May 1, 2018).......................................9

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019) ................................................................................................................15

*Long v. Provide Commerce, Inc.*,
245 Cal. App. 4th 855 (2016) ......................................................................................................4

*Macklin, et al. v. Intuit Inc.*,
Case No. 2019-1-CV-347208 (Santa Clara Sup. Ct. Cal. Nov. 1, 2019)........................ *passim*

*McKee v. Audible, Inc.*,
No. CV-17-1941-GW(Ex), 2017 WL 4685039 (C.D. Cal. Jul. 17, 2017)............................3, 4

*McLellan v. Fitbit, Inc.*,
No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017)........................10, 11, 12

*Meyer v. Uber Techs. Inc.*,
868 F.3d 66 (2d. Cir. 2017).....................................................................................................2, 6

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)................................................................................................2, 6

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016).........................................................................................................4

*Oblix, Inc. v. Winiecki*,
374 F.3d 488 (7th Cir. 2004).........................................................................................................9

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2

**Page(s)**

3  *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*,
    816 F. Supp. 215 (S.D.N.Y. 1993)............................................................14

4

5  *Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)...............................................................................8, 10

6  *Revitch v. DirecTV, LLC*,
    No. 18-cv01127-JCS, 2018 WL 4030550 (N.D. Cal. Aug. 23, 2018)

7  (appeal filed, Sept. 24, 2018)...............................................................15

8  *Rushing v. Viacom Inc.*,
    No. 17-CV-04492-JD, 2018 WL 4998139 (N.D. Cal. Oct. 15, 2018).....................2

9

10 *Selden v. Airbnb, Inc.*,
    No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016)............3, 4, 6

11 *Silverman v. Move Inc.*,
    No. 18-CV-05919-BLF, 2019 WL 2579343 (N.D. Cal. June 24, 2019) ..............2, 9

12

13 *Starke v. Gilt Groupe, Inc.*,
    No. 13 CIV. 5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ..............3

14 *Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ...................................................3

15

16 *Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014),
    *aff'd on other grounds*, 840 F.3d 1016 (9th Cir. 2016) ............................9

17

18 *West v. Uber Techs.*,
    No. 18-cv-3001-PSG-GJS, 2018 WL 5848903 (C.D. Cal. Sept. 5, 2018).............4

19 *Wilson v. Huuuge, Inc.*,
    944 F.3d 1212 (9th Cir. 2019).............................................................4, 8

20

21 *Zelkind v. Flywheel Networks, Inc.*,
    No. 15-CV-03375-WHO, 2015 WL 9994623 (N.D. Cal. Oct. 16, 2015)...............9

22

**STATUTES**

23

9 U.S.C. §§ 1, *et seq.* ("Federal Arbitration Act") ...........................................i

24

**RULES**

25

AAA Commercial Rule 37(d) .................................................................14

26

AAA Commercial Rule 7(a) ..................................................................9

27

AAA Consumer Rule14(a)....................................................................9

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

## SUMMARY OF ARGUMENT

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, Defendant Intuit Inc. moved to compel Plaintiffs to arbitrate their claims individually in arbitration pursuant to the TERMS to which they agreed when they signed into their TurboTax accounts.  Dkt. No. 97. Nothing in Plaintiffs' Opposition (Dkt. No. 112) permits departure from the overwhelming, binding federal authority that requires Plaintiffs to proceed with their claims in arbitration.

Plaintiffs know that, during the pendency of this Motion, the Complex Division in Santa Clara County determined, in a well-reasoned opinion, to send the state court predecessor of this action to arbitration.  *Macklin, et al. v. Intuit Inc.*, Case No. 2019-1-CV-347208, (Santa Clara Sup. Ct. Cal. Nov. 1, 2019) (attached as Exh. A).  That court ordered arbitration even though that case has never sought anything other than injunctive relief—not even restitution.  Desperate to avoid the same result here, Plaintiffs' Opposition attempts the legal equivalent of a "Hail Mary" pass:  Plaintiffs now attempt to dispute their own complaint's allegations that they were required to assent to the terms and conditions that govern their use of TurboTax (the "TERMS").  *See, e.g.*, First Amended Complaint (Dkt. No. 80) ¶¶ 108, 114.  Plaintiffs concede that they signed into their accounts with Intuit precisely as described in the Motion and the Declarations of Ergang Sun and Jaimz Davis (Dkt. Nos. 97-1, 97-2).  But Plaintiffs now argue that despite the allegations of the Complaint, Intuit's sign-in flow somehow failed to put them on notice of the TERMS.

Plaintiffs' protestations fall flat.  The TERMS were front and center on the TurboTax "Sign In" page.  They presented a contrasting blue font against a minimalist background, immediately adjacent to the sign-in button every time Plaintiffs signed in.  Intuit's sign-in flow unquestionably meets the notice inquiry standard and has been uniformly upheld by courts.  *See, e.g.*, *Diaz v. Intuit Inc.*, No. 5:15-CV-01778-EJD, 2017 WL 4355075, at *2 (N.D. Cal. Sept. 29, 2017), *motion to certify appeal denied*, No. 5:15-CV-01778-EJD, 2018 WL 934875 (N.D. Cal. Feb. 16, 2018).  Plaintiffs fail to raise any legitimate argument for why the same result should not follow here, and the cases Plaintiffs cite are all distinguishable.  Those cases all involve "browsewrap" formats that the courts rarely enforce in any event, rather than "sign-in wrap" agreements, which they regularly do; or they involve presentations of terms indisputably less

1   conspicuous than Intuit's.  Furthermore, federal courts have long ago soundly rejected the legal

2   position of Plaintiff's expert, who insists that the only way to ensure that a consumer sees and

3   agrees to terms of use is to impose on the user the "mandatory" obligation to scroll through and

4   click a box indicating agreement.  Accepting the assertions of Plaintiffs and their hired witness

5   would require this Court to make new law and abrogate existing precedent.

6        Plaintiffs also err in arguing that the Court rather than an arbitrator should decide issues of

7   arbitrability.  The TERMS' incorporation of the American Arbitration Association ("AAA") rules

8   into the arbitration agreement is effective, as a matter of neutral contract law, to make those rules

9   a binding provision of the TERMS.  Plaintiffs do not dispute that the AAA rules require an

10  arbitrator to determine arbitrability.  The contract itself therefore is clear and unmistakable

11  evidence that the parties agreed to arbitrate arbitrability.  Under Supreme Court precedent, a court

12  is not entitled to disregard the contractual terms based on perceived sophistication of a party.

13  Thus, an arbitrator must decide threshold questions of arbitrability, including the question of the

14  scope of the agreement and construction of the carve-out for equitable relief.

15       Even if the Court were to reach the issue of scope, Plaintiffs fail in their argument that the

16  TERMS' injunctive relief provision permits them to commence this action in Court.  Plaintiffs

17  have no answer to the literal text of the TERMS, which provide that only a "party to the

18  arbitration" may seek "equitable relief"—not file an action in lieu of arbitration—in a Court.

19  Plaintiffs' interpretation requires rewriting the TERMS to excise the words "party to the

20  arbitration."  Indeed, in compelling arbitration in *Macklin*, the court found Intuit's arbitration

21  provision unambiguous, as it "clearly states 'a party to the arbitration' may at any time seek

22  injunctions or other forms of equitable relief" and "[t]here can be no 'party to the arbitration'

23  without an existing arbitration."  Even if the TERMS were not unambiguous, Intuit's reading that

24  equitable relief may only be sought ancillary to an existing arbitration easily passes the

25  "plausibility" standard that, under the FAA, requires interpretation in favor of arbitration.

26       For these reasons, as well as those set out in Intuit's Motion, Intuit respectfully requests

27  that this Court reject Plaintiffs' attempts to avoid their Agreement, compel Plaintiffs to

28  arbitration, and dismiss or stay this action.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

## <u>ARGUMENT</u>

2

**I.      INTUIT PROVIDED INQUIRY NOTICE OF THE TERMS TO WHICH PLAINTIFFS ASSENTED**

3

4       In the Motion, Intuit established that Plaintiffs agreed to the TERMS when they signed

5  into their TurboTax accounts, and when they filed their taxes.  Motion at 2-5, 7-9.  The three

6  remaining Plaintiffs do not dispute that they signed in on the TurboTax website in, among other

7  years, TY18.  Nor do Plaintiffs dispute that the "Sign In" page on the TurboTax website appeared

8  as portrayed here (Sun Decl. ¶ 5; *see also id.* ¶¶ 20, 22 ("Account Recovery" web pages)):

9

10

11

12



13

14

15

16

17

18

19

20

21

22  There is no dispute that every time the Plaintiffs accessed their TurboTax accounts they were

23  required affirmatively to enter their respective login information and sign in by clicking a large

24  blue button.  *See* Sun Decl. ¶¶ 5-6, 14-15, 19-23.  Despite the fact that customers are presented

25  with the TERMS front and center on the "Account Creation," "Sign In," and "Account Recovery"

26  pages on the TurboTax website, *every time* they sign up for and log into their accounts, Plaintiffs

27  argue that they did not have notice of the TERMS.  Plaintiffs are wrong as a matter of law.

28       As outlined in the Motion (at 8-9), in the digital context, actual knowledge of an

FENWICK & WEST LLP
ATTORNEYS AT LAW

agreement is not the test—a principle Plaintiffs do not dispute, but their expert neglects. The creation of an agreement turns on whether a website puts a reasonably prudent user on "inquiry notice" that terms apply to their use of a service. *Silverman v. Move Inc.*, No. 18-CV-05919-BLF, 2019 WL 2579343, at *11 (N.D. Cal. June 24, 2019) (applying California law; granting motion to compel arbitration based on finding that plaintiff "had at least inquiry notice" of terms). Plaintiffs fall flat in their efforts to undermine Intuit's TERMS by labeling them a "browsewrap" or "variation of a browsewrap" agreement and comparing them to the browsewrap agreements in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) and *Rushing v. Viacom Inc.*, No. 17-CV-04492-JD, 2018 WL 4998139 (N.D. Cal. Oct. 15, 2018). In *Nguyen*, the website provided only a terms of use link at the bottom of each web page, but otherwise provided "no notice to users nor prompts them to take affirmative action to demonstrate assent." 763 F.3d at 1179. The court there noted that if there were "any evidence in the record that [the plaintiff]…was required to affirmatively acknowledge the Terms of Use before completing his online purchase, the outcome of this case might be different." *Id.* at 1176. Such evidence plainly exists here. Similarly, in *Rushing*, the terms were not visible to users unless they clicked on "more," "and critically, there was no need for users to click on the 'more' button in order to start downloading the game." 2018 WL 4998139, at *2. Intuit does not use a browsewrap agreement. Both the "Create Account" and "Sign In" pages notify users immediately below the "Create Account" or "Sign In" buttons that ***by clicking on the button, they agree*** to the TERMS. *See* Sun Decl. ¶¶ 5, 6, 8, 9, 14, 17, 18; *see also id.* ¶ 22. Indeed, *Nguyen* has been consistently applied to endorse sign-in wrap agreements like those used by TurboTax. *See, e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017) (citing *Nguyen*).

Where, as here, a hyperlink to terms is provided near a "sign in" or "purchase" button and there is a "clear prompt directing users to read the Terms . . . and signaling that their acceptance of the benefit of registration would be subject" to those terms (*Meyer v. Uber Techs. Inc.*, 868 F.3d 66, 79 (2d. Cir. 2017)), courts regularly hold that users manifest assent to the terms when they click the button and sign in or make their purchase. *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause based on disclosure below

"Sign Up" button); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them"); *Cordas*, 228 F. Supp. 3d at 990 (holding that users assented to Uber's terms and arbitration agreement when clicking "DONE" button to complete sign-up process on a page displaying a notice "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy") (citation omitted);[1] *accord Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *4–5 (D.D.C. Nov. 1, 2016) (granting motion to compel arbitration; collecting cases).  As noted in the cases Plaintiffs cite, courts uphold arbitration agreements "where sites contain a disclosure statement that indicates if a user signs up for a given service they accept the terms of service provided the design of the website puts a reasonably prudent user on inquiry notice."  *McKee v. Audible, Inc.*, No. CV-17-1941-GW(Ex), 2017 WL 4685039, at *6 (C.D. Cal. Jul. 17, 2017) (citations omitted).  That is the case here.

Courts across the country have also repeatedly enforced arbitration agreements (including this one) formed through similar web designs.  Plaintiffs' (and Mr. Brignull's) claim that the hyperlinks to the TERMS are not sufficiently "highlight[ed]" (e.g., Opp. at 7) ignores that the actual links *are* highlighted through a contrasting color (blue font amidst grey font) as is typically done for hyperlinks to binding terms:



*See, e.g.*, *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015), *aff'd sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017) (blue font); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011) (blue font); *Selden*, 2016 WL 6476934, at *4–5, 9 (red font).  Moreover, that the textual notice appears immediately below the

---

[1] Plaintiffs fail to meaningfully distinguish *Cordas*.  Opp. at 9.  Unlike Plaintiffs here, the plaintiff in *Cordas* disputed the appearance of the sign-in screens submitted in connection with Uber's motion.  228 F. Supp.3d at 990.  Here, Plaintiffs simply state they do not recall seeing the TERMS when they signed into their accounts.

Fenwick & West LLP
Attorneys at Law

"Sign In" button is of no help to Plaintiffs.  *See id.* at *2 (enforcing arbitration agreement where the textual notice was below a set of three buttons and plaintiff clicked the top-most button on the sign-up screen); *Fteja*, 841 F. Supp. 2d at 835.  Finally, Plaintiffs' contention that Intuit's presentation of its TERMS is "inconspicuous by design" (Opp. at 3) is belied not only by the conspicuous notice of the TERMS, but the fact that—unlike many other businesses that require users to agree to their terms only once upon creating an account—Intuit requires its users to assent to the TERMS when creating their account *and every time* a user signs into his or her TurboTax account.  Sun Decl. ¶ 4.  This is not a situation where "[o]nly curiosity or dumb luck might bring a user to discover the Terms."  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019).  The TERMS are presented to the users conspicuously and repeatedly.

Intuit's notice is far more conspicuous than the notices rejected in the cases cited by Plaintiffs (Opp. at 6).  In those cases, the websites or mobile applications provided only a link with no textual notice of agreement, *see, e.g.*, *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 867 (2016); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017); required the user to scroll past the operative click button to get to the notice, *see McKee*, 2017 WL 4685039, at *8; presented the terms not in the standardized blue color but in a grey box set against a black background, *see Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018) (applying Massachusetts laws);[2] or presented the notice on pages too cluttered to find them, *see, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016).[3]

Plaintiffs' reliance on *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) is similarly misplaced.  As an initial matter, the link to Intuit's TERMS is in a much brighter, more distinguishable font color than that used for the hyperlinks to JUUL's "Terms and

---

[2] The *Cullinane* decision has been rightly dismissed by courts in this Circuit as "depart[ing] dramatically . . . from the overall legal landscape regarding assent to online agreements."  *West v. Uber Techs.*, No. 18-cv-3001-PSG-GJS, 2018 WL 5848903, at *4 (C.D. Cal. Sept. 5, 2018).

[3] Plaintiffs' reliance on *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015), an outlier and non-binding authority, is similarly incorrect.  *Berkson* is distinguishable because the hyperlinks provided to the terms were not, as Intuit's are here, in conspicuous contrasting blue color.  *Id.* at 374, 404.  Moreover, to the extent *Berkson* found lack of agreement because the user was not required to "scroll through the contract" (*id.* at 404) "in order to click 'accept' or 'I agree'"—it imposed a standard of mandatory contract review contrary to law in this Circuit.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   Conditions" and "Privacy Policy." *Compare* Sun Decl. ¶ 5 *with JUUL*, 402 F. Supp. 3d at 765.

2   Further, as Plaintiffs note, *JUUL*'s decision that JUUL's disclosure does not provide inquiry

3   notice is heavily dependent on the fact that the first hyperlink on the screen, to the password

4   recovery page, is "bolded, underlined, and appears to be in a larger font size than the hyperlink at

5   issue." *Id.* at 766.  Because of the inconsistency in appearance of the hyperlinks, the *JUUL* court

6   concluded that a user who viewed the "Forgot Password?" hyperlink "would not then see the

7   'Terms and Conditions' and 'Privacy Policy' hyperlinks and conclude that they were clickable."

8   *Id.* Here, no such inconsistency exists, and no such confusion could occur.  Every hyperlink is

9   consistent and in bright blue contrasting color.  Finally, the disclosure on JUUL's website ("By

10  registering with JUUL Labs, Inc., you agree . . .") differs from the text on the corresponding

11  button ("SIGN UP").  *Id.* at 763.  Here, Intuit clearly and simply advises, in a centered block

12  immediately below the button labeled "SIGN IN," that "By clicking Sign In," the user agrees to

13  the TERMS.  *See, e.g.*, Sun Decl. ¶ 5.

14      Plaintiffs' reference to and analysis of the sign-in flow on the TurboTax Mobile App (*see*

15  Opp. at 8-9) is a red herring.  Following the Motion, Plaintiffs voluntarily dismissed Plaintiffs

16  Laura Nichols and Brianna Sinohui.  Dkt. No. 110.  Ms. Sinohui was the only Plaintiff who

17  signed into the TurboTax Mobile App during TY18.  *See* Davis Decl. ¶ 7.  The remainder of the

18  Plaintiffs signed into their accounts on the "Sign In" page on the Intuit TurboTax website or

19  through the "Account Recovery" page on the Intuit TurboTax website.  *Id.*  Because Plaintiff

20  Sinohui is out of the case, the "Sign In" screen on the TurboTax Mobile App is irrelevant.

21      Plaintiffs' further contention that they do not recall seeing the TERMS when they signed

22  into their TurboTax accounts (Opp. at 4-5) does nothing to negate their assent.  Plaintiffs'

23  statements "do not rise to the level of unequivocal denials of having agreed to [the TERMS]."

24  *Blau v. AT & T Mobility*, No. C 11-00541 CRB, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012)

25  (Breyer, J.).  Indeed, "[i]f a party could get out of a contract by arguing that he did not recall

26  making it, contracts would be meaningless."  *Id.*  The uncontested evidence shows that Plaintiffs

27  could not have signed into their accounts without affirmatively clicking "Sign In" immediately

28  above the advice that, by signing in, they *did* agree to the terms.  Sun Decl. ¶¶ 5, 14.  *See, e.g.*,

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Fteja*, 841 F. Supp. 2d at 834–35 (holding that "[a]s a matter of logic," the plaintiff must have accepted the terms of service, even if the plaintiff did not remember, because putative users cannot be users without accepting the terms).  Plaintiffs do not attest that, had they seen the TERMS, they would have clicked on them, or that they have a practice of reading terms and rejecting applications after reading them.  Nor do Plaintiffs assert that if they had read the TERMS they would not have agreed to them.  That these Plaintiffs—or anyone else—failed to remember seeing terms right next to the "Sign In" button says nothing to negate their assent.[4]

Nor do the clickstream statistics undermine Intuit's conspicuous notice of its TERMS. That users choose not to review online terms is utterly irrelevant to whether they are on notice of them.  As courts acknowledge, users understand that, by signing up for a service or making a purchase online, they are accepting terms that will govern that service or purchase, regardless of whether they read them.  *See*, *e.g.*, *Selden*, 2016 WL 6476934, at *5 ("Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular [online] service, he or she is accepting the terms and conditions of the provider . . .To be sure, few people may take time to actually read the user agreements. But ignorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up…"); *Nguyen,* 763 F.3d at 1170  ("Failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract"); *Meyer*, 868 F.3d at 79-80 ("A reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."); *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 548 (W.D. Tex. 2017) ("[A] party cannot avoid the terms of a contract on the ground she failed to read it before signing it.")  What is required by law is to make the TERMS visible and available to those who want to read them, which Intuit did.  And although only a ███

███████     of total users chose to look at the TERMS, that ████████████████ of users had no

---

[4] Plaintiffs' attempt to minimize their own allegations of assent underscores their revisionism. *See* Motion at 8; FAC ¶ 108 ("Intuit . . . presented [the TERMS] to all Plaintiffs. . . . The [TERMS] are a contract of adhesion by Intuit that Plaintiffs were required to accept to use the services.")  Plaintiffs' reliance on *Meyer*, 868 F.3d 66, is misplaced.  Unlike in *Meyer* where plaintiff amended his complaint to delete the allegation at issue, "an offer that was accepted by the district court" (*id.* at 77), Plaintiffs have already amended their complaint once, continued to include such allegations thereafter, and now seek to change course only after *Macklin*.

1    trouble doing so confirms they were not unreasonably presented.[5]

2    Finally, nothing in the unprecedented declaration from Plaintiffs' purported "expert,"[6]

3    warrants the legal conclusion that Plaintiffs did not have reasonable notice of the TERMS.  Mr.

4    Brignull's fundamental critique is that Intuit does not require a user to scroll-through and then

5    click a separate box indicating agreement, by which "mandatory presentation" Intuit could "give

6    users no choice but to see the document in question."  Brignull Decl. ¶ 12.  Yet, as countless

7    cases in the Ninth Circuit have held, Mr. Brignull's suggestion is simply not the law.  Nor is it an

8    inconsequential ask to require all businesses to burden users with the time-consuming process of

9    scrolling through every applicable agreement and checking a box, particularly where the TERMS

10   are presented to TurboTax customers on every single login.

11   Mr. Brignull's comparisons to Microsoft, Apple, and Google are cherry-picked and

12   inapposite.  *Id*. ¶¶ 12-17.  Microsoft's 25-year old operating system install is not the current

13   standard nor comparable to an online app.  A user in 1995 is not a "reasonably active adult

14   consumer" in 2020 who, as the caselaw recognizes, has pervasive exposure to and recognition of

15   binding terms for online services.  Apple's choices for its one-time install for a persistent desktop

16   operating system likewise do not bind online sign-in processes for a single-purpose application.

17   Lastly, Mr. Brignull's example of Google's "summary" of "Privacy Terms" is most notable

18   because it does not include any summary of terms of use—just privacy disclosures—and certainly

19   nothing referring to arbitration.  In all events, even lumping together incomparable time frames

20   and use cases, the most Mr. Brignull is willing to state is that a scrollthrough and checkbox "has

21   been *a* common practice used for decades and *is still used frequently today*."  *Id.* at ¶¶ 12, 14

---

[5] Plaintiffs proffer no evidence that the click through percentage derives from consumers not having notice of the TERMS, as opposed to them choosing not to review them.  Absent that foundation, that data is irrelevant.  The percentage also does not reflect that a significant amount of those users are repeat customers from prior years who previously had an opportunity to review the TERMS.  Further, while Plaintiffs asked Mr. Sun—an employee not charged with web design—to opine whether ███████████████████ that opinion from a layperson is meaningless and says nothing about either industry standards or causation from user choice.  Notably, Mr. Brignull offers no benchmark of what is industry standard click through.

[6] Plaintiffs fail to cite and Intuit is unaware of a single case where a court has considered or followed an "expert" declaration on the issue of reasonable conspicuousness.  The 18-page Brignull Declaration is an end-run around this Court's page limits, is neither helpful nor reliable as required of expert declarations, and should be disregarded.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

(emphasis added).  But another common practice, acceptable as reasonable notice as a matter of law, is the "sign-in wrap" reflected in the many cases Intuit has cited.

Mr. Brignull's additional opinions are similarly flawed and deserve no credit here:

- Mr. Brignull opines that Intuit "appear[s]" to have "attempted to boost the completion rate of the TurboTax sign up process." *Id.* ¶ 29.a.  Yet, there is nothing deceitful about trying to limit the number of users who "drop out" of a process due to time or hassles. Ease of use is good for consumers.  Indeed, Mr. Brignull notes that companies legitimately seek to "limit disruption of the sign-in or enrollment process." *Id.* ¶ 14.

- Mr. Brignull fails to offer any statistics as to the number of persons who actually read an agreement or, based on its terms, withdraw from the process, having been forced to go through a mandatory scrollthrough and check box.  There is nothing to indicate that the additional burden imposed on the user actually results in any greater consumer benefits.  As the law recognizes, consumers know that they are agreeing to terms, and there is no indication that mandating consumption of their time has any positive impact on consumers.

- Mr. Brignull's speculative and hypothetical discussion of viewport shrinkage (*id.* ¶¶ 18-20) is irrelevant.  There is no evidence that any Plaintiff experienced any viewport shrinkage.  Mr. Brignull provides no information regarding what settings he changed in order to manipulate the hyperlink to the TERMS off the page.  While it may be possible for an expert to do so, there is nothing to indicate that this would commonly occur or has ever actually affected any consumer.

- Mr. Brignull's purported concern about potential user error from clicking only one of multiple linked terms and "mistakenly believ[ing] they have read all the legal terms" is another red herring. *Id.* ¶¶ 22-25.  There is no evidence that any of the Plaintiffs made any such error.  Instead, after alleging in the Complaint that they were required to agree to the TERMS, they now claim they do not remember noticing the links to the TERMS at all.  Mr. Brignull's assertions on this point are therefore of no moment.

As shown above, controlling authority holds that a contract is formed when, as here, users are given reasonable notice that creating or signing into their accounts constitutes assent.  Thus, Intuit has shown that Plaintiffs had notice of and manifested assent to TERMS when they signed into their TurboTax accounts.  *See Wilson*, 944 F.3d at 1219 (party seeking to compel arbitration must prove existence of a valid agreement by preponderance of the evidence).

## II.    THE TERMS DELEGATE ALL OTHER QUESTIONS OF ARBITRABILITY

Plaintiffs next argue incorrectly that issues of arbitrability are for the Court to decide rather than the arbitrator.  But just as Plaintiffs agreed to arbitrate their claims with Intuit, they also agreed to arbitrate questions of arbitrability in a manner that must be enforced under the FAA.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  Such an agreement is "simply an additional, antecedent agreement the party seeking arbitration" asks a court to enforce.  *Id.* at 70.  And, just "as a court may not decide a merits question that the parties have delegated to an

1   arbitrator, a court may not decide an arbitrability question that the parties have delegated to an

2   arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).  Here,

3   the arbitration agreement's incorporation of the AAA rules shows the parties' clear and

4   unmistakable delegation of the arbitrability question to an arbitrator.  TERMS § 14.

5       Plaintiffs first argue that Intuit's incorporation of the AAA rules does not provide clear

6   and unmistakable delegation of arbitrability because it provides only how the "arbitration *itself*" is

7   to be conducted.  Opp. at 11.  But that is the point: an arbitration conducted under the AAA rules

8   requires the arbitrator to determine arbitrability.  Plaintiffs' assertion that Intuit's incorporation of

9   the AAA rules differs from the clause in *Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir.

10   2015) fails.  The AAA reference in *Brennan*, which provides that "any controversy or claim . . .

11   shall be settled by binding arbitration in accordance with the Rules of the [AAA]," is

12   substantively indistinguishable from Intuit's AAA reference, which provides "ANY DISPUTE

13   OR CLAIM . . . WILL BE RESOLVED IN BINDING ARBITRATION . . . conducted by the

14   American Arbitration Association (AAA) before a single arbitrator under the AAA's rules."

15   TERMS § 14.  Plaintiffs' argument is nonsensical.[7]

16       Plaintiffs next critique Intuit's incorporation of the AAA rules without specification as to

17   which AAA rules would apply.  Opp. at 11.  Yet, numerous cases, including *Brennan*, hold that

18   agreements' incorporation of AAA rules, without specifying which AAA rules, constitutes clear

19   and unmistakable delegation.  *See Brennan*, 796 F.3d at 1128; *Diaz*, 2017 WL 4355075, at *3;

20   *Silverman*, 2019 WL 2579343, at *7; *Zelkind v. Flywheel Networks, Inc.*, No. 15-CV-03375-

21   WHO, 2015 WL 9994623, at *3 (N.D. Cal. Oct. 16, 2015); *Kin Wah Kung v. Experian Info. Sols.,*

22   *Inc.*, No. C 18-00452 WHA, 2018 WL 2021495, at *4 (N.D. Cal. May 1, 2018).  Moreover, both

23   the AAA Commercial Rules (Rule 7(a)) and Consumer Rules (Rule 14(a)) grant arbitrators the

---

24   [7] Plaintiffs' reliance on *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 789-90 (2012),

25   *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004), and *Tompkins v. 23andMe, Inc.*, No.
     5:13-CV-05682-LHK, 2014 WL 2903752, at *12 (N.D. Cal. June 25, 2014), *aff'd on other*

26   *grounds*, 840 F.3d 1016 (9th Cir. 2016), is unavailing.  Opp. at 19.  In *Ajamian*, the court's
     decision related to an employment agreement and it noted that "incorporation of AAA rules into

27   an agreement might be sufficient indication of the parties' intent in other contexts."  203 Cal.
     App. 4th at 790.  *Oblix* is an out-of-circuit case, again in the employment context, and its

28   discussion of the incorporation of the rules is dicta.  374 F.3d 488.  Finally, *Tompkins*, 2014 WL
     2903752, was decided prior to the Ninth Circuit's decision in *Brennan*.

---

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  authority to determine arbitrability.  Plaintiffs identify no plausible AAA rules that do not include

2  delegation.

3      Finally, Plaintiffs assert that incorporation of the AAA rules cannot delegate arbitrability

4  determinations because Intuit has not shown Plaintiffs to be "sophisticated" parties.  Opp. at 12-

5  13.  Yet, Plaintiffs ignore the weight of authority, which has concluded that reference to the AAA

6  rules evinces a clear and unmistakable delegation to an arbitrator, regardless of the sophistication

7  of the parties.  *See* Motion at 9-11 (citing cases).  There are two compelling reasons why,

8  consistent with the majority rule, the distinction between sophisticated and unsophisticated parties

9  should not matter.

10     ***First***, incorporation by reference is a valid, enforceable, and effective means to declare the

11 operative terms of a contract under California law.  *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-

12 JD, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017) (citation omitted).  Simply put, that which

13 is incorporated into the contract *is* the contract.  For this reason, the incorporated delegation

14 provision from the AAA rules are part of the TERMS that must be enforced under the FAA,

15 whether the parties are sophisticated or not.

16     The Supreme Court's decision in *Rent-A-Center* makes this clear.  "The FAA operates on

17 this additional arbitration agreement [—the agreement to delegate arbitrability—] just as it does

18 on any other.  The additional agreement is valid under [FAA] § 2 'save upon such grounds as

19 exist at law or in equity for the revocation of any contract.'"  *Rent-A-Ctr., W., Inc.*, 561 U.S. at

20 70.  "When the parties' contract delegates the arbitrability question to an arbitrator, a court may

21 not override the contract.  In those circumstances, a court possesses no power to decide the

22 arbitrability issue."  *Henry Schein, Inc.*, 139 S. Ct. at 529.  Absent a claim of unconscionability—

23 and there is none here[8]—the terms of the parties' agreement govern.

24     Here, the arbitration agreement in the TERMS provides for delegation, pure and simple.

25 The agreement reads, in plain style, that the "Arbitration will be conducted by the American

26

27 _____

   [8]  Plaintiffs have not, and cannot, assert that the delegation clause is unconscionable.  The
   Supreme Court has repeatedly approved of delegations to arbitrators and noted the requirement

28 that they be enforced under the FAA in *Rent-A-Center* and *Schein*.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules, which are

2   available at www.adr.org or by calling 1-800-778-7879."  *See* TERMS § 14.  Since incorporation

3   of the AAA rules make them a binding term of the contract under neutral principles of contract

4   law, this provision defines the parties' intent and constitutes "clear and convincing" delegation to

5   the arbitrator.

6       Importantly, the fact that one party might be unsophisticated, or might choose not to read

7   the entire contract, cannot negate an arbitration agreement's terms under the FAA, *Rent-A-Center*,

8   and *Henry Schein*, all of which require that delegation clauses be enforced in accordance with

9   their terms.  *Concepcion* also taught as much, invalidating, as preempted by the FAA, a consumer

10  protection rule that had disallowed waivers of collective action in arbitration agreements.  *AT&T*

11  *Mobility v. Concepcion*, 563 U.S. 333, 351 (2011) ("States cannot require a procedure that is

12  inconsistent with the FAA, even if it is desirable for unrelated reasons.").  The same principle

13  forecloses a reinterpretation of the plain words of a delegation agreement to render it applicable

14  only to "sophisticated" parties.  A party's lack of sophistication about arbitration is not an

15  arbitration-neutral basis for refusing to enforce the terms of incorporated rules.  *McLellan*, 2017

16  WL 4551484, at *3 ("utterly unrealistic to accept the proposition that a failure to know what was

17  in the [incorporated document] was anyone's responsibility and fault but' contracting party's,

18  where 'most certainly the [incorporated document] was readily available'") (citation omitted); *see*

19  *also Coneff v. AT & T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012) (noting that "policy concerns,

20  however worthwhile, cannot undermine the FAA").

21      These core principles undermine cases relied upon by Plaintiffs like *Eiess v. USAA*

22  *Federal Savings Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463 (N.D. Cal. Aug. 23, 2019),

23  which disregard incorporated delegation provisions out of a desire, however well-intended, to

24  protect consumers against arbitration.  Since *Concepcion*, at least, the literal terms of arbitration

25  agreements apply, and good faith desires to protect those who are unsophisticated cannot

26  countermand them.  Under the Supreme Court's guidance, "the times in which consumer

27  contracts were anything other than adhesive are long since past."  *Concepcion,* 563 U.S. at 346-

28  47.  The provision to which the parties agreed are the provisions the FAA requires to be enforced,

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   including those incorporated in conformity with law.[9]

2       ***Second***, as explained in *McLellan,* determining the applicable terms of a contract based on

3   a party's sophistication would make no practical sense.  "The factors that might make someone

4   'sophisticated' are poorly suited to a standard definition that parties can rely upon to avoid

5   uncertainty or surprise in the meaning of the instrument they signed.  A party-by-party assessment

6   of sophistication under some loose amalgam of personal education, line of work, professional

7   knowledge, and so on would undermine contract expectations in potentially random and

8   inconsistent ways."  *McLellan*, 2017 WL 4551484, at *3.  Indeed, Plaintiffs here submit no

9   evidence as to whether they have previously been a party to arbitrations or litigations, whether

10   they have reviewed the AAA Rules, or whether they failed to understand the applicable

11   procedures.  Requiring such an inquiry, much less presuming its outcome in the absence of

12   evidence, would frustrate defendants' rights to the benefit of arbitration.

13       For these reasons, the delegation to the arbitrator of all issues of arbitrability was

14   effective, and this Court's inquiry may stop here.

15   **III.   IN ALL EVENTS, PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE**
16   **AGREEMENT TO ARBITRATE, AND THE AGREEMENT IS ENFORCEABLE**

17       Even if this Court were to address issues of arbitrability, Plaintiffs cannot carry their

18   heavy burden to show that their claims fall outside the broad scope of the arbitration agreements.

19       **A.   The Injunctive and Equitable Relief Provision in the Arbitration Agreement**
20   **Does Not Allow Plaintiffs to Avoid Arbitration**

21       Plaintiffs argue that their claims—which include monetary recoveries their FAC

22   recharacterized as equitable relief—can avoid the broad scope of their arbitration agreements with

23   Intuit.  But their argument fails to grapple with the plain language of the limited carve-out for

24   equitable relief during arbitration.  The TERMS do not, as Plaintiffs suggest (Opp. at 14, 15, 16,

25   17, 18), provide that *a party* may "at any time seek injunctions or other forms of equitable relief .

26   . . ."  To the contrary, the agreement plainly provides that only a "party to the arbitration" may

27

28   [9] The *Macklin* court was not presented with and did not consider this *Concepcion*-based limitation
of the "sophistication" distinction in its ruling on the delegation issue.  Exh. A. at 3-5.

1   seek injunctive or other equitable relief (not commence a stand-alone action) from a court.

2   TERMS § 14.  As *Macklin* stated (Exh. A at 6):

> 3   [T]he Court does not find the arbitration provision is ambiguous. Rather, it clearly
>     states a "party to the arbitration" may at any time seek injunctions or other forms of
> 4   equitable relief. There can be no "party to the arbitration" without an existing
>     arbitration. The language "at any time" in that sentence lends further support to this
> 5   interpretation because such language necessarily concerns the timing of pursuing
>     injunctive and/or equitable relief during arbitration; it would be superfluous if there
> 6   were no arbitration in the first place.

7   Plaintiffs offer no viable textual interpretation of the term "any party to the arbitration."

8   *Id.* ("The Court cannot rewrite the parties' agreement"); *DiMucci v. ZeniMax Media Inc.*, No. 17-

9   CV-03789-EMC, 2018 WL 339129, at *3, *7 (N.D. Cal. Jan. 9, 2018) (granting arbitration

10  motion where plaintiff ignored the plain language of the clause).  When Plaintiffs finally

11  acknowledge the term, they first argue that "Plaintiffs did not agree to bring any equitable claims

12  in arbitration [because] Intuit's agreement affords Plaintiffs the right to seek 'at any time' the

13  equitable relief they seek from the Court."  Opp. at 17.  But that *ipse dixit* assumes its own

14  conclusion, ignoring the key issue that only a "party to the arbitration" may seek equitable relief

15  from a court.

16  Second, Plaintiffs protest that a plain language interpretation of the arbitration agreement

17  creates an "absurd" or "wasteful" result by requiring a person to institute arbitration before

18  seeking injunctive or other equitable relief.  *Id.* at 17-18.  The Opposition ignores the command of

19  the Supreme Court (Motion at 17) that, even if it results in piecemeal adjudication, the FAA

20  requires an agreement's terms to be enforced.  Moreover, this is precisely the procedural

21  framework that the Ninth Circuit required in *Ferguson v. Corinthian Colleges, Inc.,* 733 F.3d 928

22  (9th Cir. 2013).  There, the Ninth Circuit reversed a district court order denying defendants'

23  motion to compel arbitration and held that the lower court needed to compel the entire case to

24  arbitration first for the arbitrator to determine both questions of liability and whether he or she

25  had the authority to fashion the remedy sought.  *Id.* at 938.  *Ferguson* held that only "[i]n the

26  event that the arbitrator concludes" that defendants had "violated the UCL, FAL, or CLRA, and

27  that entry of an injunction might be appropriate, *but further determines that it lacks the authority*

28  *under the agreements at issue to grant the requested injunction,*" could plaintiff seek the

FENWICK & WEST LLP
ATTORNEYS AT LAW

requested injunction in court.  *Id.* (emphasis added).  Plaintiffs provide no legal or logical reason why the same procedure should not apply in this case.  Far from an absurd result, Plaintiffs' claims would proceed in arbitrations and the arbitrator would consider the next steps to adjudicate the merits.  This approach is consistent with incorporated AAA Rule 37(d), which provides that, while a party to the arbitration may seek ancillary or incidental relief from the Court, the arbitrator must adjudicate the underlying merits, including whether there is any valid underlying claim warranting the issuance of relief.[10]  In other words, injunctive relief is limited to that incidental to the arbitration.

Intuit's interpretation is also consistent with the decisions of other courts interpreting similar arbitration agreements and equitable carve outs.  *See* Motion at 15-17 (discussing *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1286 (9th Cir. 2009); *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 215, 218 (S.D.N.Y. 1993); *Info. Sys. Audit & Control Ass'n, Inc. v. TeleCommunication Sys., Inc.*, No. 17 C 2066, 2017 WL 2720433, at *4 (N.D. Ill. June 23, 2017)).[11]  Plaintiffs try to distinguish the language of the agreements at issue there, but they cannot.  Plaintiffs argue that *Comedy Club* is distinguishable because it provided for a carve out "in addition to arbitration," and because the Intuit TERMS permit seeking of relief at "any time"—purportedly meaning that equitable relief "is not limited to relief ancillary to an arbitration to maintain the status quo."  Opp. at 14.  Not so.  Plaintiffs' interpretation again ignores the plain language of the TERMS, reads "party to the arbitration" out of the equitable carve-out provision, and ignores the indispensable condition that equitable relief be sought only after, and therefore incidental to, a pending arbitration.

Finally, even if the language of the Intuit arbitration agreement were ambiguous (and it is

---

[10] Plaintiffs' argument that the phrase "at any time" "connotes" that the merits of equitable relief are reserved to the Court (Opp. at 16) is inconsistent with the AAA Rules and with the settled principle of deference to arbitration in the event of any ambiguity as to the arbitrator's role.

[11] *Bachrach v. Compagno*, No. B252454, 2015 WL 78143, at *1 (Cal. Ct. App. Jan. 6, 2015) (unpublished) is of no use to Plaintiffs.  In *Bachrach*, the arbitration agreement provided that "[n]otwithstanding the foregoing [arbitration agreement], no arbitrator shall have the power to render equitable relief of any kind, and requests for such relief shall be referred to a court of competent jurisdiction."  *Id.* at *1.  Whereas *Bachrach* expressly prohibited the arbitrator from awarding injunctive relief, the carve-out here provides merely that a party to an arbitration *may* seek such relief from a Court, and the AAA Rules confirm that relief is of an ancillary nature.

1  not), the "presumption of arbitrability" that applies to all arbitration agreements would still

2  require compelling this action to arbitration.  *See, e.g.*, *AT&T Techs., Inc. v. Commc'ns Workers*

3  *of Am.*, 475 U.S. 643, 650 (1986); Mot. at 12-13 (collecting cases).  Plaintiffs suggest that this

4  federal presumption should not apply in light of generally applicable contract principles

5  construing ambiguities against the drafter.  *See* Opp. at 15 (citing *Revitch v. DirecTV, LLC*, No.

6  18-cv01127-JCS, 2018 WL 4030550, at *16 (N.D. Cal. Aug. 23, 2018) (appeal filed, Sept. 24,

7  2018)).  Yet, after *Revitch*, the Supreme Court rejected this argument and confirmed that the

8  federal presumption preempts the state common law rule construing ambiguities against the

9  drafter.  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418-19 (2019).  The Supreme Court's

10  holding is dispositive.  Because the carve-out for "party to the arbitration" can plausibly be

11  interpreted to carve out an exception only for relief ancillary to a pending arbitration, *Lamps Plus*

12  confirms that, under the FAA, it *must* be interpreted that way.

13    **B.**    **Plaintiffs Concede that the Arbitration Agreement is Enforceable**

14         Plaintiffs attack the TERMS' class action waiver as unenforceable *outside* of the

15  arbitration provision.  Opp. at 18-20.  But Plaintiffs concede that, if assented to, the arbitration

16  provision *is* enforceable, including its class action waiver.  Indeed, there can be no dispute that

17  arbitration agreements containing class waivers are enforceable.  *Epic Sys. Corp. v. Lewis*, 138 S.

18  Ct. 1612, 1619 (2018).  For the reasons outlined above, Plaintiffs are required to arbitrate their

19  claims and they must do so on an individual, non-class basis.

20                              **<u>CONCLUSION</u>**

21         For the reasons outlined above and in the Motion, all of Plaintiffs' claims are arbitrable

22  under the TurboTax arbitration agreement.  Accordingly, Intuit respectfully asks this Court to

23  compel Plaintiffs' claims to individual arbitrations and either to dismiss or stay this action.

24

25  Dated:   January 17, 2020                    FENWICK & WEST LLP

26                                        By: *s/ Laurence F. Pulgram*
                                              Laurence F. Pulgram

27
                                           Attorneys for Defendant INTUIT INC.
28

FENWICK & WEST LLP
ATTORNEYS AT LAW