IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE ARENA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>INTUIT INC., et al.,<br><br>    Defendants. | Case No. 19-cv-02546-CRB<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION** |

Andrew Dohrman, Joseph Brougher, and Monica Chandler (collectively, "Plaintiffs") have brought a putative class action against Intuit Inc., alleging that Intuit fooled a class of consumers into paying for its tax preparation services when they were entitled to use its free filing option. Intuit thinks Plaintiffs are bound by the arbitration agreement in the Intuit Terms of Service for TurboTax Online Tax Preparation Services – Tax Year 2018 ("the Terms"), which Plaintiffs ostensibly agreed to every time they signed in to use Intuit's tax preparation software. Because the Terms were too inconspicuous to give Plaintiffs constructive notice that they were agreeing to be bound by the arbitration agreement when they signed in to TurboTax, the Court finds that Plaintiffs did not agree to the arbitration provision. The Court therefore need not decide whether questions of arbitrability or claims for equitable relief were delegated to the arbitrator. The Motion to Compel Arbitration is denied, and so is Intuit's request for a stay pending its appeal to the Ninth Circuit.

**I.   BACKGROUND**

Intuit owns TurboTax, an online tax preparation service. Compl. (dkt. 1) ¶ 1. In 2002, Intuit and other tax preparation services entered an agreement with the Internal Revenue Service to

1    provide low-income taxpayers and active military members the option to file their taxes for free.
2    Id. ¶¶ 15–17, 20.  But, Plaintiffs allege, Intuit violated that agreement by misleadingly channeling
3    such taxpayers to its paid services instead.  Id. ¶ 2.  According to the Complaint, Intuit lured
4    consumers in with promises of free filing, only to direct them to paid offerings while hiding the
5    actual free filing option.  Id. ¶ 3–4.
6          From January to March 2019, consumers accessing TurboTax Online as returning users
7    would have seen this sign-in page:



Sun Decl. (dkt. 97-2) ¶ 5. The parties do not dispute that each of the Plaintiffs would have seen the sign-in page depicted above, or a substantially similar version.[1] Mot. (dkt. 97) at 2–3, 5–6; Opp'n (dkt. 112) at 2; see also Davis Decl. (dkt. 97-1) ¶ 7.

The phrase "TurboTax Terms of Use" is a hyperlink to the Terms. Sun Decl. ¶ 6. A consumer who clicked on the link and read the Terms would have eventually arrived at the following arbitration provision:

> 14. DISPUTES. ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall apply California law to all other matters. Notwithstanding anything to the contrary, any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction. . . Arbitration will be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules, which are available at wwww.adr.org or by calling 1-800-778-7879.

Sun Decl. Ex. 1 ("Terms") at 4.

Plaintiffs' suit "seek[s] equitable and injunctive relief on behalf of themselves and all others who are similarly situated." Opp'n at 1. Intuit has moved to compel arbitration. See generally Mot.

## II.   LEGAL STANDARD

The Federal Arbitration Act provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[P]rivate agreements to arbitrate are enforced according to their terms." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989). A party may therefore petition a United States district court "for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "[A] party cannot be required to submit to arbitration any dispute which he has not

---

[1] It appears Dohrmann accessed TurboTax through the "Account Recovery" page. Davis Decl. ¶ 7a. For purposes of this Order, that page's relevant features are identical to the standard sign-in page. See Sun Decl. ¶ 11.

4

agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986).

### III. DISCUSSION

The dispositive question is whether there was a valid agreement to arbitrate. If Plaintiffs did not assent to the Terms, they cannot be bound by the arbitration provision contained therein. "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks and citations omitted). The parties agree that California law governs here. Mot. at 7; Opp'n at 3. Under California contract law, a valid agreement requires the parties' "mutual manifestation of assent" to be bound by the terms of the contract. Nguyen, 763 F.3d at 1175 (internal alterations omitted). "[A]n offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." Windsor Mills, Inc. v. Collins & Aikman Corp., 101 Cal. Rptr. 347, 350 (Cal. Ct. App. 1972). However, an offeree cannot be bound by the terms of a contract if he "does not know that a proposal has been made to him." Id. at 351. These basic principles apply to contracting on the Internet. Nguyen, 763 F.3d at 1175.

Courts have categorized the various contracts of adhesion employed by online service providers like Intuit. "'Clickwrap' (or 'click-through') agreements require website users to click on an 'I agree' box after being presented with a list of terms and conditions of use." Colgate v. JUUL Labs, Inc., 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019). "'Browsewrap' agreements exist where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." Id. Intuit employs a more recent innovation somewhere between these two classic forms of Internet contracting. "'Sign-in wrap' agreements are those in which a user signs up to use an internet product or service, and the signup screen states that acceptance of a separate agreement is required before the use can access the service." Id.

Sign-in wrap agreements are valid and enforceable when "the existence of the terms was reasonably communicated to the user." Id. at 764. In other words, if Plaintiffs "were on inquiry

notice of the arbitration provision by virtue of the hyperlink to the [Terms] on the sign-[in] page and manifested their assent to the agreement by clicking 'sign-[in],'" then there was a valid arbitration agreement.  Id.  The notice Intuit provided on its sign-in page (and Account Recovery page) does not meet this standard.[2]

To Intuit's credit, the hyperlink to the Terms appeared immediately under the sign-in button, every time consumers signed in.  See Berkson v. Gogo LLC, 97 F. Supp. 3d 359, 401 (E.D.N.Y. 2015) (noting that sign-in wrap agreements are more likely to be upheld "where the hyperlinked 'terms and conditions' is next to the only button that will allow the user to continue use of the website" and where the "user . . . was presented with hyperlinks to the 'terms of use' on subsequent visits," and collecting cases).  It also weighs in Intuit's favor that the sign-in page featured an explicit statement that signing in constituted assent to the Terms.  Cf. Applebaum v. Lyft, Inc., 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017) ("Beyond the coloring, there were no familiar indicia to inform consumers that there was in fact a hyperlink that should be clicked and that a contract should be reviewed, such as words to that effect.").

But this leaves the crucial question of whether "the hyperlinked text was itself reasonably conspicuous."  See Meyer v. Uber Tech., Inc., 868 F.3d 66, 79 (2d Cir. 2017).  To make this determination, courts consider factors such as color, size, and font.  See, e.g. Selden v. Airbnb, Inc., No. 16-cv-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016).  Many courts have concluded that hyperlinks are sufficiently conspicuous when they are blue and underlined.  Cullinane v. Uber Techs., Inc., 893 F.3d 53, 63 (1st Cir. 2018) (noting that hyperlinks "are commonly blue and underlined" and collecting cases (internal quotation marks omitted)).  In contrast, when "the hyperlink [was] wholly indistinguishable from the surrounding text" courts have found that users did not receive adequate notice of the agreement it led to, because "[u]sers cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link."  Juul Labs, 402 F. Supp. 3d at 765.

---

[2] The only Plaintiffs who accessed TurboTax through the mobile app have since been voluntarily dismissed.  Notice of Voluntary Dismissal (dkt. 110); see also Davis Decl. ¶ 7(b), (c).  The Court therefore does not address whether mobile app users had constructive notice of the arbitration provision.

6

TurboTax falls short of the gold standard. Its hyperlinks were blue, but not underlined.[3] See Sun Decl. ¶¶ 5, 11. Other courts have rejected the use of color alone to identify a Terms of Service hyperlink. See Juul Labs, 402 F. Supp. 3d at at 765–66 ("I am not convinced that the mere change in color of the hyperlinks, without more, is enough."); Applebaum, 263 F. Supp. 3d at 467 ("Courts have required more than mere coloring to indicate the existence of a hyperlink to a contract.").

Intuit argues those cases are distinguishable. Reply (dkt. 120) at 4–5. It points out that in Juul, other hyperlinks on the same page were "bolded, underlined, and . . . in a larger font size than the hyperlink at issue." Juul Labs, 402 F. Supp. 3d at 766. And in Applebaum, there was no statement on the sign-in page "that there was in fact a hyperlink that should be clicked and that a contract should be reviewed." 263 F. Supp. 3d at 467. However, the Court finds that there are three additional factors in this case, besides Intuit's reliance on color alone to identify the crucial hyperlinks, that demonstrate the lack of adequate notice.

First, both the notice and the hyperlinks therein are in the lightest font on the entire sign-in screen (the same is true of the Account Recovery page). See Sun Decl. ¶¶ 5, 11. The Court finds that a reasonable consumer would be less likely to notice text in a significantly fainter font than other text on the same page. This conclusion is supported by the expert opinion of Dr. Harry Brignull, a PhD in Cognitive Science. See Brignull Decl. (dkt. 112-1) ¶ 1. Dr. Brignull confirms the common-sense conclusion that because "Intuit chose to use a lighter shade of gray for the text associated with the terms and conditions," making that notice "less prominent" "[o]n the page's white background."[4] Id. ¶ 10.

---

[3] At oral argument, Intuit argued that the relevant hyperlinks were sufficiently conspicuous because they were both blue and italicized. But italicization did nothing to identify the hyperlinks as such, because the surrounding text was italicized as well. See Sun Decl. ¶¶ 5, 11. And if anything, it appears that italicization would make the notice less conspicuous to the average consumer.

[4] Intuit objects that Dr. Brignull's opinion is inapposite, because he criticizes Intuit for failing to "require a user to scroll-through and then click a separate box indicating agreement." Reply (dkt. 120) at 7. Intuit points out that "as countless cases in the Ninth Circuit have held, Mr. Brignull's suggestion is simply not the law." Id. Be that as it may, the Court finds Dr. Brignull's other conclusions and critiques useful in evaluating whether Intuit gave users sufficient notice of the arbitration agreement. Intuit claims Dr. Brignull's declaration is "unprecedented" because similar evidence has not been presented to other courts evaluating similar online contracts

7

Second, the notice on Intuit's sign-in and Account Recovery pages contains multiple, confusingly similar hyperlinks. The notice on both pages purports to warn users that clicking "Sign In" or "Continue" would bind them to "the Turbo Terms of Use, Turbo Tax Terms of Use." See Sun Decl. ¶¶ 5, 11. "Turbo Terms of Use" and "Turbo Tax Terms of Use" are two separate hyperlinks to two different agreements. Only the latter contained the arbitration agreement Intuit is seeking to enforce by way of the instant motion. Brignull Decl. ¶ 23. A reasonable user might well find this arrangement confounding. He or she might not realize the notice contained a second hyperlink. Once again, Dr. Brignull confirms this common-sense conclusion. Id. ¶ 23–24.

Intuit argues that there is no evidence any user clicked on the "Turbo Terms of Use" and mistakenly believed they had read all binding legal terms. Reply at 8. But the point is that the confusing presence of two nearly-identically named hyperlinks might have prevented a user from realizing the second hyperlink existed at all, regardless of whether they clicked on the first one. For the same reason, it does not help Intuit that an arbitration agreement governing use of a different product appeared in the terms that the first hyperlink led to. See Intuit Letter (dkt. 133). And even if Plaintiffs had clicked on the "Turbo Terms" and read them, Intuit does not explain why the arbitration provision in that agreement equates to notice of a totally separate agreement with an arbitration provision applicable to a different product.

Finally, the Court finds it relevant that less than 0.55% of users logging into TurboTax's website between January 1 and April 30, 2019, actually clicked on the hyperlink to the Terms. See Girard Decl. Ex. 1 (dkt. 112-6) Ex. A. The fact that so few users actually clicked on the hyperlink supports the inference that many of them did not notice it. Intuit points out that users may accept terms they have not read, so long as they have adequate notice of them. Reply at 6–7. True enough. See Nguyen, 763 F.3d at 1179 ("[F]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract."). But because this evidence suggests users were not on notice of the Terms, it is nonetheless relevant.

The parties raise a few additional arguments, none of which are particularly helpful.

---

of adhesion. Novelty alone is no reason to disregard evidence, and Intuit identifies no Federal Rule of Evidence rendering Dr. Brignull's declaration inadmissible.

8

Plaintiffs cite statistics about the number of TurboTax users who actually click on the Terms, Opp'n at 7, but as Intuit points out, the question is not whether users read the Terms, but whether they received adequate notice of them.

Intuit makes two additional arguments that must be addressed.

First, Intuit states that its arbitration provision "has been uniformly upheld by courts." Reply at i. But neither of the two decisions it cites analyze whether TurboTax users received sufficient notice of the Terms to be bound by them. See generally Diaz v. Intuit, Inc., No. 5:15-cv-01778-EJD, 2017 WL 4355075 (N.D. Cal. Sept. 29, 2017); Reply Ex. A (dkt. 120-1) (Macklin v. Intuit, Inc., No. 2019-1-CV-347208 (Santa Clara Sup. Ct. Cal. Nov. 1, 2019). Since those courts apparently had no occasion to assess whether users had received adequate notice of the Terms, the Court is not persuaded by their conclusion that the plaintiffs agreed to the arbitration provision.

Second, Intuit claims that Plaintiffs admitted their assent to the Terms in their Complaint, where they allege they were "required to accept [the TERMS] to use the services." Mot. at 8 (citing Compl. ¶ 108). The Second Circuit has rejected a virtually identical argument, reasoning that a similar allegation was "not obviously a concession in that it makes no reference to . . . knowledge." Meyer, 868 F.3d at 77. It also noted that (as in this case) the plaintiff had "volunteered to amend his complaint on the record to delete the allegation at issue" and had "attested that . . . he was not aware of the Terms of Service." Id.; see also Opp'n at 10.

Because Plaintiffs did not receive adequate notice of Intuit's Terms, they never agreed to the Terms, and cannot be bound by the arbitration provision contained therein. The Court therefore need not decide the scope of that arbitration provision, including whether it applies to questions of arbitrability or claims for equitable relief.

## IV.     CONCLUSION

For the foregoing reasons, the motion to compel arbitration is denied. Intuit indicated at oral argument that if its motion was denied, it would request a stay pending appeal. In the Ninth Circuit, a district court has discretion to decide whether to stay an action pending appeal from an

9

order refusing to compel arbitration. Britton v. Co-op Banking Grp., 916 F.2d 1405, 1412 (9th Cir. 1990).

Intuit's request is granted in part and denied in part. The action is stayed pending appeal, except for Plaintiffs' claims for injunctive and other equitable relief. It appears that this Court will ultimately have to consider Plaintiffs' claims for equitable relief even if Intuit prevails on appeal. The arbitration provision provides that "[n]otwithstanding anything to the contrary, any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction." Terms at 4. Even assuming, without deciding, that Intuit is correct that this exception only applies if "Plaintiffs . . . arbitrate first," then seek equitable relief in court, Plaintiffs indicated at oral argument that that is exactly what they would do if their claims are compelled to arbitration. Mot. at 14–17. Intuit concedes that in that event the Court may well be required to evaluate the appropriateness of injunctive or other equitable relief. Id. at 17 (acknowledging that Intuit's construction of the exception for equitable relief "could ultimately include some future relief from this Court"); see also Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1286 (9th Cir. 2009) (concluding that a near-identical provision "lets the parties pursue equitable remedies in courts in aid of the arbitration"). It would be senseless to delay resolution of issues which will eventually appear before the Court regardless of the outcome of any appeal.

This is particularly true given the practical realities of this litigation. Tax season is well under way, making Plaintiffs' request for injunctive relief time sensitive. It is therefore wiser to continue working to resolve those issues relevant to Plaintiffs' claims for injunctive and other equitable relief, even while the appeal is pending.

The Parties are directed to file a proposed briefing schedule for Plaintiffs' motion for class certification, partial summary adjudication, and final injunctive relief, by Tuesday, March 17, 2020, at 5:00 PM.

**IT IS SO ORDERED.**

Dated: March 12, 2020



CHARLES R. BREYER
United States District Judge