Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*sgrille@girardsharp.com*

Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Jillian R. Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
*siegel@stuevesiegel.com*
*moore@stuevesiegel.com*
*dent@stuevesiegel.com*

*Co-Lead Interim Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE INTUIT FREE FILE LITIGATION | Case No. 3:19-cv-02546-CRB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DISTRIBUTE NOTICE TO THE CLASS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 17, 2020<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................ viii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II.     STATEMENT OF ISSUE TO BE DECIDED ...................................................... 2

III.    FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

        A.      Plaintiffs' Allegations ............................................................................. 3

        B.      Procedural History ................................................................................... 4

        C.      The Parties' Settlement Negotiations ...................................................... 5

IV.     SUMMARY OF MATERIAL SETTLEMENT TERMS ...................................... 6

        A.      The Settlement Class ............................................................................... 6

        B.      Settlement Consideration ........................................................................ 6

                1.      Monetary Consideration ............................................................... 6

                2.      Non-monetary Consideration ........................................................ 7

        C.      Distribution of Settlement Fund ............................................................. 8

        D.      Class Notice ............................................................................................. 9

        E.      Opt-Outs and Objections ....................................................................... 10

        F.      Release of Claims .................................................................................. 11

        G.      Settlement Administrator ....................................................................... 11

V.      THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR,
        REASONABLE, AND ADEQUATE. ................................................................. 11

        A.      The Proposed Settlement Is the Product of Arm's Length Negotiations Among
                Experienced Counsel............................................................................... 12

        B.      The Proposed Settlement Provides for Equitable Distribution of the Fund. ............... 13

        C.      The Relief Under the Proposed Settlement Is Adequate............................................ 14

i

VI.   THE SETTLEMENT CLASS LIKELY WILL BE CERTIFIED. ..........................................17

    A.   The Requirements of Rule 23(a) Are Satisfied. .........................................................17

        1.   The Class Members Are Too Numerous to Be Joined. .................................17

        2.   There Are Common Questions of Law and Fact. ..........................................18

        3.   Plaintiffs' Claims Are Typical of the Class. .................................................18

        4.   Plaintiffs and Class Counsel Will Fairly and Adequately Protect the
           Interests of the Class. ....................................................................................18

    B.   The Requirements of Rule 23(b)(3) Are Satisfied. ....................................................19

        1.   Common Questions Predominate for Settlement Purposes. ..........................19

        2.   A Class Action Is a Superior Means of Resolving This Controversy. ...........20

VII.   THE CLASS NOTICE AND PLAN FOR DISSEMINATION ARE REASONABLE
      AND SHOULD BE APPROVED. ........................................................................................20

VIII.   CLASS MEMBERS SHOULD BE REQUIRED TO OPT OUT BEFORE PURSUING
      ARBITRATIONS AGAINST INTUIT. ...............................................................................21

IX.   CONCLUSION ...................................................................................................................25

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:19-cv-02546-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*
  731 F.3d 952 (9th Cir. 2013) ................................................................18

*Allen v. Bedolla*
  787 F.3d 1218 (9th Cir. 2015) ..............................................................11

*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) .............................................................................19

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017) ..............................................................7

*Burden v. SelectQuote Ins. Servs.*
  2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ....................................12

*Camacho v. Auto. Club of S. Calif.*
  142 Cal. App. 4th 1394 (2006) ............................................................15

*Carlough v. Amchem Prod., Inc.*
  10 F.3d 189 (3d Cir. 1993) ...................................................................24

*DeHoyos v. Allstate Corp.*
  240 F.R.D. 269 (W.D. Tex. 2007) ........................................................22

*Doe v. Deja Vu Servs., Inc.*
  2017 WL 530434 (E.D. Mich. Feb. 9, 2017) ................................22, 25

*Dohrmann v. Intuit, Inc.*
  823 F. App'x 482 (9th Cir. 2020) .........................................................15

*Ebarle v. Lifelock, Inc.*
  2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ........................................17

*Federal Ins. Co. v. Caldera Med., Inc.*
  2016 WL 5921245 (C.D. Cal. Jan. 25, 2016) ......................................13

*Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*
  No. 5:17-cv-00564-NC (N.D. Cal. Jan. 10, 2019) ...............................17

*Franco-Gonzales v. Napolitano*
  2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ...................................17

iii

*Free Range Content, Inc. v. Google, LLC*
   2019 U.S. Dist. LEXIS 47380 (N.D. Cal. Mar. 21, 2019) ...........................................................17

*Global Fitness Holdings, LLC*
   2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) .................................................................................8

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ..............................................................................................passim

*Harris v. Wells*
   764 F. Supp. 743 (D. Conn. 1991) ...........................................................................................24

*Hendricks v. StarKist Co.*
   2015 WL 4498083 (N.D. Cal. July 23, 2015) .........................................................................14

*In re Baldwin-United Corp.*
   770 F.2d 328 (2d Cir. 1985) ....................................................................................................24

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   2016 WL 3648478 (N.D. Cal. July 7, 2016) ....................................................................14, 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   2016 WL 6778406 (N.D. Cal. Nov. 16, 2016) .......................................................................13

*In re CenturyLink Sales Practices & Sec. Litig.*
   2020 WL 3512807 (D. Minn. June 29, 2020) ........................................................................24

*In re CenturyLink Sales Practices & Sec. Litig.*
   2020 WL 869980 (D. Minn. Feb. 21, 2020) ...........................................................................24

*In re ConAgra Foods, Inc.*
   90 F. Supp. 3d 919 (C.D. Cal. 2015) .....................................................................................18

*In re Glenn W. Turner Enters. Litig.*
   521 F.2d 775 (1975) ..........................................................................................................22, 23

*In re GSE Bonds Antitrust Litig.*
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ....................................................................................13

*In re Haier Freezer Consumer Litig.*
   2013 WL 2237890 (N.D. Cal. May 21, 2013) .......................................................................16

*In re Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) ..................................................................................................17

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:19-cv-02546-CRB

*In re Nat'l Football League Players' Concussion Injury Litig.*
  301 F.R.D. 191 (E.D. Pa. 2014)..................................................................21

*In re Oracle Sec. Litig.*
  1994 WL 502054 (N.D. Cal. June 16, 1994)...............................................13

*In re Painewebber Ltd. P'ships Litig.*
  1996 WL 374162 (S.D.N.Y. July 1, 1996)...................................................21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
  2019 WL 35998 (E.D.N.Y. Jan. 28, 2019)...................................................11

*In re School Asbestos Litig.*
  1991 WL 61156 (E.D. Pa. Apr. 16, 1991)
  *aff'd,* 950 F.2d 723 (3d Cir. 1991) .......................................................21, 22

*In re Sony PS3 "Other OS" Litig.*
  2017 WL 5598726 (N.D. Cal. Nov. 21, 2017) ............................................21

*In re Sulzer Hip Prothesis & Knee Prosthesis Liab. Litig.*
  2002 WL 32138298 (N.D. Ohio Mar. 14, 2002)..........................................24

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*
  2017 WL 672820 (N.D. Cal. Feb. 16, 2017).................................10, 11, 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*
  229 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................................................24

*James v. Bellotti*
  733 F.2d 989 (1st Cir. 1984).......................................................................24

*Jimenez v. Allstate Ins. Co.*
  765 F.3d 1161 (9th Cir. 2014) ....................................................................14

*K.H. v. Secretary of Dep't of Homeland Sec.*
  2018 WL 6606248 (N.D. Cal. Dec. 17, 2018)..............................................11

*Kamakahi v. Am. Soc'y for Reprod. Med.*
  305 F.R.D. 164 (N.D. Cal. 2015).................................................................14

*Kulesa v. PC Cleaner, Inc.*
  2014 WL 12581769 (C.D. Cal. Feb. 10, 2014) ...........................................13

*Larson v. AT&T Mobility LLC*
  2009 WL 10689759 (D.N.J. Jan. 16, 2009)...........................................21, 22

v

*Lilly v. Jamba Juice Co.*
    308 F.R.D. 231 (N.D. Cal. 2014).............................................................18

*Makekau v. State*
    943 F.3d 1200 (9th Cir. 2019)
    *cert. denied,* 140 S. Ct. 2740 (2020) ...................................................25

*Martin v. Monsanto Co.*
    2017 WL 1115167 (C.D. Cal. Mar. 24, 2017).......................................20

*Mendez v. C-Two Grp., Inc.*
    2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) .......................................12

*Mendoza v. Hyundai Motor Co., Ltd.*
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .........................................14

*Mergens v. Sloan Valve Co.*
    2017 WL 9486153 (C.D. Cal. Sept. 18, 2017) ......................................18

*Mullins v. Premier Nutrition Corp.*
    2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) .......................................20

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004)..........................................................12

*Pulaski & Middleman, LLC v. Google, Inc.*
    802 F.3d 979 (9th Cir. 2015) ...............................................................20

*Ries v. Arizona Bevs. USA LLC*
    287 F.R.D. 523 (N.D. Cal. 2012)..........................................................18

*Roes, 1-2 v. SFBSC Mgmt., LLC*
    944 F.3d 1035 (9th Cir. 2019) .............................................................20

*S.E.C. v. Capital Consultants, LLC*
    397 F.3d 733 (9th Cir. 2005) ...............................................................13

*Spann v. J.C. Penney Corp.*
    314 F.R.D. 312 (C.D. Cal. 2016)..........................................................15

*Standard Microsystems Corp. v. Texas Instruments Inc.*
    916 F.2d 58 (2d Cir. 1990) ..................................................................21

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ...............................................................18

vi

*Tyson Foods, Inc. v. Bouaphakeo*
  136 S. Ct. 1036 (2016) ...................................................................14, 19

*Wahl v. Yahoo! INC.*
  2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) ..................................21

*Wolin v. Jaguar Land Rover North Am., LLC*
  617 F.3d 1168 (9th Cir. 2010) ..........................................................20

*Wright v. Linkus Enters., Inc.*
  259 F.R.D. 468 (E.D. Cal. 2009) ................................................21, 22

**Statutes**

28 U.S.C. § 1404 ...................................................................................3

28 U.S.C. § 1651 .................................................................................21

28 U.S.C. § 1715 ............................................................................ viii, 9

**Other Authorities**

Fed. R. Civ. P. 23(b)(3) advisory committee's note (1966).....................14

Fed. R. Civ. P. 23(e) advisory committee's note (2018) ...................12, 17

Federal Trade Commission, *com Disclosures: How to Make Effective Disclosures in Digital Advertising*................................................................................7

**Rules**

Fed. R. Civ. P. 23............................................................................*passim*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:19-cv-02546-CRB

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 10, 2020 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Charles R. Breyer of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Andrew Dohrmann, Joseph Brougher, and Monica Chandler will and hereby do move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the proposed Preliminary Approval Order, and request that the Court set the following schedule for settlement proceedings:

| Event | Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of this motion |
| Settlement Website activated | Within 7 days after preliminary approval |
| Notice campaign to begin | Within 14 days after preliminary approval |
| Notice to be substantially completed | 45 days after preliminary approval |
| Plaintiffs to move for final approval of the settlement | At least 21 days before the deadline for submitting objections |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | At least 21 days before the deadline for submitting objections |
| Deadline for submission of objections and requests for exclusion | 90 days after preliminary approval |
| Deadline to file a claim | 135 days after preliminary approval |
| Plaintiffs to respond to any objections | 100 days after preliminary approval |
| Final Approval Hearing | At least 120 days after preliminary approval |
| Date on which settlement funds will be distributed to claimants | Within 60 days after the Effective Date |

The Motion is based on this Notice of Motion, the memorandum of points and authorities, the Joint Declaration of Daniel C. Girard and Norman E. Siegel ("Joint Decl."), the Declaration of Hon. Edward A. Infante (Ret.) ("Infante Decl."), the Declaration of Gina Intrepido-Bowden ("JND Decl."), the record in this action, the argument of counsel, and any other matters the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek preliminary approval of a $40,000,000 settlement with Defendant Intuit Inc. to compensate taxpayers who were eligible to file a federal return for free under the IRS Free File Program but were charged a fee by Intuit on its TurboTax online website.  All class members are eligible to participate by completing a simple claim form, which requires only that claimants attest that they understood they could file for free under the Free File Program but nevertheless paid a fee to use TurboTax.  Class Counsel estimate the recoveries provided, considering customary claim rates, will return a substantial percentage of the fees paid by participating class members when they first filed their taxes using TurboTax.  No portion of the settlement consideration will revert to Intuit.  The settlement also requires Intuit to conform its marketing practices related to its Free Edition product to the FTC's online marketing guidelines and to disclose the Free File Program—along with a taxpayer's qualifications to file for free—on the TurboTax website.  The proposed notice to the class prominently discloses that people with incomes of $69,000 or less can file for free and provides a link to the IRS Free File portal.  The settlement is a fair, reasonable and adequate resolution of sharply disputed claims and should be preliminarily approved to allow notice to issue to the class.

After this Court denied Intuit's motion to compel arbitration, the Ninth Circuit reversed in a split decision and denied Plaintiffs' petition for rehearing.  On remand, Plaintiff Dohrmann lodged with the AAA an arbitration petition seeking among other relief a comprehensive injunction against the Intuit "free to fee" practices at issue in this litigation.  Concurrently, the parties continued settlement discussions that began in January 2020 and continued on an ongoing basis.  These negotiations included two mediations with Hon. Edward A. Infante (Ret.), one on June 22 and most recently on November 11, 2020, resulting in a final agreement.  The settlement is the product of a deliberate, considered settlement process, carried on over almost a year, with the benefit of this Court's rulings and oversight, lengthy discussions, and the sustained efforts of a highly experienced mediator.

The parties reached their agreement with a thorough understanding of the evidence, claims, and defenses, drawn from Class Counsel's review of over 100,000 pages of internal Intuit documents,

interviews with dozens of consumers, consultation with independent experts and industry professionals, Class Counsel's preparation of a motion for final injunctive relief and class certification, input from an experienced mediator, and ongoing exchanges of factual and legal arguments with defense counsel.  The settlement before the Court avoids the significant risks of continuing prosecution, complies with this District's Procedural Guidance for Class Action Settlements, and meets all the criteria for preliminary approval under Rule 23.  To ensure the preservation of the status quo and an orderly opt-out process, the parties request that the Court issue an injunction under the All Writs Act preventing class members from pursuing independent proceedings, including arbitrations, until they have validly excluded themselves from the class, at which time the injunction as against them will be lifted and they will be free to resume the pursuit of those claims.  The circumstances calling for this exercise of the Court's authority and the supporting authorities are discussed in Section VIII below.

Plaintiffs respectfully request the Court enter the proposed order to authorize notice to the class and other relief and to schedule further settlement proceedings.

## II.      STATEMENT OF ISSUE TO BE DECIDED

Should the Court, pursuant to Fed. R. Civ. P. 23(e)(1)(B), preliminarily approve the parties' settlement and order notice to the proposed class?

## III.     FACTUAL AND PROCEDURAL BACKGROUND

The Joint Declaration of Daniel C. Girard and Norman E. Siegel in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement ("Joint Decl.") details the factual and procedural history of this case, the claims, counsel's investigation and settlement negotiations, the risks and uncertainties presented in this litigation, and other factors showing the Settlement is fair, reasonable, and adequate.[1]  As described in the Joint Declaration and below, the Settlement before the Court is the product of a considered negotiation process begun in January 2020, informed by briefing on two key motions, exchanges of factual and legal arguments with defense counsel, review of over 100,000 documents, and Judge Infante's able assistance as mediator.

---

[1] Unless otherwise noted, capitalized terms have the meaning as defined in the Settlement Agreement ("SA"), filed herewith.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.      Plaintiffs' Allegations

Plaintiffs filed related actions against Intuit beginning in May 2019.  On June 14, 2019, the Court ordered six related actions[2] consolidated into this litigation.  Dkt. No. 42.  On August 20, 2019, the Court appointed the undersigned as interim co-lead class counsel.  Dkt. No. 72.  On September 13, 2019, Plaintiffs filed their Consolidated Class Action Complaint alleging that Intuit engaged in unfair and deceptive practices as part of a "free-to-fee" business strategy.  Dkt. No. 80 ("Compl.").  An overview of these complaint allegations is provided below.

As a participant in the IRS's Free File Program, Intuit agreed to provide free online tax preparation and filing services to lower-income individuals and military service members.  Compl. ¶¶ 1-5.  In the 2018 tax year, Intuit agreed to provide free e-filing to taxpayers who (1) have adjusted gross incomes of $34,000 or less, (2) are eligible for the Earned Income Tax Credit, or (3) are active military members with adjusted gross incomes of $66,000 or less.  *Id*. ¶¶ 51-52.  Intuit's Free File online tax-return preparation software—what Intuit first called "TurboTax Freedom Edition"— allowed eligible taxpayers to prepare and e-file their federal and state tax returns for free.  *Id*. ¶ 59.  Freedom Edition gave users free access to more than 100 tax forms, allowing eligible taxpayers to file returns electronically for no charge if they met one of the three criteria stated above.  *Id*. ¶ 60.

Intuit advertised free tax-return preparation to draw taxpayers to Intuit's fee-based preparation software, the similarly named TurboTax "Free Edition."  *Id*. ¶ 59.  Intuit paid Google to promote its Free Edition site so that common web searches relating to free tax preparation services would bring up the Free Edition.  *Id*. ¶ 76.  Intuit at the same time engaged in "de-indexing," inserting software code into the Freedom Edition website that suppressed it from web search results.  *Id*. ¶¶ 73-74.

Intuit's "Free" marketing materials, including the links generated by its Google AdWords

---

[2] *Sinohui v. Intuit Inc.*, No. 19-cv-02546-CRB; *Dohrmann v. Intuit Inc.*, No. 19-cv-02566-CRB; *Allwein v. Intuit, Inc.*, No. 19-02567-CRB, *Nichols v. Intuit Inc.*, No. 19-cv-02666-CRB; *Kehiaian v. Intuit Inc.*, No. 19-cv-02742-CRB; and *Leon v. Intuit Inc.*, No. 19-cv-02878-CRB.  The Court later deemed four additional lawsuits related and part of the consolidated action: *Cook v. Intuit, Inc.*, No. 19-cv-03460-KAW; *Ostrovsky v. Intuit, Inc.*, No. 19-cv-05823-NC; *McConnaughey v. Intuit Inc.*, No. 5:19-cv-03745-SVK; and *Williams v. Intuit, Inc.*, No. 20-cv-01908-JSC.  Dkt. Nos. 51, 60, 91, 149.  The latter action was transferred from the Eastern District of New York pursuant to stipulation after Plaintiffs on February 10, 2020 sought to intervene for purposes of moving to transfer under 28 U.S.C. § 1404.  *See Williams v. Intuit Inc.*, No. 1:20-cv-00320-DLI-RER (E.D.N.Y.), ECF Nos. 10, 20.

3

campaign, led to the TurboTax Free Edition website. *Id*. ¶ 76. Yet that site was not free for many taxpayers. *Id*. ¶ 61. Plaintiffs, while eligible to file for free, paid Intuit to file a return for tax year 2018. *Id*. ¶¶ 16-45. TurboTax Free Edition required customers to pay to file most tax returns, including returns that would otherwise be eligible for free filing through the Freedom Edition. *Id*. ¶ 62.

Plaintiffs contend Intuit did not adequately qualify its widespread offers of free tax preparation and filing with the fact that Free Edition is free only for a limited set of taxpayers. *Id*. ¶ 84. Instead, Intuit waited to assess a fee until the last minute, after taxpayers had answered all the questions necessary to prepare the return. *Id*. ¶ 94. Only as they were about to submit the return did Intuit disclose that they would be charged. *Id*. ¶¶ 63, 94. And Intuit did not adequately disclose that they could file the same return for free through its Freedom Edition website. *Id*. ¶¶ 62-64.

Alleging these practices are unfair, unlawful and deceptive, Plaintiffs brought claims under California's Unfair Competition Law ("UCL") and for unjust enrichment. *Id*. ¶¶ 120-53. Plaintiffs sought an injunction and restitution for a class of "[a]ll United States citizens and residents who during the applicable limitations period were eligible to file a federal tax return pursuant to the IRS Free File Program on Intuit's TurboTax Freedom Edition website but paid a fee to TurboTax to file such return." *Id*. ¶ 99.

**B.      Procedural History**

The parties met in person for the Rule 26(f) conference on September 25, 2019. Joint Decl., ¶ 4. At the case management conference of October 4, 2019, the Court ordered most discovery[3] stayed in light of Intuit's impending motion to compel arbitration, filed October 28, 2019. Dkt. Nos. 92, 97. Plaintiffs subsequently took discovery relating to the formation of an arbitration agreement, including by deposing Intuit's declarant Ergang Sun. Joint Decl., ¶ 5. Plaintiffs also retained an expert on "dark patterns," Harry Brignull, to analyze and opine on Intuit's online contract formation process. *Id*. In November 2019 Plaintiffs moved to compel data showing the rate at which users clicked through to Intuit's agreement. Dkt. No. 98. Magistrate Judge Kim granted the motion on December 6. Dkt. No.

---

[3] The Court ordered Intuit to serve Plaintiffs with copies of documents that Intuit produced to the Los Angeles City Attorney in *The People of the State of California v. Intuit, Inc.*, No. 19ST-cv-15644 (Cal. Super. Ct. filed May 6, 2019). Class Counsel reviewed and analyzed Intuit's production of these 21,036 documents, totaling over 100,000 pages. Joint Decl., ¶ 4.

4

106.  Plaintiffs opposed Intuit's motion to compel arbitration on January 3, 2020 (Dkt. Nos. 111-13), and Intuit replied on January 17 (Dkt. Nos. 119-21).

On January 10, 2020, as authorized by the Court (*see* 10/4/19 Hr'g Tr. at 19-20), Plaintiffs moved for class certification under Rule 23(b)(2), partial summary adjudication of their UCL unfairness claim, and entry of final injunctive relief against Intuit.  Dkt. No. 116.  Rather than seek damages class certification under Rule 23(b)(3), Plaintiffs proposed "to certify an injunctive-relief class and enter an injunction before turning to damages" for individual class members.  *Id*. at 12.  On January 17, the Court entered the parties' stipulation to vacate the deadlines connected with Plaintiffs' motion until after the Court ruled on Intuit's motion to compel arbitration.  Dkt. No. 118.

The Court heard Intuit's motion to compel arbitration on February 14, 2020 (Dkt. No. 129) and denied the motion, as well as Intuit's request to stay the case, on March 12 (Dkt. No. 141).  Intuit timely appealed.  Dkt. No. 142.  On March 25, 2020, the Ninth Circuit granted Intuit's motion for an emergency stay and *sua sponte* expedited the interlocutory appeal (No. 20-15466).  Dkt. No. 148.  The Ninth Circuit heard argument on July 16, and on August 11 issued a memorandum disposition reversing the order denying Intuit's arbitration motion, with one judge dissenting.  Dkt. No. 152.  Plaintiffs petitioned unsuccessfully for panel rehearing or rehearing en banc.  Dkt. No. 153.

The Ninth Circuit issued its mandate on October 13, 2020.  Dkt. No. 155.  On October 14, this Court entered the parties' stipulation and set a status conference for November 13.  Dkt. No. 156.  On October 29, Plaintiff Dohrmann filed with the AAA a demand for arbitration against Intuit bringing the same claims and seeking substantially the same relief as in this Court.  Joint Decl., ¶ 9.

## C.    The Parties' Settlement Negotiations

The parties began discussing the possibility of settlement at the initial Rule 26(f) conference, with the parties agreeing discussions would need to follow a period of factual development.  Joint Decl., ¶ 10.  The parties conferred again in January 2020, and those discussions intensified after the Court ruled on Intuit's arbitration motion.  *Id*., ¶ 11.  The parties began negotiating a term sheet but held different views as to the value of the claims, and agreed to retain Judge Infante, the experienced JAMS mediator, to assist in bridging the divide.  These discussions continued before and after the Ninth Circuit stayed further proceedings in this Court and expedited Intuit's appeal.  *Id*.  The parties

held a full-day mediation session with Judge Infante on June 22.  *Id*., ¶ 12.  To facilitate negotiations, the parties also exchanged drafts of a settlement term sheet setting forth the material terms of Plaintiffs' proposed resolution.  *Id*.  Although the June mediation was productive, the parties were unable to reach a final agreement.  *Id*.; Infante Decl., ¶ 5.

The parties continued discussing settlement prospects through the summer of 2020, during the pendency of Intuit's appeal.  Negotiations continued after the Ninth Circuit issued its decision, and their respective offers of settlement narrowed to a range that brought an agreement within reach.  Joint Decl., ¶ 13.  The parties began jointly drafting a settlement agreement and, on November 11, appeared before Judge Infante for a second mediation at which they were able to reach an agreement.  Joint Decl., ¶ 14; Infante Decl., ¶¶ 6, 7.  The parties executed their Agreement on November 12.

## IV.     SUMMARY OF MATERIAL SETTLEMENT TERMS

### A.     The Settlement Class

The Settlement Class, estimated to include 19 million individuals, consists of all persons within the United States who, from January 1, 2015 to November 20, 2020, paid to use TurboTax online in a year in which they were eligible to file for free with the TurboTax Free File Program (known from 2015-2018 as "TurboTax Freedom Edition," known in 2019 as "TurboTax Free File Program," and known in 2020 as "IRS Free File Program Delivered by TurboTax").  Joint Decl., ¶ 15; SA §§ I(ee), I(jj).  Consistent with the Northern District's Guidance, the Settlement Class is substantially similar to Plaintiffs' proposed litigation class.  Compl. ¶ 99.  The only differences are clarifying in nature and designed to avoid including taxpayers who could not claim injury and artificially excluding taxpayers who paid Intuit a fee when they were eligible to file for free: (1) the expansion from citizens and residents to persons; (2) the requirement that the taxpayer was eligible to file for free at the time he or she was charged; and (3) the specification of the limitations period to 2015 forward.  Joint Decl., ¶ 15.

### B.     Settlement Consideration

#### 1.     Monetary Consideration

Consistent with this District's preference for all-cash, non-reversionary settlements, the parties negotiated payment of a fixed sum of $40,000,000.00 in exchange for a release of all claims that were or could have been asserted in this case.  SA §§ I(q), I(y), III(d), X; Joint Decl., ¶ 16.  Notice and

6

administrative expenses, as well as attorneys' fees, expense reimbursements and service awards approved by the Court, will be deducted from the settlement amount.  SA §§ I(r), IV(a)-(d), VI(b)(ii)-(iv), VI(f).  Class Counsel will seek the "benchmark" 25% of the fund in attorneys' fees and reimbursement of litigation expenses, and a $10,000 service award to each of the class representatives.  *Id*. §§ VI(a), (c); Joint Decl., ¶ 17.[4]  The balance will be applied to pay claims of class members; no money will revert to Intuit.  SA § VI(b)(ii)-(iv).  Claimants will need to sign a simple attestation that they paid a fee to Intuit when they expected to file for free.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) (discussing use of affidavits in class action claims processes).  This statement imposes no particular burden on class members, conforms to Plaintiffs' core theory of liability, and is far less invasive than the showing that would be required in a formal "causation and damages" prove-up, were the Court to certify the class on a bifurcated basis, with a liability phase and an individuated causation and damage phase.  Joint Decl., ¶ 17; *see infra* Section V.C.

### 2.    Non-monetary Consideration

In addition to the cash provided under the parties' Settlement, Intuit agrees to modify certain of its business practices.  As long as it participates in the IRS Free File Program, for up to three years, Intuit will implement and maintain the following business practice commitments (provided they are permitted under the IRS' rules):

1.    When marketing TurboTax Free Edition, Intuit will adhere, to the fullest extent practicable, to the Federal Trade Commission's guidelines for online marketing set forth in *.com Disclosures: How to Make Effective Disclosures in Digital Advertising*, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.[5]

2.    Intuit will disclose the existence of the IRS Free File Program and qualifications to file for free under the IRS Free File Program on one or more webpages maintained as part of, and accessible from the homepage of, the intuit.turbotax.com domain, and provide information on how to participate in the IRS Free File Program, and to maintain a publicly available webpage on the same domain setting forth the forms and schedules not covered in TurboTax Free Edition.

---

[4] In accordance with Plaintiffs' Timekeeping Protocol (Dkt. No. 75-1, ¶ 24), Class Counsel have filed information regarding their lodestar with the Court on a quarterly basis.  Joint Decl., ¶ 31.

[5] These guidelines for digital advertising incorporate the FTC's "Guide Concerning Use of the Word 'Free' and Similar Representations (16 C.F.R. Part 251)."  *See* FTC, *.com Disclosures* at 3 n.6.

3.   Intuit will create a minimum of three blog posts each tax filing season (January 15-April 15) on its commercial website informing consumers about the IRS Free File Program and linking to it.

4.   Until a customer files their taxes or voluntarily unsubscribes from receiving such e-mails, Intuit will send a minimum of six e-mail reminders to returning IRS Free File Program Delivered by TurboTax customers.

5.   Intuit is prohibited from engaging in any practice that would cause the Landing Page for IRS Free File Program Delivered by TurboTax (https://freefile.intuit.com) to be "de-indexed" from organic internet search results.

SA § III(a)(i)-(iv).  Further, the proposed Notice to the Settlement Class advises Settlement Class Members that they may be eligible to use the IRS's Free File Program to file their taxes for free in 2021.  *Id*., Ex. A at Ex. 1.  Taken together, these reforms—and the increased awareness attributable to sending the Notice to 19 million Intuit customers—will result in a significantly more transparent online marketplace for tax services.  Joint Decl., ¶ 19.[6]

## C.   Distribution of Settlement Fund

Settlement Class Members who submit a timely and valid claim will receive a *pro rata* cash award from the Net Monetary Consideration.  *Id*. § VI(b)(ii).  Class Counsel anticipate between 1% and 10% of class members will submit claims.  Joint Decl., ¶ 21; *see Gascho v. Global Fitness Holdings, LLC*, No. 11-436, 2014 WL 1350509, at *30 (S.D. Ohio Apr. 4, 2014) ("[R]esponse rates in class actions generally range from one to 12 percent").  The Settlement Administrator will pay valid and timely claims by e-mail or paper check, and will otherwise attempt to distribute all of the Net Monetary Consideration that is distributable to Settlement Class Members eligible for a Cash Award.  SA § VI(b)(iii).  Any unclaimed distributions to such Settlement Class Members will be paid in additional distribution(s) to those who accepted or elected to receive a *pro rata* payment (*e.g.*, they cashed their checks or opted for electronic payment).  *Id*.  Redistributions of available funds will continue, at the Settlement Administrator's discretion in consultation with Class Counsel, until such

---

[6] Before pursuing any remedy for a failure to comply with any of these measures, Class Counsel will notify Intuit of the alleged failure to comply, including the specific term(s) at issue and a reasonably detailed description of the conduct Class Counsel believe to be out of compliance.  Intuit will then have 45 days to cure the alleged failure (to the extent practicable and technologically feasible), and during the 45-day period, the parties will also confer regarding the matter.  SA § III(c).

time as the Settlement Administrator believes further distributions is not economically feasible. *Id.*

As to Settlement Class Members who opted to receive payment by a mailed check, the Settlement

Administrator will not be required to make a *pro rata* distribution in an amount less than $10. *Id.*

Any settlement funds that remain after these distributions, payment of Notice and Administration

Expenses, and any taxes, attorneys' fees and costs, and service awards, will be disposed of as

determined by the Court. *Id.* § VI(b)(iv).

### D.   Class Notice

To effectuate notice, Intuit will provide the Settlement Administrator with class members'

names, addresses, and e-mail addresses (information Intuit has in its records). SA § VI(c); Joint Decl.,

¶ 22. The Settlement Administrator will send notice of the Settlement by a combination of e-mailing

the Notice to these verified e-mail addresses provided by Intuit and/or mailing of the Notice via first-

class mail, postage prepaid, to each Settlement Class Member who requests a mailed copy or whose e-

mail address is no longer valid or otherwise results in a bounce-back message. SA § VI(d).[7] The

Settlement Administrator will use best practices to identify current email and/or mailing addresses of

Settlement Class Members, and will attempt to locate alternate addresses for returned mail and e-mails

and promptly re-mail the Notice. *Id.* In addition, the parties will carry out a Digital Publication

Notice program developed in consultation with the Settlement Administrator. *Id.* §§ I(h), VI(d).

The Settlement Administrator will also establish a case-specific Settlement Website,

www.turbotaxclasssettlement.com, where the Notice will be available for download and where a

potential Settlement Class Member may also request a hard copy of the Notice. *Id.* §§ VI(d)-(e). The

Settlement Website will include a portal through which a Settlement Class Member can determine if

he or she is eligible to receive a Cash Award. *Id.* § VI(e). The website will post the Settlement

Agreement, the Notice, and other important case documents and will offer a Spanish-language

translation option. *Id.* The Settlement Administrator also will establish a toll-free number, with

Spanish-language telephone support, for Settlement Class Members to call with any questions. *Id.* §

VI(b).

---

[7] The Settlement Administrator will assist Intuit's counsel in preparing the CAFA notice and serving it on governmental authorities in accordance with 28 U.S.C. § 1715. SA §§ I(b), VI(g).

### E.    Opt-Outs and Objections

Settlement Class Members can choose to opt out of the Settlement Class or remain in the Settlement Class and object to the Settlement.  SA § VII; Joint Decl., ¶ 24.  The deadline specified in the Preliminary Approval Order for opting out or objecting is 90 days after entry of that Order.

To opt out, a Settlement Class Member will need to send a written request to the Settlement Administrator providing their name, address, telephone number, e-mail address, and signature; their unique identification number assigned by the Settlement Administrator; a statement that they are a member of the Settlement Class and wish to be excluded; and, if the Settlement Class Member has already filed an arbitration or lawsuit against Intuit, the relevant case name and case number.  *Id*. § VII(a)(i); *see In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 672820, at *3 (N.D. Cal. Feb. 16, 2017) (approving opt-out procedure requiring that exclusion requests be mailed, signed, and supported by VIN information verifying class membership).  Settlement Class Members who wish to opt out must do so individually.  *Id*. § VII(a)(iii); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("There is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights en masse . . . by attempting to effect a group-wide exclusion . . . . Indeed, to do so would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members.").  Intuit will have the right to terminate the Settlement if the number of valid and timely opt-outs exceeds an amount agreed upon between Class Counsel and Intuit in a confidential side letter, which will be shared *in camera* with the Court upon request, or in the event the Court does not enjoin the commencement of any additional actions or proceedings.  SA §§ V(a)(ii), XI(b); *see infra* Section VIII.

To object, a Settlement Class Member must file with the Court a written objection providing their name, address, telephone number, e-mail address, and signature; an explanation of the basis upon which the objector claims to be a Settlement Class Member; whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; the reason(s) for the objection, accompanied by any legal or factual support; the name of any counsel for the objector, including any former or current counsel who may seek compensation for any reason related to the objection; the case

name and number of any other class actions in which the objector or their counsel have objected in the last four years; and whether the objector intends to appear at the Final Approval Hearing on their own behalf or through counsel. SA § VII(d); *cf.* Fed. R. Civ. P. 23(e)(5).

### F.    Release of Claims

The Settlement release applies to claims arising out of the same factual predicate that were or could have been asserted in this action. SA §§ I(y), X. The release tracks the claims and proposed class in the Consolidated Complaint, Dkt. No. 80. *See, e.g.*, *K.H. v. Secretary of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 6606248, at *4 (N.D. Cal. Dec. 17, 2018); *In re Volkswagen "Clean Diesel"*, 2017 WL 672820, at *5 (approving of settlement release that "cover[ed] only those claims that are based on the identical factual predicate as that underlying the claims").

### G.    Settlement Administrator

Class Counsel retained JND Legal Administration as the settlement administrator after sending requests for proposal to five leading class action claims administrators. Joint Decl., ¶ 29. After reviewing all the proposals, Class Counsel selected JND as the best bid. *Id.* The costs of settlement notice and administration will be paid from the settlement fund and are not expected to exceed $1,750,000. SA § 6(b); Joint Decl., ¶ 29; JND Decl., ¶ 38. As noted above, in addition to managing the notice program and receiving and processing claims, JND will maintain a dedicated settlement website (www.turbotaxclasssettlement.com) containing links to the Notice, Settlement Agreement, and other important documents. SA §§ VI(d)-(e); JND Decl., ¶ 32.

## V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, REASONABLE, AND ADEQUATE.

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Volkswagen "Clean Diesel"*, 2017 WL 672820, at *5 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). Under Rule 23(e), "in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019)

1  (emphasis in original).  All of the requirements for preliminary approval are met in this case.

2        For purposes of determining whether a proposed settlement should be approved, Rule 23(e)(2)

3  directs the Court to consider whether "the class representatives and class counsel have adequately

4  represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class

5  is adequate"; and "the proposal treats class members equitably relative to each other."  These factors

6  do not displace the "lists of factors" courts have traditionally applied to assess proposed class

7  settlements, but instead "focus the court and the lawyers on the core concerns of procedure and

8  substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2)

9  advisory committee's note (2018).  At preliminary approval in the Ninth Circuit, courts consider

10  whether "[1] the proposed settlement appears to be the product of serious, informed, non-collusive

11  negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to

12  class representatives or segments of the class, and [4] falls within the range of possible approval[.]"

13  *Burden v. SelectQuote Ins. Servs.,* No. C 10-05966-SBA, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21,

14  2013) (citations omitted).  Application of these factors in this case demonstrates that the Settlement is

15  fair, reasonable, and adequate and in the best interests of the class.

16        **A.    The Proposed Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel.**

17  
18        Under Rule 23(e)(2), the Court considers whether the class representatives and class counsel

19  adequately represented the class and whether the settlement proposal was negotiated at arm's length.

20  "An initial presumption of fairness is usually involved if the settlement is recommended by class

21  counsel after arm's-length bargaining."  *Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2017

22  WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017) (citation omitted).  This presumption should apply here

23  given that experienced counsel recommend the settlement and it followed two mediations with Judge

24  Infante.  *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018) (advising that "the

25  involvement of a neutral . . . mediator or facilitator in those negotiations may bear on whether they

26  were conducted in a manner that would protect and further the class interests."); *Nat'l Rural Telecoms.*

27  *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the

28  recommendation of counsel, who are most closely acquainted with the facts") (citation omitted);

*Federal Ins. Co. v. Caldera Med., Inc.*, No. 2:15-cv-00393-SVW, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive") (citation omitted).

The parties in this case reached their settlement after many months of negotiation and after Plaintiffs well understood the strengths and weaknesses of their claims. Settlement negotiations were contested and included presentations from Intuit's litigation counsel and its regulatory counsel at Wilmer Hale concerning, among other things, the mechanics of preparing a return on TurboTax, the availability of Free File-related disclosures on the Free Edition site, and the relative percentage of the class that purchased premium services or paid a TurboTax fee in multiple years. Joint Decl., ¶ 34; Infante Decl., ¶ 5. Plaintiffs also obtained and reviewed over 100,000 pages of documents that Intuit produced. Joint Decl., ¶ 34. Plaintiffs moved for class certification and injunctive relief in January 2020, supporting the motion with 756 pages of exhibits. *See* Dkt. No. 116-2. Class Counsel's work enabled them to "enter[] the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions and which are necessary for a robust negotiation." *Kulesa v. PC Cleaner, Inc.*, No. CV 12-0725 FMO, 2014 WL 12581769, at *10 (C.D. Cal. Feb. 10, 2014); *see* Infante Decl., ¶¶ 4-7. Accordingly, the first factor is satisfied.

**B.      The Proposed Settlement Provides for Equitable Distribution of the Fund.**

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 6778406, at *3 (N.D. Cal. Nov. 16, 2016) (quoting *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994)). The Settlement readily meets this standard.

Each Settlement Class Member is invited to submit a Claim Form, and the Settlement equitably allocates the fund *pro rata* to valid claimants. SA § VI(b)(ii); *see, e.g.*, *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 747 (9th Cir. 2005) (finding a *pro rata* allocation plan an equitable means of distributing assets); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 698-99 (S.D.N.Y. 2019) (holding that "claimants will be treated equitably by receiving a *pro rata* share of the recovery"). The Settlement's allocation provisions reasonably do not allow larger recoveries for eligible free-filers who

1  paid a TurboTax fee in more than one year, since those class members arguably should have known

2  they would be charged in the subsequent year(s).  Joint Decl., ¶ 35.  Thus, the Settlement's *pro rata*

3  method of allocation ensures the class members will be treated equitably relative to each other.

4  **C.      The Relief Under the Proposed Settlement Is Adequate.**

5        In assessing the adequacy of the relief for the class, the Court considers "the costs, risks, and

6  delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class,

7  including the method of processing class-member claims"; "the terms of any proposed award of

8  attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule

9  23(e)(3)."[8]  Fed. R. Civ. P. 23(e)(2)(C).  In general, "[a]pproval of a class settlement is appropriate

10  when 'there are significant barriers plaintiffs must overcome in making their case,'" *Mendoza v.*

11  *Hyundai Motor Co., Ltd.*, No. 15-CV-01685-BLF, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017)

12  (citation omitted), and it is "well-settled" that a class settlement "may be acceptable even though it

13  amounts to only a fraction of the potential recovery that might be available to the class members at

14  trial."  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *6

15  (N.D. Cal. July 7, 2016) (internal quotation marks and citation omitted); *see, e.g.*, *Linney*, 151 F.3d at

16  1242 (settlement amounting to a fraction of the potential total recovery was reasonable given the

17  significant risks of trial); *Hendricks v. StarKist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *7

18  (N.D. Cal. July 23, 2015) (settlement representing "only a single-digit percentage of the maximum

19  potential exposure" was reasonable).

20        The Settlement approximates the individual prove-up process that would have followed a

21  successful class trial—but with simplified proof requirements and immediate relief.  *See Kamakahi v.*

22  *Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (noting the Ninth Circuit has

23  approved of issue class certification under Rule 23(c)(4) when it will serve to "accurately and

24  efficiently resolve the question of liability, while leaving the potentially difficult issue of

25  individualized damage assessments for a later day.") (citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d

26  1161, 1167 (9th Cir. 2014); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); Fed. R.

27
28  _____

[8] Pursuant to Rule 23(e)(3), there is no agreement that requires identification, other than the parties' agreement that Intuit will have the right to terminate the Settlement if the number of valid and timely opt-outs exceeds the number confidentially agreed upon.  Joint Decl., ¶ 40.

14

Civ. P. 23(b)(3) advisory committee's note (1966).  Class Counsel believe the $40 million settlement is a favorable result in comparison to what class members could realistically recover through trial or arbitration.  In reaching their conclusion Class Counsel considered Intuit's arguments in opposition to both liability and class certification.  *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case.").

Continued litigation would have required Plaintiffs to overcome a robust set of defenses.  *See, e.g.*, *Kacsuta v. Lenovo (U.S.) Inc.*, No. SACV 13-00316-CJC (RNBx), 2014 WL 12585783, at *4 (C.D. Cal. Sept. 15, 2014) (risks arising from defenses favored settlement approval).  Intuit argues that it was under no obligation to promote its Free File Program offerings, either as a matter of law or under the terms of its agreement with the IRS.  Joint Decl., ¶ 36.  And Intuit would have argued that its use of "Free" was not misleading—simple returns were free, and more than 11 million people used TurboTax to file for free in tax year 2018 alone.  *Id.*  For U.S. military personnel who used TurboTax, 85 percent of those in enlisted ranks filed for free, according to Intuit's records.  *Id.*  Intuit, moreover, qualified its "free" representations on TurboTax.com with a nearby, blue link to "Simple tax returns" that would take a user to a web page specifying the types of returns that can be filed for free.  *Id.*, ¶ 37. The Ninth Circuit panel in this case had no difficulty concluding similarly positioned language was sufficient to bind a tax filer to Intuit's arbitration clause.  *See Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020).  In further rebuttal to Plaintiffs' claims of deception, Intuit would have presented evidence that its commercial website had several links to Freedom Edition and multiple pages that described the Freedom Edition product.  Joint Decl., ¶ 37.  And every class member had the ability to avoid paying a fee simply by not completing a paid return on TurboTax and instead exploring other available tax-filing options, through IRS.gov or otherwise.  *See Camacho v. Auto. Club of S. Calif.*, 142 Cal. App. 4th 1394, 1406 (2006) (holding that in a UCL consumer case, the test for unfairness looks in part to whether injury was "reasonably avoidable," and concluding there was no unfairness because "even if there is some theory under which [plaintiff] can claim that he was 'injured,' the fact is that he could have avoided any and all action taken by defendants").

Moreover, Intuit would have raised other challenging arguments for Plaintiffs to overcome.

1    For example, Intuit's records show that during the class period, several million class members did not

2    attempt to file using the "Free Edition" but instead started *and* completed their tax return using one of

3    Intuit's paid products such as TurboTax Deluxe.  Joint Decl., ¶ 38.  Intuit would have argued with

4    some force that this group could not have been deceived when they did not begin preparing their return

5    with a product represented as free.  Similarly, Intuit would have argued that numerous class members

6    considered a fee an acceptable price for the convenience of using the automated TurboTax interface.

7    *Id*.  Intuit also maintains that the claims of millions of class members would fail because, despite

8    allegations that they were misled by Intuit's "free" representations, they paid to file a return through

9    TurboTax in a *preceding* tax year.  *Id*.  Several million more class members voluntarily purchased

10   add-on services,[9] and Intuit contends those purchases demonstrate that those consumers would not

11   have used the IRS Free File Program because Intuit is not permitted to offer the added services under

12   the program.  *Id*.  Considering the defenses available to Intuit, the Settlement readily meets the

13   standard for preliminary approval.

14          The Settlement delivers "a significant, easy-to-obtain benefit to class members" in the form of

15   a cash payment to any Settlement Class Member with a valid claim.  *In re Haier Freezer Consumer*

16   *Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *4 (N.D. Cal. May 21, 2013).  After

17   subtracting administrative expenses, service awards, costs, and attorneys' fees (assuming a fee at the

18   25% benchmark), approximately $28 million will remain for distribution to participating class

19   members.  Joint Decl., ¶ 39.  This net fund will be distributed *pro rata* to each participating class

20   member.  SA § VI(b)(ii).

21          Class Counsel anticipate (in consultation with JND) that between 1% and 10% of the

22   approximately 19 million person Settlement Class will submit a claim.  *See supra* Section IV.C.  If

23   only 1% participate, each claimant will receive about $140—well over the average amount of $100

24   that a taxpayer paid Intuit in filing fees in a given tax year (not including those taxpayers who did, in

25   fact, file for free).  Joint Decl., ¶ 39.  The more likely claims rate of between 2.5% and 7.5% would

26

27   [9] The supplemental services for which class members chose to pay include "TurboTax Live," which
     provides line-by-line tax advice and CPA review, and TurboTax's MAX Defend and Restore bundle,
28   which provides personalized post-filing assistance like identity theft monitoring.  Joint Decl., ¶ 38.

16

yield payments of between $19 and $56.  *Id.*  At the midpoint of these estimates—a 5% participation rate—each class member would receive about $28.  *Id.*  These projected compensation amounts would provide recoveries in a general range of 20% to 50% of the average fees a taxpayer paid to Intuit in a year they were eligible for free for file.  *Id.*; *see In re CRT Antitrust Litig.*, 2016 WL 3648478, at *6 (even a small fraction of the potential recovery available at trial may be adequate).  In absolute terms as well, these payments compare favorably with the payments in other class settlements recently approved in this District.  *See, e.g.*, *Free Range Content, Inc. v. Intuit, LLC*, No. 14-cv-02329-BLF, 2019 U.S. Dist. LEXIS 47380, at *7-8 (N.D. Cal. Mar. 21, 2019) (as low as $10 per class member); *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*, No. 5:17-cv-00564-NC (N.D. Cal. Jan. 10, 2019), ECF No. 335 at 3.

In contrast to the delays, uncertainty, and other limitations associated with continued prosecution of Plaintiffs' claims, the Settlement provides certain relief and includes valuable reforms that will protect class members in the future.  The Settlement falls within the range of reasonableness and should be preliminarily approved.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("difficulties in proving the case" favored settlement approval); *Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 234364, at *8 (N.D. Cal. Jan. 20, 2016) (settlement providing immediate benefits to class members has value compared to the risk and uncertainty of litigation).

## VI.   THE SETTLEMENT CLASS LIKELY WILL BE CERTIFIED.

When a class has not been certified before settlement, the Court considers whether "it likely will be able, after the final hearing, to certify the class."  Fed. R. Civ. P. 23(e)(1) advisory committee's note (2018).  The Court in this case likely will be able to certify the Settlement Class at final approval.

### A.   The Requirements of Rule 23(a) Are Satisfied.

#### 1.   The Class Members Are Too Numerous to Be Joined.

For certification of a class to be appropriate, its members must be so numerous that their joinder would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  It is undisputed that the Settlement Class in this case includes millions of taxpayers; therefore, numerosity is satisfied.  *See, e.g.*, *Franco-Gonzales v. Napolitano*, No. 10-02211, 2011 WL 11705815, at *9 (C.D. Cal. Nov. 21, 2011).

### 2.    There Are Common Questions of Law and Fact.

Commonality under Rule 23(a)(2) turns on whether "class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (citation omitted).  Because all Settlement Class Members were subject to the practices alleged here, such as Intuit drawing taxpayers into its paid platforms with "free" representations and charging them last-minute fees, whether these practices are unfair and deceptive under California law is an overriding common question that would drive the outcome of each class member's claim.  *See, e.g.*, *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014); *Ries v. Arizona Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012).  Thus, commonality is satisfied.

### 3.    Plaintiffs' Claims Are Typical of the Class.

Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Typicality exists in this case because Plaintiffs and class members were exposed to injury from the same course of conduct on the part of Intuit.  *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 975 (C.D. Cal. 2015) (concluding that the typicality requirement is not "onerous" and was met because the claims all arose from the same set of facts).

### 4.    Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class.

Two questions are relevant to adequacy of representation under Rule 23(a)(4): "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Plaintiffs and their counsel do not have any conflicts with class members, have vigorously prosecuted this case, and are adequate.

Plaintiffs agreed to serve in a representative capacity, communicated with their attorneys, produced documents, assisting in preparing their complaint allegations, and consulted with Class Counsel in regard to settlement.  They will continue to act in the best interests of the other class members, and there are no conflicts between Plaintiffs and the class.  *See Mergens v. Sloan Valve Co.*, No. CV16-05255 SJO (SKx), 2017 WL 9486153, at *6 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where plaintiff had no interests antagonistic to the class).

18

In addition, the Court is familiar with the qualifications of Class Counsel (Dkt. Nos. 48, 49, 69, 74), and they are qualified to serve as Settlement Class Counsel here.  The attorneys from Girard Sharp LLP and Steuve Siegel Hanson LLP are experienced in prosecuting complex class actions and have devoted sustained time and effort to investigating, pleading, and pursuing these claims, including on appeal.  Joint Decl., ¶ 33.  The adequacy of representation requirement is accordingly met.

**B.**     **The Requirements of Rule 23(b)(3) Are Satisfied.**

With regard to predominance and superiority, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that Rule 23(b)(3)(D) drops out of the analysis).  The predominance and superiority requirements are satisfied here.

**1.**     **Common Questions Predominate for Settlement Purposes.**

The predominance inquiry tests the cohesion of the class, "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).  Predominance is ordinarily satisfied for settlement purposes when the claims arise out of the defendant's common conduct.  *See, e.g.*, *Gold*, 323 F.R.D. at 288 (predominance satisfied where claims were based on "the same deceptive conduct"); *Kacsuta*, 2014 WL 12585783, at *3 (common issues "significantly outweigh any individual questions" where the claims arise out of the "same alleged course of conduct" by the defendant).

All Settlement Class Members were subjected to Intuit's "free to fee" practices and paid Intuit a fee despite being eligible to file a return for free under the Free File Program.  Whether Intuit's practices and representations were unfair and deceptive are predominating common questions for all claims.  Another predominating common question is whether Intuit's "free" representations would be important to a reasonable person: Since materiality "concerns objective features of allegedly fraudulent representations and omissions, not subjective questions of how those representations and omissions were perceived by each individual consumer, materiality presents common questions of fact suitable for class litigation." *Martin v. Monsanto Co.*, No. EDCV-16-2168 JFW (SPx), 2017 WL

19

1115167, at *6 (C.D. Cal. Mar. 24, 2017).  By contrast, the individual questions mostly relate to damages and are less important; damages calculations "alone cannot defeat class certification." *Pulaski & Middleman, LLC v. Intuit, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015).  Thus, common questions predominate for settlement purposes.

### 2. A Class Action Is a Superior Means of Resolving This Controversy.

The superiority requirement is also satisfied.  Given the relatively low amount of the individual claims, most class members are unlikely to file individual arbitrations against Intuit.  *See Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).  And because the class members number in the millions, class-wide resolution of their claims in a single action is efficient. *See Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) (citing *Hanlon*, 150 F.3d at 1023).

Therefore, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the settlement class in this case.

## VII. THE CLASS NOTICE AND PLAN FOR DISSEMINATION ARE REASONABLE AND SHOULD BE APPROVED.

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Under Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice comports with Rule 23 and the requirements of due process.  Using plain language, the Notice provides all information required under Rule 23(c)(2)(B).  SA, Ex. A at Ex. 1; *see In re Volkswagen "Clean Diesel"*, 2017 WL 672820, at *13.  Furthermore, the Notice plainly discloses that people with incomes of $69,000 or less can file their federal tax return for free and provides a link to the IRS Free File portal.  SA, Ex. A at Ex. 1.

The proposed notice program includes direct e-mail notice and follow-up methods for directly notifying Settlement Class Members of the Settlement, as well as an extensive digital publication notice campaign.  SA § VI(d); *see Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1047 (9th Cir. 2019) ("Publication notice has long been used as a supplement . . . and technological developments are making it ever easier to target communications to specific persons or groups and to contact individuals

20

electronically"). The Settlement Website will also be a useful resource for class members—it will post the Claim Form, the Notice, and pleadings in the case, including the attorneys' fee application once it is filed. *Id.* §§ VI(d)-(e). The Settlement Administrator also will establish a toll-free number for class members to call with questions. *Id.* § VI(b). The parties' notice plan provides the best notice practicable under the circumstances. *See, e.g.*, *Wahl v. Yahoo! Inc.*, No. 17-cv-02745-BLF, 2018 WL 6002323, at *3 (N.D. Cal. Nov. 15, 2018) (concluding that a notice plan calling for direct e-mail notice, followed by mailed notice to individuals whose e-mails addresses generated a "bounce-back" message, constituted "the best notice practicable under the circumstances").

## VIII.  CLASS MEMBERS SHOULD BE REQUIRED TO OPT OUT BEFORE PURSUING ARBITRATIONS AGAINST INTUIT.

As contemplated by the parties' agreement, to ensure orderly settlement proceedings, Plaintiffs request the Court temporarily enjoin Settlement Class Members from commencing or pursuing related proceedings until they have decided whether to opt out. It is well recognized that "where a federal court is on the verge of settling a complex matter" it may enter such an injunction against related proceedings. *In re School Asbestos Litig.*, No. 83-0268, 1991 WL 61156, at *2 (E.D. Pa. Apr. 16, 1991), *aff'd,* 950 F.2d 723 (3d Cir. 1991) (quoting *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990)); *see, e.g.*, *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 477 (E.D. Cal. 2009) (temporarily enjoining class members "from commencing actions against Defendants for claims covered by the Settlement Agreement until the Court issues an order at the Final Fairness Hearing on the proposed Settlement Agreement."); *In re Sony PS3 "Other OS" Litig.*, No. 10-CV-01811-YGR, 2017 WL 5598726, at *6 (N.D. Cal. Nov. 21, 2017) (at preliminary approval, enjoining related proceedings, except those brought by class members who validly opted out); *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 203 (E.D. Pa. 2014) (similar). The Court has undisputed authority to enjoin pending arbitrations brought by class members who, unless they opt out, would be bound by the Settlement. *See In re Painewebber Ltd. P'ships Litig.*, No. 94 CIV. 8547 SHS, 1996 WL 374162, at *4 (S.D.N.Y. July 1, 1996); *Larson v. AT&T Mobility LLC*, No. CV 07-5325 (JLL), 2009 WL 10689759, at *2 (D.N.J. Jan. 16, 2009).

The All Writs Act, 28 U.S.C. § 1651, empowers the Court to issue "all writs necessary or

appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Rule 23(d) also "vests a district court with the authority and discretion to protect the interests and rights

of class members and to ensure its control over the integrity of the settlement approval process."

*Hanlon*, 150 F.3d at 1025 (affirming injunction issued upon "temporary approval of the nationwide

settlement [that] stayed the state class actions"); *see also Wright*, 259 F.R.D. at 477 (Rule 23 authorizes

the Court "to maintain the status quo") (citation omitted); *In re School Asbestos Litig.*, 1991 WL 61156,

at *4 ("[A]n order restraining class members from prosecuting similar state actions may be viewed not

primarily as an injunction but instead as a[] 'directive facilitating the orderly and efficient management

of the class actions.'") (quoting *In re Glenn W. Turner Enters. Litig.*, 521 F.2d 775, 778 (1975));

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 310-11 (W.D. Tex. 2007) (noting the Court "found the

issuance of a preliminary injunction was necessary and appropriate in aid of the Court's

jurisdiction over the action and to protect and effectuate the Court's review of the settlement").

The temporary injunction will protect the Court's jurisdiction and avoid disrupting the approval

proceedings and the class members' exercise of their rights under the Settlement.  Conversely,

allowing class members to proceed with arbitrations independent of their opt-out decisions could

require Intuit to defend claims in arbitration, pay unnecessary arbitration expenses, and risk an adverse

judgment in favor of a class member who remains bound by the Settlement.  Intuit is settling in part to

achieve finality, and retains the right to terminate the Settlement if this injunction is not entered.  SA

§§ V(a)(iv), XI(b)(i).  Moreover, if pending proceedings were allowed to go forward without valid opt

outs being first required, class members might wait to opt out until they have arbitrated their claims to

an unfavorable ruling or judgment (creating a one-way intervention problem).  By requiring them to

opt out *before* proceeding in arbitration or elsewhere, the Court will ensure fair and orderly

proceedings.  *See, e.g.*, *Doe v. Deja Vu Servs., Inc.*, No. 2:16-CV-10877, 2017 WL 530434, at *2

(E.D. Mich. Feb. 9, 2017) ("A preliminary injunction on parallel proceedings is therefore warranted

because conflicting orders from other courts would undermine the Court's jurisdiction and create a

risk of inconsistent judgments, duplicative litigation, and a lack of finality"); *Larson*, 2009 WL

10689759, at *2 (enjoining parallel class arbitration because "its further prosecution will clearly

obstruct this court's consideration of final approval of the [class] Settlement.").

1       The risk of disruption and of Intuit facing contradictory obligations is not merely theoretical.

2  A group of class members previously filed individual arbitrations in the AAA against Intuit arising

3  out of the same facts as this consolidated case.  Joint Decl., ¶ 42.  Intuit argued it was entitled to

4  defend those claims in small claims court.  *Id*.  After briefing from Intuit and the claimants,

5  represented by the Keller Lenkner firm, the AAA ruled that Intuit's argument was for an arbitrator to

6  decide.  *Id*.  Intuit responded by filing suit against the claimants in Los Angeles Superior Court,

7  seeking in part a declaration that their claims must proceed in small claims court, and the AAA stayed

8  the arbitrations.  *Id*.  The claimants then petitioned this Court to compel arbitration of their claims,

9  but the Court dismissed the petition.  *Id*.; *Jolly v. Intuit Inc.*, No. 3:20-cv-04728-CRB (N.D. Cal. Sept.

10  10, 2020), Dkt. No. 248.  On October 6, 2020, the Superior Court judge, Hon. Terry Green, denied

11  Intuit's motion to enjoin the arbitrations.  Joint Decl., ¶ 43.  Intuit noticed an appeal.  *Id*.  The

12  claimants then filed their own state-court lawsuit against Intuit and moved *ex parte* for a stay barring

13  Intuit from entering into a class settlement in this action.  *Id*.  At an October 20 hearing, Judge Green

14  denied the *ex parte* motion but permitted the arbitral claimants to move for a preliminary injunction

15  against Intuit reaching a class action settlement, setting a November 20 hearing date.  *Id*.

16       The temporary injunction sought by the parties to the Settlement will not cause any prejudice

17  to individual class members or interfere with their right to arbitrate.  Those who wish to proceed in

18  arbitration can simply opt out in accordance with the Settlement, and thereby lift the injunction as it

19  applied to them.  *In re Glenn W. Turner Enters. Litig.*, 521 F.2d at 778 ("The restraint on prosecution

20  of other actions is not absolute; a party need only exclude himself from the class actions to be free of

21  the restraint.  Exclusion from a class action normally entails no procedural or substantive hardship").

22  The injunction will ensure that any arbitration or litigation filed or contemplated remains in stasis until

23  and unless a class member decides to opt out.  In similar circumstances, courts recognized the

24  importance of obtaining a signed request from the class member electing to opt out.  *See In re*

25  *Syngenta MIR162 Corn Litig.*, No. 2:14-md-02591-JWL-JPO (D. Kan. Nov. 23, 2016), ECF No. 2703

26  at 2 (signature requirement is "commonplace" and necessary in part because "economic incentives

27  exist for counsel who are not part of the leadership to procure opt outs in order to pursue a course in

28  which those counsel might be better situated to earn a fee"); *In re CenturyLink Sales Practices & Sec.*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:19-cv-02546-CRB

1   *Litig.*, No. CV 17-2832, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020) (holding that an individual

2   signature requirement for opt-outs is "vital, because it ensures that the class member is individually

3   consenting to opt out, and avoids a third party or lawyer representing that they have that class

4   member's authority, without the class member making an informed, individual decision" and stating

5   this concern was "heightened" where the law firm "Keller gave the same blanket advice to opt out to

6   all 22,000 of its clients.").  The right to opt out is an individual right that should not be made by others,

7   *see Hanlon*, 150 F.3d at 1024, and a suspension of parallel proceedings will allow each Settlement

8   Class Member to decide whether to claim a portion of the fund, or opt out, in an orderly manner as

9   provided under the Settlement.

10        For these reasons, the Court should enter the temporary injunction.  *See, e.g.*, *In re Volkswagen*

11   *"Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1073 (N.D. Cal.

12   2017) (entering injunction that "stay[ed] . . . all state court actions relating to Released Claims" in

13   connection with granting final approval as "necessary to preserve the Court's jurisdiction."); *In re*

14   *CenturyLink Sales Practices & Sec. Litig.*, No. CV 17-2832, 2020 WL 869980, at *4 (D. Minn. Feb. 21,

15   2020) (holding "the Court has authority under the All Writs Act to temporarily enjoin class members

16   from pursuing parallel litigation during the notice and opt-out period in a complex class action."); *In re*

17   *Sulzer Hip Prothesis & Knee Prosthesis Liab. Litig.*, MDL No. 1401, 2002 WL 32138298, at *1 (N.D.

18   Ohio Mar. 14, 2002) ("When a class action settlement reaches the point in time 'after a conditional

19   class certification and preliminary settlement [are] negotiated and approved by the District Court,' and

20   approaches a final fairness hearing," parallel proceedings can pose "a serious threat to the District

21   Court's ability to manage the final stages of [a] complex litigation.") (citations omitted).[10]

22        The "traditional standards for injunctive relief" may not apply to a request for an injunction

23   issued under the Court's authority conferred by the All Writs Act and further supported by Rule 23(d).

24   *Harris v. Wells*, 764 F. Supp. 743, 745 (D. Conn. 1991); *accord Makekau v. State*, 943 F.3d 1200,

25

26   ─────────────────

27   [10] Even before parties reached a settlement, courts have enjoined parallel litigation when it
"threaten[ed] all of the settlement efforts."  *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir.
1985); *see also Carlough v. Amchem Prod., Inc.*, 10 F.3d 189, 203 (3d Cir. 1993) (affirming injunction
when "prospect of settlement was indeed imminent, as in other cases in which federal courts have
28   issued injunctions"); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir. 1984).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:19-cv-02546-CRB

1204 (9th Cir. 2019) (holding injunction under the All Writs Act did not require likelihood of success

on the merits), *cert. denied,* 140 S. Ct. 2740 (2020).  Regardless, the four traditional factors—(1) the

plaintiff's likelihood of prevailing on the merits, (2) whether the plaintiff will suffer irreparable harm,

(3) the balance of equities, and (4) the public interest—all weigh in favor of the injunction.

First, there is a strong likelihood of success on the merits.  In approving the dissemination of

notice, the Court will have necessarily concluded under Rule 23(e)(1)(B) that it "will likely be able to"

approve the Settlement and enter a judgment binding Settlement Class Members who do not opt out.

The Court's judgment will release their claims and, correspondingly, the injunction will bar them from

maintaining a suit or arbitration on the released claims.  *See, e.g.*, *Deja Vu Servs., Inc*., 2017 WL

530434, at *2.  Second, while a showing of irreparable injury is not required "[s]ince this matter

involves an injunction to protect the Court's jurisdiction," *id.*, such injury is threatened here.  Absent an

injunction, Intuit could be required to pay arbitrator fees and costs it could not recover for demands

filed by class members who ultimately do not opt out.  Such arbitrations also could lead to rulings or

awards while the Settlement is under review, interfering with the Settlement and its associated rights

and interests.  In addition, a segment of the putative class has sought to enjoin Intuit, in California state

court, from entering into a class-wide settlement, and such a ruling would directly challenge this

Court's jurisdiction to determine if this Settlement is fair, reasonable and adequate.  It would also

interfere with each putative class member's individual right to decide whether to opt out or stay in the

Settlement Class.  Third, a temporary injunction here will not harm any class member because anyone

who wants to pursue an arbitration need only opt out—thus, the equities favor the injunction.  Finally,

"the injunction serves the public interest because it will bring finality to the dispute, eliminate the risk

of duplicative proceedings, decrease the cost of litigation, eliminate the risk of conflicting results, and

allow the parties to implement the negotiated class-wide settlement." *Id.*

## IX.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed

Preliminary Approval Order, submitted herewith.

Dated:  November 12, 2020

Respectfully submitted,

/s/ *Daniel C. Girard*

Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com

Norman E. Siegel (*pro hac vice*)
Austin Moore (*pro hac vice*)
Jillian Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:  (816) 714-7100
Facsimile:  (816) 714-7101
siegel@stuevesiegel.com
moore@stuevesiegel.com
dent@stuevesiegel.com

*Co-Lead Interim Counsel*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:19-cv-02546-CRB