# Keller | Lenkner

November 13, 2020

Hon. Charles R. Breyer
450 Golden Gate Avenue
San Francisco Courthouse, Courtroom 6
San Francisco, CA 94102

Re:     *In Re Free File Litig.*, No. 3:19-cv-02546-CRB

Judge Breyer:

Undersigned counsel represents tens of thousands of individual TurboTax customers who are pursuing consumer fraud and antitrust claims against Intuit in individual arbitration (the "Arbitration Claimants"). Counsel awoke this morning to see that the parties to this action have filed a motion for preliminary approval of a class settlement that would significantly affect the rights of the Arbitration Claimants. Most significantly, the motion seeks an *ex parte* injunction against the Arbitration Claimants, who are not currently parties to this action.

As this Court is likely aware, the parties' motion implicates significant and complex legal issues: Intuit has already taken an appeal in which it prevailed on its arguments that the claims in this case must be resolved in arbitration, *see Dohrmann v. Intuit Inc.*, 823 Fed. Appx. 482 (9th Cir. Aug. 11, 2020); some of the Arbitration Claimants filed a motion to compel arbitration with this Court in *Jolly v. Intuit Inc.*, No. 3:20-cv-04728-CRB (N.D. Cal. Sept. 10, 2020); and this Court ruled that whether the Arbitration Claimants could proceed in arbitration should be decided by the state court in *Intuit Inc. v. 9,933 Individuals*, No. 20STCV22761 (L.A. Super Ct.). The state court in *9,933 Individuals* ruled against Intuit, decisively rejecting the company's arguments that it could avoid arbitrating with the Arbitration Claimants. *See* Attachment A.

The parties' motion should also be considered in light of several factual developments that are not placed before the Court by the parties' motion. For example, Intuit has submitted a declaration in the state court action showing that the Arbitration Claimants are not similarly situated in the value of their claims with other members of the class. Intuit has also made statements in state court explaining that it would not have entered into the proposed settlement here unless it included the Arbitration Claimants (with the more valuable claims), even though the settlement imposes a one-size-fits all resolution for these differently-situated plaintiffs. When Counsel for the Arbitration Claimants sought to represent the distinct interests of their clients in the mediation leading to the proposed settlement, the parties here excluded Counsel from settlement discussions regarding their clients' claims. And last month Arbitration Claimants filed with the state court a motion for a preliminary injunction, seeking a declaration of their rights to be excluded from a class-action settlement under Intuit's arbitration agreement. A tentative decision on Arbitration Claimants' motion is expected

# Keller | Lenkner

on or before next Friday, November 20, when the parties will argue the motion before the state court.

The Arbitration Claimants have a self-evident interest—and indeed, a Due Process right—in having an opportunity to be heard before they are subjected to an injunction. *Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940). The legal issues implicated by the proposed settlement are important, complex, and novel. And this Court should have the opportunity to consider important facts that were not included in the settlement approval motion.

For all of these reasons, the Arbitration Claimants respectfully request that they be granted leave to file a brief responding to the motion for preliminary approval. Given the importance and complexity of the issues as well as the upcoming holidays, counsel requests that Arbitration Claimants be permitted to file a response brief 28 days after the later of (a) the motion filed today or (b) any additional brief that Intuit may file in support of the settlement. Counsel for the Arbitration Claimants emailed counsel for the parties at 6:31am PT this morning to seek their agreement to this schedule but has not yet received a response.

Sincerely,

Warren Postman

# Attachment A

**COURT ORDER**

FILED
Superior Court of California
County of Los Angeles

OCT 06 2020

Sherri R Carter, Executive Officer/Clerk
By _____ Deputy
Marisa Ventura

*Intuit Inc., et al. v. 9,933 individuals*
20 STCV 22761

| | |
|---|---|
| TYPE OF MOTION: | Motion for Preliminary Injunction to Stay Arbitration Proceedings. |
| MOVING PARTY: | Plaintiffs, Intuit, Inc. and Intuit Consumer Group LLC. |
| RESPONDING PARTY: | Defendants, 9,933 individuals. |
| HEARING DATE: | Thursday, October 8, 2020 |

Plaintiffs seek a judicial declaration that they have the right to elect small claims court as an alternate forum to arbitration.

On June 12, 2020, Plaintiffs Intuit, Inc. and Intuit Consumer Group LLC ("Plaintiffs" or "Intuit") filed their Complaint for Declaratory and Injunctive Relief against 9,933 individual Defendants (hereinafter referred to for clarity as "Consumers"), all of whom are currently presenting claims in arbitration and who are represented by the same law firm. On August 6, 2020, an Answer was filed on behalf of all Consumers.

On August 20, 2020, Judge Kenneth R. Freeman, sitting in Spring Street Department 14, determined that the case was non-complex. On August 25, 2020, the case was assigned to this department.

No trial date has yet been set.

Intuit now moves this court, per Code of Civil Procedure § 527(a), for a preliminary injunction staying the various arbitration proceedings initiated by the Consumers with the American Arbitration Association ("AAA").[1] The motion is DENIED.

This motion is the latest exchange in an ongoing battle between Intuit and the Consumers. The parties have taken a winding road through other courts to get here, and a brief survey of the ground is necessary before a proper discussion on the merits can be had. While the parties have each provided the court with some evidentiary submissions, those documents consist mostly of letters and filings from their previous legal history. There appear to be no serious factual disputes on relevant issues.

Background

Intuit is the owner of TurboTax – a widely popular brand of software that allows many

---

[1] The motion is captioned as a "Motion for Stay of Arbitration," but the notice requests a preliminary injunction and both parties have argued using the preliminary injunction standards.

1

Americans to prepare and file their own taxes. There are multiple versions of this software, designed to deal with the different financial situations faced by different taxpayers. Under a partnership with the Internal Revenue Service ("IRS"), Intuit permits low-income tax filers (defined as those making less than $66,000 annually) to use one version of TurboTax for free.

Those who opt to purchase one of the paid versions of TurboTax rather than using the free version must agree to Intuit's Terms of Service. The Terms of Service include an arbitration provision, which says that all disputes will be adjudicated by arbitration with AAA, or (under certain conditions) in small claims court. The terms of service also contain a strict class-action waiver: any claims against Intuit must be brought individually.

In recent years, Intuit has faced charges that it has been conducting a bait-and-switch scheme in which the free version of TurboTax is the bait. Under this theory, eligible taxpayers come to TurboTax looking for the free version and are tricked into purchasing one of the paid versions. Neither the precise mechanics of how this happened, nor the legal merit of these consumer claims is relevant here. Suffice it to say, a huge number of taxpayers who were eligible for the free version ended up using the paid version.

These taxpayers attempted to file a series of class action suits against Intuit. (Declaration of Warren Postman ["Postman Dec."] ¶ 27; Notice of Related Cases filed June 12, 2020); Arena v. Intuit Inc. (N.D. Cal. 2020) 444 F.Supp.3d 1086, 1088. Intuit responded by invoking the arbitration agreement and class action waiver included in the Terms of Service and filing motions to compel arbitration in each case. (See Postman Dec. ¶ 28; Notice of Related Cases filed June 12, 2020); see also Arena, supra, 444 F.Supp.3d at 1088. These motions were ultimately granted, and the arbitration clause in the Terms of Service was deemed enforceable. (See Postman Dec. ¶ 28; Notice of Related Cases filed June 12, 2020); see also Dohrmann v. Intuit, Inc. (9th Cir. 2020) ---- Fed. Appx. ---- 2020 WL 4601254.

Denied their opportunity for a class action, the Consumers rallied under the banner of Defense counsel in this case, Keller Lenkner, LLC ("Keller Firm"). Each and every one of the putative class members filed an individual claim in arbitration. Since there were tens of thousands of aspiring class members, Intuit found itself faced with tens of thousands of arbitration demands, each of which would require the payment of arbitration fees and individual attention from counsel. Essentially, Intuit had traded a giant incoming meteor for a mountain landslide of pebbles.

Since being buried under a landslide is hardly preferable to being squashed by a meteor, Intuit went looking for another way out. And they thought they had found one: the AAA arbitration rules (specifically Rule 9(a)) provide that a party can elect to take certain cases to small claims court, as long as they make that election *before* an arbitrator is selected. Two things make small claims court more attractive than arbitration for Intuit: (1) the filing fee in small claims court is much less than the $3,200 fee Intuit must pay for arbitration,[2] and (2) plaintiffs in small claims court are not entitled to a lawyer.[3]

---

[2] See Motion p. 8:10 and fn.1 for the calculation of that number. Defendants do not dispute the figure.

[3] This second item, that their consumer opponents would be deprived of counsel, was pointed out by the Consumers,

So, Intuit told AAA that it was electing to take these thousands of demands to small claims court. The Keller Firm filed an opposition with AAA on behalf of the Consumers, arguing that Intuit did not have the right to make that election. AAA decided that this was not a question to be answered by the organization broadly, but by the arbitrator in each individual case. Intuit would have to pay its fees and file a motion in each separate arbitration proceeding before it could move any claim to small claims court. AAA did suggest that, once the fees had been paid, the parties could stipulate to have a single arbitrator make the decision once for all claims.

This put Intuit in a difficult situation. The main benefit of going to small claims court is that it's the one forum cheaper than arbitration. If Intuit had to go through arbitration to get to small claims, the benefit would be lost. On the other hand, if Intuit took the position it didn't owe the fees and failed to pay them, AAA would be empowered by California law to impose a panoply of sanctions, up to and including entry of a default judgment. Code of Civil Procedure §§ 1281.97, 1281.98, and 1281.99. The choice was either (a) pay millions of dollars for thousands of arbitrations *before its objections could be heard*, or (b) potentially lose those thousands of arbitrations and have to pay even more.

Rather than do either of those things, Intuit filed this action and this motion, asking the court to make the ruling which AAA had deferred to its arbitrators. In response, the Consumers filed a petition in federal district court, asking a federal judge to compel the issue to arbitration. Jolly v. Intuit Inc. (N.D. Cal. 2020) ---- F.Supp.3d ---- 2020 WL 5434503 at *1. The federal court declined to interfere with the proceedings in this case. Id. at *6-9.

Threshold Issues

In their Opposition, the Consumers argue that this court is not the correct forum to decide the question Plaintiffs raise. It is Consumers' position that the arbitrators should be the ones to rule on whether Intuit can move the arbitration demands to small claims court. Consumers also suggest that this court fundamentally lacks the power to enjoin arbitration proceedings. These are issues which have been presented to this court frequently in recent months. Each time they appear, counsel seem to have a new argument or scenario for the court to consider. This time is no different.

*Power to Enjoin Arbitration*

Roughly one year ago, this court had the opportunity to consider a similar question in a major case involving pharmaceutical companies.[4] In that situation, there were a series of related proceedings involving various contracts between affiliated parties. Among those proceedings was an arbitration in New York, in which the parties were already moving forward, and the case in this department, which involved different contracts and transactions. One of the defendants in the arbitration did not believe he was a party to the arbitration agreement, so he filed a motion before this court asking for a preliminary injunction halting the arbitration.

---

not Intuit. But the thought had to have crossed Intuit's mind.

[4] *Sorrento Therapeutics, Inc. v. NantCell, Inc., et al.* (LASC Case No. 19 STCV 11328).

The court could not grant that motion because the pending case had no connection to the arbitration: there had been no motion to compel and the underlying controversy was different. There was nothing which said that a California court could stop a New York arbitration simply because the same parties were before it on a different matter. However, the court still had to confront the question of what remedy might be available to a person who finds himself unwillingly haled directly into arbitration. After considerable research and excellent briefing, the court concluded that the moving party was not required to meekly submit to an arbitration before he could seek redress. Based on <u>Valley Casework, Inc. v. Comfort Construction, Inc.</u> (1999) 76 Cal.App.4th 1013, the court reasoned that the proper remedy would be a separate suit for declaratory and injunctive relief, followed by a motion for preliminary injunction. This was the path the moving party ultimately followed, with success.[5]

There are obvious factual distinctions between the present case and the court's previous brush with this issue. Primarily, the dispute in the other case was over the very existence of a binding arbitration agreement between the relevant parties. Here, that issue has already been adjudicated. The dispute here is over the proper application of the terms of that agreement. And Consumers rely on two cases that did not figure at all in the discussion held on the other case: <u>Sauter v. Superior Court</u> (1969) 2 Cal.App.3d 25 and <u>Grubb & Ellis Co. v. Bello</u> (1993) 19 Cal.App.4th 231.

In <u>Sauter</u>, the plaintiff filed an action for rescission of a contract. <u>Sauter</u>, *supra*, 2 Cal.App.3d at 27. The defendant refused to participate in the case based on an arbitration clause in the contract, and instead filed a demand for arbitration with AAA. <u>Id.</u> The plaintiff moved for an injunction preventing the arbitration from proceeding, which (in the absence of any opposition by defendant) the trial court granted. <u>Id.</u> at 27-28. The Court of Appeal reversed, essentially holding that the injunction was an idle act. Under Code of Civil Procedure § 1292.4, arbitration clauses were "not self-executing" if there was already a pending civil case on the same controversy. <u>Id.</u> at 29. Defendant could not proceed with the arbitration if plaintiff did not participate, and defendant could not compel plaintiff's participation without bringing a motion to compel in the pending action (which would decide the exact same issue – grounds for rescission – as the action itself). <u>Id.</u> So there was no reason for the court to have issued the injunction, because arbitration could not have gone forward in any event. <u>Id.</u>

<u>Grubb</u> was a case about brokerage commissions between a contractor who built homes and the broker who was supposed to find tenants for them. <u>Grubb</u>, *supra*, 19 Cal.App.4th at 235-236. The broker filed a demand in arbitration for $45,000 in commissions; the contractor appeared in the arbitration and argued that the arbitration agreement was invalid because the broker never signed it. <u>Id.</u> at 236. The arbitrator was unimpressed, the contractor participated in the remainder of the proceeding, and the broker prevailed, and a trial court confirmed the award. <u>Id.</u> at 237. On appeal, the broker argued that the contractor had waived his right to challenge the validity of the arbitration agreement by appearing in the arbitration rather than filing a writ petition to halt the arbitration. <u>Id.</u> The Court of Appeal held that (1) a writ petition would have been inappropriate, (2) the contractor should have simply refused to appear in the arbitration, but (3) that his appearance did not waive his argument that the agreement was invalid. <u>Id.</u> at 237-

---

[5] See *Soon-Shiong v. Sorrento Therapeutics, Inc.* (LASC Case No. 19 STCV 39620).

238.

Neither <u>Sauter</u>[6] nor <u>Grubb</u> is on-point to the situation at hand. Both of those cases involved disputes about the validity of the arbitration agreement, not the interpretation of its terms. And nothing in either case suggests that courts categorically lack the power to enjoin an arbitration. Further, the reasoning of <u>Sauter</u> and <u>Grubb</u> rests on a premise which is simply not true anymore: the idea that an arbitration automatically grinds to a halt if the defendant simply refuses to participate. Both <u>Sauter</u> and <u>Grubb</u> assume that an arbitration demand cannot be prosecuted against a party unless a motion to compel has been filed and ruled on. If that was the case in 1969 or in 1993, it is not the case now. The AAA rules expressly provide for default proceedings (Declaration of Roger Cole, Exhibit 3, p. 26 [Rule R-39]), arbitration contracts regularly contain similar provisions,[7] and the arbitration statutes now also permit defaults and terminating sanctions. Code of Civil Procedure §§ 1281.98(b)&(d), 1282.2(e).

Intuit is not required to sit on its hands and wait for a motion to compel that may never come. If it does that, it may find itself in default. It would then be in the unenviable position of having to explain the situation to a trial court on a petition to vacate.[8] This court indisputably has the power to grant declaratory relief where there is a present controversy over the terms of a live contract. Code of Civil Procedure § 1060. It is equally undisputed that a complaint for declaratory relief will, in the appropriate case, support the issuance of an injunction, preliminary or permanent. See Code of Civil Procedure § 1062. Therefore, if this court is the proper forum in which to litigate the questions raised in the Complaint, it has the power to issue the injunction requested.

*Proper Forum*

Consumers' next argument challenges exactly this point. They say that the arbitrators of each individual claim should answer the question posed by the complaint: whether Intuit can move the claims to small claims court. While the issue is a close one, it appears that the Terms of Service permit Intuit to pose its question to this court.

---

[6] <u>Sauter</u> especially is a bit weak as an authority. The case itself is a somewhat dated, decided as it was over 50 years ago. It has only been cited six times since it was decided, and not once after <u>Grubb</u> mentioned it in 1993. Most importantly, in <u>Henry v. Alcove Investment, Inc.</u> (1991) 233 Cal.App.3d 94, the Court of Appeal came to the opposite conclusion in an identical situation. Though <u>Henry</u> does not mention <u>Sauter</u>, as a much later decision that reached the opposite conclusion, it necessarily calls <u>Sauter</u> into doubt. See also <u>Brooks v. AmeriHome Mortgage Company, LLC</u> (2020) 47 Cal.App.5th 624 (court hearing a PAGA action can stay arbitration of plaintiff's individual claims); <u>American Builder's Assn. v. Au-Yang</u> (1990) 226 Cal.App.3d 170 (plaintiffs should file a declaratory relief action to determine the status of an alleged undisclosed principal before he could be added to an arbitration).

[7] See, e.g. <u>Shenanwood Development, Inc. v. Cell-Crete Corporation</u> (2nd Dist. 2014) 2014 WL 1385325 (on appeal from this department).

[8] The challenges of this position are well illustrated by the recent case of <u>Benaroya v. Willis</u> (2018) 23 Cal.App.5th 462, in which the appellant unsuccessfully argued to the arbitrator that there was no valid agreement to arbitrate. On the subsequent petition in court, the trial judge found a rules provision that said an arbitrator could determine its own jurisdiction and then declined to review the arbitrator's decision on that subject. <u>Benaroya</u>, *supra*, 23 Cal.App.5th at 468. The appellate court reversed, but by then years had passed and the appellant had had to endure an arbitration to which it never consented.

Arbitrability is presumptively an issue for the court. <u>Aanderud v. Superior Court</u> (2017) 13 Cal.App.5[th] 880, 891. However, some issues of arbitrability may be delegated to the arbitrator. For instance, an arbitrator may determine whether an individual claim is arbitrable as a class claim (<u>Sandquist v. Lebo Automotive, Inc.</u> (2016) 1 Cal.5[th] 233, 243), or whether the arbitration clause which gives him power is unconscionable. <u>Tiri v. Lucky Chances, Inc.</u> (2014) 226 Cal.App.4[th] 231, 242. On the other hand, an arbitrator may *not* decide the issue of whether a party belongs in arbitration in the first instance. See <u>Rosenthal v. Great Western Fin. Securities Corp.</u> (1996) 14 Cal.4[th] 394, 414-419; <u>Benaroya v. Willis</u> (2018) 23 Cal.App.5[th] 462, 468-470.

Where the parties want to delegate a particular issue of arbitrability to the arbitrator, the language of the delegation clause must be "clear and unambiguous," or else there must be extrinsic evidence which shows clear and unambiguous intent to delegate. <u>Ajamian v. CantorCO2e, L.P.</u> (2012) 203 Cal.App.4[th] 771, 781-782. No extrinsic evidence has been submitted here. The clause at issue reads in relevant part as follows:

> "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall apply California law to all other matters. Notwithstanding anything to the contrary, any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction…
> Arbitration will be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules…" (Declaration of Roger Cole ["Cole Dec."], Exhibit 1) (emphasis in original).

The AAA rules (hereinafter "Rules") in turn carry two provisions relevant here:

> "R-14. Jurisdiction
>
> **(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
>
> **(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.
>
> **(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

...
R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other Rules shall be interpreted and applied by the AAA." (Cole Dec. Exhibit 3 p. 17, 32).

Ordinarily, under <u>Rodriguez v. American Technologies, Inc.</u> (2006) 136 Cal.App.4th 1110, 1123, incorporation of these rules into an agreement would be sufficient to delegate all issues of arbitrability to the arbitrator. Intuit cited this very case and rule when it moved to compel the Consumers to arbitration in the first place. (Declaration of Warren Postman ["Postman Dec."] Exhibit D, p. 10:7). And Intuit is presently asking this court for interpretation and enforcement of certain Rules, which is a matter that those same Rules expressly refer to the arbitrator, and then to AAA itself. (See Rule 53, quoted in full above).

One might be forgiven for seeing the instant action and motion, at first glance, as an attempt to "appeal" from an adverse determination by AAA. Rule 53 reserves rule interpretation issues to the arbitrator and to AAA. The parties have an issue regarding the interpretation of Rule 9. After receiving multiple letters stating the parties' respective positions (Postman Dec. Exhibit B), AAA determined that the issue was one for its arbitrators. AAA even offered to have one arbitrator decide the issue for all claims, to save time and expense and effort. (Postman Dec. Exhibit B p. B-17). Intuit didn't like that determination, so it filed this action.

However, Intuit points to a provision in the Terms of Service which they claim creates an exception to the Rules and allows this court to decide the question. As quoted above, the Terms of Service provide that "any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction." The Rules do allow the parties to make rule changes in their individual contracts. (Cole Dec. Exhibit 3 p. 10, Rule 1(c)). This appears to be such a rule modification. The question then is whether this case fits the terms of that modification. There is no dispute that declaratory relief is equitable in nature. And Intuit is asking the court to decide whether these claims should go to an arbitrator in the first instance. As noted above, that question is usually reserved for the courts rather than arbitrators.[9] See <u>Benaroya</u>, *supra*, 23 Cal.App.5th at 468-470 (collecting cases). For those reasons, the exception contained in the Terms of Service seems to apply here.

Consumers contend that the exception on which Intuit relies has already been interpreted by the Ninth Circuit to permit only equitable relief "in aid of arbitration." <u>Dohrmann</u>, *supra*, 2020 WL 4601254 at *2. Consumers argue that since the injunction intuit requests would *halt* arbitration, it does not "aid" arbitration, and is therefore beyond the bounds of the clause. There are two responses to this argument, either of which is sufficient. First, as Intuit points out, having

---

[9] It is significant that this court is *not* being asked to resolve a run-of-the-mill procedural question, such as when responsive pleadings should be filed or how much discovery should be allowed under the Rules. It would be absurd to conclude that parties could run into court for a second opinion on *every* rule interpretation issue.

a clear answer about what to do with the consumer claims would "aid" arbitration because it would tell AAA exactly how to handle this mass of cases. (Reply p. 9:8-14). Second, when the Ninth Circuit used the phrase "aid of arbitration," the panel clarified what they meant by that in the same paragraph: claims that do not "determine the merits of an arbitrable dispute" but instead are "designed to maintain the status quo between the parties." Dohrmann, supra, 2020 WL 4601254 at *2. A stay of the arbitration proceedings would not determine the merits of any dispute, and it would maintain the status quo between all parties.

At oral argument, Intuit made the claim that it has the right to file this action and appear before this court regardless of what the Terms of Service provide. It argued that the federal courts (district and Ninth Circuit) said it could be here. But the Terms of Service are the only reason the federal courts said it could be here. Dohrmann, supra, 2020 WL 4601254 at *2 ("the contract…permits the district court to issue equitable relief"); Jolly, supra, 2020 WL 5434503 at *10 ("Intuit's state court suit is allowed under the Agreement"). Once a party has not only contracted to take a dispute to arbitration but actively sought to enforce the contract, they no longer have a generalized right to file suits in court related to that same contract.

*Summation*

There is no authority which broadly prevents this court from enjoining an arbitration proceeding. Filing a complaint for declaratory relief relative to a specific arbitration action is sufficient to give this court jurisdiction to stay that proceeding. Further, while election to use the Rules is usually sufficient to send issues of arbitrability to the arbitrator, the specific terms of the contract have modified those Rules. Since there is specific contractual language that empowers the parties to ask for equitable relief, this court is the proper forum to hear that request.

Reasons for Stay: Application of Rule 9

"A trial court's decision on whether to grant a preliminary injunction rests on '"(i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction."' (Law School Admission Council, Inc. v. State of California (2014) 222 Cal.App.4th 1265, 1280, quoting Common Cause v. Board of Supervisors (1989) 49 Cal.3d 432, 441-442)." Saltonstall v. City of Sacramento (2014) 231 Cal.App.4th 837, 856. "The more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not issue. ([King v. Meese (1987) 43 Cal.3d 1217,] at p. 1227). Further, 'if the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harm tips in his favor. [Citation.]' (Common Cause v. Board of Supervisors (1989) 49 Cal.3d 432, 447)." Right Site Coalition v. Los Angeles Unified School Dist. (2008) 160 Cal.App.4th 336, 338-339.

"The burden is on the party seeking the preliminary injunction to show all of the elements necessary to support issuance of a stay. (O'Connell v. Superior Court [(2006)] 141 Cal.App.4th [1452,] at p. 1481)." Saltonstall, supra, 231 Cal.App.4th at 856.

*Probability of Prevailing*

      The primary issue in this case is whether Intuit has the right to make use of AAA Rule 9, which provides as follows:

> "If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:
>
> **(a)** The parties may take their claims to small claims court without first filing with the AAA.
> **(b)** After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.
> **(c)** After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court." (Cole Dec. Exhibit 3 p. 15) (emphasis in original).

Intuit says that this is a case for straightforward application of Rule 9(b). The Consumers' claims were filed with AAA, no arbitrator has been appointed, and Intuit provided written notice that it wanted the cases decided in small claims court. According to Intuit, that is all which needs be said – AAA should close its cases and the Consumers should go to small claims. But the matter is not quite that simple.

**Application of the Contract**

      As discussed above, in order to bring this action, Intuit must maintain that the language of the Terms of Service either (a) modifies the Rules pursuant to the provisions of Rule 1(c), or else (b) flatly overrides the Rules. The Terms of Service incorporate the Rules. The Rules provide that either AAA or the arbitrator will decide issues of Rule interpretation and enforcement. Therefore, unless the Terms of Service govern over the Rules in some fashion, this entire dispute belongs in front of AAA, not the court.

      In the previous section, the conclusion was that the Terms of Service modified the rules, since there is a Rule provision that permits modification and that is the most harmonious construction. But once the court decides that the Terms of Service do modify the Rules, it cannot apply that decision selectively. It cannot be the case that one piece of the Terms of Service modifies the rules and another piece does not.

      As quoted above, the Terms of Service provide that "ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify."[10] Since the Terms of Service are

---

[10] The term "you" clearly refers to the Consumer, whereas the rest of the Terms of Service refer to Intuit as "I," "we," or "us." (Cole Dec. Exhibit 1).

drafted by Intuit and written from their perspective, the plain meaning of this provision is that all disputes will go to arbitration, with only one exception: when the *Consumer* decides to file in small claims. There is no similar exception written in which allows Intuit to choose small claims as well. The Consumers argue that under this provision, they are the only ones allowed to choose small claims court – Intuit has no such right. This appears to be the correct reading of the contract.

In its moving papers, Intuit offers four arguments to dispute this plain reading. First, Intuit puts forward its own reading: the sentence quoted above was merely designed to ensure that Consumers had "notice" that the Rules gave them the right to choose small claims court over arbitration. (Motion p. 14:16-18). In other words, Intuit is asking this court to subdivide the contract and say that one part is "just for notice" and the other part is truly binding. There is no basis in law or in the contract itself for such an exercise. Contracts do occasionally contain notices to consumers, but when they do, the provisions are usually set off from the main body of the contract and headed with words like "notice" or "warning." Here there is no such break. There is nothing which would have told the Consumers "this sentence is different – the rest of the contract is should be taken literally, but not this." Intuit's reading just won't stand on its own two feet.

Second, Intuit argues that if they really meant to bar themselves from choosing small claims, the Terms of Service would be more precise and detailed about it. This is unpersuasive. It is not hard for good lawyers to come up with alternate drafts of a contract, especially after the fact of a dispute. Nor is it uncommon for parties to re-draft their form contracts to address problems revealed by lawsuits. But the parties and the court must deal with the language as it is presented in the case at hand. And here, Intuit had just got done saying, in capital letters, that everything would go to arbitration rather than to court. It then made one exception: for claims brought by a Consumer in small claims court. No one reading this sentence, lawyer or not, would take that to mean Intuit could also choose to file in small claims.

Third, Intuit contends that the plain reading creates an "untenable" conflict between Rule 9 and the Terms of Service. It is true that contracts are to be read in such a way as to avoid conflicts between their terms "if reasonably practicable."[11] Civil Code § 1641. But this can be done here. As explained above, Rule 1(c) permits the parties to modify the other Rules. The Terms of Service may properly be read as containing such modifications. Therefore, the Terms of Service do not conflict with Rule 9, they modify it pursuant to Rule 1(c).

Fourth, Intuit claims that the practical result of the plain reading is absurd: who would agree to pay $3,200 to take a case through arbitration when it could be taken to small claims for a fraction of the cost? But the fact that an agreement works out badly under certain circumstances does not make the overall terms absurd. The Terms of Service say that all controversies, big or

---

[11] That phrase supplies an important caveat. Avoiding a conflict is not the court's Prime Directive; it will not twist or re-write the language of a provision for that purpose. In this case, the language of the Terms of Service and the language of Rule 9 are in plain contradiction. So even if there were no modification provision which allowed them to be harmonized, the court would still have to choose between the Terms of Service and the Rules. In such a contest, the Terms of Service would prevail because they are both (a) the main agreement between the parties, to which the Rules are a supplement, and (b) the document with which the Consumers were actually presented (they would have had to go look up the Rules on their own time).

small, go to arbitration, unless the consumer chooses small claims court. There is nothing absurd about that. If a consumer brought a claim for $1 million, Intuit would move that claim to arbitration with joy in its corporate heart. The fact that a consumer filed a $100 claim in arbitration is an unforeseen contingency, not proof that the contract was absurd. And that brings up another point: in making this argument, Intuit is suffering a mild case of selective amnesia. After all, it was Intuit who moved to break up the class action claims and send them to arbitration in the first place. (Postman Dec. Exhibit D). It cannot now complain that absurdity has resulted from its own tactical decisions.

On Reply and at oral argument, Intuit suggested that depriving it of the right to choose small claims court would violate Principles 1 and 11 of the AAA Due Process Protocol. This is relevant because Rule 1(d) provides that AAA will only administer disputes if they meet the standards contained in the Due Process Protocol. (Cole Dec. Exhibit 3 p. 10). However, Rule 1(d) also provides that AAA itself will make that determination: AAA will only accept a case *after* it concludes that the arbitration agreement "substantively and materially complies" with the standards contained in the Due Process Protocol. (Id.). AAA has clearly accepted these cases, so it has clearly made its determination, and there is no reason for the court to disturb that. A review of the Due Process Protocol Principles 1 and 11 (Cole Dec. Exhibit 4) reveals that the clear purpose of those principles is to secure the *consumer's* access to small claims court. Those principles exist to protect the Consumers, not Intuit.

Finally, Intuit argues that the only way an arbitration contract can modify the Rules is if it contains express language directly changing specified provisions.[12] But Intuit cites only one case in support of this proposition: an unpublished federal case from the Southern District of New York, decided in 1991. The contract in that case was a "treaty" between two insurance companies in which the parties had included a list of special provisions they wanted to apply and said that "except as provided above" they would follow the AAA Rules. RLI Ins. Co. v. Kansa Reinsurance Co., Ltd. (S.D.N.Y. 1991) 1991 WL 243425 at *2. Afterwards, one insurance company argued that "except as provided above" really meant "only as provided above" – that *only* the rules specially listed should be used. Id. at *3. The district judge (future U.S. Attorney General Michael Mukasey) had no trouble rejecting that warped reading. Id. The situation here is not remotely similar.

A plain reading of the Terms of Service leads to the conclusion that only the Consumers have the right to take a case to small claims court. That reading can be harmonized with the Rules because Rule 1(c) provides that the parties' agreements can modify the Rules. Under that interpretation, the Terms of Service have modified Rule 9, and there is now no conflict between them. Since Rule 9 as modified no longer affords Intuit the right to go to small claims, it is unlikely to prevail on its cause of action for declaratory relief.

---

[12] At oral argument, Intuit cast this as a waiver issue. That puts cart before horse. Intuit wrote the Terms of Service and incorporated the Rules within those Terms. It isn't as though the Rules were a statute, having independent existence and conferring rights that all citizens have by default. Intuit wrote the Terms of Service to confer certain rights and deny others. The Rules were incorporated as a supplement to the Terms of Service. There is no reason the Terms of Service should have to include express waivers of the Rule provisions.

11

**Sherman Act**

Even if the court were to accept Intuit's reading of the contract, there is an independent reason why the Consumers cannot be taken to small claims court: their claims include causes of action under the Sherman Antitrust Act ("Sherman Act"). Sherman Act claims fall within the exclusive jurisdiction of the federal courts. United States Golf Assn. v. Arroyo Software Corp. (1999) 69 Cal.App.4th 607, 623. State courts, which would include small claims courts, "are precluded from considering such claims." Id. at 624.

Rule 9, quoted above, only permits a claim to be taken out of arbitration and filed in small claims if it "is within the jurisdiction of a small claims court." The Sherman Act claims are not. Whether or not arbitration claims can be severed is a question which has not been presented to this court, and truly belongs in the province of either the arbitrator or AAA. But even assuming they could be severed, the Sherman Act claims would have to remain in arbitration.[13]

Intuit points out that the Sherman Act causes of action were added by the Consumers *after* this action was filed. Intuit claims that these filings were made in an effort to forum-shop. Even if true, it isn't clear what part forum shopping has in this analysis. A federal district court concluded that the Consumers were forum-shopping when they tried to file a motion in federal court which would decide the same issues as this case. Jolly, *supra*, 2020 WL 5434503 at *9. But that same court also, after a lengthy analysis, concluded that the Sherman Act claims had some merit. Id. at *2-6. This court must decide whether Intuit is likely to prevail on its claim that Rule 9 applies to the various claims made by the Consumers.[14] The court cannot just ignore potentially meritorious portions of those claims simply because one party gained a tactical advantage by filing them.

At oral argument, Intuit suggested that the Sherman Act claims are a "de facto class action" which violates the class action waiver contained in the Terms of Service. The case on which Intuit relies involved many consumers filing serial individual suits seeking to stop the merger of two major telephone companies: AT&T with T-Mobile. AT&T Mobility LLC v. Bernardi (N.D. Cal. 2011) 2011 WL 5079549 at *6. But the court cannot decide whether that

---

[13] The Consumers suggest that their requests for injunctive relief under California's Unfair Competition Law is also beyond the jurisdiction of small claims court. Small claims courts only have the power to issue injunctions where a statute specifically authorizes such relief. Code of Civil Procedure § 116.220(a)(5) ("small claims court has jurisdiction in the following actions: …[f]or an injunction…only when a statute expressly authorizes a small claims court to award that relief"). Intuit responds that the Consumers cannot obtain that relief even in arbitration because it would amount to a "de facto class action." (Reply p. 10:26-11:8). The court need not adjudicate this sub-issue because (1) the Sherman Act claims are clearly beyond small claims jurisdiction, and (2) the arbitrator is fully capable of deciding what relief is available in arbitration on an Unfair Competition claim.

[14] Intuit takes the position that the court should only consider the state of the arbitration cases at the time it made its election, which was well before the Sherman Act claims were added. But the result of that would effectively be a court order severing the Sherman Act claims from the remainder of each arbitration demand. Whether or not claims already in arbitration should be severed is really a matter for the arbitrator to decide. And even if it were not, severing the Sherman Act claims only makes the practical problem worse. The number of cases Intuit must face would *double* as each demand was split in two. Intuit would still have to pay its arbitration fees for the Sherman Act half of each demand *and then* go into small claims court and litigate the other half. It is surely better for the court to take things as they now are, not as they might have been some months ago.

case applies (it seems slightly off-point) to create a waiver of the Sherman Act claims. Such a ruling would be a decision on the merits of an affirmative defense to the claim. As discussed elsewhere, the merits of a claim (and by corollary the merits of affirmative defenses) are not for this court. They are for the arbitrator.

**Summation**

A plain-language reading of the Terms of Service leads to the conclusion that only the Consumers have the right to take a case to small claims court. The Terms of Service can be harmonized with Rule 9 if they are interpreted as a modification of Rule 9, undertaken pursuant to Rule 1(c). Rule 9, as modified, cannot be invoked by Intuit. And even if Rule 9 could be invoked by Intuit, it would not apply. Rule 9 only permits a demand to be removed to small claims if it is within the jurisdiction of the small claims court. The Consumers' demands contain Sherman Act claims, which are not within the jurisdiction of the small claims court. For these independent reasons, Intuit has not shown a probability of prevailing on its invocation of Rule 9.

*Balance of Harm*

In ruling on a motion for preliminary injunction, trial courts are supposed to take a sliding-scale approach to analyzing the probability of prevailing and balance of harms factors. Butt v. State of California (1992) 4 Cal.4th 668, 678 ("the greater the plaintiff's showing on one, the less must be shown on the other"). However, if the court finds that there is no probability of prevailing, the balance of harms becomes irrelevant. See Jamison v. Department of Transportation (2016) 4 Cal.App.5th 356, 362. The issue in this case is one of contractual interpretation. Intuit has expressed their intention in their papers to move for summary adjudication almost immediately because their Complaint raises "purely legal issues that can be resolved without discovery." (Motion p. 21:27-22:2). The court is not likely to see any evidence beyond what it has already seen. And there is no indication that further briefing or research would unearth some authority which calls for a different result.

This is not meant to be discouraging to or disparaging of counsel in any way. At oral argument, Intuit urged this court to stay the arbitration until there could be a "full hearing on a complete record." Consideration of that request draws the query: what could be more full and complete than this motion?[15] Counsel's briefing and work on this case has been excellent, and doubtless they would come up with additional authority and arguments if given more time. But where lawyers are this good, there is a diminishing marginal return on their efforts. On a motion like this the best arguments are front and center, clean and clear. Additional time and effort just means that counsel must reach further and further into Hail Mary territory. And while they doubtless have the arm for the throw, the likelihood of a reception in traffic becomes vanishingly small. Therefore, there is no reason for the court to consider the balance of harms. Because Intuit has no probability of prevailing, no injunction can issue on this claim.

---

[15] Counsel said that this court has available summary judgment dates in November and December of this year. But summary judgment motions carry a 75-day statutory notice period (Code of Civil Procedure § 437c). If counsel filed their motion today, the earliest available notice-compliant date would be December 28, 2020, a date when the court has already planned to be dark. And the earliest available date in 2021 would be in late July or early August.

Intuit also requested that the court, if not inclined to issue the injunction, at least stay the arbitration pending Intuit's certain writ appeal of the court's ruling. Intuit asked that the court rule on its request in writing. The request is DENIED. Whether or not the arbitration should be stayed while the Court of Appeal reviews Intuit's writ petition is a matter for the Court of Appeal to decide.

Reasons for Stay: Pre-emption of SB 707

"SB 707" refers to Code of Civil Procedure §§ 1281.97-1281.99, enacted in 2019 and effective on January 1, 2020. These provisions require businesses engaged in employment or consumer arbitration cases to pay their fees within 30 days of the date they are due. If the business does not pay the fees on time, a wide range of penalties may be assessed. The possible penalties include: monetary sanctions, waiver of the right to proceed any further in arbitration, entry of default, civil contempt proceedings, and everything in between.

In its Complaint, Intuit asks this court for a declaration that these California statutes are pre-empted by the Federal Arbitration Act. But the court cannot issue such a declaration unless the issue is ripe. Artus v. Gramercy Towers Condominium Association (2018) 19 Cal.App.5th 923, 930. And here, the issue is certainly not ripe.

Intuit has not yet blown any of its fee deadlines. Nor is there any reason to believe that it will do so in the future. And the provisions of SB 707 do not create those fee deadlines; they only provide a list of penalties which *might* be incurred if the deadlines are blown. There is no current indication that Intuit will ever be subject to any of these penalties, much less a way to tell which of them would be incurred. None of the usual outlines of a controversy are present.

This claim was added to the complaint because Intuit felt that it was being trapped between two opposing forces: it had to either pay a bunch of arbitration fees it didn't think it owed or risk the penalties of SB 707. Intuit opted to fight on both fronts. But this court's ruling on the contract issue resolves that dilemma. Intuit has to stay in arbitration, so it owes those fees. SB 707 can no longer be characterized as an unfair mechanism coercing Intuit to give up its rights.

The Reply suggests that the court can resolve the pre-emption issue because it is a pure question of law, no facts required. (Reply p. 6:20-23). That takes matters a bit too far. It is true that Intuit is not obliged to sit quietly and suffer harm before it can even raise the question. But it is also true that courts do not issue advisory opinions. "Courts deal with actual, not hypothetical, controversies." Olsen v. Breeze, Inc. (1996) 48 Cal.App.4th 608, 622. Parties cannot simply come into court and pose the abstract question, "is this statute pre-empted by that one?" And courts cannot issue blanket pre-emption orders in a vacuum.

It is also worth noting that the penalties imposed by Code of Civil Procedure §§ 1281.97-1281.99 are not automatic.[16] Most of them are imposed by a judge, some by an arbitrator, and all

---

[16] At oral argument, Intuit stated that the monetary penalties are mandatory. Though that reading is technically correct, there is a meaningful difference between "mandatory" and "automatic." Whether the monetary penalties take the form of a fee/cost award (e.g. Code of Civil Procedure § 1281.97(b)(2)) or a sanctions award (e.g. Code of

except one[17] would require notice and an opportunity to be heard. Pre-emption arguments would be best made at those hearings, before the harm is incurred but after there is a sufficient record and a real controversy to decide.

As a final point, the Consumers observed at oral argument that were the court to take up the question and find SB 707 pre-empted, the proper remedy would not be to halt the *arbitration*. It would be to enjoin the *sanctions*. This contention has real merit. If SB 707 were wiped off the books, arbitrations would still go on as they always have. The only result would be that Intuit could decline to pay its fees without fear of an explicit statutory penalty. And the only reason the court would seek that outcome is if Intuit did not owe the fees. But the court has already determined that, under its own contract, Intuit *does* owe the fees.

In the absence of either (1) a real cognizable threat (something beyond just a bare possibility) that Intuit will be subject to one of SB 707's penalties, or (2) some indication that SB 707 is being used as leverage to make Intuit give up unrelated rights, this court has no basis to take up the pre-emption question. As already mentioned, there is no such threat. And this court's decision on the Rule 9 issue establishes that when Intuit pays the arbitration fees, they will simply be paying what they owe. Therefore, this portion of the complaint is unripe, and Intuit has failed to show a probability of prevailing on it. Because Intuit has no probability of prevailing, no injunction can issue.

<u>Conclusion</u>

There is such a thing as too much of a good thing. When Intuit wrote a broad arbitration agreement with a class action waiver, it gained protection from large class action verdicts. But it gave up the real administrative efficiencies that class actions bring. In basic civil procedure courses, class actions are explained as a boon to plaintiffs and to the system: no financially responsible person will sue to recover a $3 overcharge, and no court could handle all the cases if they did. This case seems to prove that class actions can be a boon to defendants too: as a chance to resolve things in one or two nice neat packages rather than risk death by 10,000 cuts. In this case, Intuit is a bit like the dog that caught the car. It got the Consumers' claims out of class litigation and into arbitration, then realized that this *was* a large class and that resolving the claims individually would be hopelessly expensive.

The question presented to the court here is whether Intuit has a viable way out of its own box. And the answer is no. The Consumers challenged this court's ability to even provide an answer. Intuit overcame that challenge by making an argument which depends on this court treating the arbitration agreement, contained in the Terms of Service, as modifying and controlling the AAA Rules. The Rules state that the arbitrator and AAA will interpret the Rules;

---

Civil Procedure § 1281.97(d)) they aren't immediately deducted from Intuit's account by the bank teller. Someone will have to ask that they be imposed, by making the appropriate motion before a court or an arbitrator. Such a request may never come. And if it does, then Intuit would have the chance to offer its pre-emption argument as a defense.

[17] Code of Civil Procedure §§ 1281.97(b)(1) and 1281.98(b)(1) allow the matter to be withdrawn from arbitration and refiled in court. At that point, the business would have to file (or renew) a motion to compel arbitration to secure a hearing on a pre-emption defense. Nothing in the statues prevents them from doing this.

the Terms of Service created an exception that permits this court to grant equitable relief. But having accepted that argument, the court cannot apply it piecemeal. The plain language of the Terms of Service also provides that only the Consumers can take complaints to small claims court. Following the same logic, that contract term is best construed as a modification of Rule 9, on which Intuit relies. Therefore, having compelled the Consumers *into* arbitration, Intuit cannot use Rule 9 to take them back *out of* arbitration.

Because Intuit has shown no probability of prevailing on its claim that Rule 9 applies and the Consumers should be in small claims court, the claim that the FAA pre-empts SB 707 is not ripe. SB 707 can no longer be described as a club which is being held over Intuit's head in an effort to get them to give up unrelated rights. There is no indication that Intuit will blow any fee deadlines, and no indication that Intuit will suffer any of the SB 707 penalties in the future. Therefore, any decision this court could issue on the pre-emption question at this stage would merely be an advisory opinion.

For all these reasons, Intuit has shown no probability of prevailing on any of the claims before this court. In the absence of such a showing, the court cannot issue a preliminary injunction. Therefore, Intuit's motion is DENIED.

Dated: 10/6/20

Judge of the Superior Court
Terry A. Green

16