1   MICHAEL N. FEUER, Los Angeles City Attorney (SBN 111529)
    Kathleen Kenealy, Chief Deputy City Attorney (SBN 212289)
2   Michael J. Bostrom, Assistant City Attorney (SBN 211778)
    Danielle L. Goldstein, Deputy City Attorney (SBN 257486)
3   Adam R. Teitelbaum, Deputy City Attorney (SBN 310565)
    OFFICE OF THE LOS ANGELES CITY ATTORNEY
4   200 North Spring Street, 14th Floor
    Los Angeles, CA 90012
5   Telephone: (213) 978-1868
    Facsimile: (213) 978-2286
6   Email: danielle.goldstein@lacity.org

7   *Attorneys for Amicus Curiae*
    LOS ANGELES CITY ATTORNEY'S OFFICE
8
    JAMES R. WILLIAMS, Santa Clara County Counsel (SBN 271253)
9   Greta S. Hansen, Chief Assistant County Counsel (SBN 251471)
    Tony LoPresti, Assistant County Counsel (SBN 289269)
10  Aaron Bloom, Deputy County Counsel (SBN 281079)
    Susan P. Greenberg, Deputy County Counsel (SBN 318055)
11  OFFICE OF THE COUNTY COUNSEL
    70 West Hedding Street, East Wing, Ninth Floor
12  San José, California 95110-1770
    Telephone: (408) 299-5900
13  Facsimile: (408) 292-7240
    Email:  susan.greenberg@cco.sccgov.org
14
15  *Attorneys for Amicus Curiae*
    OFFICE OF THE COUNTY COUNSEL
16  COUNTY OF SANTA CLARA

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE INTUIT FREE FILE LITIGATION | Case No. 3:19-cv-02546-CRB |
| | **[PROPOSED] BRIEF OF AMICI CURIAE THE OFFICE OF THE LOS ANGELES CITY ATTORNEY AND THE OFFICE THE COUNTY COUNSEL, COUNTY OF SANTA CLARA OPPOSING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL** |
| | Date: December 17, 2020 |
| | Time: 10:00 a.m. |
| | Courtroom: 6, 17th Floor |
| | Judge: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

INTERESTS OF AMICI AND SUMMARY OF ARGUMENT ................................................... 1

ARGUMENT .............................................................................................................................. 3

I.     The Proposed Settlement Is Not Fair and Reasonable to Consumers. ............................... 3

     A.     The settlement is improperly designed to exclude class members who, because of Intuit's conduct, never learned they could file for free. ...................... 5

     B.     The settlement is inequitably designed to ensure that only a tiny fraction of class members will file claims for relief. ............................................................ 6

     C.     The monetary settlement does not reflect the strength of the class allegations nor provide adequate restitution to affected consumers. ...................... 7

     D.     The non-monetary component is largely illusory and offers no benefit to the class. ................................................................................................................ 10

II.    Amici and Other Government Entities Are Well-Positioned to Seek Full and Fair Relief on Behalf of California Consumers—But the Proposed Settlement Threatens that Relief. .......................................................................................................... 11

     A.     Amici's litigation includes claims targeting the same misconduct at issue in this action. ................................................................................................................ 12

     B.     The proposed settlement may impede governmental enforcement efforts to obtain fair relief for consumers. ............................................................................ 14

CONCLUSION ......................................................................................................................... 15

i

[PROPOSED] BRIEF OF AMICI CURIAE THE OFFICES OF THE LOS ANGELES CITY ATTORNEY AND
COUNTY COUNSEL, COUNTY OF SANTA CLARA, OPPOSING PLFS' MOT. FOR PRELIM. APPROVAL
No. 3:19-cv-02546-CRB

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbott Labs. v. Superior Court,* 9 Cal. 5th 642 (2020) .................................................................. 1, 2

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ...................................................... 5

*Burden v. SelectQuote Ins. Servs.*, No. 10-cv-05966, 2013 WL 1190634
  (N.D. Cal. Mar. 21, 2013) ............................................................................................................ 5

*Chapman v. Skype*, 220 Cal. App. 4th 217 (Cal. Ct. App. 2013) ................................................... 10

*Crawford v. Equifax Payment Servs.,* 201 F.3d 877 (7th Cir. 2000) ............................................. 6

*Free Range Content, Inc. v. Google*, LLC, No. 14-cv-02329,
  2019 U.S. Dist. LEXIS 47380 (N.D. Cal. Mar. 21, 2019) .......................................................... 8

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..................................... 4

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) ......................................................................................................... 4

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 07-cv-05944,
  2016 WL 3648478 (N.D. Cal. July 7, 2016) ................................................................................ 8

*Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071 (9th Cir. 2017) ...................................................... 11

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................................. 4

*Lusk v. Five Guys Enters. LLC*, No. 17-cv-00762,
  2019 WL 7048791 (E.D. Cal. Dec. 23, 2019) ............................................................................. 6

*People v. IntelliGender, LLC*, 771 F.3d 1169, 1181-1182 (9th Cir. 2014) .................................... 14

*Rawa v. Migliaccio*, 934 F.3d 862 (8th Cir. 2019) ...................................................................... 8, 9

*Thompson v. Transamerica Life Ins. Co.*, No. 18-cv-05422,
  2020 WL 6145105 (C.D. Cal. Sept. 16, 2020) ............................................................................ 5

*Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370 (9th Cir. 1993) .................................................... 4

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ....................................................................... 9

*Walter v. Hughes Commc'ns, Inc.*, No. 09-cv-02136,
  2011 WL 2650711 (N.D. Cal. July 6, 2011) ................................................................................ 7

## Statutes

Cal. Bus. & Prof. Code § 17200 ...................................................................................................... 1

Cal. Bus. & Prof. Code § 17204 ...................................................................................................... 1

Cal. Bus. & Prof. Code § 17206 ...................................................................................................... 1

Cal. Bus. & Prof. Code § 17500 ...................................................................................................... 1

Cal. Bus. & Prof. Code § 17535 ...................................................................................................... 1

Cal. Bus. & Prof. Code § 17536 ...................................................................................................... 1

## Other Authorities

Barbara J. Rothstein and Thomas E. Willging, Federal Judicial Center, Managing Class Action
  Litigation: A Pocket Guide for Judges (3d ed. 2010) .................................................................. 2

ii

1

**TABLE OF AUTHORITIES (ctd.)**

Federal Trade Commission Staff Report, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019), *available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf ........................................................................ 7, 11

FTC Order Denying Petition to Quash in Part Civil Investigative Demand, FTC File No. 192-3119 (Aug. 17, 2020), *available at* https://www.ftc.gov/enforcement/cases-proceedings/petitions-quash/turbotax-inc ........................................................................ 12

J. Elliott, *The FTC Is Investigating Intuit Over TurboTax Practices*, ProPublica, Sept. 8, 2020, *available at* https://perma.cc/8SUC-9WP4 ........................................................................ 12

J. Elliott, *TurboTax Tricked Customers Into Paying to File Taxes. Now Several States Are Investigating It*, ProPublica, Dec. 19, 2019, *available at* https://perma.cc/7B2J-ENTQ .......... 12

*Manual for Complex Litigation (Fourth)* § 21.61 (2004), *available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf ........................................................................ 6

**Rules**

Fed. R. Civ. P. 23 ........................................................................ 4, 5, 6

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] BRIEF OF AMICI CURIAE THE OFFICES OF THE LOS ANGELES CITY ATTORNEY AND COUNTY COUNSEL, COUNTY OF SANTA CLARA, OPPOSING PLFS' MOT. FOR PRELIM. APPROVAL
No.  3:19-cv-02546-CRB

**INTERESTS OF AMICI AND SUMMARY OF ARGUMENT**

Amici, the Offices of the Los Angeles City Attorney (LACA) and Santa Clara County Counsel (SCCC), are California governmental entities with longstanding consumer-protection authority, including the authority to bring statewide law enforcement actions under the Unfair Competition Law (UCL) and the False Advertising Law (FAL) on behalf of the People of the State of California.  Cal. Bus. & Prof. Code §§ 17200 *et seq.* and 17500 *et seq.*[1]  In this capacity, amici bring particularly relevant experience to this matter:  LACA is currently litigating an action under the UCL targeting many of the same unfair and unlawful business practices alleged in this matter.  Similarly, SCCC is currently engaged in an FAL action alleging claims broader than, but overlapping with, those implicated by the proposed settlement.[2]  Together, amici submit this brief to express their objection to the proposed settlement.

As the California legislature has recognized in creating and maintaining UCL and FAL enforcement authority for entities like amici, local government enforcement offices play a critical role in ensuring compliance with California's cornerstone consumer protection laws.  *See, e.g., Abbott Labs. v. Superior Court*, 9 Cal. 5th 642, 661 (2020).  In particular, while in some circumstances private plaintiffs have standing to bring actions under the UCL and FAL, the proliferation of arbitration clauses and other limitations in consumer agreements have significantly limited the power of private parties to obtain full and fair relief under these laws.  Governmental enforcement entities like amici are not bound by such clauses, nor by the procedural hurdles of the class action mechanism.  Public prosecutors can also seek forms of relief, like civil penalties, that are unavailable to private plaintiffs.  Cal. Bus. & Prof. Code §§ 17206, 17536.  And, as the California Legislature and Supreme Court have recognized, enforcement by government entities like amici is ever-more vital given the Attorney General's

---

[1] California Business and Professions Code § 17204 provides the authority for the Los Angeles City Attorney, and the Santa Clara County Counsel under certain circumstances, to enforce the UCL.  California Business and Professions Code § 17535 provides authority for both offices to enforce the FAL.

[2] These actions have been coordinated in the Los Angeles County Superior Court as the *TurboTax Free Filing Cases*, No. JCCP 5067 (Super Ct. L.A. County, 2019).

1

1

2

3

limited enforcement resources.  *See, e.g.*, *Abbott Labs.*, 9 Cal. 5th at 661.  As a result, actions by local public prosecutors have become one of the increasingly limited ways to obtain meaningful relief for consumers.

4

5

6

7

8

9

10

11

12

13

Amici are well-positioned to fulfill the role created for them by the California Legislature. As reflected in amici's authority to seek injunctive relief, restitution, and penalties on behalf of *all* California consumers, amici are highly attuned to harms to, and the needs of, those consumers.[3] In other words, amici are exactly the sort of "government bodies . . .  [that] have the class-oriented goal of ensuring that class members receive fair, reasonable, and adequate compensation for any injuries suffered."  Barbara J. Rothstein and Thomas E. Willging, Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 17 (3d ed. 2010) (recommending that courts "[c]onsider allowing such entities to participate actively in the fairness hearing").  Amici are uniquely qualified to play that role in this case, given their ongoing investigation and prosecution of related claims on behalf of the People of the State of California.[4]

14

15

16

17

18

19

20

In amici's evaluation, the proposed settlement's confusing and burdensome claims process; low monetary amount; use of email notice, which can be expected to depress the participation rate; and toothless injunctive relief collectively render it inadequate, particularly given that this action seeks recovery based on compelling evidence that Intuit misled predominantly low-income consumers into purchasing expensive products comprising a significant portion of their income.  The proposed settlement also treats class members

21

22

23

24

25

26

[3] Indeed, amici have devoted significant resources to enforcement of California consumer protection laws, obtaining statewide relief against large corporations including national banks and pharmaceutical manufacturers.  For example, the Los Angeles City Attorney obtained significant restitution, $50 million in civil penalties, and established a complaint and mediation system in *People v. Wells Fargo & Co.,* No. BC580778 (Super Ct. LA. County, 2015), a UCL action against the largest bank in California for misusing customer information and opening customer accounts without customer permission.  The Santa Clara County Counsel is currently litigating *People v. Purdue Pharma L.P.*, No. 30-2014-00725287 (Super Ct. Orange County, 2014), an action by the Santa Clara County Counsel and Orange County District Attorney against opioid manufacturers under the FAL, UCL, and public nuisance statutes.

27

28

[4] While amici are, in their own litigation, the recipients of Intuit's confidential business information, no such information was used in the development of the content of this brief, and no such information is disclosed in it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

inequitably, excluding some class members from receiving restitution in violation of Rule 23.

These deficiencies are particularly objectionable because they represent Intuit's attempt to obtain a discount on consumers' restitution claims by settling this action before resolution of governmental enforcement actions.  Given the Ninth Circuit's recent arbitration order, this matter cannot proceed in this forum, and there would be no possibility of class-wide relief without Intuit's consent—consent Intuit is providing now, only after having obtained a settlement that would result in a disproportionately low recovery.  Amici believe this extreme imbalance of bargaining power is reflected in a proposed settlement that represents a significant, unfair, and unnecessary deprivation of relief to California consumers.

But while governmental actions, including amici's, can proceed in full force notwithstanding any arbitration agreement, Intuit will surely contend that the proposed settlement operates to *preclude* amici and other governmental entities from obtaining more robust restitution for the class members.  And the proposed settlement threatens consumers' opportunity to obtain fair relief in another way:  The requested injunction—reflected in the temporary stay included in the proposed order—purports to bar any class member participation in other lawsuits.  Prop. O. Granting Plfs' Mot. for Prelim. Approval (Dkt No. 162-1, Ex. A), 7.  This restriction threatens to hamper prosecution of amici's claims at a critical juncture in the People's actions.  At a minimum, this Court should reject this unjustified purported restriction on class members' participation in governmental investigations.

The proposed settlement is both inadequate on its own terms and threatens amici's efforts to obtain fair relief for California consumers.  Accordingly, this Court should deny the Motion for Preliminary Approval (the Motion).

## ARGUMENT

### I.    The Proposed Settlement Is Not Fair and Reasonable to Consumers.

When determining the fairness and reasonableness of a proposed settlement under Rule 23, courts look to a variety of non-exclusive factors, including the strength of the case; whether the settlement is equitably distributed across the class; the likelihood of establishing liability and

3

1   damages; and the range of reasonableness of the settlement fund in light of the best possible

2   recovery. *See* Fed. R. Civ. P. 23(e)(2); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

3   (9th Cir. 1998); *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993). Where, as

4   here, the parties seek both certification and settlement approval, courts must be "even more

5   scrupulous than usual" when examining the fairness of the proposed settlement. *In re Prudential*

6   *Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998); *see also In re*

7   *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

8       The proposed settlement on offer here does not fairly or reasonably compensate class

9   members for their harm. It treats class members inequitably, including by improperly excluding

10  those who did not know that they could file their taxes for free because of Intuit's misleading

11  conduct, such as its concealment of the Free File program and intentional creation of confusion

12  between products. While plaintiffs assert claims on behalf of these class members and the

13  settlement purports to release their claims, the claims form improperly requires class members to

14  attest that they "expected" to file for free. The attestation requirement will also confuse and

15  dissuade from participation even those who are not categorically excluded from restitution,

16  compounding the effects of the ineffective email-only notice method. These factors together

17  appear *designed* to result in a projected participation rate by class members that is half the median

18  participation rate for class settlements. And the parties rely on this participation rate to justify a

19  total settlement fund that is a tiny fraction of the amount paid by class members for services they

20  were eligible to obtain for free—just $40 million of Intuit's potential exposure of $1.9 billion.

21  *See* Mot. for Preliminary Approval (Dkt. No 162) at 16 (class comprises 19 million individuals

22  who paid about $100 each to file their taxes while eligible to file for free). And $12 million of

23  this will go to attorney's fees and costs, leaving a paltry $28 million to compensate the class. *See*

24  *id*. In reality, the parties propose to extinguish Intuit's liability, as well as any other claims that

25  might be asserted against Intuit, for a sum that works out to about $1.47 per consumer and 1.5

26  percent of the amounts paid on average by these consumers to Intuit. And even assuming the

27  validity of the projected 5 percent participation rate (leading to an average recovery of $28 per

28

4

claimant), that less-than-one-third refund contemplated by the parties is still on the far low end of spectrum.  While every settlement is necessarily a compromise, the combination of these shortfalls and deficiencies makes this one inadequate under Rule 23.

> A. *The settlement is improperly designed to exclude class members who, because of Intuit's conduct, never learned they could file for free.*

A threshold problem with the proposed settlement is that it does not "treat[] class members equitably relative to each other," as required by Rule 23.  Fed. R. Civ. P. 23(e)(2)(D).  In determining whether to grant preliminary approval, courts must ensure that the settlement does not "improperly grant preferential treatment to [] segments of the class." *Burden v. SelectQuote Ins. Servs.*, No. 10-cv-05966, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21, 2013).  Yet that is precisely what the settlement does here.  The claim form requires class members to attest that they "expected" filing their tax return would be free to receive any of the settlement funds.[5]  *See* Settlement Agreement (Dkt. No. 162-1), Ex. 2.  This attestation requirement has no justification, and in fact is inconsistent with plaintiffs' (and amici's) allegations that Intuit took a number of steps to prevent consumers from ever learning of their eligibility to file for free, including by hiding its presence when consumers conducted internet searches; failing to disclose the existence of its Free File product when it could be expected to do so, such as in lists of all of its products; and intentionally creating confusion between its commercial paid products and government-sponsored free products.  *See* Consolidated Class Compl. (Dkt. No. 80) ¶¶ 75-80, 125.

Courts generally do not allow settlements to "partition[] a class so as to provide relief to one segment and to deny it completely to another."  *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007); *see also Thompson v. Transamerica Life Ins. Co.*, No. 18-cv-05422, 2020 WL 6145105, at *12 (C.D. Cal. Sept. 16, 2020) (finding a settlement fair and reasonable in

---

[5] Compounding this confusion, the Motion says that only class members who "understood they could file for free under the Free File Program but nevertheless paid a fee to use TurboTax" can file a claim.  Mot. for Preliminary Approval at 1 (Dkt. No. 162).  This even narrower conception of who can obtain restitution—those who specifically knew of their eligibility for the Free File program—appears to be inconsistent with the claims form itself and, assuming Intuit seeks to bind the parties to the language in the motion, would categorically exclude yet a larger group of class members from recovery.

part because it "treats all Class Members the same and draws no distinction" between them). The settlement terms are especially concerning because they release claims for all class members, including those who cannot receive settlement funds solely because they did not expect to file for free. *See Lusk v. Five Guys Enters. LLC*, No. 17-cv-00762, 2019 WL 7048791, at *10 (E.D. Cal. Dec. 23, 2019) (explaining that "[o]verly-broad releases of liability may indicate that the class's relief is inadequate and the class's treatment is inequitable."). The Court should not approve a settlement that requires a segment of class members to release their claims and yet precludes them from obtaining relief.

      B.     *The settlement is inequitably designed to ensure that only a tiny fraction of class members will file claims for relief.*

The ineffectiveness of the "proposed method of distributing relief to the class" further weighs against preliminary approval, as a settlement is inadequate if it is designed to only benefit a small percentage of the class. Fed. R. Civ. P. 23(e)(2)(C)(ii); *Crawford v. Equifax Payment Servs.,* 201 F.3d 877, 882 (7th Cir. 2000). A settlement that imposes "strict eligibility conditions" or "cumbersome claims procedures" means fewer class members will ultimately claim any benefits. *Manual for Complex Litigation (Fourth)* § 21.61 (2004), *available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf.

Here, the parties have created a claims process that includes a series of impediments to class members receiving relief and will, by the parties' own estimation and intent, result in just a fraction of them obtaining any benefit. The claims process puts the onus on class members to sign a form with a certification many will find confusing, as it may not be clear what it means to have "expected" to file taxes for free. *See* Settlement Agreement, Exhibit 2. Moreover, the claim form will be emailed to class members unless they specifically request a mailed copy or the email bounces back, meaning that affected consumers who fail to receive or read that email—including those for whom the email goes straight to their spam folder—may have their claims released without receiving any notice of the settlement. Email notice campaigns have the lowest average claim rates of any distribution method. *See* Federal Trade Commission Staff Report, *Consumers*

<div align="center">6</div>

*and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019) (FTC Staff Report), 25-27, *available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. Finally, class members may be even less inclined to complete and file the claims form when they compare the size of potential recovery to the time and effort required to submit a claim. *See Walter v. Hughes Commc'ns, Inc.*, No. 09-cv-02136, 2011 WL 2650711, at *15 (N.D. Cal. July 6, 2011).

The parties unsurprisingly estimate that in light of this claims process, just 1 to 10 percent of the Settlement Class will submit a claim, with a likely claims rate of between 2.5 and 7.5 percent. *See* Mot. for Preliminary Approval at 16. Notably, the 5 percent midpoint claims rate is half of the median claims rate found by the Federal Trade Commission in class action settlements—and significantly lower than could be expected with other notice methods. S*ee* FTC Staff Report at 2, 21, 25-27, 55 (finding that that there are "are marked differences in the claims rates across notice methods" and that most recipients do not understand an email notice is not promotional and do not open it).

Moreover, the parties have paired this difficult claims procedures with a similarly onerous opt-out process, which would require a class member to create and print an opt-out request providing several pieces of detailed information, sign the request, and mail a paper copy.[6] *See* Settlement Agreement, Exhibit 1. When viewed in conjunction, the claims and opt-out processes appear designed to maximize the number of consumers who release their claims against Intuit, while minimizing the number of consumers who receive any monetary benefit in exchange for that release.

C.    *The monetary settlement does not reflect the strength of the class allegations nor provide adequate restitution to affected consumers.*

The difficult claims process and low participation rate cannot and should not be used to

---

[6] It is amici's understanding that the deficiencies in the opt-out process will be addressed more fully in a brief filed by proposed intervenors.

prop up a monetary settlement that is neither consonant with the merits of the class claims nor close to making whole the millions of affected consumers.  As noted above, Intuit is seeking to release approximately $1.9 billion in potential liability in exchange for an approximately $28 million in restitution for the class.  *See* Mot. for Preliminary Approval at 16.  But even the selected exemplars to which the parties contend this settlement "compares favorably," *see id.* at 17, provided settlement funds with a higher percentage of the defendant's total exposure than the 1.5 percent (after attorney's fees) of Intuit's exposure proposed here.  *See In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 07-cv-05944, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) (20% of total alleged class injury, resulting in total payment to indirect purchasers of over $500 million); *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*, No. 17-cv-00564, Dkt. Nos. 335 at 3-4, 350 at 3-5, 352 (N.D. Cal. Jan. 10, 2019) (settlement in which defendant paid approximately 25 percent of the total estimated liability and individual claimants received over four times the alleged overcharge, after court had already ruled that primary alleged misrepresentation was a truthful statement); *Free Range Content, Inc. v. Google*, LLC, No. 14-cv-02329, 2019 U.S. Dist. LEXIS 47380, at *3-8, *11-12 (N.D. Cal. Mar. 21, 2019) (monetary fund equal to 6 percent of funds withheld from plaintiffs, resulting in about 40% reimbursement to participating class members, after court dismissed some claims and expressed skepticism about others); *see also Woodard v. Labrada*, No. 16-00189, Dkt. Nos. 241, 321 (C.D. Cal. Oct. 7, 2019) (settlement fund of 37 percent of total potential liability—$1.3 million fund with $3.5 million in liability); *Rawa v. Migliaccio*, 934 F.3d 862, 866 (8th Cir. 2019) (settlement fund of approximately 13 percent of total liability—$21.5 million when the company made $164 million).

Likely recognizing that a 1.5 percent recovery rate cannot be justified, the parties appear to argue that the monetary component is adequate because, assuming the 5 percent midpoint claims rate described above, class members will receive a $28 refund.  *See* Mot. for Preliminary Approval at 17.  But even accepting this low participation rate—which is unjustified for the reasons described above—this settlement fares poorly.  Many recent class settlements seeking restitution for improper payments or overcharges have provided at least a 50 to 100 percent

1  refund of either purchase price or overcharged amount to participating class members.[7]

2  Nor can the parties justify the low monetary recovery with supposed inadequacies in the

3  strength of plaintiffs' case. *See Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)

4  (explaining that the "single most important factor in determining whether a settlement is fair,

5  reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of

6  the settlement"). The allegations against Intuit—both here and in amici's lawsuits—are strong.

7  Plaintiffs have marshaled compelling evidence that Intuit made intentionally deceptive

8  representations that filing would be "free, free, free," "guaranteed free" or "$0"; deliberately and

9  effectively created significant confusion between its paid products and a truly free government-

10  sponsored program; and hid the existence of the government-sponsored product that actually

11  would allow class members to file for free.[8]

12  Contrary to the parties' assertions, Intuit does not have a "robust set of defenses" or

13  "challenging arguments" for plaintiffs to overcome. Mot. for Preliminary Approval at 14-16. For

14  instance, Intuit's purported "disclaimers" on their commercial advertising and commercial "free"

15  product were plainly inadequate to remedy its intentional deceptions. *See* Mot. for Preliminary

16  Approval at 15; Consolidated Class Complaint ¶¶ 86, 87, 93 (screenshots of advertisements with

17  inadequate or nonexistent disclaimers). And in any case, courts have explicitly held that a

---

[7] *See, e.g.*, *Rawa v. Migliaccio*, 934 F.3d 862, 866 (8th Cir. 2019) (settlement awarding a 50 percent refund with a 13 percent claims rate); *Pettit v. Procter & Gamble*, No. 15-cv-02150, Dkt. Nos, 117, 129 (N.D. Cal. Nov. 26, 2018) (settlement including substantial injunctive relief and a 15 percent refund for each product regardless of claims rate when plaintiffs believed they could only obtain a 9.19 percent refund at trial); *In re Cobra Sexual Energy Sales Practices Litigation*, No. 13-05942, Dkt. No. 287 (C.D. Cal. Oct. 23, 2020) (preliminarily approved settlement seeking to award a $10 refund for a $15 purchase price); *Thor v. L.A. Hardwood Flooring, Inc.*, No. BC685349 (Cal. Super. Ct. Dec. 5, 2019) (settlement awarding between 50 and 100 percent of original purchase price); *Cicciarella v. Califia Farms*, No. 19-cv-08785, Dkt. Nos. 13, 14, 27 (S.D.N.Y. July 17, 2020) (settlement awarding between 81 and 163 percent of the inflated portion of the price consumers paid for the product at issue).

[8] *See, e.g.*, Dkt. No. 116-2 (Grille Decl.) Exs. 1-4, 6-8, 10, 24-25, 26 at 6-7, 28 (screenshot showing that the first Google search result for query "irs free file taxes" is an advertisement for Intuit's commercial product), 38 (Intuit document acknowledging that its website "lists Free, Free, Free and the customers are assuming their return will be free"); Dkt. No. 116-3 (Dohrmann Decl.) ¶ 5-7, Dkt. No. 116-4 (Brougher Decl.) ¶ 5-7, Dkt. No. 116-5 (Chandler Decl.) ¶ 5-7; Dkt. No. 90 (Joint Case Mgmt. Statement) at 6 (Intuit admitting to previously de-indexing TurboTax Free File, such that it would not appear in organic internet search results).

9

statement can be unlawfully deceptive even if it includes a disclaimer.  *See, e.g.*, *Chapman v. Skype*, 220 Cal. App. 4th 217, 228 (Cal. Ct. App. 2013).  Similarly, Intuit's contention that some class members used its commercial products for more than one year, *see* Mot. for Preliminary Approval at 16, is of little moment given that plaintiffs allege that Intuit took actions designed to prevent class members from *ever* learning that they could file for free through the Free File program.  Further, Intuit allegedly redirected, without notice, consumers who did attempt to access Free File back to their commercial website.  See Consolidated Class Complaint ¶ 81.  In other words, none of the proffered justifications can justify denying recovery for 98.5 percent of the payments made by class members.[9]

In sum, the settlement is inadequate both when viewed in terms of the estimated refund provided to participating class members and the settlement fund as a percentage of Intuit's exposure.  And it is particularly unfair for the low-income consumers for whom the difference between this nominal restitution and a more reasonable and fair rate of recovery could have meaningful impact.

    D.    *The non-monetary component is largely illusory and offers no benefit to the class.*

Nor do the non-monetary components meaningfully remedy the shortfall in consideration for the broad class release.  Plaintiffs seek injunctive relief to prevent Intuit from falsely advertising that its commercial products will be free, diverting taxpayers to paid products, and using confusing tradenames that mislead consumers.  *See* Consolidated Class Compl., Prayer for Relief.  But the "reforms" Intuit agrees to consist of a non-binding promise to follow FTC guidelines "to the extent practicable" and promises to take minimal actions that do not meaningfully go beyond what Intuit is already doing.  *See* Mot. for Preliminary Approval at 8. Intuit's Memorandum of Understanding with the IRS already requires Intuit to send out reminder

---

[9]  While Ninth Circuit's arbitration decision undercut Plaintiffs' bargaining power, this Court should evaluate the strength of the claims on their own terms because there are several other enforcement actions that do not share such bargaining limitations. As discussed below, amici's actions do not need to be arbitrated.  *See infra* at 12-15.

emails to returning Free File users and to discontinue its previous practice of de-indexing the Free File landing page from organic search results.  *See id.* at 8; Eighth Memo. of Understanding § 4.32.4;[10] Addendum to Eighth Memo. of Understanding § 1.[11]

And while Intuit agrees to disclose its Free File website on its commercial website, Intuit has argued that it already disclosed information about Free File on its website through blog posts buried in the customer support section of the website, which users are unlikely to see.  There is no requirement in the settlement that the disclosures be any more prominent.  Additionally, to the extent the parties contend that the class notice is itself a portion of the non-monetary recovery*, see* Mot. for Preliminary Approval at 8, a class notice is a feature common to every class settlement, rather than a "reform."  *Id.*  In any case, the email-only notice contemplated here is an ineffective mode of outreach even for a class notice.  *See* FTC Staff Report at 25.  A single paragraph among a nine-page notice containing largely legalese certainly is no substitute for meaningful reforms targeted to providing accurate information to consumers while they are in the process of trying to figure out how to file their taxes.

In short, none of these proposals require that Intuit take action to curb its unfair and deceptive practices.  *See Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017) (overturning approval of class settlement where injunctive relief did "not obligate [defendant] to do anything it was not already doing").  Indeed, the parties do not even mention the non-monetary components in their legal analysis of the settlement's adequacy.  *See* Mot. for Preliminary Approval at 14-17.

## II.     Amici and Other Government Entities Are Well-Positioned to Seek Full and Fair Relief on Behalf of California Consumers—But the Proposed Settlement Threatens that Relief.

The inadequacy of the proposed settlement is particularly stark given the existence of better alternatives:  Amici are currently engaged in litigation that overlaps with the claims

---

[10] *Available at* https://www.irs.gov/pub/irs-utl/Eight%20Free%20File%20MOU.pdf.
[11] *Available at* https://www.irs.gov/pub/irs-utl/FFI%20Signed%20MOU%20Addendum%2012-26-19.pdf.

released by the proposed settlement.  Likewise, publicly available information indicates that both the Federal Trade Commission[12] and several state attorneys general[13] are investigating the conduct at issue.[14]  Governmental entities have no need to overcome arbitration clauses in consumer agreements (to which they are not a party) or obtain Intuit's permission to litigate these claims.  Nonetheless, settlement of this action on the proposed terms would not only fail to fairly and reasonably compensate harmed consumers, but also could unnecessarily and inappropriately deprive low-income consumers nationwide of further relief by hindering governmental enforcement actions.  Defendants should not be permitted to take advantage of the procedural posture of this case to avoid paying vulnerable consumers fair compensation for their losses.

     *A.*    *Amici's litigation includes claims targeting the same misconduct at issue in this action.*

In amici's ongoing actions against Intuit, amici allege two sets of claims on behalf of the People of the State of California.  Both significantly overlap with the allegations in this case.  Both LACA and the SCCC seek injunctive relief, civil penalties, and restitution on behalf of harmed consumers throughout the State of California.

In the LACA action, the People by and through the Los Angeles City Attorney allege that Intuit violated the UCL by deliberately hiding its Free File product (previously called "TurboTax Freedom Edition" or "TurboTax Free File Program"), which was available for free to low-income Americans regardless of tax complexity, while at the same time aggressively marketing as "Free"

---

[12] FTC Order Denying Petition to Quash in Part Civil Investigative Demand, FTC File No. 192-3119 (Aug. 17, 2020), *available at* https://www.ftc.gov/enforcement/cases-proceedings/petitions-quash/turbotax-inc; J. Elliott, *The FTC Is Investigating Intuit Over TurboTax Practices*, ProPublica, Sept. 8, 2020, *available at* https://perma.cc/8SUC-9WP4.

[13] J. Elliott, *TurboTax Tricked Customers Into Paying to File Taxes. Now Several States Are Investigating It*, ProPublica, Dec. 19, 2019, *available at* https://perma.cc/7B2J-ENTQ.

[14] Amici anticipate that, while such governmental entities may have views on the proposed settlement, lengthy internal approval and authorization procedures, paired with this Court's Order setting the deadline to file amicus briefs within less than a week of its Order, may prevent them from expressing those views at this stage of the litigation, particularly in view of the intervening Thanksgiving holiday.  Amici, whose internal processes are significantly more streamlined, nonetheless submit this brief at this stage in the hope that their input can lead to a productive process before expenditure of significant resources in support of an inadequate settlement.

12

[PROPOSED] BRIEF OF AMICI CURIAE THE OFFICES OF THE LOS ANGELES CITY ATTORNEY AND COUNTY COUNSEL, COUNTY OF SANTA CLARA, OPPOSING PLFS' MOT. FOR PRELIM. APPROVAL
No.  3:19-cv-02546-CRB

an inferior, watered-down version of the software that required many taxpayers to upgrade to a paid product (similarly—and confusingly—called TurboTax "Free Edition").  Ex. A, LACA Comp. ¶ 4.  Intuit's actions tricked low-income consumers into paying Intuit for products that they did not need.  For example, Intuit ensured customers it would help them select the best or "right" TurboTax products for them based on their unique tax needs, while only ever recommending its commercial products (and never its Free File product)—even for Free File-eligible customers.  *Id.* ¶ 54-58, 78.  Intuit also changed the coding on its Free File website to ensure that its Free File landing page would be inaccessible through organic search results, such that organic searches would be directed to its commercial products.  *Id*. ¶¶ 44-48. And once Intuit successfully funneled customers into its commercial products, Intuit then falsely instructed Free File eligible customers that they "need" to purchase Intuit's paid products to "accurately report" certain income.  *Id.* ¶ 64.  LACA alleges that this scheme, which by definition targeted the lowest-income consumers, worked:  While more than 100 million taxpayers were eligible to file for free through the Free File program in fiscal year 2018, fewer than 2.5 million—less than 2.5 percent of eligible taxpayers—actually did so.  *Id.* ¶ 3.

In the SCCC action, the People by and through the Santa Clara County Counsel allege that Intuit's advertising of TurboTax was false and misleading in violation of the FAL.  Like LACA and plaintiffs here, SCCC alleges that Intuit used deceptive advertising to prevent low-income consumers from finding and filing for free through the Intuit Free File product and to instead steer those consumers to Intuit's revenue-generating products.  *See, e.g.*, Ex. B, SCCC Compl. ¶¶ 1-10, 57-63.  SCCC further alleges that Intuit's marketing of the TurboTax Free Edition was deceptive irrespective of consumers' eligibility for Intuit's Free File product.  Intuit has drawn consumers to its products with extensive advertising that they can use the Free Edition and file for free.  *Id*. ¶¶ 6-7.  But Intuit has designed the Free Edition to prevent most consumers from actually filing for free, a quintessential bait-and-switch scheme.  *Id*.  Once consumers access the Free Edition, spend time entering their tax information, and disclose any one of numerous circumstances, Intuit deceptively informs them an upgrade is "required" to "accurately file," and further misleads them

1    about the price of the upgrade by, for example, encouraging them to use their refund to pay for

2    the upgrade without informing them of the additional significant charge for doing so. *Id*. ¶¶ 7, 52.

3          B.    *The proposed settlement may impede governmental enforcement efforts to*

4                *obtain fair relief for consumers.*

5          With the Ninth Circuit's recent decision forcing the claims in this action to arbitration,

6    class counsel's leverage to demand a fair settlement in this action plummeted.  Resolution of the

7    merits of this action in this court on a class-wide basis can only proceed if Intuit consents, and the

8    proposed settlement undoubtedly reflects a steep discount to account for this reality.[15]  Amici and

9    other governmental entities face no such barrier.  As a result, amici are well-positioned to obtain

10   relief for California consumers that is more robust than the proposed settlement—so long as the

11   settlement itself does not prevent them from doing so.

12         The settlement threatens amici's and other governmental entities' enforcement efforts in at

13   least two ways.  First, Intuit will undoubtedly argue that the proposed settlement bars any

14   government claim that overlaps with it.  Amici routinely face such claims, though they are

15   meritless.  *See e.g.*, Defs' Demurer, *People v. CMI Transp. et al.*, No. BC689321 (Super Ct. L.A.

16   County June 1, 2018) (claiming res judicata effect on entire public 17200 enforcement action as a

17   result of private class settlement).  However, there is a possibility that courts would conclude that

18   some segment of the claims for restitution covered by amici's actions are, in fact, precluded by

19   the proposed settlement.  *See People v. IntelliGender, LLC*, 771 F.3d 1169, 1181-1182 (9th Cir.

20   2014).  In other words, if the proposed settlement were approved, the restitution amount

21   negotiated by Intuit in a position of extreme leverage could be used to impede government

22   authorities' ability to obtain greater restitution for consumers, even if those entities could prove in

23   court that more robust relief is warranted.  It is for this reason that courts encourage government

24

25   ---
     [15] On the other hand, the Motion does not argue that the proposed settlement reflects any
26   corresponding value to class members reflecting the anticipated cost to Intuit of arbitration.  Nor
     would it be reasonable to infer that it does:  Class counsel does not purport to intend to pursue
27   arbitration on behalf of any class member going forward and therefore has little leverage or
     incentive to demand either maximum preservation of members' opt-out rights or that the
28   proposed settlement reflects a credit for the avoided cost of arbitration.

14

entities to "participate, comment, or object during the Rule 23 class action settlement approval process … to 'provide a check against inequitable settlements.'" *Id.* at 1182 (citation omitted).

Second, the Motion requests that this Court temporarily bar class members from "participating in any way in any other lawsuit or legal action against Defendant based on the facts and circumstances at issue" pending final approval.  Prop. O. Granting Plfs' Mot. for Prelim. Approval (Dkt No. 162-1, Ex. A), 7.  Read broadly, as Intuit will surely argue, this provision would prevent witnesses from cooperating with the development of amici's claims, or potentially in assisting with the ongoing investigations of other governmental entities.  While not permanent, if granted and given a maximalist interpretation, such an order would significantly impede LACA's ability to respond to a pending Motion for Summary Adjudication in LACA's action, to which a response is due in February 2021.  LACA is currently working with affected consumers to develop evidence in support of their opposition to the Summary Adjudication Motion, and a bar on these activities could be catastrophic for their ability to adequately respond, as well as impeding SCCC's ability to effectively develop its own case.  At a minimum, the Court should deny this request or explicitly exempt from the scope of the stay participation in development of amici's, or other governmental entities', litigation and investigations.

## CONCLUSION

For the foregoing reasons, amici respectfully submit that this Court should deny Plaintiffs' Motion for a Preliminary Approval of the Class Action Settlement.

Respectfully submitted,

Dated:  November 30, 2020

OFFICE OF THE LOS ANGELES CITY ATTORNEY

By:   */s/ Danielle L. Goldstein*
MICHAEL N. FEUER (SBN 111529)
Los Angeles City Attorney
Kathleen Kenealy (SBN 212289)
Michael J. Bostrom (SBN 211778)
Danielle L. Goldstein (SBN 257486)
Adam R. Teitelbaum (SBN 310565)*
200 North Spring Street, 14th Floor

15

Los Angeles, CA 90012
Telephone: (213) 978-1882
Email: danielle.goldstein@lacity.org

*N.D. Cal. admission pending*

*Attorneys for Amicus Curiae*
LOS ANGELES CITY ATTORNEY'S OFFICE

*/s/ Susan P. Greenberg*
JAMES R. WILLIAMS (SBN 271253)
Greta S. Hansen (SBN 251471)
Tony LoPresti (SBN 289269)
Aaron Bloom (SBN 281079)
Susan P. Greenberg (SBN 318055)
70 West Hedding Street, East Wing, Ninth Floor
San José, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
Email:  susan.greenberg@cco.sccgov.org

*Attorneys for Amicus Curiae*
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA

**ATTESTATION**

I attest that for all conformed signatures indicated by an "/s/," the signatory has concurred in the filing of this document.

Dated: November 30, 2020                     */s/ Danielle L. Goldstein*

Exhibit A to the [Proposed] Brief of
Amici Curiae Opposing Plaintiffs'
Motion for Preliminary Approval:

Los Angeles City Attorney's Complaint

MICHAEL N. FEUER, City Attorney (SBN 111529)
JAMES P. CLARK, Chief Deputy City Attorney (SBN 64780)
MICHAEL J. BOSTROM, Assistant City Attorney (SBN 211778)
CONNIE K. CHAN, Deputy City Attorney (SBN 284230)
ADAM R. TEITELBAUM, Deputy City Attorney (SBN 310565)
OFFICE OF THE LOS ANGELES CITY ATTORNEY
200 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: (213) 978-1864
Facsimile: (213) 978-2286
Email: connie.chan@lacity.org

Attorneys for Plaintiff,
THE PEOPLE OF THE STATE OF CALIFORNIA

*NO FEE – CAL. GOVT. CODE § 6103*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>INTUIT INC., a Delaware Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.:   19STCV15644<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUS. & PROF. CODE §§ 17200 *ET SEQ.*)** |

## **INTRODUCTION**

1.     Plaintiff, the People of the State of California (the "People"), by and through Los Angeles City Attorney Michael N. Feuer, brings this action under the California Unfair Competition Law, Business and Professions Code §§ 17200 *et seq.*, against Defendants Intuit Inc. and Does 1 through 50, inclusive (collectively "Intuit" or "Defendant"), maker of the market-leading "TurboTax" electronic tax preparation and filing software.  Intuit has for years defrauded the lowest earning 70 percent of American taxpayers—who are entitled under a private industry agreement with the IRS to file their taxes online for free using commercial

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

products—by actively undermining public access to the IRS's "Free File" program, while simultaneously employing deceptive and misleading advertising and design schemes intended to induce taxpayers into unnecessarily purchasing expensive TurboTax products.  The People seek injunctive relief to stop Intuit's deceptive business practices, restitution for all Californians who at any time during the four years prior to the filing of this Complaint paid Intuit for TurboTax products when they were in fact eligible to file for free under the IRS's "Free File" program, and civil penalties to deter similar conduct in the future.

2.      Since 2002, Intuit and a consortium of electronic tax filing companies have promised to provide a free version of their commercial products to low-income Americans, in exchange for the IRS's commitment to "not compete with the Consortium in providing free, online tax return preparation and filing services to taxpayers."[1]  Under the IRS's "Free File" program, the lowest earning 70 percent of taxpayers based on Adjusted Gross Income ("AGI") (currently anyone with an AGI of $66,000 or less) are eligible to prepare and file their federal tax returns, no matter how complicated, through any of several commercial providers at no cost.

3.      But only a tiny fraction of eligible taxpayers actually benefit from the IRS and private industry's "Free File" agreement.  While *more than 100 million taxpayers* were eligible to file for free through the Free File program in fiscal year 2018, fewer than 2.5 million—*less than 2.5 percent* of eligible taxpayers—actually did so.

4.      This abysmal participation rate is attributable, at least in part, to Intuit's deliberate efforts to hide the availability of its high-quality Free File product (called TurboTax "*Freedom* Edition"), while at the same time aggressively marketing as "Free" an inferior, watered-down version of their software that is useless to all but those with the simplest of tax returns (similarly—and confusingly—called TurboTax "*Free* Edition").  Worse still, after luring low-income consumers to begin preparing their returns with the limited-functionality "Free Edition" software, and even after those consumers input information revealing themselves to be eligible for TurboTax's full-featured Free File product, Intuit then manipulates them into paying

---

[1] Internal Revenue Service, "Free Online Electronic Tax Filing Agreement" (Oct. 30, 2002), sec. II, 67 Fed. Reg. 67,247, 67,249 (Nov. 4, 2002) ("2002 Free File Agreement").

for product upgrades and upsells—marketing tactics that are specifically prohibited from being used on Free Filers under the terms of the IRS agreement.

5.      As discussed in greater detail below, Intuit's unfair and deceptive business practices have real world implications.  To cite just one example, upon information and belief, Intuit deceived a California resident into unnecessarily spending $169—more than 1% of her $14,500 annual salary—on a TurboTax product, when she was clearly eligible for free tax preparation and filing.  It is doubtless that thousands, if not millions, of consumers have been similarly harmed.

## PARTIES

6.      Plaintiff People is the sovereign power of the State of California designated by the Unfair Competition Law, Business and Professions Code §§ 17200 *et seq.* (the "UCL"), to be the complaining party in civil law enforcement actions brought under that statute.  *See* Bus. & Prof. Code § 17204.  The People have an interest in ensuring that the individuals and entities doing business in this state do not deceive consumers, particularly those who are economically disadvantaged and underserved.

7.      Defendant Intuit Inc. is a Delaware Corporation with its principal place of business in Mountain View, California.  Intuit is the maker of "TurboTax," a series of widely used electronic tax preparation and filing software products and services, and is a member of the "Free File Alliance," a nonprofit coalition of 12 tax software companies under an agreement with the IRS to provide free electronic tax services to eligible American taxpayers.  In fiscal year 2018, Intuit reported revenue of nearly $6 billion, up 15 percent from fiscal year 2017, of which approximately $2.5 billion resulted from its consumer-facing business.[2]

8.      The true names and capacities of the defendants sued herein as Does 1 through 50, inclusive, are unknown to the People.  The People therefore sue these defendants by such fictitious names.  When the true names and capacities of these defendants have been ascertained, the People will seek leave of this Court to amend this Complaint to insert in lieu of such fictitious names the true names and capacities of the fictitiously named defendants.  The

---

[2] Intuit Inc., Annual Report (Form 10-K), at 32 (Aug. 31, 2018).

3

People are informed and believe, and thereon allege, that these defendants participated in, and in some part are responsible for, the unfair and fraudulent acts alleged herein.  Does 1 through 50 include unknown individuals who conspired with Intuit concerning the unfair and fraudulent acts alleged herein.  Does 1 through 50 also include agents of Intuit acting within the course and scope of their duties.  Each reference in this Complaint to Intuit or Defendant is also a reference to all defendants sued as Does.

9.     The People allege that, in addition to acting on its own behalf, all of the acts and omissions described in this Complaint by Defendant were duly performed by, and attributable to, all defendants, each acting as agent, employee, alter ego, joint enterprise and/or under the direction and control of the others, and such acts and omissions were within the scope of such agency, employment, alter ego, joint enterprise, direction, and/or control.  Any reference in this Complaint to any acts of Defendant shall be deemed to be the acts of each defendant acting individually, jointly, or severally.  At all relevant times, each defendant had knowledge of and agreed to both the objectives and course of action, and took the acts described in this Complaint pursuant to such agreements, resulting in the unfair and fraudulent acts described herein.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to Article VI, section 10 of the California Constitution.

11.     This Court has personal jurisdiction over Defendant because Intuit's principal place of business is in California, and Intuit purposefully avails itself of California markets.

12.     Venue is proper in this Court pursuant to Code of Civil Procedure § 393 because violations of law that occurred in the City and County of Los Angeles are part of the cause upon which the People seek recovery of restitution and penalties imposed by statute.

//
//
//
//
//

## GENERAL ALLEGATIONS

**I.      The IRS's Free File Program**

      **A.      To Fight for Its Survival and Stave Off Public Sector Competition, Intuit Promised to Provide Free Tax Filing Services to Low-Income Americans.**

13.      Intuit has long been the market leader in the online tax preparation software industry, today with reportedly an approximately 60 percent market share.  According to Intuit's website, "[m]ore federal returns are prepared with TurboTax than any other tax preparation provider, totaling over 36 million federal tax returns from last year alone."[3]

14.      In the early 2000s, already facing competitive pressures from various state governments beginning to offer their own free online tax services to state taxpayers, Intuit was highly motivated to prevent the federal government from doing the same.  As Intuit explained in its Form 10-K SEC filing for fiscal year 2004 describing "risks that could affect future results," "[a]gencies of the U.S. government have made several attempts during the two most recent presidential administrations to offer taxpayers a form of free tax preparation software and filing service."[4]

15.      Ultimately, however, the federal government did not develop its own free online federal tax filing service.  Instead, on October 30, 2002, the IRS entered into the "Free Online Electronic Tax Filing Agreement" ("Free File Agreement") with a consortium of electronic tax preparation companies, including Intuit, which had organized into a non-profit called the "Free File Alliance, LLC" for purposes of entering into the agreement.[5]

16.      Under the terms of the Free File Agreement, which was established pursuant to public rulemaking and published in the Federal Register on November 4, 2002 (67 Fed. Reg. 67,247), Free File Alliance members agreed to offer free online tax return preparation and filing services to at least 60 percent of taxpayers in the aggregate—though individual Alliance members remained free to impose their own eligibility criteria, such as based on age, income, or

---

[3] https://turbotax.intuit.com/personal-taxes/online/e-file-taxes/ (last accessed May 6, 2019).
[4] Intuit Inc., Annual Report (Form 10-K), at 38 (Sept. 24, 2004).
[5] The Free File Alliance, LLC subsequently changed its name to Free File, Inc.

state residency.  In exchange, the IRS pledged to "not compete with the [Free File Alliance] in providing free, online tax return preparation and filing services to taxpayers."[6]

17.     In 2005, the IRS and the Free File Alliance renewed the Free File Agreement for another four years, with some modifications.  Most significantly, the 2005 Agreement expanded the scope of guaranteed coverage to the lowest earning 70 percent of taxpayers based on AGI and underscored that, "to serve the greater good and to ensure the long-term stability of the Alliance, the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own."[7]

18.     The IRS and the Free File Alliance also entered into a Memorandum of Understanding ("MOU") implementing the Free File Agreement.  The MOU again emphasized the Free File program's objective of providing services to "the taxpayers least able to afford efiling their returns on their own" and reiterated that, "[i]n recognition of this commitment, the federal government has pledged to not enter the tax preparation software and e-filing services marketplace."[8]

19.     Since 2005, the Free File Agreement and implementing MOU have been continuously renewed, with some amendments.  The Seventh MOU was effective March 6, 2015 for a five-year term but was superseded by the operative Eighth MOU on October 31, 2018.  The Eighth MOU currently remains in effect and expires October 31, 2021.[9]

20.     Although the Free File program was envisioned to offer free online tax filing services to the lowest-earning 70 percent of Americans, the program has fallen far short of its objectives.  The IRS reported last year that in its entire 16-year existence, only 51.1 million

---

[6] 2002 Free File Agreement, sec. II.
[7] Internal Revenue Service, "Free Online Electronic Tax Filing Agreement" (Oct. 30, 2005) ("2005 Free File Agreement"), sec. I.C.
[8] Internal Revenue Service, "First Memorandum of Understanding on Service Standards and Disputes, Between the Internal Revenue Service and Free File Alliance, LLC," art. II; *see also* Internal Revenue Service, "Seventh Memorandum of Understanding on Service Standards and Disputes, Between the Internal Revenue Service and Free File, Incorporated" ("Seventh MOU"), art. 2; Internal Revenue Service, "Eighth Memorandum of Understanding on Service Standards and Disputes, Between the Internal Revenue Service and Free File, Incorporated" ("Eighth MOU"), art. 2.
[9] Throughout this Complaint, the terms "Free File Agreement" and "MOU" refer, respectively, to the operative versions of the Free File Agreement and MOU in effect at the relevant time, while "Free File program" is used to refer to the program as a whole.

federal tax returns have actually been filed using Free File products, representing only 3 percent of all people eligible to use Free File.[10]  In fiscal year 2018, more than 100 million taxpayers were eligible to file for free with Free File products, but only about 2.5 million—*less than 2.5 percent* of eligible taxpayers—actually did so.[11]

21.     Intuit has been a participant in the Free File program throughout its existence and has a strong commercial interest in keeping the program grossly underutilized and in making the program—in its current anemic form—permanent.

22.     In its respective Form 10-K annual reports for the 2014, 2015, and 2016 fiscal years, for example, Intuit expressly acknowledged that "*the Free File Alliance has kept the federal government from being a direct competitor to Intuit's tax offerings*," while acknowledging that "governmental encroachment at both the federal and state levels may present a continued competitive threat to our business for the foreseeable future."[12]

23.     In more recent Form 10-K annual reports for fiscal years 2017 and 2018, Intuit similarly disclosed that it faces intense "competitive challenges from government entities that offer publicly funded electronic tax preparation and filing services with no fees to individual taxpayers."[13]  In describing the company's strategic risk factors, Intuit explained in those SEC reports, and reiterated again in its most recent Form 10-Q for the quarterly period ending January 31, 2019:  "Our consumer tax business also faces significant competition from the public sector…. If the Free File Program were to be terminated and the IRS were to enter the software development and return preparation space, *the federal government would become a*

---

[10] *See* Internal Revenue Service, "Tax Time Guide: Try Money-Saving IRS Free File" (Mar. 1, 2018), *available at* https://www.irs.gov/newsroom/tax-time-guide-try-money-saving-irs-free-file; Office of Sen. Elizabeth Warren, "Tax Maze: How the Tax Prep Industry Blocks Government from Making Tax Day Easier" (Apr. 4, 2016), at 1, *available at* https://www.warren.senate.gov/files/documents/Tax_Maze_Report.pdf.

[11] Internal Revenue Service, "National Taxpayer Advocate delivers annual report to Congress: Addresses impact of shutdown; urges more funding for IT modernization" (Feb. 12, 2019), *available at* https://www.irs.gov/newsroom/national-taxpayer-advocate-delivers-annual-report-to-congress-addresses-impact-of-shutdown-urges-more-funding-for-it-modernization.

[12] Intuit Inc., Annual Report (Form 10-K), at 14 (Sept. 1, 2016) (emphasis added); Intuit Inc., Annual Report (Form 10-K), at 14 (Sept. 1, 2015); Intuit Inc., Annual Report (Form 10-K), at 16 (Sept. 12, 2014).

[13] Intuit Inc., Annual Report (Form 10-K), at 9 (Aug. 31, 2018); Intuit Inc., Annual Report (Form 10-K), at 9 (Sept. 1, 2017).

*publicly funded direct competitor of the U.S. tax services industry and of Intuit.* Government funded services that curtail or eliminate the role of taxpayers in preparing their own taxes could potentially have *material and adverse revenue implications*."[14]

24.     In an effort to enshrine the Free File program in federal law, Intuit has expended considerable resources lobbying Congress.  In 2017 and 2018, Intuit reportedly spent nearly $5 million on Congressional lobbying activities; the bill it lobbied for most frequently was H.R. 3641, the "Free File Permanence Act of 2017," which would, true to its name, make the Free File program permanent by mandating that the Secretary of the Treasury "shall continue to operate the IRS Free File Program."[15]  That key provision reappears in Section 1102 of H.R. 1957, the "Taxpayer First Act of 2019," which recently passed the U.S. House of Representatives.[16]

### B.     The Purpose of the Free File Program Is to Maximize Low-Income Taxpayer Access to Free Online Tax Services.

25.     The Free File program is intended to implement the IRS's stated public policy of "extending the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury."[17]  Article 2 of the MOU unambiguously states that Free File members "shall … [m]ake tax return preparation and filing easier and reduce the burden on individual taxpayers, *particularly the economically disadvantaged and underserved populations*," and shall also "[p]rovide greater service and *access to the [Free File] Services to taxpayers*."[18]

///

---

[14] Intuit Inc., Annual Report (Form 10-K), at 13 (Aug. 31, 2018) (emphases added); Intuit Inc., Quarterly Report (Form 10-Q), at 42 (Feb. 22, 2019) (emphases added); *see also* Intuit Inc., Annual Report (Form 10-K), at 13 (Sept. 1, 2017).

[15] Free File Permanence Act of 2017, H.R. 3641, 115th Cong. § 3(a) (2017); *see* OpenSecrets.org, Center for Responsive Politics, "Intuit Inc. Profile for 2018 Election Cycle," https://www.opensecrets.org/orgs/summary.php?id=D000026667 (last accessed May 5, 2019); OpenSecrets.org, Center for Responsive Politics, "Clients lobbying on H.R.3641: Free File Permanence Act of 2017," https://www.opensecrets.org/lobby/billsum.php?id=hr3641-115 (last accessed May 5, 2019).

[16] Taxpayer First Act of 2019, H.R. 1957, 116th Cong. § 1102 (2019).

[17] Eighth MOU, art. 2; *see* Seventh MOU, art. 2.

[18] Eighth MOU, arts. 2.1, 2.3 (emphases added); Seventh MOU, arts. 2.1, 2.3 (emphases added).

26.     This public policy of improving low-income taxpayer access to high-quality commercial products at no cost—and of protecting such vulnerable populations from being misled into unnecessarily paying for such services—is also reflected in several other provisions of the Seventh and Eighth MOUs, the Free File Agreement, and the IRS's responses to public comments published in the Federal Register.

27.     First, the Free File Agreement provides that "[t]he Parties will coordinate with each other their respective marketing of these Free Services to provide uniformity and *maximize public awareness*."[19]

28.     Second, in assuaging public concerns that the Free File program would not "sufficiently protect the interest of taxpayers, specifically low-income taxpayers," the IRS wrote in the Federal Register: "The Agreement … provides that taxpayers will not have to go through additional steps or barriers to access the Free Service, beyond those steps required or imposed to access the comparable paid service."[20]  The IRS further wrote: "It is also expected that Free File Alliance products will be equivalent to those offered for sale on the commercial market and thus are expected to have all of the features and operability of those commercial products."[21]

29.     Third, to further protect Free File-eligible taxpayers from being misled into paying for a product, the MOU imposes specific limitations on Free File Alliance members' sales activities.  For example, the Eighth MOU explicitly prohibits "Other Sales and Selling Activity: No marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program," except for state tax returns or where the user proves to be ineligible for the Free File product.[22]

30.     The Eighth MOU similarly provides that "Members shall not include a 'value-added' button (i.e., an icon, link or any functionality that provides a taxpayer with access to a Member's commercial products or services) on the Member's Free File Landing Page."[23]

---

[19] 2002 Free File Agreement, sec. VI.A (emphasis added).
[20] IRS' Intent to Enter Into an Agreement With Free File Alliance, LLC (i.e., Free File Alliance), 67 Fed. Reg. 67,247, 67,248 (Nov. 4, 2002).
[21] *Id.*
[22] Eighth MOU, art. 4.32.5; *see* Seventh MOU, art. 4.33.
[23] Eighth MOU, art. 4.32.6.

While the Seventh MOU did allow "value-added" buttons to be listed on the bottom of a Free File Landing Page, it also expressly provided that "[t]he Member shall have a prominent link permitting taxpayers on a Member's Paid Service Offering Page to easily and clearly return to the Member Free File Landing Page."[24]

31.    Both the Seventh and Eighth MOUs also clearly state, "Members shall not post a billing screen requesting or collecting bank/financial information (e.g., debit/credit card information) from customers who qualify for a free return where no state tax return products have been purchased."[25]

32.    Finally, the Eighth MOU sets forth specific rules to ensure that consumers who do not qualify for a particular member's Free File product (because, for example, the member imposes a lower income eligibility threshold, as Intuit does) are first redirected to other members' Free File products, for which they might be eligible, before being offered a member's paid products.[26]

## II.    Intuit's Business Acts and Practices

### A.    Intuit's Online TurboTax Products

33.    As part of the IRS Free File program, Intuit offers a free online tax preparation and filing product called TurboTax "Freedom Edition."  Anyone who (i) has an AGI of $34,000 or less, (ii) is eligible for the Earned Income Tax Credit, or (iii) is on active military duty and has an AGI of $66,000 or less, is eligible to use TurboTax "Freedom Edition."

34.    TurboTax "Freedom Edition" is a robust software offering that enables users to complete and e-file their federal tax returns for free, no matter how complicated.  In addition to the basic Form 1040, TurboTax "Freedom Edition" supports *125 additional federal tax forms*, including but not limited to Schedules 1 through 6, 1099-MISC, and 1040 Schedules A, B, C, D, E, EIC, F, H, and J.

///

///

---

[24] Seventh MOU, art. 4.33.7.
[25] Eighth MOU, art. 4.19.4; Seventh MOU, art. 4.20.4.
[26] Eighth MOU, art. 4.19.2.

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

35.     But TurboTax "Freedom Edition" is not the only free online tax product Intuit offers.  Intuit also offers a *different* free online tax product that bears a similar name: TurboTax "Free Edition."

36.     Notwithstanding the similarity of their names, TurboTax "Free Edition" is a very different product from TurboTax "Freedom Edition" and has nothing to do with the IRS Free File program.  There are no income eligibility restrictions to use TurboTax "Free Edition," but the product itself is a very basic software offering that supports only the simplest of tax returns, i.e., "simple tax returns that can be filed on Form 1040 without any attached schedules."

37.     The only taxpayers who can complete and file their returns using TurboTax "Free Edition" are those who have *only* the following situations: (i) have W-2 income; (ii) have limited interest and dividend income reported on a 1099-INT or 1099-DIV; (iii) claim the standard deduction; (iv) claim the Earned Income Tax Credit (EIC); and/or (v) claim child tax credits.

38.     Any taxpayer who needs to file any additional forms or schedules as part of their tax return, such as itemized deductions (Schedule A), 1099-MISC income (Schedule C), or credits, deductions, and income reported on Schedules 1 through 6, cannot complete their return using TurboTax "Free Edition."  This includes a large number of low-income taxpayers, including the growing number of persons working in the "gig economy" and classified (whether rightly or wrongly) by their employer as an "independent contractor" and paid with Form 1099-MISC.  It also includes, for example, anyone paying off student loans or who has a health savings account.

39.     If such taxpayers meet any one of the three income eligibility thresholds for TurboTax "Freedom Edition," however, they can successfully complete their tax return for free using TurboTax "Freedom Edition."  Thus, a large number of taxpayers who are unable to complete their tax returns for free using TurboTax "Free Edition," due to its highly limited functionality, nonetheless *can* complete their tax returns for free using TurboTax "Freedom Edition," which supports virtually all federal tax forms.

///

40. In addition to these two "free" online TurboTax products, Intuit also offers three paid TurboTax online products: "Deluxe," starting at $59.99 for federal returns (additional for state); "Premier," starting at $79.99; and "Self-Employed," starting at $119.99 (collectively, TurboTax "Paid Products"). Intuit also offers a variety of add-on products and services.

**B.    Intuit Deliberately Makes It Difficult for Consumers to Find TurboTax "Freedom Edition," Its Free File Product.**

41. Although Intuit offers a Free File product, i.e., TurboTax "Freedom Edition," few consumers ever learn about it.

42. This is by design. TurboTax "Freedom Edition" is not conspicuously listed anywhere on TurboTax's main website, https://turbotax.intuit.com ("Main Website"), through which Intuit offers its four other TurboTax online products, and indeed cannot be accessed directly from the TurboTax Main Website, despite being a TurboTax online product.

43. Instead, Intuit only offers TurboTax "Freedom Edition" through an entirely separate and distinct website, https://turbotax.intuit.com/taxfreedom ("TurboTax Free File Website")—and Intuit makes it impossible to navigate directly to the TurboTax Free File Website from the TurboTax Main Website. Given that the top result for a Google search of the terms "turbotax" or "turbotax free" leads to the TurboTax Main Website, it is likely that most consumers never become aware of Intuit's Free File product at all.

44. Worse still, during the 2018 tax season (January through April 15, 2019), Intuit deliberately hid its TurboTax Free File Website from consumers by adding a line of code to the website that prevented it from appearing in any online search results. As of April 26, 2019, even a search for the terms "turbotax free file" and "turbotax freedom edition" did not yield search results containing the TurboTax Free File Website.

45. Intuit achieved this level of obscurity by adding the following instruction code on the TurboTax Free File Website: <meta name>="robots" content="noindex, nofollow">. A "robots meta tag" allows a website to control how Google and other search engines make content available to users through search results. A robots meta tag of "noindex" instructs search engines, "[d]o not show this page in search results and do not show a 'Cached' link in search results," while a robots meta tag of "nofollow" instructs, "[d]o not follow the links on

this page."[27]   According to Google Support, "[i]f you wish to explicitly block a page from being indexed, you should … use the noindex robots meta tag," which effectively "guarantee[s] that a page will not appear in results."[28]

46.     After the nonprofit investigative newsroom ProPublica exposed Intuit's deceptive practices in an article published April 26, 2019, Intuit changed the code on its TurboTax Free File Website so that it is no longer hidden from Google and other search engines.[29]

47.     Upon information and belief, Intuit also took deliberate steps to steer consumers—including those specifically searching for the IRS Free File program—towards the TurboTax Main Website (with its inferior "Free Edition" and costly Paid Products), *not* the TurboTax Free File Website.  Upon information and belief, Intuit advertised its Main Website by purchasing Google Search Ads (which display at the top of Google search results when triggered by the advertiser's pre-selected keywords), and chose keywords likely to be used by consumers specifically seeking IRS Free File options.[30]

48.     For example, according to a report published April 22, 2019 by ProPublica, when journalists searched Google for "irs free file taxes," the top paid ad displayed above search results was for the TurboTax Main Website, advertising "TurboTax Free | Free IRS Fed Filing Online."[31]

---

[27] Google Search, "Robots meta tag and X-Robots-Tag HTTP header specifications, https://developers.google.com/search/reference/robots_meta_tag (last accessed May 5, 2019).

[28] Google Search Console Help, "About robots.txt Robots FAQs," https://support.google.com/webmasters/answer/7424835?hl=en (last accessed May 5, 2019).

[29] Justin Elliott, *TurboTax Deliberately Hid Its Free File Page From Search Engines*, ProPublica (Apr. 26, 2019), *available at* https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines.

[30] Google Ads explains, "[k]eywords are phrases that you choose to determine when and where your ad can appear.  They're matched to terms that people search for or web content that they view."  Google, "Keywords," https://support.google.com/google-ads/topic/3119130?hl=en&ref_topic=3119122,3181080,3126923, (last accessed May 5, 2019). According to Google Ads, "[t]o get your ads to appear when people search for your product or service, the keywords you choose need to match the words or phrases that people search for. … When a customer searches for a term that matches your keyword, your ad can enter an auction to determine if it will show."  Google, "About keywords," https://support.google.com/google-ads/answer/1704371?hl=en&ref_topic=3119131 (last accessed May 5, 2019).

[31] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*, ProPublica (Apr. 22, 2019), *available at* https://www.propublica.org/article/turbotax-just-tricked-you-into-paying-to-file-your-taxes.

### C. Intuit Confuses Consumers by Aggressively Advertising "FREE" Tax Services and TurboTax "Free Edition," While Suppressing Access to Its Actual Free File Product, TurboTax "Freedom Edition."

49.     While suppressing the accessibility of its Free File product and entirely omitting any mention of TurboTax "Freedom Edition" from its Main Website's list of product offerings, Intuit prominently and ubiquitously advertises "Free" tax services and TurboTax "Free Edition," thereby misleading reasonable consumers into believing TurboTax "Free Edition" is the *only* free online tax preparation product Intuit offers and/or believing TurboTax "Free Edition" *is* Intuit's Free File product.  Intuit further misleads reasonable consumers into believing that if they are unable to complete their tax returns using TurboTax "Free Edition," due to its highly limited functionality, their only recourse is to upgrade to one of Intuit's Paid Products that supports the tax forms they need—even if they are eligible to file for free under the Free File program.

50.     The TurboTax Main Website is the top search result for a Google search for "turbotax."  The homepage of the TurboTax Main Website prominently advertises in large, bold font: "FREE Guaranteed.  $0 Fed.  $0 State.  $0 To File."

51.     At the top of the Main Website homepage is a link to "Products & Pricing."  Hovering over that link elicits a drop-down menu, at the top of which is the subcategory "Online products."

52.     Clicking on "Online products" takes the consumer to a new page, https://turbotax.intuit.com/personal-taxes/online/ ("Online Products Page").  The Online Products Page lists four TurboTax products: (1) "Free Edition" ($0 Fed. $0 State. $0 File.); (2) "Deluxe" ($59.99*); (3) "Premier" ($79.99*); and (4) "Self-Employed" ($119.99*).

53.     The Online Products Page does not list or anywhere mention TurboTax "Freedom Edition" or the Free File program, even though TurboTax "Freedom Edition" is an online TurboTax product.

54.     The Online Products Page states at the top: "Tell us about you – we'll recommend the right tax solution."  Below that text are various circumstances that the consumer

can select, if applicable.  Based on what circumstances the consumer selects, Intuit recommends one of the four listed TurboTax products.

55.     For example, if the consumer selects "I want to maximize deductions and credits," "I own a home," "I donated to charity," or "I'm paying off student loans," Intuit recommends TurboTax "Deluxe," which costs $59.99 and up.

56.     If the consumer selects "I sold stock or own rental property," Intuit recommends TurboTax "Premier," which costs $79.99 and up.

57.     If the consumer selects "I'm self-employed/freelancer" or "I own a small business," Intuit recommends TurboTax "Self-employed," which costs $119.99 and up.

58.     Intuit recommends these Paid Products to consumers regardless of whether they are eligible to file for free using TurboTax "Freedom Edition."

59.     The Main TurboTax Website homepage also contains a link to a "Help" menu containing a link to "Frequently Asked Questions."  The FAQ Page contains the question, "How do I know which product is right for me?"  The answer reads, "We have a product for your unique tax situation.  You can select the right product for you from our Products and Pricing page, or we'll help with a product recommendation.  Plus, if you hit a point where another product might be better for you, we'll give you the opportunity to change.  The information you've already entered will transfer automatically."  The answer contains links to the Online Products Page described above, which, again, does not contain any mention of TurboTax "Freedom Edition" or the Free File program, even though TurboTax "Freedom Edition" is "the right product" for many consumers.

60.     Furthermore, if consumers begin filling out their tax information in either "Free Edition" or one of the Paid Products, and then realize (somehow on their own) that TurboTax "Freedom Edition" is "better for [them]," it is not true that "[t]he information [they've] already entered will transfer automatically" to the "Freedom Edition" product.  To the contrary, in order to switch from TurboTax "Free Edition" or one of the Paid Products accessed from the Main Website to TurboTax "Freedom Edition," consumers must *clear all information* they already entered, sign out of their account, go to the TurboTax Free File Website (which cannot be

directly navigated to from the Main Website), sign in to their account on that site, and then *re-enter* all their personal and tax information anew—yet another barrier Intuit erects to discourage reasonable consumers from using its Free File product.  In fact, if consumers do *not* first clear all information entered on the Main Website under their account before logging back in via the TurboTax Free Filing Website, any previously incurred charges will still appear in their account.

> **D.    Intuit Uses Further Deceptive Marketing and Design Tactics to Steer Free File-Eligible Consumers Into Unnecessarily Purchasing Paid Products.**

61.    While failing to clearly disclose the existence of TurboTax "Freedom Edition" anywhere on its Main Website and making it difficult for consumers to find it, Intuit employs additional deceptive marketing and design tactics that steer consumers—including those who are eligible to prepare and file their returns for free under the IRS's Free File program—into upgrading from TurboTax "Free Edition" to one of Intuit's Paid Products.

62.    For example, the top result for a Google search for "turbotax free" is the webpage https://turbotax.intuit.com/personal-taxes/online/free-edition.jsp, advertising "100% Free Tax Filing, $0 Fed, $0 State | TurboTax Free – Intuit."  Clicking on that link leads to a webpage again prominently advertising in large, bold font: "FREE guaranteed.  $0 Fed.  $0 State.  $0 To File."  The only free product advertised on that page is TurboTax "Free Edition," with a "File for $0" button.  The page nowhere mentions TurboTax "Freedom Edition" or the Free File program.

63.    If a Free File-eligible consumer clicks the "File for $0" button, she is prompted to create an account and then is asked a series of questions on successive webpages about her personal information and tax situation, including, for example, whether she paid student loan interest (reported on Form 1098-E, not supported by "Free Edition") or was self-employed (reported on Form 1099-MISC, not supported by "Free Edition").  Rather than immediately alerting the consumer that she cannot complete her tax returns using "Free Edition," the program continues to lead the consumer through the process of inputting personal information.

///

64.     The consumer is next prompted to input her income by income category.  If a Free File-eligible consumer indicates that she needs to report income on a Form 1099-MISC (for example, because her employer classifies her as an independent contractor), the program falsely informs her, "[t]o accurately report this income, you'll need to upgrade," and then offers her the option of upgrading to TurboTax "Deluxe" for $59.99 or TurboTax "Self-Employed" for $119.99.  At no point does the program inform the consumer that, rather than pay for an upgrade, she may still be able "[t]o accurately report this income" for free using TurboTax "Freedom Edition" if she meets one of the three income eligibility thresholds.

65.     If the consumer upgrades to a Paid Product, she is then prompted to enter the income from her 1099-MISC.  Even after the consumer enters an amount indicating that she is eligible to file for free using TurboTax "Freedom Edition" (e.g. $21,000), at no point does the program inform the consumer of this free TurboTax Free File product.

66.     Meanwhile, after luring consumers—including Free File-eligible consumers—to begin filling out a return by clicking on a "File for $0" button, the TurboTax program makes multiple attempts throughout the process to upsell additional products or upgrades to the consumer.  For example, at one point in the process, the program "recommend[s]" that the consumer upgrade to a service called "PLUS" for $19.99.  At another point, the program prompts the consumer to upgrade to a "turbotaxlive" product offering live CPA assistance, such as "turbotaxlive Deluxe" for $119.99.  Before finalizing the return, the program prompts the consumer to add "MAX" audit and identity theft coverage for $49.99.

67.     A former Intuit marketing employee recalled a May 2017 meeting in which one employee suggested modifying the TurboTax software so that any customer who entered information indicating their eligibility for TurboTax Free File would be shown a pop-up window (similar to those currently used to upsell additional products and upgrades) directing them to TurboTax "Freedom Edition."  According to the former employee, the suggestion was met with laughter and quickly dismissed.[32]

---

[32] Justin Elliot and Paul Kiel, *TurboTax and H&R Block Saw Free Tax Filing as a Threat – and Gutted It*, ProPublica (May 2, 2019), *available at* https://www.propublica.org/article/intuit-

68.     Another former midlevel Intuit employee, as reported by ProPublica, confirmed that steering customers away from Intuit's Free File product is a "purposeful strategy."[33]  For consumers finding TurboTax through a search engine or an online ad, "the landing page would direct you through a product flow that the company wanted to ensure would not make you aware of Free File."[34]  According to the former employee, "[t]he entire strategy is to make sure people read the word 'free' and click our site and never use" TurboTax's Free File product.[35]  The former employee further confirmed that Intuit's strategy is to lure customers in with their guarantee of a "free" filing, even though the "vast majority of people who click that will not pay $0."[36]

### E.     Intuit's Unfair and Fraudulent Business Acts and Practices Deceived Free File-Eligible Consumers Into Purchasing Intuit's Paid Products and Incurring Unnecessary Fees.

69.     Upon information and belief, Intuit's unfair and fraudulent business acts and practices described above caused reasonable consumers eligible for a Free File product to unnecessarily purchase TurboTax Paid Products.

70.     In response to reporting by ProPublica, at least 40 people reached out to the news organization claiming they sought out TurboTax's free option but ended up paying fees as a result of Intuit's business practices.[37]  The stories published by ProPublica illustrate that Intuit's practices both in fact deceive consumers and detrimentally impact them:

a.     A Los Angeles resident who works as a freelancer for $15 per hour and who has a substantial monthly rent payment was deceived by Intuit into paying $154 for a TurboTax Paid Product.  He described Intuit's conduct as "the worst kind of injustice for someone in [his] position."[38]

---

turbotax-h-r-block-gutted-free-tax-filing-internal-memo?utm_source=pardot&utm_medium=email&utm_campaign=dailynewsletter.

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] Ariana Tobin, Justin Elliott, and Meg Marco, *Here Are Your Stories of Being Tricked Into Paying by TurboTax.  You Often Need the Money.*, ProPublica (Apr. 26, 2019), *available at* https://www.propublica.org/article/here-are-your-stories-of-being-tricked-into-paying-by-turbotax-you-often-need-the-money.
[38] *Id.*

b.      Intuit deceived another California resident into unnecessarily spending $169—more than 1% of her $14,500 annual salary—on a TurboTax Paid Product.[39]

c.      Intuit's victims include an unemployed woman recovering from chemotherapy and her husband who works part-time and suffers from Parkinson's disease, both of whom care for two disabled children and recently took out short-term loans to help pay their rent.  Intuit's business practices caused the family, which earns $32,877 annually, to incur $200 in fees—money that could have gone toward rent or paying down their loans.[40]

d.      Intuit similarly took advantage of a husband (on disability) and his wife who respectively earn $19,000 and $4,400 annually—deceiving them into paying $99.98 for a TurboTax Paid Product merely because the couple sold a piece of property the prior year (at a loss).  That fee represented a full week's worth of groceries for the family.[41]

e.      Intuit deceived another user who earned only $5,000 annually into paying $103.95—which constituted nearly his entire refund—for a TurboTax Paid Product because he worked as an independent contractor.[42]

f.      One 72-year-old TurboTax user who makes $27,000 working part-time at a dermatologist's office was deceived into paying $20 for a TurboTax Paid Product.  She stated, "I'm tightly budgeted.  It's not a lot, but it's $20."[43]

g.      An active service member was deceived by Intuit into paying $96 for a TurboTax Paid Product even though he was eligible for a Free File product.[44]

h.      A graduate student who earned less than $10,000 in annual income spent $100 for a TurboTax Paid Product as a result of Intuit's unfair and fraudulent practices.[45]

///

///

///

---

[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

i.      One TurboTax user helped prepare taxes for his 87-year-old sister, a retiree whose annual income totaled $11,009, and was deceived into paying $124.98 for a TurboTax Paid Product.[46]

j.      Another TurboTax user similarly prepared taxes on behalf of his mother-in-law, who "made an adjusted gross income of around $18,000 from Social Security and a modest General Motors pension" and thus plainly qualified for a Free File product.  But the user, who began preparing his mother-in-law's taxes using TurboTax "Free Edition," was misled into purchasing a TurboTax Paid Product costing $120, which constituted a substantial portion of the mother-in-law's refund.  That cost was triggered by just **$22** of income for legal services associated with the mother-in-law's pension.[47]

k.      A young reporter who was eligible for a Free File product was misled into paying $105 for a TurboTax Paid Product notwithstanding her purposeful efforts to find TurboTax's Free File product.  She "kept trying to find [her] way back to the Free File page, but it seemed like [she] was locked in."  TurboTax deceived the reporter into believing that she was required to purchase a TurboTax Paid Product because her taxes required a student loan interest form.[48]

71.      ProPublica estimates that U.S. taxpayers eligible for a Free File product spend approximately **$1 billion** per year in unnecessary filing fees.[49]  As the foregoing real-life experiences demonstrate, Intuit's unfair and fraudulent business practices, as described herein, have no doubt contributed substantially to these taxpayer losses.

72.      Although Intuit has reportedly refunded some of the consumers eligible for Free File who unnecessarily purchased TurboTax Paid Products—namely, some of the consumers who complained as a result of recent news reports—Intuit has taken no steps toward making

---

[46] *Id.*
[47] Justin Elliott, *If You Paid TurboTax but Make Under $34,000, You Could Get a Refund. Here's How.*, ProPublica (Apr. 23, 2019), *available at* https://www.propublica.org/article/how-to-get-turbotax-refund.
[48] *Id.*
[49] Tik Root, *Why Are Millions Paying Online Tax Preparation Fees When They Don't Need To?*, ProPublica (June 18, 2018), *available at* https://www.propublica.org/article/free-file-online-tax-preparation-fees-intuit-turbotax-h-r-block.

whole all of the thousands (if not millions) of consumers it has harmed over the years.  In fact, ProPublica reports more recently that Intuit has evidently now "set up a special team" to handle calls from defrauded Free File-eligible consumers and is "no longer giving money back when people mention [ProPublica's] stories."[50]  Intuit's actions and the resulting harm underscore the need for injunctive relief to ensure Intuit halts these unfair and deceptive business practices and does not return to those practices in the future, full restitution for all of Intuit's victims, and substantial civil penalties to punish Intuit and deter Intuit and others from engaging in such actions in the future.

### FIRST CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION LAW

### (Bus. & Prof. Code §§ 17200 *et seq.*)

73.     The People incorporate by reference the allegations in all preceding paragraphs as though fully set forth herein.

74.     California's Unfair Competition Law, Bus. & Prof. Code §§ 17200-17210, prohibits any person from engaging in "any unlawful, unfair, or fraudulent business act or practice," or any "unfair, deceptive, untrue or misleading advertising," *id.* § 17200.

75.     Intuit is a "person" subject to the UCL, pursuant to Business and Professions Code § 17201.

76.     Through the actions alleged herein, Intuit has engaged, and continues to engage, in unfair and fraudulent business practices in violation of the UCL.

77.     Specifically, Intuit has engaged in unfair business acts and practices by taking actions to reduce public awareness of and access to TurboTax "Freedom Edition" and the Free File program.  Such actions violate the terms and spirit of the IRS Free File Agreement and MOU and undermine the public policy goals of the Free File program, to the detriment of low-income taxpayers, the intended third-party beneficiaries thereof.  Intuit's unfair business acts and practices include but are not limited to:

---

[50] Justin Elliott, *Updated: If You Paid TurboTax but Make Under $34,000, You Could Get a Refund.  Here's How.*, ProPublica (update, May 2, 2019), *available at* https://www.propublica.org/article/how-to-get-turbotax-refund.

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND CIVIL PENALTIES

a.    adding code to its TurboTax Free File Website that prevents it from appearing in online search results, rendering the site non-discoverable by consumers searching on Google or other search engines;

b.    upon information and belief, associating its Google Search Ads for its Paid Products with keywords likely to be used by consumers searching for the IRS Free File program;

c.    making it impossible to navigate directly from the TurboTax Main Website to the TurboTax Free File Website;

d.    deliberately choosing not to inform TurboTax customers of Intuit's Free File product, TurboTax "Freedom Edition," even after they share information with Intuit indicating their eligibility for it; and

e.    deterring consumers who have already begun using TurboTax "Free Edition" or one of the Paid Products from switching to Intuit's Free File product, even after realizing (somehow on their own) that they are eligible, by making the switching process unduly burdensome (i.e., requiring consumers to clear all tax information already entered and re-enter it anew on a different website), especially in comparison to the seamless process of upgrading to a Paid Product (in which Intuit transfers all tax information automatically).

78.    Intuit has also engaged in unfair, fraudulent, and deceptive business acts and practices by making misrepresentations likely to deceive reasonable consumers.  Such actions violate the terms and spirit of the IRS Free File Agreement and MOU and undermine the public policy goals of the Free File program, to the detriment of low-income taxpayers, the intended third-party beneficiaries thereof.  Intuit's unfair, fraudulent, and deceptive business acts and practices include but are not limited to:

a.    intentionally obscuring and failing to disclose the differences between TurboTax "Free Edition" and Intuit's Free File product, TurboTax

"Freedom Edition," knowing that reasonable consumers are likely to confuse these two products with nearly identical names;

b.    misrepresenting to consumers that TurboTax "Free Edition," "Deluxe," "Premier," and "Self-Employed" are the only TurboTax online products, when in fact TurboTax "Freedom Edition" is a fifth product offering;

c.    misrepresenting to Free File-eligible consumers that Intuit will "recommend the right tax solution" for them;

d.    misrepresenting to Free File-eligible consumers that a particular Paid Product is the best product for them;

e.    misrepresenting to Free File-eligible consumers that they "can select the right product for [them] on our Products and Pricing page";

f.    misrepresenting to Free File-eligible consumers that if they begin entering their tax return information into a given TurboTax product but then realize TurboTax "Freedom Edition" is a better product for them, "[t]he information you've already entered will transfer automatically"; and

g.    misrepresenting to Free File-eligible consumers who enter tax information unsupported by TurboTax "Free Edition" that they will "need to upgrade" to complete and file their return.

79.    Additionally, Intuit has engaged in unfair, fraudulent, and deceptive business acts and practices by employing deceptive and manipulative marketing and product design schemes likely to deceive reasonable consumers. Such actions violate the terms and spirit of the IRS Free File Agreement and MOU and undermine the public policy goals of the Free File program, to the detriment of low-income taxpayers, the intended third-party beneficiaries thereof. Intuit's unfair, fraudulent, and deceptive business acts and practices include but are not limited to:

     a.     adding code to its TurboTax Free File Website that prevents it from appearing in online search results, rendering the site non-discoverable by consumers searching for it on Google or other search engines;

     b.     upon information and belief, associating its Google Search Ads for its Paid Products with keywords likely to be used by consumers searching for the IRS Free File program;

     c.     advertising "FREE Guaranteed" tax filing services when in fact only a small percentage of consumers are able to complete their tax returns for free on the TurboTax Main Website;

     d.     heavily marketing TurboTax "Free Edition," an inferior product with highly limited functionality, in a manner that makes it likely to be confused with TurboTax "Freedom Edition," a robust product that supports virtually all tax situations; and

     e.     requiring consumers to invest substantial time and effort inputting their tax return information through the TurboTax "Free Edition" software before alerting them that they cannot complete their returns using "Free Edition," and then manipulating them into paying for various product upgrades and upsells.

## PRAYER FOR RELIEF

WHEREFORE, the People respectfully pray for judgment and relief as follows:

1.     Preliminary and permanent injunctive relief enjoining Intuit, together with its successors and assigns and all persons acting in concert with them or on their behalf, from engaging in any of the unfair and fraudulent business acts and practices described herein, pursuant to Business and Professions Code § 17203;

2.     Restitution of all moneys paid to Intuit for electronic tax preparation and filing services at any time during the period starting four years before the filing of this Complaint, up to and including the date of judgment in this action, by persons in the State of California who

1  were eligible at the time of payment to file for free under any IRS Free File program, pursuant

2  to Business and Professions Code § 17203, including prejudgment interest;

3    3.    Civil penalties of up to $2,500 assessed against Intuit for each violation of the

4  UCL, according to proof, pursuant to Business and Professions Code § 17206(a);

5    4.    Additional civil penalties of up to $2,500 assessed against Intuit for each

6  violation of the UCL perpetrated against a senior citizen or disabled person, according to proof,

7  pursuant to Business and Professions Code § 17206.1(a);

8    5.    That the People recover the costs of this action; and

9    6.    That the People be granted such other and further relief as the Court deems just

10  and proper.

11  Dated: May 6, 2019                    Respectfully submitted,

12

13                            MICHAEL N. FEUER, City Attorney
                             JAMES P. CLARK, Chief Deputy City Attorney
14                            MICHAEL J. BOSTROM, Assistant City Attorney
                             CONNIE K. CHAN, Deputy City Attorney
15                            ADAM R. TEITELBAUM, Deputy City Attorney
                             OFFICE OF THE LOS ANGELES CITY ATTORNEY
16                            AFFIRMATIVE LITIGATION DIVISION

17

18                            By: _____
                             CONNIE K. CHAN
19                            Attorneys for Plaintiff,
                             THE PEOPLE OF THE STATE OF CALIFORNIA

20

21

22

23

24

25

26

27

28

Exhibit B to the [Proposed] Brief of
Amici Curiae Opposing Plaintiffs'
Motion for Preliminary Approval:

Santa Clara County Counsel's Complaint

1    JAMES R. WILLIAMS, County Counsel (S.B. 271253)
     GRETA S. HANSEN, Chief Assistant County Counsel (S.B. 251471)
2    KAVITA NARAYAN, Lead Deputy County Counsel (S.B. 264191)
     AARON BLOOM, Deputy County Counsel (S.B. 281079)
3    TONY LOPRESTI, Deputy County Counsel (S.B. 289269)
     OFFICE OF THE COUNTY COUNSEL
4    70 West Hedding Street, East Wing, Ninth Floor
     San José, California 95110-1770
5    Telephone: (408) 299-5900
     Facsimile: (408) 292-7240
6
     Attorneys for Plaintiff
7    PEOPLE OF THE STATE OF CALIFORNIA

E-FILED
9/6/2019 9:26 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
19CV354178
Reviewed By: R. Walker

**EXEMPT FROM FILING FEES
PURSUANT TO GOV. CODE § 6103**

8            SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

9

10   PEOPLE OF THE STATE OF CALIFORNIA,        No.   **19CV354178**
     acting by and through Santa Clara County
11   Counsel James R. Williams,

12                    Plaintiff,                **COMPLAINT FOR VIOLATIONS OF
                                                CALIFORNIA FALSE ADVERTISING
13   v.                                         LAW, SEEKING RESTITUTION, CIVIL
                                                PENALTIES, AND INJUNCTIVE RELIEF**
     INTUIT INC., and DOES 1-50, inclusive
14
                     Defendants.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................3

II.     PARTIES ......................................................................................................6

III.    JURISDICTION AND VENUE ....................................................................6

IV.     FACTUAL ALLEGATIONS .......................................................................7

      A.      Intuit's Business Model Relies on Charging Taxpayers to File Their Taxes ..........7

      B.      Most Taxpayers Qualify for Free Tax Filing through Government Programs .......7

            i.      Most Taxpayers Are Able to Freely File Federal
                 Taxes through IRS Free File ..............................................8

            ii.     California Allows Free Filing of California State
                 Tax Returns via CalFile .....................................................9

      C.      Intuit's Scheme to Maximize Its Profits by Misleading Taxpayers......................10

            i.      Intuit Draws Taxpayers to TurboTax with False
                 Advertising About Its Cost ...............................................11

            ii.     Intuit Misleads Taxpayers into Paying Substantial
                 Sums to File Via TurboTax................................................15

            iii.    Intuit Has Misled Taxpayers About the Availability
                 of TurboTax Free File........................................................18

            iv.     Intuit Has Employed Deceptive Advertising on
                 the TurboTax Free File Webpage .............................19

      D.      Intuit Has Massively Profited by Harming Vulnerable Taxpayers......................20

V.      CAUSES OF ACTION.................................................................................22

VI.     PRAYER FOR RELIEF ..............................................................................25

Complaint for Violations of California False Advertising Law,
Seeking Restitution, Civil Penalties, and Injunctive Relief

# I.     INTRODUCTION

1.     For more than a decade, Intuit Inc., the owner and operator of the electronic tax preparation and filing service TurboTax, has engaged in unlawful, false, and misleading practices targeting low- and middle-income taxpayers to become the dominant player in the online tax preparation and filing market.

2.     Since the early 2000s, the United States Internal Revenue Service ("IRS") and state tax authorities, including the California Franchise Tax Board ("FTB"), have instituted programs to allow low- and middle-income taxpayers to file their federal and state income tax returns for free. Under the IRS program, called "Free File," Intuit and other private electronic tax preparation and filing companies agreed to provide a free version of their tax filing products to the lowest-earning 70 percent of taxpayers in exchange for the IRS promising not to create its own competing tax preparation and filing software.  Intuit refers to its Free File product as "TurboTax Free File" or the "TurboTax Freedom Edition."

3.     Despite Intuit's agreement to create a Free File product, the governmental programs requiring free tax filing options threatened Intuit's massive TurboTax profits.  Intuit earns billions of dollars in revenue by charging taxpayers to use TurboTax to file their taxes.  For most TurboTax users, Intuit charges $100 or more.  But because most taxpayers can file their taxes for free, few taxpayers—and particularly few lower-income taxpayers who can file for free through TurboTax Free File—will knowingly opt to pay the fees charged by Intuit for filing through the revenue-generating TurboTax products.

4.     Intuit has dramatically expanded its paying userbase notwithstanding the availability of free filing options through false and deceptive advertising.  To do so, Intuit has employed a sophisticated bait and switch scheme designed to lure taxpayers to use TurboTax through promises of free filing and then, once they spend hours preparing their taxes with TurboTax, telling them they actually need to pay in order to file their taxes.

5.     To entice taxpayers to use TurboTax in lieu of other free or cheaper alternatives, Intuit created and maintains an online TurboTax product that appears both similar to the TurboTax Free File product and, *by its very title*, to be free—the "TurboTax Free Edition."  However, despite

3

1  its confusingly similar title, Intuit designed the TurboTax Free Edition to be a wholly separate

2  product from the TurboTax Freedom Edition.

3       6.       Intuit then disseminated, and continues to disseminate, widespread advertising

4  stating that if taxpayers use the TurboTax Free Edition they can file their taxes for free.  Intuit's

5  advertising includes multiple television commercials claiming over and over that taxpayers who use

6  the TurboTax Free Edition can file their taxes for "free, free, free, free," online advertisements

7  billing the TurboTax Free Edition as allowing users "100% Free Tax Filing, $0 Fed, $0 State," and

8  Google advertising listing the TurboTax Free Edition as the top search result when taxpayers look

9  for "free" tax filing options online.  TurboTax's advertising of its "free" service directs taxpayers to

10  access the TurboTax Free Edition at turbotax.intuit.com.  There, Intuit offers additional

11  representations confirming that taxpayers can indeed prepare and file their taxes for free, such as that

12  it is "FREE guaranteed" and a button icon that taxpayers pressed to begin preparing their taxes that

13  is entitled "File for $0":

14

15

16

17

18

19

20

21       7.       But as Intuit knows and intends, most taxpayers who click "File for $0" and use the

22  TurboTax Free Edition cannot in fact file for free using this product.  Once taxpayers spend time and

23  effort entering extensive information, Intuit executes the second part of the bait and switch scheme.

24  Intuit suddenly informs the unsuspecting taxpayer that, due to the particulars of his or her tax

25  situation he or she must upgrade to a paid version TurboTax to "accurately file."  Intuit's statement

26  is both contrary to Intuit's advertising and false on its own.  Upgrading has nothing to do with

27  "accurately filing"; taxpayers can accurately file the same tax return for free using other free

28  alternatives—including forms directly available from the IRS—regardless of the particulars of their

4

1   tax situation.  Instead, Intuit's advertising and design is simply meant to mislead taxpayers, who

2   were looking for free tax filing options and were told they could file for free with TurboTax, into

3   believing they now need to pay Intuit to file their taxes.  And even at this stage, Intuit misleads user

4   regarding the actual cost of the upgrade until users spend further hours completing their returns.

5          8.      While Intuit's scheme has been and remains likely to deceive a broad swath of

6   taxpayers, the deception is most egregious for the vulnerable low-income taxpayers who were

7   *entitled* to file for free through Intuit's own TurboTax Free File product.  Rather than

8   "recommend[ing] the right tax solution" for taxpayers, as Intuit represented it would at

9   turbotax.intuit.com, Intuit used deceptive advertising to steer qualified taxpayers away from free

10  filing through TurboTax Free File to expensive TurboTax products.  For instance, Intuit maintained

11  TurboTax Free File at a separate URL from turbotax.intuit.com and, until investigative journalists

12  recently uncovered and reported on this practice, placed tags in the code for the TurboTax Free File

13  webpage that prevented it from appearing in Google search results.  As a result, a low-income

14  taxpayer who conducted an internet search for a service to help "file taxes for free" would see results

15  for Intuit's revenue-producing TurboTax Free Edition, but not the truly free TurboTax Free File.

16  And when many of those taxpayers then used the Free Edition and disclosed information that the

17  software identified as giving rise to a minor deviation from the standard tax filing format, Intuit

18  informed them they needed to pay to upgrade to accurately file even though *Intuit knew they*

19  *qualified to accurately file for free through Intuit's other, truly free product*.  As a result, these low-

20  income taxpayers paid Intuit money they sorely needed for basic necessities such as food, rent, and

21  medical care to file their taxes even though they should have been allowed to file for free through

22  TurboTax, and after they were told repeatedly by Intuit filing their taxes would cost nothing.

23         9.      Intuit has reaped enormous profits by deceiving taxpayers into paying for TurboTax

24  products.  It has attracted millions of additional paying TurboTax users while simultaneously and

25  aggressively marginalizing free governmental filing options.  In 2018, for example, although 70

26  percent of taxpayers were eligible to file for free under the Free File program, less than 3 percent did

27  so.  And numerous other taxpayers who did not qualify for free government programs but could have

28  used cheaper commercial alternatives were misled into paying Intuit's high prices for TurboTax.

                                        5

1    10.    Intuit's massive scheme to deceive taxpayers violated and continues to violate the

2    California False Advertising Law, Bus. & Prof. Code § 17500 *et seq.*  The People of the State of

3    California (the "People") seek injunctive relief directing Intuit to stop its unlawful promotion of its

4    tax preparation services and to correct its misrepresentations.  To redress the harm Intuit has caused

5    taxpayers, the People seek restitution for those injured by Intuit's unlawful conduct.  And to punish

6    Intuit's previous and current violations of law, the People also seek a judgment requiring Intuit to

7    pay civil penalties and any fees or costs permitted under law.

8                            **II.    PARTIES**

9    11.    James R. Williams, County Counsel for the County of Santa Clara ("County

10   Counsel"), is authorized to bring this action in the name of the People pursuant to Business and

11   Professions Code section 17500 *et seq.*

12   12.    Defendant Intuit Inc. is a Delaware corporation with its headquarters and principal

13   place of business located in California at 2700 Coast Avenue, Mountain View, California 94043.

14   13.    The true names and capacities, whether individual, corporate, or otherwise, of

15   Defendants Does 1-50 are unknown to the People at this time, which therefore sues such Defendants

16   by such fictitious names and will amend this Complaint to show their true names and capacities

17   when ascertained.  The People are informed, believe, and thereon allege that each of the Defendants

18   designated herein as a Doe is also legally responsible in some manner for the events and happenings

19   alleged in this Complaint.

20                      **III.    JURISDICTION AND VENUE**

21   14.    This Court has jurisdiction over the subject matter in this Complaint pursuant to

22   Article VI, Section 10 of the California Constitution, because no statute gives another trial court

23   jurisdiction over it.

24   15.    The amount in controversy exceeds the minimum for unlimited civil jurisdiction of

25   this Court.

26   16.    This Court has jurisdiction over Intuit because it is headquartered in this State and

27   because the unlawful acts that are the subject of this Complaint were performed in this State.

28   ///

6

Complaint for Violations of California False Advertising Law,
Seeking Restitution, Civil Penalties, and Injunctive Relief

17.     Venue properly lies in this County because Intuit is headquartered in this County, and because many of the unlawful acts that are the subject of this Complaint were performed in this County.

## IV.     FACTUAL ALLEGATIONS

**A.     Intuit's Business Model Relies on Charging Taxpayers to File Their Taxes**

18.     Taxpayers throughout California are responsible for preparing and filing their own personal income tax returns.  Typically, this means that each taxpayer must prepare and file a federal income tax return with the IRS and a California state income tax return with the FTB.  Taxpayers residing in California may also owe state income taxes to other states, and if so, must also prepare and file state income tax returns with those states' tax authorities.

19.     Certain private companies benefit from this system by charging taxpayers for personal income tax preparation and filing services.  Intuit is one such company.  Intuit owns and operates TurboTax, a primarily online tax preparation service that taxpayers use to prepare and file their federal and state personal income tax returns.

20.     Intuit profits from TurboTax by charging TurboTax users for accessing TurboTax's service to prepare and file their personal income taxes.  Intuit's profits are therefore dependent on attracting increasing numbers of taxpayers to pay to use TurboTax and convincing each TurboTax user to pay more.  Intuit acknowledges this fact, writing in its 2018 Form 10-K, for example, that its "future growth depends on [its] ability to attract new customers to the self-preparation tax category or to [its] new assisted offering, TurboTax Live, from tax stores and other tax preparers," and that its year-over-year growth in the last two fiscal years has been driven, in large part, by "higher average revenue per customer," and "a shift in mix to our higher end product offerings."

**B.     Most Taxpayers Qualify for Free Tax Filing through Government Programs**

21.     The single largest threat to the TurboTax business model is the implementation of a tax filing system that eliminates taxpayers' need to pay to use commercial software for personal income tax preparation and filing.  In particular, the IRS and/or state governments could implement online tax-filing systems that would allow taxpayers to file their taxes for free and could pre-prepare returns for taxpayers (meaning taxpayers would not need to fill in any information) using

7

1  information already reported to the government.  This type of free government tax return system is

2  typically referred to as a "return-free filing system."  More than 30 other countries, including

3  Germany, Japan, Sweden, and the United Kingdom, employ a form of return-free tax filing system.

4  Because taxpayers could file for free in a return-free or other government-operated filing system

5  using pre-prepared returns, most taxpayers would likely no longer pay to use commercial tax

6  preparation software such as TurboTax were such a program implemented.

7          22.     Intuit is fully aware of this threat.  For example, in its 2018 Form 10-K, Intuit noted

8  that it "face[s] competitive challenges from government entities that offer publicly funded electronic

9  tax preparation and filing services with no fees to individual taxpayers," and would be "harm[ed]"

10  by "future administrative, regulatory, or legislative activity" that replaced the current tax preparation

11  system with return preparation by government agencies.  Similarly, in Intuit's Form 10-Q for the

12  quarterly period ending April 30, 2019, Intuit explained that "government funded services that

13  curtail or eliminate the role of taxpayers in preparing their own taxes could potentially have material

14  and adverse revenue implications."

15          23.     In large part due to Intuit's lobbying, the IRS and state tax authorities have not yet

16  instituted a full return-free filing system.  However, as described below, as part of its efforts to stave

17  off a return-free filing system, Intuit has agreed to participate in government programs through

18  which private companies such as Intuit must voluntarily provide low- and middle-income taxpayers

19  with opportunities to file their taxes for free.

20          **i.      Most Taxpayers Are Able to Freely File Federal Taxes through IRS Free File**

21          24.     In the early 2000s, the IRS was considering instituting a return-free filing system for

22  federal tax returns.  To deter the IRS from doing so, Intuit and other private-sector tax software

23  companies agreed to enter into a contractual agreement with the IRS to create the Free File program,

24  under which the tax software companies must allow most taxpayers the ability to file their federal

25  income tax returns through the companies' commercial tax preparation and filing software at no

26  cost.

27          25.     The participating private sector tax software companies are commonly referred to as

28  "Free File Alliance Members."  The terms of the agreement are set forth in the Free Online

8

1  Electronic Tax Filing Agreement and Amendments and the accompanying Memorandum of

2  Understanding between the Free File Alliance Members and the IRS (collectively the "Free File

3  Agreements").

4       26.    Pursuant to the Free File Agreements, Intuit and the other Free File Alliance

5  Members have agreed to "increase electronic filing of tax returns" and to "extend[] the benefits of

6  online federal tax preparation and electronic filing to economically disadvantaged and underserved

7  populations at no cost to either the individual user or to the public treasury."  In exchange, the IRS

8  has "pledged to not enter the tax preparation software and e-filing services marketplace."

9       27.    Under the Free File Agreements as they have existed over the past decade, Intuit and

10  the other Free File Alliance Members are obligated to jointly provide free federal tax services to the

11  lowest 70 percent of the taxpayer population by adjusted gross income.  Per the Free File

12  Agreements, each Free File Alliance Member is committed to serve some but not all the qualified

13  taxpayers through its own software.  However, the Free File Alliance Members must together ensure

14  that all 70 percent of qualified taxpayers are able to file for free through the Free File program.

15       28.    In 2018, under the 70 percent threshold, the Free File Alliance Members had to allow

16  taxpayers with an adjusted gross income of $66,000 or less the opportunity to file their taxes for free

17  through at least one Free File Alliance Members' software, regardless of the complexity of the tax

18  returns or any particulars of the taxpayers' financial status.

19       29.    Intuit has agreed that its Free File product, TurboTax Free File, will serve the lowest-

20  income and most vulnerable taxpayers in America.  In 2018, for example, Intuit agreed that

21  taxpayers with an adjusted gross income of $34,000 or less, taxpayers with an adjusted gross income

22  of $66,000 or less who were active military members, and taxpayers eligible for the Earned Income

23  Tax Credit, would be able to file for free using TurboTax Free File.

24       30.    For those California taxpayers who use TurboTax Free File, filing a state tax return is

25  free for everyone who qualifies for a free federal return.

26       **ii.**    **California Allows Free Filing of California State Tax Returns via CalFile**

27       31.    Like the IRS, the FTB has considered instituting return-free filing for California

28  income tax returns.  In 2005, the FTB initiated a pilot return-free tax return program called

<center>9</center>

1   "ReadyReturn."  Under the pilot program, 50,000 California taxpayers received a tax return that had

2   already been completed for them based on financial information reported to the FTB by employers

3   and banks.  The pilot group of taxpayers then had the option of filing this pre-completed tax return

4   for free or discarding it and filing a conventional return.

5          32.     The FTB has since incorporated elements of ReadyReturn into CalFile, the FTB's

6   free electronic tax return filing program.  Using CalFile, qualified California taxpayers can file their

7   state taxes for free.  If taxpayers obtain a free personal identification number ("PIN") they can pre-

8   fill their return using the FTB's online system with data possessed by the State of California.  In

9   2018 individual filers with income of up to $194,503 and joint filers with income of up to $389,013

10  qualified to use CalFile, subject to certain exceptions.

11  **C.      Intuit's Scheme to Maximize Its Profits by Misleading Taxpayers**

12         33.     To sustain and grow its revenue and profits, Intuit has sought to attract substantially

13  more taxpayers to revenue-generating TurboTax products and to charge increasingly high prices for

14  TurboTax.  As a result, the revenue-generating TurboTax products are not only substantially more

15  expensive than free filing options through the IRS Free File program of CalFile, they are also

16  significantly more expensive than competing commercial products such as TaxSlayer or TaxAct.  In

17  2018, for instance, TurboTax Deluxe, the most popular TurboTax product, cost a taxpayer a

18  minimum of $105 to file the taxpayer's federal and California tax returns, and $45 more for each

19  additional state in which the taxpayer needed to file.  Other TurboTax products cost even more.  On

20  top of this base cost, Intuit encouraged taxpayers to pay for add-ons such as additional audit

21  protection and live tax assistance, each of which added substantially to the overall costs that

22  taxpayers paid.  By contrast, in 2018 the classic version of TaxSlayer cost $49 and the basic plus

23  version of TaxAct cost just $35 for filing a federal and California return.

24         34.     The proliferation of free filing options under the IRS Free File program and CalFile

25  and competing cheaper commercial options presented Intuit with a dilemma.  How could Intuit

26  convince taxpayers, most of whom can now file for free, and almost all of whom can file cheaper, to

27  pay Intuit's high prices?  Most taxpayers would not knowingly agree to pay Intuit's high prices if it

28  was apparent they could instead use free or cheaper filing options.  This is particularly true for low-

10

1   income families struggling to make ends meet in Santa Clara County and elsewhere in California.

2       35.     Rather than reduce its prices or risk losing a significant portion of its customers, Intuit

3   implemented a sophisticated marketing scheme that lured taxpayers to use TurboTax on the promise

4   that they could do so for free, only to later tell them, after they spent hours entering information into

5   TurboTax, that they would have to pay in order to complete the process of filing their returns.  In

6   doing so, Intuit falsely advertised TurboTax's cost and the availability of truly free alternatives in

7   order to hoodwink taxpayers into paying for TurboTax.  Intuit's marketing scheme, which is likely

8   to deceive taxpayers and harmful to all who viewed Intuit's advertising, is particularly duplicitous

9   for those taxpayers who qualified for Intuit's own TurboTax Free File product.

10      **i.      Intuit Draws Taxpayers to Turbo Tax with False Advertising About Its Cost**

11      36.     Intuit has engaged in a far-reaching advertising campaign to drive taxpayers to use

12  TurboTax rather than free or cheaper alternatives through false and misleading advertisements

13  representing that taxpayers who use the advertised version of TurboTax are "guaranteed" to be able

14  to file their taxes for free.

15      37.     To do so, Intuit created and maintains a seemingly free TurboTax product, the

16  TurboTax Free Edition.  Critically, the TurboTax Free Edition is an entirely separate product from

17  the TurboTax Free File product, which is the product through which Intuit complies with its

18  obligations under the IRS Free File program and allows truly free filing of federal and state tax

19  returns for anyone who meets the income criteria.  In fact, Intuit has used the TurboTax Free Edition

20  to steer taxpayers away from the TurboTax Free File product.  As described below, Intuit has

21  extensively advertised the TurboTax Free Edition and its supposed free "guaranteed" filing while

22  simultaneously minimizing taxpayers knowledge of or ability to find the TurboTax Free File product

23  by, for example, providing it on a separate URL and then blocking that URL or descriptions of the

24  TurboTax Free File product from appearing in internet search results.

25      38.     Intuit next advertised and continues to advertise across a variety of media that if

26  taxpayers use the TurboTax Free Edition they will be able to file their taxes for free.

27  ///

28  ///

11

Complaint for Violations of California False Advertising Law,
Seeking Restitution, Civil Penalties, and Injunctive Relief

1    39.    As part of this campaign, Intuit has created numerous television advertisements

2   emphasizing repeatedly that taxpayers who want to file their taxes for free can do so through the

3   TurboTax Free Edition.  Examples of Intuit's TurboTax television advertisements can be viewed at

4   <https://www.youtube.com/results?search_query=turbotax+free+commercials/>.  The 30 and 60

5   second spots consist of actors repeating the word "free" for the entire commercial before a voiceover

6   at the end confirms that TurboTax is "Free, free free free."



16    40.    Intuit also paid, and upon information and belief continues to pay, Google and other

17   search engines to prominently list and link to the TurboTax Free Edition when taxpayers search for

18   free tax filing options and even for IRS Free File.  For example, Intuit historically paid Google to list

19   advertisements for the TurboTax Free Edition among the top search results when taxpayers searched

20   for "IRS free file taxes."  And in the advertisements that appeared in search results, Intuit described

21   the TurboTax Free Edition in a variety of ways as free to file.  For instance, Intuit described it as

22   "Free Federal. Free State. Free to File" and costing "Absolutely nothing!"

> **TurboTax Free Edition. Free Federal. Free State. Free To File. | The ...**
> https://blog.turbotax.intuit.com/turbotax.../turbotax-free-edition-free-federal-free-state... ▼
> Dec 4, 2018 - Absolutely nothing! That's why, for the fifth year in a row, TurboTax is offering free federal and state tax filing with TurboTax Free Edition.

12

41. Although Intuit has changed some of its advertising in the past few months following several news articles exposing its deceptive conduct, Intuit continues to list the TurboTax Free Edition as the first Intuit-sponsored result in a Google search for "TurboTax free." In the listing, Intuit describes the TurboTax Free Edition as "100% Free Tax Filing, $0 Fed $0 State" with the promise that TurboTax is "your free tax filing solution."



42. Intuit even created a fake crossword puzzle that it published on the New York Times website next to the real crossword puzzle entitled "Free" by "Free.F.Free" with prominent TurboTax branding. A copy of the crossword puzzle is incorporated by this reference and attached as Exhibit A. It contains 68 clues, such as "TurboTax Free is __" and "No charge." The answer to every clue is "free."

43. Intuit's advertisements direct taxpayers to the URL turbotax.intuit.com, the revenue-producing URL for the TurboTax Free Edition, and not to TurboTax Free File.

44. When taxpayers access this URL, Intuit again claims that they will be able to file for free through the TurboTax Free Edition. For example, as of September 5, 2019, Intuit continues to include the advertisement below, which contains a "FREE guarantee[]," a statement users could pay

13

1  "$0" for their federal and state taxes, for a total of $0, and a button icon to begin the filing process

2  entitled "File for $0" with the hyperlinked message "See why it's free":



15      45.     Intuit's advertisements were and are false and misleading.  Contrary to its statements

16  that taxpayers are guaranteed to be able to "File for $0" using the TurboTax Free Edition, Intuit

17  deliberately designed that product to allow only a tiny percentage of taxpayers to file for free by

18  building triggers into its software that requires taxpayers to pay to file their return if there is any

19  deviation from the most standard tax filing.  For example, Intuit charges taxpayers to file if they

20  meet *any* of the following criteria:  they are self-employed, do not have health insurance, have

21  unemployment pay, have prize money, pay or receive alimony, have business income or losses, have

22  capital gains or losses, have income from rental real estate, receive royalties, have farm income or

23  losses, claim a student loan deduction, claim a health savings account contribution deduction, claim

24  deductible educator expenses, claim education credits, claim retirement savings contribution credits,

25  or claim credit for child and dependent care expenses.  And even this list includes only *some* of the

26  bases upon which the software will require a taxpayer to pay before filing.  Taxpayers who cannot

27  file for free include numerous taxpayers who have what any reasonable person would consider a

28  simple tax return.  Moreover, despite Intuit's advertising that taxpayers who use the TurboTax Free

14

1  Edition can file for free, Intuit in fact designed the TurboTax Free Edition so that it *requires a*

2  *massive number of low-income taxpayers who qualify to file their taxes for free*, including through

3  IRS Free File and CalFile, to *pay to file*.

4      **ii.**    **Intuit Misleads Taxpayers into Paying Substantial Sums to File Via TurboTax**

5      46.    Intuit's false advertising that taxpayers who use the TurboTax Free Edition can file

6  for free was and remains intentional and a key part of Intuit's bait and switch scheme to draw

7  taxpayers away from truly free or cheap filing alternatives.  Once taxpayers click the orange "File

8  for $0" button and begin using the TurboTax Free Edition, Intuit provides further deceptive

9  advertising designed to convince them to pay for expensive TurboTax products and other offerings.

10      47.    After taxpayers access the TurboTax Free Edition, they are directed to a page that

11  lists "TurboTax Free Edition" on the left-hand side and at the top of the browser window,

12  confirming they are preparing their taxes through Intuit's "guaranteed" "free" tax filing program.

13      48.    Intuit then prompts taxpayers to enter their personal and financial information.  After

14  they spend significant time entering their information, most eventually provide data that necessitates

15  a basic change to the standard format tax return—for example, that they worked as an Uber driver or

16  are paying off a student loan—which Intuit intentionally designed the Free Edition to exclude from

17  the returns eligible for free filing.  At this point, Intuit tells them that to "accurately report" their

18  taxes, they need to pay to upgrade to another TurboTax program:

Complaint for Violations of California False Advertising Law,
Seeking Restitution, Civil Penalties, and Injunctive Relief

49.     Intuit's statements are again knowingly false and misleading.  As an initial matter, Intuit's decision to design the TurboTax Free Edition to require a taxpayer with no health insurance, for example, to pay to upgrade to an expensive TurboTax product has nothing to do with the "accuracy" of that taxpayer's return.  To the contrary, as Intuit knows, many of these misinformed taxpayers qualify for free filing options through which they could accurately report their income, including the IRS Free File program and CalFile, rather than having to pay for an expensive upgrade. Intuit's deception of the taxpayers who qualify to use Intuit's own TurboTax Free File is especially appalling.  Intuit knows that those taxpayers—the lowest-income taxpayers who can least afford to pay— can accurately file for free through *another TurboTax product offered by Intuit*, but nonetheless hides that option and misinforms them that they need to pay $105 or more to upgrade in order to "accurately" file.

50.     Even if taxpayers click the "Keep Free" icon on the page shown in Paragraph 48, signaling that they are looking for any option that would allow free filing, Intuit simply repeats the same false representation that the taxpayer needs to upgrade to accurately report.

51.     The misrepresentations do not end there.  Intuit's strategy of initially informing taxpayers that they can file for free through TurboTax and then waiting to tell them they must pay to upgrade until after they have spent several hours entering information places the taxpayers in a lose-lose scenario.  They must either waste the time they spent and leave TurboTax to go a truly free option or they must pay the price to upgrade.  But because even taxpayers who learn the cost of upgrading at this point in the TurboTax process might still choose to leave TurboTax, Intuit employs additional deceptive advertising about TurboTax's cost.

52.     For instance, in the example above, Intuit listed the price to upgrade to TurboTax Deluxe as $59.99.  However, Intuit did not include the additional $44.99 it will charge for filing each necessary state tax return.  Further, Intuit's encouragement to  taxpayers to pay Intuit's fees with their refund, stating "Don't worry about pulling out your wallet—look for the payment option to deduct the cost from your federal refund when you file[,]" fails to disclose the $40 fee Intuit will charge for taking its payment out of a taxpayer's federal refund.  All told, rather than the $59.99

///

16

1  advertised by Intuit for the supposedly required "upgrade" to "Deluxe," a user who upgraded and

2  opted to take the payment to Intuit out of a federal refund was charged at least $144.98.

3      53.     Beginning in 2019, the news organization ProPublica published a series of articles

4  publicly disclosing Intuit's false advertising for the first time.  In the ProPublica articles, former

5  Intuit employees admitted Intuit's intent to lure taxpayers to TurboTax by false advertisements of

6  free filing and then to ultimately manipulate those individuals into paying to use TurboTax.

7      54.     For example, a former midlevel Intuit employee told ProPublica journalists that

8  Intuit's "entire strategy is [to] make sure people read the word 'free' and click our site and never

9  use" a product that is actually free.  The employee explained that Intuit designed its page to "direct

10  you through a product flow that the company wanted to ensure would not make you aware of Free

11  File."  The "vast majority of people who click [the TurboTax Free Edition] will not pay $0."[1]

12      55.     Another former TurboTax vice president wrote on LinkedIn that she had been

13  "charged with addressing the threat posed by IRS free efile" and had "revamped TurboTax

14  marketing strategy for low-end tax filers," driving a "100% increase in revenues."[2]  In other words,

15  Intuit tasked a TurboTax vice president with steering vulnerable low-end tax filers who qualified to

16  file for free to expensive TurboTax products.  She successfully created the marketing strategy that

17  did so, and then boasted about it as a career accomplishment because it doubled Intuit's profits.

18      56.     Similarly, former Intuit employees have admitted that Intuit considered and rejected

19  ideas that would have rendered their advertising less misleading.  A former Intuit marketing

20  employee told ProPublica that a new employee proposed at a meeting with staff up to senior

21  manager level that TurboTax users who provided information confirming their eligibility for IRS

22  Free File be provided a clear recommendation they use that product.  This new employee saw and

23  attempted to correct Intuit's deceptive practice of informing users eligible for free filing that they

24  ///

25

26

[1] Elliot and Kiel, *TurboTax and H&R Block Saw Free Tax Filings as a Threat – and Gutted It* (May
27  2, 2019) ProPublica < https://www.propublica.org/article/intuit-turbotax-h-r-block-gutted-free-tax-
filing-internal-memo> (as of Sep. 5 2019).

28  [2] *Ibid*.

17

1    needed to pay.  According to the former marketing employee, when she proposed this idea, other

2    employees at the meeting laughed and the meeting moved on.[3]

3        **iii.    Intuit Has Misled Taxpayers About the Availability of TurboTax Free File**

4        57.    To maximize its profits, Intuit not only wants to drive traffic to its paid TurboTax

5    products but also to minimize the number of low-income taxpayers who learn about and use Intuit's

6    actual free product, TurboTax Free File.  Intuit thus has engaged in several deceptive tactics to

7    mislead taxpayers about their ability to use that product to file for free.

8        58.    When Intuit created TurboTax Free File, Intuit created a separate URL to host it:

9    intuit.turbotax.com/taxfreedom.  Intuit then hid that URL.  Until its practice was recently exposed by

10   ProPublica, Intuit actively manipulated the coding within the TurboTax Free File URL

11   (intuit.turbotax.com/taxfreedom) to prevent Google's search engine from listing any links to that

12   URL, including when taxpayers entered search terms such as TurboTax and Free File.  At the same

13   time, Intuit paid Google to list advertisements for its revenue-producing URL (turbotax.intuit.com)

14   among the top search results when taxpayers searched for free tax services, even when using search

15   terms as specific as "IRS free file taxes":

16

17   

18

19

20

21

22

23

24

25

26

27

28   [3] *Ibid.*

59.     Intuit also included descriptors in its online advertising, including the terms "TurboTax® Free" and "Free IRS Fed Filing Online" shown above, that created the impression that taxpayers would be directed to a website that allowed them to take advantage of their entitlement as low-income taxpayers to prepare and file their taxes for free.  Again, the link sent taxpayers to Intuit's revenue-producing URL, turbotax.intuit.com, and not to the TurboTax Free File URL.

60.     When taxpayers have accessed the revenue-producing TurboTax URL, Intuit included and continues to include misleading statements to convince them that no Free File product is available.  For example, the revenue-producing TurboTax URL prominently contains a link entitled "Online Products."  When taxpayers click that link, Intuit purports to list the available TurboTax products.  However, while the list includes the TurboTax Free Edition and TurboTax products costing money such as TurboTax Deluxe, it omits any reference to TurboTax Free File.  Lower on the revenue-producing TurboTax URL Intuit includes another link entitled "All online tax preparation software."  At this link, Intuit again purports to list all of its online tax preparation software, and again includes the TurboTax Free Edition and TurboTax products costing money but omits TurboTax Free File.  In fact, until recently, if a taxpayer searched turbotax.intuit.com after viewing TurboTax's advertising to find free tax filing options, he or she would find no reference to or ability to access TurboTax Free File and would be exclusively directed for supposedly free filing to the TurboTax Free Edition.

**iv.     Intuit Has Employed Deceptive Advertising on the TurboTax Free File Webpage**

61.     Despite Intuit's efforts to hide TurboTax Free File, some qualified taxpayers successfully access its URL.  In yet another dimension of its scheme, Intuit engaged in further deception to attempt to direct those taxpayers back to turbotax.intuit.com and to ultimately pay to use TurboTax.

62.     First, Intuit designed the TurboTax Free File Program URL to include misleading statements to taxpayers regarding their eligibility for the Free File program.  For example, Intuit included prominent statements on the main page of the website creating the false impression that if taxpayers did not meet TurboTax's Free File product requirements, including the $34,000 cap on adjusted gross income, the taxpayers did not qualify for the Free File program and so should file

19

through TurboTax standard products by clicking an icon entitled "Start for Free."  Intuit knew that taxpayers who earned between $34,000 and $66,000 qualified for the IRS Free File program and could file for free through other Free File Alliance Member products.  But by misleading them about this fact and encouraging them to access the other TurboTax products "for free," Intuit redirected those taxpayers into TurboTax products that Intuit intended to sell to them using the same deceptive scheme discussed above.  Intuit omitted any mention that these taxpayers qualified to file for free using another Free File Alliance Member products.

63.     Second, Intuit rerouted a substantial portion of taxpayers who attempted to access TurboTax Free File back to revenue-generating TurboTax products without their knowledge.  When first accessing TurboTax Free File, Intuit prompted taxpayers to provide their email, Intuit user ID, and password.  If a taxpayer had a preexisting account with Intuit—for example, because that taxpayer began preparing a tax return using a different TurboTax product—the act of logging into TurboTax Free File with that preexisting account information caused that user to be automatically redirected to the TurboTax product that the taxpayer had previously accessed.  Intuit provided no notice to these users that they were being forced away from TurboTax Free File and provided no means to these users to opt instead to use TurboTax Free File.  At this point, the user, who qualified to file for free and had been told by Intuit that he or she was entering the TurboTax Free File system, instead was routed into a revenue-generating TurboTax product and likely paid to file.

**D.     Intuit Has Massively Profited by Harming Vulnerable Taxpayers**

64.     Intuit's deception has greatly profited Intuit while harming taxpayers throughout California and in Santa Clara County specifically.

65.     Upon information and belief, millions of Californians and hundreds of thousands of Santa Clara County residents viewed Intuit's false and misleading advertising and then paid to use TurboTax to file their taxes.

66.     Many of those taxpayers were looking for—and qualified for—actual free filing options but were misled by Intuit into paying money they could ill afford to spend for TurboTax products.  In response to ProPublica's reporting, a substantial number of taxpayers have contacted ProPublica and alleged they sought out and qualified for free filing options but were misled by Intuit

20

1   into paying for TurboTax.[4]  For example, an unemployed mother and part-time father raising two

2   disabled sons who qualified for free filing were charged almost $200 by Intuit to use TurboTax.[5]  A

3   graduate student who earned less than $10,000 paid Intuit $100 for TurboTax.[6]  And numerous

4   military personnel who met free filing thresholds were misled by Intuit into using TurboTax.[7]  These

5   individuals were deceived into paying scarce resources to Intuit—a corporation that takes in billions

6   in revenue every year—rather than using those resources for rent, groceries, and other basic living

7   expenses.

8          67.    In large part due to Intuit's pattern of deception, less than three percent of eligible

9   Free File taxpayers did so nationwide.  A similarly small percentage of eligible CalFile taxpayers use

10  it to file their state tax returns for free.

11         68.    Meanwhile, propelled by its deceptive marketing, Intuit's revenue and profits have

12  increased by leaps and bounds.  TurboTax is now the most used tax preparation software in the

13  United States.  In 2003, Intuit reported $422.9 million in revenue from TurboTax sales.  By 2018,

14  Intuit reported selling nearly 32 million units of TurboTax Online and earning nearly $3 billion in

15  revenue from those sales.  In fiscal year 2018 alone, Intuit's Consumer segment, which is "derived

16  primarily from TurboTax Online tax return preparation software," increased by $316 million—a

17  14% increase from fiscal year 2017.

18         69.    The People first learned of Intuit's false advertising and its deceptive conduct

19  described above in April 2019 after ProPublica published the article "Here's How TurboTax Just

20  Tricked You into Paying to File Your Taxes" on April 22, 2019.

21  ///

22

23

---

24  [4] Tobin, et al., *Here Are Your Stories of Being Tricked into Paying by TurboTax.  You Often Need the Money* (Apr. 26, 2019) ProPublica <https://www.propublica.org/article/here-are-your-stories-of-being-tricked-into-paying-by-turbotax-you-often-need-the-money> (as of Sep. 5, 2019).

25  [5] *Ibid.*

26  [6] *Ibid.*

27  [7] Elliot and Tsutsumi, *TurboTax Uses a "Military Discount" to Truck Troops Into Paying to File Their Taxes* (May 23, 2019) ProPublica <https://www.propublica.org/article/turbotax-military-

28  discount-trick-troops-paying-to-file-taxes> (as of Sep. 5, 2019).

Complaint for Violations of California False Advertising Law,
Seeking Restitution, Civil Penalties, and Injunctive Relief

70.     After ProPublica published that article and subsequent stories thereafter, Intuit's response has been brazen indifference and further deception.  After ProPublica's initial stories, multiple TurboTax users who qualified for IRS Free File but were misled into paying to use TurboTax reported to ProPublica that they had contacted Intuit to obtain a refund.[8]  After a few initial refunds were granted, Intuit quickly settled on a different response.  It denied the refunds and provided the callers with false information that Intuit was not responsible for the TurboTax Free File product and that ProPublica's stories about TurboTax were "fake news."[9]

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**FALSE ADVERTISING**
**(Violation of Business and Professions Code section 17500, *et seq.*)**
**(Against all Defendants)**

71.     The People allege and incorporate all the allegations set forth above in Paragraphs 1-70.

72.     Business and Professions Code Section 17500 (the "FAL") makes it unlawful for a business, "with intent . . . to perform services… or induce the public to enter into any obligation" to make, disseminate, or cause to be made or disseminated to the public, including over the internet, "any statement, concerning . . . such services" or "concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof," which is *either* "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading," *or* that serves "as part of a plan or scheme with the intent not to sell such … services . . . at the price stated therein, or as so advertised."

73.     As alleged above, at all times relevant to this Complaint, Intuit violated the FAL by making false or misleading statements about TurboTax and taxpayers' ability to file their taxes for free, by causing such statements to be made and disseminated to the public, and by making

---

[8] Elliot and Marco, *Listen to TurboTax Lie to Get Out of Refunding Overcharged Customers* (May 9, 2019) ProPublica < https://www.propublica.org/article/listen-to-turbotax-lie-to-get-out-of-refunding-overcharged-customers> (as of Sep. 5, 2019).

[9] *Ibid*.

22

1  statements that taxpayers could use TurboTax for free with the intent to charge most of those

2  taxpayers to use TurboTax and/or to sell a different service than advertised.

3        74.    Intuit deliberately implemented a scheme to draw taxpayers to TurboTax's revenue-

4  producing URL with false representations that they could file their taxes for free using TurboTax

5  and then to charge those taxpayers significant sums to file through additional false and misleading

6  statements.

7        75.    As part of this scheme, Intuit made and disseminated myriad statements that are likely

8  to deceive members of the public on its website and in advertisements.  Examples of Intuit's false or

9  misleading statements include:

10            a.    *Television and web advertisements and Google search results*:

11                • Falsely representing in numerous television advertisements that if
                  taxpayers used the TurboTax Free Edition they would be able to file
12                for free, including in an ad campaign using the tagline: "Free, free free
                  free."

13                • Falsely representing in extensive online advertisements that if
14                taxpayers used the TurboTax Free Edition they would be able to file
                  for free.

15                • Falsely advertising the TurboTax Free Edition in online
16                advertisements as "Guaranteed Free," and as "Free Federal," "Free
                  State," and "Free File," requiring "absolutely nothing."

17                • Falsely advertising on Google with links entitled "TurboTax® Free"
18                and "Free IRS Fed Filing Online" that in fact linked to the revenue-
                  generating TurboTax URLs rather than TurboTax Free File.

19

20            b.    *Statements on the revenue-producing TurboTax site*:

21                • Falsely describing the TurboTax Free Edition as the only free
                  TurboTax product and omitting mention of the TurboTax Free File
22                product.

23                • Falsely representing that if taxpayers use the TurboTax Free Edition
                  they are charged "$0" for federal taxes, "$0" for state taxes, and "$0"
24                for filing.

25                • Falsely representing that taxpayers who access the TurboTax Free
                  Edition could file for "FREE guarantee[d]."
26
                  • Falsely representing that taxpayers could "File for $0" if they clicked
27                on the TurboTax Free Edition icon.

28  ///

<center>23</center>

- • Falsely stating to taxpayers that they had to pay hundreds of dollars to upgrade to a different product in order to "accurately report" their income after taxpayers had invested substantial time inserting their personal and financial information.

- • Encouraging taxpayers to use their federal refund to pay for upgrades while failing to disclose that taxpayers would be charged substantial additional money to do so.

c.   *Statements on the TurboTax Free File site*:

- • Falsely informing taxpayers with over $34,000 in adjusted gross income that they did not meet the qualifications for Free File.

- • Falsely informing taxpayers that they had accessed the TurboTax Free File product when they were in fact using a different TurboTax product that would cost money to use.

76.    At the time Intuit made the statements alleged above or caused them to be disseminated it knew and should have known the statements were false and misleading and likely to deceive the public.  Intuit knew and intended that its false and misleading advertising created a false impression that taxpayers could file for free through the standard TurboTax products.

77.    Intuit's scheme has been wildly profitable.  Intuit has not merely been able to preserve its corporate profits, initially threatened by free filing options, but has experienced dramatic year on year increases in revenue and income.  Intuit profits have come at the expense of the low- and middle-income taxpayers who qualified to file for free and have been deceived into paying their sorely needed resources to a multi-billion-dollar corporation.

78.    Pursuant to Business and Professions Code Section 17535, the People request an order enjoining Defendants from any further violations of Section 17500, *et seq.*

79.    Pursuant to Business and Professions Code Section 17535, the People request restitution of any money acquired by virtue of Defendants' violations of Section 17500, *et seq*.

80.    Pursuant to Business and Professions Code Section 17536, the People request an order assessing a civil penalty of $2,500 against Defendants for each violation of Section 17500, *et seq*.

///

///

24

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the People, pray that the Court:

1.      Declare that Defendants have made, disseminated as part of a plan or scheme, or aided and abetted the dissemination of false and misleading statements in violation of the False Advertising Law;

2.      Enjoin Defendants from performing or proposing to perform and further false or misleading statements in violation of the False Advertising Law.

3.      Order Defendants to pay restitution of any money acquired by means of Defendants' false and misleading advertising, pursuant to Business and Professions Code sections 17500 and 17535.

4.      Order Defendants to pay $2,500 civil penalties for each act of false and misleading advertising pursuant to Business and Professions Code sections 17500 and 17536.

5.      For pre- and post-judgment interest;

6.      For attorneys' fees and costs; and

7.      For such other and further relief as the Court deems proper.


Dated: September 6, 2019                    Respectfully submitted,

OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
JAMES R. WILLIAMS, County Counsel
GRETA S. HANSEN, Chief Assistant County Counsel
KAVITA NARAYAN, Lead Deputy County Counsel
AARON BLOOM, Deputy County Counsel
TONY LOPRESTI, Deputy County Counsel


By:    _____
AARON H. BLOOM
Attorneys for Plaintiff,
PEOPLE OF THE STATE OF CALIFORNIA

2077217

25

Complaint for Violations of California False Advertising Law,
Seeking Restitution, Civil Penalties, and Injunctive Relief

# Exhibit A

ADVERTISEMENT



# FREE
## By Free F. Free



turbotaxfree
Free, free free free.

## DOWN:

1 TurboTax Free
is ____
2 EERF backward
3 Rhymes with tree
4 Opposite of not-free
5 ____ refills
6 With TurboTax, simple
returns are ____
7 To set loose
9 Buy one, get one ____
11 $0.00
12 No charge
13 Off the hook
16 Samples at the
grocery store
17 Four letters
18 Same as 19-Down
19 Same as 20-Across
22 Rhymes with tree

23 The truth will set
you ____
24 Phonetics: Fuh-Ree
25 Sterile or germ-____
26 You know the answer
27 The answer is FREE
30 [Insert clue here]
31 A four-letter word
that means basically
the exact same thing
as "Free" and, in fact,
is free
32 Uncaged
34 Unleashed
35 ____-range chicken
36 It's so cold I'm ____ zing
38 Chargeless
39 Complimentary
40 First Amendment,
shortened: ____
speech

41 If you pay nothing
for something, then
it's ____
42 Seriously, you can't
get this wrong
45 If it's TurboTax Free,
it's ____
46 FREE
47 ____ in-flight Wi-Fi
48 free
49 Two F's, two R's,
four E's
53 Combine 45-Across
and 4-Down, then
just pick one
55 F.___
59 _ R _ _
60 _ _ E _
61 ___ E
62 Freebie--it's free
63 $$$
64 Sugar-____

## ACROSS:

1 At no cost
2 Gluten-____
4 REFE unscrambled
8 Gratis
9 TurboTax ____ is free
10 Put this in your
car when it gets cold:
Anti____ze
11 F to the REE
13 Free
14 Not a highway but a
____ way
15 Exact same word
as free
20 FREE
21 FREE
22 FREE
25 FREE
26 FREE
28 Duty-____ store
29 Just write "free"
31 Same answer as
everything else
32 "Phree," spelled
correctly
33 It's "Free," twice
35 ($10 x 2) - $20 = ____
36 Did we mention
TurboTax Free is ____?
37 No dollars and
zero cents
38 ____ throws, worth
one point each
42 "Kostenlos" in
Germany
43 "Libre" in France
44 Opposite of
confined
45 Sugar-____ gum
50 Spoiler alert:
It's free
51 Open
52 Four-letter word
for free
54 Contract position:
____lancer
56 Freeeeeeeeeeeee
(minus 11 E's)
57 ᖴᖇᕮᕮ (use mirror)
58 Land of the ____
62 "Please enjoy a
____ sample"

63 Also rhymes with
Brie
64 TurboTax tagline:
"Free, ____ ____ ____."
65 TLDR: Free
66 The word FREE
67 Literally, just the
word FREE
68 Writing all of these
clues was way harder
than it seems--oh,
and the answer is
FREE



Free Edition product only. For simple U.S. returns. Offer subject to change. See offer details at turbotax.com