Warren Postman (#330869)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Benjamin Whiting (*pro hac vice forthcoming*)
  ben.whiting@kellerlenkner.com
Ellyn Gendler (#305604)
  ellyn.gendler@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1999 Avenue of the Stars
Suite 1100
Los Angeles, California 90067
(213) 863-4276

*Attorneys for Plaintiff-Intervenors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE INTUIT FREE FILE LITIGATION | Case No.: 3:19-cv-02546-CRB |
| This Document Relates to: All Actions | **[PROPOSED] COMPLAINT IN INTERVENTION**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1. Intuit is the nation's leading provider of online tax preparation and filing services. Plaintiff-Intervenors are Intuit consumers who paid for online tax services that Intuit had agreed to provide for free. Pursuant to an agreement with the Internal Revenue Service (IRS), approximately a dozen tax preparation providers, including Intuit, are required to provide free online tax-return-preparation and -filing services to a majority of U.S. tax filers, including lower-income Americans and active-duty military service members (the "Free File Program"). Because these tax preparation providers agreed to offer these services for free, the IRS agreed not to build and publish its own online, free e-filing system—a service that would have competed directly with Intuit. Though the Free File Program was supposed to have a broad reach, Intuit's nationwide scheme has diverted eligible filers to its paid products. In tax year 2018, less than 3% of eligible taxpayers filed for free under the Free File Program.

2. Intuit used a variety of means to steer taxpayers away from its free e-filing offering under the Free File Program. For example, Intuit's online tax preparation software is called TurboTax. Intuit named the filing software it provides under the Free File Program the "TurboTax Freedom Edition." But it simultaneously promoted a competing product that it named the "TurboTax Free Edition." The criteria to file for free using Intuit's Free Edition are not the same as the criteria to file for free using Freedom Edition. Free Edition is only free for the simplest returns; for most people, you have to pay Intuit a fee to use TurboTax. For those taxpayers, TurboTax tax-preparation charges started at $59.99 or more just to complete their returns.

3. When a consumer is lured to Intuit's website by the promise of free tax-return-preparation and -filing services, Intuit does not tell taxpayers it must pay to file (except where a filing is remarkably simple) until after the taxpayer spends a considerable amount of time inputting the consumer's information to the TurboTax software. What Intuit is implementing here is a "free-to-fee" scheme that baits customers by offering free tax-filing services, but then charges them a fee before they can complete their return and file their taxes. Many taxpayers who find themselves facing a fee to use TurboTax are in fact eligible to file for free under the Free File Program Intuit created for the IRS. But Intuit does not inform the taxpayer of that

actually free option, nor does it provide a link to the Freedom Edition from "Free" Edition it has on its website.

4.  Intuit's marketing and advertising used sophisticated search technology to ensure taxpayers paid to file even if those taxpayers were eligible to file for free using the Free File Program. One way Intuit did this was to create source code for the Freedom Edition (the version it created for the IRS) that hid the website by keeping it from appearing in search engines like Google. That is different that the source code Intuit used to promote its own paid products in Google.. As a result, taxpayers who search for terms like "free IRS online tax filing" get directed not to the actually free IRS version but the paid products offered by Intuit.

5.  Because the Free Edition that Intuit created for the IRS is supposed to provide actually free tax-return-preparation and -filing services for low-income taxpayers and military servicemembers, it is the most vulnerable and most deserving individuals who are the victims of Intuit's conduct. Intuit capitalizes on its extensive understanding of tax laws and regulations to obfuscate and frustrate these specific taxpayers into a product Intuit already promised to provide them for free. In doing so, Intuit has secured for itself funds that properly should have been retained by the eligible taxpayers Intuit targeted.

6.  Intuit's scheme impeded competition and harmed consumers by boxing out a significant potential competitor, the United States Internal Revenue Service, from the market for online tax-preparation and -filing services. Intuit has conceded that it "face[s] competitive challenges from government entities that offer publicly funded electronic tax preparation and filing services with no fees to individual taxpayers."[1]  With the non-compete agreement in place, Intuit implemented the deceptive bait-and-switch scheme described above, maintaining TurboTax's significant market power by shielding its paid products from competition from a free or far less expensive option. Intuit also colluded with the other members of the Free File Alliance to conceal the Free File program from the entire market, and thus to reduce competition.

---

[1] *See* Intuit Inc., Fiscal Year 2018 Form 10-K at 9, available at https://kl.link/2W2iRhM.

7. The Plaintiff-Intervenors here are seeking a range of relief, including equitable and statutory relief enjoining Intuit from pursuing and engaging in the deceptive practices discussed in this Complaint, requiring restitution of all funds Intuit improperly procured from Plaintiff-Intervenors, ordering statutory damages under the consumer-protection statutes of each Plaintiff-Intervenor's home-state or California, and any statutory damages or penalties allowed Sherman Act, including treble damages.

**PARTIES**

8. Plaintiff-Intervenor Sabrina Alvey is a resident and citizen of Kentucky.

9. Plaintiff-Intervenor Arlan Ashcraft is a resident and citizen of Kentucky.

10. Plaintiff-Intervenor Mary Backes is a resident and citizen of Arizona.

11. Plaintiff-Intervenor Sandra Childress is a resident and citizen of Arizona.

12. Plaintiff-Intervenor Megan Mairs is a resident and citizen of Oklahoma.

13. Plaintiff-Intervenor Amber Millikan is a resident and citizen of Rhode Island.

14. Plaintiff-Intervenor Christy Mueller is a resident and citizen of Oklahoma.

15. Plaintiff-Intervenor Scott Siebert is a resident and citizen of Kansas.

16. Plaintiff-Intervenor Tiffany Whatley is a resident and citizen of Kentucky.

17. Defendant Intuit, Inc. is a Delaware corporation with its principal place of business in Mountain View, California.

18. Defendant Intuit Consumer Group LLC is a California corporation with its principal place of business in San Diego, California. Intuit Consumer Group is a wholly owned subsidiary of Intuit Inc.

**JURISDICTION AND VENUE**

19. This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1331 because it involves questions of federal law and under 28 U.S.C. § 1367 as an exercise of its supplemental jurisdiction over related questions of state law.

20. This Court has personal jurisdiction over Intuit because its principal place of business is here in this District and Intuit has sufficient minimum contacts in California such that the exercise of jurisdiction by this Court is both proper and necessary.

[PROPOSED] COMPLAINT IN INTERVENTION
CASE NO. 3:19-CV-02546-CRB
4

21. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the conduct at issue in this case occurred in this District.

## FACTUAL ALLEGATIONS

22. Intuit owns TurboTax, the nation's leading provider of online tax preparation and filing services. TurboTax occupies as much as two-thirds of the online tax filing market, and it generated over $2.2 billion in revenue in fiscal year 2019.

23. TurboTax is a member of Free File Alliance (now called Free File, Inc.), a consortium of private tax preparation and filing companies. In 2002, the Alliance promised to provide free online tax filing to low-income taxpayers—at least 60% of the population—and in return extracted the IRS's agreement not to provide competing online tax filing services. The Free File Alliance memorialized this arrangement in the Free File Agreement (the "Agreement"), which remains in force today. Under the Agreement, each Free File Alliance member must serve a share of the total eligible population, so that all qualifying taxpayers have access to at least one member's free filing platform.

24. Until 2020, the Agreement included a non-compete provision that prohibited the IRS from creating its own free online filing product and entering the market for tax preparation.

25. Intuit has conceded that it "face[s] competitive challenges from government entities that offer publicly funded electronic tax preparation and filing services with no fees to individual taxpayers." To combat that threat, Intuit —through the Free File Alliance—promised to offer free tax filing to at least 60% of United States taxpayers, in return for the IRS's agreement to not offer its own free product. With the non-compete agreement in place, Intuit implemented a deceptive bait-and-switch scheme.

26. Under the Agreement, Intuit created free tax-preparation and -filing software that gave consumers free access to more than 100 tax forms, allowing eligible consumers to file even complex returns electronically for no charge, so long as they met one of three criteria: an adjusted gross income ("AGI") of around $34,000 or less; eligibility for the Earned Income Tax Credit; or status as an active military member with an AGI of around $66,000 or less. Taxpayers who qualified for this free option could also prepare and file their state tax returns for free, using the same website.

27. While Intuit created free filing software to satisfy its commitments under the Agreement, it did not truly offer that software to its customers. Instead, Intuit leveraged its participation in the Free File Alliance to entice low-income earners, like Plaintiff-Intervenors, with the promise of free tax preparation, only to trick them into paying for TurboTax's commercial tax filing products. In other words, Intuit used the prospect of free filing as bait to lure consumers to pay it money.

28. Intuit implemented this scheme by first muddying the waters, introducing a decoy "free" product, separate from the Free File Alliance program, that few people were qualified to use. Specifically, Intuit called the Free File Alliance program the "Freedom Edition." Intuit then called its decoy "free" filing product the "Free Edition." The "Freedom Edition" (the IRS-required free option) and the "Free Edition" (the decoy "free" option) were both nominally free, but the Free Edition's eligibility requirements were significantly more narrow than the Freedom Edition's eligibility requirements. The Free Edition was free for only truly simple tax returns. Consumers could not file for free using the Free Edition if they were self-employed; lacked health insurance; received unemployment; had business income, expenses, or losses; claimed a student loan deduction; had capital gains or losses; lived in one state but worked in another; paid or received alimony; had income from rental real estate; received royalties; had farm income or losses; or claimed a health savings account contribution deduction, deductible educator expenses, education credits, retirement savings contribution credits, or credits for child and dependent care expenses. On the other hand, consumers with these tax situations would still be eligible for the Freedom Edition, so long as they had met the basic eligibility requirements.

29. This was confusing by design. Having created a decoy "Free Edition" that few consumers could use, Intuit drowned out any thought of the "Freedom Edition" by dialing up its promotion of the "Free Edition." For instance, for tax year 2018, Intuit issued a thirty-second television advertisement depicting a game show in which the answer to every question was "free."[2] The advertisement ended with a voiceover stating, "That's right, TurboTax Free is free. Free, free, free, free."

---

[2] Available at https://www.youtube.com/watch?v=c7jhZR_umi8.

30. Intuit also used direct email campaigns urging consumers to sign into their TurboTax accounts to receive a "max refund" that was "FREE guaranteed," but directing them to TurboTax's commercial site, not the Freedom Edition free site. Intuit paid for Google "AdWords"—advertisements that appear above Google search results—to direct taxpayers to its Free Edition commercial site when they searched for free tax filing. And once on TurboTax's commercial site, consumers were inundated with offers of "free" filing.[3] Intuit aggressively advertised its Free Edition in this manner for tax years 2014, 2015, 2016, 2017, and 2018, to convey to taxpayers that its Free Edition was the free filing option.

31. Not only did Intuit aggressively market its restrictive Free Edition, it also actively concealed its Freedom Edition, for which many more taxpayers were eligible. For instance, Intuit "de-indexed" the Freedom Edition website, adding code directing search engines to not list the website in online search results. As a result, consumers searching for free tax filing, even specifically for "IRS free tax filing," would be directed to TurboTax's Free Edition commercial site rather than the Freedom Edition site. And even if a consumer managed to locate TurboTax's Freedom Edition through an internet search, that consumer was first directed to a landing page containing a button advertising "free" filing on TurboTax's commercial website.[4] Intuit also omitted all references to the Freedom Edition website from its commercial website, and it removed all links from the commercial website to the Freedom Edition website.

32. Once on TurboTax's commercial website, consumers were presented only with TurboTax's "Free Edition" and TurboTax's paid products. They were never made aware of the Freedom Edition and were shown a menu of options that would cause any reasonable consumer to conclude that the Free Edition was the only free option available. Because the "Free Edition" is so restrictive, many taxpayers

---

[3] See https://kl.link/322LfnU (archived version of commercial site on June 1, 2015); https://kl.link/3iMmMcf (archived version of commercial site on Jan. 14, 2016); https://kl.link/3fgah6u (archived version of commercial site on Feb. 15, 2017); https://kl.link/2CiwB0P (archived version of commercial site on Jan. 18, 2018); https://kl.link/31ZULrH (archived version of commercial site on Jan. 31, 2019).

[4] See TurboTax Freedom Edition and IRS Free File Alliance (Mar. 18, 2014) (describing the IRS Free File Program, and then providing a "Start For Free" button directing the reader to TurboTax's commercial website) available at https://kl.link/38LBBax.

who qualified for the Freedom Edition ended up on TurboTax's commercial website and were led to believe that their only option was a TurboTax paid product.

33. In short, Intuit aggressively advertised "free" filing through its commercial website and a product designed to appear identical to the truly free product, while actively concealing the truly free product, intending that taxpayers would be drawn to TurboTax for "free" filing, but then would be unlikely to find the actual free filing product and would instead purchase TurboTax's paid products.

34. Plaintiff-Intervenors were eligible for free filing through TurboTax's IRS-required Free File product. But despite being eligible for free tax filing, Plaintiff-Intervenors paid Intuit to file taxes. Plaintiff-Intervenors paid Intuit because Plaintiff-Intervenors were drawn by the prospect of "free" tax filing through TurboTax's commercial website, but Intuit implicitly represented that its Free Edition, rather than the truly free Freedom Edition, was the only free filing product available. Because Plaintiff-Intervenors were ineligible for the Free Edition, Intuit represented that they would have to file their taxes using a paid TurboTax product, which they did. Even after Plaintiff-Intervenors provided sufficient information to allow Intuit to determine that they were eligible for the Free File program, Intuit did not make Plaintiff-Intervenors aware of that program or direct Plaintiff-Intervenors to the Free File website. And Intuit made it impossible for Plaintiff-Intervenors to access the truly free, Free File website from its commercial website. Had Plaintiff-Intervenors known of the truly free option (TurboTax's Free File Program), Plaintiff-Intervenors would not have paid Intuit to file their taxes.

35. H&R Block and other members of the Free File Alliance engaged in similar deception tactics. Although other members of the Free File Alliance should have competed for the free-filing taxpayers who fell for Intuit's scheme (i.e., potential brand ambassadors and future fee-paying customers), the Alliance members all colluded to hide the Free File program and to steer the taxpayers into their respective paid products.

36. Ultimately, in the 2019 filing season, only 2.4% of taxpayers eligible for the Free File program filed taxes using the program, and the Department of Treasury estimates that more than 14 million

taxpayers who were eligible for the Free File program paid to use an Alliance member's commercial product instead.[5]

37.     This result was no accident. As explained in an exposé last year by ProPublica, internal whistleblowers have confirmed that Intuit carefully designed TurboTax's advertising and website for the specific purpose of causing consumers to think they had to pay Intuit money for something Intuit had promised to provide for free.[6]

38.     Intuit was also stalling a public free-file service by falsely promising the IRS that it would make available a private free-file service, only to conceal that product from eligible taxpayers. This conduct eliminated competition and illegally maintained Intuit's monopoly power over the online tax-return-preparation and -filing market.

39.     Each Plaintiff-Intervenor was required to agree to Intuit's Terms of Service before filing his or her taxes online using TurboTax.

40.     Intuit's Terms of Service contain an arbitration agreement requiring that Intuit and its customers must resolve all claims relating to those Terms in individual arbitration rather than in court. The Terms of Service and the arbitration agreement contained therein cover Plaintiff-Intervenors' claims asserted in this complaint.

41.     Plaintiffs-Intervenors have filed individual demands for arbitration against Intuit asserting the claims asserted in this complaint, and are actively pursuing those claims in arbitration. By filing this complaint-in-intervention necessary to intervene in this action to protect their rights, Plaintiff-Intervenors are not waiving their right to arbitration under Intuit's Terms of Service.

---

[5] *See* Treasury Inspector General for Tax Administration, *Complexity and Insufficient Oversight of the Free File Program Result in Low Taxpayer Participation* at 5 (Feb. 20, 2020) available at https://kl.link/2ZffCFL.

[6] *See* Justin Elliott & Paul Kiel, *The TurboTax Trap: TurboTax and H&R Block Saw Free Tax Filing as a Threat — and Gutted It*, PROPUBLICA (May 2, 2019) available at https://kl.link/3fibSsO.

[PROPOSED] COMPLAINT IN INTERVENTION
CASE NO. 3:19-CV-02546-CRB
9

# COUNT I
## UNLAWFUL BUSINESS ACTS AND PRACTICES

**Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Mary Backes and Sandra Childress)**

**California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Sabrina Alvey, Arlan Ashcraft, and Tiffany Whatley)**

**California Consumers Legal Remedies Act, Cal Civ. Code § 1750, et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Sabrina Alvey, Arlan Ashcraft, and Tiffany Whatley)**

**California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Sabrina Alvey, Arlan Ashcraft, and Tiffany Whatley)**

**Kansas Consumer Protection Act, Kan. Stat. § 50-623 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenor Scott Siebert)**

**Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 751 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Megan Mairs and Christy Mueller)**

**Rhode Island Deceptive Trade Practices Act, 6 R.I. Gen. Laws § 6-13.1-1 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenor Amber Millikan)**

42. Plaintiff-Intervenors incorporate the foregoing paragraphs as if set forth fully herein.

43. Intuit engaged in injurious conduct that significantly harmed the Plaintiff-Intervenors. Plaintiff-Intervenors are low-income individuals eligible to file taxes for free, but ended up paying for taxes because of Intuit's deceptive and unfair conduct. They could not have reasonably avoided this injury. Nor is Intuit's relevant conduct outweighed by any countervailing benefits to consumers, or to competition.

44. Intuit's unfair business acts include, without limitation:

   a. Developing a scheme with the goal of deceiving low-income taxpayers and active-duty military service personnel, individuals who were otherwise eligible for free tax filing through the Free Edition, into paying for Intuit's TurboTax paid products.

    b. Developing and using source code aimed at concealing TurboTax Freedom Edition, Intuit's actually free product, from eligible consumers.

    c. Directing Plaintiff-Intervenors to Intuit's website by marketing online with keywords that were likely to be used by individuals looking to file their taxes for free.

    d. Intentionally failing to tell eligible taxpayers that they could use the TurboTax Freedom Edition to file for free, even though Intuit had sufficient information to suggest that a taxpayer was in fact eligible.

    e. Creating confusion in the marketplace by calling the website for its paid products "TurboTax Free Edition," thereby causing confusion among clients looking for the "Freedom Edition," and failing to provide a link to the Freedom Edition on Intuit's website for consumers who were so confused.

    f. Mandating that the Plaintiff-Intervenors spend time and effort entering all of their relevant tax-return information into Intuit's TurboTax Free Edition website before later informing them, at the end of the process and long after Intuit had enough information to know they were not eligible for the Free Edition, that the consumer would have to pay a fee to file through TurboTax.

45. Intuit's unfair business practices were a direct and proximate cause of Plaintiff-Intervenors injury in fact, and lost money or property, including the amounts they paid to Intuit or that were deducted from their tax refunds as part of the online filing process.

46. Intuit continues to engage in the unfair conduct set forth above. This conduct is thus likely to recur in the absence of a court order.

**COUNT II**
**FRAUDULENT BUSINESS ACTS AND PRACTICES AND DECEPTIVE ADVERTISING**
**Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Mary Backes and Sandra Childress)**

**California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Sabrina Alvey, Arlan Ashcraft, and Tiffany Whatley)**

**California Consumers Legal Remedies Act, Cal Civ. Code § 1750, et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Sabrina Alvey, Arlan Ashcraft, and Tiffany Whatley)**

**California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Sabrina Alvey, Arlan Ashcraft, and Tiffany Whatley)**

**Kansas Consumer Protection Act, Kan. Stat. § 50-623 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenor Scott Siebert)**

**Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 751 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenors Megan Mairs and Christy Mueller)**

**Rhode Island Deceptive Trade Practices Act, 6 R.I. Gen. Laws § 6-13.1-1 et seq.**
**(Against Intuit Inc. and Intuit Consumer Group LLC by Plaintiff-Intervenor Amber Millikan)**

47. Plaintiff-Intervenors incorporate the foregoing paragraphs as if set forth fully herein.

48. Intuit employed fraudulent business acts and business practices through the use of unfair, deceptive, and misleading advertising.

49. Intuit's deceptive and misleading advertising, as well as its fraudulent conduct, was likely to, and did in fact, deceive each of the Plaintiff-Intervenors who were acting reasonably under the circumstances.

50. Intuit's deceptive and misleading advertising, as well as its fraudulent conduct, included, but was not limited to, misrepresentations (both affirmative and by omission) and the concealment of material facts (through affirmative or passive acts). Intuit's conduct is in violation of the fraudulent prong at least because of the following:

a. Intuit falsely advertised its TurboTax product as being free, which caused confusion and deception among the Plaintiff-Intervenors, who were eligible for free tax filing, and caused them to pay Intuit for tax-filing services they should have received for free.

b. Though Intuit billed its tax-filing services as being "FREE Guaranteed," Intuit instead charged most consumers attempting to file their taxes on its website while also diverting consumers from the "Freedom Edition" site, on which Plaintiff-Intervenors could have in fact filed for free.

c. Intuit both hid and failed to disclose the material differences between its the TurboTax "Free Edition" that was a decoy for its paid products on its own website, and the actual free-filing site, "Freedom Edition," knowing that consumers would confuse the products with such similar names, and pay Intuit for tax-filing services that they could have received for free.

d. Intuit heavily marketed the TurboTax "Free Edition" such that it was very likely to be confused with TurboTax's "Freedom Edition," including by utilizing an extensive campaign for "Free Edition" and using email marketing to market the "Free Edition" while not mentioning or distinguishing that from the "Freedom Edition."

e. Intuit used source code that prevented the Freedom Edition from appearing in online search results, de-indexing it from search results from sources like Google and rendering the site practically invisible to Plaintiff-Intervenors.

f. Intuit did not tell the Plaintiff-Intervenors, even after it knew they were eligible for free filing, that they could have received their returns for free.

g. Intuit misrepresented to Plaintiff-Intervenors that a paid product offered by Intuit was the best product for them, even though they were eligible for free filing through the Freedom Edition.

51. Intuit's deceptive acts, practices, and advertising were a direct and proximate cause of Plaintiff-Intervenors injury in fact, and lost money or property, including the amounts they paid Intuit or that were deducted from their tax refunds as part of the online filing process.

52. Each Plaintiff-Intervenor saw representations by Intuit that its tax preparation services were "free." The representations did not distinguish between the Freedom Edition Intuit created for the IRS (which is, in fact, free), and its Free Edition on the website where it offers paid products and which is free in only limited circumstances and intended by Intuit to generate revenue. Plaintiff-Intervenors saw these representations in a variety of media, including but not limited to television ads, online descriptions, internet and print ads, and/or emails from Intuit.

## COUNT III
## UNREASONABLE RESTRAINTS OF TRADE IN THE DIGITAL DIY TAX-PREPARATION MARKET
### Sherman Act, 15 U.S.C. § 1
**(Against all defendants by all Plaintiff-Intervenors)**

53. Plaintiff-Intervenors incorporate the foregoing paragraphs as if set forth fully herein.

54. Intuit's conduct violates Section 1 of the Sherman Act, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1.

55. The digital do-it-yourself tax-preparation market is a valid antitrust market.

56. Intuit engaged in anticompetitive conduct that harmed Plaintiff-Intervenors.

   a. Intuit deceived a formidable potential competitor, the United States government, from entering the market for online tax preparation and filing services. Intuit hurt consumers by depriving them of a truly widely available free-file option, and instead steering them into TurboTax's paid options. And Intuit maintained its significant market power by shielding its paid products from competition from a free or far less expensive option.

   b. Intuit colluded with the other members of the Free File Alliance to conceal the Free File program from the entire market, and thus to reduce competition. Instead of competing for Free-File taxpayers to promote their brands and to retain those

consumers as fee-generating customers once their incomes outgrew the Free File Program, the members of the Alliance coordinated to suppress competition. They not only collectively extracted a non-compete agreement from the IRS, but they also collectively concealed the Free File product it had promised to provide, to maximize the number of consumers who paid for tax filing services. Intuit's scheme, while egregious, was mirrored by H&R Block and others.

c. By collectively suppressing the number of free-filers, the Alliance members all profited from the fees they received from those would-be-free-filers.

57. To prevent these ongoing harms, the Court should enjoin the anti-competitive conduct complained of herein.

## COUNT III
### UNLAWFUL MONOPOLY MAINTENANCE IN THE DIGITAL DIY TAX-PREPARATION MARKET
### Sherman Act, 15 U.S.C. § 2
**(Against all defendants by all Plaintiff-Intervenors)**

58. Plaintiff-Intervenors incorporate the foregoing paragraphs as if set forth fully herein.

59. Intuit's conduct violates Section 2 of the Sherman Act, which prohibits the "monopoliz[ation of] any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2.

60. The digital do-it-yourself tax-preparation market is a valid antitrust market.

61. Inuit has unlawfully maintained its monopoly by unfairly harming the competitive process. Intuit entered into an Agreement with the rest of the Free File Alliance, seeking to keep a competitor—namely, the U.S. Government—out of the digital do-it-yourself tax-preparation market. Members of the Free File Alliance then hid the free product from the public by de-indexing it from search engines and banishing it from their websites.

62. Because of Intuit's anti-competitive conduct, Plaintiff-Intervenors paid money for products that they otherwise would not have paid for.

63. As consumers of digital do-it-yourself tax-preparation software, Plaintiff-Intervenors have been harmed by Intuit's anti-competitive conduct in a manner that the antitrust laws were intended to prevent. Plaintiff-Intervenors have suffered harm and irreparable injury, and because they intend to use digital do-it-yourself tax-preparation software in the future, such harm and injury is significantly likely to occur unless this court enjoins Intuit's anti-competitive conduct.

64. To prevent these harms, the Court should enjoin the anti-competitive conduct complained of herein.

## COUNT V

### UNJUST ENRICHMENT

**(Against all defendants by all Plaintiff-Intervenors)**

65. Plaintiff-Intervenors incorporate the foregoing paragraphs as if set forth fully herein.

66. Plaintiff-Intervenors conferred a benefit on Intuit because they each paid Intuit for its online tax-return-preparation and -filing services.

67. Intuit acted wrongfully by (a) behaving in a coordinated manner across its various marketing and other activities to suppress free filing; (b) purposefully and actively hiding its actually free online tax services from the people, including low-income taxpayers, for whom those online services were intended; and (c) marketing those online services in a deceptive, fraudulent, and misleading manner.  This deception and misleading behavior includes Intuit manipulating internet search results on search engine sites like Google to lute Plaintiff-Intervenors to its website where it could push its paid products, limiting or blocking entirely their ability to move to Intuit's actual free-filing site once they were already on Intuit's paid website, falsely marketing its paid services as being free, and purposely hiding from low-income individuals their eligibility to file their tax returns for free.

68. Intuit's used this ploy to divert consumers who were otherwise eligible to file for free to its paid-product website, and then induced them to pay for services they should have received for free.

69. Based on the foregoing, letting Intuit keep its ill-gotten gain is both unjust and inequitable.

70. Plaintiff-Intervenors seek restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Intervenors respectfully pray for judgment as follows:

A. For an order declaring that Intuit's conduct as alleged herein constitutes unfair competition;

B. For an order declaring that Intuit has unlawfully profited from its unjust and inequitable conduct as alleged herein;

C. For an order enjoining Intuit's anti-competitive conduct and mandating that Intuit take all necessary steps to cease unlawful conduct and to restore competition;

D. For an order enjoining Intuit from engaging in all manner of unfair, unlawful, deceptive, misleading or otherwise wrongful acts, omissions or practices, in connection with its participation in the Free File Program, that threaten future injury to the Plaintiff-Intervenors and/or the general public, including, without limitation, promoting its commercial tax preparation website to taxpayers eligible to file for free while concealing its actual free file website and the Free File Program, whether by implementing software code or advertising to divert such taxpayers to its paid offerings, using confusing tradenames such as Free Edition and Freedom Edition, or engaging in any other unlawful "free to fee" conversion practices, or through engaging in any other wrongful acts, omissions or practices;

E. For an order requiring restitution of all monies paid to Intuit by Plaintiff-Intervenors;

F. For an order awarding Plaintiff-Intervenors punitive damages;

G. For an order awarding Plaintiff-Intervenors the maximum civil penalties and statutory damages available to them under their respective states' consumer-protection statutes and the federal Sherman Act, including treble damages;

H. For an order awarding Plaintiff-Intervenors pre-judgment and post-judgment interest;

I. For an order awarding Plaintiff-Intervenors reasonable attorneys' fees, costs, and expenses; and

J. For such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff-Intervenors respectfully demand a trial by jury only as to any claim deemed so triable by the Court for any reason.

Date: November 30, 2020

Respectfully Submitted,

/s/ Warren Postman
Warren Postman (#330869)
wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C.  20005
(202) 749-8334