Warren Postman (#330869)
 wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Keith A. Custis (#218818)
 kcustis@custislawpc.com
CUSTIS LAW, P.C.
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
(213) 863-4276

Benjamin Whiting (*pro hac vice forthcoming*)
 ben.whiting@kellerlenkner.com
Ellyn Gendler (#305604)
 ellyn.gendler@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Intervenors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE INTUIT FREE FILE LITIGATION<br><br>This Document Relates to: All Actions | Case Nos.: 3:19-cv-02546-CRB<br><br>**DECLARATION OF WARREN POSTMANT IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Judge:** Hon. Charles R. Breyer<br>**Date:** December 17, 2020<br>**Time:** 10:00 a.m.<br>**Courtroom:** 6 – 17th Floor |

I, Warren Postman, declare based on personal knowledge as follows:

1. I am a Partner at Keller Lenkner LLC, counsel for Intervenors in this matter.

2. I have personal knowledge of the facts stated herein, and if called upon as a witness, I could and would testify competently thereto.

3. This declaration is submitted in support of the Motion to Intervene and in Opposition to Preliminary Approval of Class Action Settlement.

**A.     Over 100,000 Intuit Customers, Including Intervenors, Have Sought Individual Arbitration Against Intuit.**

4. Based on Intuit's representations to this Court, before an Intuit customer uses TurboTax's online tax filing services, she must click a button stating that she agrees to the TurboTax Terms of Service. Those Terms include an arbitration agreement. A true and correct copy of the arbitration agreement included in Intuit's Terms of Service for TurboTax Online Tax Preparation Services – Tax Year 2018 is attached as Exhibit A. That agreement is materially similar to the agreements for each of the tax years covered by the proposed settlement agreement.

5. On October 1, 2019, and January 28, 2020, approximately 9,000 current and former Intuit customers, including Intervenors, filed demands for individual arbitration against Intuit with the American Arbitration Association ("AAA"), the organization Intuit's Terms of Service states must administer arbitration. On March 11, 2020, approximately 31,000 current and former Intuit customers filed demands for individual arbitration against Intuit with the AAA. On October 9, 2020, approximately 17,000 Intuit customers filed demands for individual arbitration against Intuit with the AAA. On October 23, 2020, approximately 70,000 Intuit customers filed demands for individual arbitration against Intuit with the AAA.

6. Each of the above claimants (the "Arbitration Claimants") has individually retained Keller Lenkner to bring claims against Intuit and has executed an individual engagement agreement with the firm.

7. Each Arbitration Claimant's arbitration demand was submitted on the AAA's official demand form, contains the Arbitration Claimant's individual contact information, describes the Arbitration Claimant's individual consumer-fraud and federal antitrust claims, and requests

DECLARATION OF WARREN POSTMAN IN SUPPORT OF
MOTION TO INTERVENE AND IN OPPOSITION TO PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 3:19-cv-02546-CRB

individual relief.  Arbitration Claimants also seek public injunctive relief, which Intuit has represented to this Court may be pursued in arbitration.  See Intuit's Mot. to Compel Arbitration at 17, Dkt. 97.  A true and correct copy of one Intervenor's arbitration demand is attached as Exhibit B.[1]

8. Each Arbitration Claimant is pursuing consumer-fraud claims against Intuit under the consumer fraud laws of the Claimant's home state and/or the consumer-fraud laws of California, depending on which law is most favorable to the Claimant.

9. The average amount in controversy pursued by the Arbitration Claimants—reflecting the statutory penalties, statutory damages multiple, punitive damages, and/or attorneys' fees authorized by the Sherman Act and the consumer fraud statute applicable to each Claimant's claims—is approximately $2,700.

10. The AAA assigns an individual arbitration a case number only after both sides have paid their initial filing fees.  The AAA has not yet issued a case number for the vast majority of Arbitration Claimants.

11. A true and correct copy of the AAA Consumer Arbitration Fee Schedule currently in effect is attached as Exhibit C.  The current fee schedule took effect on November 1, 2020.  The fee schedule in place before that date is attached as Exhibit D.  Under the former fee schedule, a consumer claimant was required to submit a $200 initial filing fee (or a hardship-based fee waiver request), and the respondent was required to pay a $300 initial filing fee.  Under the new fee schedule, the initial filing fee is reduced incrementally if a large number of similar arbitrations are filed against the same defendant.  Accordingly, for Arbitration Claimants' arbitrations, the claimant will owe an initial filing fee of $50 and Intuit will owe an initial filing free of $75.

12. Approximately 37,000 Arbitration Claimants who filed demands in October 2019, January 2020, and March 2020 have satisfied their AAA filing-fee obligations by submitting their filing fee or a hardship-based fee waiver.  Keller Lenkner has advanced filing fees to the AAA on

---

[1] This sample demand has been redacted to keep personal identifying information, including the Claimant's home address, email address, and phone number confidential.

behalf of its clients totaling over $8 million. Upon implementing its new fee schedule, AAA applied it retroactively to some claims, resulting in a refund of about half of those fees.

13. Intuit has paid its share of those Arbitration Claimants' filing fees "under protest."

14. Under the AAA's Consumer Arbitration Fee Schedule and pursuant to the AAA's administrative determinations, Intuit must pay approximately $11 million in case management fees ($1,400 per Claimant) in December 2020, for approximately 7,800 Arbitration Claimants' arbitrations to proceed.

15. Intuit must pay approximately $12 million in arbitrator compensation fees ($1,500 per Claimant) for those same arbitrations in January and February 2021.

16. After tens of thousands of Arbitration Claimants filed their individual demands for arbitration, Intuit and Keller Lenkner scheduled a mediation for July 30, 2020, to discuss resolving Arbitration Claimants' claims.

17. Intuit and Keller Lenkner agreed that before the mediation, Arbitration Claimants would present to Intuit an initial settlement demand.

18. After receiving the initial settlement demand, Intuit withdrew from the mediation because it believed the parties were "too far apart to have any meaningful discussion." A true and correct copy of the email from Intuit's counsel withdrawing Intuit from the mediation is attached as Exhibit E.

19. After Intuit withdrew from the mediation, it made individual settlement offers to 101 Arbitration Claimants. Twenty-three Arbitration Claimants accepted their offers. Each Claimant's offer reflected Intuit's calculation of the Claimant's full out-of-pocket damages for each year that Claimant had a claim against Intuit. *See* Declaration of Stephen M. Bundy, ¶ 3.f, attached as Exhibit F. Many Arbitration Claimants are seeking damages for at least three years of violations. Thus, the settlement offers for those Claimants ranged in amount from approximately six to 15 times the amount of money Intuit and interim class counsel have calculated each class member is likely to receive in the proposed settlement.

**B.     Arbitration Claimants Have Strong Claims on the Merits.**

20. Arbitration Claimants' claims are based on deceptive conduct by Intuit that has been

1  widely documented.  The May 2, 2019, ProPublica article that first triggered widespread scrutiny of Intuit's conduct, *TurboTax And H&R Block Saw Free Tax Filing As A Threat – And Gutted It*, is available at http://zpr.io/H3sAj.

21.  According to Intuit's press releases, TurboTax, Intuit's online tax preparation and filing product, generated more than $2.2 billion in revenue in fiscal year 2019.  TurboTax reportedly occupies as much as two-thirds of the U.S. online tax filing market.  *See* Paul Kiel and Justin Elliott, *TurboTax's Bid to Buy Free Tax Prep Competitor Might Violate Antitrust Law, Experts Say*, ProPublica (Feb. 28, 2020), available at https://www.propublica.org/article/turbotax-bid-to-buy-free-tax-prep-competitor-might-violate-antitrust-law-experts-say.

22.  Intuit is a member of the Free File Alliance (now called Free File, Inc.), a consortium of private tax preparation and filing companies.  *See* Free File homepage, available at https://freefilealliance.org/.  In 2002, the Alliance promised to provide free online tax filing to low-income taxpayers—at least 60% of the population—in exchange for the IRS agreeing not to provide competing online filing services (the "Agreement").  *See* 2002 Free On-Line Electronic Filing Agreement.  Under this Agreement, Intuit created free tax filing software that would allow eligible consumers to file complex federal and state returns electronically for no charge.  True and correct copies of the Agreements and Memoranda of Understanding between the Free File Alliance and the IRS are available at https://www.irs.gov/e-file-providers/about-the-free-file-alliance.

23.  Each Arbitration Claimant alleges that while Intuit created a free tax filing service for low- and middle-income taxpayers, it also steered these consumers away from the free option and toward its paid products.  It did this primarily by introducing a "free" product called the "Free Edition" (the product it created with the Alliance is called the "Freedom Edition").  While the "Freedom Edition" was truly free for eligible filers, Intuit's "Free Edition" was free only for truly simple tax returns.  For example, consumers could not use Intuit's Free Edition if they were self-employed or received unemployment, lacked health insurance, claimed a student loan deduction, had business income and expenses, had capital gains or losses, and so on.  These consumers, including Intervenors, were lured to Intuit's website with promises of its Free Edition, only to learn later that they were ineligible for that free product and would have to pay to use TurboTax.  But in

1  fact, those consumers could still have used TurboTax's Freedom Edition as long as they met the basic eligibility requirements. Intuit took steps to mask from consumers the fact that they could have filed for free using TurboTax's Freedom Edition. This deception was carefully designed and fully intentional. A true and correct copy of one Intervenor's arbitration demand, which describes Arbitration Claimants' allegations in greater detail, is attached as Exhibit B.

24. At least eight class-action lawsuits have been filed against Intuit, alleging substantially similar consumer fraud claims to those claims Plaintiffs seek to arbitrate against Intuit. The class actions were consolidated before this Court.

25. Intuit successfully compelled those class actions to individual arbitration. In moving to compel arbitration, Intuit asserted that "the Terms clearly and unmistakable required each Plaintiff to resolve any dispute they have with Intuit through individual arbitration." Intuit's Mot. to Compel Arbitration at 2, ECF 97. The Ninth Circuit's decision holding that the class actions must be compelled to arbitration can be found at *Dohrman v. Intuit Inc.*, 823 F. App'x 482, 483–85 (9th Cir. 2020).

26. Several state and local governments and agencies are reportedly investigating Intuit's deceptive conduct alleged in Defendants' arbitration demands. *See* Justin Elliott, *TurboTax Tricked Customers Into Paying to File Taxes. Now Several States Are Investigating It.*, ProPublica (Dec. 19, 2019), available at http://zpr.io/H3YNh. The City of Los Angeles and Santa Clara County attorneys have sued Intuit for that conduct, on behalf of California residents. *See generally TurboTax Free File Cases*, No. JCCP5067 (Cal. Super Ct. Nov. 25, 2019). At least one state— New York—has already determined that TurboTax used "unfair and abusive practices" to channel consumers eligible for free tax filing to its paid products. *See* N.Y. Dep't Fin. Servs., *Report on Investigation of Free Tax Preparation and Filing Servs.* at 17 (July 2020). A true and correct copy of that agency's report is available at http://zpr.io/H3YNA.

27. The Federal Trade Commission is reportedly investigating "whether Intuit has engaged in deceptive or unfair acts or practices with respect to the marketing or advertising of online tax preparation products"—the very conduct alleged in the Arbitration Claimants' arbitration demands. The Commission recently rejected Intuit's petition to narrow the scope of its

investigation. A true and correct copy of the Commission's order is available at http://zpr.io/H3Y5T.

### C. Keller Lenkner is Equipped to Pursue Individual Arbitration for Each Client.

28. Keller Lenkner is committed to, and capable of, litigating Arbitration Claimants' claims to a successful conclusion. Keller Lenkner has invested millions of dollars in the client management systems, document review and management systems, personnel, and other infrastructure necessary to litigate a large number of claims simultaneously. The firm also regularly hires attorneys on a contract basis from staffing agencies that are capable of providing hundreds of attorneys and paralegals if necessary. And Keller Lenkner regularly enters into co-counsel relationships with other law firms; the firm currently has co-counsel relationships in active matters with dozens of law firms. The firm has devoted its resources to representing Arbitration Claimants—and will continue to do so—because it believes in the merits of their claims.

29. Over the last two years, Keller Lenkner has secured more than $190 million in recoveries for more than 100,000 individual clients. In many of those cases, class-action attorneys brought claims similar to those of Keller Lenkner's clients, and those cases resulted in class settlements. The amounts Keller Lenkner's clients received, after pursuing their individual claims, were often 10 to 20 times higher than the amounts paid to participating class members without individual representation.

30. Keller Lenkner regularly communicates with each client to provide updates on his or her case. If this Court grants preliminary approval of a class settlement that includes Arbitration Claimants, Keller Lenkner will send every client the Court-approved settlement notice. Keller Lenkner will also update each client individually about the status of his or her individual arbitration. And Keller Lenkner will individually advise each client on how to proceed with the class settlement and ask the client to decide whether or not to opt out of the settlement.

31. If a settlement is granted preliminary approval and a Keller Lenkner client decides to participate in the class settlement, Keller Lenkner will assist that client in submitting a claim form to the settlement administrator. Keller Lenkner will also waive any right to collect attorneys' fees from that client.

32. If a Keller Lenkner client decides to opt out of the class settlement and instead pursue individual arbitration, Keller Lenkner would, if allowed, communicate that client's individual opt-out request to the Court or the settlement administrator.

33. On November 6, 2020, Intuit and interim class counsel filed a joint case management statement in this action, announcing that they had scheduled a mediation for November 11, 2020, to discuss resolving class members' claims. *See* ECF 157.

34. Based on that statement, Keller Lenkner understood that the mediation would involve the potential resolution of Arbitration Claimants' claims.

35. On November 8, 2020, I emailed counsel for Intuit and interim class counsel to request that Keller Lenkner be allowed to participate in the November 11 mediation "so that the KL arbitration clients will have their distinct interests protected by their counsel of choice."

36. On November 9, 2020, Intuit's counsel responded to my email and refused to allow Keller Lenkner to participate in the November 11 mediation, stating that "Judge Breyer appointed Interim Class Counsel to represent the interests of the putative class and to negotiate on their behalf. Our mediation on Wednesday is with the lawyers the court appointed for that purpose." Intuit's counsel also requested that I offer dates and times "to schedule a call so we can explore whether it would be productive to resume [mediation] discussions." After I provided my availability, Intuit's counsel never responded.

37. True and correct copies of emails between me, Intuit's counsel, and interim class counsel regarding the November 11 mediation are attached as Exhibit G.

38. When interim class counsel filed the motion for preliminary settlement approval, Keller Lenkner learned that interim class counsel and Intuit had entered into a confidential side agreement under which Intuit has a right to terminate the settlement if a certain number of class members opt out.

39. On November 19, 2020, my colleague emailed interim class counsel and counsel for Intuit, copying me, to request that Keller Lenkner be allowed to review the confidential agreement so that we could "better understand the arrangement [interim class counsel and Intuit] negotiated for our clients." My colleague offered to sign a protective order to maintain the agreement's

confidentiality.

40. On November 20, 2020, interim class counsel responded to my colleague's email and refused to send Keller Lenkner the side agreement.

41. True and correct copies of emails between my colleague, Intuit's counsel, and interim class counsel regarding the side agreement are attached as Exhibit H.

**D.     Intuit Has Resisted Arbitration and Ignored AAA's Determinations.**

42. Both before and after Intuit paid its share of Arbitration Claimants' filing fees, Intuit sought to delay Arbitration Claimants' arbitrations and convince the AAA to decline to administer those arbitrations.

43. In a series of letters to AAA, Intuit objected to:

- The method by which Arbitration Claimants filed their demands and the form of those demands.  *See* Intuit's letters of Feb. 10; Mar. 13; Mar. 31.
- The merits of Arbitration Claimants' claims.  *See* Intuit's letters of Feb. 10; Mar. 13; May 12.
- The amount of fees Intuit must pay to proceed with Arbitration Claimants' arbitrations, as required by Intuit's arbitration agreement and the AAA rules the agreement incorporates.  *See* Intuit's letters of Feb. 10; Feb. 18; Mar. 13; May 12.
- The AAA's ability to administer Arbitration Claimants' arbitrations.  *See* Intuit's letters of Feb. 10; May 12.
- The AAA's neutrality.  *See* Intuit's letters of Feb. 18; Mar. 13; Apr. 20; Apr. 29; May 12; June 10.

44. Intuit also claimed that its Terms of Service and the AAA's rules granted it the right to elect to face Arbitration Claimants' claims in small-claims court, rather than in arbitration.  *See* Intuit's letters of Feb. 10; Feb. 18; Mar. 13; Mar. 31; Apr. 20; May 12; July 31.

45. The AAA reviewed the parties' disputes and determined five separate times—on March 6, 2020, April 9, 2020, April 24, 2020, May 27, 2020, and August 14, 2020—that Intuit's arguments raise questions of arbitrability that must be decided by individual arbitrators, in

accordance with Intuit's Terms of Service and the AAA rules that the Terms incorporate. The AAA therefore proceeded with the administration of Arbitration Claimants' arbitrations, so that it could appoint an arbitrator to each Claimant's case.

46. Intuit also requested that the AAA submit the parties' small-claims court dispute to the AAA's Administrative Review Counsel ("ARC"). *See* Intuit's letter of Mar. 13.

47. The AAA declined to submit the parties' small-claims court dispute to the ARC because the ARC only reviews "certain administrative decisions arising in the AAA's large, complex domestic caseload,"[2] and the AAA determined that each Claimant's individual arbitration is not large or complex. *See* AAA's letters of Apr. 9; Apr. 24.

48. Arbitration Claimants declined to submit the parties' small-claims court dispute to a single arbitrator, because a single arbitrator's decision governing all Arbitration Claimants' claims would violate the arbitration agreement's prohibition of representative actions. *See* Terms § 14.

49. True and correct copies of relevant correspondence between the parties and the AAA's administrative determinations between February 10, 2020, and August 14, 2020, are attached as Exhibit I.

50. After the AAA repeatedly rejected Intuit's attempts to stop Arbitration Claimants' arbitrations, Intuit sued several thousand Arbitration Claimants in California Superior Court. In that action Intuit sought (i) a declaration that Intuit may unilaterally elect to force Arbitration Claimants' claims out of arbitration and into small claims court, (ii) an order enjoining Arbitration Claimants' arbitrations, (iii) a declaration that Arbitration Claimants seek "de facto" class or representative arbitration barred by Intuit's Terms of Service, and (iv) a declaration that California Senate Bill 707, which imposes sanctions on a "drafting party" that fails to pay the fees necessary to proceed under a consumer arbitration agreement, is preempted by the Federal Arbitration Act. *See* Am. Compl., *Intuit Inc. v. 9,933 Individuals*, No. 20STCV22761 (L.A. Super. Ct. Oct. 23,

---

[2] *See* ARC Review Standards, a*vailable at* https://kl.link/37LerR7; *see also* ARC Overview and Guidelines, available at https://kl.link/2YkSfde.

2020).

51. On September 2, 2020, Intuit sought a preliminary injunction from the Superior Court staying Arbitration Claimants' arbitrations. *See* Mot. for Stay of Arbitration, *9,933 Individuals* (Sept. 2, 2020).

52. On October 8, 2020, the Superior Court denied Intuit's motion and held that Arbitration Claimants' arbitrations must proceed in accordance with the AAA's rules and Intuit's Terms of Service. A true and correct copy of the Court's decision is attached as Exhibit J.

53. On October 26, 2020, Intuit appealed the Superior Court's denial of its motion for a preliminary injunction, to the California Court of Appeal, Second Appellate District.

54. On October 27, 2020, Intuit filed a petition for a writ of supersedeas from the California Court of Appeal. Intuit's petition seeks an order staying Arbitration Claimants' arbitrations pending resolution of Intuit's appeal or, in the alternative, an order enjoining enforcement of California Senate Bill 707 against Intuit. *See* Petition for Writ of Supersedeas, *Intuit Inc. v. 9,933 Individuals*, No. B308417 (Cal. App. 2d. Oct. 27, 2020). As of the filing of this declaration, Intuit's petition is pending before the Court of Appeal.

55. In October 2020, Keller Lenkner learned that Intuit was negotiating a class-action settlement that would attempt to resolve Arbitration Claimants' claims in court without their affirmative consent, without the participation of their chosen counsel, and in violation of Intuit's Terms of Service.

56. On October 28, 2020, Keller Lenkner filed a motion for a preliminary injunction in the Superior Court on behalf of Arbitration Claimants, seeking an order enjoining Intuit from entering into a class-action settlement that includes Keller Lenkner clients who are currently engaged in arbitration against Intuit and that burdens their right to opt out of the settlement. The motion was scheduled for a hearing on November 20, 2020. *See generally* Mot. Prelim. Inj., *9,933 Individuals* (Oct. 28, 2020); Intuit's Opp'n, *9,933 Individuals* (Nov. 6, 2020). A true and correct copy of the Declaration of Stephen M. Bundy in support of Intuit's opposition to Arbitration Claimants' motion for a preliminary injunction is attached as Exhibit F.

57. After Arbitration Claimants filed their motion for a preliminary injunction, but

11
DECLARATION OF WARREN POSTMAN IN SUPPORT OF
MOTION TO INTERVENE AND IN OPPOSITION TO PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 3:19-cv-02546-CRB

before the Superior Court ruled on the motion, Intuit signed the proposed settlement agreement and interim class counsel filed their motion for preliminary settlement approval before this Court.

58.   In Arbitration Claimants' reply brief in support of their motion for a preliminary injunction, they sought a declaration of their rights, under Intuit's Terms of Service, to avoid having their claims resolved in court. *See* Reply Supp. Prelim. Inj., *9,933 Individuals* (Nov. 13, 2020).

59.   On November 20, 2020, the Superior Court denied Arbitration Claimants' motion, stating that Intuit's signing of the proposed settlement agreement "mooted out [Arbitration Claimants'] original request." The court also stated that it:

> [C]annot and will not interfere with Judge Breyer's work on this class action.· I can't tell him who can be part and who cannot be part.· I can't tell him what counsel has to be contacted.· And I can't tell him, you know, whether someone can opt-out.· I'm sure he knows that.· You know, the class action is in very capable hands.· And it doesn't need my interference and I'm not about to interfere.

60.   A true and correct copy of the transcript of the November 20, 2020 Superior Court hearing is attached as Exhibit K.

61.   As of the filing of this declaration, the Superior Court had not issued a written decision.

62.   When an individual files his or her taxes online using TurboTax, TurboTax invites that individual to submit an electronic signature to authenticate his or her tax filing. *See* TurboTax, *E-file: Income Tax Return Electronic Filing*, available at https://turbotax.intuit.com/tax-tips/e-file/e-file-income-tax-return-electronic-filing/L9DnoQ39y (last visited Nov. 29, 2020).

63.   Attached as Exhibit L is a true and correct copy of the November 26, 2019, San Francisco Superior Court order denying preliminary approval of a class-action settlement in *Rimler v. Postmates, Inc.*, No. CGC-18-567868.

64.   Attached as Exhibit M is a true and correct copy of the April 24, 2020, San Francisco Superior Court tentative ruling denying preliminary approval of a class-action settlement in *Marciano v. DoorDash Inc.*, No. CGC-18-567869.

65.   Attached is Exhibit N is a true and correct copy of the transcript of this Court's

November 13, 2020, case management conference.

I affirm that the foregoing is true under penalty of perjury under the laws of the United States and the State of California.

Signed on November 30, 2020 in Arlington, Virginia.

/s/Warren Postman
Warren Postman