# Exhibit I



FENWICK & WEST LLP

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

February 10, 2020

RODGER R. COLE

EMAIL: RCOLE@FENWICK.COM
Direct Dial: +1 650-335-7603

**VIA EMAIL (SHONECKA@ADR.ORG)**

Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolutions
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

      Re:     AAA Case Number 01-19-0003-1980
            Rule 9(b) Notice of Election for Small Claims Court
            Request for Individualized Case Numbers/Invoices

Dear Mr. Shoneck:

      Intuit is committed to providing prompt and fair adjudication of claims brought by its customers. In most cases, arbitration provides Intuit's customers with a cost-effective and efficient venue for fair and impartial resolution of any disputes. Here, however, the Keller Lenkner law firm has submitted over 10,000 claims to the AAA, the vast majority of which are frivolous. In fact, many of the claims that Keller Lenkner has brought involve claimants who have not used TurboTax, who paid Intuit nothing to file their taxes, or whose demands suffer similar fundamental defects that render their claims frivolous on their face.

      In addition, Intuit is concerned that its customers might be required to bear substantial fees for these frivolous claims; that it could take years for these claims to be resolved; that these claims constitute a de facto representative proceeding in violation of the TurboTax Terms of Service; and that the arbitration fees alone, especially in light of the many frivolous claims, would dwarf the total amount paid by these claimants to file their taxes using a TurboTax product.

      Thus, pursuant to Rule 9(b) of the Consumer Arbitration Rules, and consistent with clearly articulated AAA principles, this letter serves as written notice that Intuit elects to have the claims set forth on Exhibit A decided by a small claims court. For clarity, Intuit is not making this election with respect to the claims set forth on Exhibit B, which will remain in arbitration.

Background

      TurboTax customers agree to resolve their disputes with Intuit through either individual arbitration or in small claims court. Intuit offers the arbitration option because, as noted above, arbitration provides Intuit's customers with an efficient and cost-effective venue for fair and

**EXHIBIT I-1**

Adam Shoneck
February 10, 2020
Page 2

impartial resolution of disputes.  Intuit requires that any matter submitted for arbitration be filed with the AAA and governed by AAA rules.

Rule 9 of the AAA consumer rules, entitled the "Small Claims Option," permits either party "to take the claim to [small claims] court."  More specifically, Rule 9(b) applies at this juncture: "[a]fter a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA."  During this time, the Rule provides, "a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court."  The Rule further states that "[a]fter reviewing this notice, the AAA will administratively close the case."

The AAA also maintains a due process protocol that requires arbitration fees to "be administered on a rational [and] equitable" basis.  AAA Consumer Due Process Protocol, Statement of Principles, Principle 6—Reasonable Cost.  Similarly, the AAA recognizes that "the least expensive and most efficient alternative for resolution of claims for minor amounts of money often lies in small claims courts."  *Id.* Principle 5—Small Claims (Reporter's Comments).

Keller Lenkner's Abuse of the Arbitration Process

On October 1, 2019, Keller Lenkner submitted to the AAA 1,000 claims against Intuit, purportedly on behalf of individual TurboTax customers, with each demand alleging exactly the same thing.  Intuit carefully reviewed each of these claims and, on January 17, 2020, explained to Keller Lenkner that the majority of the claims are frivolous, including claimants who are not Intuit customers or who used TurboTax completely for free.  Rather than cure these defects, on January 28, 2020, Keller Lenkner filed an additional 9,497 claims, each one again alleging the very same cut-and-paste allegations as the initial 1,000.  Intuit understands that, as with the first 1,000 claims, the majority of these claims are also frivolous.  Keller Lenkner has indicated that it may file an additional 30,000 claims—or more—in the future.  The tactics that Keller Lenkner has chosen to employ in this consumer matter directly contradict the AAA's consumer due process protections, and the fees they seek to impose (to arbitrate countless frivolous claims) are neither "rational" nor "equitable."

In this matter, arbitration, unlike small claims court, is not "the least expensive and most efficient alternative for resolution," especially given the small amount of alleged damages at issue.  To the contrary, arbitration here is likely to be expensive for both Intuit and its customers.  It will be expensive for Intuit's customers who were likely not adequately advised about the ramifications of filing frivolous arbitration demands.  To be clear, these are not claims where Intuit simply disagrees with the claimant's theory of liability.  Rather, thousands of the claims filed by Keller Lenkner were brought in the name of low- and moderate-income customers who—according to their lawyers—claim to have been deceived into *paying* to use TurboTax, but who *actually filed their taxes for free*.  As a result, these same customers may now find themselves on the hook for thousands of dollars in fees and expenses under the AAA rules,

**EXHIBIT I-2**

Adam Shoneck
February 10, 2020
Page 3

which, as you know, permit the arbitrator to assess the fees for a frivolous claim to the claimant. Arbitration likewise will be expensive for Intuit because the AAA's arbitration fees far exceed the maximum scope of Intuit's liability even if every single claimant's claim were credited in full.

As to efficiency, it is not clear that the AAA has the capacity to resolve the massive number of demands at issue here without significant delay for Intuit and its customers. Notably, *all of last year*, the AAA consumer group administered fewer than 6,000 cases. AAA, 2018 Annual Report (May 2019) at 11 ("The Consumer Group administered more than 5,000 cases in 2018.") The numbers were even lower the year before. AAA, 2017 Annual Report (May 2018) at 11 ("The Consumer Team provided case administration for over 4,000 disputes in 2017."). We understand that the AAA is in the process of reviewing its protocols regarding mass-arbitration filings. As a long-time subscriber to AAA's services and a strong believer in the merits of arbitration, Intuit is supportive of those efforts. Indeed, this case—involving thousands of frivolous claims—is a textbook example of why reforms are urgently needed. Absent such reforms, it does not appear that the AAA is prepared to address mass filings in a timely manner. Individualized resolution in small claims court, by contrast, will provide for the quick resolution of any legitimate disputes that Intuit's customers deserve.

Another principle factor driving Intuit's decision to have most of these claims decided by small claims courts is that these nearly 10,500 identical claims constitute a de facto representative proceeding in violation of the TurboTax Terms of Service. Pursuant to those Terms, TurboTax users agree that they will not bring an action as a "plaintiff or class member *in any purported class or representative proceeding*." Intuit TY 2018 TurboTax Terms of Service at 3 (emphasis added). Although these claimants have "nominally filed their arbitration demands as individuals," those demands "bear all the critical hallmarks of class and representative actions." *AT&T v. Bernardi*, 2011 WL 5079549, at 6* (N.D. Cal. 2011); *see also AT&T Mobility LLC v. Smith*, 2011 WL 5924460 (E.D. Pa. Oct. 7, 2011).[1]

Additionally, under the current AAA fee structure, the possible amount of fees in this matter is directly at odds with the AAA's own due process protocol, which, as explained, requires that arbitration fees "be administered on a rational [and] equitable" basis. AAA, Principle 6. During tax years 2016, 2017, and 2018, the total amount paid by these claimants to file their taxes using a TurboTax product barely exceeds $2,000,000. Pursuant to the current AAA fee schedule for consumer claims, if Intuit did not exercise its right under Rule 9(b), it would be required to pay a minimum of $33,590,400 in initial filing fees, case management fees, and arbitrator compensation to arbitrate these claims—*nearly 17 times the maximum recoverable amount if every claimant were to prevail in full*. Such a system is not rational or equitable.

---

[1] Thus, these claims should be administratively closed not only pursuant to the plain terms of Rule 9(b), but also because they clearly violate Intuit's arbitration agreement.

**EXHIBIT I-3**

Adam Shoneck
February 10, 2020
Page 4

AAA Rule 9(b) Election

Fortunately, the AAA Consumer Rules provide a simple mechanism to address situations like this one: the Small Claims Option.  Intuit elects to have the claims set forth on Exhibit A (943 of the original 1,000 claims) decided by a small claims court, and to have the AAA close those cases.

As to the remainder of the initial 1,000 demands (the 57 claims listed on Exhibit B), Intuit will timely pay its filing fees via wire transfer and will proceed to arbitrate each of them. Pursuant to Intuit's Terms of Service and AAA Consumer Rules 44(c) and 55, Intuit reserves the right to seek reimbursement of its fees and costs associated with these arbitrations if, as Intuit expects, the arbitrator determines them to be frivolous.  Please advise Intuit as soon as arbitrators are appointed for these demands so that, pursuant to Rule 21, preliminary management hearings may promptly be scheduled.

For the subsequently filed 9,497 claims, and for any others filed by Keller Lenkner against Intuit in the future, Intuit respectfully requests that the AAA provide a separate invoice and case number for each demand—information necessary for Intuit to requisition checks for payment.

Sincerely,

FENWICK & WEST LLP

*s/ Rodger R. Cole*

Rodger R. Cole

RRC:cen

cc: Warren Postman, Keller Lenkner (via-email (wdp@kellerlenkner.com))

**EXHIBIT I-4**



February 12, 2020

Mr. Adam Shoneck
Assistant Vice President
American Arbitration Association
1301 Atwood Ave, Suite 211N
Johnston, RI 02919
shonecka@adr.org

Re:     Arbitration Demands

Dear Mr. Shoneck:

This letter is in response to the one Mr. Cole sent you on February 10, 2020.  Although Mr. Cole's letter purportedly elects to have 943 Claimants' claims decided by small claims court, such an election is prohibited by the plain terms of Intuit's arbitration agreement.

It is axiomatic that parties are free to modify the rules of arbitration by contract. *See* R-1(c) ("The consumer and the business may agree to change these Rules. If they agree to change the Rules, they must agree in writing.").  Accordingly, if there is a conflict between the Parties' contract and AAA Rules, the contract must govern.  To take a common example, the AAA consumer fee schedule states that a consumer claimant pays an initial filing fee of $200.  However, where (as here) an arbitration agreement states that the company will reimburse all filing fees, nobody would argue that, because AAA Rules apply, the consumer cannot have his or her $200 fee reimbursed.

Similarly, the parties' contract departs from the default Rules by eliminating Intuit's right to invoke Rule 9(b) and force Claimants into small claims court.  Intuit's arbitration clause provides: "<u>ANY</u> DISPUTE OR CLAIM RELATIING IN ANY WAY TO THE SOFTWARE OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that <u>you</u> may assert claims in small claims court if your claims qualify." (emphases added).  The "you" to which Intuit's arbitration clause refers is clear and unambiguous.  The contract expressly says it will refer to "Intuit" as "we," "our," or "us."  "You" is plainly a reference to customers such as Claimants.  Under the unambiguous language of the arbitration clause, the parties agreed to modify the options set forth under Rule 9(b)'s default, as they were entitled to by contract.  As a result, only Intuit's <u>customers</u> have a right to elect small claims court.  Absent such an election, "*any* dispute or claim" must be resolved exclusively by arbitration.

Even if one could argue that the arbitration clause was ambiguous, the demands must still go to an arbitrator to address that argument.  The Rules the parties incorporated into their contract make clear that the "arbitrator shall have the power to rule on … the arbitrability of any claim or counterclaim."  Consumer Rule 14(a).  That delegation clause clearly and unmistakably commits questions of arbitrability to the arbitrator.  Indeed, Intuit argued the same point when it moved to compel similar claims to arbitration in the Federal District Court for the Northern District of California. *See In re Intuit Free File Litigation*, No. 3:19-cv-2546, ECF No. 120 at 8 ("[J]ust as Plaintiffs agreed to arbitrate their claims with Intuit, they also agreed to arbitrate questions of arbitrability.").  If Intuit wants to bizarrely argue that "you" means "we," it must make that argument to individually empaneled arbitrators.

Intuit's repeated pronouncements that Claimants have brought frivolous claims are not relevant to whether Intuit can elect small claims court.  But we cannot allow these misleading assertions to go

**EXHIBIT I-5**

# Keller | Lenkner

uncorrected.  Mr. Cole asserts that "Intuit carefully reviewed each of these claims and, on January 17, 2020, explained to Keller Lenkner that the majority of the claims are frivolous, including claimants who are not Intuit customers or who used TurboTax completely for free."  But Mr. Cole fails to disclose that Intuit based that claim on a search of its records only for Tax Year 2018.  As we informed Mr. Cole on January 17, we have never suggested that every Claimant has claims based on Tax Year 2018.  Many Claimants do not.  But they of course retain the right to bring claims for violations in other tax years.  It is disappointing that Mr. Cole persists in accusing Keller Lenkner of bringing frivolous claims even after we pointed out that Intuit's analysis was not even plausibly adequate to support that serious assertion.  We have repeatedly invited Intuit to identify any individual who Intuit believes does not have a colorable basis to seek arbitration, and we would hold off on pursuing arbitration while the parties conferred on such issues.  But Intuit has failed to identify a single such individual, preferring to make vague and unsubstantiated accusations rather than resolve any such disputes informally and efficiently.

In all events, the fact that Intuit disputes the merits of Claimants' claims is obviously no basis to prevent them from proceeding.  Intuit will have an opportunity to defend itself on the merits as soon as individual arbitrators are empaneled.  That cannot happen until the company abides by its contract and meets its filing requirements.

We are also puzzled by Intuit's assertion that Claimants have brought a "de facto representative proceeding."  As you may know, that is a recycled argument that Intuit borrowed from Postmates.  But the court in *Adams v. Postmates, Inc.,* No. 19-cv-3042, 2019 WL 6694737, at (N.D. Cal. Oct. 22, 2019), properly rejected Postmates's attempt to avoid arbitration on this ground, holding that any such argument was delegated to the arbitrator and that, in all events, Postmates's complaints were really just an attempt to dispute whether the claimants had met the requirements for filing individual arbitrations.  *Id.* at *7.  While Postmates had the tactical sense to save its meritless argument for the court, Intuit's argument is particularly transparent at this stage in the process.  Claimants are asking AAA to commence purely individual arbitrations.  Intuit agrees that Claimants' arbitrations should be individual.  And Intuit has not identified (and cannot identify) any way in which AAA has departed from the applicable rules for commencing individual arbitrations.  If Intuit insists on calling these arbitrations a "de facto representative proceeding," its argument necessarily boils down to the proposition that it is impossible for a large number of individuals to seek relief in arbitration at the same time.

Intuit also complains that the contract of adhesion it foisted upon consumers produces a result that is "not rational or equitable."  But Intuit drafted its arbitration agreement knowing full well that many consumer claims may be worth less than the cost of individual arbitration.  And there is nothing irrational or inequitable about holding a company to the contract it drafted. Indeed, at least three current or former federal judges have rejected that very argument when made by companies in the same situation:

> Under the Fleet Agreement drafted by Postmates which its couriers are required to sign, Petitioners had no option other than to submit their misclassification claims in the form of an arbitration demand—which is precisely what they did.  Since the Fleet Agreement bars class actions, each demand must be submitted on an individual basis.  Thus, the possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers.

*Adams*, 2019 WL 6694737 at *4, n.2.

**EXHIBIT I-6**

# Keller | Lenkner

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. . . . The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. . . . This hypocrisy will not be blessed, at least by this order.

*Abernathy v. DoorDash*, No. 3:19-cv-07545, ECF 177 at 8 (N.D. Cal. Feb. 10, 2020)

> The judge said she believes workers who file arbitration demands *en masse* are only following the rules imposed upon them by employers, who are, in turn, capitalizing on U.S. Supreme Court decisions endorsing arbitration.  [Retired Judge] Scheindlin said she is aware that some employers and defense firms claim that plaintiffs' lawyers are abusing the system, filing unwarranted claims to pressure companies with millions of dollars in filing fees. But it is defendants, she said, that made the rules.

> "The situation that's been created really leaves a plaintiff with no other choice," she said. "The choice is to abandon your claim or bring it one by one in arbitration. I'd like to hear from (employers) what they think the third choice is … You made this bed, now you have to sleep in it."

Alison Frankel, *Ex-Judge Atop Controversial Mass Arbitration Program: Give It a Chance to Work*, Reuters (Dec. 23, 2019).[1]

Finally, we note that the parties' contract is unambiguously governed by "California state law…without regard to its conflict of laws provisions."  As you know, California law now includes California Code of Civil Procedure § 1281.97, which sets specific deadlines for Intuit to honor its obligations under its own arbitration clause.  We respectfully ask AAA to follow the parties' contract and apply § 1281.97 to each Claimant's individual demand regardless of whether he or she resides in California.

Sincerely,

Ashley Keller

Ashley Keller

---

[1] *Available at* https://www.reuters.com/article/us-otc-massarb/ex-judge-atop-controversial-mass-arbitration-program-give-it-a-chance-to-work-idUSKBN1YR1ZI

**EXHIBIT I-7**



**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

February 18, 2020

Rodger R. Cole                                                                                        Email: rcole@fenwick.com
                                                                                                     Direct Dial: +1 650-335-7603

**VIA EMAIL (SHONECKA@ADR.ORG)**

Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolutions
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

     Re:    AAA Case Number 01-19-0003-1980
            Response to February 12, 2020 letter from Mr. Ashley Keller

Dear Mr. Shoneck:

     The strategy here is clear: to make the AAA complicit in a scheme to exploit the consumer-arbitration fee structure to extort a settlement payment from Intuit, no matter the interests of the claimants or the merits of the claims.  Because Keller Lenkner views the Small Claims Option only as an impediment to this strategy, and not as the vital dispute-resolution mechanism that it is, *see* AAA Consumer Due Process Protocol, Principle 5 (Small Claims), it is determined to evade Rule 9, whatever the cost to its clients.  That cynical scheme is not only transparent, it is legally indefensible.  Mr. Keller's contention (at Ltr. 1) that the TurboTax Terms of Service "eliminat[e] Intuit's right to invoke Rule 9(b)" flatly ignores the plain meaning of the Terms, as well as the AAA's Consumer Arbitration Rules and Due Process Protocol.  There is no conflict between the Terms and the AAA's Rules, as Mr. Keller suggests, nor any ambiguity for an arbitrator to resolve.  To the contrary, the TurboTax Terms expressly incorporate the AAA Rules, including Rule 9(b), and carefully adhere to its Due Process Protocol.

     Pursuant to the TurboTax Terms, "[a]rbitration will be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator *under the AAA's rules*."  Intuit TY 2018 TurboTax Terms of Service at 3, ¶ 14 (emphasis added).  As Mr. Keller concedes, then, the AAA's Rules are *part of the TurboTax Terms.  See* Keller Feb. 12 Ltr. at 1 (recognizing that

**EXHIBIT I-8**

Adam Shoneck
February 18, 2020
Page 2

"the parties incorporated [the AAA Rules] into their contract").[1]  And the rule at issue here, Rule 9(b), is clear on its face: At this juncture—"[a]fter a case is filed with the AAA, but before the arbitrator is formally appointed"—"the AAA *will administratively close the case*" upon written notice from either party "that it wants the case decided by a small claims court."  AAA R-9(b) (emphasis added).

To be sure, there is a *different* rule, Rule 9(c), under which an arbitrator is empowered to "determine if the case should be decided in arbitration or … in small claims court."  AAA R-9(c).  But that rule applies "*[a]fter the arbitrator is appointed*," *id.* (emphasis added), and therefore *after* all fees have come due.  Rule 9(b) affords no such discretion.  Intuit has "sen[t] a written notice … that it wants the case[s] decided by a small claims court"; the AAA must accordingly "close the case[s]."  AAA R-9(b).  Were it otherwise—that is, if a claimant could require that an arbitrator determine Rule 9's application simply by objecting to the Rule's invocation—a claimant could effectively convert Rule 9(b) to Rule 9(c) whenever it pleased.  Claimants could thus improperly compel defendants to pay substantial (and in this case wholly irrational) upfront costs and defeat the very purpose of the Small Claims Option.[2]  Besides, Rule 9 does not relate to an arbitrator's powers or duties, so its application is determined by the AAA.  *See* AAA R-53.

According to Mr. Keller, however, the AAA *may not* close the cases, as the plain text of Rule 9(b) requires, because the TurboTax Terms provide that disputes "will be resolved by binding arbitration," "*except that you may assert claims in small claims court if your claims qualify.*"  Intuit TY 2018 TurboTax Terms of Service at 3, ¶ 14 (emphasis added).  This provision, Mr. Keller insists (at Ltr. 1), "departs from the default [AAA] rules," and converts Rule 9 to a unilateral option available only to claimants.  That is wrong.  The relevant provision in the TurboTax Terms instead serves to notify consumers (who may be unfamiliar with the AAA's Rules and the rights afforded them under those Rules) that they may assert claims in small claims court instead of arbitrating their claims, should they qualify and wish to do so.  In

---

[1] *See also* AAA R-1(a)(1) ("The parties shall have made these *Consumer Arbitration Rules* ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and . . . have specified that these *Consumer Arbitration Rules* shall apply."); *see also* AAA R-1 (providing that in these circumstances, application of the AAA's Rules "shall be *an essential term* of [the parties'] consumer agreement." (emphasis added)).

[2] *See* Intuit Feb. 10 Ltr. at 2-3 (explaining that, if Intuit did not exercise its right under Rule 9(b), its arbitration costs would be "*nearly 17 times the maximum recoverable amount if every claimant were to prevail in full*," and noting that the majority of claimants' cut-and-paste demands are frivolous); AAA Consumer Due Process Protocol, Principle 5 (Small Claims, Reporter's Comments) (recognizing that the Small Claims Option is intended to provide an efficient and inexpensive "alternative for resolution of claims for minor amounts of money").

**EXHIBIT I-9**

Adam Shoneck
February 18, 2020
Page 3

other words, it advises consumers of Rule 9(a), which permits claimants to "take their claims to small claims court without first filing with the AAA." AAA R-9(a). Far from *departing from* the AAA's Rules, this provision reflects precisely the notice *required by* the AAA's Consumer Due Process Protocol. As Principle 11 (governing "Agreements to Arbitrate") makes clear, "[c]onsumers should be given . . . notice of the option to make use of applicable small claims court procedures as an alternative to binding arbitration." AAA Consumer Due Process Protocol, Principle 11(c) (Agreements to Arbitrate). That is just what the TurboTax Terms do— they do not waive Intuit's rights under Rule 9, which permits "either party" to "take the claim to [small claims] court instead of arbitration." AAA R-9.[3]

In fact, if Mr. Keller's argument were correct—i.e., if the small-claims-court provision in the TurboTax Terms purported to establish a unilateral mechanism for claimants—the provision would violate the AAA Due Process Protocol. As the AAA has explained, a "[k]ey [p]rovision[] of the Due Process Protocol" is that "[*a]ll parties* retain the right to seek relief in small claims court." AAA Consumer Arbitration Fact Sheet (emphasis added).[4] And where "an arbitration clause contains [a] material . . . violation of the Consumer Due Process Protocol," the remedy is that the AAA "decline[s] administration of [the] arbitration demands." *Id.*; *accord* AAA R-1(d). Indeed, the AAA recently did just that in another case involving Keller Lenkner.[5] If Mr. Keller's reading of the TurboTax Terms were accurate, in other words, the AAA could not arbitrate *any* of the claims, including those that remain in arbitration. *See* Intuit Feb. 10 Ltr., Ex. B. This

---

[3] Where the TurboTax Terms *do* result in the waiver of a party's right, they make that result crystal clear. *See* Intuit TY 2018 TurboTax Terms of Service at 3, ¶ 14 ("YOU AGREE THAT YOU AND INTUIT ARE *EACH WAIVING THE RIGHT* TO FILE A LAWSUIT AND THE RIGHT TO A TRIAL BY JURY." (emphasis added)); *see also id.* ("YOU AGREE TO *WAIVE THE RIGHT* TO PARTICIPATE IN A CLASS ACTION OR LITIGATE ON A CLASS-WIDE BASIS. *YOU AGREE THAT YOU HAVE EXPRESSLY AND KNOWINGLY WAIVED THESE RIGHTS*." (emphasis added)).

[4] https://info.adr.org/consumer-arbitration/; *see also* AAA Consumer Due Process Protocol, Principle 1 (Fundamentally-Fair Process & Reporter's Comments) ("All parties are entitled to a fundamentally-fair ADR process," including "access to small claims court."); *id*. Principle 5 (Small Claims) ("Consumer ADR Agreements should make it clear that all parties retain the right to seek relief in a small claims court for disputes or claims within the scope of its jurisdiction.").

[5] *See* Ex. 2 at 2 (Decl. of Warren Postman), Mot. and Mem. of G. Pena, A. Rivera, and J. Leckerman for Leave to File Br. as Amici Curiae, *In Re Daily Fantasy Sports Litig.*, No. 1:16-md-02677-GAO (D. Mass Nov. 11, 2019) (Dkt. 400) ("AAA informed counsel for DraftKings [in an administrative teleconference] that, because the DraftKings arbitration agreement violates AAA's Consumer Due Process Protocol, AAA will not administer any arbitrations involving claims against DraftKings unless DraftKings agrees to waive the two offending provisions in its agreement.").

**EXHIBIT I-10**

Adam Shoneck
February 18, 2020
Page 4

simply underscores why that reading is mistaken—as the AAA itself has already recognized.[6]
Keller Lenkner's attempt to weaponize the AAA's fee structure is too clever by half.  The
AAA's Rules and policies guard against such extortionist schemes, and those provisions must be
enforced.  If the AAA were to (wrongly) accept Mr. Keller's reading of the Terms, the result
under the Due Process Protocol would be the same as under Rule 9(b): the AAA would be
required to close the cases.[7]

　　　　Not surprisingly, Mr. Keller's attempt (at Ltr. 2-3) to analogize this case to *Abernathy v.
DoorDash* and *Adams v. Postmates* is likewise way off base.  Those cases do not involve small
claims in the consumer context, but rather *employers "forc[ing] arbitration clauses upon
workers."*  Keller Ltr. 3 (quoting Order at 7, *DoorDash*, No. 3:19-cv-07545 (N.D. Cal. Feb. 10,
2020) (Dkt. 177)) (emphasis added).  Put differently, they have nothing to do with Rule 9 or the
Small Claims Option, which (for good reason) is not available in the employment or commercial
context.  But here, in the consumer context, small claims court often provides "the least
expensive and most efficient alternative for resolution of claims for minor amounts of money."
AAA Consumer Due Process Protocol, Principle 5 (Small Claims, Reporter's Comments).  The
Small Claims Option is therefore a critical component of *arbitration rules and processes
themselves*.  *See id.*; AAA R-9.  Intuit is not—as Keller Lenkner would have the AAA and
Intuit's customers believe—attempting to avoid an arbitration "contract it drafted," Keller Ltr. 3;
it is seeking to *enforce* its arbitration contract.  *See supra* pp. 1-2.

　　　　As previously explained, Intuit's invocation of Rule 9(b) in no way harms the affected
claimants.  It should instead inure to their benefit given the significant delay and substantial cost
to many claimants likely to result if these claims remain in arbitration.  *See* Intuit Ltr. 2-3.  But
claimants' benefit is not Keller Lenkner's concern.  Its business model, predicated on coercive

---

[6] *See* Acknowledgement of Receipt of a Demand for Arbitration, *Macklin v. Intuit*, No. 01-19-
0003-9601, at 3 (observing that "either party may choose to exercise the small claims option");
*see also id.*, Attached Consumer Arbitration Reference Sheet (explaining that the AAA "reviews
the parties' arbitration clause" to "determine if the arbitration agreement substantially and
materially complies with the due process standards of the Consumer Due Process Protocol").

[7] Were the AAA to disregard its own Rules and policies here, the resulting action would exceed
its powers—under circumstances, no less, in which the AAA itself stood to gain millions of
dollars in fees.  *See* 9 U.S.C. § 10(a) (Federal Arbitration Act authorizing vacatur of arbitral
awards where "there was evident partiality . . . in the arbitrators" or "the arbitrators exceeded
their powers").

**EXHIBIT I-11**

Adam Shoneck
February 18, 2020
Page 5

and extortionist tactics, is aimed at benefiting Keller Lenkner alone.[8]  The firm plainly did not conduct a diligent investigation of the claims, having filed *thousands* of frivolous demands.  *See* Intuit Ltr. 2.[9]  In doing so, the firm placed those claimants at risk of having to foot the bill for thousands of dollars in fees and expenses under the AAA Rules.  *Id.* at 2-3.  And *even after* Intuit advised Keller Lenkner that many of the original 1,000 claims were frivolous, the firm filed an additional 9,497 claims with no further investigation.  (As Mr. Keller well knows, moreover, Intuit did not base its assessment only on claims for Tax Year 2018.  After conducting the careful and resource-intensive investigation that Keller Lenkner neglected to undertake, on January 24, 2020, Intuit shared detailed aggregate data with Keller Lenkner revealing what Keller Lenkner's own due diligence would have revealed: that a majority of all claims based on Tax Years *2016, 2017, and 2018* were frivolous.)  Nor does it appear likely (or even plausible) that in under 48 hours Kellner Lenkner communicated with all 943 affected claimants regarding Intuit's invocation of Rule 9(b).[10]  Indeed, given the risks inherent in arbitrating many of these claims, it would be remarkable if all 943 claimants (once properly advised of those risks) believed that their interests were best served by objecting to small claims court—particularly when Keller Lenkner itself does not contest that small claims court provides an efficient and cost-effective venue for claimants.  And if the firm acted of its own accord (without input from its clients) in disputing Intuit's invocation of Rule 9(b), that is yet another hallmark of exactly the sort of representative proceeding prohibited by the TurboTax Terms.  *See* Intuit TY2018 TurboTax

---

[8] On information and belief, Keller Lenkner has employed a retention agreement here similar to that used in its other cases, meaning that the firm stands to take roughly $750 off the top of any arbitral award—a sum exceeding the likely recovery of any claim here.  *See* Decl. of A. Unthank at 9, *In re CenturyLink Sales Practices and Sec. Litig.*, No. 17-md-2795 (D. Minn. Jan. 10, 2020) (Dkt. 512).  *See also* California Rule of Professional Conduct 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an unconscionable or illegal fee"); *id.* 1.5(b) (factors for unconscionability include "the amount of fee in proportion to the value of the services performed").  By way of comparison, lead counsel in a certified class action can generally recover as fees no more than 30% of the total award or settlement amount.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

[9] *Contra* California Rule of Professional Conduct 3.1 ("A lawyer shall not . . . bring or continue an action … without probable cause and for the purpose of harassing or maliciously injuring any person.")

[10] *See* California Rule of Professional Conduct 1.4(a) (Communication with Clients).

**EXHIBIT I-12**

Adam Shoneck
February 18, 2020
Page 6

Terms of Service at 3, ¶ 14; *AT&T Mobility LLC v. Bernardi*, No. C 11-3992, 2011 WL
5079549, at *6 (N.D. Cal. 2011).[11]

      For the reasons outlined above, Intuit has properly invoked Rule 9(b) as to 943 of the
claims at issue, and Intuit has paid the filing fees for the 57 claims that remain in arbitration.[12]
As before, Intuit asks that it be advised as soon as arbitrators are appointed for these demands so
that, pursuant to Rule 21, preliminary management hearings may promptly be scheduled.

                        Sincerely,

                        FENWICK & WEST LLP

                        *s/ Rodger R. Cole*

                        Rodger R. Cole

RRC:cen

cc: Warren Postman, Keller Lenkner (via-email (wdp@kellerlenkner.com))

---

[11] Mr. Keller asserts (at Ltr. 2) that this issue should be ignored here because "the court in *Adams
v. Postmates, Inc.*, No. 19-cv-3042, 2019 WL 6694737 (N.D. Cal. Oct. 22, 2019), properly
rejected" a similar argument.  But in rejecting this point, the *Postmates* court rightly looked to
the specifics of Postmates' arbitration agreement, *see id.* at *6, which differs in key respects—
including its delegation clause and terms governing representative proceedings—from the
TurboTax Terms of Service.  *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)
("[W]e have often observed that the Arbitration Act requires courts 'rigorously' to 'enforce
arbitration agreements according to their terms, including terms that specify *with whom* the
parties chose to arbitrate their disputes and *the rules* under which that arbitration will be
conducted.'" (quoting *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013))).

[12] Keller Lenkner's argument based on California Code of Civil Procedure § 1281.97 is therefore
beside the point.  But it is also wrong.  The TurboTax Terms expressly incorporate the Federal
Arbitration Act's procedural provisions, meaning that it—and not Section 1281.97—governs
these claims.  *See* Intuit TY2018 TurboTax Terms of Service at 3, ¶ 14 ("The Federal Arbitration
Act governs the … enforcement of this provision.").

**EXHIBIT I-13**

# Keller | Lenkner

February 20, 2020

Mr. Adam Shoneck
Assistant Vice President
American Arbitration Association
1301 Atwood Ave, Suite 211N
Johnston, RI 02919
shonecka@adr.org

Re:     Arbitration Demands

Dear Mr. Shoneck:

This letter is in response Mr. Cole's letter of February 18, 2020.

Intuit cannot dispute that parties who choose to arbitrate under AAA Rules sometimes alter those rules by contract. For example, if Intuit's arbitration agreement stated that "the AAA Consumer Rules apply, except that <u>all</u> claims must be resolved in arbitration and <u>only the Claimant</u> can invoke Rule 9(b)," Intuit could not credibly argue that it nonetheless could invoke Rule 9(b).

The plain terms of the applicable arbitration agreement are not materially different from the hypothetical above. The agreement provides that "<u>any</u> dispute . . . will be resolved <u>by binding arbitration, rather than in court, except</u> that <u>you</u> may assert claims in small claims court" (emphases added, all-caps omitted). Intuit's only attempt to address this plain text is to assert that the phrase "except that you may assert claims in small claims court" merely noitifies consumers "who may be unfamiliar with the AAA's Rules" that they may assert claims in small claims court. Ltr. at 2. But that reading ignores the rest of the quoted sentence, which provides that, apart from the quoted exception, "any dispute or claim relating in any way" to the agreement <u>must</u> be "resolved by binding arbitration, rather than in court." Intuit's agreement could not be clearer that only the consumer—"you"—can elect to bring claims in small claims court.

Indeed, it appears that not even Intuit believes Intuit's argument. In its customer agreement governing services for the current 2019 Tax Year, Intuit revised its arbitration clause by adding a sentence that states: "<u>Additionally</u>, under Consumer Arbitration Rule 9(b) <u>either party may elect</u> to take a claim to small claims court, even after filing an arbitration."[1] (Emphases added.) Intuit presumably understood that its "[a]dditional[]" provision made a difference, or else it would not have added it.

Even if one believes that the parties' contract is ambiguous on this score, that ambiguity must be construed against the drafter, Intuit. *See Taylor v. J.B. Hill Co*., 31 Cal. 2d 373, 374 (1948) ("It is a settled rule that in case of uncertainty in a contract it is construed most strongly against the party who caused the uncertainty to exist—the party drafting the instrument."). That is doubly true here, where Claimants seek arbitration. As Intuit itself has argued in federal court, the federal policy favoring arbitration requires that any ambiguity be construed in favor of arbitration. *See* Intuit Motion to Compel Arbitration, *In re Intuit Free File Litigation*, No. 3:19-cv-2546, ECF No. 97 at 12 ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983))).

---

[1] *Available at* https://turbotax.intuit.com/corp/license/online/.

# Keller | Lenkner

Intuit next argues that the plain meaning of its contract should not be given effect because, in essence, companies are categorically barred by the Consumer Due Process Protocol from committing to respect a consumer's choice of forum. Ltr. at 3. That argument turns the Consumer Due Process Protocol on its head and is disproven by the very provisions Intuit cites. As Intuit notes, AAA's Consumer Arbitration Fact Sheet states that "[a]ll parties retain the right to seek relief in small claims court." Ltr. at 4. But it is Claimants who "seek relief" in these matters. Intuit is not attempting to seek any relief, and is not barred from seeking any relief, in small claims court or otherwise. Principle 5 of the Due Process Protocol likewise protects the claimant who "seeks relief," not the respondent. *See* Principle 5 ("[A]ll parties retain the right to seek relief in small claims court."). That is not a surprising result, since the Consumer Due Process Protocol exists to protect consumers who sign non-negotiated contracts, not the large corporate defendants who use teams of lawyers to carefully draft contracts of adhesion.

Finally, Intuit fails to offer any explanation for why the parties' dispute over the meaning of Intuit's contract can be decided as an administrative matter, rather than by an arbitrator. As described above, allowing Intuit to elect small claims court would require AAA to resolve a disputed question regarding the interpretation of the parties' agreement. But as Intuit has argued, its arbitration agreement delegates all questions of arbitrability to the arbitrator. *See* Intuit Reply in Support of Motion to Compel Arbitration, *In re Intuit Free File Litigation*, No. 3:19-cv-2546, ECF No. 120 at 8 ("[J]ust as Plaintiffs agreed to arbitrate their claims with Intuit, they also agreed to arbitrate questions of arbitrability."). If Intuit wants to argue that "you" means "we," it must make that argument to individually empaneled arbitrators.

Finally, we cannot help but note the irony (and fallacy) of Intuit's now arguing that individual arbitration is an unfair and inappropriate method for resolving large numbers of individual consumer claims. Intuit accuses Claimants of "extortion." Ltr. at 1,4,5. And it asserts that AAA would be complicit in extortion, exceeding its powers, and acting for a pecuniary motive if it agreed with Claimants' legal arguments. Ltr. at 1,4. But underneath this heated rhetoric, Intuit fails to identify anything unfair or wrongful about holding Intuit to the contract it wrote. If a single claimant filed a demand to arbitrate a small consumer claim, it would ring hollow for Intuit to complain that the company had to pay a filing fee that was worth more than the consumer's claim. And Intuit could not complain that the consumer was being unreasonable by insisting on arbitration instead of small claims court. Arbitration has benefits. Most obviously, Intuit agreed to reimburse Claimants' filing fees and resolve claims under arbitration rules that impose a lower burden on claimants than even small claims court. In exchange, Claimants gave up their right to participate in a class action, even for small claims that would be most efficiently vindicated in a class proceeding. It is not unfair for consumers to take advantage of the benefits they were promised in exchange for giving up their rights. The analysis is no different simply because multiple claimants have retained the same law firm.[2]

Consistent with its past rulings in other matters, AAA should conclude that any and all objections to arbitrability—including the availability of small claims withdrawal pursuant to Rule 9 of the Consumer

---

[2] Intuit continues to assert that Claimants' claims are frivolous without actually identifying a single Claimant who has no valid claim within the applicable limitations period. Intuit's arguments must be made to individual arbitrators, not AAA. But we reiterate for the record that none of the information provided by Intuit establishes that a single Claimant's demand is meritless, let alone frivolous. Keller Lenkner remains ready to confer with Intuit regarding any individual Claimant whom Intuit believes has no basis to pursue arbitration, but Intuit has yet to identify a single such individual, apparently preferring to rest on vague epithets rather than make a specific showing that could then be refuted.

**EXHIBIT I-15**

# Keller | Lenkner

Arbitration Rules and the parties' arbitration agreements—should be raised with the arbitrator appointed to hear each case.[3]

Sincerely,

Ashley Keller

---

[3] Intuit argues that Claimants' demands are not subject to California Code of Civil Procedure § 1281.97 because the arbitration agreement is governed by the Federal Arbitration Act. But Intuit's conclusion does not follow from its premise. The FAA does not speak to every issue touching on arbitration, and where state law does not conflict with a provision of the FAA, it applies with full force. *See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. U.*, 489 U.S. 468, 477 (1989) ("The FAA contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."). Intuit cannot evade the requirements of California Code of Civil Procedure § 1281.97 any more than it can ignore the arbitrator disclosure requirements created by California law. Absent a conflict with the FAA—which Intuit does not identify—California law governs.

**EXHIBIT I-16**



P.O. Box 19609
Johnston, RI 02919

March 6, 2020

Warren D. Postman, Esq.
Keller Lenkner LLC
150 N. Riverside Plaza
Suite 4270
Chicago, IL 60611
Via Email to: wdp@kellerlenkner.com

Laurence F. Pulgram, Esq.
Fenwick & West, LLP
555 California Street
12th Floor
San Francisco, CA 94104
Via Email to: lpulgram@fenwick.com

Case Number: 01-19-0003-1980
Aaron Hammond
-vs-
TurboTax, Intuit, Inc.

Dear Counsel:

The American Arbitration Association (AAA) is in receipt of letters dated February 10 and 18, 2020 from counsel for the Respondent and letters dated February 12 and 20, 2020 from counsel for the Claimants. The AAA has reviewed the parties' contentions regarding the applicability R-9 of the Consumer Arbitration Rules (Consumer Rules) to these matters and determined that the issues presented are arbitrability disputes that must be resolved by an arbitrator(s). In order to move the matters forward, the AAA will proceed with administration of each individual case under the Consumer Rules.

As additional cases have been filed, there are now 10,497 cases in which we have received the Claimants' filing requirements. We have received payment from Respondent in the amount of $17,100 for 57 of these cases. In order to proceed forward with all matters, the balance of Respondent's filing fees in the amount of $3,132,000 is now due on March 20, 2020. As these arbitration are subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be received by April 19, 2020 or the AAA will close the parties' cases. The AAA will not grant any extensions to this payment deadline.

In the interest of providing the parties with an efficient process to determine this initial arbitrability issue, if parties agree, the AAA suggests the parties consider the appointment of a single arbitrator to determine this issue for all the disputes. The AAA can provide the parties a list of panelists to choose the arbitrator to consider the arbitrability issue on this caseload. We also continue to encourage the parties to consider conducting a global mediation process to potentially resolve all the disputes prior to the need for arbitration. The AAA has mediators available with considerable experience in assisting parties with the resolution of large groups of cases involving multiple parties. I am available for a call to discuss these options.

Sincerely,

Adam Shoneck

**EXHIBIT I-17**

Assistant Vice President
Direct Dial: (401)431-4798
Email: shonecka@adr.org
Fax: (866)644-0234

cc:     Ashley Keller, Esq.
        Sean Duddy, Esq.
        Tyler G. Newby, Esq.
        Rodger Cole, Esq.
        Blake Roberts, Esq.
        Nick Larry, Esq.

**EXHIBIT I-18**



**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

March 13, 2020

RODGER R. COLE

EMAIL: RCOLE@FENWICK.COM
Direct Dial: +1 650-335-7603

**VIA EMAIL (SHONECKA@ADR.ORG)**

Mr. Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolutions
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

      Re:     AAA Case Number 01-19-0003-1980
               Rule 9(b) Notice of Election for Small Claims Court and Response to March 6,
               2020 Letter from Adam Shoneck

Dear Mr. Shoneck:

      Your March 6, 2020 letter is the first notice Intuit received that Claimants satisfied the filing requirements with respect to the 9,497 claims filed on January 28, 2020.[1]  Pursuant to Rule 9(b), this letter serves as written notice that Intuit elects to have the claims set forth on Exhibit C decided by a small claims court.  Intuit is not making this election with respect to the 504 claims set forth on Exhibit D, which will remain in arbitration.  Please open case numbers and send individual invoices for these matters, which should total $151,800 in initial fees.  We will submit this amount promptly.  Please let us know when arbitrators are appointed.

      Your demand for payment of $2,980,200 in additional initial fees exceeds the AAA's powers because it is contrary to the plain language of the Rules and Due Process Principles upon which Intuit relied.  Accordingly, we respectfully request immediate review by the AAA Administrative Review Council or other appropriate senior leadership of the manifestly erroneous demand for these fees based on your assertion that "the applicability [of] R-9 of the Consumer Arbitration Rules … to these matters … present[s] [an] arbitrability dispute[] that must be resolved by an arbitrator(s)."

      Plain on its face, Rule 9(b) provides that "the AAA *will* administratively close the case" where, as here, a party sends "written notice" that it wants the case decided by a small claims court "before the arbitrator is formally appointed to the case by the AAA."  AAA R-9(b) (emphasis added).  And Rule 9(b), like all AAA Consumer Arbitration Rules, is part of the TurboTax Terms.  *See* Intuit Feb. 18 Ltr. at 1; Keller Feb. 12 Ltr. at 1 (conceding that "the parties incorporated [the AAA Rules] into their contract").  Intuit provided written notice that it

---

[1] Intuit has not received Demands for Arbitration for three putative claimants, as required by Rule 2(a)(1).  Intuit will provide the names of these individuals to Keller Lenkner upon request.

**EXHIBIT I-19**

Adam Shoneck
March 13, 2020
Page 2

elected to have certain cases decided by a small claims court, and it did so before any arbitrator
was formally appointed to the case by the AAA. Thus, your decision not to close the cases upon
receiving this notice and instead to solicit Keller Lenkner's "response" was in direct
contravention of the AAA Rules—rules Intuit (and countless other companies) relied on in
selecting the AAA to be its provider of consumer arbitration services.

In any event, even if you were to accept Mr. Keller's implausible reading of the
arbitration agreement, the result would be the same. If the TurboTax Terms were read to
establish a unilateral small-claims mechanism available only to claimants, then those Terms
clearly would violate the AAA Due Process Protocol, a "[k]ey [p]rovision[]" of which is that
"*[a]ll parties* retain the right to seek relief in small claims court." AAA Consumer Arbitration
Fact Sheet (emphasis added).[2] And where "an arbitration clause contains [a] material . . .
violation[] of the Consumer Due Process Protocol," the result commanded by the Protocol and
Rules is that the AAA "decline[s] administration of [the] arbitration demands." *Id.*; *accord* AAA
R-1(d); *see also* Intuit Feb. 18 Ltr. at 3-4 & nn.5-6. There is accordingly no dispute relevant to
the outcome of the administrative question here, because the cases must be closed under the
Rules even if Mr. Keller's reading of the contract were credited.

Yet despite these clear-cut Rules and Due Process Principles (discussed nowhere in your
March 6 letter), you parrot *Mr. Keller's* alternative requested outcome: that the application of the
Small Claims Option be construed as an arbitrability question for an arbitrator to decide.
*Compare* Shoneck Mar. 6 Ltr., *with* Keller Feb. 12 Ltr. at 1. Under the AAA Rules, however, "it
is up to the arbitrator to determine" the application of the Small Claims Option only "*[a]fter the
arbitrator is appointed.*" AAA R-9(c) (emphasis added). No arbitrator has been appointed here,
and before that critical step, Rule 9 requires that the AAA close the case if a party invokes the
Small Claims Option. *See* AAA R-9(b).

Your disregard of the AAA's own Rules and Due Process Protocol—an error
compounded by your failure to provide any reasoned basis for your decision—is quintessentially
arbitrary action. And because that decision aligns with the AAA's considerable financial self-
interest, it undermines the AAA's reputation and role as a neutral ADR institution. Indeed, it
"raise[s] justifiable doubt as to whether" you or the AAA "can remain impartial or independent,"
AAA R-18(a), as the AAA stands to gain millions in fees, *see id.* (requiring disclosure of "any

---

[2] https://info.adr.org/consumer-arbitration/; *see also* AAA Consumer Due Process Protocol,
Principle 1 (Fundamentally-Fair Process & Reporter's Comments), Principle 5 (Small Claims).
Keller Lenkner's argument is also untenable because it relies on language included in the
TurboTax Terms to comply with express guidance from the AAA. In stating that consumers
"may assert claims in small claims court if [their] claims qualify," Intuit TY 2018 TurboTax
Terms of Service at 3, ¶ 14, the Terms provide consumers "notice of the option to make use of
applicable small claims court procedures as an alternative to binding arbitration," *exactly as the
AAA Consumer Due Process Protocol requires*, Principle 11(c) (Agreements to Arbitrate); *see
also* Intuit Feb. 18 Ltr. at 2-3 & n.3.

**EXHIBIT I-20**

Adam Shoneck
March 13, 2020
Page 3

bias," including "any financial interest" in the proceeding and "any past or present relationship with the parties or their representatives").

Intuit relied on the AAA's Rules and Due Process Protocol when it selected the AAA to administer disputes between Intuit and its customers. If the AAA sidesteps its responsibilities and fails to adhere to its own Rules and Protocol, it will become complicit in Keller Lenkner's scheme. That scheme, to extort a ransom orders of magnitude greater than what could ever be obtained on the merits, is precisely the perversion of the arbitration process that Rule 9 exists to prevent. *See* Intuit Feb. 18 Ltr. at 4-5; Intuit 11, Keller Lenkner Ltr. at 2-3.[3] The effect of your March 6 letter, if allowed to stand, is that Intuit must forfeit millions of dollars in fees as the up-front price of answering the *single* threshold question of whether those fees were ever owed—a question already resolved, no less, by the AAA's own Rules and Due Process Principles. Put another way, it will be the AAA itself that will have imposed harm on Intuit that *exponentially* exceeds the maximum potential damages at issue.

This harm is clear and only continues to multiply. Indeed, apparently emboldened by your March 6 letter, on Wednesday, March 11, Keller Lenkner reportedly filed another approximately *34,000* identical demands against Intuit and has threatened to file upwards of *50,000* more. Apart from its duty to adhere to its Rules, the AAA has a responsibility under its Due Process Principles to consider what is in the best interests of the parties, which are Intuit and the individual claimants—not Keller Lenkner, or the investors underwriting its business model, or the AAA itself. The AAA cannot willfully ignore the fact that these mass filings bear no indicia of a legitimate grievance from a customer seeking redress. It is apparent that Keller Lenkner failed to conduct even a cursory investigation into the merits of these cut-and-paste demands (which may well be generated by an automated process). Nor does it appear that the social-media advertising that is generating these filings advise about the risk of filing a frivolous claim or provide any other safeguard to ensure that the assertions being made would satisfy the basic requirements of Rule 11 of the Federal Rules of Civil Procedure. In fact, Keller Lenkner has produced no proof that it ever even spoke over the phone to a single one of its purported 90,000 claimants. And despite the critical importance of Rule 9, *see* AAA Consumer Due Process Protocol, Principle 5 (Small Claims), it is a virtual certainty that no claimant was presented with the opportunity to have her claim resolved promptly in small claims court—rather than waiting what could be years for the AAA to adjudicate the claim, at a risk of substantial fees that may be imposed on claimants who have (at Keller Lenkner's direction) asserted frivolous claims.

This case is an important one, not just for Intuit but for all companies that have relied to their detriment on the AAA's representations about its consumer arbitration process. Indeed, it tests the AAA's commitment to its Rules and Due Process Principles, including its foundational

---

[3] Notably, even if paid, none of this ransom appears destined to be shared with the claimants Keller Lenkner purports to represent. Intuit Feb. 18 Ltr. at 4-5 & n.8.

**EXHIBIT I-21**

Adam Shoneck
March 13, 2020
Page 4

assurance that "[a]ll parties are entitled to a fundamentally-fair ADR process." AAA Consumer
Due Process Protocol, Principle 1 (Fundamentally-Fair Process). The AAA should be estopped
from ignoring its own administrative Rules, but at the very least, and so the record of decision is
clear to any subsequent factfinder, fair process requires a "written explanation of the basis" for
your determination, *id.* Principle 15 (Arbitration Awards), and an opportunity for review. The
decision whether to apply the plain terms of the AAA's Consumer Arbitration Rules and Due
Process Principles is not an arbitrability question; it is a basic administrative issue concerning
whether these claims (as to which Intuit has invoked its right under Rule 9(b)) are properly
before the AAA. Review by the AAA Administrative Review Council is therefore essential in
this case to "uphold[] the integrity of the arbitration process and reinforc[e] the parties'
confidence in the process." *See* Administrative Review Counsel, Review Standards, at 1.[4] Such
review is also in Claimants' interest to ensure the finality of any arbitration, as the Federal
Arbitration Act authorizes the vacatur of arbitral awards where "there was evident partiality" or
"the arbitrators exceeded their powers." 9 U.S.C. §10(a).

Beyond these fundamental procedural concerns, proceeding in accordance with your
March 6 letter is inappropriate for other reasons.

*First*, because your letter was the first Intuit has heard of Claimants meeting their filing
obligations with respect to the 9,497 claims submitted on January 28, 2020, Intuit was not
previously afforded an opportunity to invoke Rule 9(b)'s Small Claims Option as to those
demands. Keller Lenkner cannot therefore have communicated Intuit's small-claims-court
election to these additional claimants—a communication required by the AAA's Due Process
Protocol. *See* Principle 2 (Access to Information Regarding ADR Program) ("After a dispute
arises, Consumers should have access to all information necessary for effective participation in
ADR.").

*Second*, if Keller Lenkner is not communicating such critical information to its clients
(but rather objecting to Intuit's invocation of Rule 9(b) without input from its clients), that
underscores that these more than 10,000 claims are in fact a representative proceeding prohibited
by the TurboTax Terms. *See* Intuit Feb. 18 Ltr. at 5.

*Third*, despite Intuit's request that the AAA treat the subsequently filed 9,497 claims as
separate, individual claims and thus "provide a separate invoice and case number for each
demand," Intuit Feb. 10 Ltr. at 4, you have administered these claims much like Keller Lenkner
has treated them: as a representative action requiring only a single case number (plainly in
violation of the Terms). Your March 6 letter suggests that you have also construed Intuit's

---

[4] https://adr.org/sites/default/files/document_repository/AAA_AdminReviewCounsel_Standards.
pdf.

**EXHIBIT I-22**

Adam Shoneck
March 13, 2020
Page 5

previous invocation of Rule 9(b) (as to a *subset* of the 1,000 originally filed demands) to apply to all subsequently filed related demands.  That is improper.[5]

       Intuit therefore reiterates its request that, before proceeding with the later-filed 9,497 claims, you provide a separate invoice and case number for each demand.  As explained above, Intuit also requests that you provide a written explanation for your determination that the applicability of Rule 9(b) presents an arbitrability question, as well as an opportunity for Intuit to seek review of that determination before the AAA Administrative Review Council or other appropriate senior leadership.

                                 Sincerely,

                                 FENWICK & WEST LLP

                                 *s/ Rodger R. Cole*

                                 Rodger R. Cole

RRC:cen

cc:    Warren Postman, Keller Lenkner, (via-email (wdp@kellerlenkner.com))
        Christine Newhall, Senior Vice President, AAA, (via email (NewhallC@adr.org))
        Eric P. Tuchmann, General Counsel, AAA (via email (TuchmannE@adr.org))

---

[5] The suggestion in your letter that all of these claims are subject to California Code of Civil Procedure 1281.97 and 1281.98 is similarly flawed.  For reasons previously explained, these laws have no application to any of these cases, *see* Intuit Feb. 18 Ltr. at 5 n.12, but there is no basis to even assert that they apply to the vast majority of the claims here, which are brought by non-California residents.

**EXHIBIT I-23**

# Keller | Lenkner

March 30, 2020

Mr. Adam Shoneck
Assistant Vice President
American Arbitration Association
1301 Atwood Ave, Suite 211N
Johnston, RI 02919
shonecka@adr.org

Re:      Arbitration Demands

Dear Mr. Shoneck:

At AAA's request, this letter is in response to Intuit's letter of March 13, 2020.

The substance of Intuit's letter is nothing new.  In letters submitted to AAA on February 10, February 12, February 18, and February 20, the parties thoroughly briefed the issue of whether AAA should close Claimants' arbitrations because Intuit has purportedly elected to move Claimants' claims to small claims court.  Intuit argued that Consumer Rule 9 requires AAA to close any arbitrations for which Intuit submits an election, regardless of any terms contained in the arbitration agreement between Intuit and Claimants.  Claimants, on the other hand, explained that the parties' arbitration agreement can alter the default AAA Rules, and does so here, as the agreement expressly states that only a claimant may elect to have claims resolved in small claims court.  Moreover, both Intuit's agreement and AAA's Rules require that the parties' threshold dispute regarding arbitrability itself be submitted to an arbitrator.

On March 6, AAA issued a written determination addressing the parties' arguments.  AAA stated that it had reviewed the parties' contentions and concluded that "the issues presented are arbitrability disputes that must be resolved by an arbitrator(s)." March 6 Ruling.  AAA then set a deadline of March 20 for Intuit to submit its filing fees and warned that, because all Claimants' demands are governed by California law, the deadline would not be extended and the arbitrations would be closed if payment was not received by April 19.

Intuit's latest letter simply reasserts that Rule 9(b) requires AAA to administratively close the demands Intuit prefers to litigate.  Letter at 1-2.  But rehashing the same argument does not make it any more valid, and Intuit offers no grounds for AAA to reverse its prior decision.  Nonetheless, for the sake of completeness, Claimants will briefly correct several of Intuit's distortions and accusations.

**First**, Intuit's assertion that AAA "fail[ed] to provide any reasoned basis for [its] decision," Letter at 2, simply ignores the substance of AAA's determination.  AAA made crystal clear why it refused to close Claimants' cases: the issues Intuit has raised are issues of arbitrability, and must therefore be submitted to an arbitrator.  Perhaps because it has no good answer, Intuit does not even attempt to explain why AAA's decision was incorrect, and instead attempts to ignore it.  But ignoring AAA's rationale does nothing to undermine it.  AAA articulated the reason for its decision.  Having done so, AAA naturally did not go on to decide Intuit's underlying arguments, because it had *just concluded* that it lacked the authority to resolve them.

**Second**, Intuit's assertion that AAA lacks the power to interpret and apply its Rules to threshold administrative issues is simply false.  Intuit's arbitration clause incorporates the AAA Consumer Rules.  Those Rules unambiguously state that the "arbitrator shall interpret and apply these Rules as they

**EXHIBIT I-24**

# Keller | Lenkner

relate to the arbitrator's powers and duties . . . . All other Rules shall be interpreted and applied by AAA." Consumer Rule 53. AAA appropriately interpreted and applied Rule 14, which states that questions of arbitrability are to be resolved by an arbitrator. While Intuit may not like AAA's decision, the Association plainly had the power to make it. Moreover, a contrary interpretation would not only ignore the plain text of AAA's Rules, but would also produce absurd results. On Intuit's view, Inuit could have drafted its contract to state that "Intuit shall not be allowed to invoke Consumer Rule 9," but if Intuit nonetheless told AAA it had elected to invoke Rule 9, AAA would have neither the power to interpret the contract nor the power to submit the question to an arbitrator. To state that position is to refute it.

**Third**, Intuit's suggestion that AAA's ruling was motivated by "financial self-interest," Letter at 2, is beyond the pale. The AAA Rules that Intuit inserted into its contract state that AAA will charge an administrative fee "in accordance with the Costs of Arbitration section found at the end of these Rules." Consumer Rule 4. AAA followed that fee schedule to the letter, and Intuit does not claim otherwise.

As Intuit knows well, AAA is a "not-for-profit organization," *id.,* with almost a century of experience administering arbitrations. As an entity registered under section 501(c)(3) of the Internal Revenue Code, AAA must ensure that none of its earnings "inure to any private shareholder or individual." *See* https://www.irs.gov/charities-non-profits/charitable-organizations/exemption-requirements-501c3-organizations (last visited March 30, 2020). Intuit has adduced zero evidence that any decision maker at AAA had a financial incentive to interpret or apply Rule 9 improperly.

Intuit's true complaint is that AAA's decision to enforce the arbitration agreement as written will cost the company "millions of dollars in fees." Letter at 3. That reality flows directly from the contract Intuit foisted upon its customers. The company knew when it drafted its arbitration clause that the fees and costs of individual arbitration might exceed the value of any damages award. That is *precisely* the complaint many consumer advocates advanced in support of their contentions that class-action waivers were unconscionable. But companies such as Intuit defeated those contentions, insisting that courts enforce arbitration agreements according to their terms. No doubt, Intuit did not believe that tens of thousands of aggrieved consumers would seek redress for the company's misdeeds. But Intuit's disappointment that individual arbitration is not the de facto shield from liability that it previously imagined offers no justification for lashing out at Claimants' counsel or attacking AAA's integrity.

**Finally**, Intuit's speculation about Keller Lenkner's attorney-client communications is both unfounded and irrelevant. Intuit observes that "Keller Lenkner has produced no proof that it ever even spoke over the phone to a single one of its purported 90,000 claimants." Letter at 3. There is no Rule that gives AAA the authority to refuse to administer arbitrations until Claimant's counsel describes its attorney-client communications. And the time, frequency, method, and substance of such communications is of no concern to opposing counsel. Intuit cannot wriggle free of its contractual obligations by guessing (wildly and wrongly) about communications it is not and never will be privy to while feigning concern that Claimants are receiving sufficient information about the risks and benefits of arbitration.

Please let us know if you have further questions.

Sincerely,

Ashley Keller

**EXHIBIT I-25**



**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

March 31, 2020

RODGER R. COLE

EMAIL: RCOLE@FENWICK.COM
Direct Dial: +1 650-335-7603

**VIA EMAIL (SHONECKA@ADR.ORG)**

Mr. Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolutions
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

      Re:     AAA Case Number 01-19-0003-1980
              Response to March 30, 2020 letter from Mr. Ashley Keller

Dear Mr. Shoneck:

      As with Keller Lenkner's previous letters, yesterday's submission fails to acknowledge, let alone engage with, Intuit's straightforward arguments as to why the AAA must close the cases at issue.  Mr. Keller instead insists that the AAA need not take any further action because it already supplied a clear "rationale" for its decision, i.e., that application of Rule 9(b) is an "issue[] of arbitrability, and must therefore be submitted to an arbitrator."  Keller Mar. 30 Ltr. at 1.  But as even Keller Lenkner acknowledges, that unsupported assertion was the AAA's preliminary *decision*, not a "reason for its decision," *id.*; *see also id.* (the AAA "*concluded* that 'the issues presented are arbitrability disputes'") (emphasis added).  And as Intuit has explained, that conclusion is foreclosed by the clear text of the AAA's own Rules and Due Process Protocol.

      By its terms, Rule 9(b) applies "[a]fter a case is filed with the AAA, but *before the arbitrator is formally appointed*."  AAA R-9(b) (emphasis added).  At this juncture, the Rule states, "the AAA *will* administratively close the case" upon written notice from either party that it wants the case decided by a small claims court.  *Id.* (emphasis added).  Pursuant to the plain language of Rule 9(b), in other words, application of the Rule is not a question of arbitrability; it governs before any arbitrator is appointed and affords the AAA no discretion.  The very next provision confirms this conclusion: Under Rule 9(c), which applies "*[a]fter the arbitrator is appointed*," it is *then* "up to the arbitrator to determine if the case should be decided in arbitration or … in small claims court."  AAA R-9(c) (emphasis added).  Rule 14 is accordingly no help to Keller Lenker, as it simply reinforces the undisputed principle that once an arbitrator

**EXHIBIT I-26**

Mr. Adam Shoneck
March 31, 2020
Page 2

is appointed, that arbitrator has "the power to rule on his or her own jurisdiction," AAA R-14(a).[1]

Lacking any response to the plain text of these rules, Keller Lenkner has urged the AAA to ignore them on the ground that the TurboTax Terms permit only *claimants* to invoke the Small Claims Option.  *See* Keller Mar. 30 Ltr. at 1-2; Keller Feb. 12 Ltr. at 1.  Intuit has explained why that interpretation is untenable, *see* Intuit Feb. 18 Ltr. at 2-4—including that the clause Keller Lenkner identifies as the sole basis for its argument reflects exactly the notice *required by* (and included in the TurboTax Terms to comply with) the AAA's Due Process Protocol, *see id.* at 2-3; Intuit Mar. 13 Ltr. at 2 n.2; AAA Consumer Due Process Protocol, Principle 11(c) (Agreements to Arbitrate).  And Keller Lenkner has no answer to the fact that, even if the AAA were to accept Keller Lenkner's implausible view that the TurboTax Terms establish a unilateral small-claims mechanism, *the result would be the same as under Rule 9(b)*: Such a provision would constitute a material violation of the Due Process Protocol, requiring the AAA to close the cases.  *See* Intuit Feb. 18 Ltr. at 3-4; Intuit Mar. 13 Ltr. at 2.  Indeed, the same result would obtain under Keller Lenkner's absurd hypothetical—in which Intuit expressly agrees that it "shall not be allowed to invoke Consumer Rule 9," Keller Mar. 30 Ltr. at 2—because such an agreement would plainly fail to pass muster under the AAA's basic due process standards, *see* Intuit Feb. 18 Ltr. at 4 n.6 (discussing the AAA's process of reviewing arbitration agreements for due process compliance); *see also id.* at 3 & n.4.  That should be the end of this dispute.

That Keller Lenkner continues to ignore the AAA's Due Process principles is no surprise, however, given its position that its attorney-client relationship with TurboTax customers "is of no concern to opposing counsel."  Keller Mar. 30 Ltr. at 2.  For one thing, whether Keller Lenkner is communicating critical information to its clients (or simply acting of its own accord without client input) bears heavily on whether these more than 10,000 cut-and-paste claims are in fact a representative proceeding in violation of the TurboTax Terms.  *See* Intuit Feb. 18 Ltr. at 5-6.  For another, whether Keller Lenkner is charging TurboTax customers an unconscionable fee and/or failing to inform them of the significant risks of filing frivolous arbitration demands, *see id.* at 4-5 & n.8, is indeed "of concern" to Intuit—and it should be of concern to the AAA as well, *see* Intuit Mar. 13 Ltr. at 3-4; AAA Consumer Due Process Protocol, Principle 2 (Access to Information Regarding ADR Program).

---

[1] Of course, even if there were a conflict between Rule 9(b) and Rule 14, under familiar principles of contract and statutory interpretation, Rule 9(b)'s specificity would trump the general statement found in Rule 14.  *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (recognizing the "commonplace" principle that "the specific governs the general"); *Iqbal v. Ziadeh*, 10 Cal. App. 5th 1, 12 (2017) ("Where general and specific [contractual] provisions are inconsistent, the specific provision controls.").

**EXHIBIT I-27**

Mr. Adam Shoneck
March 31, 2020
Page 3


      For the reasons explained, Intuit respectfully requests that you reverse the preliminary decision set forth in your March 6 letter and close the cases Intuit has elected to have decided by a small claims court.  Alternatively, Intuit requests immediate review of this matter by the AAA Administrative Review Council or other appropriate senior leadership.

                    Sincerely,

                    FENWICK & WEST LLP

                    *s/ Rodger R. Cole*

                    Rodger R. Cole

RRC:cen

cc:    Warren Postman, Keller Lenkner, (via-email (wdp@kellerlenkner.com))
       Christine Newhall, Senior Vice President, AAA, (via e-mail (NewhallC@adr.org))
       Eric P. Tuchmann, General Counsel, AAA (via e-mail (TuchmannE@adr.org))

**EXHIBIT I-28**



P.O. Box 19609
Johnston, RI 02919

April 9, 2020

Warren D. Postman, Esq.
Keller Lenkner LLC
150 N. Riverside Plaza
Suite 4270
Chicago, IL 60611
Via Email to: wdp@kellerlenkner.com

Laurence F. Pulgram, Esq.
Fenwick & West, LLP
555 California Street
12th Floor
San Francisco, CA 94104
Via Email to: lpulgram@fenwick.com

Case Number: 01-19-0003-1980

Aaron Hammond
-vs-
TurboTax, Intuit, Inc.

Dear Counsel:

The American Arbitration Association (AAA) is in receipt of letters dated March 13, and 31, 2020 from counsel from Respondents and a letter dated March 30, 2020 from counsel for Claimants regarding whether 9,936 of the 10,497 cases filed may be withdrawn to small claims court in accordance with Rule 9 of the Consumer Arbitration Rules (Consumer Rules).

The AAA has reviewed the parties' contentions regarding the applicability of Rule 9. We have determined that the issues presented are arbitrability disputes that must be resolved by an arbitrator(s). In order to move the matters forward, the AAA will proceed with administration of each individual case under the Consumer Rules.

During the telephone conference of April 3, 2020, the issue of whether the parties could raise the dispute regarding Rule 9 to the AAA's Administrative Review Council (ARC) was discussed if the parties met all the filing requirements.  In response, the parties are directed to the AAA Administrative Review Council Overview and Guidelines, which state:

> The Administrative Review Council (ARC or Council) will act as the administrative decision making authority for the AAA to resolve certain administrative issues arising on large, complex domestic cases. Administrative issues that should be submitted to the Council, as further outlined in Section D below, include objections to arbitrators, locale determinations and whether the filing requirements contained in the AAA's Rules have been met.

Because these are not large, complex domestic cases and the issue does not relate to objections to arbitrators, locale determinations or whether the filing requirements contained in the AAA's Rules have been met, the ARC is not available to resolve the parties' dispute regarding Rule 9.

**EXHIBIT I-29**

As stated during the April 3 call, the Respondents' filing fees in the amount of $3,132,000 is due no later than April 20, 2020. In accordance with California Code of Civil Procedure sections 1281.97 and 1291.98, if payment is not received by April 20, 2020, the AAA will close all cases for which full filing fees have not been received.

Finally the parties' arbitration agreement states "[p]ayment of all filing, administration and arbitrator fees and costs will be governed by the AAA's rules, but if you are unable to pay any of them, Intuit will pay them for you." Counsel for the claimants advised the AAA that twenty-seven claimants of the initial group of fifty-seven cases have indicated that they are unable to pay the administrative filing fee of $200; accordingly, Respondents will be billed for this amount on each of the cases as they move forward in order to avoid delaying administration.

Sincerely,

Adam Shoneck
Assistant Vice President
Direct Dial: (401)431-4798
Email: shonecka@adr.org
Fax: (866)644-0234

cc:    Ashley Keller, Esq.
       Jonathan Paikin, Esq.
       Sean Duddy, Esq.
       Tyler G. Newby, Esq.
       Rodger Cole, Esq.
       Blake Roberts, Esq.
       Nick Larry, Esq.

**EXHIBIT I-30**



**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

April 20, 2020

RODGER R. COLE                                                                EMAIL: RCOLE@FENWICK.COM
                                                                              Direct Dial: +1 650-335-7603

**VIA EMAIL (SHONECKA@ADR.ORG)**

Mr. Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolution
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

      Re:     AAA Case Number 01-19-0003-1980
              Response to April 9, 2020 Letter from Adam Shoneck

Dear Mr. Shoneck:

      On Friday, Intuit paid under protest $2,980,800 in initial filing fees for the 9,936 claims Intuit elected to have decided by a small claims court pursuant to AAA Rule 9(b).  Intuit reserves all rights to seek reimbursement of these fees and requests that the AAA place the disputed amount in escrow (or a segregated internal AAA account) until the question of whether these fees were properly invoiced is finally adjudicated.[1]  In addition, we received your April 9 letter, which failed to address previous concerns and raised new ones.  Intuit has three objections to your letter and requests a written explanation for the positions taken.

**Objection No. 1**      **The AAA Has Provided No Explanation For Its Manifest Disregard Of Consumer Arbitration Rule 9(b) And The Consumer Due Process Protocol.**

      Consumer Rule 9(b) *requires* the AAA to "administratively close the case" where, as here, a party sends written notice that it wants the case decided by a small claims court "before the arbitrator is formally appointed to the case by the AAA."  AAA R-9(b).  The Consumer Due Process Protocol provides that a "[k]ey [p]rovision[]" of any arbitration agreement is that "*[a]ll parties* retain the right to seek relief in small claims court," AAA Consumer Arbitration Fact Sheet (emphasis added), and that where "an arbitration clause contains [a] material violation[] of the Consumer Due Process Protocol," the AAA must "decline administration of [the] arbitration demand[]," *id.*; *accord* AAA R-1(d).  This is standard among arbitration-service providers.  For example, the JAMS Minimum Standards for Arbitration Procedures provides that "no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope

---

[1] Intuit previously paid initial filing fees for the other 561 claims that the AAA represented—apparently inaccurately for some, as discussed below—that the Claimants had satisfied their filing requirements.

**EXHIBIT I-31**

Adam Shoneck
April 20, 2020
Page 2

of its jurisdiction."[2]  In selecting the AAA over other providers, Intuit relied on the AAA's representations that it would follow its published Rules and Due Process Protocol.  Moreover, because the AAA is acting outside its powers to determine monies allegedly owed only to itself, and contrary to the AAA's contractual relationship with Intuit, it is not acting in a judicial or decisional capacity.  Your demand for a $2,980,800 payment—accompanied by threat of sanctions—in manifest disregard of the AAA's Rules and Due Process Protocol warrants a written and thorough explanation of the basis for your decision.  We renew our request that you provide one.

**Objection No. 2**          **The AAA's Refusal To Allow An Appeal Of The Decision To The Administrative Review Council Is Contrary To Its Published Policy.**

The Administrative Review Council seeks to "uphold[] the integrity of the arbitration process and reinforc[e] the parties' confidence in the process."  Administrative Review Counsel, Review Standards, at 1.[3]  On our last call with you, you took the remarkable position that the Administrative Review Council could not determine whether the $2,980,800 in fees were properly invoiced unless and until Intuit paid the disputed fees.  In a show of utmost good faith, Intuit has now paid those significant fees under protest.  Your April 9 letter now provides a different rationale for your refusal to submit this issue to the Administrative Review Council, and that rationale is yet another example of patent disregard for the AAA's own stated policies.  The very authority you rely on—the AAA Administrative Review Council Overview and Guidelines—explains that the Administrative Review Council's "Scope of Authority" includes precisely the issue presented here, i.e., a "dispute[] that could impact the AAA's determination whether or not to administer a matter."[4]  And your assertion that this dispute is somehow not "large" or "complex" ignores, among other things, both the years it will take to administer these more than 10,000 claims and the size of the disputed fee itself.  At the very least, the Administrative Review Council should be presented with the question whether this dispute is within its purview and should issue a written decision addressing that question.

**Objection No. 3**          **The AAA Improperly Charged Intuit Initial Fees For Cases In Which Claimants Have Failed To Satisfy Their Filing Requirements.**

Your letter also revealed that you improperly charged Intuit filing fees for numerous cases in which—contrary to your previous representation—the claimants' fees have not yet been paid.  You previously stated that there were "now 10,497 cases in which [the AAA had] received the

---

[2] https://www.jamsadr.com/consumer-minimum-standards/.

[3]https://www.adr.org/sites/default/files/document_repository/AAA_AdminReviewCounsel_Standards.pdf.

[4]https://adr.org/sites/default/files/document_repository/AAA_AdminReviewCounsel_Guidelines.pdf.

**EXHIBIT I-32**

Adam Shoneck
April 20, 2020
Page 3

Claimants' filing requirements," and on that basis demanded "the balance of [Intuit's] filing fees in the amount of $3,132,000." Shoneck Mar. 6 Ltr. at 1. But you now disclose that 27 of "the initial group of fifty-seven" claimants—nearly 50 percent—failed to pay the required filing fees. Under the AAA's Rules, Intuit's initial fees are due only "*once the consumer claimant meets the filing requirements.*" AAA Consumer Arbitration Rules, Costs of Arbitration, (i) Filing Fees (emphasis added).[5] Thus, with respect to these 27 cases, the AAA once again disregarded its rules and has yet again failed to provide any explanation for doing so. It is unclear how many other claims among the 10,497 are similarly defective.

Your letter compounds the error, wrongly asserting that you can invoice the outstanding $5,400 amount for these 27 claimants to Intuit because Keller Lenkner "advised that they are unable to pay the administrative filing fee of $200." Shoneck Apr. 9 Ltr. at 2.[6] No evidence has been provided that these claimants are unable to pay, and by all indications these arbitrations are being financed by Keller Lenkner or its investors, not claimants themselves. Keller Lenkner's client-recruitment website repeatedly indicates that claimants need not pay anything, stating that "[s]igning up is straightforward and costs nothing," and that claimants only need to fill out a form and "[t]hat's it. Once we receive your documents we'll review your answers and start working on your potential claim."[7] This investment is part of Keller Lenkner's business model. If it employed a retention agreement here similar to that used in its other cases, the firm stands to take roughly $750 off the top of any arbitral award—a sum well in excess of any likely recovery on any claim here. *See* Decl. of A. Unthank at 9, *In re CenturyLink Sales Practices and Sec. Litig.*, No. 17-md-02795 (D. Minn. Jan. 10, 2020) (Dkt. 512). Thus, it appears that *none* of the 10,497 claimants paid anything from their own pocket in connection with these arbitrations (or, for that matter, stand to gain anything from them either), so it makes no sense to assert that 27 of them are "unable to pay." To the extent Keller Lenkner nevertheless maintains that it has not been paying the claimants' filing fees, the AAA should require Keller Lenkner to submit a declaration supporting that representation, along with documentation showing that its clients have directly paid their own fees.

In any event, the AAA may reduce or waive fees in cases of financial hardship, *see* AAA R-4, but—not surprisingly—only upon a *showing* of such hardship. *See* AAA Affidavit in Support of Administrative Fees Hardship Waiver (explaining that the AAA typically waives fees for

---

[5] The TurboTax Terms of Service also state that "[p]ayment of all filing, administration and arbitrator fees and costs will be governed by the AAA's rules." Intuit TY 2018 TurboTax Terms of Service at 3, ¶ 14.

[6] Throughout this dispute, the AAA has vacillated between taking significant liberties in interpreting the parties' contract as an administrative matter and declaring the contract's interpretation to be an arbitral question that an arbitrator must decide. It should be noted that the only common thread to these decisions is the maximization of AAA fees.

[7] *See* https://signup.turbotaxclaims.com/free-filing-claim/.

EXHIBIT I-33

Adam Shoneck
April 20, 2020
Page 4

"individuals whose gross monthly income exceeds 300% of the federal poverty guidelines").[8]  The
same is true of Intuit's coverage of claimant costs and fees.  *See* Intuit TY 2018 TurboTax Terms
of Service at 3, ¶ 14 (explaining that "[p]ayment of all filing, administration and arbitrator fees
and costs will be governed by the AAA's rules").  After receipt of the requested declaration from
Keller Lenkner, and upon review of claimants' AAA financial hardship affidavit and supporting
documents, Intuit will consider covering the fees of claimants who maintain that they are unable
to pay.[9]  For any case in which these documents are not provided to Intuit within 14 days, Intuit
requests that its $300 filing fee be promptly reimbursed and the case closed.

Sincerely,

FENWICK & WEST LLP

*s/ Rodger R. Cole*

Rodger R. Cole

RRC:cen
cc:     Warren Postman, Keller Lenkner (via-email (wdp@kellerlenkner.com))
        Christine Newhall, Senior Vice President, AAA (via email (NewhallC@adr.org))
        Eric P. Tuchmann, General Counsel, AAA (via email (TuchmannE@adr.org))

---

[8] https://www.adr.org/sites/default/files/Support_of_Hardship_Waiver_of_Fees.pdf.

[9] In the event of a dispute about whether Intuit should cover a particular claimant's fees, consistent
with your (albeit erroneous) decision about the payment of *Intuit*'s fees, the dispute should be
settled by an arbitrator paid for by Keller Lenkner.

**EXHIBIT I-34**



P.O. Box 19609
Johnston, RI 02919

April 24, 2020

Warren D. Postman, Esq.
Keller Lenkner LLC
150 N. Riverside Plaza
Suite 4270
Chicago, IL 60611
Via Email to: wdp@kellerlenkner.com

Rodger Cole, Esq.
Fenwick & West, LLP
801 California Street
Mountain View, CA 94041-2009
Via Email to: rcole@fenwick.com

Case Number: 01-19-0003-1980
Aaron Hammond
-vs-
TurboTax, Intuit, Inc.

Dear Counsel:

The American Arbitration Association (AAA) is in receipt of a letter from counsel for the respondent dated April 20, 2020 and a letter from counsel for the claimants dated April 21, 2020. These communications, in addition to the parties' prior communications, reflect their disagreement about whether their disputes should be heard in arbitration or in small claims court. As stated in our letters of March 6th, 2020 and April 9th, 2020, the AAA views the parties' disagreement regarding the interpretation and application of the small claims provision in the parties' arbitration clause, R-9 of the Consumer Arbitration Rules, and the AAA's Consumer Due Process Protocol as an arbitrability dispute. As with other cases filed with the AAA involving arbitrability disputes, the AAA will proceed with the administration of these cases so that the issue can be presented to the appointed arbitrators. Further, please be advised that the AAA will also abide by any court order directed to the parties specifying the manner in which the underlying arbitrations should, or should not, proceed. The AAA is not a necessary or proper party to litigation relating to an arbitration being administered by the AAA.

The AAA did conduct an administrative review of the parties' arbitration agreement at the time of filing and determined that it substantially and materially complies with the due process standards of the Consumer Due Process Protocol. The AAA's review of the arbitration clause is only an administrative review to determine whether the clause complies with the AAA's minimum due process standards in consumer arbitrations and is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable. The AAA will not be revisiting this administrative review of this arbitration agreement.

As stated in our letter of April 9, 2020, the AAA's Administrative Review Council is not available to the parties in these matters. The reasoning was stated in that letter and the AAA has no further response.

The claimants have met their filing requirements for all of the cases, including payment of all filing fees. In light of the parties' dispute over the language in the agreement that provides that the respondent will pay the filing fee for a claimant who indicates they cannot afford to pay the fee, that matter can be presented to an arbitrator upon their appointment. As such, payment of the claimants' filing fees, for the 27 cases the AAA previously requested

**EXHIBIT I-35**

from the respondent, is no longer due to the AAA at this time.

As the AAA now has the filing fees from both parties, we are prepared to proceed with the administration of these matters.  In accordance with the AAA's normal course of case administration, we will not be placing the respondent's filing fees into escrow or a segregated account and will apply them to the cases as they are initiated.  However, the AAA will provide an accounting to a party regarding the fees that party has paid upon request.  This will once again confirm that these cases will proceed as individual arbitrations, with individual parties and case numbers.  The AAA can issue the respondent an invoice confirming payment on individual arbitration cases, which will include the case number and the amount paid on each case.

Finally, we note that the parties have directed their prior communications to the AAA's General Counsel and one of the AAA's Senior Vice Presidents.  As they are not the AAA administrator assigned to the management of the parties' cases, they should not be included in the parties' future communications regarding the cases.  We ask that the parties direct all communications to only the assigned case administrator(s) or myself.  Thank you in advance for your anticipated cooperation.

Sincerely,

Adam Shoneck
Assistant Vice President
Direct Dial: (401)431-4798
Email: shonecka@adr.org
Fax: (866)644-0234

cc:    Ashley Keller, Esq.
       Jonathan Paikin, Esq.
       Laurence F. Pulgram, Esq.
       Sean Duddy, Esq.
       Tyler G. Newby, Esq.
       Blake Roberts, Esq.
       Nick Larry, Esq.

**EXHIBIT I-36**



**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

April 29, 2020

RODGER R. COLE

EMAIL: RCOLE@FENWICK.COM
Direct Dial: +1 650-335-7603

**VIA EMAIL (SHONECKA@ADR.ORG)**

Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolutions
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

   Re:  Response to Initiation Letters Dated April 23 and 24, 2020 Re "TurboTax"

Dear Mr. Shoneck:

   I am writing in response to thirty initiation letters sent to Intuit Inc. on April 23, 2020 and April 24, 2020 regarding certain TurboTax matters, and a related invoice sent to Intuit Inc. on April 24, 2020.

   AAA's demand for payment of the case management fee ($1,400) and arbitrator compensation ($1,500) within 14 days of the initiation letter appears to be a mistake, as it is contrary to the AAA's Rules.  Consumer Arbitration Rules, Costs of Arbitration, Amended and Effective September 1, 2018.  They provide that a nonrefundable case management fee of $1,400 "will be assessed to the business 60 days after the date the AAA sends correspondence communicating the 'answer' due date to the parties or upon the appointment of an arbitrator, whichever comes first."  *See id.* at Section (ii).  Thus, the case management fee would be due 60 days from the date of the initiation letters, or upon appointment of the arbitrator, which has not yet occurred.  However, the initiation letters state that, "[w]hen appropriate fees and arbitrator compensation deposits are on hand, the AAA will administratively appoint an Arbitrator from the National Roster."  Given that process, the case management fee for the thirty claims should be due 60 days from the date of the initiation letters—June 22 and 23, 2020.

   As to the arbitrator compensation, the Rules provide that, "[o]nce a Preliminary Management Hearing is held by the arbitrator, the arbitrator is entitled to one-half of the arbitrator compensation rate.  Once evidentiary hearings are held or all the parties' documents are submitted for a desk/documents-only arbitration, the arbitrator is entitled to the full amount of the arbitrator compensation rate."  *See id.* at Section (iii).  This Rule suggests that the AAA's demand for payment of the full amount of $1,500 (for a desk/documents-only arbitration) is also premature.  By the text of the rules, one-half of that fee should be due after an arbitrator is appointed and a Preliminary Management Hearing is held, and the remaining half should be due after the evidentiary hearing is held or all the parties' documents are submitted.  As we have requested when AAA has abandoned the text of its own rules on prior occasions in these

**EXHIBIT I-37**

Adam Shoneck
April 29, 2020
Page 2

proceedings, Intuit respectfully requests that the AAA explain in writing its basis for departing from its own published procedures again here.

Intuit therefore requests that the AAA provide clarification regarding the fee schedule for arbitration compensation and re-issue initiation letters with fee schedules that conform to the AAA's Costs of Arbitration.

Sincerely,

FENWICK & WEST LLP

*s/ Rodger R. Cole*

Rodger R. Cole

RRC:cen

cc:     Meghan Richardson (via e-mail (MeghanRichardson@adr.org))

        Warren Postman, Keller Lenkner (via e-mail (wdp@kellerlenkner.com))

**EXHIBIT I-38**



P.O. Box 19609
Johnston, RI 02919

May 7, 2020

Warren D. Postman, Esq.
Keller Lenkner LLC
150 North Riverside Plaza
Suite 4270
Chicago, IL 60611
Via Email to: wdp@kellerlenkner.com

Rodger Cole, Esq.
Fenwick & West, LLP
801 California Street
Mountain View, CA 94041-2009
Via Email to: rcole@fenwick.com

Case Number: 01-19-0003-1980
Aaron Hammond
-vs-
TurboTax, Intuit, Inc.

Dear Counsel:

The American Arbitration Association (AAA) is in receipt of a letter dated April 29, 2020 from Mr. Cole. This letter will address the deadline for Respondent's payment of the AAA's Case Management Fee and its payment of deposits for arbitrator compensation and Hearing Fees.

As noted in Mr. Cole's letter, the Costs of Arbitration section of the Consumer Arbitration Rules (Consumer Rules) provides that the Business pay the Case Management Fee: "60 days after the date the AAA sends correspondence communicating the 'answer' due date to the parties or upon the appointment of the arbitrator, whichever comes first."

As the AAA is prepared to appoint arbitrators to the thirty cases recently initiated, our letters dated April 23 and 24 set May 7th as the due date for Respondent to pay the Case Management Fee, deposits for arbitrator compensation and, where applicable, the Hearing Fee. May 7th is the same date Respondent's answers are due. However, based on Mr. Cole's letter, we acknowledge that the Respondent is requesting the full 60 days from the April 23 and 24 letters to pay the Case Management Fees owed.

Therefore, the AAA will set the due date for payment of the Case Management Fees to 60 days from the date that the April 23 and 24 letters were sent - meaning, the Case Management Fees are due either June 22 or June 23, 2020 depending on whether the specific case letter was sent on April 23 or April 24.

In terms of deposits for arbitrator compensation, R-6 of the Consumer Rules allows the AAA to "require the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration, including the arbitrator's fee, and shall render an accounting to the parties and return any unused money at the conclusion of the case." We are requesting Respondent pay the deposits for arbitrator compensation in advance of arbitrator appointment so that there is no delay scheduling the Preliminary Management Hearings once arbitrators are appointed.

**EXHIBIT I-39**

The AAA encourages the parties to agree that all of the matters be resolved utilizing the Procedures for the Resolution of Disputes through Document Submission contained in the Consumer Rules.  In accordance with Consumer Rules R-1(g) and R-29, for matters in which there are no disclosed claims or counterclaims exceeding $25,000, these matters shall be resolved by the Procedures for the Resolution of Disputes through Document Submission contained in the Consumer Rules, unless any party requests an in-person or telephonic hearing or the arbitrator decides that a hearing is necessary.  The deposits due for these matters are $1,500 per case.  However, in accordance with the Consumer Rules, should any party requests an in-person or telephonic hearing or the arbitrator decides that a hearing is necessary, the deposit will be $2,500 per estimated day of hearing and the Hearing Fee of $500 will also be owed.

For matters in which there are disclosed claims or counterclaims exceeding $25,000, the deposits due is $2,500 per case, unless the parties agree that the matters will proceed on documents-only in which case the deposits will be reduced to $1,500 per case.  For matters in which there are disclosed claims or counterclaims exceeding $25,000, the Hearing Fee of $500 are also owed. Please refer to the letters April 23 and 24 for the amount due on each matter. The AAA is setting the payment of deposits for arbitrator compensation and Hearing Fees on the same schedule as payment of the Case Management Fee, due either June 22 or June 23, 2020. Any unused deposits for arbitrator compensation will be returned at the conclusion of the case. Hearing Fees will also be refunded in accordance with the Costs of Arbitration section of the Consumer Arbitration Rules.

The AAA will take the next administrative step, appointing an arbitrator to a case, once it receives the Case Management Fee, deposits for arbitrator compensation, and where applicable the Hearing Fee for that case. Further, as these arbitrations are subject to California Code of Civil Procedure 1281.97 and 1281.98, the Case Management Fees and deposits for arbitrator compensation must be received by July 22 or July 23, 2020 or the AAA will close the parties' case. The AAA will not grant any extensions to these payment deadlines.

The 60-day time-period for payment of the Case Management Fees contained in the Consumer Rules was designed to encourage parties to resolve their disputes early and without the need for further expense including arbitrator compensation. To assist with settlement, the AAA recommends the parties utilize the AAA's Online Settlement Tool, which is available on each case through AAA WebFile®. I have attached information on the Settlement Tool. As previously advised, the parties are also encouraged to consider mediation at this time. The AAA can provide the parties with mediators with considerable experience in assisting parties with the resolution of large groups of cases involving multiple parties.

Please note that all other deadlines set forth in our April 23 and 24 letters remain in place.

Sincerely,

Adam Shoneck
Assistant Vice President
Direct Dial: (401)431-4798
Email: shonecka@adr.org
Fax: (866)644-0234

cc:    Ashley Keller, Esq.
Jonathan Paikin, Esq.
Laurence F. Pulgram, Esq.
Sean Duddy, Esq.
Tyler G. Newby, Esq.
Blake Roberts, Esq.
Nick Larry, Esq.

**EXHIBIT I-40**

EXHIBIT I-41



**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

May 12, 2020

RODGER R. COLE

EMAIL: RCOLE@FENWICK.COM
Direct Dial: +1 650-335-7603

**VIA EMAIL (SHONECKA@ADR.ORG)**

Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolutions
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

      Re:    Aaron Hammond v. TurboTax, Intuit, Inc. - Case 01-19-0003-1980

Dear Mr. Shoneck:

      This letter follows up on the issues discussed during the May 8, 2020 teleconference regarding efficiencies and costs in connection with the administration and adjudication of the 10,497 pending claims. We respectfully request a detailed written response to each of the issues set forth below.

      *First*, we were pleased to learn that the AAA is interested in and willing to apply procedures that would expedite the pending claims and seek out efficiencies. To that end, there is a single threshold legal question applicable to many, though not all, of the pending claims: whether to honor Intuit's election to have those claims heard in small claims court pursuant to Rule 9(b). AAA Consumer Arb. R-9(b). Resolving this threshold issue is where the AAA should look for efficiencies before taking any other steps, especially since this issue exists only because the AAA refuses to follow the plain text of its own Rule and Consumer Due Process Protocol. Indeed, the application of those rules will result in the vast majority of these claims being resolved by small claims courts rather than by the AAA. *See*, *e.g.*, Consumer Due Process Protocol, Principle 6, Reporter's Comments ("there is always the alternative of face-to-face hearing in small claims court."). With no explanation ever provided, you declared the question needs to be determined by an arbitrator and refused to allow Intuit an appeal to the Administrative Review Council, the body designated under the AAA's Rules to hear such appeals. As a result, Intuit paid under protest nearly $3 million in initial fees that were not owed, which we asked the AAA to hold in escrow.

      Despite the AAA's avowed interest in efficient procedures, including aggregating multiple claims before single arbitrators, your statements during the May 8 teleconference seem to indicate that the AAA may demand an additional $28,814,400 in arbitrator and administrator fees simply to adjudicate the plain text of the AAA's own Rule 9,936 times. That would be flatly contrary to the AAA's Consumer Due Process Protocol Principles 1, 5 and 6. We urge the

<strong>EXHIBIT I-42</strong>

Adam Shoneck
May 12, 2020
Page 2

AAA to set forth a process in good faith for the prompt and cost-efficient resolution of this straightforward question.

*Second*, the efficiencies that the AAA is proposing for administration of these cases should translate to significant cost savings for the parties.  The AAA is not treating these matters as 10,497 cases, but rather proposes to hold consolidated administrative hearings and to implement other streamlined processes and procedures.  Charging $14,695,800 (a flat $1,400 administrative fee for each case) bears no relationship to the time that will be expended by AAA personnel on these matters, especially since the lawyers for the parties and legal theories in each case are the same.  As we requested during the call, Intuit demands that the AAA track the time spent on these matters.  Intuit also believes that the most appropriate process to provide reasonable compensation for services rendered is for the AAA to send monthly invoices reflecting a reasonable fee commensurate with actual time spent on these matters.  *See* AAA Consumer Arb. Rule R-4 ("As a *not-for-profit* organization, the AAA charges fees to compensate it for the cost of providing administrative services.") (emphasis added).

Similarly, according to the AAA's own fee statement, the $1,500 arbitrator deposit reflects 7 hours of arbitrator time reviewing document submissions of no more than 100 pages— an hourly rate of $214.  Time spent in excess of 7 hours is billed at a rate of $300 an hour.  If arbitrators are handling multiple cases, they will become familiar with the issues and almost certainly spend less than 7 hours per case.  Intuit therefore demands that arbitrators track the time spent on their matters, that a reasonable retainer amount be set and periodically replenished, and that monthly invoices from each arbitrator assigned to handle these matters are set at a $300 hourly rate.  We recognize this means that if an arbitrator actually spends 7 hours on a case, it would result in a $2,100 fee ($600 more than the flat rate), but we think it is exceedingly unlikely that arbitrators will spend more than a couple hours on any matter once they are familiar with the issues.  The invoices will allow for tracking of amounts being deducted from the retainer to pay these fees.  Please let us know the AAA's position, and provide a written explanation of how the fees and deposits the AAA proposes relate to the fair value of the services it will be providing.

These are not merely disputes between Intuit and the claimants.  To be sure, Keller Lenkner is using the threat of $30 million in AAA fees to coerce a settlement from Intuit that bears no relation to the small underlying potential liabilities of the claims themselves.  And, under its standard retention agreement, Keller Lenkner is paid $750—multiples of the underlying potential liability for each claim—before the claimants they purport to represent receive anything

**EXHIBIT I-43**

Adam Shoneck
May 12, 2020
Page 3

at all.[1]  The transparency of Keller Lenkner's scheme, and the harm it might cause to the actual claimants here, is all the more reason for the AAA to act responsibly and consistent with its own Rules and Due Process Procedures.

You have asked us not to copy your supervisor or the General Counsel of the AAA on these issues.  We continue to do so out of respect for the organization and out of concern that there may not be adequate appreciation of the business, reputational and legal risks at stake.

We look forward to your written response and ask that you do so promptly because these important issues need to be resolved before these cases can proceed.

Sincerely,

FENWICK & WEST LLP

*s/ Rodger R. Cole*

Rodger R. Cole

RRC:cen

cc:    Warren Postman, Keller Lenkner (via email (wdp@kellerlenkner.com))
       Christine Newhall, Senior vice President, AAA (via email (NewhallC@adr.org))
       Eric P. Tuchmann, General counsel, AAA (via eail (TuchmannE@adr.org))

---

[1] These mass filings violate Intuit's Terms of Service, which prohibit "ANY … REPRESENTATIVE PROCEEDING."  Terms of Service, Section 14.  Each demand is substantively identical and devoid of any individualized allegations or information about the claimant.  Each advances the same theory of liability and seeks the same types of relief.  The fact that the vast majority of the claims are frivolous—for example, because the taxpayer filed her taxes for free—further underscores the de facto representative nature of the proceeding here. Moreover, the claimants appear to have no meaningful involvement in these arbitrations, rather the lawyers are the ones effectively "in charge."  *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 640 (7th Cir. 2011).

**EXHIBIT I-44**

# Keller | Lenkner

May 19, 2020

Mr. Adam Shoneck
Assistant Vice President
American Arbitration Association
1301 Atwood Ave, Suite 211N
Johnston, RI 02919
shonecka@adr.org

Re:     Arbitration Demands

Dear Mr. Shoneck:

Pursuant to your email of May 14, 2020, this letter responds to Intuit's letter of May 12, 2020. Intuit's letter rehashes for the third time Intuit's argument for why AAA should decide that Claimants' demands belong in small claims court, and it "demands" that AAA depart from its published fee schedule. In doing so, Intuit continues to ignore AAA's previous determinations, distort AAA's rules, and attempt to rewrite its own arbitration agreement through intimidation.

**First**, the parties have already briefed Intuit's small-claims-court argument multiple times and AAA has already decided the issue. AAA stated that it "views the parties' disagreement regarding the interpretation and application of the small claims provision in the parties' arbitration clause, R-9 of the Consumer Arbitration Rules, and the AAA's Consumer Due Process Protocol as an arbitrability dispute," and thus that it "will proceed with the administration of these cases so that the issue can be presented to the appointed arbitrators." April 24 Letter at 1. When Intuit tried to consolidate Claimants' individual cases into a single dispute before the Administrative Review Counsel, AAA refused to do so, explaining that Claimants' individual cases are not a "large, complex domestic case[]" eligible for ARC review. April 9 Letter at 1. Intuit is not obligated to like that result, but AAA clearly provided a written explanation of its determinations. To suggest otherwise is belied by months of correspondence.

**Second**, Intuit's remarkable claim that applying its arbitration agreement as written would violate the Consumer Due Process Protocol is incorrect as a matter of text and common sense. For decades, consumers have argued that class waivers are unfair because the costs of individual arbitration often exceed the value of underlying claims, thus disincentivizing consumers from bringing those claims in arbitration. To blunt that objection, companies such as Intuit agreed by contract to bear the costs of individually arbitrating even low-value claims. Principle 6 of the Consumer Due Process Protocol, which Intuit cites but does not quote, recognizes precisely this obligation:

> Providers of goods and services should develop ADR programs which entail reasonable cost <u>to Consumers</u> based on the circumstances of the dispute, including, among other things, the size and nature of the claim, the nature of goods or services provided, and the ability of the Consumer to pay. In some cases, <u>this may require the Provider to subsidize the process</u>.

(Emphases added). Principle 5, on which Intuit also relies, likewise reflects a concern for fairness <u>to consumers</u>. The text of that provision protects the right to "seek relief in a small claims court." The Reporter's Comments state that in drafting Principle 5, AAA's "Advisory Committee concluded that access to small claims tribunals <u>is an important right of Consumers</u> which should not be waived by a pre-dispute ADR Agreement." Intuit's arbitration agreement complies with this principle; it provides Claimants the option to bring their claims in small claims court.

**EXHIBIT I-45**

# Keller | Lenkner

Intuit required individual arbitration for low-value claims knowing full well that the cost of each individual arbitration would often be greater than the value of such claims. And although small claims court might be cheaper for Intuit, it would be more expensive for Claimants (who have a right to reimbursement of their fees in arbitration) and more cumbersome (as defendants often can appeal an adverse court decision). There is nothing unfair or inconsistent with the Consumer Due Process Protocol about holding Intuit to the terms of the contract it wrote and required its customers to sign.

**Third**, Intuit mischaracterizes the parties' May 8 administrative call with AAA. At no point during that call did AAA state that it would hold "consolidated administrative hearings" for Claimants' individual arbitrations. Nor did AAA state that it would apply "streamlined processes and procedures" to Claimants' individual arbitrations. AAA merely stated that it would efficiently assign multiple individual arbitrations to each arbitrator. That process is necessary to provide Claimants with the speedy access to arbitration they have been promised. Nothing about AAA's chosen method of selecting arbitrators will deprive the parties of the individual arbitrations guaranteed by Intuit's contract.

**Finally**, although we ultimately defer to AAA regarding how it applies its fee schedule, we note that Intuit's arguments and tone reflect a troubling view of arbitration, with implications beyond the specific individual arbitrations at issue here.

Arbitration is a legitimate alternative to court because it offers a neutral forum with rules laid down in advance. Both parties agree to respect the decisions of the arbitral forum and arbitrators as binding—the legitimacy of the proceedings depends on that agreement. A respondent cannot unilaterally change the arbitral rules after a dispute arises, any more than it is allowed to change rules of procedure after a case is filed in court. Likewise, a respondent is not entitled to attack its chosen arbitral forum when it disagrees with administrative rulings, any more than it would lash out at a clerk of court.

Intuit has consistently exhibited disrespect for arbitration and its chosen arbitral forum. Intuit would not "demand" that a judicial clerk modify a published fee schedule.[1] May 12 Letter at 2. Intuit would not make baseless, unfounded accusations that a clerk of a court was acting based on a pecuniary conflict of interest. Intuit's March 13 Letter at 2 (asserting that "[y]our disregard of the AAA's own Rules and Due Process Protocol" "aligns with the AAA's considerable financial self-interest[,] undermines the AAA's reputation and role as a neutral ADR institution," and "raise[s] justifiable doubt as to whether you or the AAA can remain impartial or independent." (internal quotation marks omitted)). And Intuit would not ignore a court clerk's instructions while making thinly veiled threats. May 12 Letter at 3 ("You have asked us not to copy your supervisor or the General Counsel of the AAA on these issues. We continue to do so out of respect for the organization and out of concern that there may not be adequate appreciation of the business, reputational and legal risks at stake."). These attacks are inappropriate, and we urge Intuit to consider taking responsibility for the process it chose, rather than attempting to undermine its legitimacy at every turn.

---

[1] Intuit knew full well when it drafted its arbitration agreement that the AAA Consumer Rules impose flat fees in each individual consumer case. And flat fees will predictably be more expensive than hourly billing in some cases and less expensive than hourly billing in other cases. That fact is not an argument for departing from a flat fee schedule. Intuit and other respondents presumably do not "demand" to pay more than required under the fee schedule in the many cases in which flat fees fail to cover the time spent by AAA on a matter.

**EXHIBIT I-46**

# Keller | Lenkner

We have no doubt that AAA will continue to apply its rules neutrally and fairly. We look forward to moving past these threshold issues and proceeding with Claimants' individual arbitrations in the prompt and efficient manner to which Intuit agreed in its contract.

Sincerely,

Ashley Keller

3

**EXHIBIT I-47**



Northeast Case Management Center
Neil Currie
Vice President
1301 Atwood Avenue, Suite 211N
Johnston, RI 02919
Telephone: (866)293-4053
Fax: (866)644-0234

May 27, 2020

Warren D. Postman, Esq.
Keller Lenkner LLC
150 North Riverside Plaza
Suite 4270
Chicago, IL 60611
Via Email to: wdp@kellerlenkner.com

Rodger Cole, Esq.
Fenwick & West, LLP
801 California Street
Mountain View, CA 94041-2009
Via Email to: rcole@fenwick.com

Case Number: 01-19-0003-1980
Aaron Hammond
-vs-
TurboTax, Intuit, Inc.

Dear Counsel:

The American Arbitration Association (AAA) is in receipt of a letter dated May 12, 2020 from Mr. Cole and a letter dated May 19, 2020 from Mr. Keller. As stated in our letter dated April 9, 2020, the AAA has reviewed the parties' contentions regarding the applicability of Rule 9. We have determined that the issues presented are arbitrability disputes that must be resolved by an arbitrator(s) or by a court. As there is no party agreement to stay these matters and no court order staying these matters, the AAA will proceed with administration of each individual case under the Consumer Rules. Further, as stated in our letter dated April 9, 2020, the parties' arbitrability disputes concerning Rule 9 is not an administrative determination within the scope of AAA's Administrative Review Council's authority.

Mr. Cole's letter dated May 12, 2020 raises a number of issues regarding the AAA's administrative fees and arbitrator compensation. During the May 8, 2020 administrative conference call, the AAA suggested a number of ideas to facilitate administrative efficiencies such as: foregoing the preliminary hearing conference call on each case and instead agreeing on a standard form scheduling order, providing an agreed upon award template or proposed award forms for the arbitrator to adopt, allowing a special master to decide certain issues common to all cases, and presenting arguments to arbitrators who are hearing more than one case in a consolidated format. We encourage the parties to come to agreement on these suggested efficiencies. If the parties reach agreement on any of the administrative efficiencies suggested by the AAA, the AAA will consider adjusting our administrative fees accordingly. However, if there is no party agreement as to administrative efficiencies reached before the payment deadlines set forth by the AAA, the payments owed will be in accordance with Costs of Arbitration section of the AAA's Consumer Rules. Arbitrator compensation is also set forth in the Costs of Arbitration section of the AAA's Consumer Rules, and unless there is party agreement otherwise, these matters will proceed in accordance

**EXHIBIT I-48**

with the AAA's Consumer Rules and its Costs of Arbitration.

As discussed during the May 8, 2020 administrative conference call, the parties have requested that the AAA provide individual documentation for each of the matters filed by the claimants.  The AAA will begin the administration of these cases by sending out one-hundred (100) initiation letters initially.

The AAA will then send out the remaining letters as such:

- 900 letters
- 1500 letters
- 2000 letters
- 2500 letters
- 3467 letters (in total 10,467 letters)

If the parties wish to agree to a different initiation schedule please meet and confer and contact us with an agreed upon proposed process.  The first 100 letters and billing will sent out during the week of June 1, 2020.

Separately, the AAA will also send out a single invoice which will include the individual AAA case number, the claimant's name, the respondent's name, case management fee amount due and the due date for each of the cases in that weekly group.  We would ask that payment for this single invoice be made in a single payment, which the AAA will then allocate to all of the cases in that invoice.  The due date for the payment of case management fees will be 60 days from the date of the initiation letter, which will be noted in the letter and the invoice.  As these arbitration matters are subject to California law, California Code of Civil Procedure 1281.97 and 1281.98 will apply. If payment is not received within 30 days of this deadline, unless the Consumer pays the drafting party's fees to proceed with the arbitration proceeding or obtains a court order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay and the drafting party does pay those fees, the cases will be closed.

Please be advised that unless the parties agree to appoint an arbitrator or to a process for appointing the arbitrator, the AAA expects to administratively appoint arbitrators to these matters in batches of 1,000 cases at a time. Arbitrator appointments will begin after the case management fee is paid or 60 days from the initiation letter, whichever comes first.  Any arbitrators administratively appointed by the AAA will be appointed from its National Roster.  Once arbitrators are appointed, a deposit for arbitrator's compensation must be submitted by the business and will be due within 15 calendar days from the date of the appointment.  An invoice will be provided separately for the deposit amounts that will be due upon the administrative appointment of the arbitrator.  As these arbitrations are subject to California law, California Code of Civil Procedure 1281.97 and 1281.98 will apply. If payment is not received within 30 days of this deadline, unless the Consumer pays the drafting party's fees to proceed with the arbitration proceeding or obtains a court order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay and the drafting party does pay those fees, the case will be closed.

Arbitrator compensation for each case is as follows:

- As per the Costs of Arbitration section of the Consumer Arbitration Rules (Rules), the Business shall pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation.
- Arbitrators serving on a desk/documents-only arbitration will receive compensation at a rate of $1,500 per case. Additional arbitrator compensation at a rate of $300 per hour will be billed to the business if document submissions and time for the arbitrator to review the submissions exceeds the limits detailed in the Costs of Arbitration section of the Rules.
- Arbitrators serving on an in-person or telephonic hearing arbitration case will receive compensation at a rate of $2,500 per day of hearing per arbitrator. The arbitrator compensation encompasses one preliminary conference, one day of evidentiary hearing, and a final award. For cases with additional

**EXHIBIT I-49**

procedures or processes not provided in the Rules, the Business will be responsible for additional arbitrator compensation.

The AAA is providing you the attached Consumer Arbitration Reference Sheet for more information about topics, such as AAA WebFile® and Cybersecurity and Privacy. Also, view our website at www.adr.org for additional information regarding the administration process.

Finally, the AAA reiterates that the costs outlined here are based on each case filed being administered and decided individually, and that efficiencies and cost saving can be achieved through party agreement to the various means suggested by the AAA previously or by party agreement to aggregating cases that are heard by arbitrators.

Sincerely,

*Adam Shoneck, on behalf of*
Meghan Richardson
Manager of ADR Services
Direct Dial: (401)537-6630
Email: MeghanRichardson@adr.org
Fax: (866)644-0234

cc:     Ashley Keller, Esq.
        Jonathan Paikin, Esq.
        Laurence F. Pulgram, Esq.
        Sean Duddy, Esq.
        Tyler G. Newby, Esq.
        Blake Roberts, Esq.
        Nick Larry, Esq.

**EXHIBIT I-50**

**Sean Duddy**

| | |
|---|---|
| **From:** | Adam Shoneck <shonecka@adr.org> |
| **Sent:** | Tuesday, June 9, 2020 2:23 PM |
| **To:** | Warren Postman; Ashley Keller; Nick Larry; Sean Duddy; 'rcole@fenwick.com'; 'Jonathan.Paikin@wilmerhale.com'; 'tnewby@fenwick.com'; 'lpulgram@fenwick.com'; 'blake.roberts@wilmerhale.com' |
| **Cc:** | Meghan Richardson |
| **Subject:** | Aaron Hammond v. TurboTax, Intuit, Inc. - Case 01-19-0003-1980 |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Counsel:

This email will recap our call on Friday, June 5th.

In response to Mr. Paikin's inquiry regarding our administrative capacity to proceed with the cases as set forth in our May 27, 2020 letter, I indicated that we have leveraged additional technological capacity, but that from the parties' perspective, each case will still proceed through the normal steps of administration as would any other consumer matter. Mr. Paikin asked for clarification regarding these steps, which I provided; namely, that after appointment of the arbitrator, a preliminary conference call would be scheduled, during which a schedule for any briefing, motions, and discovery would be established. If the cases are to move to an in-person hearing, a tentative final hearing date may also be established during this call. After the preliminary conference call and any briefing, motions, and/or discovery, a final hearing would take place (for cases moving to an in-person hearing) or the parties would submit final briefs by a date set by the arbitrator (for documents-only hearings). The arbitrator would then have either thirty or fourteen days, respectively, to write the award.

Mr. Paikin also inquired as to the arbitrator appointment process. As indicated in our May 27, 2020 letter, arbitrators will be appointed from the national roster. We will conduct efforts to pre-screen arbitrators, as we do for other cases in the normal course, to attempt to eliminate arbitrators who may be conflicted out of serving or who may not wish to serve. This effort should minimize the time spent during the actual appointment process for each case. Mr. Paikin discussed arbitrator qualifications. I invited the parties to submit requested arbitrator qualifications to me in writing, and that we would do our best to accommodate those requests. Although it was not discussed on the call, I should indicate that unless specific arbitrator qualifications are clearly required by the parties' arbitration clause, which is not the case here, or by party agreement, then pursuant to the Consumer Arbitration Rules the qualifications of an arbitrator are not a reason an arbitrator can be disqualified for serving on the case.

Mr. Paikin asked whether AAA could provide a list of price reductions accompanying different procedural efficiencies to which the parties may agree. Before we can do that, it would be helpful to know the full extent of options the parties are considering, even if they have not agreed to actually implementing those options. As we have stressed since beginning this process, and as we continue to stress, we are very much willing to reduce costs wherever possible. This goal, however, must be weighed against our obligation as a neutral administrator, and we cannot impose procedures different from those outlined in the rules on parties who have not agreed to them.

Sincerely,

Adam Shoneck

**EXHIBIT I-51**

June 10, 2020

**VIA EMAIL (SHONECKA@ADR.ORG)**

Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolutions
1301 Atwood Ave., Suite 211N
Johnston, RI 02919

Re:   Aaron Hammond v. TurboTax, Intuit Inc. - Case 01-19-0003-1980

Dear Mr. Shoneck:

This letter responds to your June 9 email.

For the 10,497 pending claims, Intuit has paid $3,149,100 in initial filing fees; $2,979,900 of which was paid under protest because 9,933 of these cases should not be proceeding in arbitration under Rule 9(b) and the AAA's Consumer Due Process Protocols. Although the AAA can provide no assurance that it will promptly administer these cases, it has taken steps to dramatically expedite its up-front billing procedures and indicated that over the next few weeks it will invoice an additional $14,695,800 in administrative fees to be followed by another $15,745,500 in arbitrator compensation.

You state in your June 9 email that "we are very much willing to reduce costs wherever possible", but that "[t]his goal must be weighed against our obligations as a neutral administrator, and we cannot impose procedures different from those outlined in the rules on parties who have not agreed to them." Four points in response.

*First*, there is no judicial function being performed by the AAA in invoicing the amount of money it will collect for itself. Whether the AAA charges a $1,400 administrative fee or a $500 administrative fee has no bearing on the merits or on the AAA's "obligations as a neutral." Moreover, the AAA claims to be a non-profit. According to its Form 990, its 2018 revenues were $108,104,189. The AAA is currently on track to charge $33,590,400 for these matters, $17,844,900 of which will go directly to the AAA. In other words, more than approximately 15% of the AAA's annual revenues will be derived from these cases under the AAA's current billing plans. But it does not appear reasonable to claim that the AAA's operational costs have increased anywhere near this much from these matters. Indeed, the Form 990 does not indicate any incremental costs associated with administering a particular arbitration. The AAA has yet to provide any explanation for how the exorbitant fees it intends to charge relates to its actual costs to administer these matters.

**EXHIBIT I-52**

*Second*, the claimants have no legitimate interest in the amounts billed to Intuit for these cases. The threat of $30 million plus in fees is, however, key to Keller Lenkner's scheme to coerce a settlement that is exponentially greater than the $1 million in aggregate potential liability. Consistent with its "obligations as a neutral," the AAA has a duty to ensure that its fee structure is not weaponized. To do otherwise is the very opposite of neutrality.

*Third*, while the AAA may not be able to "impose procedures different from those outlined in the rules," you have acknowledged that it does have discretion under its Rules to adjust the fees it charges. Even without any further process efficiencies, these cases are not being administered in the same manner as a one-time consumer arbitration. You acknowledge, for instance, that the AAA has "leveraged additional technological capacity" and describes a pre-screen arbitrator selection process. Moreover, you indicated that the AAA is in the process of developing further process improvements to reduce the time and effort it expends on these matters. At least some portion of the cost savings inherent in economies of scale must be passed along. Intuit requested that the AAA track its time and is willing to pay a reasonable fee based on the hours actually spent by the AAA on this matter. The AAA has yet to respond to that request or otherwise recognize the efficiencies realized from administration of these claims.

*Fourth*, the AAA's position that it will not reduce its fees until Keller Lenkner agrees to "procedures different from those outlined in the rules" is not tenable for at least three reasons.

One, as an initial matter, $31,785,600 of these fees are being invoiced in direct contravention of the procedures outlined in Rule 9(b) and the Due Process Protocols. Despite the magnitude of this extraordinary divergence, the AAA has never offered anything close to a reasoned explanation for its actions. In any event, as previously requested, these fees need to be placed in escrow until this issue is resolved.

Two, as set forth in point three above, the AAA has already acknowledged that its decision on what to charge is within its discretion and does not depend on any agreement between the parties. The AAA has also acknowledged that substantial efficiencies have been and will be realized irrespective of any agreement between the parties. Refusing to pass these savings along until Keller Lenkner agrees to *other* process efficiencies is not appropriate.

Three, this is not a situation where parties are aligned to act in good faith to develop reasonable processes to reduce costs. Keller Lenkner's incentives are manifestly to the contrary, and its positions to date have aligned with its incentives. For instance, Keller Lenkner would not agree to have the Rule 9(b) issue decided by a Special Master and instead insists on payment of tens of millions in fees to have the issue decided 9,933 times. The AAA is not acting as a neutral by absolving itself of its responsibility to facilitate a fair and impartial process for the parties unless and until Keller Lenkner somehow agrees not to weaponize the AAA's fees.

**EXHIBIT I-53**

During our call, Keller Lenkner stated that it is acting in good faith and will agree to procedures to reduce fees.  There is reason for skepticism, but time will tell.  In any event, it is important that the AAA promptly provide a list of price reductions accompanying different procedural efficiencies to which the parties may agree.  Your response to this request does not advance the ball.  You stated: "Before we can do that, it would be helpful to know the full extent of options the parties are considering, even if they have not agreed to actually implementing those options."   It is not clear why that is so, but in any event, the full extent of the options under consideration are the ones the AAA has already laid out in its prior letters.  We are not aware of other options, but if the AAA has additional options to offer, we would consider those as well.

We look forward to promptly receiving a list of price reductions that will accompany the options previously proposed.  In addition, please respond to the other issues set forth above.

Sincerely,

*Jonathan E. Parkin*

Jonathan E. Parkin

cc:    Warren Postman, Keller Lenkner (via email (wdp@kellerlenkner.com))
       Christine Newhall, Senior Vice President, AAA (via email (NewhallC@adr.org))
       Eric P. Tuchmann, General Counsel, AAA (via email (TuchmannE@adr.org))

**EXHIBIT I-54**

**Fenwick**

**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

July 31, 2020

RODGER R. COLE                                                          EMAIL: RCOLE@FENWICK.COM
                                                                       Direct Dial: +1 650-335-7603

**VIA EMAIL (SHONECKA@ADR.ORG)**

Adam Shoneck
Assistant Vice President
American Arbitration Association
International Centre for Dispute Resolutions
1301 Atwood Ave., Suite 211N
Johnston, RI  02919

      Re:      *TurboTax, Intuit Inc.* - Rule 9(b) Notice of Election for Small Claims Court

Dear Mr. Shoneck:

      The email correspondence between the AAA and the parties, dated July 30, 2020, is the first notice Intuit received that Claimants paid the filing fees for 31,054 of the 34,754 claims that were filed on March 11, 2020.  Keller Lenkner further indicated that it is withdrawing the remaining 3,700 claims.  Pursuant to Rule 9(b), this letter serves as written notice that Intuit elects to have the 31,054 claims set forth on Exhibit A decided by a small claims court.

      Rule 9(b) provides that "the AAA *will* administratively close the case" where, as here, a party sends "written notice" that it wants the case decided by a small claims court "before the arbitrator is formally appointed to the case by the AAA."  AAA R-9(b) (emphasis added).  And Rule 9(b), like all AAA Consumer Arbitration Rules, is part of the TurboTax Terms.  *See* Intuit February 18 Ltr. at 1; Keller February 12 Ltr. at 1 (conceding that "the parties incorporated [the AAA Rules] into their contract").  As it did with its prior elections, Intuit is providing written notice that it elects to have certain cases decided by a small claims court, and it does so before any arbitrator has been formally appointed to the case by the AAA.  For the reasons identified in Intuit's prior letters, dated February 10, 2020, February 18, 2020, March 13, 2020, and March 31, 2020 (which are hereby incorporated by reference), the AAA Rules and Due Process Protocol require that the AAA close the cases identified in Exhibit A upon receiving this notice.

      Sincerely,

      FENWICK & WEST LLP

      *s/ Rodger R. Cole*

      Rodger R. Cole

RRC:cen

cc:     Warren Postman, Keller Lenkner, (via e-mail (wdp@kellerlenkner,com))

**EXHIBIT I-55**

**Sean Duddy**

---

| | |
|---|---|
| **From:** | Warren Postman |
| **Sent:** | Monday, August 3, 2020 3:01 PM |
| **To:** | Sandy Sanford; shonecka@adr.org |
| **Cc:** | Jonathan.Paikin@wilmerhale.com; Rodger Cole; Molly Melcher; Joseph Belichick; Sean Duddy |
| **Subject:** | Re: TurboTax, Intuit Inc. - Rule 9(b) Notice of Election for Small Claims Court |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Mr. Shoneck,

This email responds to Intuit's letter dated July 31.  Intuit's letter repeats the same arguments regarding small claims court that the parties have repeatedly briefed and that AAA already addressed with regard to the previously-filed demands.  In particular, AAA determined that these arguments present questions of arbitrability, which are for each claimant's arbitrator to decide.  For this reason, as well as the other reasons we have noted in our prior briefing, AAA should promptly invoice Intuit for its share of the filing fees for these demands so that claimants' arbitrations may be initiated.

Sincerely,

**Warren D. Postman**
Partner

Keller | Lenkner
1300 I Street, N.W., Suite 400E | Washington, D.C. 20005
202.749.8334 | Website | Email

---

**From:** Sandy Sanford <ssanford@fenwick.com>
**Date:** Friday, July 31, 2020 at 5:46 PM
**To:** "shonecka@adr.org" <shonecka@adr.org>
**Cc:** Warren Postman <wdp@kellerlenkner.com>, "Jonathan.Paikin@wilmerhale.com"
<Jonathan.Paikin@wilmerhale.com>, Rodger Cole <RCole@fenwick.com>, Molly Melcher
<mmelcher@fenwick.com>, Joseph Belichick <JBelichick@fenwick.com>
**Subject:** TurboTax, Intuit Inc. - Rule 9(b) Notice of Election for Small Claims Court

Please see attached.

**Fenwick**

Sandy Sanford
Assistant to Joseph S. Belichick, Esq.
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041-1990

☐ (650) 943-5184
☐ ssanford@fenwick.com

**EXHIBIT I-56**



Northeast Case Management Center
Neil Currie
Vice President
1301 Atwood Avenue, Suite 211N
Johnston, RI 02919
Telephone: (866)293-4053
Fax: (866)644-0234

August 14, 2020

Warren D. Postman, Esq.
Keller Lenkner LLC
150 North Riverside Plaza
Suite 4270
Chicago, IL 60611
**Via Email to: wdp@kellerlenkner.com**

Rodger Cole, Esq.
Fenwick & West, LLP
801 California Street
Mountain View, CA 94041-2009
**Via Email to: rcole@fenwick.com**

Dear Counsel:

The American Arbitration Association (AAA) is in receipt of Respondents' letter dated July 31, 2020 and Claimants' email dated August 3, 2020 regarding whether the 31,054[1] cases recently filed by Claimants[2] may be withdrawn to small claims court in accordance with Rule 9 of the Consumer Arbitration Rules (Consumer Rules).

The AAA has reviewed the parties' contentions regarding the applicability of Rule 9. We have determined that the issues presented are arbitrability disputes that must be resolved by an arbitrator(s). In order to move the matters forward, the AAA will proceed with administration of each individual case under the Consumer Rules.

This will acknowledge receipt of payment from Claimants on July 29, 2020 in the amount of $6,211,000.00. This payment covers the $200.00 initial administrative fee due from the consumer party on each of the 31,054 cases as per the Consumer Rules.

We have gone through the cases and identified 35 claims that appear to be duplicate filings. At this time, we request that Respondents remit payment in the amount of **$9,305,700.00.** This payment covers the $300 initial administrative fee due from the business party on each of the 31,019 cases as per the Consumer Rules. Payment should be submitted on or before **September 4, 2020.**

In accordance with California Code of Civil Procedure sections 1281.97 and 1291.98, if payment is not received by **September 14, 2020**, the AAA will close all cases for which full filing fees have not been received.

Sincerely,

/s/
Adam Shoneck
Assistant Vice President
American Arbitration Association
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
Telephone: 401 431

---

[1] Claimants originally submitted 34,754 Demands for Arbitration but withdrew 3,700 of this original group on July 30, 2020.
[2] Although the Demands for Arbitration for these cases were originally sent to AAA in March, 2020, Claimants had not met the filing requirements until July 30, 2020.

**EXHIBIT I-57**

Email: shonecka@adr.org


cc:     Ashley Keller, Esq.
        Jonathan Paikin
        Laurence F. Pulgram, Esq.
        Sean Duddy, Esq.
        Tyler G. Newby, Esq.
        Blake Roberts, Esq.
        Nick Larry, Esq.
        Joseph Belichick, Esq.
        Meghan Richardson

**EXHIBIT I-58**