Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*sgrille@girardsharp.com*

Norman E. Siegel (*pro hac vice*)
J. Austin Moore (*pro hac vice*)
Jillian R. Dent (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
*siegel@stuevesiegel.com*
*moore@stuevesiegel.com*
*dent@stuevesiegel.com*

*Co-Lead Interim Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE INTUIT FREE FILE LITIGATION | Case No. 3:19-cv-02546-CRB<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE**<br><br>Date: December 17, 2020<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

ARGUMENT ...........................................................................................................................2

I.  THE PROPOSED SETTLEMENT SATISFIES RULE 23. ......................................2

    A.  Movants Cannot Assert the Rights of Other Class Members and Lack Standing to Challenge the Notice and Opt-Out Procedure. ............................................2

    B.  The Settlement Is Fair, Reasonable, and Adequate and in the Best Interests of the Class as a Whole. ............................................................................................3

        1.  The Consideration Intuit Will Provide the Class Is Adequate. ............................3

        2.  The Claim Form Attestation Is Reasonable. ........................................................4

        3.  The Non-Monetary Relief Intuit Has Agreed to Provide Under the Settlement Will Assist Class Members and Reduce Confusion. ..........................5

        4.  Notifying Class Members in the First Instance by Email Makes Sense. ............7

        5.  The Settlement's Opt-out Procedure Is Reasonable and Consistent with Those in Other Class Settlements. ..........................................................................9

        6.  The Release of Liability Under the Settlement Is Appropriately Tailored. ..............................................................................................................14

        7.  The Settlement's "Clear-Sailing" Provision Is Routine and Unproblematic. ....................................................................................................16

    C.  The Court Should Provisionally Certify the Settlement Class. ....................................16

II.  THE COURT SHOULD DENY THE INTERVENTION MOTION AND ENTER THE INJUNCTION. .......................................................................................20

    A.  Because They Can Opt Out to Pursue Arbitrations, Movants' Interests Will Not Be Impaired if the Court Denies Intervention. ..............................................21

    B.  Enjoining Class Members From Pursuing Separate Claims Pending Their Opt-Out Decisions Will Not Prejudice Any Class Member. ..................................22

CONCLUSION .....................................................................................................................26

i

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Abernathy v. DoorDash, Inc.*
    438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................... 12

4

*Adkins v. Facebook, Inc.*
    2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) .................................................... 6

5

6

*Allen v. Bedolla*
    787 F.3d 1218 (9th Cir. 2015) ...................................................................... 21

7

*Allstate Ins. Co. v. Elzanaty*
    929 F. Supp. 2d 199 (E.D.N.Y. 2013) ............................................................. 24

8

9

*Am. Exp. Co. v. Italian Colors Rest.*
    570 U.S. 228 (2013) .................................................................................. 20

10

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) .................................................................................. 19

11

12

*Bank of Am., N.A. v. UMB Fin. Servs., Inc.*
    618 F.3d 906 (8th Cir. 2010) ....................................................................... 24

13

14

*Bedolla v. Allen*
    736 F. App'x 614 (9th Cir. 2018) ................................................................... 6

15

*Bellows v. NCO Fin. Sys., Inc.*
    2009 WL 10725741 (S.D. Cal. July 13, 2009) ................................................... 11

16

17

*Blair v. Rent-A-Ctr., Inc.*
    928 F.3d 819 (9th Cir. 2019) ....................................................................... 20

18

19

*Brennan v. Cmty. Bank, N.A.*
    314 F.R.D. 541 (M.D. Pa. 2016) .................................................................... 21

20

*Briseno v. ConAgra Foods, Inc.*
    844 F.3d 1121 (9th Cir. 2017) ........................................................................ 4

21

22

*Browning v. Yahoo! Inc.*
    2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) .................................................... 8

23

*Busch v. Bluestem Brands, Inc.*
    2019 WL 1976147 (D. Minn. May 3, 2019) ...................................................... 10

24

25

*California ex rel. Lockyer v. United States*
    450 F.3d 436 (9th Cir. 2006) ....................................................................... 21

26

*Camilo v. Ozuna*
    2019 WL 2141970 (N.D. Cal. May 16, 2019) .................................................... 15

27

28

*Campbell v. Facebook, Inc.*
    951 F.3d 1106 (9th Cir. 2020) ................................................................... 6, 7

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

*Capps v. Singer*
2016 WL 6833937 (S.D. Cal. Nov. 21, 2016) ........................................................ 10

*Carlotti v. ASUS Computer Int'l*
2020 WL 3414653 (N.D. Cal. June 22, 2020) ......................................................... 9

*Carter v. XPO Logistics, Inc.*
2019 WL 8641140 (N.D. Cal. June 27, 2019) ......................................................... 3

*Chen v. Chase Bank USA, N.A.*
2020 WL 3432644 (N.D. Cal. June 23, 2020) ........................................................ 16

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992) ............................................................................... 17

*Cohorst v. BRE Props., Inc.*
2011 WL 3475274 (S.D. Cal. Aug. 5, 2011) .......................................................... 22

*Cummings v. Connell*
316 F.3d 886 (9th Cir. 2003) ................................................................................. 17

*Davis v. J.P. Morgan Chase & Co.*
775 F. Supp. 2d 601 (W.D.N.Y. 2011) .................................................................. 22

*del Toro Lopez v. Uber Techs., Inc.*
2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) ......................................................... 9

*Demarco v. Avalonbay Communities, Inc.*
2016 WL 5934704 (D.N.J. Oct. 12, 2016) ............................................................. 22

*DeMarco v. Avalonbay Communities, Inc.*
2017 WL 960355 (D.N.J. Mar. 13, 2017) .............................................................. 11

*Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*
2014 WL 4955259 (M.D. Pa. Sept. 30, 2014) ....................................................... 22

*Doe v. Cin-Lan, Inc.*
2011 WL 37970 (E.D. Mich. Jan. 5, 2011) ........................................................... 22

*Embry v. Acer Am. Corp.*
2012 WL 13059908 (N.D. Cal. Jan. 27, 2012) ...................................................... 21

*Emetoh v. FedEx Freight, Inc.*
2020 WL 6216763 (N.D. Cal. Oct. 22, 2020) ..................................................... 9, 13

*Feller v. Transam. Life Ins. Co.*
2018 WL 6025839 (C.D. Cal. Nov. 16, 2018) ....................................................... 22

*Ferrari v. Autobahn, Inc.*
2019 WL 295260 (N.D. Cal. Jan. 23, 2019) ............................................................ 4

*Gomez-Gasca v. Future AG Mgmt., Inc.*
2020 WL 6149688 (N.D. Cal. Oct. 20, 2020) ....................................................... 13

*Grilli v. Metro. Life Ins. Co.*
    78 F.3d 1533 (11th Cir. 1996) ............................................................ 22

*Hadley v. Kellogg Sales Co.*
    2020 WL 836673 (N.D. Cal. Feb. 20, 2020) ...................................... 15

*Hallie v. Wells Fargo Bank, N.A.*
    2015 WL 1914864 (N.D. Ind. Apr. 27, 2015) ........................... 11, 12, 13

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998)........................................................ 10, 18

*Hartley v. Stamford Towers Ltd. P'ship*
    36 F.3d 1102 (9th Cir. 1994) ............................................................. 25

*Hesse v. Sprint Corp.*
    598 F.3d 581 (9th Cir. 2010).............................................................. 15

*Hibler v. Santander Consumer USA, Inc.*
    2013 WL 12137716 (C.D. Cal. Nov. 21, 2013)................................... 22

*Hickcox-Huffman v. US Airways, Inc.*
    2018 WL 5291990 (N.D. Cal. Oct. 22, 2018) ....................................... 9

*Hillson v. Kelly Servs. Inc.*
    2017 WL 279814 (E.D. Mich. Jan. 23, 2017) ..................................... 10

*Hofstetter v. Chase Home Fin., LLC*
    2011 WL 5415073 (N.D. Cal. Nov. 8, 2011) ...................................... 21

*In re Am. Honda Motor Co., Inc.*
    2009 WL 1204495 (C.D. Cal. Apr. 17, 2009)...................................... 13

*In re Apple In-App Purchase Litig.*
    2013 WL 1856713 (N.D. Cal. May 2, 2013) ......................................... 4

*In re Apple Inc. Device Performance Litig.,*
    No. 5:18-MD-02827-EJD, Dkt. Nos. 416-2 & 429 (N.D. Cal. 2020)........................... 10

*In re CenturyLink Sales Practices & Sec. Litig.*
    2020 WL 3512807 (D. Minn. June 29, 2020).............................. 11, 13, 14

*In re CenturyLink Sales Practices & Sec. Litig.*
    2020 WL 869980 (D. Minn. Feb. 21, 2020) .................................. 23, 24

*In re Cmty. Bank of N. Va.*
    418 F.3d 277 (3d Cir. 2005) .............................................................. 21

*In re Deepwater Horizon*
    739 F.3d 790 (5th Cir. 2014)........................................................ 10, 11

*In re Deepwater Horizon*
    819 F.3d 190 (5th Cir. 2016)............................................................. 14

iv

*In re Diet Drugs*
   282 F.3d 220 (3d Cir. 2002) ............................................................................. 23

*In re Domestic Airline Travel Antitrust Litig.*
   322 F. Supp. 3d 64 (D.D.C. 2018) ...................................................................... 8

*In re Equifax Inc. Customer Data Sec. Breach Litig.*
   2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ............................................ 5, 10, 11, 16

*In re First Jersey Sec., Inc. Sec. Litig.*
   1989 WL 69901 (E.D. Pa. June 23, 1989) ......................................................... 15

*In re Hyundai & Kia Fuel Econ. Litig.*
   926 F.3d 539 (9th Cir. 2019) .......................................................................... 19

*In re Linkedin User Privacy Litig.*
   309 F.R.D. 573 (N.D. Cal. 2015) ...................................................................... 9

*In re Magsafe Apple Power Adapter Litig.*
   2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ....................................................... 7

*In re MyFord Touch Consumer Litig.*
   2018 WL 10539267 (N.D. Cal. June 7, 2018) ................................................... 12

*In re Nat'l Football League Players' Concussion Injury Litig.*
   301 F.R.D. 191 (E.D. Pa. 2014) ...................................................................... 23

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex.*
   910 F. Supp. 2d 891 (E.D. La. 2012) ........................................................... 10, 11

*In re Online DVD-Rental Antitrust Litig.*
   779 F.3d 934 (9th Cir. 2015) .................................................................. 9, 16, 17

*In re Painewebber Ltd. P'ships Litig.*
   1996 WL 374162 (S.D.N.Y. July 1, 1996) ..................................................... 23, 25

*In re Payment Card Interchange Fee Antitrust Litig.*
   2019 WL 5653756 (E.D.N.Y. Oct. 30, 2019) ..................................................... 22

*In re Payment Card Interchange Fee Antitrust Litig.*
   2012 WL 12929536 (E.D.N.Y. Nov. 27, 2012) ................................................... 13

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*
   71 F.3d 298 (8th Cir. 1995) ........................................................................... 25

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*
   261 F.3d 355 (3d Cir. 2001) ........................................................................... 17

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*
   177 F.R.D. 216 (D.N.J. 1997) ......................................................................... 13

*In re Qualcomm Antitrust Litig.*
   328 F.R.D. 280 (N.D. Cal. 2018) ..................................................................... 18

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

*In re Syngenta AG Mir 162 Corn Litig.*
  2018 WL 1726345 (D. Kan. Apr. 10, 2018) .......................................................... 12

*In re Target Corp. Customer Data Sec. Breach* Litig.
  2017 WL 2178306 (D. Minn. May 17, 2017)
  *aff'd*, 892 F.3d 968 (8th Cir. 2018) .................................................................. 18

*In re TracFone Unlimited Serv. Plan Litig.*
  112 F. Supp. 3d 993 (N.D. Cal. 2015) ................................................................ 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*
  2016 WL 6091259 (N.D. Cal. Oct. 18, 2016) ........................................................ 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*
  2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ......................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liability Litig.*
  2016 WL 4376623 (N.D. Cal. Aug. 17, 2016)
  *aff'd*, 894 F.3d 1030 (9th Cir. 2018) .......................................................... 10, 21

*In re W. States Wholesale Nat. Gas Antitrust Litig.*
  725 F. App'x 560 (9th Cir. 2018) ..................................................................... 15

*In re Y & A Grp. Sec. Litig.*
  38 F.3d 380 (8th Cir. 1994) ........................................................................... 25

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................................ 7

*Jackson v. Wells Fargo Bank, N.A.*
  2014 WL 12600178 (W.D. Pa. Oct. 27, 2014) ..................................................... 10

*Kacsuta v. Lenovo (U.S.) Inc.*
  2014 WL 12585787 (C.D. Cal. Dec. 16, 2014) ..................................................... 4

*Keil v. Lopez*
  862 F.3d 685 (8th Cir. 2017) ........................................................................... 9

*Kirchner v. Shred-It USA Inc.*
  2015 WL 1499115 (E.D. Cal. Mar. 31, 2015) ..................................................... 10

*Klee v. Nissan N. Am., Inc.*
  2013 WL 12164781 (C.D. Cal. July 10, 2013) ..................................................... 13

*Knight v. Concentrix Corp.*
  2019 WL 3503052 (N.D. Cal. Aug. 1, 2019) ....................................................... 12

*Koby v. ARS National Services, Inc.*
  846 F.3d 1071 (9th Cir. 2017) ......................................................................... 6

*Kowalski v. Tesmer*
  543 U.S. 125 (2004) ...................................................................................... 2

vi

*La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*
  2011 WL 13273498 (C.D. Cal. Aug. 31, 2011) ............................................................ 5

*Lane v. Facebook, Inc.*
  696 F.3d 811 (9th Cir. 2012) ........................................................................................ 7

*Larsen v. Trader Joe's Co.*
  2014 WL 12641992 (N.D. Cal. Feb. 6, 2014) ............................................................ 10

*Larson v. AT&T Mobility LLC*
  2009 WL 10689759 (D.N.J. Jan. 16, 2009) ............................................................... 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
  572 U.S. 118 (2014) ....................................................................................................... 3

*Littlejohn v. Copland*
  819 F. App'x 491 (9th Cir. 2020) ................................................................................. 6

*Livingston v. MiTAC Digital Corp.*
  2019 WL 8504695 (N.D. Cal. Dec. 4, 2019) ........................................................ 13, 16

*Lundell v. Dell, Inc.*
  2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ................................................................ 3

*Matsushita Electric Industrial Co., Ltd. v. Epstein*
  516 U.S. 367 (1996) ..................................................................................................... 17

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*
  2016 WL 6582045 (N.D. Cal. Nov. 7, 2016) ............................................................. 21

*Melito v. Am. Eagle Outfitters, Inc.*
  2017 WL 366247 (S.D.N.Y. Jan. 24, 2017) ............................................................... 13

*Moore v. Verizon Commc'ns Inc.*
  2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) .............................................................. 9

*Morgan v. Pub. Storage*
  301 F. Supp. 3d 1237 (S.D. Fla. 2016) ..................................................................... 7, 8

*Morrow v. ANN Inc.*
  2017 WL 11494673 (S.D.N.Y. Dec. 14, 2017) .......................................................... 10

*Ortega v. Uber Techs. Inc.*
  2018 WL 4190799 (E.D.N.Y. May 4, 2018) ................................................................. 8

*Pearson v. NBTY, Inc.*
  772 F.3d 778 (7th Cir. 2014) ...................................................................................... 12

*Perkins v. LinkedIn Corp.*
  2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ................................................................. 4

*Perry v. Proposition 8 Official Proponents*
  587 F.3d 947 (9th Cir. 2009) ...................................................................................... 21

vii

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ........................................................................ 10

*Ramirez v. Manpower, Inc.*
  2014 WL 3378306 (N.D. Cal. July 10, 2014) ................................ 22

*Raquedan v. Centerplate of Del. Inc.*
  376 F. Supp. 3d 1038 (N.D. Cal. 2019) ........................................ 21

*Raquedan v. Volume Servs., Inc.*
  2018 WL 3753505 (N.D. Cal. Aug. 8, 2018) .................................. 15

*Rescigno v. Statoil USA Onshore Props. Inc.*
  2020 WL 3830931 (M.D. Pa. July 8, 2020) ................................... 22

*Russell v. Kohl's Dep't Stores, Inc.*
  755 F. App'x 605 (9th Cir. 2018) .................................................. 16

*Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*
  574 F.3d 1054 (9th Cir. 2009) ......................................................... 5

*Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*
  428 F.3d 831 (9th Cir. 2005) ........................................................ 23

*Schneider v. Chipotle Mexican Grill, Inc.*
  2020 WL 511953 (N.D. Cal. Jan. 31, 2020) .................................. 16

*Smothers v. NorthStar Alarm Servs., LLC*
  2019 WL 3080822 (E.D. Cal. July 15, 2019) ................................. 12

*Stern v. Gambello*
  480 F. App'x 867 (9th Cir. 2012) .................................................... 3

*Stern v. New Cingular Wireless Servs., Inc.*
  2010 WL 11530896 (C.D. Cal. Nov. 22, 2010) ................................ 4

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
  559 U.S. 662 (2010) ....................................................................... 25

*Stuart v. State Farm Fire & Cas. Co.*
  332 F.R.D. 293 (W.D. Ark. 2019) .................................................. 11

*Stuven v. Texas de Brazil (Tampa) Corp.*
  2013 WL 610651 (M.D. Fla. Feb. 19, 2013) .................................... 8

*Sullivan v. DB Invs., Inc.*
  667 F.3d 273 (3d Cir. 2011) .......................................................... 18

*Tadepalli v. Uber Techs., Inc.*
  2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) ............................. 7, 8

*The Nvidia GPU Litig.*
  2010 WL 11488486 (N.D. Cal. Sept. 15, 2010) ............................. 13

viii

*Theodore Broomfield v. Craft Brew All., Inc.*
 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ...................................................................... 9

*True v. Am. Honda Motor Co.*
 2009 WL 838284 (C.D. Cal. Mar. 25, 2009) ..................................................................... 12

*Viet Bui v. Sprint Corp.*
 2015 WL 3828424 (E.D. Cal. June 19, 2015) ............................................................. 13, 22

*Warth v. Seldin*
 422 U.S. 490 (1975) ............................................................................................................. 2

*White v. Experian Info. Sols., Inc.*
 2009 WL 10670553 (C.D. Cal. May 7, 2009) .................................................................. 14

*Willner v. Manpower Inc.*
 2014 WL 4370694 (N.D. Cal. Sept. 3, 2014) ................................................................... 15

*Wright v. Nationstar Mortg. LLC*
 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ................................................................... 11

*Zamora v. Ryder Integrated Logistics, Inc.*
 2014 WL 9872803 (S.D. Cal. Dec. 23, 2014) .................................................................. 20

**Statutes**

28 U.S.C. § 1651 ...................................................................................................................... 24

28 U.S.C. § 2072 ...................................................................................................................... 24

Cal. Civ. Code § 1780(a)(4) ..................................................................................................... 19

**Other Authorities**

1 Newberg on Class Actions § 3.58 (5th ed. 2011) .................................................................. 16

2 McLaughlin on Class Actions § 6:29 (Supp. 2020) .............................................................. 15

Fed. R. Civ. P. 23(c)(2)(B) advisory committee's note (2018) ........................................... 7, 8

U.S. District Court for the Northern District of California, Procedural Guidance for Class
 Action Settlements .......................................................................................................... 1, 2, 7, 9

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................................*passim*

Fed. R. Civ. P. 24(a) ................................................................................................................ 21

Fed. R. Civ. P. 24(b) ................................................................................................................ 22

ix

1

**INTRODUCTION AND SUMMARY OF ARGUMENT**

2      Nine class member-intervenors ("Movants")[1] and the Los Angeles City Attorney and Santa

3  Clara County Counsel ("Amici") (together, "Objectors") present an array of grievances in opposition

4  to Class Plaintiffs' motion for preliminary approval.  None withstands scrutiny.  The settlement before

5  the Court is the product of months of negotiations among experienced attorneys, overseen by one of

6  the most accomplished mediators in the country, and meets Class Plaintiffs' litigation goals of

7  securing significant monetary and injunctive relief for the Class.  The settlement follows this District's

8  Procedural Guidance for Class Action Settlements ("Guidance") in all respects—a non-reversionary

9  cash settlement fund, timely and tailored non-monetary relief addressing Defendant's offending

10 conduct, a simple online claims procedure, customary exclusion provisions, and a benchmark fee

11 application.  The notice plan was developed by one of the most experienced experts in the United

12 States, in conformity with the recent amendments to Rule 23.  Dennis Ventry, a law professor and the

13 former Chair of the IRS Advisory Board, and the leading critic of the Free File Program, submits a

14 declaration in support of the settlement, describing it as a "significant win" for consumers.

15      Objectors—who make no secret of their goal of scuttling the settlement outright—offer no

16 alternative.  Movants claim an interest in pursuing individual arbitrations and are represented by

17 sophisticated counsel.  There is no reason to think they will fail to timely exclude themselves if they so

18 choose.  Yet Movants attempt to argue the rights of tens of thousands of *other* individuals not before

19 the Court, to justify their attacks on a settlement in which they do not intend to participate.  That some

20 of the clients solicited on the internet by Movants' counsel may not wish to invest five minutes to opt-

21 out is not a demerit of the settlement—on the contrary, it speaks to the superiority of class adjudication

22 in this setting.  Similarly, Amici argue the Court should deny preliminary approval to avoid any

23 possible impact on their cases, even though they have zero prospect of offering any relief before the

24 coming tax year or ever benefiting non-residents of California, they face uncertain prospects on

25 Defendant's motion for summary judgment, and any trial in their cases is far in the future.  Ultimately,

26 the problem for Objectors, and the reason the Court should overrule their objections and grant

27

28 [1] The Movants are Sabrina Alvey, Arlan Ashcraft, Mary Backes, Sandra Childress, Megan Mairs,
Amber Millikan, Christy Mueller, Scott Siebert, and Tiffany Whatley.  Dkt. No. 177 at p. 2 of 34.

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

preliminary approval, is that the preliminary approval motion before the Court meets all the standards for preliminary approval, and the collateral impact the settlement may have on the client portfolio of Movants' counsel or the prospective flock in the bush promised by Amici are not recognized factors bearing on the fairness of class action settlements, even less so at the preliminary approval stage.

Procedural infirmities aside, Objectors misunderstand the law, the plain language of the settlement, and settled class action practice. The recoveries and claim rates in the range projected are routinely approved, in this District and elsewhere. The non-monetary relief will notify millions of tax-payers before tax season gets underway how they can file for free under the IRS Free File Program, and confer standing on Class Counsel to enforce Intuit's compliance with the FTC's Guidelines for Digital Advertising in this Court. The claim procedure is streamlined and designed to align recoveries with Class Counsel's theory of liability. Mailing an exclusion request is customary, and consistent with the Guidance. Including an identification number will aid in administering the settlement and ensure that class members who wish to exclude themselves can be identified and released from the Court's injunction. And common sense dictates that good faith non-compliance will not invalidate a class member's express preference. Finally, the parties' request that the Court exercise its authority under the All Writs Act to stay the arbitrations is well-founded under the circumstances, given the manifest confusion surrounding the intentions of Movants' client base. The Court should therefore grant the motion for preliminary approval and notice should issue to the Class.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT SATISFIES RULE 23.

#### A. Movants Cannot Assert the Rights of Other Class Members and Lack Standing to Challenge the Notice and Opt-Out Procedure.

Movants purport to defend the rights of other absent Class members, yet they lack standing to argue on their behalf. A party may only "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004); *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Furthermore, because Movants reviewed the Notice and are familiar with and can follow the opt-out procedure, Movants' challenges to those aspects of the Settlement—addressed below in Sections I.B.4 and B.5—do not apply to them and they therefore lack

2

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

standing to raise those challenges as well.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (to have Article III standing, a complainant "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is . . . likely to be redressed by a favorable judicial decision.").

### B.     The Settlement Is Fair, Reasonable, and Adequate and in the Best Interests of the Class as a Whole.

By any objective measure, the Settlement is fair, reasonable and adequate and in the best interests of the Class by providing immediate and meaningful economic and injunctive relief.  Movants' contrary view is rebutted by the plain terms of the Settlement, and by Professor Ventry, a longtime critic of Intuit's participation in the Free File Program who explains why the Settlement is a win for the Class.

### 1.     The Consideration Intuit Will Provide the Class Is Adequate.

In criticizing the cash consideration under the Settlement, Amici ascribe a lofty value of $1.9 billion to the class claims, and Movants perform simple division yielding $2.10 per Class member. Amici Br. at 4, 8; Intervention Mot. at 21.  But these are false comparisons that attribute no value to the substantial injunctive relief provided to the Class and little weight to Intuit's defenses, including challenging that it owes any duty to disclose the existence of the Free File Program.  *See* Dkt. No. 162 at 14-16.  Moreover, federal courts have often cited the risk from arbitration motions as a major factor in concluding class settlements were fair and adequate.[2]  The Settlement here benefits *every* Class member and allows *every* Class member to make a claim.  The $40 million fund will allow for estimated payments of up to $75—enough to make it worthwhile to claim in, *cf.* Amici Br. at 7—for individuals whose damage claims have an estimated average value of $100.  Joint Decl., Dkt. No. 162-2, ¶ 39.  Not only will the Settlement provide Class members with this cash immediately, without further delay or litigation risk, but the Court also retains authority to reassess the Settlement at final approval after Class members have had the opportunity to make claims.  *See* Ventry Decl., ¶¶ 12-13.

---

[2] *See, e.g.*, *Stern v. Gambello*, 480 F. App'x 867, 870 (9th Cir. 2012) (district court in approving settlement properly considered risk of arbitration foreclosing class judgment); *Carter v. XPO Logistics, Inc.*, No. 16-CV-01231-WHO, 2019 WL 8641140, at *3 (N.D. Cal. June 27, 2019) (emphasizing "risk that some if not all putative Class Members could be forced into individual arbitration."); *see also In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015); *Lundell v. Dell, Inc.*, No. CIVA C05-3970 JW, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006).

Amici nonetheless oppose preliminary approval by arguing that a judgment in this case *might* impair their ability to pursue restitution for California Class members. Amici Br. at 14. But such a possibility does not justify rejecting the Settlement when any judgment in favor of Amici remains a purely theoretical, uncertain, distant prospect that may provide no monetary relief at all.

## 2. The Claim Form Attestation Is Reasonable.

While Amici do not dispute that a class action claim form may include an attestation, *see Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017), they disparage the attestation here that the claimant expected to file their tax return for free. Amici Br. at 4-6. Federal courts routinely approve similar claim-form attestations as reasonable and fair so that a settlement fund will not be depleted by claims that likely would not have survived adversarial testing, resulting in diluted recoveries for those with stronger claims.[3] In this case, the attestation properly separates those consumers who were misled by Intuit's challenged practices from those who were not.

Plaintiffs alleged that Intuit engaged in a "bait-and-switch" scheme by advertising free filing only to charge a fee to taxpayers eligible to file for free. Compl., Dkt. No. 80, ¶¶ 3. Class members who did not expect to file for free were, by definition, not "baited" or misled by Intuit's "free" advertising. Ventry Decl., ¶ 12 (explaining that "not all consumers were deceived by Intuit's practices and some of them likely opted consciously to pay for Intuit's premium services."). Further, while Intuit's agreement with the IRS did not obligate it to disclose the Free File Program or inform eligible taxpayers that they could file for free, Amici incorrectly presume such a duty when they argue even

---

[3] *See, e.g.*, *Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *9 (N.D. Cal. Feb. 16, 2016) (rejecting objection to claim form that required claimants to attest, "I believe I was injured," and adding that any class members "unsure as to the meaning of the term 'injured' . . . had a variety of mechanisms for obtaining advice from Class Counsel."); *Stern v. New Cingular Wireless Servs., Inc.*, No. SACV09-1112-CAS (AGRx), 2010 WL 11530896, at *4 (C.D. Cal. Nov. 22, 2010) (requiring class member claimants to aver that they were unaware of the charge and that knowing about it would have made a difference in their decision to use the defendant's service); *Kacsuta v. Lenovo (U.S.) Inc.*, No. SACV13-00316-CJC (RNBx), 2014 WL 12585787, at *4 (C.D. Cal. Dec. 16, 2014) (overruling objection to "claim form requiring claimants to swear under penalty of perjury that the Class Computer experienced a 'persistent inability' to connect to Wi-Fi at 'sufficient' speeds."); *In re Apple In-App Purchase Litig.*, No. 5:11-CV-01758 EJD, 2013 WL 1856713, at *5 (N.D. Cal. May 2, 2013) (claimants attested that they did not authorize the payments that formed the alleged injury); *Ferrari v. Autobahn, Inc.*, No. 4:17-CV-00018-YGR, 2019 WL 295260, at *13 (N.D. Cal. Jan. 23, 2019) (claimants attested that they "would not have purchased zMax or chosen to have it added to their automobiles had they understood that it has not been endorsed or approved by MBUSA.").

1  taxpayers unaware of their eligibility were deceived by Intuit's nondisclosure.  Amici Br. at 5.

2       **3.  The Non-Monetary Relief Intuit Has Agreed to Provide Under the Settlement Will Assist Class Members and Reduce Confusion.**

3

4       As a negotiated condition of the Settlement, Intuit is required to undertake business practice

5  commitments that are specifically tailored to benefit the Class.  SA § III(a)(i)-(v).  These commitments

6  include a prohibition on "de-indexing" the landing page for TurboTax's IRS Free File Program from

7  organic search results, ensuring that consumers can access it on commercial search engines like

8  Google; disclosing the existence of TurboTax's IRS Free File Program on its primary commercial

9  website, along with information about qualifications and how to participate; creating a minimum of

10  three blog posts each tax-filing season that will be posted to TurboTax's commercial website

11  informing consumers about the IRS Free File Program and linking to it; sending a minimum of six

12  emails to customers who previously used TurboTax's IRS Free File Program reminding them of the

13  program; and adhering to the fullest extent practicable to the FTC's guidelines for online marketing.

14       Objectors criticize elements of this non-monetary relief but fail to articulate a cogent basis for

15  why this relief is insufficient or what more should have been obtained.  For example, Movants argue

16  that the relief is inadequate because Intuit already agreed to voluntarily implement certain of these

17  business practice changes.  Intervention Mot. at 22.  But those non-binding promises are now reduced

18  to a legally binding commitment (Ventry Decl., ¶ 11), and a settlement in which a defendant agrees to

19  refrain from certain conduct is "the equivalent of an injunction[.]"  *Saint John's Organic Farm v. Gem*

20  *Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1060 (9th Cir. 2009); *see also La Asociación de*

21  *Trabajadores de Lake Forest v. City of Lake Forest*, No. SA CV 07-250 DOC (ANx), 2011 WL

22  13273498, at *5 (C.D. Cal. Aug. 31, 2011) (recognizing that a settlement agreement gave the court

23  jurisdiction to enforce the defendant's commitment in that agreement).  It simply does not follow that

24  a party's voluntary cessation of complained-of practices to avoid litigation risk—later memorialized in

25  a binding agreement—minimizes the value of that commitment to the class of persons subject to those

26  practices.  *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT,

27  2020 WL 256132, at *38 (N.D. Ga. Mar. 17, 2020) (rejecting similar argument).

28       The case that Objectors cite—*Koby v. ARS National Services, Inc.*, 846 F.3d 1071 (9th Cir.

5

2017)—is not analogous. *Koby* involved a settlement of claims under the Fair Debt Collection Practices Act based on the defendant's alleged failure to disclose in its voicemail messages that it was a debt collector. *Id*. at 1074. After the plaintiff filed suit, the defendant "voluntarily adopted a new, standardized voicemail message" that complied with the FDCPA. *Id*. The proposed settlement contained no monetary relief and required only that the defendant continue using the compliant voicemail message. The Ninth Circuit reversed approval "for one primary reason"—class members received *only* injunctive relief as part the settlement but would have released all damage claims. *Id*. at 1079. Furthermore, the injunctive relief had little value to the class members because they were not in an ongoing relationship with the defendant and hence were unlikely to benefit from its FDCPA-compliant practices going forward. *See id*. at 1079-80. In this context, the Ninth Circuit held that the defendant's continuation of those practices had "no real value." *Id*. at 1080. In contrast, the proposed Settlement in this case includes both monetary and non-monetary relief, and *all* Class members will benefit from Intuit's business practice commitments.[4]

Objectors also undervalue Intuit's required compliance with the FTC's guidelines for online marketing, which contain a number of detailed requirements for fair online advertising practices. Ventry Decl., ¶ 10. While Movants seek to downplay this commitment, noting Intuit "must already comply with the law," they ignore that the Settlement grants Class Counsel authority to monitor Intuit's compliance and seek Court enforcement if necessary. SA § III(b). *See Adkins v. Facebook, Inc*., No. C 18-05982 WHA, 2020 WL 6710086, at *2 (N.D. Cal. Nov. 15, 2020) (Judge Alsup commenting in analogous situation that "this external oversight becomes the real value for the class.").

Crucially, Intuit's new disclosures and the Notice will result in the Class learning first-hand, with the onset of the new tax season, that they are eligible to file their federal return for free through the IRS Free File program. *See* Ventry Decl., ¶¶ 6-9, 11. These disclosures have significant value and should clear up much of the confusion that served to reinforce Intuit's alleged misconduct. Amici's

---

[4] *See, e.g.*, *Bedolla v. Allen*, 736 F. App'x 614, 617 (9th Cir. 2018) (affirming approval of settlement and distinguishing *Koby* because "class members also received monetary relief, notice, and the opportunity to opt out" and benefited from the injunctive relief); *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1123 (9th Cir. 2020) (distinguishing *Koby* because benefits under settlement conformed to scope of release); *Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020) (distinguishing *Koby*: candy purchasers "tend to be repeat buyers who would derive value from the Settlement's injunctive relief").

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE CASE NO. 3:19-cv-02546-CRB

claim that the disclosures are written in "legalese" (Amici Br. at 11) is unfounded. The text is prominently displayed on the first page of the Notice in bold font and plain language, and provides a link to the IRS's Free File Program website.[5] No other resource can provide this information on a targeted basis to the individuals who are both eligible under the Free File Program and previously paid a fee to Intuit to file a return. *Id.*, ¶ 8; *see Campbell*, 951 F.3d at 1123 (concluding that "a year-long requirement to make such a disclosure has value.").

As such, the non-monetary relief provided under the Settlement strongly supports its approval.

### 4. Notifying Class Members in the First Instance by Email Makes Sense.

Email notice represents the best practicable notice to this Settlement Class under Rule 23(c)(2)(B). Contrary to Movants' and Amici's arguments (Intervention Mot. at 19; Amici Br. at 6-7), "email notice in class actions is becoming the preferred method of notification not only because it is reliable but it is actually more likely to be received by the Class members." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016).[6] Moreover, the Advisory Committee Note to the 2018 amendments to Rule 23 explains that, in light of technological advances, Rule 23(c)(2)(B) as amended "does not specify any particular means [of notice] as preferred"; cautions against "simply assuming that the 'traditional' methods are best" as this "may disregard contemporary communication realities"; and observes in particular that it may "be true that electronic methods of notice, for example email, are the most promising" means of notifying a class. Similarly, the parties' proposed email notice plan adheres to this District's Guidance, which encourages email notice where appropriate.

Email notice is particularly appropriate in this case because that is how Class members previously interacted with the defendant, and Class members previously agreed to receive notices by

---

[5] *See* Dkt. No. 162-1 at p. 53 of 65 ("**If you are receiving this notice and your income is $69,000 or below, you are likely eligible to use the IRS's Free File Program to file your taxes for free in 2021. Please visit the Program's website at https://www.irs.gov/filing/free-file-do-your-federal-taxes-for-free.**") (emphasis in original).

[6] *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (affirming approval where the "principal method [of providing notice] was to send an email to the class members"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *19 (N.D. Cal. July 22, 2020) (approving notice plan that primarily used email); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2015 WL 9196054, at *12 (N.D. Cal. Dec. 17, 2015) (email best notice practicable); *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-cv-01911-EJD, 2015 WL 428105, at *10 (N.D. Cal. Jan. 30, 2015) (emails, the primary notice vehicle, were sent to 5,523,878 class members).

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

email through Intuit's user agreement.  Thus, Plaintiffs' "allegations demonstrate that the members 'are familiar and comfortable with email and the Internet[.]'"  *Ortega v. Uber Techs. Inc.*, No. 15CV-7387-NGG (JO), 2018 WL 4190799, at *11 (E.D.N.Y. May 4, 2018) (quoting *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006)); *see also* Fed. R. Civ. P. 23(c)(2)(B) advisory committee's note (2018) (advising that "class members' likely access to such technology" should factor into the court's decision on whether to rely on a certain technology to notify them); *Morgan*, 301 F. Supp. 3d at 1263; *Tadepalli*, 2015 WL 9196054, at *12; Ventry Decl., ¶ 9.

Due to the large size of this Class, providing notice through emails instead of U.S. mailings also will result in significant savings to the Settlement fund, preserving more of the $40 million for Class member recoveries.  *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 72 (D.D.C. 2018) (approving of notice primarily through email after "taking into account that the majority of class members use the Internet to book their flights, as well as the large size of the class and the disproportionately higher cost of providing notification by direct mail as opposed to e-mail").  Moreover, email notice will promptly alert low-income individuals of their eligibility to file for free on the eve of a new tax season and in the midst of a national health and economic emergency.  *See* Ventry Decl., ¶ 10; *see also Stuven v. Texas de Brazil (Tampa) Corp.*, No. 8:12-CV-1283-T-24TGW, 2013 WL 610651, at *6 (M.D. Fla. Feb. 19, 2013) (rejecting "presumption that notice by mail is the preferred method of providing notice.").

Objectors express concern that email notices may be ignored or blocked by spam filters (Intervention Mot. at 19; Amici Br. at 6) but ignore that the notice email will be designed to attract attention and bypass spam filters.  JND Decl., Dkt. No. 162-4, ¶¶ 22-24.  Likewise, Objectors apparently overlook that it will be supplemented by a digital marketing effort on Facebook.  JND Decl., Dkt. No. 162-4, ¶ 10(c).  And if a notice email is returned as undeliverable, JND will try again to reach that Class member by sending a postcard notice to an available postal address.  *Id*. ¶ 18.[7]

According to Amici, the projected claim rate of between 2.5% and 7.5% means the notice

---

[7] *See Browning*, 2006 WL 3826714, at *8 (settlement provided that if email notice "bounced back as undeliverable" the administrator would provide notice by mail); *Ortega*, 2018 WL 4190799, at *11 ("[T]he court finds that Plaintiff's proposed plan of notice by email, followed by notice by United States mail for all class members whose emails are returned as undeliverable, is sufficient.").

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

1    program is deficient.  Amici Br. at 6-7.  To the contrary, that range is well within the range of claim

2    rates in settlements that courts have approved as fair and adequate.[8]  The projected claim rate is also

3    consistent with the rates in settlements on behalf of millions of class members.[9]

### 5.    The Settlement's Opt-out Procedure Is Reasonable and Consistent with Those in Other Class Settlements.

5        Class members who opt out may immediately commence or pursue arbitrations or other

6    proceedings.  SA § VII(b).  Objectors contend the Settlement's opt-out procedure is unduly burdensome

7    because it requires Class members to sign their request for exclusion and submit it to the Claims

8    Administrator by mail, and does not permit Class members to opt-out electronically or through counsel.

9    Intervention Mot. at 16-19; Amici Br. at 7.  But the Settlement's opt-out process adheres to the

10   Guidance ("[t]he notice should instruct class members who wish to opt out of the settlement to send a

11   letter") and is consistent with those approved in numerous other class settlements.  Far from being

12   unusual or unreasonable, these opt-out procedures protect the integrity of the Settlement, and courts

13   have repeatedly approved opt-out procedures requiring class members to personally sign and mail in

14   their exclusion request.  *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.*

15   *Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 672727, at *10 (N.D. Cal. Feb. 16, 2017) (class

16   members requested exclusion "by mailing a signed, written request"); *del Toro Lopez v. Uber Techs.,*

17   *Inc.*, No. 17-CV-06255-YGR, 2018 WL 5982506, at *21 (N.D. Cal. Nov. 14, 2018) ("The Opt-Out

18   Statement must be personally signed in ink by the Rule 23 Class Member who seeks to opt out.").[10]

---

20   [8] *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (approving settlement with 5.9% claims rate); *Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2020

21   WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (same; "claims rate of about two percent"); *Carlotti v. ASUS Computer Int'l*, No. 18-CV-03369-DMR, 2020 WL 3414653, at *4 (N.D. Cal. June 22, 2020)

22   (4.02%); *Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) (3% rate did "not suggest unfairness").

23   [9] *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015) (affirming settlement with 3.3% claims rate involving 35 million class members); *Moore v. Verizon Commc'ns*

24   *Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (claims rate of 3.1% where there was more than 8 million class members weighed in favor of settlement).

26   [10] *See also Emetoh v. FedEx Freight, Inc.*, No. 17-CV-7272-YGR, 2020 WL 6216763, at *17 (N.D. Cal. Oct. 22, 2020); *Hickox-Huffman v. US Airways, Inc.*, No. 10-CV-05193-VKD, 2018 WL

27   5291990, at *4 (N.D. Cal. Oct. 22, 2018) ("Any Class Member who wishes to be excluded from the Class must send to the Settlement Administrator by U.S. Mail a personally signed letter"); *In re*

28   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6091259, at *4 (N.D. Cal. Oct. 18, 2016); *Larsen v. Trader Joe's Co.*, No. 3:11-CV-05188-

---

The material distinction between submitting a claim form and opting out of a class settlement has led courts to treat the two acts differently.  *See, e.g.*, *In re Equifax*, 2020 WL 256132, at *26 ("While technology provides an avenue for filing claim forms more easily, it also makes it easier for third parties and their counsel to file unauthorized 'mass opt-outs'") (citing *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex.*, 910 F. Supp. 2d 891, 939 (E.D. La. 2012), *aff'd*, *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014)); *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, Dkt. No. 416-2 at pp. 7-8 of 11, Dkt. No. 429, ¶ 12 (N.D. Cal. 2020) (requiring opt-out requests to be signed and mailed, even though claim forms could be submitted electronically). Class members who do nothing in response to the Notice will release their claims against Intuit while those who opt out will have to pursue any relief on these facts against Intuit individually.  Class members will be bound by the judgment whether or not they make a claim or do nothing; thus, making a claim is an administrative act that does not affect the class member's rights, and should be encouraged.

By contrast, individual class members "have the right to intelligently and individually choose whether to continue . . . as class members."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998).  Opting out relieves a class member from the effects of the judgment, and is a formal act protected by the Due Process Clause that should be made knowingly and voluntarily.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 801, 813 (1985) (holding, with respect to an opt-out form that required signing and mailing, that "the Constitution does not require more to protect what must be the somewhat rare species of class member who is unwilling to execute an 'opt out' form").

Courts do not permit others to "usurp" these individual rights.  *In re Volkswagen*, 2016 WL 4376623, at *4 (noting class members "can evaluate the Settlement and decide for themselves if they

---

WHO, 2014 WL 12641992, at *4 (N.D. Cal. Feb. 6, 2014).  Courts in numerous other jurisdictions also have required that opt-out requests be personally signed and mailed.  *See Kirchner v. Shred-It USA Inc.*, No. CIV. 2:14-1437 WBS, 2015 WL 1499115, at *9 (E.D. Cal. Mar. 31, 2015); *Capps v. Singer*, No. 15-CV-02410-BAS (NLS), 2016 WL 6833937, at *12 (S.D. Cal. Nov. 21, 2016); *Morrow v. ANN Inc.*, No. 16-CV-3340 (JPO) (SN), 2017 WL 11494673, at *6 (S.D.N.Y. Dec. 14, 2017); *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *13 (E.D. Mich. Jan. 23, 2017); *Busch v. Bluestem Brands, Inc.*, No. 16-CV-0644 (WMW/HB), 2019 WL 1976147, at *2 (D. Minn. May 3, 2019); *Jackson v. Wells Fargo Bank, N.A.*, No. 2:12-CV-01262-DSC, 2014 WL 12600178, at *2 (W.D. Pa. Oct. 27, 2014).

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

should participate, object, or opt out" and someone else "cannot choose for them").  In addition, any class member who elects to opt out will be able to immediately pursue claims against Intuit, and the Court has a legitimate interest in ensuring that the opt-out decisions are being made by the individual Class member and not their counsel.  *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *13 (N.D. Ill. Aug. 29, 2016) ("In addition, given the important legal consequences of an opt-out to Nationstar, it was reasonable for requests to be signed and in writing.").

The signature and mailing requirements accordingly "ensure[] that the class member is individually consenting to opt out, and avoids a third party or lawyer representing that they have that class member's authority, without the class member making an informed, individual decision."  *In re CenturyLink Sales Practices & Sec. Litig.*, No. CV 17-2832, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020) (rejecting attempt by Keller Lenkner firm to effect mass opt-out) (citing *In re Oil Spill by the Oil Rig "Deepwater Horizon"*, 910 F. Supp. 2d 891, 939 (E.D. La. 2012), *aff'd, In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014)).[11]  In short, "[r]equiring a personally signed, individual request for exclusion from class settlement heightens the likelihood that each class plaintiff will make an informed, individualized decision whether to opt out[.]"  *Hallie v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00235-PPS, 2015 WL 1914864, at *4 (N.D. Ind. Apr. 27, 2015).

Movants offer no compelling reason to dispense with these traditional protections.  Nor is the time and cost associated with mailing a request for exclusion unduly burdensome.[12]  And Movants do not explain why they could not assist their clients in completing the simple steps to opt out.  *See DeMarco v. Avalonbay Communities, Inc.*, No. CV 15-628 (JLL), 2017 WL 960355, at *3 (D.N.J. Mar. 13, 2017) ("[T]here is nothing to impede State Court Counsel from advising their clients—as the Court presumes that State Court Counsel is in contact with their clients . . . on how to proceed if those

---

[11] *See also Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-1413 W (CAB), 2009 WL 10725741, at *2 (S.D. Cal. July 13, 2009) (holding that a signature requirement for opting out was "not burdensome" and ensured "potential Class Members knowingly acted with the intent to exclude themselves"); *In re Equifax*, 2020 WL 256132, at *26 ("The individual signature requirement on opt-out requests is not burdensome at all.  Moreover, it ensures that each individual has carefully considered his options and understands that he is giving up his right to relief under the settlement").

[12] *See, e.g., Wright*, 2016 WL 4505169, at *13 ("Gathering these documents and paying for postage requires minimal time and financial burden, and courts have approved even more cumbersome requirements"); *Stuart v. State Farm Fire & Cas. Co.*, 332 F.R.D. 293, 300 (W.D. Ark. 2019) ("The Court is not convinced that a letter-only opt-out mechanism would present an unnecessary hurdle").

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

clients wish to opt out of the class action").

Movants note that some judges have questioned the continuing relevance of signature and mailing requirements for members of a class to exercise their right to withdraw from it.  Intervention Mot. at 16-19 (citing, *inter alia*, *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067 (N.D. Cal. 2020) (suggesting another judge "[p]erhaps" should give "extra scrutiny" to a signature requirement); *Marciano v. DoorDash Inc.*, No. CGC-18-567869 (S.F. Super. Ct.)).  But those decisions are silent on the importance of encouraging deliberate decisions on whether to participate in a settlement and of avoiding fragmenting a class against its overall interests.  *See Hallie*, 2015 WL 1914864, at *4 (stating that "class settlements would lose their effectiveness if internal struggles among different plaintiffs' lawyers and factions of plaintiffs were paired with an easy way to fragment the class.").  These concerns take on heightened importance where counsel for Movants claims to represent *tens of thousands* of Class members and has aggressively moved to challenge the proposed Settlement.  *See In re Syngenta AG Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345, at *7 (D. Kan. Apr. 10, 2018) ("The record reflects strongly held disagreements between counsel for some putative class members and the court's appointed leadership counsel about how litigation against the . . . defendants should be handled.").[13]  Particularly when it is unclear whether Movants' counsel will be able to advise their many clients on their options for responding to the Notice, the signature requirement will ensure that Class members—and not counsel who may be motivated by their own economic interests—are driving the decision to withdraw.  *See In re Syngenta*, 2018 WL 1726345, at *7 ("To ensure that those who actually may possess a potential claim are in fact the decision-makers, it is more than reasonable to require that they take the very minimal effort required to sign and mail an opt

---

[13] The other cases Movants cite are inapposite as they did not involve large numbers of separately represented potential class members (*see, e.g.*, *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2018 WL 10539267, at *2 (N.D. Cal. June 7, 2018); *True v. Am. Honda Motor Co.*, No. EDCV07-287-VAP (OPx), 2009 WL 838284, at *9 (C.D. Cal. Mar. 25, 2009)), concerned attempts to suppress the number of *claims*, or addressed the unique aspects of FLSA collective actions. *See, e.g.*, *Pearson v. NBTY, Inc.*, 772 F.3d 778, 783 (7th Cir. 2014) (discussing "needlessly elaborate" requirements for submitting a claim); *Knight v. Concentrix Corp.*, No. 4:18-CV-07101-KAW, 2019 WL 3503052, at *6 (N.D. Cal. Aug. 1, 2019) (discussing *opt-in* procedure in FLSA settlement); *Smothers v. NorthStar Alarm Servs., LLC*, No. 217CV-00548-KJM-KJN, 2019 WL 3080822, at *8 (E.D. Cal. July 15, 2019) (noting potential confusion to class members of opt-in and opt-out procedures due to "hybrid nature" of FLSA action); *Trauth v. Spearmint Rhino Co. Worldwide, Inc.*, No. EDCV-091316-VAP (DTBx), 2010 WL 11468628, at *16 (C.D. Cal. July 26, 2010) (similar).

1    out."). Thus, "to encourage this careful decisionmaking process" the Court should reject Movants'

2    objections to the signature and mailing requirements. *Hallie*, 2015 WL 1914864, at *4.

3    Movants also take issue with the requirement that Class members who request exclusion

4    provide their unique settlement identification number assigned by the Claims Administrator.

5    Intervention Mot. at 18-19. But the ID number is necessary to trace the opt-out to a specific Class

6    member—if for example their name or address has changed—and is less intrusive than demanding a

7    Social Security number, which would be the alternative.[14] Moreover, it is reasonable to presume that

8    Class members who opt out will have seen the Notice, and because the Notice will list their settlement

9    IDs, they can readily list those numbers in their opt-out requests. *In re Prudential Ins. Co. of Am.*

10   *Sales Practices Litig.*, 177 F.R.D. 216, 238-39 (D.N.J. 1997) (after "a formal, written request for

11   exclusion" requiring a signature and policy number(s), "fact that 19,000 class members managed to

12   opt out evidences the clarity and simplicity of the opt out procedure.").[15] Similarly, the unique

13   settlement IDs will facilitate the accurate and orderly distribution of claim awards, by allowing the

14

15   [14] *See, e.g.*, *In re CenturyLink*, 2020 WL 3512807, at *5 (noting "settlement identification numbers"
16   were needed "to confirm that a person opting out is a class member and to identify the claim being
     opted out of the settlement."); *Viet Bui v. Sprint Corp.*, No. 2:14-CV-02461-TLN-AC, 2015 WL
17   3828424, at *3 (E.D. Cal. June 19, 2015) (requiring claimant ID and signature); *Melito v. Am. Eagle
     Outfitters, Inc.*, No. 1:14-CV-02440-VEC, 2017 WL 366247, at *3 (S.D.N.Y. Jan. 24, 2017) (requiring
18   signature and "ID number"); *In re Payment Card Interchange Fee Antitrust Litig.*, No. 05-MD-1720
     (JG), 2012 WL 12929536, at *3 (E.D.N.Y. Nov. 27, 2012) (requiring taxpayer ID number).
19
     [15] Courts have approved class settlements that required substantially more information to opt out. *See,
20   e.g.*, *The Nvidia GPU Litig.*, No. C 08-04312 JW, 2010 WL 11488486, at *3 (N.D. Cal. Sept. 15,
     2010) ("[P]ersons requesting exclusion are also directed to state the OEM brand, platform name and
21   approximate date of purchase of the Class Computer."); *Klee v. Nissan N. Am., Inc.*, No. CV12-
     00082380-DDP, 2013 WL 12164781, at *2 (C.D. Cal. July 10, 2013) (requiring class members to
22   submit a signed letter with detailed ownership information regarding their vehicle); *In re Am. Honda
     Motor Co., Inc.*, No. CV06-1301-CAS, 2009 WL 1204495, at *4 (C.D. Cal. Apr. 17, 2009) (requiring
23   VIN plus "a brief statement explaining their desire to be excluded from the Settlement Class along
     with objectively verifiable proof of ownership of a Class Vehicle"). The only case Movants cite in
24   this area, *Livingston v. MiTAC Digital Corp.*, No. 18-CV-05993-JST, 2019 WL 8504695, at *6 (N.D.
     Cal. Dec. 4, 2019), shows that "the information needed to opt out of the settlement" is made on a case-
25   by-case basis; while there was no need in that case for class members to provide their telephone
     numbers and addresses, courts have required class members to provide such information in other cases
26   when appropriate. *See, e.g.*, *Emetoh*, 2020 WL 6216763, at *17 (address, phone number, and
     employee identification number or approximate years of employment); *Gomez-Gasca v. Future AG
27   Mgmt., Inc.*, No. 19-CV-2359-YGR, 2020 WL 6149688, at *13 (N.D. Cal. Oct. 20, 2020) (last four
28   digits of Social Security number, dates of employment, and email address).

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

1  administrator to track a Class member who may have several different TurboTax account numbers in

2  Intuit's records from filing a return in multiple tax years.

3         Movants further argue that some Class members who intend to pursue an arbitration have not

4  yet received an arbitration case number.  Intervention Mot. at 19 n.8.  In any such situations, the opt-

5  out notice can note this fact and nothing in the Settlement provides that a class member's inability to

6  provide an *un*assigned arbitration case number voids the opt-out, which would defy common sense.

7         Movants overreach with their argument that requiring Class members to personally sign their

8  opt-out requests, rather than allowing mass attorney opt-outs, violates their supposed "right to respond

9  through counsel."  Intervention Mot. at 19-20, 25.  Movants disregard that "the requirement that a

10  class member must individually sign is vital, because it ensures that the class member is individually

11  consenting to opt out, and avoids a third party or lawyer representing that they have that class

12  member's authority, without the class member making an informed, individual decision."  *In re*

13  *CenturyLink*, 2020 WL 3512807, at *3 (citing, *inter alia*, *In re Deepwater Horizon*, 819 F.3d 190, 197

14  (5th Cir. 2016) (reiterating the "common and practical requirement" "that an opt out be signed by the

15  class member, not the attorney, in order to ensure that the exclusion [i]s with the client's express

16  consent.") (citing district court findings)).  That Class Counsel, recognizing their "duty to do what is in

17  the best interests of the class," *White v. Experian Info. Sols., Inc.*, No. SA CV 05-1070-DOC, 2009

18  WL 10670553, at *12 (C.D. Cal. May 7, 2009) (citations omitted), signed the Settlement Agreement

19  on behalf of the Class does *not* mean arbitration claimants should be permitted "to opt out . . . through

20  counsel."  Intervention Mot. at 25.  Movants' insistence on attorney opt-outs well demonstrates that

21  the concern here is lawyer-driven and motivated by the interests of counsel.  In all events, Rule 23

22  provides no "right to respond through counsel" in an opt-out form.  Rather, Rule 23 merely allows a

23  class member to appear through counsel, for instance at a final fairness hearing for a proposed

24  settlement.  Fed. R. Civ. P. 23 (c)(2)(B)(iv).

25         Opting out is the simple solution under Rule 23 if Movants or other Class members wish to

26  seek relief in individual arbitrations, and the Settlement does not burden their right to follow that path.

27         **6.      The Release of Liability Under the Settlement Is Appropriately Tailored.**

28         Movants misread the Settlement's release provision when they assert it extends to claims

"regardless of whether they arise from identical factual predicates." Intervention Mot. at 16. Instead, the release is limited to claims that could have been alleged "in the Action as of the date of entry of the Preliminary Approval Order." SA § I(y) (emphasis added). The Settlement defines Action to include the constituent actions that were consolidated by the Court (SA § I(a)), and the release extends only to claims that were or could have been alleged in the Action. Hence, the negotiating parties appropriately tethered the Settlement's release of liability to claims arising out of the factual allegations that give rise to the Action. *See* Dkt. No. 162 at 11; *In re First Jersey Sec., Inc. Sec. Litig.*, No. MDL 681, 1989 WL 69901, at *1 (E.D. Pa. June 23, 1989) (court approved release of all "causes of action which were or could have been alleged in this action").

That Movant's release arguments are contrived is demonstrated by the settled principle that, even where a "release attempts to reach claims not based on an identical factual predicate, Ninth Circuit law explicitly limits the release to claims based on the identical factual predicate." *Raquedan v. Volume Servs., Inc*., No. 18-CV-01139-LHK, 2018 WL 3753505, at *6 (N.D. Cal. Aug. 8, 2018) (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 725 F. App'x 560, 563 (9th Cir. 2018) (holding that a release is "enforceable only as to subsequent claims depending upon the same set of facts.") (citations and alterations omitted); 2 McLaughlin on Class Actions § 6:29 n.12 (Supp. 2020). Given that the Settlement release does not extend beyond the Action, it does not conflict with the identical factual predicate doctrine.[16]

Movants also argue that the release is overbroad because they assert an antitrust claim. Mot. at 21. Yet, beyond conclusory allegations in their putative intervenor complaint of "collud[ing]" (Dkt. No. 177-1, ¶¶ 6, 35, 56(b)), Movants do not explain the factual basis for that claim or why it should be assigned a value substantial enough to warrant rejecting the Settlement. Confirming that the release is properly tailored, the alleged conduct underlying the more particularized Sherman Act claim in Class Counsel's amended complaint filed before consolidation, *see Dohrmann v. Intuit Inc.*, No. 3:19-cv-

---

[16] The release provisions in cases cited by Movants contained more sweeping language that appeared unconfined to the nucleus of operative fact. *See Hadley v. Kellogg Sales Co*., No. 16-CV-04955-LHK, 2020 WL 836673, at *2 (N.D. Cal. Feb. 20, 2020) ("causes of action of *every nature and description whatsoever*"); *Camilo v. Ozuna*, No. 18-CV-02842-VKD, 2019 WL 2141970, at *12 (N.D. Cal. May 16, 2019) ("any other related claims and/or penalties of any nature whatsoever."); *Willner v. Manpower Inc*., No. 11-CV-02846-JST, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014) ("related *in any way*").

02566-CRB, Dkt. No. 7, ¶¶ 40-89 (N.D. Cal. May 14, 2019), is the same deception alleged in the consolidated complaint, and Movants are free to pursue an antitrust theory after opting out.

Finally, Movants contend that the Class of all persons who were eligible to file for free but paid to use TurboTax is broader than the group of Class members who are eligible for a Settlement payment because they expected to file for free. Intervention Mot. at 24. But, be that as it may, a class settlement may reasonably provide monetary relief for class members with stronger damage claims and non-monetary relief to the entire class. *See, e.g.*, *In re Equifax*, 2020 WL 256132, at *18.

### 7. The Settlement's "Clear-Sailing" Provision Is Routine and Unproblematic.

Movants also point to the Settlement's "clear-sailing" provision, under which Intuit agrees not to contest Class Counsel's request for a 25% benchmark fee. Intervention Mot. at 13, 15. This provision is standard, however, and raises no concerns because the parties' Settlement resulted from an arms' length negotiation process. Joint Decl., Dkt. No. 162-2, ¶¶ 10-14; Infante Decl., Dkt. No. 162-3, ¶ 9. The parties' agreement relating to attorneys' fees (SA § IV(a)) is unproblematic, as (1) the fee request would be at the benchmark, (2) the fees would come out of a common fund instead of being paid separately, and (3) no money will revert to Intuit. *See Russell v. Kohl's Dep't Stores, Inc.*, 755 F. App'x 605, 608 (9th Cir. 2018) (recognizing that a "clear-sailing" provision "raises fewer concerns about collusion . . . because class counsel's fees here would come from a common fund" and would be at the 25% benchmark with no reversion).[17]

### C. The Court Should Provisionally Certify the Settlement Class.

Movants contest Plaintiffs' typicality and adequacy of representation under Rule 23(a), asserting a conflict between Plaintiffs and those Class members who already filed arbitrations. Intervention Mot. at 12-14. To preclude certification, a conflict must be "fundamental to the suit and go to the heart of the litigation." *In re Online DVD-Rental*, 779 F.3d at 942 (quoting 1 Newberg on Class Actions § 3.58 (5th ed. 2011)). "A conflict is fundamental when it goes to the specific issues in

---

[17] *See also, e.g.*, *Chen v. Chase Bank USA, N.A.*, No. 19-CV-01082-JSC, 2020 WL 3432644, at *8 (N.D. Cal. June 23, 2020); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG, 2020 WL 511953, at *9 (N.D. Cal. Jan. 31, 2020); *Livingston v. MiTAC Digital Corp.*, No. 18-CV-05993-JST, 2019 WL 8504695, at *7-8 (N.D. Cal. Dec. 4, 2019). Movants' remaining two quibbles (Intervention Mot. at 24) are no more persuasive. The narrower range of individual recoveries estimated to the Court is fully encompassed by the more conservative estimate in the Notice, and the postcard notice will be submitted for the Court's review before notice issues.

16

controversy," and the court will "not 'favor denial of class certification on the basis of speculative conflicts.'"  *Id*. (quoting *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003)).  Movants do not point to any conflict, much less a fundamental conflict, related to the specific issues in controversy.

Plaintiffs' claims arose from Intuit's alleged "'free-to-fee' scheme to bait customers with the offer of free tax filing services but then charge them a fee to complete their return and file[.]"  Compl., Dkt. No. 80, ¶ 3.  Movants use almost identical language to describe the grounds for their claims in arbitration (Intervention Mot. at 4)—so it is clear that the claims arise from the same factual controversy.  And while Movants complain about differences in how the claims have been pursued—some in arbitration proceedings, even as those claimants remained putative class members—Movants cannot and do not cite any precedent suggesting that such differences in procedural avenues for relief could create a "fundamental" conflict "go[ing] to the heart of the litigation."  *In re Online DVD-Rental*, 779 F.3d at 942.

Movants argue that they have brought causes of action Plaintiffs did not assert in the operative complaint.  But "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the [settled claims] even though the precluded claim was not presented, *and could not have been presented*, in the class action itself."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001) (emphasis added).  The Supreme Court held in *Matsushita Electric Industrial Co., Ltd. v. Epstein*, 516 U.S. 367 (1996), that even a jurisdictional bar on litigating the settled claims in the forum court could not preclude that court from approving a binding class settlement and releasing claims it could never have tried.  Even before *Matsushita*, "[t]he weight of authority h[eld] that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action'"—so a district court "was within its power to release these claims not before it as a condition of settlement."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-89 (9th Cir. 1992) (citations omitted).

Nor do Movants cite any precedent supporting their position that a conflict arises when members of a proposed class have brought individual causes of action not brought in the class action.  Intervention Mot. at 12-13.  Intuit's conduct is alleged to have applied to the entire Class, which has always included Movants.  *See* 11/20/20 Order of L.A. Super. Ct. at 4 n.1 (noting that the arbitration

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

claimants "have been part of Judge Breyer's case from the beginning").  Regardless of the need to make strategic decisions about which claims to assert (or not), the same allegedly unfair and deceptive course of conduct by Intuit caused the same alleged harm to all Class members.  *See Hanlon*, 150 F.3d at 1020-22 (rejecting a challenge to class certification because "[a] common nucleus of facts and *potential* legal remedies dominates this litigation") (emphasis added).  Thus, as each Class member here suffered the "same injury stemming from the same conduct," "Plaintiffs' interests align with the interests of the class[.]"  *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 295 (N.D. Cal. 2018).

If a small percentage of class members could create a conflict by filing their own lawsuits with unique claims, few contested class settlements would survive.  And curing such a conflict would be ministerial because the class representatives could simply amend their complaint to add those claims. No interest or policy would be served by requiring a class representative to assert the same causes of action as every potential individual claimant.  If a class member believes a particular claim should be asserted, they may opt out—but that belief or decision does not create a fundamental conflict.

Movants also posit that some Class members may have more valuable claims because they reside in states with potential statutory penalty claims.  But the possible existence of such claims does *not* create a fundamental conflict, because the mere "availability of potential statutory damages [for some class members] does not, by itself, mean that the interests of these class members are antagonistic to the interests of class members from other jurisdictions."  *In re Target Corp. Customer Data Sec. Breach* Litig., No. MDL 14-2522 (PAM), 2017 WL 2178306, at *6 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (on the contrary, "[c]lass actions nearly always involve class members with non-identical damages"); *see Hanlon*, 150 F.3d at 1022 (reasoning that "although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification.  On the contrary, to the extent distinct remedies exist, they are local variants of a generally homogenous collection of causes" of action); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (en banc) (finding it "noteworthy that each putative class member suffered the same alleged injury as a result of De Beers's anticompetitive conduct, irrespective of the vagaries of applicable state laws.").

Movants' invocation of non-California remedies is also speculative and dubious given Intuit's

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

California choice-of-law provision in its agreements with all Class members.  Dkt. No. 97-3 at p. 4 of 8.  Movants acknowledge this provision in a footnote but maintain "courts regularly disregard such clauses in consumer-protection cases when a defendant's choice of law would give the plaintiff weaker remedies[.]"  Intervention Mot. at 21 n.9.  That generalized statement is insufficient to meet Movants' burden of demonstrating that different states' laws would in fact apply.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (en banc) (rejecting variations in state law as basis to deny settlement class certification because objector did not "shoulder the burden of demonstrating that foreign law, rather than California law, should apply") (citations omitted).  What is more, Movants have not demonstrated that any non-California claim *is* more valuable.  They cite statutory penalties that can be "up to $10,000"—yet class members could assert punitive damage claims under the Consumers Legal Remedies Act without limitation.  Cal. Civ. Code § 1780(a)(4).

Movants' adequacy challenge further ignores that arbitration claimants were *not* unrepresented.  Before the parties reached their Settlement, Andrew Dohrmann, a Plaintiff and Class representative in this action, filed a demand for arbitration against Intuit seeking wide-reaching injunctive relief, damages, and restitution.  *See* SA at pp. 8-9.  Therefore, even if there was a fundamental conflict between Class members who have and have not initiated arbitrations, Mr. Dohrmann is similarly situated to and an adequate representative of Movants and the other Class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (calling for a "structural assurance of fair and adequate representation for the diverse groups and individuals affected.").  More fundamentally, Movants ignore that *all* Class members had—and still have—the right to file an arbitration seeking the same relief as Movants.  Given that every Class member can individually pursue the recoveries that Movants assume may be available in arbitration, the procedural line they seek to draw is arbitrary.

Movants next contend that Plaintiffs' interests are antagonistic to theirs because Plaintiffs support a temporary injunction against Class members pursuing separate relief until they have decided whether to opt out of the Settlement.  Intervention Mot. at 13.  Yet that injunction (discussed further below) is not aimed at the arbitration claimants.  It applies to all Class members, including the Plaintiffs who have also agreed to stay their own claims while the Court considers the Settlement.  Movants suggest that interim class counsel were conflicted because Intuit insisted on a "host of

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

provisions tailored to burden" the Movants and other arbitration claimants.  But Movants do not specify how these provisions were somehow tailored to burden them.  The same injunction and opt-out provisions apply to all Class members.

The claim that Class Counsel—who were in settlement negotiations with Intuit long before the Court's arbitration ruling—had no leverage is also unfounded.  First, Intuit faced the risk that Mr. Dohrmann would secure a public injunction against its business practices in arbitration.  *See Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 829-30 (9th Cir. 2019).  Second, Movants' counsel are not the only ones with a stable of aggrieved clients.  Absent the Settlement, Class Counsel intended to file many additional arbitrations on behalf of their clients against Intuit.  *See* 8/16/19 Hr'g Tr. at 25:16-17 (Class Counsel representing "we will not accept arbitration as giving Intuit any kind of a silver bullet in this case.").  Third, while the Ninth Circuit reversed this Court's order denying Intuit's motion to compel arbitration, Plaintiffs still could have petitioned for certiorari as to their arguments under the FAA.[18] Plaintiffs argued in their en banc petition that, despite the Ninth Circuit's interpretation of Intuit's clause permitting a party to seek equitable relief in court as being limited to relief "in aid of arbitration," the contract does not contain those words; and the Supreme Court has emphasized that the FAA demands strict fealty to the terms of arbitration contracts.  *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).  Supreme Court proceedings did not present an inconsequential risk to Intuit on either a legal or public relations level.

In sum, the Settlement Class is cohesive, adequately represented, and likely to be certified.

## II.     THE COURT SHOULD DENY THE INTERVENTION MOTION AND ENTER THE INJUNCTION.

Movants lack standing to assert the rights of other Class members under prudential standing doctrine.  *See* Section I.A above; *see also Zamora v. Ryder Integrated Logistics, Inc.*, No. 13cv2679-CAB (BGS), 2014 WL 9872803, at *2 n.2 (S.D. Cal. Dec. 23, 2014) (the "only relevant interest" for purposes of a motion to intervene is the movant's individual interest).  As to their own rights, Movants' intervention motion should be denied, and the Court should enter the injunction provided for under the Settlement that would require them to opt out before separately pursuing Intuit.

---

[18] The time period for petitioning the Supreme Court in this case did not start running until October 2, 2020 (Dkt. No. 153) and does not expire until 150 days thereafter.

**A.      Because They Can Opt Out to Pursue Arbitrations, Movants' Interests Will Not Be Impaired if the Court Denies Intervention.**

Movants bear the burden to satisfy all requirements of Rule 24(a) for intervention of right, including by showing that disposing of this case through the Settlement will impair their ability to protect their own interests.  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).  Movants have not made that showing.  While they protest various parts of the Settlement, "dissatisfaction with a settlement cannot provide the basis for granting intervention as of right." *Brennan v. Cmty. Bank, N.A.*, 314 F.R.D. 541, 546 (M.D. Pa. 2016).  Movants' own case recognizes that "[t]he goals of Rule 23 would be seriously hampered" if courts were to permit intervention to challenge settlement provisions by attorneys "who, after finding one or more class members as clients, . . . wish to share in the forthcoming fee[.]"  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 315 (3d Cir. 2005).  Denial of intervention would not impair any interest of Movants as they "are free to opt out of the class settlement and continue and/or proceed with arbitration."  *Brennan*, 314 F.R.D. at 546.

A putative intervenor's interests are not impaired "if they have other means to protect them." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).  Movants have other means to protect their interests without disrupting these proceedings: objecting at the fairness hearing or opting out to pursue individual relief.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liability Litig.*, MDL No. 2672 CRB (JSC), 2016 WL 4376623, at *4 (N.D. Cal. Aug. 17, 2016) (denying intervention because the putative intervenor could "opt of the Settlement and litigate his claims independently, or he may instead object to it"), *aff'd*, 894 F.3d 1030 (9th Cir. 2018).[19]

---

[19] *See also McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-04457-YGR, 2016 WL 6582045, at *3 (N.D. Cal. Nov. 7, 2016) (noting that class members "could each opt out of any class that may be certified and litigate their claims independently.  In such cases, courts have found that putative intervenors do not have a right to intervene pursuant to Rule 24(a)."); *Raquedan v. Centerplate of Del. Inc.*, 376 F. Supp. 3d 1038, 1041-42 (N.D. Cal. 2019) (denying intervention: "The Ninth Circuit recognizes in the class action settlement context, a putative intervenor's concerns may 'largely be addressed through the normal objection process.'") (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015)); *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313 WHA, 2011 WL 5415073, at *2 (N.D. Cal. Nov. 8, 2011) (putative intervenor "*had an opportunity to opt out of the settlement after he read the release of claims* printed in the settlement notice.  This opportunity adequately safeguarded his rights and interests.") (emphasis in original); *Embry v. Acer Am. Corp.*, No. C 09-01808 JW, 2012 WL 13059908, at *1 (N.D. Cal. Jan. 27, 2012) (holding that the "settlement does not impair Objectors' ability to protect their interests, as Objectors are free to opt out of the settlement").  The law in other

---

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

Movants state without explanation that the Settlement limits the ability of Class members to rely on the assistance of their chosen counsel.  Intervention Mot. at 9.  It does not.  Nothing in the Settlement prevents any Class member from retaining or consulting their own attorney or appearing through that attorney, as Rule 23(c)(2)(B)(iv) provides, and the Notice informs Class members that they may hire their own lawyer.  SA, Ex. 1 to Ex. A, Question 14.  That Movants are ably represented by counsel who initiated arbitrations confirms that they can protect their interests without intervening.  *See Ramirez v. Manpower, Inc.*, No. 13-CV-02880-BLF, 2014 WL 3378306, at *7 (N.D. Cal. July 10, 2014) (putative intervenors could not show that their interests would be impaired where they had already filed an overlapping state court action); *Demarco v. Avalonbay Communities, Inc.*, No. 15-628 (JLL) (JAD), 2016 WL 5934704, at *5-6 (D.N.J. Oct. 12, 2016) (putative intervenors who had already filed a state court action were in some respects "more protected than all other class members" because they could readily opt out and pursue pending claims).  Courts also typically deny permissive intervention under Rule 24(b) when denying intervention of right.  *Viet Bui*, 2015 WL 3828424, at *3.

**B.      Enjoining Class Members From Pursuing Separate Claims Pending Their Opt-Out Decisions Will Not Prejudice Any Class Member.**

The parties' Settlement provides for an injunction against Class members pursuing individual claims against Intuit until they have opted out.  SA § V(a)(iv) & Ex. A, ¶ 23.  The Court's authority to enjoin class members who do not opt out of a settlement class from continuing to litigate is well

---

jurisdictions is the same: Settlement class members have no basis to intervene because they are capable of opting out or objecting to protect their interests.  *See, e.g., Hibler v. Santander Consumer USA, Inc.*, No. EDCV 13-1354 JGB (OPx), 2013 WL 12137716, at *4 (C.D. Cal. Nov. 21, 2013); *Rescigno v. Statoil USA Onshore Props. Inc.*, No. CV 3:16-85, 2020 WL 3830931, at *7 (M.D. Pa. July 8, 2020) (denying motion to intervene filed by absent class members who argued their "various arbitration actions . . . would be derailed by the injunction" under the All Writs Act and explaining that "if Intervenors do not wish to be bound by its terms, they may simply opt out of the class.); *Grilli v. Metro. Life Ins. Co.*, 78 F.3d 1533, 1536 (11th Cir. 1996); *In re Payment Card Interchange Fee Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 5653756, at *4 n.3 (E.D.N.Y. Oct. 30, 2019) (citing cases rejecting intervention by class members who challenged class settlements); *Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*, No. CIV.A. 3:13-2289, 2014 WL 4955259, at *3 (M.D. Pa. Sept. 30, 2014) (finding that "if the proposed intervenors choose not to be bound by the terms of the settlement, they can opt out of the settlement class and reserve all of their rights to proceed with arbitration."); *Cohorst v. BRE Props., Inc.*, No. 10CV2666 JM BGS, 2011 WL 3475274, at *6 (S.D. Cal. Aug. 5, 2011); *Feller v. Transam. Life Ins. Co.*, 2018 WL 6025839, at *4 (C.D. Cal. Nov. 16, 2018); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 606 (W.D.N.Y. 2011) (citing *Doe v. Cin-Lan, Inc.*, No. 08-cv-12719, 2011 WL 37970, at *4 (E.D. Mich. Jan. 5, 2011)).

22

established.  *See* Dkt. No. 162 at 21-24.  The Ninth Circuit has specifically held that "a temporary stay pending settlement of the nationwide class action was appropriate . . . because concurrent state proceedings at such a sensitive stage in the federal proceedings would have threatened the jurisdiction of the district court."  *Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*, 428 F.3d 831, 845 (9th Cir. 2005).  Movants do not dispute the ample case law supporting the Court's exercise of authority in this manner under the All Writs Act.  Instead, they argue that while the Court may stay state or other federal *court* proceedings, it lacks power to temporarily stay arbitrations.  Intervention Mot. at 10-11.  This distinction is specious.  Movants try to wave away the many cases in which courts did, in fact, temporarily stay parallel arbitrations as containing "[l]anguage adopted from a proposed order submitted by settling parties, and never considered or analyzed" by the judges who entered the orders. *Id.* at 11.  But Plaintiffs cited several decisions temporarily enjoining arbitrations during class settlement proceedings that contained clear and independent legal analysis,[20] which Movants simply ignore.

Movants' argument on this score seems particularly disingenuous because another such case, involving similar opposition by the same counsel representing Movants, saw an injunction entered against arbitrations.  *See In re CenturyLink Sales Practices & Sec. Litig.*, No. MDL 17-2795, 2020 WL 869980, at *5 (D. Minn. Feb. 21, 2020) (refusing to stay injunction pending appeal at putative intervenors' request), *appeal pending*, No. 20-1294 (8th Cir.).  The district court in *CenturyLink* "found that a temporary injunction of parallel proceedings by the parties to this lawsuit was necessary to properly manage the disposition of this case . . . including avoiding confusion among class members, ensuring proper notice, and preserving resources."  *Id.* at *5.  The court stated that it was acting to protect an "orderly, efficient manner for class members to opt out and, thus, pursue parallel actions, including lawsuits and arbitrations, with little delay."  *Id.*  That court specifically rejected putative

---

[20] *See In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 204, 207 (E.D. Pa. 2014) (enjoining all proceedings including arbitrations because "the challenges facing the overseeing court [with a class settlement] are such that it is likely that almost any parallel litigation in other for a presents a genuine threat to the jurisdiction of the federal court.") (quoting *In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002)); *In re Painewebber Ltd. P'ships Litig.*, No. 94 CIV. 8547 SHS, 1996 WL 374162, at *2 (S.D.N.Y. July 1, 1996) (discussing arbitrations extensively and concluding "it would be incongruous if the Court had the authority to stay pending litigation, but not to enjoin arbitration, 'in aid of its jurisdiction' even before judgment is entered"); *Larson v. AT&T Mobility LLC*, No. CV 07-5325 (JLL), 2009 WL 10689759, at *2 (D.N.J. Jan. 16, 2009) (rejecting opposing arguments that federal court overseeing class settlement could not enjoin parallel class arbitration).

intervenors' argument—the same argument Movants advance here—that "temporarily enjoining them from arbitrating . . . rendered their arbitration agreement unenforceable in violation of the FAA." *Id.*

Similar to *CenturyLink*, Movants' counsel purport to represent tens of thousands of claimants whose claims would be resolved by the Settlement unless they opt out. Permitting them to arbitrate even when they may accept the Settlement would be untenable and threaten the Settlement because those claimants could continue arbitrating claims that will ultimately be resolved. *Id.* at *7 (class members cannot "choose to remain in a class and reap the benefits of a settlement, while simultaneously pursuing arbitration against the same defendant for the same claims"). In contrast, pausing the ability to arbitrate until those Class members who exclude themselves from the judgment are identified scarcely renders that right unenforceable; nor is it incompatible with the "principles and usages of law."[21] 28 U.S.C. § 1651(a). In fact, the injunction in *CenturyLink* was broader and *more* restrictive than the one proposed here in that it did not expressly provide that the injunction would immediately dissolve for Class members who opted out, a term Class Counsel specifically negotiated in this case. *See* 2020 WL 869980, at *1.

Movants rest their opposition on the claim that the FAA displaces the Court's authority to enjoin competing proceedings under the All Writs Act. Intervention Mot. at 10-11. But they provide no basis for concluding the FAA limits the Court's authority to enjoin parallel proceedings in these circumstances. The text of the FAA does not expressly prohibit this judicial action, and requiring class members to opt out of a class settlement that *may otherwise* resolve their claims does not prevent enforcement of the arbitration agreement. It just ensures an orderly process for allowing class members to assess the Settlement and decide whether to opt out to enforce their right to arbitrate. Contrary to Movants' claim, therefore, because the Settlement expressly allows them to invoke their contractual rights under Intuit's terms, the Settlement does not "[v]iolate" them. Intervention Mot. at 9. For the same reason, the Rules Enabling Act is not implicated. Intervention Mot. at 11 (citing 28 U.S.C. § 2072(b)).

By Movants' logic, no arbitration could ever be enjoined because that would preclude enforcing

---

[21] *See, e.g.*, *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 915 (8th Cir. 2010) (discerning no "err in temporarily enjoining the parties from participating in binding arbitration on a matter which [defendant] was attempting simultaneously to litigate in district court."); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 219-20 (E.D.N.Y. 2013) (temporarily enjoining arbitration under All Writs Act to protect ongoing federal court litigation after determining that "to have pending arbitrations or future arbitrations result in inconsistent rulings" "would severely threaten any judgment of this Court").

the agreement to arbitrate.  That is not the law—indeed "it would be incongruous if the Court had the authority to stay pending litigation, but not to enjoin arbitration."  *In re Painewebber*, 1996 WL 374162, at *2.[22]  Movants' overly broad interpretation of the FAA relies on *In re Piper Funds, Inc., Institutional Government Income Portfolio Litig.*, 71 F.3d 298 (8th Cir. 1995), yet the Eighth Circuit there "agree[d] with the district court that it has the power, under [Rule] 23 augmented by the All Writs Act, to control conduct by absent class members that affects management or disposition of the class action."  *Id.* at 302-03.  The proposed injunction here merely requires that Movants opt out before going forward with their arbitrations.  That distinguishes this case from *Piper*, where the Eighth Circuit reversed the district court's decision not to lift the injunction even after a class member made "an unrefuted showing that . . . it elected not to participate in the class action [and] now elected irrevocably to opt out of the class action" so it could arbitrate its claims.  *Id.* at 304; *see In re Painewebber*, 1996 WL 374162, at *5 ("A crucial predicate for the Eighth Circuit's decision in that case was that the unwilling class member had made explicit its intention to opt out of the class at the first opportunity.").  Movants' argument would reverse the order of events and let them arbitrate *before* they exclude themselves from the class settlement.

Movants' passing policy argument is equally meritless.  They claim that requiring them to opt out before proceeding in arbitration—the remedy ordered in *Piper*—runs against the "entire purpose of arbitration [which] is to avoid delay[.]"  Intervention Mot. at 10.  Yet, according to the Supreme Court, the "benefits of private dispute resolution [are]: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).  Neither lower costs nor greater efficiencies would be promoted by permitting Movants to arbitrate against Intuit *unless they plan to opt out* of the Settlement with Intuit.  The permissive approach they advocate would reduce efficiency and increase costs to arbitrate claims resolvable by the class settlement.  Any delay would be of Movants' making: they have full power to lift the injunction as it applies to them, by simply opting out.

---

[22] *See, e.g.*, *Hartley v. Stamford Towers Ltd. P'ship*, 36 F.3d 1102 (9th Cir. 1994) (unpublished) (holding that the All Writs Act's "grant of authority includes jurisdiction to enforce a class action judgment" by enjoining an arbitration, and one party's "participation in the arbitration process cannot affect the District Court's authority to enforce its judgments"); *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994) ("No matter what, courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations.").

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the above reasons and those set out in their Motion for Preliminary Approval, Plaintiffs respectfully submit that the Court should grant preliminary approval of the proposed Settlement, grant provisional certification of the Settlement Class, and direct the issuance of notice to the Class members.

Dated:  December 7, 2020                    Respectfully submitted,


                                            /s/ *Daniel C. Girard*

                                            Daniel C. Girard (State Bar No. 114826)
                                            Jordan Elias (State Bar No. 228731)
                                            Simon S. Grille (State Bar No. 294914)
                                            **GIRARD SHARP LLP**
                                            601 California Street, Suite 1400
                                            San Francisco, CA 94108
                                            Telephone: (415) 981-4800
                                            Facsimile: (415) 981-4846
                                            dgirard@girardsharp.com
                                            jelias@girardsharp.com
                                            sgrille@girardsharp.com

                                            Norman E. Siegel (*pro hac vice*)
                                            Austin Moore (*pro hac vice*)
                                            Jillian Dent (*pro hac vice*)
                                            **STUEVE SIEGEL HANSON LLP**
                                            460 Nichols Road, Suite 200
                                            Kansas City, MO 64112
                                            Telephone:  (816) 714-7100
                                            Facsimile:  (816) 714-7101
                                            siegel@stuevesiegel.com
                                            moore@stuevesiegel.com
                                            dent@stuevesiegel.com

                                            *Co-Lead Interim Counsel*

PLAINTIFFS' REPLY IN FURTHER SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND IN RESPONSE TO MOTION TO INTERVENE AND BRIEF OF AMICI CURIAE
CASE NO. 3:19-cv-02546-CRB